## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
                                             :

In re:                              :   Chapter 11

                                             :

PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1] :   Case No. 18-12491 (_____)

                                             :

               Debtors.                  :   (Joint Administration Requested)

-------------------------------------------------------------x

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION AND POSTPETITION TAXES AND FEES AND (II) GRANTING RELATED RELIEF

Promise Healthcare Group, LLC ("***Promise***") and its affiliated debtors and debtors in possession (collectively, the "***Debtors***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), by and through their undersigned counsel, file this motion (this "***Motion***") pursuant to sections 105, 363, 507, and 541 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), for entry of interim and final orders, substantially in the forms attached

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179),   Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766).  The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL  33431.

hereto as **Exhibit A** (the "***Interim Order***") and **Exhibit B** (the "***Final Order***," and together, the "***Proposed Orders***"), authorizing the payment of certain prepetition and postpetition taxes and fees.   In support of the Motion, the Debtors rely on and incorporate by reference the *Declaration of Andrew Hinkelman in Support of First Day Relief* (the "***First Day Declaration***"), and respectfully represent as follows:

<h2 align="center">JURISDICTION AND VENUE</h2>

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. and the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

<h2 align="center">BACKGROUND</h2>

2.      On the date hereof (the "***Petition Date***"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the

4826-3382-4870

Chapter 11 Cases, and no committees have been appointed or designated.

3.      A description of the Debtors' businesses, capital and debt structures, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Declaration filed contemporaneously herewith.

## RELIEF REQUESTED

4.      By this Motion, the Debtors request entry of the Proposed Orders (i) authorizing, but not directing, the Debtors to remit and pay (or use tax credits to offset) Taxes and Fees (as defined below) in the ordinary course of business, without regard to whether such obligations accrued or arose before or after the Petition Date and (ii) granting related relief.

## TAXES AND FEES

5.       The Debtors collect, withhold, and incur franchise taxes, property taxes, sales and use taxes, trust fund taxes, , state and local income taxes, bed taxes and other taxes (each a "*Tax*" and collectively, the "*Taxes*") and annual report filing fees, license and regulatory fees, and other fees (each a "*Fee*" and collectively, the "*Fees*").[2] The Debtors remit the Taxes and Fees to various state and local governments and taxing authorities, identified in the schedule attached hereto as **Exhibit B** (collectively, the "*Authorities*").[3] Taxes and Fees are remitted and paid by the Debtors through checks and electronic funds transfers that are processed through their banks and other financial institutions. The Debtors estimate that approximately $5,700,000

---

[2] By this motion, the Debtors do not seek the authority to collect and remit state and federal employee-related taxes and withholdings. Such relief is instead requested pursuant to the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Certain  Prepetition Wages, Benefits and Other Compensation, and (B) Continue Employee Compensation and Employee Benefits Programs, and (II) Granting Related Relief* filed contemporaneously herewith.

[3] Although **Exhibit B** is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities from **Exhibit B**. By this motion, the Debtors request relief with respect to Taxes and Fees payable to all Authorities, regardless of whether such Authority is specifically identified on **Exhibit B**.

4826-3382-4870

3

in Taxes and Fees relating to the prepetition period are due and owing to the Authorities as of the Petition Date[4]. The Debtors request authority to pay up to $500,000 in Taxes and Fees on an interim basis and $5,700,000 on a final basis.

6.     The Debtors pay the Taxes and Fees to the Authorities on a periodic basis, remitting them monthly, quarterly, semiannually, or annually of each year, depending on the nature and incurrence of a particular Tax or Fee.  The Debtors seek authority, pursuant to this motion, to make such payments where: (a) Taxes and Fees accrue or are incurred postpetition; (b) Taxes and Fees accrued or were incurred prepetition but were not paid prepetition or were paid in an amount less than actually owed; (c) Taxes and Fees paid prepetition by the Debtors were lost or otherwise not received in full by any of the Authorities; or (d) Taxes and Fees incurred for prepetition periods may become due after the Petition Date.

