## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                            :
In re:                                      :   Chapter 11
                                            :
PROMISE HEALTHCARE GROUP, LLC, et al.,[1]   :   Case No. 18-12491 (_____)
                                            :
              Debtors.                      :   (Joint Administration Requested)
-------------------------------------------------------------x
```

## MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) EXTENDING THE TIME TO COMPLY WITH, OR SEEK A WAIVER OF, CERTAIN UNITED STATES TRUSTEE REQUIREMENTS AND SECTION 345(b) OF THE BANKRUPTCY CODE; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; (IV) GRANTING ADMINISTRATIVE EXPENSE PRIORITY TO POSTPETITION INTERCOMPANY CLAIMS; AND (V) GRANTING RELATED RELIEF

Promise Healthcare Group, LLC ("*Promise*") and its affiliated debtors and debtors in

possession (collectively, the "*Debtors*") in the above-captioned chapter 11 cases (the "*Chapter*

*11 Cases*"), by and through their undersigned counsel, file this motion (this "*Motion*") pursuant

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179),   Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766).  The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL  33431.

to Sections 105(a), 345, 363, 364, 503, and 507 of Title 11 of the United States Code (the "**_Bankruptcy Code_**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**_Bankruptcy Rules_**"), for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "**_Interim Order_**") and **Exhibit B** (the "**_Final Order_**," and together, the "**_Proposed Orders_**"): (i) authorizing the Debtors to continue to use their cash management system (the "**_Cash Management System_**") and bank accounts, as set forth below; (ii) extending the time to comply with, or seek a waiver of, certain bank account and related requirements of the Office of the United States Trustee (the "**_U.S. Trustee_**") and Section 345(b) of the Bankruptcy Code; (iii) authorizing the Debtors to continue their existing deposit practices under the Cash Management System (subject to certain reasonable changes to the Cash Management System that the Debtors may implement); and (iv) authorizing the Debtors to continue to perform Intercompany Transactions (as defined below) consistent with historical practice and granting administrative expense priority to Intercompany Claims (as defined below). In support of the Motion, the Debtors rely on and incorporate by reference the _Declaration of Andrew Hinkelman in Support of First Day Relief_ (the "**_First Day Declaration_**"), and respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the _Amended Standing Order of Reference_ from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**_Local Rules_**"), the Debtors consent to the entry of a final judgment or order with respect to the Motion

2

if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.     On the date hereof (the "***Petition Date***"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

3.     A description of the Debtors' businesses, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Declaration.

## RELIEF REQUESTED

4.     By this Motion, the Debtors request entry of the Proposed Orders authorizing the Debtors to continue to use their Cash Management System in the ordinary course and granting related relief.

5.     Specifically, the Debtors seek authority to: (i) maintain and continue to use the Bank Accounts (as defined below) in the same manner and with existing account numbers, styles, and document forms; (ii) deposit funds in, and withdraw funds from, the Bank Accounts by usual means, including check, wire transfer, automated clearinghouse ("***ACH***") transfer, draft, electronic fund transfer, centralized lockbox, or other items presented, issued, or drawn on the Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Bank Accounts; (iv) perform their obligations under the Bank Accounts' governing documents and agreements;

3

(v) treat the Bank Accounts for all purposes as "debtor in possession" accounts; and (vi) close any inactive accounts with zero balances.

6.      To maintain the efficient operation of the Cash Management System during these cases, the Debtors also request their Banks (as defined below) be authorized and directed to continue to administer, service, and maintain the Bank Accounts, as they were prepetition, without interruption and in the Debtors' ordinary course of business. In that regard, the Debtors seek to continue to receive, process, honor, and pay (or to reissue, as may be necessary) all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "*Disbursements*") on account of any claim this Court grants the Debtors approval to pay arising before, on, or after the Petition Date, and in reliance on the Debtors' representations of such authority, subject to the applicable Bank Accounts containing sufficient funds.

7.      Both here and in other first-day motions, the Debtors seek authority to pay certain prepetition obligations. For some of these obligations, the Debtors issued Disbursements before the Petition Date that have yet to clear. For others, the Debtors will issue a Disbursement once it has Court authority to do so. The Debtors request that their Banks be authorized to accept and honor all representations from the Debtors as to which of these Disbursements should be honored. If any Banks nevertheless dishonor Court-approved Disbursements, the Debtors request authority to issue replacement Disbursements consistent with the orders of this Court.

