**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x
:
In re: : Chapter 11
:
PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1] : Case No. 18-12491 (_____)
:
Debtors. : (Joint Administration Requested)
---------------------------------------------------------------x

### MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (I) MAINTAIN, ADMINISTER, MODIFY, AND RENEW THEIR REFUND PROGRAMS AND PRACTICES AND (II) HONOR OBLIGATIONS RELATED THERETO

Promise Healthcare Group, LLC ("***Promise***") and its affiliated debtors and debtors in possession (collectively, the "***Debtors***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), by and through their undersigned counsel, file this motion (this "***Motion***") pursuant to sections 105(a), 363, 503(b)(1), 507(a), 1107(a), and 1108 of title 11 of the United States Code (the "***Bankruptcy Code***"), for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "***Interim Order***") and **Exhibit B** (the "***Final Order***" and

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

together, the "*Proposed Orders*"), authorizing the Debtors to (i) maintain, administer, modify, and renew their refund programs and practices and (ii) honor obligations related thereto. In support of the Motion, the Debtors rely on and incorporate by reference the *Declaration of Andrew Hinkelman in Support of First Day Relief* (the "*First Day Declaration*"),[2] and respectfully represent as follows:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*"), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.  On the date hereof (the "*Petition Date*"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

---

[2] Capitalized terms not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration.
4849-9377-8534

2

3. A description of the Debtors' businesses, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Declaration filed contemporaneously herewith.

## RELIEF REQUESTED

4. By this Motion, the Debtors request entry of the Proposed Orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) authorizing the Debtors (i) to maintain, administer, modify, and renew their Refund Program (as defined herein) and make payments to patients and allow offsets by Third-Party Payors (as defined herein) or to otherwise honor accrued prepetition obligations owed under their Refund Program (collectively, and as identified herein, the "*Refund Program Obligations*") and (ii) to continue, replace, modify, or terminate any Refund Program in the ordinary course of business, (b) authorizing and directing financial institutions to receive, process, honor, and pay all related checks and electronic payment requests for payment of Refund Program Obligations, (c) scheduling a final hearing to consider approval of this Motion on a final basis, and (d) granting related relief.

## THE DEBTORS' REFUND PROGRAM

5. Various state and federal laws require the Debtors to refund patients and third-party payors, including healthcare insurers, managed care organizations, workers' compensation programs, contract management services, private pay sources, Medicare, and Medicaid (collectively, "*Third-Party Payors*"), when overpayments are identified. In the ordinary course of business, the Debtors routinely issue refunds or are subject to offsets for reimbursement of overpayments made by or on behalf of patients resulting from the interaction between the Debtors' billing procedures, patient medical insurance deductibles, and third-party payments (the "*Refund Program*").

4849-9377-8534

3

EAST\162240422.1

6.    The case-by-case nature of the Debtors' medical services makes the process of determining each patient's insurance coverage particularly complex. As a result, whether due to data input errors during claims processing, or overpayments arising from coordination-of-benefits issues among multiple insurers, patient accounts—once fully processed—may contain credit balances. Once the Debtors receive payments from patients or insurers, the Debtors review accounts that have credit balances and refund any surplus to the patient or are subject to an offset to the Third-Party Payor's receivable balance based on an overpayment.

7.    When the Debtors discover and verify an overpayment from a patient or Third Party Payor, the amount of the overpayment is reviewed in the Debtors' billing system, which then administers refunds to the patient as appropriate. Offsets by Third-Party Payors are reconciled by the Debtors after the offset occurs. There is typically a significant lag between when the patient is treated, when the overpayment is recognized or determined, and when the overpayment is reviewed in the Debtors' billing system. After the overpayment amount is determined, either the Debtors issue a check or other form of payment to the patient or the Third Party Payor offsets future receivables in the amount of the overpayment.

8.    At any given time, it is difficult to determine the amount of outstanding overpayments that have been made and identified, but for which a refund check or offset has not yet been issued. Moreover, some refund checks issued to patients before the petition date may not have been presented for payment or may not have cleared the Debtors' banking system or accounting system and, accordingly, have not been honored and paid as of the petition date. Nonetheless, the Debtors are required, under the laws of various states, to reimburse patients and Third-Party Payors as overpayments are identified. The Debtors estimate that approximately

$300,000 in refunds to patients or Third-Party Payor offsets are processed in a given month, although larger amounts of refunds may be due and owing at any given time.

9. As of the Petition Date, the Debtors estimate that approximately $4.5 million in refunds and credit balances may be due and owing under the Refund Program, of which approximately $300,000 could become due and owing during the first 21 days of these Chapter 11 Cases. The Debtors request authority to pay and allow offsets up to $300,000 in Refund Program Obligations, in the ordinary course of business on an interim basis, pending entry of the Final Order granting the relief requested herein, and to continue to issue and pay and allow offsets for the Refund Program Obligations to patients and Third-Party Payors, including refunds for overpayments made prepetition or resulting from prepetition services in the ordinary course of business, on a post-petition basis.

