**Exhibit A**

**(Proposed Interim Order)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------------x
:
In re: : Chapter 11
:
PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1] : Case No. 18-12491 (_____)
:
Debtors. : (Joint Administration Requested)
:
-------------------------------------------------------------------x **Related D.I.: __**

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY OR HONOR
PREPETITION OBLIGATIONS TO CERTAIN CRITICAL VENDORS AND
(II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND
TRANSFERS RELATED TO SUCH CRITICAL VENDORS OBLIGATIONS**

This matter coming before the Court on the *Motion of the Debtors for Entry of Interim and*

*Final Orders (I) Authorizing the Debtors to Pay or Honor Prepetition Obligations to Certain*

*Critical Vendors and (II) Authorizing Banks to Honor and Process Checks and Transfers Related*

*to Such Critical Vendor Obligations* (the "***Motion***"),[2] filed by the above-captioned debtors

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

[2] Capitalized terms not otherwise defined in this Interim Order shall have the meanings ascribed to such terms in the Motion.

4842-6295-9993

1

(collectively, the "***Debtors***"), for entry of an interim order, pursuant to sections 105(a), 363(b), 364, 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004(h), (i) authorizing, but not directing, the Debtors to pay prepetition claims of certain critical vendors up to $2 million (the "***Interim Cap***") prior to the date of the final hearing (the "***Final Hearing***") on the Motion (the "***Interim Period***") and (ii) authorizing and directing the applicable banks and financial institutions to honor all related checks and electronic payment requests; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion being adequate and appropriate under the particular circumstances; the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at the hearing; after due deliberation, and good and sufficient cause having been shown,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth in this Interim Order.

2.      The Debtors are authorized, but not directed in the reasonable exercise of their business judgment, to pay all or a portion of the Critical Vendor Claims, subject to the terms and conditions set forth in this Interim Order, in an amount not to exceed $2 million in the aggregate on an interim basis, unless otherwise ordered by the Court.

3.      After the date hereof, the Debtors shall determine who is a Critical Vendor by considering, among other things, whether failure to pay such creditor's prepetition claims will have a material impact on the Debtors' operations and the other criteria set forth in the Motion.

4842-6295-9993

EAST\162240420.1

4.      The Debtors are authorized, but not directed, to negotiate the supply of goods or services to the Debtors from the Critical Vendors on trade terms that are the same or better than the trade terms that existed immediately prior to the Petition Date (the "*Customary Trade Terms*"). The Debtors reserve the right to negotiate new trade terms (the "*Minimum Credit Terms*") with any Critical Vendor, as a condition to payment of any Critical Vendor Claim, that vary from the Customary Trade Terms, to the extent the Debtors determine that such terms are necessary to procure essential goods or services or otherwise in the best interests of the Debtors' estates.

5.      To ensure that the Critical Vendors deal with the Debtors on either Customary Trade Terms or Minimum Credit Terms, the Debtors are authorized, but not directed, to undertake appropriate efforts to cause Critical Vendors to enter into Trade Agreements with the Debtors substantially in the form of the agreement that is annexed to this Interim Order as Exhibit 1, as a condition of payment of its Critical Vendor Claims.

6.      Except as set forth in this Interim Order, the Debtors are authorized to make payments on account of Critical Vendor Claims in the absence of a Trade Agreement if the Debtors determine, in their business judgment, that failure to pay such Critical Vendor Claims presents a material risk of irreparable harm to the Debtors' businesses and there is no reasonable likelihood that the Debtors will negotiate an acceptable Trade Agreement with the applicable vendors and/or service providers.

7.      As a further condition of receiving payment on a Critical Vendor Claim, the Debtors are authorized, in their discretion, to require that such Critical Vendor agree to take whatever action is necessary to remove or withdraw, or await the right to assert, any Lien, Reclamation Claim or 503(b)(9) Claim, in each case, at such Critical Vendor's sole cost and expense on account of the paid Critical Vendor Claim; *provided*, *however*, that such Critical

Vendor may reserve the right to reinstate such Lien in the event that the payment from the Debtors is reversed.

