**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x
: 
In re: : Chapter 11
: 
PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1] : Case No. 18-12491 (_____)
: 
Debtors. : (Joint Administration Requested)
---------------------------------------------------------------x

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND
FINAL ORDERS AUTHORIZING THE DEBTORS TO (I) CONTINUE
INSURANCE COVERAGE ENTERED INTO PREPETITION AND SATISFY
PREPETITION OBLIGATIONS RELATED THERETO; (II) RENEW,
AMEND, SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE POLICIES;
(III) HONOR THE TERMS OF THE PREMIUM FINANCING AGREEMENTS
AND PAY PREMIUMS THEREUNDER; AND (IV) ENTER INTO NEW PREMIUM
FINANCING AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS**

Promise Healthcare Group, LLC ("*Promise*") and its affiliated debtors and debtors in possession (collectively, the "*Debtors*") in the above-captioned chapter 11 cases (the "*Chapter 11 Cases*"), by and through their undersigned counsel, file this motion (this "*Motion*") pursuant to sections 105, 363, 503, 1107(a), 1108, and 1112(b) of title 11 of the United States Code (the

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179),   Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766).  The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL  33431.

"***Bankruptcy Code***") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "***Interim Order***") and **Exhibit B** (the "***Final Order***," and together, the "***Proposed Orders***"), authorizing the Debtors to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto; (ii) renew, amend, supplement, extend, or purchase Insurance Policies (as defined below); (iii) honor the terms of the Premium Financing Agreements (as defined below) and pay premiums thereunder; and (iv) enter into new Premium Financing Agreements in the ordinary course of business. In support of the Motion, the Debtors rely on and incorporate by reference the *Declaration of Andrew Hinkelman in Support of First Day Relief* (the "***First Day Declaration***"), and respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On the date hereof (the "***Petition Date***"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and

managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

3.  A description of the Debtors' businesses, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Declaration filed contemporaneously herewith.

## RELIEF REQUESTED

4.  By this Motion, the Debtors request entry of the Proposed Orders authorizing the Debtors to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto; (ii) renew, amend, supplement, extend, or purchase Insurance Policies (as defined below); (iii) honor the terms of the Premium Financing Agreements (as defined below) and pay premiums thereunder; and (iv) enter into new Premium Financing Agreements in the ordinary course of business.

## THE INSURANCE POLICIES AND RELATED PAYMENT OBLIGATIONS

5.  In the ordinary course of business, the Debtors maintain approximately twenty-four (24) insurance policies that are administered by various third-party insurance carriers (collectively, the "*Insurance Carriers*"). These policies provide coverage for, among other things, the Debtors' property, general liability, automobile liability, excess umbrella liability, directors' and officers' liability, employer's liability, operator's liability, and pollution and environmental legal liability (collectively, the "*Insurance Policies*"). A schedule of the Insurance Policies is attached hereto as **Exhibit C**.[2]

---

[2] In addition to the Insurance Policies listed on Exhibit C attached hereto, the Debtors maintain numerous insurance policies with respect to, among other things, employee health, dental, disability, and life insurance benefits. These programs are described, and relief is requested with respect to such programs, in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Certain Prepetition Wages, Benefits and Other*

4852-3927-4086

3

6. The aggregate annual premium for the Insurance Policies is approximately $9,000,000, not including applicable taxes and surcharges, deductibles, and broker and consulting fees and commissions.

7. The Debtors finance premiums under certain of their Insurance Policies (collectively, the "*Financed Policies*") because it is not economically advantageous for the Debtors to pay the premiums on the Financed Policies, in full, on a lump-sum, quarterly, or monthly basis. Accordingly, in the ordinary course of business, the Debtors finance the premiums on the Financed Policies pursuant to premium financing agreements with First Insurance (together, the "*Premium Financing Agreements*"). In consideration for First Insurance's obligation to pay the Debtors' insurance premiums on account of the Financed Policies, the Premium Financing Agreements require the Debtors to pay First Insurance an initial down payment, followed by 10 monthly payments. A schedule setting forth the Financed Policies, the primary terms of the respective Premium Financing Agreements, and the amount outstanding under each Financed Policy is attached hereto as **Exhibit D**.

8. As of the Petition Date, the Debtors have paid approximately $7,400,000 on account of the Premium Financing Agreements. As of the Petition Date, there is approximately $480,000 in accrued but unpaid aggregate obligations under the Premium Financing Agreements, approximately $430,000 of which will become due and owing within the first 21 days of these Chapter 11 Cases. By this motion, the Debtors request authority to pay up to $480,000 in the aggregate, on an interim basis, on account of prepetition amounts outstanding under the non-financed Insurance Policies and the Premium Financing Agreements, and to continue honoring all obligations thereunder on a postpetition basis in the ordinary course of business.

---

*Compensation, and (B) Continue Employee Compensation and Employee Benefits Programs, and (II) Granting Related Relief* filed contemporaneously herewith.

