## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------------------x
                                                     :
In re:                                               :  Chapter 11
                                                     :
PROMISE HEALTHCARE GROUP, LLC, et al.,¹  :  Case No. 18-12491 (_____)
                                                     :
            Debtors.                                 :  (Joint Administration Requested)
---------------------------------------------------------------x
```

## MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) PAY CERTAIN PREPETITION WAGES, BENEFITS AND OTHER COMPENSATION, AND (B) CONTINUE EMPLOYEE COMPENSATION AND EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF

Promise Healthcare Group, LLC ("**Promise**") and its affiliated debtors and debtors in

possession (the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter**

**11 Cases**") file this motion (this "**Motion**") pursuant to sections 105(a), 363(b), 507(a), 1107(a),

and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of interim and

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

final orders, substantially in the forms attached hereto as **Exhibit A** (the "***Interim Order***") and

**Exhibit B** (the "***Final Order***," and together, the "***Proposed Orders***"), (i) authorizing the Debtors

to (a) pay certain prepetition wages, benefits and other compensation, and (b) continue employee

compensation and employee benefits programs, and (ii) granting related relief.  In support of the

Motion, the Debtors rely on and incorporate by reference the *Declaration of Andrew Hinkelman in Support*

*of First Day Relief* (the "***First Day Declaration***"), and respectfully represent:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334, and the *Amended Standing Order of Reference* from the United States District Court

for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28

U.S.C. § 157(b) and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"),

the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is

determined that the Court, absent consent of the parties, cannot enter final orders or judgments

consistent with Article III of the United States Constitution. Venue is proper before the Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On the date hereof (the "***Petition Date***"), each of the Debtors commenced cases

under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and

managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the

Chapter 11 Cases, and no committees have been appointed or designated.

3.       A description of the Debtors' businesses, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Declaration filed contemporaneously herewith.

## RELIEF REQUESTED

4.       By this Motion, the Debtors request entry of the Proposed Orders authorizing the Debtors to (i) pay, in their discretion, all prepetition amounts required under or related to Employee Compensation, Deductions and Payroll Taxes, and Employee Benefits (each as defined below and together with all fees, costs, and expenses incident thereto, including amounts owed to third-party administrators, the "***Employee Obligations***"); and (ii) maintain, and continue honoring and paying, in their discretion, all amounts with respect to the Employee Obligations as such were in effect as of the commencement of these Chapter 11 Cases and as such may be modified, amended, or supplemented from time to time in the ordinary course of business, including amounts owed to third-party administrators.

5.       To enable the Debtors to carry out the relief requested, the Debtors also request that the Court authorize all applicable banks, financial institutions, and Automatic Data Processing, Inc. (the "***Payroll Processor***") to receive, process, honor, and pay all checks presented for payment and all electronic payment requests made by the Debtors relating to the Employee Obligations, whether such checks were presented or electronic-payment requests were submitted prior to or after the date hereof.

## THE DEBTORS' EMPLOYEE OBLIGATIONS

**A.      Employee Compensation**

6.       As of the Petition Date, the Debtors employ approximately 4,466 employees (the "***Employees***"), on full, part-time, and per diem (as needed) bases. In the ordinary course of

business, the Debtors pay Employees, among other things, salary, expense reimbursements, and certain other forms of compensation described herein, depending on the services provided by the Employee to the Debtors.

7.      The Employees perform a variety of critical functions including operating the Debtors' medical treatment centers, providing acute, post-acute, and primary care, and recruiting and training physicians and technicians. Employees also engage in various functions to manage and support the operations of the Debtors' medical facilities, including various administrative, marketing, legal, accounting, finance, and management-related tasks. A majority of Employees are highly skilled physicians and nurses. The skills and experience of the Employees are essential to the Debtors' ongoing operations.

8.      The following summarizes the various types of Employee compensation offered by the Debtors (collectively, the "***Employee Compensation***").

