# EXHIBIT A

**Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x
                                                             :
In re:                                                       :  Chapter 11
                                                             :
PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1]   :  Case No. 18-12491 (CSS)
                                                             :
            Debtors.                                    :  (Joint Administration Requested)
---------------------------------------------------------------x

**ORDER (A) ESTABLISHING BIDDING PROCEDURES RELATING
TO THE SALE OF CERTAIN OF THE DEBTORS' ASSETS, INCLUDING
APPROVING A BREAK-UP FEE AND EXPENSE REIMBURSEMENT,
(B) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS,
(C) APPROVING FORM AND MANNER OF NOTICE RELATING THERETO,
(D) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE,
AND (E) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession (the "Debtors") for the entry of an order (this "Bidding Procedures

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179),   Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766).  The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL  33431.

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion, the Bidding Procedures, or the Stalking Horse APA, as applicable.

Order"): (a) approving the proposed bidding procedures attached as **Schedule 1** to this Bidding

Procedures Order (the "Bidding Procedures"), by which the Debtors will solicit and select the

highest or otherwise best offer for the sale (the "Sale") of the Purchased Assets; (b) establishing

procedures for the assumption and assignment of executory contracts and unexpired leases,

including notice of proposed cure amounts (the "Assumption and Assignment Procedures");

(c) approving the form and manner of notice with respect to certain procedures, protections,

schedules, and agreements described herein and attached hereto; (d) approving the Debtors'

selection of L.A. Downtown Medical Center LLC ("Stalking Horse Bidder") as the stalking

horse bidder, the Bid Protections (as defined below) for the Stalking Horse Bidder, and that

certain Asset Purchase Agreement (as may be amended from time to time, the "Stalking Horse

APA"), attached as **Exhibit E** to the Motion, between Success Healthcare, LLC, Success

Healthcare 1, LLC, and HLP of Los Angeles, LLC (collectively, the "Silver Lake Debtors") and

the Stalking Horse Bidder; (e) scheduling a final hearing (the "Sale Hearing") to approve the

Sale; and (f) granting related relief, and upon the Debtors' further request that, at the Sale

Hearing, this Court enter an order (a "Sale Order"), a proposed form of which is annexed to the

Motion as **Exhibit C**, (x) authorizing the sale of the Purchased Assets free and clear of liens,

claims, interests, and encumbrances (collectively, the "Interests") to the fullest extent allowable

under section 363(f) of the Bankruptcy Code, except as expressly set forth in the Sale Order,

with any such Interests to attach to the proceeds thereof with the same validity, extent and

priority (under the Bankruptcy Code) as such Interests had immediately prior to the

consummation of the Sale; (y) authorizing the assumption and assignment of certain executory

contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code; and (z) granting

related relief, all as more fully described in the Motion; and the Court having found that it has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that

venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and the Court having found that the relief requested in the Motion is in the best

interests of the Silver Lake Debtors' estates, their creditors, and other parties in interest; and the

Court having found that the Debtors provided appropriate notice of the Motion and the

opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed

the Motion and having heard the statements in support of the relief requested therein at a hearing,

if any, before the Court; and the Court having determined that the legal and factual bases set

forth in the Motion and at the hearing establish just cause for the relief granted herein; and upon

all of the proceedings had before the Court; and after due deliberation and sufficient cause

appearing therefor, **THE COURT HEREBY FINDS THAT**:

      A.      The findings of fact and conclusions of law herein constitute the Court's findings

of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable

pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law,

they are adopted as such.  To the extent any conclusions of law are findings of fact, they are

adopted as such.

      B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this Court is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.      The statutory bases for the relief requested in the Motion are sections 105, 363,

364, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 4001, 6004, 6006,

9007, and 9014, and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Silver Lake Debtors and their respective estates, creditors, and all other parties-in-interest.

