## **EXHIBIT B**

**Bidding Procedures**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
: 
In re: : Chapter 11
: 
PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1] : Case No. 18-12491 (CSS)
: 
Debtors. : (Joint Administration Requested)
---------------------------------------------------------------x

## BIDDING PROCEDURES FOR
## THE SALE OF THE SILVER LAKE DEBTORS' ASSETS

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") have filed chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under Case No. 18-12491 (CSS).

On [●], 2018, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Order (A) Establishing Bidding Procedures Relating to the Sale of Certain of the Debtors' Assets, Including Approving a Break-Up Fee and Expense Reimbursement, (B) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, (C) Approving Form and Manner of Notice Relating Thereto, (D) Scheduling a Hearing to Consider the Proposed Sale, and (E) Granting Related Relief* [D.I. [●]] (the "Bidding Procedures Order"), by which the Bankruptcy Court approved the following procedures (the

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179),  Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766).  The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL  33431.

1

"Bidding Procedures") relating to the sale contemplated by that certain Asset Purchase Agreement dated as of October 24, 2018 (as may be amended from time to time, the "Stalking Horse APA"), by and between Success Healthcare, LLC, Success Healthcare 1, LLC, and HLP of Los Angeles, LLC (collectively, the "Silver Lake Debtors") and L.A. Downtown Medical Center LLC (the "Stalking Horse Bidder").  Capitalized terms used but not defined in these Bidding Procedures have the meanings given to them in the Stalking Horse APA.  These Bidding Procedures set forth the process by which the Silver Lake Debtors are authorized to conduct an auction (the "Auction") for the sale (the "Sale") of the Purchased Assets in accordance with and as described in the Stalking Horse APA.

1. **Submissions to the Debtors.**

All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "Bid Notice Parties"):

   a. **Silver Lake Debtors**.  Success Healthcare, LLC, 999 Yamato Road, Third Floor, Boca Raton, Florida 33431, Attn: Charles Posternack, M.D.

   b. **Debtors' Counsel**.  McDermott Will & Emery LLP, 444 West Lake Street, Chicago, Illinois 60606 (Attn: William P. Smith and James W. Kapp; wsmith@mwe.com, jkapp@mwe.com) and DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801 (Attn: Stuart Brown; stuart.brown@dlapiper.com).

   c. **Debtors' Financial Advisor and Investment Banker**. MTS Health Partners LP, 623 Fifth Avenue, 14th Floor, New York, New York 10022 (Attn: Jay Shiland, shiland@mtspartners.com).

   d. **Counsel to the DIP Agent**.  [Counsel and Address].

   e. **Counsel to the Official Committee of Unsecured Creditors in the Silver Lake Debtors' Chapter 11 Cases**. [Counsel and Address].

   f. **Counsel to the Secured Lender.**  [McGuire Woods LLP (Attn: Brian I. Swett ; bswett@mcguirewoods.com).]

2. **Potential Bidders.**

The Silver Lake Debtors and their financial advisors have identified, and may in the future identify, parties they believe potentially may be interested in consummating (and potentially may have the financial resources necessary to consummate) a competing transaction. To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale (each, a "Potential Bidder") must deliver or have previously delivered:

   a. an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement"); and

b. if requested by the Debtors after consultation with counsel to the Committee and counsel to the Silver Lake Debtors' secured lender, the most current audited and latest unaudited financial statements (collectively, the "<u>Financials</u>") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, (i) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors, in consultation with the DIP Agent, Secured Lender, and the Committee, (ii) a written commitment acceptable to the Debtors and their advisors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the applicable Sale, and (iii) copies of any documents evidencing any financing commitments necessary to consummate the transaction.

3. **Qualified Bidders.**

   a. A "<u>Qualified Bidder</u>" is a Potential Bidder: (i) whose Financials, or the Financials of its equity holder(s), as applicable, demonstrate the financial capability to consummate the Sale, as determined in the Debtors' reasonable business judgment (in consultation with the DIP Agent, the Secured Lender, and the Committee); and (ii) whose Bid (as defined below) is a Qualified Bid (as defined below). On or before the date that is three (3) business days after the Bid Deadline (defined below), the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder, and shall provide a copy of each Qualified Bid to counsel to the DIP Agent, counsel to the Secured Lender, counsel to the Committee, and counsel to the Stalking Horse Bidder. The Stalking Horse Bidder shall be deemed a Qualified Bidder that has submitted a Qualified Bid at all times.