7.     The Taxes and Fees are summarized as follows:

| Category | Description | Approx. Amount Outst. as of Petition Date |
|---|---|---|
| **Franchise Taxes** | Taxes required to conduct business in the ordinary course | $5,000 |
| **Certain State and Local Income Taxes** | Taxes related to income earned by the business | $1,000 |
| **Bed Taxes** | Taxes related to number of beds possessed by the Debtors | $1,500,000 |
| **Property Taxes** | Taxes and obligations related to real and personal property holdings. | $4,100,000 |
| **Trust Fund** | Money withheld from an employee's wages (income | $0 |

---

[4] The requested relief will be without prejudice to the Debtors' rights to contest the amount of any Taxes and Fees on any grounds in the Debtors' sole discretion.  Nothing in this Motion shall be considered an admission by the Debtors with respect to: (i) the Debtors' liability to any Authority; (ii) whether any particular obligation constitutes a Tax or Fee, or (iii) whether any liability for Taxes and Fees constitutes a prepetition or postpetition obligation of the Debtors.

4826-3382-4870

| Taxes | tax, social security, and Medicare taxes) by an employer and held in trust until paid to the Treasury | |
|---|---|---|
| Sales and use Taxes | Taxes related to the sale of goods or services | $3,000 |
| Other Taxes | Taxes related to items not included in the aforementioned tax categories | $800 |
| Regulatory Fees | Fees related to acquiring licenses, permits and inspections | $64,000 |
| Other Fees | Fees related to items not included in the aforementioned fee categories | $10,000 |
| Annual Report Filing Fees | Fees related to annual reporting obligations in Arizona, California, Delaware, Florida, Kansas, Louisiana, Mississippi, Missouri, Texas and Utah | $15,000 |
| | **Total** | $5,700,000 |

## A.     Franchise Taxes.

8.      The Debtors have franchise tax obligations (the "*Franchise Taxes*") they must pay to the Taxing Authorities to remain in good standing and maintain the right to operate their business. The Franchise Taxes are assessed and due annually, and generally become delinquent during the following year.

9.      With regard to 2018 Franchise Taxes, the Debtors estimate that it will owe approximately $5,000. The Debtors request authority, but not direction, to continue to pay the Franchise Taxes if and when they become due and payable during the pendency of the Chapter 11 Cases.

## B.     Certain State and Local Income Taxes

10.     Under certain applicable laws, state or local authorities, or both, levy taxes based on the Debtors' income (the "*State and Local Income Taxes*"). In certain states, state and local authorities are entitled to statutory liens on the Debtors' property located in, or subject to tax, in the respective state if these income taxes are not paid. Moreover, in certain states, the

4826-3382-4870

5

Debtors' directors and officers have personal liability for failure to timely pay these taxes.

11.     The Debtors request the authority, but not direction, to pay all prepetition and post-petition State and Local Income Taxes in the ordinary course of business, as they become due.

**C.     Property Taxes.**

12.     State and local laws in the jurisdictions where the Debtors operate generally grant Authorities the power to levy property taxes against the Debtors' real and personal property. To avoid the imposition of statutory liens on their real and personal property, the Debtors typically pay property taxes in the ordinary course of business on an annual basis. This includes property taxes collected from certain third parties and paid to the applicable Authorities.

13.     In 2018, the Debtors paid approximately $1.8 million in property taxes to the applicable Authorities for the 2017 taxable year. The Debtors estimate that they have accrued approximately $4,100,000 in property taxes as of the Petition Date, including $3,300,000 in accrued property taxes for Silver Lake Medical Center which are expected to be paid out of proceeds from the sale of that facility.  The Debtors seek authority to pay prepetition amounts outstanding on account of property taxes, and to continue to pay such taxes postpetition in the ordinary course of business.

**D.     Annual Report Filing Fees**

14.     The Debtors are required to pay an annual report filing fees in Arizona, California, Delaware, Florida, Kansas, Louisiana, Mississippi, Missouri, Texas and Utah in order to continue conducting their businesses pursuant to laws in each respective state. The Debtors pay the annual report filing fees throughout each year.

4826-3382-4870

15.     In 2017, the Debtors paid approximately $28,000 in annual report filing fees to the applicable Authorities. The Debtors estimate that they have accrued approximately $12,000 in annual report filing fees as of the Petition Date. The Debtors seek authority to pay prepetition amounts outstanding on account of the annual report filing fees, and to continue to pay such fees postpetition in the ordinary course of business.

**E.     Bed Taxes**

16.     The Debtors are required to pay a hospital provider fee or "bed tax" in each state that they operate.  States use the funds from bed taxes to support Medicaid programs. According to the Debtors' books and records, the Debtors estimate that $1,500,000 or more in bed taxes are outstanding as of the Petition Date.