8.      Continuity of the Cash Management System is critical to the Debtors' business operations, but so is flexibility. To that end, the Debtors also request authority to implement reasonable changes to the Cash Management System that they deem necessary or appropriate in

the ordinary course, including closing any Bank Account and establishing new bank accounts, and that the applicable Banks be authorized to honor such changes.

9.      The Debtors maintain certain Bank Accounts do not comply with the requirements of Section 345(b) of the Bankruptcy Code and are maintained at Banks that are not authorized depositories.  Specifically, many of the Debtors' collection and operating accounts are maintained at City National Bank of Florida ("*City National Bank*").  The Debtors also maintain one café deposit account at Concordia Bank & Trust Co ("*Concordia*").  City National Bank and Concordia are both highly-rated financial institutions that are well-capitalized and financially stable, and the Bank Accounts maintained at City National Bank and Concordia are insured by the Federal Deposit Insurance Corporation (the "*FDIC*").  Requiring the Debtors to transfer the Bank Accounts to a designated authorized depository so early in these cases would place a needless administrative burden on the Debtors that would unnecessarily divert the attention of the Debtors' management and advisors at a critical junction in these Chapter 11 Cases.  Accordingly, the Debtors have requested that this Court extend the time to comply with, or seek a waiver of, certain U.S. Trustee guidelines and Section 345(b) of the Bankruptcy Code with respect to the Bank Accounts held at City National Bank and Concordia to forty-five (45) days from the Petition Date.

10.      Finally, the Debtors request authority to continue, in the ordinary course, certain transactions (the "*Intercompany Transactions*") between and among the Debtors including, for example, payments in connection with intercompany agreements, loans, or advances by or between Debtors, allocations of overhead, and other charges between and among the Debtors. The Intercompany Transactions provide substantial benefits to the Debtors and their estates and are necessary to maintain control over cash management among the Debtors and avoiding

5

substantial disruption to their business.  Furthermore, in order to avoid disruption to the Cash Management System, the Debtors request that all receivables and payables arising postpetition from such Intercompany Transactions (collectively, the "***Intercompany Claims***") be accorded administrative expense status.

**THE CASH MANAGEMENT SYSTEM**

11.    The Cash Management System is an integrated network of bank accounts that is critical to the Debtors' operations during these cases and, in turn, maximizing the value of the Debtors' estates. The Debtors have designed the Cash Management System to meet their operating needs, enable management to control and monitor corporate funds, comply with the requirements of their financing agreements, reduce administrative expenses by facilitating the movement of funds, and enhance the development of accurate account balances. The Debtors have maintained their Cash Management System since its inception, and the cash management system has served as the primary funds flow mechanism for the Debtors' ordinary, usual, and essential business operations.

12.    As of the Petition Date, the Cash Management System includes 120 bank accounts listed on **Exhibit C** to this Motion (each a "***Bank Account***" and collectively the "***Bank Accounts***") located at five commercial banks (collectively, the "***Banks***") used in the ordinary course of the Debtors' businesses. The Debtors routinely deposit, withdraw, and otherwise transfer money to, from, and between the Bank Accounts by various methods (collectively, the "***Ordinary Transfer Methods***"), including by checks, drafts, ACH transfers, and other electronic funds transfers. A general overview of the movement of cash through the Debtors' Cash Management System is illustrated by the flow of funds charts attached hereto as **Exhibit D**. The following is an overview of the Cash Management System and related Bank Accounts.

6

13.    The Company's primary accounts are held at City National Bank. These include the government and non-government lockbox accounts for each operating entity, master collection and disbursement accounts, payroll disbursement accounts, and operating disbursement accounts. Payor receipts are deposited into either the lockbox or resident fund management service accounts, as applicable, and non-payor receipts are deposited into operating accounts and café deposit accounts, as applicable. All payor receipts are then aggregated into three master collection accounts. Non-payor receipts are then aggregated into the three master disbursement accounts. Cash on hand in the master collection accounts is swept daily to the administrative agent (the "*Agent*") under certain of the Debtors' (the "*Debtor Borrowers*") prepetition senior secured revolver to pay down such revolver. The Debtor Borrowers then submit revolver advance requests to the Agent daily, and revolver proceeds are funded into the master disbursement account held in the name of Promise Healthcare, Inc. (the "*Promise Master Disbursement Account*").  Intercompany transfers are then made through the master disbursement accounts. Cash transfers to the master disbursement accounts via zero balance accounts, while cash transfers to accounts held by Promise Healthcare Group, LLC or Promise Healthcare Holdings, Inc. or to petty cash accounts via intercompany transfers.