## BASIS FOR RELIEF

10. Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing. 11 U.S.C. § 363(c)(1). In the alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted) (requiring only that the debtor "show that a sound business purpose" justifies the proposed use of property); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the Bankruptcy Code). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as

distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

11. Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity." 11 U.S.C. § 105(a). The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan). Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this court may grant the relief requested herein.

12. The necessity of the Refund Program in the medical services industry cannot be overstated. Failure to honor the Refund Program Obligations would likely cause the Debtors to lose a significant number of payors and patients, which would damage their reputation for reliability, thereby resulting in a long-term decline in business. Additionally, if the Refund

Program Obligations are not honored, the Debtors may face legal sanctions or be liable for fines in the jurisdictions in which they operate. Thus, the Refund Program is necessary for the Debtors to remain competitive and maintain their patient base at this critical juncture.

13. The failure to honor the Refund Program could erode the Debtors' hard-earned reputation, adversely affecting the Debtors' prospects for a successful reorganization.

14. Similar relief has been recently granted in this jurisdiction. *See, e.g.*, *In re ATD Corp.*, Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 5, 2018) [D.I. 107] (authorizing the continuance of customer programs); *In re Welded Construction, L.P.*, Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) [D.I. 42] (same); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 3, 2018) [D.I. 71] (same); *In re ONE Aviation Corp.*, Case No. 18-12309 (CSS) (Bankr. D. Del. Oct. 11, 2018) [D.I. 46] (same); *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. Mar. 28, 2018) [D.I. 113] (same); *In re J & M Sales, Inc.*, Case No. 18-11801 (LSS) (Bankr. D. Del. Aug. 7, 2018) [D.I. 84] (same).[3]

### PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED

15. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. Also, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment made relating to the Refund Program Obligations. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments,

---

[3] The referenced orders are voluminous in nature and, therefore, are not attached to this Motion; however, in accordance with Local Rule 7007-2, as made applicable to main cases by the Court's General Chambers Procedures, the Debtors' proposed counsel has copies of each order and will make them available to the Court or to any party that requests them. Additionally, the Orders are available on the Court's CM/ECF PACER site at the cited docket index numbers and on the dates specified above.

4849-9377-8534

7

will not be honored inadvertently and that this Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

### REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

16. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding … a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition …." Fed. R. Bankr. P. 6003(b). Further, the approval of this type of relief is appropriate and within the Court's power to authorize under sections 363(b) and 105(a) of the Bankruptcy Code pursuant to the "doctrine of necessity." *See Czyewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts are authorized to approve orders allowing payment of prepetition claims, which is necessary for the debtors to have a successful reorganization).

17. The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

### REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

18. To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Rule 6004(a) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"). Furthermore, to implement the foregoing immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property

other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the immediate payment of amounts owed on account of the Refund Program is essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

19. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## NOTICE

The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to Wells Fargo, N.A., as administrative agent under the Debtors' prepetition credit facility; (iv) the Internal Revenue Service; (v) the United States Attorney for the District of Delaware; (vi) the United States Department of Justice; (vii) the State Attorney General's Office in each state where the Debtors operate; (viii) the Debtors' depository banks; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "***Notice Parties***"). As this Motion is seeking "first day" relief, notice of this Motion and any order entered in

connection with the Motion will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtors respectfully submit that no further notice of this Motion is required.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtors respectfully request entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: November 5, 2018<br>Wilmington, Delaware | DLA PIPER LLP (US)<br><br>/s/ *Stuart M. Brown*<br>Stuart M. Brown (#4050)<br>Kaitlin MacKenzie Edelman (#5924)<br>1201 N. Market Street, Suite 2100<br>Wilmington, DE 19801<br>Telephone: (302) 468-5700<br>Facsimile: (302) 394-2341<br>Email: Stuart.Brown@dlapiper.com<br>          Kaitlin.Edelman@dlapiper.com<br><br>-and-<br><br>WALLER LANSDEN DORTCH & DAVIS, LLP<br>John Tishler (*pro hac vice* admission pending)<br>Katie G. Stenberg (*pro hac vice* admission pending)<br>Blake D. Roth (*pro hac vice* admission pending)<br>Tyler N. Layne (*pro hac vice* admission pending)<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br>Telephone: (615) 244-6380<br>Facsimile: (615) 244-6804<br>Email: John.Tishler@wallerlaw.com<br>          Katie.Stenberg@wallerlaw.com<br>          Blake.Roth@wallerlaw.com<br>          Tyler.Layne@wallerlaw.com<br><br>*Proposed Attorneys for the Debtors and Debtors in Possession* |