8. If a Critical Vendor under a Trade Agreement refuses to supply goods and/or services to the Debtors on Customary Trade Terms or Minimum Credit Terms following receipt of payment on its Critical Vendor Claim or otherwise fails to comply with any Trade Agreement entered into between such Critical Vendor and the Debtors, then the Debtors may (a) declare that any Trade Agreement is immediately terminated without further order of this Court and return the parties to the positions they held immediately prior to entry of this Interim Order with respect to all prepetition claims including, but not limited to, seeking recovery or disgorgement of any payment made to such Critical Vendor on account of its Critical Vendor Claims to the extent that such payments exceeded the postpetition claims of such Critical Vendor, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or other defense, and (b) seek leave of the Court to recharacterize payments made to the Critical Vendor on account of its Critical Vendor Claim to have been in payment of then-outstanding (or subsequently accruing) postpetition claims of such Critical Vendor.  Nothing in this Interim Order shall constitute a waiver of the Debtors' rights to seek damages or other appropriate remedies against any breaching Critical Vendor.

9. Notwithstanding the foregoing, the Debtors may, in their discretion, reinstate a Trade Agreement if the underlying default under the Trade Agreement is fully cured by the Critical Vendor not later than five (5) business days following the Debtors' notification to the Critical Vendor of such default had occurred; or the Debtors, in their discretion, reach a favorable alternative agreement with the Critical Vendor.

10.      The Debtor shall maintain a matrix summarizing (a) the name of each Critical Vendor, (b) the amount paid to each Critical Vendor on account of its Critical Vendor Claim, and (c) the goods or services provided by such Critical Vendor.  This matrix will be provided as requested to counsel and financial advisors to the DIP Administrative Agent and the DIP Lenders.

11.      Nothing in this Interim Order shall be construed to limit, or in any way affect, the Debtors' ability to dispute any Critical Vendor Claim.

12.      Nothing in the Motion or this Interim Order, or the Debtors' payment of any claims pursuant to this Interim Order, shall be deemed or construed as:  (a) an admission as to the validity of any claim or lien against the Debtors or their estates or an undertaking, obligation, or commitment to pay claims hereunder; (b) a waiver of the Debtors' right to dispute the extent, perfection, priority, validity, or amount of any claim or lien; (c) an assumption, adoption, approval, or rejection of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (d) an admission of the priority status of any claim, whether under section 503(b)(9) of the Bankruptcy Code or otherwise; or (e) a modification of the Debtors' rights to seek relief under any section of the Bankruptcy Code on account of any amounts owed or paid to any Critical Vendor.

13.      The amount of each Critical Vendor's Critical Vendor Claims set forth in connection with a Trade Agreement shall be used only for purposes of determining such Critical Vendor's claim under this Interim Order and shall not be deemed a claim allowed by the Court, and the rights of all interested persons to object to the extent, perfection, priority, validity, or amount of any claim or any lien securing such claim shall be fully preserved until further order of the Court.  Further, signing a Trade Agreement containing a claim amount for purposes of this Interim Order shall not excuse such Critical Vendor from filing a proof of claim in these cases.

14.     Nothing contained in this Interim Order shall be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and a Critical Vendor.  Notwithstanding the relief granted in this Interim Order and any actions taken hereunder, nothing in this Interim Order shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by any person.

15.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment made, deposit or other transfer made under this Interim Order, any authorization contained in this Interim Order, or any claim for which payment is authorized hereunder, shall be subject to, and limited by, the terms and provisions of any orders of this Court approving any postpetition, debtor-in-possession financing for, or any use of cash collateral by, the Debtors and any budget (subject to permitted variances thereto) approved in connection therewith.  To the extent there is any inconsistency between the terms of any order of this Court approving any postpetition, debtor-in-possession financing for, or any use of cash collateral by, the Debtors and any action taken or proposed to be taken hereunder, the terms of such cash collateral and debtor-in-possession financing orders shall control.