9. The Debtors' obligations under the Premium Financing Agreements are secured by all sums payable to the applicable Debtor under the Financed Policies, including, among other things, any gross unearned premiums and any payment on account of loss that results in a reduction of unearned premiums in accordance with the terms of the Financed Policies.

10. If the Debtors were unable to continue honoring their obligations under the Premium Financing Agreements, First Insurance may seek relief from the automatic stay to terminate the Financed Policies to recoup their losses. The Debtors could then be required to obtain replacement insurance on an expedited basis and likely at significant cost to their estates. The Debtors likely would face great hardship if they were required to obtain replacement insurance and pay a lump-sum premium for the Financed Policies in advance. Even if the Financed Policies were not terminated, any interruption in the Debtors' payments could have a severe, adverse effect on the Debtors' ability to finance premiums for future policies.

11. Continuation of the Debtors' Insurance Policies, and entry into new insurance policies, is essential to the preservation of the value of the Debtors' business and operations. Moreover, in many instances, insurance coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the Office of the United States Trustee's (the "*U.S. Trustee*") requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly, to ensure uninterrupted coverage, the Debtors request authority to maintain their existing Insurance Policies, pay any prepetition obligations related thereto, honor their obligations under the Premium Financing Agreements, and enter into new Insurance Policies in the ordinary course of business. In addition, to the extent that the Premium Financing Agreements expire during the course of these chapter 11 cases, the Debtors seek authority to renew their Premium Financing Agreements without further Court

approval. The Debtors respectfully submit that renewal of the Premium Financing Agreements falls squarely within their ordinary course of business and, but for the constraints of section 364 of the Bankruptcy Code, the Debtors would not need the Court's prior approval to renew the Premium Financing Agreements. To reduce the administrative burden, as well as to confirm their ability to satisfy one of their obligations of operating as debtors in possession, the Debtors seek the Court's authority now to renew the Premium Financing Agreements when and as necessary in the Debtors' business judgment.

12. Pursuant to the Insurance Policies, the Debtors may be required to pay various deductibles or retention amounts (the "***Insurance Deductibles***"), depending upon the type of claim and insurance policy involved. Under certain policies, the Insurance Carriers may pay claimants and then invoice the Debtors for any Insurance Deductible. In such situations, the Insurance Carriers may have prepetition claims against the Debtors. While the Debtors are not aware of any Insurance Deductibles that are due and owing as of the Petition Date, the Debtors seek authority to honor any amounts owed to the Insurance Carriers to ensure uninterrupted coverage under their Insurance Policies.

## THE INSURANCE BROKERS

13. The Debtors utilize various insurance brokers, including Arthur J. Gallagher Risk Management Services and Hub International Midwest Limited (collectively, the "***Insurance Brokers***") to obtain their Insurance Policies. The Insurance Brokers primarily assist the Debtors with the procurement and negotiation of the Insurance Policies, enabling the Debtors to obtain the Insurance Policies on advantageous terms and at competitive rates. The Debtors pay fees (the "***Brokerage Fees***") to the Insurance Brokers in an annual amount of approximately $100,000. The Brokerage Fees are paid to the Insurance Brokers either on a quarterly basis or commission

basis as policies are renewed. While the Debtors are not aware of any Brokerage Fees that are due and owing as of the Petition Date, the Debtors seek authority to honor any amounts owed to the Insurance Brokers to ensure uninterrupted coverage under their Insurance Policies.

## BASIS FOR RELIEF

**A.  Continuation of the Insurance Policies Is Required by the Bankruptcy Code and U.S. Trustee Operating Guidelines.**

14. Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee (the "*U.S. Trustee Operating Guidelines*"). Accordingly, the Debtors believe it is essential to their estates and consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines that they continue to satisfy all obligations related to the Insurance Policies and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their judgment, without further order of the court.

**B.  Satisfying Obligations Under the Insurance Policies in the Ordinary Course of Business Is Warranted.**

15. Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing. 11 U.S.C. § 363(c)(1). In the alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re*

*Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted) (requiring only that the debtor "show that a sound business purpose" justifies the proposed use of property); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the Bankruptcy Code). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

16. Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity." 11 U.S.C. § 105(a). The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan); *see also Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (noting that courts are authorized to

approve orders allowing payment of prepetition claims, which is necessary for the debtors to have a successful reorganization). "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).

17. In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport C. & S. W. Ry. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [indispensable] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits); and recently recognized with approval by the Supreme Court in *Czyzewski v. Jevic Holding Corp.* 137 S. Ct. at 985. Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this court may grant the relief requested herein.

18. Satisfying possible outstanding or future obligations related to the Insurance Policies is warranted under section 363(b) of the Bankruptcy Code and the doctrine of necessity. Continuation of the Insurance Policies is essential to preserving uninterrupted operations and the value of the Debtors' estates. Failing to maintain the Insurance Policies would impair—if not altogether halt—the Debtors' ability to operate, resulting in a material adverse effect on the Debtors' business and the value of their estates.