9.      <u>Wages.</u> The Debtors pay the majority of their Employees' wage and salary obligations (collectively, the "***Wages***") on either a salaried or hourly basis. Nearly all of the Employees receive their wages, salaries, and other compensation by direct deposit, with the remaining Employees receiving checks. Employees are paid one week in arrears.

10.      In the ordinary course of business, Employees generally are paid on a bi-weekly basis in two different pay cycles. Payroll paid in the even weeks includes Promise Hospital of Ascension, Promise Hospital of Miss Lou, Promise Hospital of Salt Lake, Promise Hospital of Shreveport, Promise Hospital of Bossier City, Promise Hospital of Lee - Ft. Myers, Promise Hospital of Dade - Miami, Silver Lake, St. Alexius and Corporate. On average, the Debtors' gross wages for an even week is approximately $3.7 million.

11.     Payroll paid in the odd weeks includes Promise Hospital of Vicksburg, Promise Hospital of Phoenix, Promise Hospital East LA dba Suburban Medical Center, Promise Hospital of Florida - Villages, Promise Hospital of Dallas, Promise Hospital of Wichita Falls, Promise SNF of Wichita Falls, Promise Hospital of Overland Park, Promise SNF of Overland Park. On average, the Debtors' gross wages for an odd week is approximately $2.1 million.

12.     As of the Petition Date, the Debtors estimate they owe approximately $5.4 million on account of accrued but unpaid Wages, all of which will become due and owing within the first 21 days of these Chapter 11 Cases.

13.     <u>Employee Incentive Programs</u>.  In the ordinary course of business, the Debtors have typically maintained performance-based incentive and bonus programs for certain categories of Employees (collectively, the "***Incentive Program(s)***"). The Incentive Programs are available to four categories of Employees: (i) eligible full-time leadership employees in good standing after their initial employment period at each Debtor hospital, (ii) physician relations and education (PRE), (iii) clinical evaluator, and admission coordinator employees at each Promise Hospital, and (iv) employees in the Collections and Billings Office. Compensation earned under the Incentive Programs is determined by achieving certain budget and EBITDA targets, attaining certain patient quality and clinical benchmark scores, achieving collection targets, and meeting certain revenue, admission, and professionalism expectations. Approximately 140 Employees are eligible to receive compensation under the Incentive Programs. In the month of September 2018, the Debtors paid approximately $215,000 across all Incentive Programs. As of the Petition Date, the Debtors estimate they owe approximately $300,000 on account of accrued but unpaid bonuses under all Incentive Programs, all of which will become due and owing within the first 21 days of these Chapter 11 Cases.

14.     For those Employees who receive them, bonuses earned under the Incentive Programs are an important aspect of their overall compensation. Maintaining historical prepetition practices with regard to the Incentive Programs is essential to ensuring that the Debtors can retain their Employees and continue to operate their business and maximize value through the duration of these Chapter 11 Cases. Therefore, the Debtors seek authority, but not direction, to honor their obligations under the Incentive Programs and to maintain the Incentive Programs in the ordinary course of the Debtors' business.

15.     <u>Corporate Bonuses</u>. In addition to the Incentive Program, the Debtors have an incentive compensation bonus plan for certain eligible corporate Employees (the "Corporate Incentive Compensation Plan"). Employees eligible for the Corporate Incentive Compensation Plan earn bonus payments for achieving various, mutually agreed upon targets for individual and Company performance. As of the Petition Date, the Debtors have no accrued or unpaid amounts due under the PHI Incentive Compensation Plan and do not expect to seek relief to pay amounts in the future.

16.     <u>Reimbursable Expenses.</u> Prior to the Petition Date and in the ordinary course of business, the Debtors reimbursed Employees, subject to manager approval, for certain allowed expenses incurred on behalf of the Debtors while traveling on business (the "***Reimbursable Expenses***"). More specifically, Reimbursable Expenses include, among other things, business travel (e.g., airfare/rail, gas mileage, taxis, hotel and telephone/internet) and meals (e.g., business travel-related and onsite). Employees pay for such expenses directly from their own funds and are reimbursed upon the submission of an expense reimbursement form itemizing the applicable business expenses. Reimbursement is contingent on the Debtors' determination that the charges are for legitimate, reimbursable business expenses.