       D.      Notice of the Motion, the Bidding Procedures Hearing, and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of these Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Notice of the Motion has been given to: (a) all entities known to have expressed an interest in a transaction with respect to some or all of the Purchased Assets during the past nine (9) months; (b) all entities known to have asserted any Interest in or upon any of the Purchased Assets; (c) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (d) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Stalking Horse Bidder or Successful Bidder; (e) the Office of the United States Trustee for the District of Delaware; (f) counsel to the Committee; (g) counsel to the DIP Agent; (h) the Office of the United States Attorney General for the District of Delaware; (i) the Internal Revenue Service; (j) the U.S. Department of Justice; (k) the offices of the attorneys general for the states in which the Silver Lake Debtors operate; (l) counsel to the Stalking Horse Bidder; (m) all of the Silver Lake Debtors' insurers; (n) counsel to the Secured Lender; (o) all parties entitled to notice pursuant to Local Rule 2002-1(B); (p) to the extent not already included above, all parties in interest listed on the Silver Lake Debtors' creditor matrix; and (q) other persons reasonably requested by the

Stalking Horse Bidder (collectively, the "Notice Parties").  Accordingly, no further notice of the Motion or this Bidding Procedures Order is necessary or required.

E.      The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation: (a) approval of the Bidding Procedures; (b) approval of the selection of the Stalking Horse Bidder; (c) approval of the Assumption and Assignment Procedures; (d) approval of the form and manner of notice of all procedures, protections, schedules, and agreements described in the Motion and attached thereto; (e) the scheduling of a date for the Sale Hearing; and (f) all related relief as set forth herein.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the hearing for such Motion, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

F.      Entry into the Stalking Horse APA with the Stalking Horse Bidder is in the best interests of the Silver Lake Debtors and the Silver Lake Debtors' estates and creditors, and it reflects a sound exercise of the Silver Lake Debtors' business judgment.  The Stalking Horse APA provides the Silver Lake Debtors with the opportunity to sell substantially all of their Silver Lake Medical Center assets in order to preserve and realize their optimal value.

G.      The Bidding Procedures, in the form attached hereto as **Schedule 1**, and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Silver Lake Debtors' estates.  The Bid Protections being granted to the Stalking Horse Bidder: (a) shall, if triggered, be deemed an actual and necessary cost and expense of preserving the Silver Lake Debtors' estates, within the meaning of sections 503(b) and 507 of the Bankruptcy Code and in

accordance with the Stalking Horse APA; (b) are commensurate to the real and substantial

benefit conferred upon the Silver Lake Debtors' estates by the Stalking Horse Bidder; (c) are

reasonable and appropriate, including in light of the size and nature of the Sale and comparable

transactions, the commitments that have been made, and the efforts that have been and will be

expended by the Stalking Horse Bidder, notwithstanding that the Sale is subject to higher or

better offers; and (d) were necessary for the Stalking Horse Bidder to pursue the Sale and to be

bound by the Stalking Horse APA.

  H.  The Debtors have demonstrated a reasonable business justification for the

payment of the Bid Protections under the circumstances and as set forth in the Stalking Horse

APA.  Over six months before the Petition Date, the Stalking Horse Bidder had agreed to acquire

the same assets from the Silver Lake Debtors in a private sale, outside bankruptcy.  Because of

issues that arose relating to negotiation of the Original Purchase Agreement, as described in the

Motion and Sale Declaration, the Silver Lake Debtors decided instead to sell their assets in

bankruptcy and subject to higher and better offers, which caused the Stalking Horse Bidder to

evaluate this substantial change of circumstances, renegotiate the sale contract and incur

additional fees and costs.  The Bidding Procedures and the Bid Protections were a material

inducement to, and express condition of, the willingness of the Stalking Horse Bidder to submit

its bid through execution of the Stalking Horse APA that will serve as a minimum or floor bid on

which the Silver Lake Debtors, their creditors, suppliers, vendors, and other bidders may rely.

Unless it is assured that the Bid Protections will be available, the Stalking Horse Bidder is

unwilling to be bound under the Stalking Horse APA (including the obligation to maintain its

committed offer while such offer is subject to higher or otherwise better offers as contemplated

in the Bidding Procedures).  The Stalking Horse Bidder has provided a material benefit to the

Silver Lake Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Purchased Assets will be realized.