   b. For the avoidance of doubt, two or more Potential Bidders may submit a Bid for any or all of the Purchased Assets, provided that such Bid(s), when taken as a whole (collectively, a "<u>Joint Bid</u>"), is determined by the Debtors, in accordance with Section 3(a) of these Bidding Procedures, to constitute a Qualified Bid; provided, however, that any Joint Bid must comply with section 363(n) of the Bankruptcy Code and Potential Bidders must first seek the Debtors' permission before they contact each other.

   c. If any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Debtors will refund such Potential Bidder's Deposit (as defined below) and all accumulated interest thereon on or within three (3) business days after the Bid Deadline.

   d. Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Except as otherwise set forth in the Stalking Horse APA, without the written consent of the Debtors (in consultation with the DIP Agent, the Secured Lender, and the Committee), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed

3

    amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures. Bids must remain open offers capable of being accepted until entry of the Sale Order or, in the case of a Backup Bid, until the Backup Bidder closes the Sale Transaction.

  e. Any disputes related to these Bidding Procedures shall be resolved by the Bankruptcy Court.

**4.** **Due Diligence.**

  a. **Diligence Provided to Potential Bidders.**

  Only Potential Bidders that have entered into a Confidentiality Agreement shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Silver Lake Debtors. **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement.** The Silver Lake Debtors will provide to each Potential Bidder that has entered into a Confidentiality Agreement reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Silver Lake Debtors shall post all written due diligence provided to any Potential Bidder to the Silver Lake Debtors' electronic data room. For all Potential Bidders other than the Stalking Horse Bidder, the due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

  The Silver Lake Debtors shall not furnish any confidential information relating to the Purchased Assets, the Silver Lake Debtors' liabilities, or the Sale ("<u>Confidential Sale Information</u>") to any person, except to a Potential Bidder that has entered into a Confidentiality Agreement or to such Potential Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale.

  The Debtors also reserve the right to withhold from Potential Bidders any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not approved by the Debtors as a Potential Bidder.

  **All due diligence requests must be directed to:**

MTS Health Partners LP, 623 Fifth Avenue, 14th Floor, New York, New York 10022 (Attn: Jay Shiland, shiland@mtspartners.com).

b.     **Diligence Provided by Potential Bidders**.

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate the Sale. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine (in consultation with the DIP Agent, the Secured Lender, and the Committee) that such Potential Bidder is not a Qualified Bidder or that a bid made by such Potential Bidder is not a Qualified Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the chapter 11 cases or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and the Debtors' advisors may disclose confidential information: (a) with the prior written consent of such bidder and the Debtors; (b) to the counsel to the Committee, (c) to the counsel to the DIP Agent, (d) to the counsel to the Secured Lender, and (e) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies. The terms of this section 4(b) shall not apply to the Stalking Horse Bidder, and the treatment of the Stalking Horse Bidder's confidential information shall be governed by the confidentiality agreements previously entered between the Silver Lake Debtors and the Stalking Horse Bidder (the "Stalking Horse Confidentiality Agreement"); provided, that notwithstanding anything in the Stalking Horse Confidentiality Agreement to the contrary, the Debtors and Debtors' advisors may disclose confidential information with respect to the Stalking Horse Bidder's bid to the Committee, the DIP Agent, the Secured Lender, and their respective advisors subject to the agreement of such parties to treat such information as confidential pursuant to their respective confidentiality agreements with the Debtors.

5.     **Bid Requirements.**

A proposal, solicitation, or offer (each, a "Bid") by a Qualified Bidder that is submitted in writing and satisfies each of the following requirements (collectively, the "Bid Requirements"), as determined by the Debtors in their reasonable business judgment (after consultation with the DIP Agent, the Secured Lender, and the Committee) shall constitute a "Qualified Bid." For the avoidance of doubt, notwithstanding the following, the Stalking Horse APA will be deemed a Qualified Bid for all purposes and at all times. The form of a Bid must include a proposed asset

purchase agreement (a "Bid APA") duly executed by the Potential Bidder and must also include a redline comparing the Bid APA to the Stalking Horse APA.

    a. **Assets.** Each Bid must provide for the purchase of all or substantially all of the Purchased Assets, and must clearly state (i) which assets the Qualified Bidder is agreeing to purchase and (ii) whether the Potential Bidder intends to operate all or a portion of the Silver Lake Debtors' business as a going concern, or to liquidate the business.