**F.     Regulatory Fees**

17.     The Debtors are required to pay various state and local regulatory fees in order to operate as a healthcare company.  Examples of regulatory fees paid by the Debtors include hospital license fees, pharmacy license fees and lab license fees.  In addition, the Debtors pay state license fees, LTACH and SNF fees and other operating fees such as kitchen grease trap, large medical waste disposal and water treatment fees.  The Debtors estimate that $64,000 in regulatory fees are outstanding as of the Petition Date.

**BASIS FOR RELIEF**

18.     The Debtors believe that any failure to pay the Taxes and Fees may materially disrupt the Debtors' business operations in several ways: (i) the Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from the restructuring process; (ii) the Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that will harm the estates; and (iii) certain of

4826-3382-4870

the Debtors' directors and officers could be subject to claims of personal liability, which would likely distract those key employees from their duties related to the Debtors' restructuring. Moreover, unpaid Taxes and Fees may result in penalties, the accrual of interest, or both.

**A.      Certain of the Taxes and Fees May Be Secured or Priority Claims Entitled to Special Treatment Under the Bankruptcy Code.**

19.      Claims for certain of the Taxes and Fees are or may be priority claims entitled to payment in advance of general unsecured claims. *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment). Moreover, to the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, the respective Authorities may attempt to assess interest and penalties if such amounts are not paid. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). The accrual of interest is governed by the applicable state law judgment rate. *See In re W. Texas Mktg. Corp.*, 54 F.3d 1194, 1203 (5th Cir. 1995) ("Because § 726(a)(5) states that the interest should be set 'at the legal rate,'…state law determines the existence and amount of interest."). Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors.

**B.      Payment of the Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment.**

20.      Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing. 11 U.S.C. § 363(c)(1). In the

4826-3382-4870

alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted) (requiring only that the debtor "show that a sound business purpose" justifies the proposed use of property); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the Bankruptcy Code). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

21.     Furthermore, section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity." 11 U.S.C. § 105(a). The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity"); *see also In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to a debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del.

4826-3382-4870

9

1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan); *see also Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts have routinely approved orders that allow payment of prepetition debt, which is necessary for the debtors to reorganize and restructure their debts and maximize the value of the bankruptcy estate).

22.      Moreover, the doctrine of necessity is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment.").

23.      The Debtors' ability to pay the Taxes and Fees is critical to their continued and uninterrupted operations. If certain Taxes and Fees remain unpaid, the Authorities may seek to recover such amounts directly from the Debtors' directors, officers, or employees, thereby distracting these key personnel from the administration of the Debtors' Chapter 11 Cases. *See, e.g., In re Am. Motor Club, Inc.*, 139 B.R. 578, 581–83 (Bankr. E.D.N.Y. 1992) (stating "[i]f the employer fails to pay over the trust fund taxes, the IRS may collect an equivalent amount directly from officers or employees of the employer who are responsible for collecting the tax"

4826-3382-4870

10

and finding director personally liable for unpaid taxes) (citing *United States v. Energy Res. Co.*, 495 U.S. 545, 547 (1990)); *Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 927 (3rd Cir.1990). Any collection action on account of such claims, and any potential ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest. The dedicated and active participation of the Debtors' officers and employees is integral to the Debtors' continued operations and essential to the orderly administration and, ultimately, the success of these Chapter 11 Cases.

24.     Furthermore, the Debtors' failure to pay the Taxes and Fees may ultimately result in increased tax liability for the Debtors if interest and penalties accrue on the claims for Taxes and Fees, which amounts may also be entitled to priority treatment. Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders. As noted above, many of the Taxes and Fees may be entitled to priority status pursuant to section 507(a)(8)(C) of the Bankruptcy Code. As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied. To the extent that the Debtors are not able to timely pay the prepetition Taxes and Fees, they may ultimately be required to pay those amounts with additional interest and penalties. The Debtors' failure to pay the prepetition Taxes and Fees as they come due may, thus, ultimately increase the amount of priority claims held by the Authorities against the Debtors' estates to the detriment of the Debtors' general unsecured creditors. *See* 11 U.S.C. §§ 507(a)(8)(C) and 507(a)(8)(G). Accordingly, the court should grant the Debtors authority to pay the prepetition Taxes and Fees as provided herein.