## EXISTING BUSINESS FORMS AND CHECKS

14.    In the ordinary course of business, the Debtors use a variety of checks, correspondence, and business forms. To minimize expenses to their estates and avoid unnecessarily confusing their employees and creditors, the Debtors believe it is appropriate to continue to use the existing stock of checks, correspondence, and other business forms (including, without limitation, letterhead, purchase orders, and invoices) (collectively, the "*Business Forms*") as such forms were in existence immediately before the Petition Date—

7

without reference to the Debtors' statuses as debtors-in-possession—rather than disposing of the existing forms and delaying operations until new Business Forms are obtained, or requiring the Debtors to include a legend on their Business Forms that would cause unnecessary confusion. After existing Business Forms are depleted, the Debtors' Business Forms will identify the Debtors' statuses as debtors-in-possession.

## BANK FEES

15.     The Debtors incur periodic service charges and other fees in connection with the maintenance of the Cash Management System, which fees and services are generally paid each month (the "***Bank Fees***"). The Debtors have historically incurred Bank Fees of approximately $50,000 per month, which are debited from the respective Bank Account for which the Bank Fee was incurred. As of the Petition Date, the Debtors estimate that approximately $25,000 in Bank Fees have accrued and remain unpaid and seek permission to pay these Bank Fees and continue paying the Bank Fees in accordance with past practices.

## COMPLIANCE WITH SECTION 345(b) OF THE BANKRUPTCY CODE AND CERTAIN U.S. TRUSTEE GUIDELINES

16.     Debtors maintain bank accounts at Wells Fargo Bank, N.A., City National Bank, Concordia, Bank of America and JPMorgan Chase Bank.  Of those Banks, City National Bank and Concordia are not on the list of approved depository banks in this District.  Furthermore, while all of the Bank Accounts are insured by the FDIC, but the Bank Accounts are not bonded as required by Section 345(b) of the Bankruptcy Code.  As set forth below, the Debtors seek an extension of the time to comply with, or seek a waiver of, certain U.S. Trustee guidelines and Section 345(b) of the Bankruptcy Code with respect to the Bank Accounts held at City National Bank and Concordia to forty-five (45) days from the Petition Date.

## INTERCOMPANY TRANSACTIONS

17.     Debtors have historically and in the ordinary course of business engaged in routine business relationships with each other and certain of their affiliates. For example, each operating entity has its own lockbox accounts to collect cash receipts which are then aggregated into a master collection account held by that operating entity's parent. Likewise, the Promise Master Disbursement Account receives proceeds of the Debtors' prepetition revolver and distributes the cash to various other disbursement accounts, including petty cash accounts held by its subsidiaries. The Debtors track all fund transfers in their accounting systems and can ascertain, trace, and account for all Intercompany Transactions.  If the Intercompany Transactions were discontinued, the Cash Management System and the Debtors' operations could be unnecessarily disrupted to the detriment of the Debtors' estates, their creditors, and other stakeholders.

## BASIS FOR RELIEF REQUESTED

### A.     Continued Use of the Cash Management System Is Essential to the Debtors' Business Operations

18.     Section 363(c)(1) of the Bankruptcy Code permits a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor flexibility to operate their businesses without unnecessary creditor or court oversight. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (internal citation omitted). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue the "routine transactions" a debtor's cash management system requires. *In re*

9

*Amdura Corp.*, 75 F.3d 1447, 1453 (10th Cir. 1996) (indicating that a debtor is "generally authorized to continue operating its business," including performing "routine transactions necessitated by the [existing] cash management system.").

19.     Bankruptcy courts routinely permit chapter 11 debtors to continue using their existing cash management system. *See In re Columbia Gas Sys.*, 997 F.2d 1039, 1061 (3d Cir. 1993) (recognizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."); *Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing the debtors to use their prepetition "routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code).  In addition, in granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

20.     The Court may also rely on its equitable powers to grant the relief requested in this Motion. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court may authorize the continuation of the Cash Management System because such relief is necessary for the Debtors to carry out their fiduciary

duties under sections 1107(a) and 1108 of the Bankruptcy Code. Pursuant to sections 1107(a) and 1108, debtors in possession are fiduciaries holding the bankruptcy estate and operating the business for the benefit of their economic stakeholders. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Consistent with such fiduciary duties, courts have authorized payment of prepetition obligations where a sound business purpose justifies the payment of such claims.