16.     The authorization granted hereby to pay Critical Vendor Claims shall not create any obligation on the part of the Debtors or their officers, directors, attorneys or agents to pay the Critical Vendor Claims, none of the foregoing persons shall have any liability on account of any decision by the Debtors not to pay a Critical Vendor Claim, and nothing contained in this Interim Order shall be deemed to increase, reclassify, elevate to an administrative expense status or otherwise affect the Critical Vendor Claims to the extent they are not paid.

17.     The Debtors' banks and financial institutions shall be and hereby are authorized and directed to receive, process, honor and pay all checks and fund transfers on account of the

4842-6295-9993

6

EAST\162240420.1

Critical Vendor Claims that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.  The Debtors' banks and other financial institutions are authorized to rely on the representations of the Debtors as to which checks and fund transfers are authorized to be honored and paid pursuant to this Interim Order.

18.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Interim Order or any payment made pursuant to this Interim Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity or priority of any claim or lien against the Debtors, (b) a waiver of the Debtors' rights to subsequently dispute such claim or lien, (c) an undertaking, obligation, or commitment to pay any claims hereunder, or (d) the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

19.     If this Court grants the relief sought in the Motion, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently, nor should it be construed as consent to the amount of any claim by a Critical Vendor.  The Debtors retain the sole discretion whether to pay any claim that the Court authorizes under this Interim Order.

20.     The Final Hearing on the Motion shall be held on _____, 2018 at _____ (Eastern Time) and any objections or responses to the Motion shall be in writing, filed with the Court, with a copy to chambers, and served upon (i) the proposed attorneys for the Debtors: (a) DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, Attn: Stuart Brown (stuart.brown@dlapiper.com); and (b) Waller Lansden Dortch & Davis, LLP, 511 Union Street, Suite 2700, Nashville, TN 37219, Attn:  John Tishler

(john.tishler@wallerlaw.com); (ii) the Office of the United States Trustee, J. Caleb Boggs Federal

Building, 844 King St., Lockbox 35, Wilmington DE 19801 (Attn: Brya Keilson

(brya.keilson@usdoj.com); (iii) counsel for Wells Fargo: (a) McGuireWoods LLP, 1251 6th Ave,

20th floor, New York, NY 10020, Attn: Brian Swett (bswett@mcguirewoods.com); and

(b) Richards, Layton & Finger, PA, 920 N King St, Wilmington, Delaware 19801, Attn: John

Knight (knight@rlf.com); and (iv) counsel to any statutory committee of unsecured creditors.

21.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b)

because the relief granted in this Interim Order is necessary to avoid immediate and irreparable

harm to the Debtors' estates.

22.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim

Order are immediately effective and enforceable upon its entry.

23.     The Debtors are hereby authorized to take such actions and to execute such

documents as may be necessary to implement the relief granted by this Interim Order.

24.     This Court shall retain jurisdiction with respect to all matters arising from or related

to the implementation and interpretation of this Interim Order.


 Dated: _____, 2018
         Wilmington, Delaware


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

## (Proposed Trade Agreement)

4842-6295-9993
EAST\162240420.1

_____, 2018

TO:   [Critical Vendor]
      [Name]
      [Address]

**<u>Trade Agreement</u>**

As you may be aware, on November 5, 2018 (the "<u>Petition Date</u>"), Promise Healthcare Group, LLC, together with certain of its affiliates (collectively, the "<u>Debtors</u>"), filed voluntary petitions (the "Bankruptcy Cases") under chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On the Petition Date, we requested the Bankruptcy Court's authority to pay certain vendors and service providers in recognition of the importance of our relationship with such vendors and service providers. On _____, 2018, the Bankruptcy Court entered an order (the "<u>Order</u>") authorizing us, under certain conditions, to pay pre-bankruptcy claims of certain vendors and service providers that agree to be bound by the terms of the Order and to the terms set forth below. A copy of the Order is enclosed.

To receive payment on pre-bankruptcy claims, we require you to agree to supply goods and/or services to the Debtors based on "Customary Trade Terms." Customary Trade Terms are trade terms that are the same or better than the trade terms that existed immediately prior to the Petition Date.