**C.    The Court Should Authorize the Debtors to Honor and Renew their Premium Financing Agreements.**

19.    Payment of prepetition premiums and amounts owing under the Premium Financing Agreements is necessary and appropriate and may be authorized under sections 105(a) and 363(b) of the Bankruptcy Code. Moreover, pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured postpetition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate. *See, e.g., In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Prod. Co.*, 47 B.R. 444, 448–49 (D. Colo. 1985) (authorizing interim financing agreement where debtor's business judgment indicated financing was necessary and reasonable for benefit of estate). As discussed above, the Debtors believe that continuing to perform under the Premium Financing Agreements on a postpetition basis is in the best interests of their estates. Moreover, in light of their financial circumstances, alternative insurance premium finance companies may not be willing to provide insurance premium financing to the Debtors on attractive market terms on a postpetition basis. Simply put, it is critical for the Debtors to continue to perform under their existing Premium Financing Agreements.

**D.    Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Funds Transfer**

20.    The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of anticipated access to cash collateral. In addition, under the Debtors' cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Insurance Policies, as applicable. Accordingly, the Debtors believe there is minimal risk that checks or wire transfer

requests the court has not authorized will be made inadvertently. Therefore, the Debtors respectfully request that the court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

21.     Courts in this district have routinely granted the same or similar relief as requested in this Motion to chapter 11 debtors. *See, e.g.*, *In re Appvion, Inc.*, Case No. 17-12082 (KJC) (Bankr. D. Del. Oct. 3, 2017) [D.I. 59] (order authorizing the debtors continue their insurance policies and pay prepetition and postpetition obligations); *In re Welded Construction, L.P.*, Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) [D.I. 35] (same); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 3, 2018) [D.I. 70] (same); *In re ONE Aviation Corp.*, Case No. 18-12309 (CSS) (Bankr. D. Del. Oct. 11, 2018) [D.I. 48] (same); *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. Mar. 28, 2018) [D.I. 112] (same); *In re J & M Sales, Inc.*, Case No. 18-11801 (LSS) (Bankr. D. Del. Aug. 7, 2018) [D.I. 79] (same).[3]

## REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

22.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding … a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition …." FED. R. BANKR. P. 6003(b).

---

[3] The referenced orders are voluminous in nature and, therefore, are not attached to this Motion; however, in accordance with Local Rule 7007-2, as made applicable to main cases by the Court's General Chambers Procedures, the Debtors' proposed counsel has copies of each order and will make them available to the Court or to any party that requests them. Additionally, the Orders are available on the Court's CM/ECF PACER site at the cited docket index numbers and on the dates specified above.

23. The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(A) AND (H)

24. To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a). Furthermore, to implement the foregoing immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). As set forth above, the immediate payment of any amounts related to the Insurance Policies is essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## INTERIM APPROVAL SHOULD BE GRANTED AND A FINAL HEARING SHOULD BE SCHEDULED

25. The Debtors request that the Court conduct a preliminary hearing on the Motion and, on an interim basis, grant the relief requested in this Motion. In addition, the Debtors respectfully request that the Court schedule a final hearing on this Motion at the Court's convenience following entry of an interim order. Such relief is necessary in order to maintain and preserve the ongoing operations of the Debtors.

26. Any Insurance Carrier that does not object to the Debtors' maintenance of their Insurance Policies by the applicable objection deadline set for a final hearing on the Motion is directed to continue to maintain the Debtors' Insurance Policies in the ordinary course.

## **RESERVATION OF RIGHTS**

27. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## **NOTICE**

28. The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to Wells Fargo, N.A., as administrative agent under the Debtors' prepetition credit facility; (iv) the Internal Revenue Service; (v) the United States Attorney for the District of Delaware; (vi) the United States Department of Justice; (vii) the State Attorney General's Office in each state where the Debtors operate; (viii) the Insurance Carriers; (ix) the Insurance Brokers; (x) the Debtors' depository banks; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "***Notice Parties***"). As this Motion is seeking "first day" relief, notice of this Motion and any order entered in connection with the Motion will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtors respectfully submit that no further notice of this Motion is required.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtors respectfully request entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: November 5, 2018
Wilmington, Delaware

DLA PIPER LLP (US)

/s/ *Stuart M. Brown*
Stuart M. Brown (#4050)
Kaitlin MacKenzie Edelman (#5924)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@dlapiper.com
          Kaitlin.Edelman@dlapiper.com

-and-

WALLER LANSDEN DORTCH & DAVIS, LLP
John Tishler (*pro hac vice* admission pending)
Katie G. Stenberg (*pro hac vice* admission pending)
Blake D. Roth (*pro hac vice* admission pending)
Tyler N. Layne (*pro hac vice* admission pending)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: John.Tishler@wallerlaw.com
          Katie.Stenberg@wallerlaw.com
          Blake.Roth@wallerlaw.com
          Tyler.Layne@wallerlaw.com

*Proposed Attorneys for the Debtors and Debtors in Possession*