17.     Reimbursable Expenses approximate to $95,000 per month. As of the Petition Date, the Debtors estimate that they owe approximately $50,000 in outstanding prepetition Reimbursable Expenses. The Debtors' incurrence of Reimbursable Expenses varies from month to month. As a result, the Debtors cannot accurately estimate prepetition, unpaid Reimbursable Expenses.

18.     Employees incurred the Reimbursable Expenses as business expenses on the Debtors' behalf and with the understanding that they would be reimbursed. To avoid harming Employees who incurred the Reimbursable Expenses, the Debtors request authority to (a) continue paying the Reimbursable Expenses in accordance with prepetition practices, including payment to and in adherence with the Debtors' policy for reimbursing Employees such expenses, and honor any prepetition obligations related thereto to the extent Employees have paid for such expenses directly from their own funds or are otherwise personally liable for such expenses; (b) modify their prepetition policy relating thereto as they deem appropriate without the need for further court approval; and (c) pay all Reimbursable Expenses to Employees that (i) accrued prepetition and (ii) accrue postpetition but relate to the prepetition period. The Debtors request authority to pay up to $50,000 on an interim basis and $95,000 on a final basis on behalf of the Reimbursement Expenses. The Debtors also seek authority to continue their reimbursement policy in the ordinary course during the administration of the Chapter 11 Cases.

19.     Holidays/Paid Time-Off and Leaves of Absence. The Debtors offer full-time Employees pay for predetermined holidays ("**Paid Holidays**"). In addition, Employees are eligible for paid time away from work based on the employee's length of service. These absences include personal illness, family illness, personal days, and vacation (collectively, "**Paid Time Off**"). Paid Time Off can be carried over from year to year up to a maximum number of eighty (80) hours per

year. Non-managerial Employees have the option to redeem accrued Paid Time Off in excess of the 80 hour cap to a cash payment up to two times per year. The Debtors anticipate that certain Employees will seek to use or redeem for cash Paid Time Off accrued during the prepetition period after the Petition Date ("**PTO Payouts**"). At the Petition Date, the Debtors estimate that their accrued liability in connection with unused Paid Time Off equaled approximately $7.8 million. Of that amount, approximately $4.4 million is estimated to be eligible to be redeemed by the end of the year. No PTO Payouts will be honored unless the Employee separates from service with the Debtors or as otherwise required by applicable state law.

20.     The Debtors respectfully request to honor all unused Paid Time Off that accrued prior to the Petition Date, in accordance with their historical practices and in the ordinary course of business.[2] The Debtors also seek authority to continue to incur and pay eligible Employees for Paid Holidays consistent with past practices.

**B.    Deductions and Withholdings**

21.     During each applicable payroll period, the Debtors routinely deduct certain amounts from their Employees' gross pay, including, without limitation, (a) pre-tax and after-tax deductions payable pursuant to the Employee benefit plans discussed herein (e.g., contributions relating to health care benefits, insurance premiums and flexible spending programs) and (b) other miscellaneous deductions (collectively, the "**Deductions**"). On a monthly basis, the Debtors deduct and remit to appropriate third-party recipients approximately $2.0 million from the Employees' paychecks for the Deductions. As of the Petition Date, approximately $500,000 in employee Deductions have been withheld and not yet remitted to third-party recipients. Out of an abundance

---

[2] In addition, the Debtors also provide all Employees with other leaves of absence as required by law (collectively, the "**Leaves of Absence**"). Leaves of Absence include jury duty, voting leave, medical leave, and bereavement leave. Employees do not accrue Leaves of Absence over time, and Leaves of Absence are not reflected as a liability on the Debtors' balance sheet.

of caution, the Debtors request authority to remit any unpaid prepetition Deductions that exist. Additionally, the Debtors seek authority to continue deducting amounts from the applicable Employee's wages and salaries and forwarding Deductions to the appropriate third-party recipients on a postpetition basis, in the ordinary course of business, and consistent with past practices. The Deductions represent earnings that applicable authorities have designated for deduction from Employees' paychecks and, thus, may not be property of the Debtors' estates.