I.    The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stakeholders exist between the Stalking Horse Bidder and the Debtors.  The Bidding Procedures and the Stalking Horse APA were negotiated by the Silver Lake Debtors, the Stalking Horse Bidder and each of their respective counsel and advisors at arms' length and in "good faith" within the meaning of Bankruptcy Code section 363(m).

J.    The Assumption and Assignment Notice, substantially in the form attached to the Motion as **Exhibit J** and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the applicable Purchased Contracts in connection with the sale of the assets and the related Cure Costs, and no other or further notice is required.  The Motion, this Bidding Procedures Order, and the Assumption and Assignment Procedures set forth herein are reasonably calculated to provide counterparties to any Purchased Contracts with proper notice of the potential assumption and assignment of their Purchased Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

K.    The Auction and Sale Notice, substantially in the form attached to the Motion as **Exhibit H**, and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the assets, including, without limitation: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections

7

to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the assets to be sold; (v) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as may be set forth in the Sale Order and the Stalking Horse APA) to the fullest extent allowable under section 363(f) of the Bankruptcy Code, with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds; and (vi) notice of the proposed assumption and assignment of Purchased Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse APA (or to another Successful Bidder(s) arising from the Auction, if any), and no other or further notice of the Sale shall be required.

L.      The Post-Auction Notice, substantially in the form attached to the Motion as **Exhibit I** and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Successful Bidder(s) and Backup Bidder, and no other or further notice is required.

M.      The Silver Lake Debtors' marketing process has been reasonably calculated to maximize value for the benefit of all stakeholders.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.[3]

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

---

[3] Notwithstanding anything to the contrary herein, the consummation of the Sale is subject to entry of the Sale Order.

## I.    Timeline for the Sale

3.      The Silver Lake Debtors are authorized to perform any obligations of the Silver Lake Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing or entry of the Sale Order.  The Silver Lake Debtors are authorized to proceed with the Sale in accordance with the Bidding Procedures and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

| Milestone | Proposed Date[4] |
|---|---|
| Deadline to Object to Approval of the Stalking Horse Bidder, Bidding Protections and the Bidding Procedures | 4:00 p.m. (prevailing Eastern Time) on November 19, 2018 |
| Entry of the Bidding Procedures Order | On or before November 30, 2018 |
| Assumption and Assignment Service Date | Within three (3) Business Days after entry of the Bidding Procedures Order |
| Contract Objection Deadline | Fourteen (14) days following the Assumption and Assignment Service Date |
| Bid Deadline | 4:00 p.m. (prevailing Eastern Time) on December 21, 2018 |
| Auction (if necessary) | 10:00 a.m. (prevailing Eastern Time) on January 4, 2019 |
| Deadline to Object to Sale and Adequate Assurance Deadline | 12:00 p.m. (prevailing Eastern Time) on January 14, 2019 |
| Sale Hearing | January 21, 2019 at 10:00 a.m. (prevailing Eastern Time) |
| Sale Closing | On or before February 1, 2019[5] |
| Supplemental Contract Objection Deadline | Fourteen (14) days following the date of service of any Supplemental Notice of Assumption and Assignment |

---

[4] The proposed dates are consistent with the Sale deadlines set forth in the Stalking Horse APA.

[5] The Closing Date pursuant to the Stalking Horse APA shall occur on a date that is no later ten (10) Business Days following the satisfaction (or waiver by the Party entitled to waive that condition) of the conditions set forth in the Stalking Horse APA, unless another time or date, or both, are agreed to in writing by the Parties.

4.      For the avoidance of doubt, the Debtors reserve the right, and are authorized, after consultation with the DIP Agent, the Secured Lender, and the Committee, to modify the above timeline and the Bidding Procedures in accordance with the provisions of the Bidding Procedures, subject to the terms of the Stalking Horse APA and any debtor-in-possession financing agreement.

## II.      The Bidding Procedures

5.      The Bidding Procedures are approved in their entirety.  The Silver Lake Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures, in accordance therewith and with the Stalking Horse APA.  The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

6.      The process and requirements associated with submitting a Qualified Bid are approved as fair, reasonable, appropriate, and designed to maximize recoveries for the benefit of the Silver Lake Debtors' estates, creditors, and other parties in interest.  As further described in the Bidding Procedures, the Bid Deadline shall be 4:00 p.m. (prevailing Eastern Time) on December 21, 2018.  Any disputes or objections to the selection of Qualified Bids, Successful Bids, or Backup Bids (all as defined in the Bidding Procedures) shall be resolved by this Court at the Sale Hearing as set forth herein.