    b. **Assumption of Liabilities.** Each Bid must expressly identify the Assumed Liabilities it proposes to (i) assume or (subject to the terms hereof) or (ii) satisfy with cash consideration.

    c. **Purchase Price.** Each Bid must clearly set forth the purchase price to be paid (the "Purchase Price"). The Purchase Price must propose a purchase price for all or substantially all of the Purchased Assets, including any assumption of liabilities, that has a value that equals or exceeds the sum of the following (a "Minimum Bid"), as determined one week prior to the Bid Deadline in consultation with the DIP Agent, the Secured Lender, and the Committee: (i) the Cash Purchase Price, (ii) the Bid Protections, and (iii) $1,000,000 (i.e., $87,150,000), subject to the adjustments set forth in the Stalking Horse APA. Subject to the immediately preceding sentence, the Purchase Price contained in a Bid may be structured in whatever form the Potential Bidder desires (e.g., a Potential Bidder may propose an all cash Bid).

    d. **Deposit.** With its Bid, each Potential Bidder must submit by wire transfer of immediately available funds, a cash deposit in the amount equal to six percent (6%) of the aggregate Purchase Price set forth in the Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Deposit").

    e. **Same or Better Terms**. Each Bid must be on terms that are not more burdensome to the Silver Lake Debtors than the terms of the Stalking Horse APA, as determined by the Debtors (in consultation with the DIP Agent, the Secured Lender, and the Committee). Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the Sale and shall include a schedule of executory contracts and unexpired leases proposed to be assumed by the Silver Lake Debtors and assigned to the Qualified Bidder ("Assumed Contracts"), and a copy of the Stalking Horse APA clearly marked to show all changes requested by the Qualified Bidder, including those related to the respective Purchase Price and assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such bid and a written commitment demonstrating to the satisfaction of the Debtors (in consultation with the DIP Agent, Secured Lender, and the Committee) that the Qualified Bidder will be able to close the transaction proposed in its Bid on the terms and conditions set forth therein (the "Qualified Bid Documents").

f. **Contingencies; No Financing or Diligence Outs**.  A Bid shall not be conditioned on (i) obtaining financing, (ii) shareholder, board of directors, or other internal approval, or (iii) the outcome or completion of a due diligence review by the Potential Bidder.  Notwithstanding the foregoing, a Bid may be subject to (i) the accuracy at the closing of the Sale of specified representations and warranties or (ii) the satisfaction at the closing of the Sale of specified conditions, which shall not be more burdensome to the Debtors, as determined by the Debtors (in consultation with the DIP Agent, Secured Lender, and the Committee), than those set forth in the Stalking Horse APA.

g. **Identity**.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the Sale), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific persons and counsel whom the Debtors and their advisors should contact regarding such Bid.  Each Bid must also disclose any past or present connections or agreements with the Debtors, the Stalking Horse Bidder, any other Potential Bidder or Qualified Bidder and its affiliates, and/or any officer or director of the foregoing (including any current officer or director of the Debtors).

h. **Demonstrated Financial Capacity**.  A Qualified Bidder must have, in the Debtors' reasonable business judgment (in consultation with the DIP Agent, the Secured Lender, and the Committee), the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.  Each Bid must be accompanied by reasonable evidence of the Qualified Bidder's ability to operate the business related to the Purchased Assets and include a packet of information, including financial information that will be provided to the non-Debtor counterparties to Assumed Contracts sufficient to demonstrate adequate assurance of future performance.

i. **Committed Financing.**  To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include executed unconditional committed financing from a qualified source documented to the satisfaction of the Debtors (in consultation with the DIP Agent, Secured Lender, and the Committee), which demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors (in consultation with the DIP Agent, Secured Lender and the Committee).

j. **Binding and Irrevocable.** A Qualified Bid must include a signed writing stating that the Qualified Bid is irrevocable until the later of (i) two (2) business days after the closing of a Sale to another Qualified Bidder, and (ii) thirty (30) days after the conclusion of the Sale Hearing (as defined below).

k. **Expenses; Disclaimer of Fees.** Each Bid (other than the Stalking Horse APA) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Potential Bidder (other than the Stalking Horse Bidder) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

l. **Authorization.** Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors in consultation with the DIP Agent, the Secured Lender, and the Committee) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

m. **As-Is, Where-Is.** Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to submitting the Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid.

n. **Adherence to Bidding Procedures**. By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction. Each Bid must expressly state that the Potential Bidder agrees to serve as a Backup Bidder (as defined below) if such bidder's Qualified Bid is selected as the next highest or otherwise next best bid after the Successful Bid.