**C.     Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates**

25.     Many of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Authorities, and many may be held in trust by the Debtors. *See, e.g*., I.R.C. §
4826-3382-4870

11

7501 (stating that certain Taxes and Fees are held in trust). As such, these Taxes and Fees are not property of the Debtors' estates under section 541 of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 541(d); *Begier v. IRS*, 496 U.S. 53, 57–60 (1990) (holding that any prepetition payment of trust fund taxes is not an avoidable preference since funds are not the debtor's property); *In re Calabrese*, 689 F.3d 312 (3d Cir. 2012) (finding that sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 435–36 (2d Cir. 1985) (same). To the extent these "trust fund" taxes are collected, they are not property of the Debtors' estates under section 541(d) of the Bankruptcy Code. *See In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104–05 (Bankr. E.D. Pa. 1987). Because the Debtors may not have any interest in funds held on account of such "trust fund" taxes, the Debtors should be permitted to pay those funds to the Authorities as they become due.[5]

### D.    Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Funds Transfer

26.    The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of anticipated access to cash collateral. In addition, under the Debtors' cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Taxes and Fees. Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests the Court has not authorized will be made inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in

---

[5] For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

4826-3382-4870

respect of the relief requested in this motion.

27.    Bankruptcy courts in this District have relied on these authorities and precedent to authorize the payment of prepetition tax obligations.  *See, e.g.*, *In re ATD Corporation,* Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 5, 2018) [D.I. 98] (authorizing the debtors to pay certain prepetition taxes); *In re Welded Construction, L.P.*, Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) [D.I. 36] (same); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 3, 2018) [D.I. 69] (same); *In re One Aviation Corp.*, Case No. 18-12309 (CSS) (Bankr. D. Del. Oct. 11, 2018) [D.I. 45] (same); *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. Mar. 29, 2018) [D.I. 132] (same); *In re National Stores, Inc.*, Case No. 18-11801 (LSS) (Bankr. D. Del. Aug. 7, 2018) [D.I. 85] (same).[6]

## REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

28.    Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding … a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition …." Fed. R. Bankr. P. 6003(b).

29.    The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

---

[6] The referenced orders are voluminous in nature and, therefore, are not attached to this Motion; however, in accordance with Local Rule 7007-2, as made applicable to main cases by the Court's General Chambers Procedures, the Debtors' proposed counsel has copies of each order and will make them available to the Court or to any party that requests them.  Additionally, the Orders are available on the Court's CM/ECF PACER site at the cited docket index numbers and on the dates specified above.

4826-3382-4870

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(A) AND (H)

30.    To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a).  Furthermore, to implement the foregoing immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the immediate payment of any amounts owed to Taxing Authorities is essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

31.    Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## NOTICE

**32.**    The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to Wells Fargo, N.A., as administrative agent under the Debtors' prepetition

4826-3382-4870

14

credit facility; (iv) the Internal Revenue Service; (v) the United States Attorney for the District of Delaware; (vi) the United States Department of Justice; (vii) the State Attorney General's Office in each state where the Debtors operate; (viii) the Taxing Authorities; (ix) the Debtors' depository banks; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**_Notice Parties_**").  As this Motion is seeking "first day" relief, notice of this Motion and any order entered in connection with the Motion will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtors respectfully submit that no further notice of this Motion is required.

[*Remainder of Page Intentionally Left Blank*]

4826-3382-4870

EAST\162240416.1

**WHEREFORE**, the Debtors respectfully request entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: November 5, 2018
Wilmington, Delaware

DLA PIPER LLP (US)

/s/ *Stuart M. Brown*
Stuart M. Brown (#4050)
Kaitlin MacKenzie Edelman (#5924)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@dlapiper.com
         Kaitlin.Edelman@dlapiper.com

-and-

WALLER LANSDEN DORTCH & DAVIS, LLP
John Tishler (*pro hac vice* admission pending)
Katie G. Stenberg (*pro hac vice* admission pending)
Blake D. Roth (*pro hac vice* admission pending)
Tyler N. Layne (*pro hac vice* admission pending)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: John.Tishler@wallerlaw.com
         Katie.Stenberg@wallerlaw.com
         Blake.Roth@wallerlaw.com
         Tyler.Layne@wallerlaw.com

*Proposed Attorneys for the Debtors and*
*Debtors in Possession*

4826-3382-4870

EAST\162240416.1