21.    The Cash Management System is a customary and essential business practice of the Debtors and provides numerous benefits, including the ability to control and monitor corporate funds and ensure availability of cash to fund operations. The value of the Debtors' estates cannot be maximized if the Cash Management System is substantially disrupted. Additionally, preserving a "business as usual" atmosphere and avoiding the unnecessary distractions that inevitably would be associated with any substantial disruption of the Cash Management System will facilitate the stabilization of the Debtors' business operations.

22.    Parties in interest will not be harmed by the Debtors' maintenance of the existing Cash Management System, including the Bank Accounts, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred prior to the Petition Date. Specifically, with the assistance of their professional advisors and consistent with prior practice, the Debtors will continue to maintain detailed records of all transfers of cash and record all transactions on applicable accounts. Therefore, the Debtors should be permitted to continue to manage their cash and transfer monies among the Bank Accounts in accordance with the Cash Management System.

**B.    Continued Use of Existing Bank Accounts and Business Forms Should Be Permitted**

*1.    Use of Existing Bank Accounts and Payment of Bank Fees*

23.    Implementing the U.S. Trustee guidelines, including, without limitation, establishing one debtor in possession account for all estate monies required for the payment of taxes (including payroll taxes), closing all existing bank accounts and opening new debtor in possession accounts, maintaining a separate debtor in possession account for cash collateral, obtaining checks that bear the designation "debtor in possession," and referencing the bankruptcy case number and the type of account on such checks, would needlessly interrupt the Debtors' operations and impair the Debtors' efforts to preserve the value of their estates. Specifically, as a healthcare business that receives payments and reimbursements from government payors, the Debtors are required to maintain deposit accounts that are linked with specific healthcare providers. Modifying the Bank Accounts in any way would be a difficult and time-intensive effort in order to fully comply with applicable regulations and ensure continued receipt of receivables, timely collection of which will inure to the benefit of the Debtors' estates and creditors Thus, the Debtors respectfully request that the court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business. In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto. Notwithstanding the foregoing, any check, draft, or other notification that the Debtors advise the Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the court.

12

24.     The Debtors further request that the Court authorize the Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH Transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH Transfers are dated prior to or subsequent to the Petition Date. The Debtors also request that, to the extent a Bank honors a prepetition check or other item drawn on any Bank Account that is the subject of the Motion either (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored post-petition. The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

25.     In the ordinary course of business, the Banks charge, and the Debtors pay, honor, or allow the deduction of Bank Fees from the appropriate Bank Account. The Debtors respectfully request that the Court authorize the Banks to (a) continue to charge the Debtors the Bank Fees and (b) charge-back returned items to the Bank Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business. The Debtors further request that the Court order that liens on any of the Bank Accounts granted to creditors will not have priority over the Bank Fees of the respective Bank at which the Bank Account is located.

26.     Although the Debtors are requesting to be excused from complying with the requirement that they close all Bank Accounts and open new debtor in possession bank

13

accounts, the Debtors may determine, in their business judgment, that opening new bank accounts and closing existing Bank Accounts may be in the best interests of the estates. As such, the Debtors request that nothing contained herein shall prevent the Debtors from opening any additional bank accounts, or closing any existing Bank Accounts, as they may deem necessary and appropriate in their sole discretion, so long as any new account is established at a bank insured with the FDIC and that is organized under the laws of the United States or any State therein, or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, is on the U.S. Trustee's List of Approved Depositories for the District of Delaware.

*2.*      *Use of Existing Business Forms*

27.      The Debtors use numerous Business Forms in the ordinary course of their businesses. As mentioned above, the Debtors request authority to continue using their existing prepetition Business Forms without reference to their status as debtors in possession or any other alteration, until the Business Forms are depleted.

28.      The Debtors will issue, and will instruct third parties issuing checks on their behalf to issue checks bearing the legend "Debtors in Possession" after the existing supply of checks is depleted and it is reasonably practicable for the Debtors or such third parties to do so.