For purposes of administration of this trade program as authorized by the Bankruptcy Court (the "<u>Trade Payment Program</u>"), the Debtors and you agree as follows:

1.    For purposes of this Trade Agreement, the estimated balance of your prepetition claim (accounting for any setoffs, credits or discounts) (the "<u>Prepetition Claim</u>") is $_____. The Prepetition Claim will be paid as follows: **[_____].** Notwithstanding our agreement to pay the Prepetition Claim, it will be necessary for you to file a proof of claim in the Bankruptcy Cases to officially evidence the Prepetition Claim. You will receive notice of the bar date for **filing a proof of claim** at a later date. You hereby agree to accept payment in the amount of the Prepetition Claim in full and complete satisfaction of any and all amounts owed to you by the Debtors for the period ending on the Petition Date, and you hereby waive any right to assert or seek payment of any amount for the period prior to the Petition Date that exceeds the Prepetition Claim. In particular, you agree that your proof of claim will not be filed in an amount that exceeds the Prepetition Claim.

2.    The open trade balance or credit line that you will extend to the Debtors for delivery of postpetition goods or performance of postpetition services is $_____ (which shall not be less than the greater of the open trade balance outstanding: (a) on _____, 2018, or (b) on normal and customary terms on an historical basis for the period prior to the Petition Date.

3.  In consideration for the payment described herein, you agree not to file or otherwise assert against any or all of the Debtors, their estates or any other person or entity or any of their respective assets or property (real or personal) any lien (a "Lien"), a claim for reclamation (a "Reclamation Claim"), or a claim under section 503(b)(9) of the Bankruptcy Code (a "503(b)(9) Claim"), regardless of the statute or other legal authority upon which such Lien, Reclamation Claim, or 503(b)(9) Claim may be asserted, related in any way to any remaining prepetition amounts allegedly owed to you by the Debtors arising from agreements or other arrangements entered into prior to the Petition Date; and, to the extent you have already obtained or otherwise asserted such a Lien, Reclamation Claim, or 503(b)(9) Claim, you shall take (at your own expense) whatever actions are necessary to remove such Lien or withdraw such Reclamation Claim or 503(b)(9) Claim unless your participation in the Trade Payment Program authorized by the Order is terminated.

4.  If your Prepetition Claim arises under a contract with the Debtors, you also agree not to file a motion to compel assumption or rejection of the contract.

5.  You will hereafter extend to the Debtors all Customary Trade Terms, which are:

**[ADD INDIVIDUALIZED SET OF CUSTOMARY TRADE/SERVICE TERMS OR ATTACH/CROSS-REFERENCE TERM FROM EXISTING AGREEMENT]**

Payment of your Prepetition Claim in the manner set forth in the Order may occur upon execution of this letter by a duly authorized representative of your company and the return of this letter to the Debtors.  Your execution of this letter agreement and the return of the same to the Debtors constitute an agreement by you and the Debtors:

a.  to the Customary Trade Terms and, subject to the reservations contained in the Order, to the amount of the Prepetition Claim set forth above;

b.  that, for at least during the pendency of the Bankruptcy Cases, you will continue to supply the Debtors with goods and/or services under the Customary Trade Terms and any terms set forth herein and that the Debtors will pay for such goods and/or services in accordance with the terms hereof;

c.  that you have reviewed the terms and provisions of the Order and acknowledge that you are bound by such terms; and

d.  that if either the Trade Payment Program or your participation therein terminates as provided in the Order, any payments received by you on account of your Prepetition Claim will be deemed to have been in payment of postpetition obligations owed to you and you will immediately repay to the Debtors any payments made to you on account of your Prepetition Claim to the extent that the aggregate amount of such payments exceed the postpetition obligations, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or other defense.

4842-6295-9993

1

EAST\162240420.1

2

The Debtors and you also hereby agree that any dispute with respect to this agreement, the Order and/or your participation in the Trade Payment Program shall be determined by the Bankruptcy Court.

Please indicate your agreement to the terms hereof by returning a signed copy of this letter to [Name] at (___)_____ or [Name] (___)_____.

Sincerely,


[Debtor]
By:
Its:


Agreed and Accepted by:
[Name of Critical Vendor/Service Provider]
By:
Its:
Dated:

4842-6295-9993

2

EAST\162240420.1