22.    In addition to the Deductions, the Debtors are required by law to withhold amounts related to federal income taxes, as well as Social Security and Medicare taxes for remittance to the appropriate taxing authority (collectively, the "***Withheld Amounts***"). The Debtors are also required to pay additional amounts for federal and state unemployment insurance (together with the Withheld Amounts, the "***Payroll Taxes***"). On a monthly basis, the Debtors remit approximately $4.5 million in Payroll Taxes, which amounts include employer taxes plus what is withheld and remitted on behalf of the employee. As of the Petition Date, the Debtors estimate approximately $1.8 million in accrued and unpaid Payroll Taxes (collectively, the "***Unremitted Payroll Taxes***"). Because the Deductions and Unremitted Payroll Taxes are not property of the Debtors' estates, the Debtors request that the Court authorize the Debtors to transmit these amounts, all of which will become due within the first 21 days of these Chapter 11 Cases, to the appropriate parties in the ordinary course of business.

C.    **Employee Benefits**

23.    The Debtors offer their Employees the opportunity to participate in a number of insurance and benefit programs, including medical insurance, life and disability insurance, and other employee benefit plans as described below (collectively, the "***Employee Benefits***").

Maintaining these benefits and honoring obligations thereunder is necessary to preserve employee morale and maintain the stability of the Debtors' workforce during the Chapter 11 Cases.

24.    <u>Medical, Dental and Vision Plans</u>.  The Debtors provide health care coverage and dental care to all of their full-time Employees and their dependents under various benefit plans, as follows (collectively, the "***Medical, Dental and Vision Plans***"):

- *Medical Plan*. The Debtors pay medical claims submitted by Employee participants under the Blue Cross Blue Shield administered plans (the "***Health Benefit Claims***"). As self-funded plans, the Debtors withhold specified portions of Employee wages and apply such funds to the satisfaction of claims. Health Benefit Claims are typically paid on a weekly basis, but are not always timely submitted by participants. The average monthly amount of Health Benefit Claims is approximately $1.4 million. The Debtors pay approximately $100,000 per month in administration fees for the Blue Cross Blue Shield administered plans. Silver Lake Employees are covered under a separate plan administered by Kaiser Foundation Health Plan, Inc. Administration fees of approximately $160,000 per month are incurred for this plan. As of the Petition Date, the Debtors estimate that approximately $360,000 of pre-petition administration fees are outstanding for the two medical plans and approximately $300,000 in prepayment of pre-petition Health Benefit Claims have not yet been funded.

- *Pharmaceutical Plan*. All full-time Employees are eligible to enroll in a prescription benefit plan administered by RxBenefits Inc. The average monthly expense incurred for the prescription benefit plan is $450,000. As of the Petition Date, the Debtors estimate that approximately $1.7 million is owed to RxBenefits Inc.

- *Dental Plan*. All Employees are eligible to enroll in a dental PPO plan, administered by Guardian Life Insurance Company. Employees contribute 100% of the cost of their dental plans with pre-tax deductions from their paychecks. As of the Petition Date, the Debtors estimate that approximately $180,000 is owed to Guardian Life Insurance Company.

- *Vision Plan*. All full-time Employees are eligible to enroll in a vision plan, administered by EyeMed. Employees contribute 100% of the cost of their vision plans with pre-tax deductions from their paychecks. The average monthly expense incurred for the vision plan is $17,000. As of the Petition Date, the Debtors estimate that approximately $16,000 is owed to Combined Insurance of America for the Employees' vision plan.

25.      The Debtors estimate that they incur approximately $850,000 in aggregate monthly premiums and administrative costs associated with the Medical, Dental and Vision Plans described above.