7.      The Stalking Horse Bidder is deemed a Qualified Bidder for all purposes, and the Stalking Horse Bid as set forth in the Stalking Horse APA is deemed a Qualified Bid in all respects.  In the event that no other Qualified Bids are submitted, the Debtors shall deem the Stalking Horse Bidder to be the Successful Bidder and no Auction shall take place.

8.      The Debtors are authorized to conduct and preside over the Auction in accordance with the Bidding Procedures.  The Auction, to the extent that an Auction is necessary under the Bidding Procedures, shall take place at 10:00 a.m. (prevailing Eastern Time) on January 4, 2019 at the offices of DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801 (or at any other time and location as the Debtors may hereafter designate on proper notice).  The Auction will be conducted openly and all creditors will be permitted to attend.

9.      Any Qualified Bidder with a valid and perfected lien on any assets of the Silver Lake Debtors' estates, including without limitation any DIP Agent for the benefit any debtor-in-possession financing facility lenders, shall have the right, subject in all respects to the Bankruptcy Code and other applicable law, to credit bid all or any portion of such secured creditor's allowed secured claims to the extent that such secured claims are valid and undisputed pursuant to, and in accordance with, Bankruptcy Code section 363(k) or other applicable law. Each person or entity holding a valid, properly perfected security interest in assets with respect to which there are no other more senior security interests for which it submits a bid shall be deemed a Qualified Bidder with respect to its right to acquire such assets by Credit Bid.  The failure of the Committee to object to a bid put forth by a secured creditor or the Court's approval of any such credit bid shall not (a) prejudice or impair the rights of the Committee to challenge the nature, extent, validity, priority, perfection, or amount of the secured creditors' alleged liens, security interests, and claims or (b) release the secured creditor from any causes of action that can be brought by or on behalf of the Silver Lake Debtors' estates.

10.      Further, in the event of a competing Qualified Bid, the Stalking Horse Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any and all such overbids

to include the full amount of the Bid Protections in lieu of cash for purposes of evaluating the overbid equal to cash in the same amount.

**III.    Stalking Horse Bidder, Bid Protections, and Stalking Horse APA**

11.    The Silver Lake Debtors are authorized to enter into the Stalking Horse APA, subject to higher or otherwise better offers at the Auction.  The Bid Protections contained in the Stalking Horse APA are approved, and shall survive termination of the Stalking Horse APA. The Silver Lake Debtors are authorized to pay any and all amounts owing to the Stalking Horse Bidder on account of the Bid Protections upon the Silver Lake Debtors' consummation of an Alternative Transaction with a purchaser other than the Stalking Horse Bidder, as set forth in the Stalking Horse APA.  The Bid Protections: (a) shall be allowed superpriority administrative expense claims under sections 503(b) and 507 of the Bankruptcy Code and, if triggered, (b) shall be payable in accordance with the terms of the Stalking Horse APA without further order of this Court.  The Silver Lake Debtors' obligation to pay the Bid Protections shall survive termination of the Stalking Horse APA.

**IV.    Notice Procedures**

12.    The Auction and Sale Notice is approved.

*A.    Notice of Sale, Auction, and Sale Hearing*

13.    Within three business days after the entry of this Bidding Procedures Order, or as soon as reasonably practicable thereafter (the "Mailing Date"), the Debtors shall serve the Auction and Sale Notice by first-class mail or, for those parties who have consented to receive notice by the Electronic Case Files ("ECF") system, by ECF, upon the Notice Parties.  The Auction and Sale Notice shall indicate that copies of the Motion, the Stalking Horse APA, the Bidding Procedures Order, and all other documents filed with the Court can be obtained on the

website of the Debtors' claims and noticing agent, Prime Clerk,

https://cases.primeclerk.com/promisehealthcare/.