o. **Regulatory Approvals and Covenants**. A Bid must set forth each regulatory and third-party approval needed to consummate the Sale and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement, those actions the Qualified Bidder will take to ensure receipt of such approvals as promptly as possible). A Bid must also state that all necessary filings under applicable regulatory, antitrust, and other

        laws will be made and that payment of the fees associated therewith shall be made by the Potential Bidder.

    p. **Consent to Jurisdiction**. Each Potential Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the closing of the Sale, as applicable.

    q. **Bid Deadline**. Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before 4:00 p.m. (prevailing Eastern Time) on December 21, 2018 (the "Bid Deadline") by the Bid Notice Parties.

The Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Silver Lake Debtors' assets that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid. The Debtors may also permit otherwise Qualified Bidders who submitted Bids by the Bid Deadline for a material portion of the Silver Lake Debtors' assets but who are not identified as a component of a single Qualified Bid consisting of multiple Bids, to participate in the Auction and to submit higher and/or otherwise better Bids that in subsequent rounds of bidding may be considered, together with other Bids for non-overlapping portions of the Debtors' assets, as part of such a single Qualified Bid.

## 6. Right to Credit Bid.

At the Auction, subject to section 363(k) of the Bankruptcy Code, any Qualified Bidder who has a valid and perfected lien on any assets of the Silver Lake Debtors' estates (each, a "Secured Creditor"), shall have the right to credit bid all or a portion of the value of such Secured Creditor's allowed secured claims to the extent that such secured claims are valid and undisputed pursuant to, and in accordance with, Bankruptcy Code section 363(k) or other applicable law (each such bid, a "Credit Bid"). A Credit Bid may be applied only to reduce the cash consideration with respect to the assets in which the party submitting the Credit Bid holds a valid, properly perfected security interest with respect to which there are no other more senior security interests. Each person or entity holding a valid, properly perfected security interest in assets with respect to which there are no other more senior security interests for which it submits a bid shall be deemed a Qualified Bidder with respect to its right to acquire such assets by Credit Bid.

In the event of a competing Qualified Bid, the Stalking Horse Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any and all such overbids to include the full amount of the Bid Protections in lieu of cash and for purposes of evaluating the overbid equal to cash in the same amount.

Credit Bids, if any, by Secured Creditors will not impair or otherwise affect the Stalking Horse Bidder's entitlement to the Bid Protections granted under the Bidding Procedures Order.

7. **Auction.**

If the Debtors receive a Qualified Bid, other than the Stalking Horse APA, the Debtors will conduct an Auction to determine (in consultation with the DIP Agent, the Secured Lender, and the Committee) the Successful Bidder(s). The Debtors shall notify the Stalking Horse Bidder if one or more Qualified Bids are received and the identity of the bidders making any such Qualified Bids. (To the extent that the Stalking Horse Bidder has not previously received a copy of any Bid, the Debtors shall promptly provide a copy thereof, or copies thereof, as the case may be, to the Stalking Horse Bidder, and prior to a determination by the Debtors as to whether a Bid is a Qualified Bid.) If the Debtors do not receive a Qualified Bid (other than the Stalking Horse APA), the Debtors will not conduct an Auction and shall designate the Stalking Horse Bidder's Bid as the Successful Bid.

On the date that is one (1) business day after the Bid Deadline or such other time as is reasonably practicable, but not later than noon Eastern Time on the day before the Auction, the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid, as determined in the Debtors' sole business judgment (the "Baseline Bid"), after consultation with the DIP Agent, Secured Lender, and the Committee, and provide copies of the applicable Qualified Bid Documents supporting the Baseline Bid to each Qualified Bidder. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors (in consultation with the DIP Agent, Secured Lender, and the Committee) reasonably deem relevant to the value of the Qualified Bid to the Silver Lake Debtors' estates, which may include, among other things: (a) the number, type, and nature of any changes to the applicable Stalking Horse APA, if any, requested by the Qualified Bidder, including the type and amount of Purchased Assets sought to be acquired and obligations sought to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close the applicable Sale and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Silver Lake Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (e) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria"). Only the Stalking Horse Bidder and other Qualified Bidders will be entitled to make any subsequent bids at the Auction. At least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction and all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person.