**C.      The Requested Extension of Time to Comply with, or Seek a Waiver of, Section 345 of the Bankruptcy Code and the UST Guidelines Should Be Granted.**

29.      The UST Guidelines generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's office. The Debtors maintain Bank Accounts at Wells Fargo Bank, N.A., City National Bank, Concordia, Bank of America and JPMorgan Chase Bank.  City National Bank and Concordia are not authorized depositories under the U.S. Trustee guidelines.

14

30.     Although City National Bank and Concordia are not authorized depositories, they are highly-rated financial institutions that are well-capitalized and financially stable. Notwithstanding that City National Bank and Concordia have not qualified for "authorized depository" designation, the Debtors believe City National Bank and Concordia are well-positioned to continue to perform the depository and cash management functions for the Debtors during the Chapter 11 Cases.

31.     As described above, the Debtors' Cash Management System is critical to the ongoing stability of the Debtors' business and transition into chapter 11. Requiring the Debtors to transfer the Bank Accounts to a designated authorized depository would place a needless administrative burden on the Debtors that would unnecessarily divert the attention of the Debtors' management at a critical junction in these Chapter 11 Cases.

32.     In addition, strict compliance with the requirements of section 345(b) of the Bankruptcy Code would, in cases such as this, be inconsistent with section 345(a), which permits a debtor in possession to make such investments of money of the estate "as will yield the maximum reasonable net return on such money." Thus, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) of the Bankruptcy Code to provide that its strict investment requirements may be waived or modified if the Court so orders "for cause." 140 Cong. Rec. H. 10,767 (Oct. 4, 1994), 1994 WL 54773.

33.     Here, the Bank Accounts are domestically held at well-capitalized and financially-stable institutions insured by the Federal Deposit Insurance Corporation.  Thus, the Debtors believe that any funds that are deposited in the Bank Accounts are secure.  Moreover, the Cash Management System reflects a disciplined and prudent strategy, permitting the Debtors to balance the need to maximize returns on excess cash while ensuring that such excess cash is

readily available for use in the Debtors' business operations. Requiring the Debtors to bond the Bank Accounts, as contemplated by section 345(b) of the Bankruptcy Code (unless the court orders otherwise), would impose considerable costs on the Debtors and their estates and would hamper the Debtors' already pressed liquidity needs.

34.     For the foregoing reasons, the Debtors request a forty-five (45)-day extension set to comply with the U.S. Trustee guidelines and Section 345(b) of the Bankruptcy Code, seek a waiver of the U.S. Trustee guidelines and Section 345(b) requirements, or make other acceptable arrangements, subject to this Court's approval.

**D.     The Debtors Should Be Authorized to Continue Intercompany Transactions in the Ordinary Course of Business**

35.     As noted above, the Intercompany Transactions are made between and among the Debtors in the ordinary course. As a result, at any given time there may be intercompany claims between the Debtors. Because the Debtors engage in the Intercompany Transactions regularly and such transactions are common among enterprises such as the Debtors, the Intercompany Transactions are ordinary course transactions under Section 363(c)(1) of the Bankruptcy Code and do not require Court approval. Nonetheless, out of an abundance of caution, the Debtors seek authority to engage in such transactions post-petition.

36.     Moreover, ordinary-course Intercompany Transactions are integral to ensure the Debtors are able to operate their businesses as debtors in possession and to preserve valuable estate assets. Absent the Intercompany Transactions, the Cash Management System would be severely disrupted, and the Debtors' businesses in turn would be materially harmed. The Debtors would be unable to centralize and control cash management, exposing the Debtors to the risks of cash leakage and misallocation of critical resources. Moreover, the Intercompany Transactions provide the Debtors access to liquidity that may be necessary to fund ongoing

16

operations. Accordingly, the Debtors respectfully submit that the authority to make Intercompany Transactions in the ordinary course is in the best interest of their estates.

37.     Further, the Debtors also request that the Court grant administrative expense status to all Intercompany Claims against a Debtor by another Debtor that arise postpetition as a result of an Intercompany Transaction. If Intercompany Claims are accorded such status, each entity using funds that flow through the Cash Management System will continue to bear the ultimate responsibility for their ordinary-course transactions with affiliates. *See, e.g.*, *In re Real Mex Restaurants, Inc.*, No. 11-13122 (BLS) (Bankr. D. Del. Oct. 5, 2011) (approving intercompany transactions and according administrative priority status to intercompany claims arising after the petition date as a result of such intercompany transactions); *In re Appleseed's Intermediate Holding LLC*, No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011) (allowing debtors to engage in intercompany transactions and to honor and pay obligations in connection with such transactions and according administrative expense priority to claims arising out of such intercompany transactions); *In re Fairfield Residential LLC*, No. 09-14378 (BLS) (Bankr. D. Del. Dec. 15, 2009); *In re Leiner Health Prods. Inc.*, No. 08-10446 (KJC) (Bankr. D. Del. Mar. 12, 2008).