26.      The Debtors request authority to (a) continue the Medical, Dental and Vision Plans in the ordinary course of business, (b) continue making the above-described contributions to the Medical, Dental and Vision Plans, and (c) pay any amounts related thereto, including premiums, claims amounts, and administration fees, to the extent that they remain unpaid as of the Petition Date in the ordinary course of business. The Debtors request authority to pay $1,650,000 in pre-petition administrative fees, monthly premiums and funding for Health Benefit Claims on an interim basis and $2,600,000 on a final basis.

27.      <u>Insurance and Disability Benefits</u>. The Debtors provide certain Employees with life insurance, accidental death and dismemberment and short-term and long-term disability coverage (collectively, the "***Insurance and Disability Benefits***"). The Insurance and Disability Benefits are provided through Reliance Standard Life Insurance Company. The Debtors pay one-hundred percent (100%) of premiums for this coverage. The combined monthly premium for the Debtors' Insurance and Disability Benefits is approximately $165,000. As of the Petition Date, the Debtors estimate approximately $165,000 is due in premiums for the Insurance and Disability Benefits.

28.      The Debtors also provide voluntary insurance coverage to certain eligible Employees (the "***Supplemental Insurance Benefits***"), the premiums for which are satisfied solely by participating Employees. These benefits include: Voluntary Life with Accidental Death & Dismemberment coverage administered by Reliance Standard Life Insurance Company; Employee Assistance Program administered by ACI Specialty Benefits; Health Flexible Spending Accounts

administered by HSA Bank; Cancer and Critical Illness benefits administered by Unum; and Hospital Indemnity coverage administered by Unum. The Debtors withhold from participating Employees' paychecks amounts sufficient to pay these premiums, but the Debtors also pay certain costs related to the Supplemental Insurance Benefits themselves. The Debtors estimate that approximately 4,466 Employees receive at least one of the Supplemental Insurance Benefits, and the Debtors remit a total of approximately $175,000 per month in aggregate premiums for the Supplemental Insurance Benefits.

29.     The Debtors request authority to pay approximately $370,000 in pre-petition unpaid Insurance and Disability Benefits and unremitted Supplemental Insurance Benefits premiums on an interim basis and approximately $600,000 on a final basis. Additionally, the Debtors hereby seek authority to maintain the Insurance and Disability Benefits and Supplemental Insurance Benefits on a postpetition basis.

30.     <u>Employee Savings Plans</u>. The Debtors maintain for the benefit of eligible Employees an employee savings plan, administered through OneAmerica, which is a tax-qualified plan within the meaning of, and administered in accordance with, the requirements of section 401(k) and other applicable sections of the Internal Revenue Code (the "***401(k) Plan***"). There are approximately 2,750 participants in the 401(k) Plan. The Debtors withhold certain amounts from participating Employees' paychecks and contribute such amounts to the 401(k) Plan (the "***Employee 401(k) Contributions***"). The Debtors estimate that they withhold a total of approximately $740,000 in Employee 401(k) Contributions each month. As of the Petition Date approximately $145,000 has been withheld and not yet remitted to the 401(k) Plan administrator. The Debtors request authority to continue the Employee 401(k) Contributions on a postpetition basis.

**D.        The Payroll Processor**

31.        As noted above, the Debtors utilize the services of the Payroll Processor to administer payroll funds made available to Employees through direct deposit. The Payroll Processor's responsibilities include processing payroll and transferring funds from the Debtors to their Employees and to the relevant taxing authorities. The Debtors utilize additional service providers for the purpose of administering payroll funds to Employees. Ultimate Software is used to calculate the wage and payroll tax remittance amount due. Kronos is used as the timekeeper system for hourly staff.  The Debtors utilize Ceridian to process checks and direct deposit for Silver Lake Medical Center and St. Alexius Hospital. In addition, Silver Lake Medical Center and St. Alexius Hospital utilize CertiPay America, LLC to process payroll taxes and CTS to process wage attachments.  The Debtors pay the Payroll Processor approximately $60,000 per year, $120,000 per year to Kronos, $600,000 per year to Ultimate Software, $15,000 per year to Ceridian, $12,000 per year to CertiPay, and $6,000 per year to CTS. As of the Petition Date, the Debtors owe approximately $73,000 to Kronos, $38,000 to Ultimate Software, and $24,000 to CertiPay. Because the services provided by the Payroll Processor are crucial to the smooth functioning of the Debtors' payroll system, the Debtors request permission to pay any unpaid Payroll Processor fees, Kronos and Ultimate Software and to continue to pay fees that accrue during the ordinary course of business.