14.     Service of the Auction and Sale Notice as described above shall be sufficient and proper notice of the Sale with respect to known interested parties.

B.     *Notice of Successful Bidder(s).*

15.     As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file on the docket, but not serve, the Post-Auction Notice, which shall identify the Successful Bidder(s) and Backup Bidder.  The form of the Post-Auction Notice substantially in the form attached to the Motion as **Exhibit I** is approved.

## V.     Assumption and Assignment Procedures

16.     The Assumption and Assignment Procedures, which are set forth below, regarding the assumption and assignment of the executory contracts proposed to be assumed by the Silver Lake Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder, following the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code and in accordance with the Stalking Horse APA are hereby approved to the extent set forth herein.

A.     *Notice of Assumption and Assignment*

17.     Within three business days after entry of this Order (any such date, the "Assumption and Assignment Service Date"), the Debtors shall file with the Court and post on the following website, https://cases.primeclerk.com/promisehealthcare/ (the "Case Website") the Notice of Assumption and Assignment and, included therewith, a list (the "Purchased Contracts List") that specifies: (a) each of the Silver Lake Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale (the "Purchased Contracts"), including the name of each non-Debtor counterparty to such Purchased Contract

(the "Purchased Contract Counterparty"); and (b) the proposed amount necessary, if any, to cure all monetary defaults, if any, under the Purchased Contract (the "Cure Costs").  The Silver Lake Debtors shall serve, via first class mail, the Notice of Assumption and Assignment, in substantially the form attached to the Motion as **Exhibit J**, on all Purchased Contract Counterparties.  Service as set forth herein shall be deemed proper, due, timely, good, and sufficient notice and no other or further notice is necessary.

18.     A Purchased Contract Counterparty listed on the Notice of Assumption and Assignment may file an objection (a "Contract Objection") to the proposed assumption and assignment of the applicable Purchased Contract, the proposed Cure Costs, if any, and the ability of the Stalking Horse Bidder to provide adequate assurance of future performance.  All Contract Objections must: (a) be in writing; (b) state with specificity the basis for the objection as well as any Cure Costs that the objector asserts to be due, including each and every asserted default in the applicable contract or lease (in all cases with appropriate documentation in support thereof); (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed and served on the following parties by no later than 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after the Assumption and Assignment Service Date (the "Contract Objection Deadline"): (i) counsel for the Silver Lake Debtors in connection with the Sale Transaction, McDermott Will & Emery LLP, 444 West Lake Street, Chicago, Illinois 60606 (Attn: William P. Smith and James Kapp; wsmith@mwe.com, jkapp@mwe.com) and DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801 (Attn: Stuart Brown; stuart.brown@dlapiper.com); (ii) the Debtors,  Success Healthcare 1, LLC, 999 Yamato Road, Third Floor, Boca Raton, Florida 33431, Attn: Charles Posternack, M.D.; (iii) counsel to the Stalking Horse Bidder, Valensi Rose PLC, 1888 Century Park East, Suite 1100, Los Angeles,

California 90067 (Attn: Gary F. Torrell, Esq.; gft@vrmlaw.com) and Potter Anderson &

Corroon LLP, 1313 North Market Street, Sixth Floor, P.O. Box 951, Wilmington, DE 19801

(Attn:  Jeremy W. Ryan, Esq.; jryan@potteranderson.com); (iv) counsel to the DIP Agent,

(v) counsel for the Committee; (vi) counsel for the Secured Lender; and (vii) the Office of the

United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35,

Wilmington, Delaware, 19801 (collectively, the "Objection Recipients").  Objections to the

ability of a Successful Bidder(s) other than the Stalking Horse Bidder to provide adequate

assurance of future performance (an "Adequate Assurance Objection") shall be raised by 12:00

p.m. (prevailing Eastern Time) on January 14, 2019 (the "Adequate Assurance Deadline").