The Auction, if necessary, will be conducted at the offices of DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801 on January 4, 2019 at 10:00 a.m. (prevailing Eastern Time), or at such other time and location as designated by the Debtors. The Auction, if necessary, shall be conducted in a timely fashion according to the following procedures:

a. **The Debtors Shall Conduct the Auction.**

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids

made thereafter shall be Overbids (defined below) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

The Auction will be conducted openly and all creditors will be permitted to attend. The Qualified Bidders and the Stalking Horse Bidder may appear at the Auction in person or through duly authorized representatives.

b. **Terms of Overbids.**

"Overbid" means any bid made at the Auction by a Qualified Bidder[2] subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

(i) **Minimum Overbid Increment.** The initial Overbid, if any, shall provide for total consideration to the Silver Lake Debtors with a value that exceeds the value of the consideration under the Baseline Bid by an incremental amount that is not less than the $2,500,000 (a "Minimum Overbid Increment").

Additional consideration in excess of the amount set forth in the respective Baseline Bid must include: (1) cash, or (2) in the case of a Bid by a Secured Creditor, a credit bid of up to the full amount of such secured creditors' allowed secured claim, subject to section 363(k) of the Bankruptcy Code and any other restrictions set forth herein.

(ii) **Conclusion of Each Overbid Round.** Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their reasonable business judgment, after consultation with the DIP Agent, the Secured Lender, and the Committee, extend from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

(iii) **Overbid Alterations.** An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Silver Lake Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment (in consultation with the DIP Agent, the Secured Lender, and the Committee), but shall otherwise comply with the terms of these Bidding Procedures. Any Overbid must comply with the conditions for a Qualified Bid.

(iv) **Announcing Highest Bid.** Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified (in

---

[2] Or Qualified Bidders, in the event of a Joint Bid.

consultation with the DIP Agent, the Secured Lender, and the Committee) in the initial applicable Overbid round, an Overbid as being higher or otherwise better than the Baseline Bid for the Purchased Assets, or in subsequent rounds, the Overbid previously designated by the Debtors (after consultation with the DIP Agent, the Secured Lender, and the Committee) as the prevailing highest or otherwise best Bid for the Purchased Assets (the "Prevailing Highest Bid"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid.

    c.    **Consideration of Overbids.**

The Debtors reserve the right, in their discretion (in consultation with the DIP Agent, the Secured Lender, and the Committee) to adjourn the Auction one or more times to, among other things: (i) facilitate discussions among the Debtors, and any Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment (in consultation with the DIP Agent, the Secured Lender and the Committee), may require, including that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount; and (iv) to provide the Debtors with an opportunity to consider (in consultation with the DIP Agent, the Secured Lender, and the Committee) how to value each Overbid. The full amount of the Bid Protections shall be included as value of any bid made by the Stalking Horse Bidder in each round of bidding at the Auction, including for purposes of comparing the value of a Qualified Bidder's Overbid to the bid of the Stalking Horse Bidder in any round of bidding.

    d.    **Closing the Auction.**

    (i)    The Auction shall continue until there is only one Bid or Joint Bid, as applicable, that the Debtors determine, in their reasonable business judgment (in consultation with the DIP Agent, the Secured Lender, and the Committee), is the highest or otherwise best Bid. Such Bid or Joint Bid, as applicable, shall be declared the "Successful Bid," and such Qualified Bidder (or Qualified Bidders, in the event of a Joint Bid) the "Successful Bidder(s)," at which point the Auction will be closed. The Debtors shall notify the Qualified Bidders of the Successful Bid within one business day following such selection. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Bankruptcy Court of the Successful Bid.

    (ii)    The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

12

    (iii)    As soon as reasonably practicable after closing the Auction, the Debtors shall file on the docket, but not serve, the Post-Auction Notice, substantially in the form attached to the Motion as **Exhibit I**, which shall identify the Successful Bidder(s) and Backup Bidder.

    e.    **No Collusion; Good-Faith Offer.**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith offer and it intends to consummate the Sale if selected as the Successful Bidder(s). All Potential Bidders and all Qualified Bidders will immediately disclose to the Debtors, the United States Trustee, the DIP Agent, the Secured Lender, and the Committee any discussions regarding employment of or offers to retain or employ any officer or insider of the Debtors.