38.     Further similar relief has been recently granted in this jurisdiction. *See, e.g.*, *In re ATD Corp.*, Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 5, 2018) [D.I. 101] (order authorizing continued use of cash management system); *In re Welded Construction, L.P.*, Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) [D.I. 37] (same); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 3, 2018) [D.I. 66] (same); *In re ONE Aviation Corp.*, Case No. 18-12309 (CSS) (Bankr. D. Del. Oct. 11, 2018) [D.I. 42] (same); *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. Mar. 28, 2018) [D.I.

109] (same); *In re Open Roads Films*, Case No. 18-12012 (LSS) (Bankr. D. Del. Sept. 7, 2018) [D.I. 43] (same).[2]

39.    The Debtors' funds are aggregated in the Cash Management System. The Debtors track all fund transfers in the Company's accounting system and have the ability to identify and account for all Intercompany Transactions, including all cash receipts and disbursements. Continuation of the Intercompany Transactions is in the best interests of the Debtors, their estates, and parties in interest. To ensure that any one Debtor will not fund, at the expense of their creditors, the operations of any other Debtor, the Debtors request that, pursuant to Sections 503(b)(1) and 364(b) of the Bankruptcy Code, all Intercompany Claims arising after the Petition Date be accorded administrative expense priority. The Debtors anticipate that administrative intercompany claims will be recorded on the Company's books and records and not cash settled.

## REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

40.    Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition. . . ." Fed. R. Bankr. P. 6003(b); *see also Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts can approve orders that

---

[2] The referenced orders are voluminous in nature and, therefore, are not attached to this Motion; however, in accordance with Local Rule 7007-2, as made applicable to main cases by the Court's General Chambers Procedures, the Debtors' proposed counsel has copies of each order and will make them available to the Court or to any party that requests them.  Additionally, the Orders are available on the Court's CM/ECF PACER site at the cited docket index numbers and on the dates specified above.

allow payment of prepetition debt, which is necessary for the debtors to reorganize and restructure their debts and maximize the value of the bankruptcy estate).

41.    Failure to receive the authorization and other relief requested in this Motion during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture.  The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein in order for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

42.    To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a). Furthermore, to implement the foregoing immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, uninterrupted use of the Cash Management System is essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## **RESERVATION OF RIGHTS**

43.      Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under § 365 of the Bankruptcy Code. If this Court grants the relief requested in this Motion, any Court authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## **NOTICE**

44.      The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to Wells Fargo, N.A., as administrative agent under the Debtors' prepetition credit facility; (iv) the Internal Revenue Service; (v) the United States Attorney for the District of Delaware; (vi) the United States Department of Justice; (vii) the State Attorney General's Office in each state where the Debtors operate; (viii) the Banks; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "***Notice Parties***").  As this Motion is seeking "first day" relief, notice of this Motion and any order entered in connection with the Motion will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtors respectfully submit that no further notice of this Motion is required.

*[Remainder of Page Intentionally Left Blank]*

20

EAST\162240421.1

**WHEREFORE**, the Debtors respectfully request entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: November 5, 2018
Wilmington, Delaware

DLA PIPER LLP (US)

/s/ *Stuart M. Brown*
Stuart M. Brown (#4050)
Kaitlin MacKenzie Edelman (#5924)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@dlapiper.com
        Kaitlin.Edelman@dlapiper.com

-and-

WALLER LANSDEN DORTCH & DAVIS, LLP
John Tishler (*pro hac vice* admission pending)
Katie G. Stenberg (*pro hac vice* admission pending)
Blake D. Roth (*pro hac vice* admission pending)
Tyler N. Layne (*pro hac vice* admission pending)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: John.Tishler@wallerlaw.com
        Katie.Stenberg@wallerlaw.com
        Blake.Roth@wallerlaw.com
        Tyler.Layne@wallerlaw.com

*Proposed Attorneys for the Debtors and*
*Debtors in Possession*