**E.        IRS Payment Plan**

32.        The Debtors owe certain amounts to the IRS and have been paying them off through a payment plan with certain taxing authorities.  As of the Petition Date, the Debtors owe an estimated $222,000 for the payment obligation due in October 2018 to the taxing authorities, and, as of September 30, 2018, $6 million remains owing to the taxing authorities. The Debtors

seek authority, but not direction, to continue to make payments under the foregoing payment plan in the ordinary course of business.

**BASIS FOR RELIEF REQUESTED**

**A.      Payment of the Prepetition Employee Obligations Is Necessary and Appropriate Under the Bankruptcy Code**

33.      Courts generally acknowledge that it is appropriate to authorize the payment or other special treatment of prepetition obligations in appropriate circumstances, such as when necessary to preserve the going concern value of a debtor's business, thus facilitating its reorganization. *See, e.g., In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (noting that the "'necessity of payment' doctrine … permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid") (citations and internal quotations omitted); *In re Chateaugay Corp.,* 80 B.R. 279, 285-87 (S.D.N.Y. 1987) (finding that a court's equitable powers include the authority to authorize a debtor to pay prepetition debts). In authorizing payments of certain prepetition obligations, courts rely on several legal theories rooted in sections 1107(a), 1108, 363(b), and 105(a) of the Bankruptcy Code.  *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts have routinely approved orders that allow payment of prepetition debt, which is necessary for the debtors to reorganize and restructure their debts and maximize the value of the bankruptcy estate); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191 92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business.") (citations omitted); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.,*

(*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (S.D.N.Y. 1983) (authority to pay prepetition

claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

34.     The Debtors believe that payment of the Employee Obligations is critical to the

ongoing operation of the Debtors' businesses. If the Employee Obligations are not paid, the

Debtors will risk tangible and intangible loss of the value of their businesses, including, among

other things, losses relating to the cost of replacing Employees who seek alternative employment

and losses related to the disruption of, and lower productivity in, the Debtors' business operations

resulting from low employee morale and high turnover.

   1. A Significant Portion of the Employee Obligations are Entitled to Priority
    Treatment

35.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of

the unpaid Employee Obligations to priority treatment. To confirm a chapter 11 plan, the Debtors

must pay priority claims in full. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain

allowed unsecured claims for (a) wages, salaries, commissions, including vacation, severance and

sick leave pay earned by an individual and (b) contributions to an employee benefit plan). Thus,

granting the vast majority of the relief sought herein only affects the timing of payments to

Employees, and does not negatively impact recoveries for general unsecured creditors. Indeed, the

Debtors submit that payment of Employee Obligations at this time enhances value for the benefit

of the Debtors and all interested parties.

36.     Amounts that are paid on account of priority claims for Employee Obligations

would not otherwise be available for distribution to unsecured creditors. Therefore, no prejudice

would be caused to the Debtors' unsecured creditors by permitting priority obligations to be

satisfied in the ordinary course of business during the Debtors' Chapter 11 Cases rather than at the

conclusion of the case pursuant to a plan of reorganization.

2.    Payment of Certain of the Employee Obligations is Required by Law

37.    The Debtors also seek authority to pay the Deductions and Unremitted Payroll Taxes to the appropriate entities. These amounts principally represent the Employees' earnings that governments, the Employees, and judicial authorities have designated for deduction from the Employees' paychecks. Indeed, certain deductions and withheld taxes are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' paychecks on another party's behalf. *See* 11 U.S.C. § 541*; See Begier v. Internal Revenue Serv.,* 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994) (withheld taxes were subject to a trust); *see generally In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1060 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found). Because the Deductions and Unremitted Payroll Taxes are not property of the Debtors' estates, the Debtors request that the Court authorize the Debtors to transmit these amounts to the appropriate parties in the ordinary course of business.