19.     If a Purchased Contract Counterparty files a Contract Objection in a manner that

is consistent with the requirements set forth above, and the parties are unable to consensually

resolve the dispute prior to the Sale Hearing, the amount to be paid or reserved with respect to

such objection will be determined at the Sale Hearing, such later hearing date that the Debtors

determine in their discretion, in consultation with the Successful Bidder(s), or such other date

determined by this Court.  In the event that a dispute regarding the Cure Costs with respect to a

Purchased Contract has not been resolved as of the Closing Date, the Parties will nonetheless

remain obligated to consummate the Stalking Horse APA or Alternative Transaction, as

applicable; *provided, however,* that with respect to the Stalking Horse APA, all Cure Costs will

be paid by the Silver Lake Debtors without any corresponding increase to the Purchase Price.

B.      *Supplemental Notice of Assumption and Assignment.*

20.     The Stalking Horse Bidder may modify the Purchased Contracts List as follows:

i.      with respect to adding Business Contracts to the Purchased Contracts List,

(x) if the Business Contract has an effective date on or before the Agreement Date and was

disclosed to the Stalking Horse Bidder prior to the Agreement Date, on or before ten Business

Days prior to the hearing to approve the Sale, (y) if the Business Contract has an effective date after the Agreement Date and is disclosed to Stalking Horse Bidder at least twenty Business Days prior to the day of the Closing and otherwise in accordance with the terms of the Stalking Horse APA, ten Business Days prior to the day of the Closing and (z) for any other Business Contract, two days prior to the day of the Closing; and

   ii. with respect to the removal of a Business Contract from the Purchased Contracts List, two days prior to the day of the Closing.

21. In the event that the Stalking Horse Bidder exercises any of the rights reserved above, the Debtors will promptly serve a supplemental notice of assumption and assignment, by first class mail, on any Purchased Contract Counterparty whose Business Contract has been added to the Purchased Contracts List, and its attorney, if known, at the last known address available to the Debtors (a "<u>Supplemental Notice of Assumption and Assignment</u>").  Each Supplemental Notice of Assumption and Assignment will include the same information with respect to any added Purchased Contracts as was included in the Notice of Assumption and Assignment.  In no event shall the Stalking Horse Bidder's exercise of its rights set forth above result in the decrease of the Purchase Price.

22. Any Purchased Contract Counterparty listed on a Supplemental Notice of Assumption and Assignment may file a Contract Objection with respect to the impacted Purchased Contract (a "<u>Supplemental Contract Objection</u>"), which Supplemental Contract Objection must: (a) be in writing; (b) state with specificity the basis for the objection as well as any Cure Costs that the objector asserts to be due (in all cases with appropriate documentation in support thereof); (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed and served on the Objection Recipients no later than fourteen (14) days from the date of service of

such Supplemental Notice of Assumption and Assignment, which date will be set forth in the

Supplemental Notice of Assumption and Assignment (the "Supplemental Contract Objection

Deadline").

23.     If a Purchased Contract Counterparty files a Supplemental Contract Objection in a

manner that is consistent with the requirements set forth above, and the parties are unable to

consensually resolve the dispute, the Debtors will seek an expedited hearing before the Court (a

"Supplemental Purchased Contract Hearing") to determine the Cure Costs, if any, and approve

the assumption of the relevant Purchased Contracts.  If there is no such objection (or such

objection has been resolved), then the Debtors may submit an order (a "Supplemental Designated

Contract Order") to this Court, including by filing a certification of counsel, fixing the Cure

Costs and approving the assumption of any Purchased Contract listed on a Supplemental Notice

of Assumption and Assignment.

> C.     *Additional Notice of Assumption and Assignment Procedures*

24.     If the Purchased Contract Counterparty does not file and serve a Contract

Objection or Supplemental Contract Objection in a manner that is consistent with the

requirements set forth above, and absent a subsequent order of the Court establishing alternative

Cure Costs in connection with any properly filed and served Contract Objection or Supplemental

Contract Objection, (a) the Cure Costs, if any, set forth in the Notice of Assumption and

Assignment or Supplemental Notice of Assumption and Assignment, as applicable, shall be

controlling, notwithstanding anything to the contrary in any Purchased Contract or any other

document, and (b) the Purchased Contract Counterparty will be deemed to have consented to the

assumption and assignment of the Purchased Contract and the Cure Costs, if any, and will be

forever barred from asserting any claim related to such Purchased Contract for any default

occurring or continuing prior to the Contract Objection Deadline or the Supplemental Contract

Objection Deadline, as applicable, against the Silver Lake Debtors or the Stalking Horse Bidder (or other Successful Bidder following the Auction, if any), or the property of any of them.