**8.**    **Backup Bidder.**

    a.    Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Bid at the Auction, as determined by the Debtors in their discretion and in consultation with the DIP Agent, the Secured Lender, and the Committee (the "Backup Bid"), shall be required to serve as a backup bidder (the "Backup Bidder"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

    b.    The identity of the Backup Bidder and the amount and material terms of the Backup Bid shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder(s). The Backup Bidder shall be required to keep its Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable, until the closing of the Sale with the Successful Bidder(s). The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder(s) and shall thereafter be returned within five (5) business days.

    c.    If a Successful Bidder(s) fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may select (in consultation with the DIP Agent, the Secured Lender, and the Committee) the applicable Backup Bidder as the Successful Bidder(s), and such Backup Bidder shall be deemed a Successful Bidder(s) for all purposes. The Silver Lake Debtors will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid without further order of the Bankruptcy Court or notice to any party. In such case, the defaulting Successful Bidder(s)'s Deposit shall be forfeited to the Silver Lake Debtors. The Silver Lake Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder(s), including with respect to specific performance.

      d.      Notwithstanding anything to the contrary in this section 8 or the Bidding Procedures Order, if the Stalking Horse Bidder is required to serve as Backup Bidder, the terms and conditions of such service shall be governed by the Stalking Horse APA.

**9.**      **Reservation of Rights.**

Without prejudice to the rights of the Stalking Horse Bidder under the terms the Stalking Horse APA, or the rights of any DIP Agent in respect of any sale-related milestones set forth in the Debtors' debtor-in-possession credit agreement, the Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment (in consultation with the DIP Agent, the Secured Lender, and the Committee) in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Purchased Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any and all bids or Bids.

**10.**      **Sale Hearing.**

A hearing to consider approval of the Sale of the Purchased Assets to the Successful Bidder(s) (or to approve the Stalking Horse Agreement if no Auction is held) (the "Sale Hearing") is currently scheduled to take place at [10:00 a.m.] (prevailing Eastern Time) on [January 21, 2019], before the Honorable Christopher S. Sontchi, at the Bankruptcy Court, 824 Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder).**

At the Sale Hearing, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval.

**11.**      **Bid Protections.**

To provide an incentive and to compensate the Stalking Horse Bidder for performing the substantial due diligence and incurring the expenses necessary and entering into a Stalking Horse APA with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Silver Lake Debtors have agreed to pay the Stalking Horse Bidder, under the conditions and in the amount set forth in the Bidding Procedures Order and the Stalking Horse APA:

      a.      a break-up fee in the amount totaling $2,524,500 (3% of the Base Cash Amount of the Purchase Price as set forth in the Stalking Horse APA) (the "Breakup Fee"); and

  b.  costs and expenses incurred by the Stalking Horse Bidder related to its due diligence, and pursuing, negotiating, and documenting the transaction(s) contemplated by the Stalking Horse APA, in the amount of $2,000,000 (the "<u>Expense Reimbursement Fee</u>" and, together with the Breakup Fee, the "<u>Bid Protections</u>"), payable pursuant to the terms of the Stalking Horse APA in the event that the Stalking Horse APA is terminated due to the Silver Lake Debtors' consummation of an Alternative Transaction and/or under such other conditions specified in the Stalking Horse APA.

  The Silver Lake Debtors have agreed that their obligations to pay the Bid Protections shall survive termination of the Stalking Horse APA, and to the extent owed by the Silver Lake Debtors, be allowed superpriority administrative expense claims under sections 503(b) and 507 of the Bankruptcy Code and shall be payable under the terms of the Stalking Horse APA and the Bidding Procedures Order.

  The Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auction, including the right to object to the conduct of the Auction and interpretation of these Bidding Procedures.

**12.**  **Return of Deposit.**

  The Deposit of the Successful Bidder(s) shall be applied to the Purchase Price of the transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their reasonable business judgment and shall be returned (other than with respect to the Successful Bidder(s) and the Backup Bidder) on or within five (5) business days after the Auction.

  If the Successful Bidder(s) fails to consummate the Sale because of a breach by the Successful Bidder(s), the Debtors will not have any obligation to return the Deposit deposited by the Successful Bidder(s), which may be retained by the Silver Lake Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Silver Lake Debtors (and subject to the Stalking Horse APA, as to the Stalking Horse Bidder), and the Silver Lake Debtors shall be free to consummate the Sale with the Backup Bidder without the need for an additional hearing or order of the Bankruptcy Court, in which case the Backup Bidder's Deposit shall be applied to the Purchase Price.

**13.**  **Fiduciary Out.**

  Nothing in these Bidding Procedures shall require the Debtors' boards of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent the Debtors' boards of directors determine, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or their fiduciary obligations under applicable law; *provided* that in the event of any such action, all rights and remedies of the Stalking Horse Bidder in these Bidding Procedures, the Stalking Horse APA, and/or applicable law shall be reserved and preserved.