3.    The Court May Authorize Payment of the Employee Obligations Pursuant to Section 363 of the Bankruptcy Code

38.    The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code); *In re UAL. Corp.,* Case No. 02-48191 (Bankr. N.D. Ill.

Dec. 9, 2002) (authorizing payment of prepetition claims under section 363 of the Bankruptcy Code as an out-of-the-ordinary-course transaction). In addition, section 363(c) allows a debtor in possession to enter into transactions involving property of the estate in the ordinary course of business without an order of the court. *See, e.g., Armstrong World Indus., Inc. v. James A. Phillips, Inc.,* 29 B.R. 391, 395 n.2 (S.D.N.Y. 1983) ("Insofar as transactions are actually in the ordinary course, they are authorized automatically by § 363(c)(1) and § 1107(a), and do not require Bankruptcy Court approval.").

39.     The majority of the Debtors' Employees rely exclusively on their compensation, benefits, and reimbursement of expenses to satisfy their daily living expenses and maintain their health and well-being. Consequently, these Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation (to the extent there are any), health and welfare Employee Benefits, and Reimbursable Expenses. Moreover, if the Debtors were unable to satisfy such obligations, Employee morale and loyalty would be jeopardized at a time when Employee support is critical. Furthermore, if the Court does not authorize the Debtors to honor their various obligations under the Employee Benefit plans, the Employees' health coverage could be threatened, potentially burdening individual Employees with the costs of health care. At minimum, the loss of health care coverage, or uncertainty regarding coverage, would result in considerable anxiety for Employees at a time when the Debtors need their Employees to perform their jobs at peak efficiency.

40.     For all of the foregoing reasons, a sound business purpose exists to pay the Employee Obligations. In the absence of such payments, the Debtors believe that their Employees may seek alternative employment opportunities. Such a development would deplete the Debtors' workforce, hinder the Debtors' ability to meet their obligations, and likely diminish creditors'

confidence in the Debtors. Moreover, the loss of valuable Employees and the recruiting efforts that would be required to replace such Employees would be a massive and costly distraction at a time when the Debtors should be focusing on continuing to strengthen their operations and succeeding in their reorganization efforts. Accordingly, the Debtors must be able to pursue all reasonable measures to retain the Employees by, among other things, continuing to honor all wages, benefits, and related obligations, including those that accrued prior to the Petition Date.

41.     In addition, because the Debtors pay the Employee Obligations in the ordinary course of business, the Debtors submit that Court approval to continue their existing policies, programs, and related payments postpetition is not necessary because of the authority granted to them by section 363(c) of the Bankruptcy Code. Nonetheless, for the avoidance of doubt, the Debtors request that the Court grant the relief requested herein and enter an order authorizing them to pay the Employee Obligations, as consistent with their compensation and other benefit policies and plans, and to permit, but not require, the Debtors, in their discretion, to continue their practices, programs, policies, and plans for their Employees as those practices, programs, policies, and plans were in effect as of the Petition Date, as may be modified, terminated, amended, or supplemented from time to time hereafter.

4.     The Court May Authorize Payment of the Employee Obligations Pursuant to Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity

42.     The Debtors' proposed payment of the Employee Obligations should also be authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity." Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is

needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs,* 98 B.R. at 175. "Under [section] 105 the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.,* 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs,* 98 B.R. at *177); accord In re Just for Feet, Inc.,* 242 B.R. 821, 826 (D. Del. 1999) ("To invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is 'critical to the debtor's reorganization.'") (quoting *In re Fin. News Network, Inc.,* 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991)); *see also In re Eagle-Picher Indus., Inc.,* 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process."); *In re Chateaugay Corp.,* 80 B.R. at 279 (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

43.     The "doctrine of necessity" or the "necessity of payment" doctrine functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re Lehigh & New England Ry. Co., 657* F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of debtor); *In re Just for Feet,* 242 B.R. at 824 ("[C]ourts have used their equitable power under section 105(a) of the Code to authorize the payment of prepetition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization."). The doctrine is frequently invoked early in a chapter 11 case. Taken together, the nature of the Employee Obligations, the substantial harm to the Debtors' businesses that would be caused if those obligations were not honored, the related potential for loss of value in the Debtors' estates, and the fact that a significant portion of the obligations in

question relates either to priority wage claims or to funds held in trust for the benefit of Employees, lead to the conclusion that the Employee Obligations fall well within the scope of obligations whose payments may be authorized pursuant to the doctrine of necessity.