25.     The inclusion of a Purchased Contract on the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) will not: (a) obligate the Silver Lake Debtors to assume any Purchased Contract listed thereon or the Stalking Horse Bidder or any other Successful Bidder(s) to take assignment of such Purchased Contract; or (b) constitute any admission or agreement of the Debtors that such Purchased Contract is an executory contract.  Only those Purchased Contracts that are included on a schedule of assumed and acquired contracts attached to the Stalking Horse APA, or the final asset purchase agreement with the Successful Bidder(s) at Closing, if any (including amendments or modifications to such schedules in accordance with such Stalking Horse APA or asset purchase agreement, as applicable) will be assumed and assigned to the Stalking Horse Bidder (or other Successful Bidder following the Auction, if any).

**VI.    Sale Hearing.**

26.     A Sale Hearing to (a) approve the sale of the Purchased Assets to the Stalking Horse Bidder (or other Successful Bidder following the Auction, if any) and (b) authorize the assumption and assignment of certain executory contracts and unexpired leases shall be held at 10:00 a.m. (prevailing Eastern Time) on January 21, 2019, and may be adjourned or rescheduled without further notice other than by announcement in open court on the date scheduled for the Sale Hearing or by the filing of a notice on the Court's docket, which shall be posted on the Case Website.  At the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid and the Backup Bid, if any.  The Sale Hearing shall be a hearing on matters relating to the Sale and there will be no further bidding at the Sale Hearing.  In the event that the Successful Bidder(s) cannot or refuses to consummate the Sale, the Debtors may, in accordance

with the Bidding Procedures, designate the Backup Bid to be the new Successful Bid and the

Backup Bidder to be the new Successful Bidder(s), and the Silver Lake Debtors shall be

authorized, but not required, to consummate the transaction with the Backup Bidder without

further order of the Bankruptcy Court.

27.     Any and all objections, if any, to the Sale to the Stalking Horse Bidder or to a

Successful Bidder(s) other than the Stalking Horse Bidder and entry of the Sale Order (a "Sale

Objection") must be filed and served on the Objection Recipients by 12:00 p.m. (prevailing

Eastern Time) on January 14, 2019 (the "Sale Objection Deadline").  Any party failing to timely

file a Sale Objection will be forever barred from objecting and will be deemed to have consented

to the Sale, including the transfer of the Silver Lake Debtors' right, title and interest in, to, and

under the Purchased Assets free and clear of any and all liens, claims, interests, and

encumbrances in accordance with section 363(f) of the Bankruptcy Code and the Stalking Horse

APA or other definitive agreement for the Sale.

**VII.    Miscellaneous.**

28.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Bidding Procedures Order.

29.     This Bidding Procedures Order shall constitute the findings of fact and

conclusions of law and shall take immediate effect upon execution hereof.

30.     This Bidding Procedures Order shall be binding on the Debtors, including any

chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

Certain provisions of this Bidding Procedures Order that relate to the Bid Protections shall inure

to the benefit of the Stalking Horse Bidder and its affiliates, successors, and assigns.

31.     The Stalking Horse Bidder shall have standing to appear and be heard in connection with all proceedings regarding the sale of the Purchased Assets in the Chapter 11 Cases, including the conduct of the Auction and the interpretation of the Bidding Procedures.

32.     The rights of the Committee and parties in interest to object to the Court's approval of any sale are preserved.  The entry of this Bidding Procedures Order and the approval of the Bidding Procedures shall not be deemed a waiver of such rights.

33.     To the extent any of the deadlines set forth in this Bidding Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Bidding Procedures Order shall govern.

34.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures, the Stalking Horse APA, and the implementation of this Bidding Procedures Order.


Dated:    _____, 2018
          Wilmington, Delaware
                                            _____
                                            UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE 1 TO BIDDING PROCEDURES ORDER

**Bidding Procedures**