**B.      The Court Should Authorize Applicable Banks to Honor and Pay Checks Used and Make Other Transfers to Pay the Employee Obligations**

44.      In connection with the relief requested in this Motion, the Debtors request that the Court authorize (a) all applicable banks and other financial institutions to receive, process, honor, and pay all checks and transfers issued by the Debtors in connection with payment of the claims the Debtors request authority to pay in this Motion, without regard to whether any check or transfer was issued before or after the Petition Date; (b) all banks and other financial institutions to rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion, and that these banks and other financial institutions shall not have any liability to any party for relying on such representations by the Debtors; and (c) authorize the Debtors to issue replacement checks or transfers, to the extent any check or transfer in relation to the claims the Debtors request authority to pay in this Motion is dishonored or rejected by the banks and other financial institutions.

## REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

45.      Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding … a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition …." Fed. R. Bankr. P. 6003(b).

46.     The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

47.     This Court routinely has approved the payment of prepetition claims of employee wages, salaries, expenses and benefits in various chapter 11 cases.  *See, e.g., In re ATD Corp.,* Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 5, 2018) [D.I. 100] (authorizing the debtors to pay prepetition wages, compensation, and maintain and continue benefits in the ordinary course); *In re Welded Construction, L.P.*, Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) [D.I. 38] (same); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 3, 2018) [D.I. 67] (same); *In re Sancilio Pharmaceuticals Co., Inc.*, Case No. 18-11333 (CSS) (Bankr. D. Del. June 7, 2018) [D.I. 31] (same); *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. Mar. 28, 2018) [D.I. 125] (same); *In re J & M Sales, Inc.*, Case No. 18-11801 (LSS) (Bankr. D. Del. Aug. 7, 2018) [D.I. 80] (same).

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(A) AND (H)

48.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a).  Furthermore, to implement the foregoing immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the immediate payment of any amounts owing to or on account of Employees is essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to

reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

49.      Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## NOTICE

50.      The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to Wells Fargo, N.A., as administrative agent under the Debtors' prepetition credit facility; (iv) the Internal Revenue Service; (v) the United States Attorney for the District of Delaware; (vi) the United States Department of Justice; (vii) the State Attorney General's Office in each state where the Debtors operate; (viii) the Debtors' depository banks; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "***Notice Parties***"). As this Motion is seeking "first day" relief, notice of this Motion and any ordered entered in connection with the Motion will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of relief sought in it, the Debtors respectfully submit that no further notice of this Motion is required.

**WHEREFORE**, the Debtors respectfully request entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: November 5, 2018
Wilmington, Delaware

DLA PIPER LLP (US)

/s/ *Stuart M. Brown*
Stuart M. Brown (#4050)
Kaitlin MacKenzie Edelman (#5924)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@dlapiper.com
         Kaitlin.Edelman@dlapiper.com

-and-

WALLER LANSDEN DORTCH & DAVIS, LLP
John Tishler (*pro hac vice* admission pending)
Katie G. Stenberg (*pro hac vice* admission pending)
Blake D. Roth (*pro hac vice* admission pending)
Tyler N. Layne (*pro hac vice* admission pending)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: John.Tishler@wallerlaw.com
         Katie.Stenberg@wallerlaw.com
         Blake.Roth@wallerlaw.com
         Tyler.Layne@wallerlaw.com

*Proposed Attorneys for the Debtors and
Debtors in Possession*