# **EXHIBIT C**

## **Sale Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------x
                                                              :
In re:                                                        :  Chapter 11
                                                              :
PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1]                   :  Case No. 18-12491 (CSS)
                                                              :
                    Debtors.                                  :  (Joint Administration Requested)
--------------------------------------------------------------x

**ORDER (I) APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) AUTHORIZING SUCCESS HEALTHCARE 1, LLC TO GRANT LIENS; AND (IV) GRANTING RELATED RELIEF**

Upon the motion [D.I. ___] (the "Motion")[2] for entry of an order (this "Order") (i)

approving the sale of substantially all of the Silver Lake Medical Center assets[3] of Success

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

[2] Capitalized terms, unless otherwise defined herein, shall have the meanings ascribed to them in the Motion or the APA, as applicable.

[3] For the avoidance of doubt, the assets of St. Alexius Hospital are not included in the "Purchased Assets" and are not the subject of the Motion or this Order.

Healthcare, LLC, Success Healthcare 1, LLC, and HLP of Los Angeles, LLC (collectively, the "Silver Lake Debtors") free and clear of all Encumbrances (as defined herein), (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases, (iii) authorizing Success Healthcare 1, LLC ("Success 1") to grant liens, and (iv) granting related relief; and the Court having considered the Motion, the arguments of counsel and the evidence presented at the hearing on the Motion (the "Sale Hearing"), and the entire record; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and all objections thereto (the "Objections"); and it appearing that the relief requested in the Motion is in the best interest of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby,

**FOUND AND DETERMINED THAT:**

**Determination with Respect to the Findings of Fact and Conclusions of Law**

A. The findings of fact and conclusions of law set forth in this Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this case pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such. Any findings of fact or conclusions of law stated by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not inconsistent with this Order.

**Jurisdiction, Final Order, and Statutory Predicates**

B.     This Court has jurisdiction to hear and determine the Motion and over the

Debtors, their estates, and the Purchased Assets, as defined in the Asset Purchase Agreement

dated as of October 24, 2018 (the "APA"), by and between the Silver Lake Debtors and L.A.

Downtown Medical Center LLC ("Successful Bidder"), a copy of which is attached hereto as

Exhibit A, and the Collateral,[4] as defined in each Security Agreement attached hereto as Exhibit

B (the "Security Agreements")[5] to be entered into by Success 1 and Ally Bank, in its capacity as

administrative agent for the Lenders (as defined in the Security Agreements), pursuant to 28

U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of

this case and this Motion in the District of Delaware is proper pursuant to 28 U.S.C. §§ 1408 and

1409.

C.     The statutory and legal predicates for the relief requested in this Motion are

sections 105(a), 363(b), (f), and (m), 364, 365, 503, and 507 of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2002, 4001, 6004, 6006, 9007, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1 of the Local Rules of

---

[4] "Collateral" as defined in the Security Agreements includes, without limitation, the following property of Success 1:  Accounts (including, without limitation, all Health-Care-Insurance Receivables and any Account or portion of an Account arising under the QAF Program), Chattel Paper, certain Commercial Tort Claims, Deposit Accounts, Documents, General Intangibles, including Payment Intangibles, Software and Intellectual Property, Inventory, Equipment, fixtures and other Goods, Instruments, Investment Property, all letters of credit, Letter-of-Credit Rights, Supporting Obligations and Government Authorizations, all monies, Medicare and Medicaid provider agreements and numbers owned or used by Success 1 in connection with the operation of the Hospitals, all of Success 1's rights under the QAF Program, all books and records pertaining to the foregoing, and all other assets, personal property and rights of success 1, all Proceeds and products of each of the foregoing.  The Collateral is in large part a subset of the Purchased Assets; however, there are certain pieces of the Collateral that are not included in the Purchased Assets because of the nature of those assets and the Silver Lake Debtors' inability to transfer them outright to the Successful Bidder at Closing.  It is intended that the remaining assets (the "Deferred Assets" as defined in the APA) will be transferred to the Successful Bidder on the Transition Date.

[5] At Closing, Success 1 will execute three separate Security Agreements, each substantially in the form attached hereto as Exhibit B, pursuant to which Success 1 will grant Liens on the Collateral in favor of Ally Bank, in its capacity as administrative agent for the Lenders under each of the Security Agreements.   The Liens granted pursuant to the Security Agreements will be have priority among one another as determined by an Intercreditor Agreement that will also be executed at Closing (the "Intercreditor Agreement").  Unless otherwise indicated, references herein to "Agent" shall include Ally Bank in its capacity as administrative agent under all three Security Agreements and references herein to "Lenders" shall refer to all Lenders under each of the Security Agreements.

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

D.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth in this Order.

E.     On [November ____], 2018, the Court entered the *Order (I) Establishing Bidding Procedures Relating to the Sale of Certain of the Debtors' Assets, Including Approving A Break-Up Fee and Expense Reimbursement, (II) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, (III) Approving Form and Manner of Notice Relating Thereto, and (IV) Scheduling a Hearing to Consider the Proposed Sale* (the "Bidding Procedures Order") [D.I. __].

F.     The Purchased Assets and Collateral constitute property of the Silver Lake Debtors' estates, and title to the Purchased Assets and Collateral is vested in the Silver Lake Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

G.     The Successful Bidder is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such, in the absence of a stay pending appeal, may close the transaction contemplated by the APA at any time on or after entry of this Order, and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

**Notice of the Sale, Sale Hearing, and the Cure Amounts**

H. Actual written notice of the Motion and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein have been afforded to all known interested persons and entities, including, but not limited to the following parties: (a) all entities known to have expressed an interest in a transaction with respect to some or all of the Silver Lake Debtors' assets during the past nine (9) months; (b) all entities known to have asserted any Interest in or upon any of the Silver Lake Debtors' assets; (c) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (d) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Stalking Horse Bidder or Successful Bidder; (e) the Office of the United States Trustee for the District of Delaware; (f) counsel to any committee of unsecured creditors appointed in the Chapter 11 Cases (the "Committee"); (g) counsel to the DIP Agent; (h) the Office of the United States Attorney General for the District of Delaware; (i) the Internal Revenue Service; (j) the U.S. Department of Justice; (k) the offices of the attorneys general for the states in which the Silver Lake Debtors operate; (l) counsel to the Stalking Horse Bidder; (m) all of the Silver Lake Debtors' insurers; (n) counsel to the Secured Lender; (o) all parties entitled to notice pursuant to Local Rule 2002-1(B); (p) to the extent not already included above, all parties in interest listed on the Silver Lake Debtors' creditor matrix; and (q) other persons reasonably requested by the Stalking Horse Bidder (collectively, the "Notice Parties")

I. In accordance with the provisions of the Bidding Procedures Order, the Debtors served the *Notice of Auction and Sale Hearing* [D. I. __, Exhibit H] (the "Auction and Sale Notice") on the Notice Parties. The Auction and Sale Notice provided all interested parties

with timely and proper notice of the Sale, Bid Deadline, Auction, Sale Objection Deadline, and Sale Hearing.

J.       In accordance with the provisions of the Bidding Procedures Order, the Debtors served the *Notice of Potential Assumption and Assignment of Contracts and Related Cure Amounts* [D. I. __, Exhibit J] (the "<u>Assumption and Assignment Notice</u>") upon all counterparties to the Purchased Contracts and their counsel (if known).   The Assumption and Assignment Notice specified: (a) each of the Silver Lake Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale (the "<u>Purchased Contracts</u>"), including the name of each non-Debtor counterparty to such Purchased Contract (the each, a "<u>Purchased Contract Counterparty</u>" and collectively, the "<u>Purchased Contract Counterparties</u>"); (b) the proposed amount necessary, if any, to cure all monetary defaults, if any, under the Purchased Contract (the "<u>Cure Costs</u>"); and (c) the deadline by which the Purchased Contract Counterparty shall have filed an objection to the Cure Costs or to assumption and assignment of the applicable Purchased Contract.   In the event that the Stalking Horse Bidder exercised its right to add additional Purchased Contracts, the Debtors served a supplemental notice of assumption and assignment, by first class mail, on any Purchased Contract Counterparty whose Business Contract was added to the Purchased Contracts List, and its attorney, if known, at the last known address available to the Debtors (a "<u>Supplemental Notice of Assumption and Assignment</u>"). Each Supplemental Notice of Assumption and Assignment included the same information with respect to any added Purchased Contracts as was included in the Notice of Assumption and Assignment.   Pursuant to Bankruptcy Rule 6006(c), the Court finds that the service of the Assumption and Assignment Notice or the Supplemental Notice of Assumption and Assignment, as applicable, was adequate, sufficient and appropriate under the circumstances, in compliance

with the Bidding Procedures Order, and no further notice need be given in respect of establishing the Cure Costs. The Purchased Contract Counterparties have had an opportunity to object to the Cure Costs set forth in the Assumption and Assignment Notice.

K.     As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate and sufficient notice of the Motion, APA, Auction, Sale Hearing, and Sale has been provided in accordance with sections 102(1), 363, 364, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006 and 9014 and Local Rules 2002-1, 6004-1, and 9014-1. The Debtors have also complied with all obligations to provide notice of the Auction, the Sale Hearing, the APA, the Security Agreements, the Subordination Agreements (each as defined herein), and the Sale as required by the Bidding Procedures Order. The notices described in paragraphs H through J herein were adequate, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, Sale Hearing, Security Agreements, Subordination Agreements, Sale, or assumption and assignment of the Purchased Contracts is required.

L.     The Assumption and Assignment Notice provided the Successful Bidder and each Purchased Contract Counterparty with proper notice of the potential assumption and assignment of the Purchased Contracts and any Cure Costs relating thereto, and the procedures set forth therein with regard to any such Cure Costs satisfy section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

M.     The Debtors have articulated good and sufficient reasons for the Bankruptcy Court to grant the relief requested in the Motion.

N.     The disclosures made by the Debtors concerning the Motion, the Sale, the APA, the Security Agreements, the Subordination Agreements, and the Sale Hearing were good, complete and adequate.

**Good Faith of the Successful Bidder**

O.     The Successful Bidder is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is, therefore, entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, among other things: (a) the Successful Bidder recognized that the Silver Lake Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (b) the Successful Bidder complied with the provisions in the Bidding Procedures Order; (c) the Successful Bidder agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (d) the Successful Bidder did not induce or cause the chapter 11 filing by the Debtors; (e) all payments to be made by the Successful Bidder and other agreements or arrangements entered into by the Successful Bidder in connection with the Sale have been disclosed; (f) the Successful Bidder has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (g) the negotiation and execution of the APA, the Interim Management Agreement, the Security Agreements, the Subordination Agreements, and any other agreements or instruments related thereto were at arms' length and in good faith.

**Highest or Otherwise Best Offer**

P.     The Debtors solicited offers and noticed the Auction in accordance with the provisions of the Bidding Procedures Order.  The Auction was duly noticed, the sale process was conducted in a non-collusive manner, and the Debtors afforded a full, fair, and reasonable

opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.

Q.      [No other Qualified Bid was received by the Bid Deadline.  Accordingly, on [_____], 2018, the Debtors filed the Post-Auction Notice [D.I. __, Exhibit G] with the Court.]

R.      The APA constitutes the highest or otherwise best offer for the Purchased Assets and will provide a greater recovery for the Silver Lake Debtors' estates than would be provided by any other available alternative.  The Debtors' determination, in consultation with the Committee, the DIP Agent, and the Secured Lender, that the APA constitutes the highest or best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

S.      The APA represents a fair and reasonable offer to purchase the Purchased Assets, including the Purchased Contracts, under the circumstances of these Chapter 11 Cases.  No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Silver Lake Debtors' estates than the Successful Bidder.

T.      Approval of the Motion and the APA and the consummation of the transactions contemplated thereby are in the best interests of the Silver Lake Debtors, their creditors, their estates and other parties in interest.

U.      The Silver Lake Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale outside of a plan of reorganization.

**No Fraudulent Transfer**

V.      The consideration provided by the Successful Bidder pursuant to the APA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia.  The APA was not entered into and will not be consummated for the purpose of hindering, delaying or defrauding creditors of the Silver Lake Debtors, and neither the Silver Lake Debtors nor the Successful Bidder have or has entered into the APA or is or are consummating the transactions contemplated thereby with any fraudulent or otherwise improper purpose.

**Validity of Transfer**

W.      The Silver Lake Debtors have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and no further consents or approvals are required for the Silver Lake Debtors to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.

X.      The transfer of each of the Purchased Assets, including the Purchased Contracts, to the Successful Bidder will be, as of the Closing Date, a legal, valid and effective transfer of such assets and will vest the Successful Bidder with all right, title, and interest of the Silver Lake Debtors to the Purchased Assets free and clear of all Encumbrances (as defined herein) accruing, arising or relating to any time prior to the Closing Date, except for any Permitted Exceptions and Assumed Liabilities under the APA.

**Section 363(f) of the Bankruptcy Code Is Satisfied**

Y.      The Successful Bidder would not have entered into the APA and would not consummate the transactions contemplated thereby (by paying the Purchase Price and assuming the Assumed Liabilities) if the sale of the Purchased Assets to the Successful Bidder, and the sale

and assumption and assignment of the Purchased Contracts to the Successful Bidder, were not, except as otherwise provided in the APA with respect to the Assumed Liabilities, free and clear of all Encumbrances of any kind or nature whatsoever, or if the Successful Bidder would, or in the future could, be liable for any of such Encumbrances, including, but not limited to the Excluded Liabilities.

Z.      The Successful Bidder (i) is not, and shall not be considered, a successor to the Silver Lake Debtors, (ii) has not, *de facto* or otherwise, merged with or into the Silver Lake Debtors, (iii) is not a continuation or substantial continuation, and is not holding itself out as a mere continuation, of the Silver Lake Debtors or their estates, business or operations, or any enterprise of the Silver Lake Debtors, and (iv) does not have a common identity of incorporators, directors or equity holders with the Silver Lake Debtors.  The Successful Bidder shall have no, and shall not be deemed to have or to have assumed or become obligated by operation of law or in equity for, any liability or Encumbrance except as expressly assumed under the APA.

AA.     The Silver Lake Debtors may sell the Purchased Assets, including the Purchased Contracts, free and clear of all Encumbrances (except for the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of the Encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances, if any, attach to the cash proceeds of the Sale attributable to the Purchased Assets in which such holder alleges an Encumbrance, in the same order of priority, with the same validity, force and effect that such Encumbrance had prior to the

Sale, subject to any claims and defenses the Silver Lake Debtors and their estates may possess with respect thereto.

**Assumption and Assignment of Executory Contracts and Leases**

BB.     The sale and assumption and assignment of the Purchased Contracts pursuant to the terms of this Order is integral to the APA, is in the best interests of the Silver Lake Debtors and their estates, creditors and other parties in interest and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

CC.     Pursuant to the terms of the APA, at Closing, the Silver Lake Debtors shall assume and assign to the Successful Bidder each of the Purchased Contracts identified on Annex 2.6(a) to the APA that is capable of being assumed and assigned.  The Silver Lake Debtors shall be responsible for the payment of Cure Costs solely with respect to the Purchased Contracts specifically set forth on Annex 2.6(a) to the APA.  The Successful Bidder shall assume and perform and discharge the Assumed Liabilities, if any, under the Purchased Contracts, including pursuant to any contract or lease assignment agreements, as applicable.  The Successful Bidder has provided adequate assurance of its future performance under the Purchased Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to any counterparty to a Purchased Contract that requested such assurance and shall have no further obligation to provide assurance of performance to any counterparty, except to the extent of timely-filed objections to such adequate assurance information.

**Compelling Circumstances for an Immediate Sale**

DD.     To enhance the Silver Lake Debtors' level of liquidity, to preserve the value of the Silver Lake Debtors' estates and reduce the amount of postpetition financing borne by the Silver Lake Debtors, and to maximize the amount of funding available to provide for a timely

exit from these Chapter 11 Cases, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the APA. Time is of the essence in consummating the Sale.

EE. Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the APA, the proposed Sale of the Purchased Assets to the Successful Bidder constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

FF. The Sale does not constitute a *de facto* or *sub rosa* plan of reorganization or liquidation because it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Silver Lake Debtors, (ii) impair or circumvent voting rights with respect to any plan proposed by the Silver Lake Debtors, (iii) circumvent chapter 11 safeguards, including those set forth in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests.

GG. The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 364, 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the Sale.

**[Granting of Liens By Success Healthcare 1, LLC to Successful Bidder's Lender**

HH. Successful Bidder is financing the acquisition of the Purchased Assets and working capital following the Sale. Accordingly, following the entry of this Order and substantially contemporaneously with the Closing of the Sale, the Successful Bidder, Agent, and Lenders intend to enter into (a) that certain Amended and Restated Credit Agreement (the "Non-HUD Credit Agreement"), (b) that certain Term Loan Agreement (the "Term Loan

Agreement,"), and (c) that certain Credit Agreement (the "HUD Credit Agreement" and together with the Non-HUD Credit Agreement, the Term Loan Agreement, and all related loan documents, the "Acquisition Financing Agreements"), pursuant to which the Lenders will make certain loans and other financial accommodations to the Successful Bidder and other affiliated entities (collectively, "Borrowers").

II.     To induce Lenders and as a condition precedent to Agent and Lenders entering into the Acquisition Financing Agreements and making the related loans to the Borrowers, Success 1 is, pursuant to this Order and the Security Agreements, (i) granting first priority Liens on the Collateral (the "Seller Liens") in favor of Agent, for the benefit of Lenders, to further secure Borrower's obligations under the Acquisition Financing Agreements, with recourse against Success 1 limited to the Collateral, and (ii) agreeing to enter into three Subordination Agreements (each a "Subordination Agreement" and, collectively, the "Subordination Agreements"), each in substantially the forms attached hereto as Exhibit C, with Agent and Borrowers, pursuant to which Success 1 will, among other things, subordinate the indebtedness owed by the Successful Bidder to Success 1 in connection with an $8.1 million seller note (the "Seller Note") to be provided by the Stalking Horse Bidder to Success 1 at Closing to the indebtedness owed by the Successful Bidder to Agent and Lenders.

JJ.     As set forth in the resolutions accompanying [the First Day Declaration] filed in these Chapter 11 Cases [D.I.___], Success 1 has all requisite corporate power and authority to execute and deliver the Security Agreements and Subordination Agreements, to grant the Seller Liens, and to perform its obligations under the Security Agreements and Subordination Agreements.

**Sections 364(c)-(e) of the Bankruptcy Code Are Satisfied with Respect to Security Agreements and Subordination Agreements**

KK.     Good cause has been shown for authorizing Success 1 to enter into the Security

Agreements and Subordination Agreements, as they are necessary for the Successful Bidder to

finance its purchase of the Purchased Assets under the APA, to preserve and maintain the value

of the Silver Lake Debtors' assets, and to maximize the return for all creditors.  The Successful

Bidder is unable to obtain credit to finance its acquisition of the Purchased Assets otherwise.

The proposed Security Agreements and Subordination Agreements are therefore in the best

interests of the Silver Lake Debtors, their estates, and their creditors.

LL.     The interests of any holders of Encumbrances on the Collateral are adequately

protected because the Collateral is in large part a subset of the Purchased Assets, and such

Encumbrances shall attach to the proceeds of the Sale.  To the extent the Collateral constitutes

Deferred Assets, such Deferred Assets will be assigned, transferred, conveyed and delivered to

the Successful Bidder on the Transition Date pursuant to the APA.  In each case, the Successful

Bidder has consented to the Seller Liens.

MM.    The terms and conditions of the Security Agreements and Subordination

Agreements are fair, reasonable, and the best available under the circumstances, reflect the Silver

Lake Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and

are supported by reasonably equivalent value and consideration.

NN.     The Security Agreements and Subordination Agreements were negotiated in good

faith and at arms' length between the Silver Lake Debtors and Agent.  Agent and Lenders have

acted to date and are acting in good faith with respect to the terms and conditions of the

Acquisition Financing Agreements, the Security Agreements and the Subordination Agreements.

OO.     The credit to be extended and debt to be incurred under the Acquisition Financing

Agreements and the Security Agreements will be so extended and incurred in good faith, and for

valid business purposes and uses, including, without limitation, financing the Successful Bidder's acquisition of the Purchased Assets.

PP.     The Agent's and Lenders' claims, the Seller Liens, and other protections granted pursuant to this Order, the Security Agreements, and the Subordination Agreements will not be affected or avoided by any subsequent reversal or modification of this Order, as provided in section 364(e) of the Bankruptcy Code.

**Seller Lien Priority; No Surcharge**

QQ.     The Seller Liens shall be and hereby are, pursuant to section 364(d)(1) of the Bankruptcy Code and this Order, perfected, continuing, enforceable, non-avoidable senior priming Liens on the Collateral, and shall prime and have first priority over all other Encumbrances (as defined herein) on the Collateral, including any Encumbrances in existence on the Petition Date and any other current or future Encumbrances that may attach on the Collateral, and shall have priority in all of the Chapter 11 Cases and all successor cases over all administrative expense claims and unsecured claims against the Silver Lake Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364(b), 364(c)(1), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1113 and 1114,  and any other provision of the Bankruptcy Code or non-bankruptcy law, whether or not such expenses or claims may become secured by a Lien, levy or attachment, nor shall the Collateral be subject to a surcharge or "carve out" that is otherwise agreed to or approved in the Chapter 11 Cases or any successor cases.

RR.     Without limiting the foregoing, neither the Collateral nor the Seller Liens shall be made subject to, subordinate to, or *pari passu* with any other Encumbrance  or administrative

claim in the Chapter 11 Cases or any successor case, and neither the Collateral nor the Seller

Liens shall be subject to any costs, expenses, claims, or liabilities that have been or may be

incurred by Silver Lake Debtors during these Chapter 11 Cases, or in any successor cases,

regardless of whether such costs, expenses, claims or liabilities are secured by Encumbrances or

administrative expenses.]

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.      The relief requested in the Motion is GRANTED AND APPROVED as set forth

in this Order, and the Sale contemplated thereby is APPROVED.

2.      This Court's findings of fact and conclusions of law set forth in the Bidding

Procedures Order and above are fully incorporated into this Order by reference.

3.      Notice of the Motion, the Sale Hearing, the Security Agreements, the

Subordination Agreements, and the Sale was adequate, fair and equitable under the

circumstances and complied in all respects with section 102(1) of the Bankruptcy Code,

Bankruptcy Rules 2002, 4001, 6004, and 6006, and Local Rules 2002-1 and 6004-1.  All

objections to the Motion or the relief requested therein that have not been withdrawn, waived or

settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and

all reservations of rights included therein, are hereby overruled on the merits or have been

otherwise satisfied or adequately provided for pursuant to this Order.

**Approval of the APA**

4.      The APA and the terms and conditions thereof are hereby APPROVED, and the

Silver Lake Debtors are authorized and directed to enter into all related agreements and such

other ancillary documents consistent with the terms hereof and in furtherance thereof.

5.     Pursuant to section 363(b) of the Bankruptcy Code, the Silver Lake Debtors are authorized and directed to take any and all actions necessary or appropriate to (i) consummate the Sale of the Purchased Assets to the Successful Bidder pursuant to and in accordance with the terms and conditions of the APA, (ii) close the Sale as contemplated in the APA and this Order, and (iii) execute and deliver, close, perform under, consummate, and implement the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such ancillary documents.

6.     This Order shall be binding in all respects upon the Debtors, their estates, all holders of equity interests in the Silver Lake Debtors, all holders of any Claim(s) (as defined in the Bankruptcy Code) against the Silver Lake Debtors, whether known or unknown, any holders of Encumbrances on all or any portion of the Purchased Assets and the Collateral, all Purchased Contract Counterparties, the Successful Bidder, all successors and assigns of the Successful Bidder, Agent, Lenders, all successors and assigns of Agent and Lenders, any other bidders for the Purchased Assets, any trustees, if any, subsequently appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases, and all employee benefit plans in which the Silver Lake Debtors participated.  This Order, the APA, the Security Agreements, and the Subordination Agreements shall inure to the benefit of the Silver Lake Debtors, their estates, their creditors, the Successful Bidder, the Agent, the Lenders, and each of their respective successors and assigns.  Nothing contained in any plan of reorganization or liquidation or order of any type or kind entered in these Chapter 11 Cases or any subsequent chapter 7 or chapter 11 case for the Silver Lake Debtors or any related proceedings subsequent to

the entry of this Order shall directly conflict with or derogate from the provisions of the APA, the Security Agreements, the Subordination Agreements, or the terms of this Order.

**Transfer of the Purchased Assets**

7.     Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Silver Lake Debtors are authorized and directed to transfer the Purchased Assets on the Closing Date.  The Purchased Assets (including the Purchased Contracts) shall be transferred to the Successful Bidder upon and as of the Closing Date, and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and, upon the Silver Lake Debtors' receipt of the Purchase Price, shall be free and clear of all Liens, Claims, interests, rights of setoff, netting and deductions, rights of first offer, first refusal and any other similar contractual rights, and any successor or successor-in-interest liability theories (collectively, "Encumbrances"), except for the Assumed Liabilities under the APA.  Upon the Closing, the Successful Bidder shall take title to and possession of the Purchased Assets subject only to the Assumed Liabilities and, to the extent Collateral includes Purchased Assets, the Seller Liens.  All Encumbrances shall attach to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Silver Lake Debtors and their estates may possess with respect thereto.

8.     The Sale of the Purchased Assets to the Successful Bidder and the sale and assumption and assignment of the Purchased Contracts to the Successful Bidder, shall be, except as otherwise provided in the APA, the Security Agreements, and this Order, free and clear of all Encumbrances of any kind or nature whatsoever, including the Excluded Liabilities.  Neither the Purchased Assets nor the Collateral shall be subject to any claims or interests allowed in the Chapter 11 Cases, including, without limitation, any claims allowed under sections 361, 362,

363, 364, 365, 502, 503, 506, or 507 of the Bankruptcy Code, nor shall the Purchased Assets or

Collateral be subject to a surcharge or "carve out" that is otherwise agreed to or approved in the

Chapter 11 Cases.

9.      Except as expressly provided by the APA and Security Agreements, all persons

and entities holding Encumbrances on all or any portion of the Purchased Assets or the Collateral

hereby are forever barred, estopped and permanently enjoined from asserting against the

Successful Bidder or its successors or assigns, or Agent or Lenders or their respective successors

and assigns, their property, the Purchased Assets, or the Collateral, such Encumbrances and all

claims and rights relating thereto.  On the Closing Date, each holder of an Encumbrance is

authorized and directed to execute such documents and take all other actions as may be deemed

by the Successful Bidder or Agent to be necessary or desirable to release its Encumbrances on

the Purchased Assets or the Collateral, as provided for herein, as such Encumbrances may have

been recorded or may otherwise exist.

10.      All persons and entities are hereby forever prohibited and enjoined from taking

any action that would adversely affect or interfere with the ability of the Silver Lake Debtors to

sell and transfer the Purchased Assets to the Successful Bidder, including the sale, assumption

and assignment of the Purchased Contracts to the Successful Bidder in accordance with the terms

of the APA and this Order, or grant the Seller Liens to Agent, on behalf of Lenders, on the

Collateral pursuant to this Order and the Security Agreements.

11.      All persons and entities that are in possession of some or all of the Purchased

Assets and Collateral on the Closing Date are directed to surrender possession of such Purchased

Assets to the Successful Bidder or its assignee at the Closing, and to surrender possession of the

Collateral to Agent at the Closing or as they come into possession of the Collateral.

12.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the appropriate recorder to cancel any Encumbrances of record other than the Seller Liens.

13.     If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances on all or any portion of the Purchased Assets or the Collateral shall not have delivered to the Silver Lake Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Encumbrances and any other documents necessary or desirable to the Successful Bidder or Agent for the purpose of documenting the release of all Encumbrances, which the person or entity has or may assert with respect to all or any portion of the Purchased Assets or Collateral, the Silver Lake Debtors are hereby authorized and directed, and the Successful Bidder, Agent, and Lenders are hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets and the Collateral.

14.     This Order shall govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized and directed to accept for filing any and all of the documents and instruments

necessary and appropriate to consummate the transactions contemplated by the APA and Security Agreements.

[**Approval of the Seller Liens, Security Agreements and Subordination Agreements**[6]

15.     Success 1 is hereby authorized, empowered and directed to execute and deliver the Security Agreements and the Subordination Agreements at Closing, and to incur and to perform all of the obligations thereunder in accordance with, and subject to, the terms of this Order, the Security Agreements, and the Subordination Agreements, and to execute and deliver all instruments and documents that may be required or necessary for the performance by Success 1 under the Security Agreements and Subordination Agreements and the creation and perfection of the Seller Liens described in and provided for by this Order and the Security Agreements. All collections and proceeds of the Collateral, whether from ordinary course collections, sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Order and the Security Agreements.  The Security Agreements and Subordination Agreements shall represent valid and binding obligations of Success 1, enforceable against Success 1 and its estate in accordance with their terms.

16.     Effective immediately upon Closing, the Agent shall be and is hereby granted the Seller Liens on the Collateral, which shall be senior security interests with first priority over any and all Encumbrances, and which shall immediately be valid, binding, permanent, continuing, enforceable, perfected and non-avoidable, pursuant to section 364(d)(1) of the Bankruptcy Code, this Order, and the Security Agreements.  The Seller Liens shall be valid and automatically perfected without regard to applicable federal, state or local filing or recording laws.  Further, the

---

[6] All capitalized terms used in paragraphs 15 through 22 of this Order that are not otherwise defined herein shall have the meanings given to them in the Security Agreements.  These paragraphs may be removed if the Stalking Horse Bidder is not the Successful Bidder.

stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to allow the entry into any deposit account control agreement, and the filing and recording of any financing statements, notices of Lien or similar instruments as may be required by Agent, and all such documents shall be deemed to have been in full force and effect, filed or recorded concurrent with the entry of this Order.

17.     Following Closing, all Collections of Accounts constituting Collateral shall be transferred to the Agent's Account (or to such other deposit account(s) as Agent may designate by written notice to Success 1) in accordance with deposit account control agreements (or, with respect to Collections of Accounts on which Government Account Silver Lake Debtors are obligated, in accordance with deposit account instruction services agreements) with a United States depository institution acceptable to Agent as Agent shall require in its sole discretion.

18.     Success 1 shall ensure that (i) all Collections of its Accounts on which Government Account Silver Lake Debtors are obligated are paid directly into and deposited in a Government Receivables Deposit Account, and that all available funds deposited into such Government Receivables Deposit Account are transferred into a Non-Government Receivables Deposit Account by the close of each Business Day, and (ii) all Collections of its Accounts on which Non-Government Payors are obligated are paid directly into and deposited in a Non-Government Receivables Deposit Account, and that all available funds deposited into such Non-Government Receivables Deposit Account (including transfers from a Government Receivables Deposit Account) are transferred into Agent's Account (or to such other deposit account(s) as Agent may designate by written notice to Success 1) by the close of each Business Day.  Any Collections of Accounts constituting Collateral that are received by Success 1 (including Accounts on which Government Account Debtors are obligated and Accounts on which non-

Government Payors are obligated) shall be received in trust by Success 1 for Agent, and Success 1 shall promptly (and in any event within two (2) Business Days of receipt) remit in the form received, such Collections to a Non-Government Receivables Account. Success 1 shall not withdraw any amounts from any Government Receivables Deposit Account or Non-Government Receivables Deposit Account, nor shall Success 1 change the procedures or sweep instructions under any agreement governing a Government Receivables Deposit Account or a Non-Government Receivables Deposit Account. Success 1 agrees to indemnify and hold Agent harmless from any and all liabilities, claims, losses and demands whatsoever, including the fees and disbursements of legal counsel for Agent, including the charges of internal legal counsel, arising from or relating to actions of Agent or the Deposit Account Bank or any deposit account agreement, except to the extent any such liabilities, claims, losses or demands result from the gross negligence or willful misconduct of Agent or any Lender.

19.     Upon entry of this Order, the Seller Liens created by this Order and the Security Agreements shall attach immediately on any Collateral acquired after entry of this Order, and shall be valid and perfected with first priority without regard to applicable federal, state or local filing or recording laws. Success 1 shall, or shall cause Successful Bidder (or Successful Bidder's designee that is acceptable to Agent) to, promptly, and in any event within ten (10) days after Success 1 or its designee obtains knowledge thereof, provide written notice to Agent of any interest obtained by Success 1 after the date hereof in any Collateral consisting of Commercial Tort Claims, Deposit Accounts, Intellectual Property, Chattel Paper, Documents, Instruments, Investment Property, Letter-of-Credit Rights. Agent may, but shall not be required to, request Success 1 to promptly execute such agreements, instruments and documents and take such actions as Agent deems appropriate to effect Agent's valid and enforceable first priority

Seller Liens (subject only to the Intercreditor Agreement) upon such Collateral, including, without limitation, obtaining any appropriate possession, control or access agreements as determined by Agent in its reasonable discretion, and upon such request, Success 1 shall take such action.

20.     Success 1 shall not (and shall not cause Successful Bidder or any other party) to grant or extend the time for payment of any Account, or compromise or settle any Account for less than the full amount thereof, or release any Person or Property, in whole or in part, from payment thereof, or allow any credit or discount thereon, except with for adequate consideration and in the ordinary course of Success 1's business.

21.     In the event that, following the occurrence and during the continuation of an Event of Default, Agent desires to exercise any remedies, voting or consensual rights or attorney-in-fact powers set forth in the Security Agreements and determines it necessary to obtain any approvals or consents of any Governmental Authority or any other Person therefor, then, upon the request of Agent, Success 1 agrees to assist Agent in obtaining as soon as practicable any necessary approvals or consents for the exercise of any such remedies, rights and powers.

22.     Without limiting anything herein, this Order is intended to satisfy the requirements of 42 CFR § 424.80(b)(4), and Agent is hereby authorized to take all acts that are necessary to collect directly from a Government Account Debtor any present or future Health-Care-Insurance Receivables that are part of the Collateral, including, without limitation, satisfying the requirements of  42 CFR § 424.90  by, among other things, filing a certified copy of this Order and executed copies of the Security Agreements with the appropriate Governmental Authority, including, without limitation, any intermediary or carrier, responsible for processing

the Health-Care-Insurance Receivables.  The stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to allow Agent to take all such actions.]

**Executory Contracts and Leases**

23.     The Silver Lake Debtors are authorized and directed to assume and sell and assign the Purchased Contracts to the Successful Bidder free and clear of all Encumbrances. With respect to each Purchased Contract, the payment of the applicable Cure Cost (if any) by the Silver Lake Debtors shall (a) effect a cure of all monetary defaults existing thereunder as of the Closing Date, (b) compensate the applicable Purchased Contract Counterparty for any actual pecuniary loss resulting from such default, and (c) together with the assumption of the Purchased Contracts by the Successful Bidder, constitute adequate assurance of future performance thereof. As of the Closing Date, the Successful Bidder shall be deemed to have acquired and assumed the Purchased Contracts pursuant to sections 363 and 365(f) of the Bankruptcy Code.  The assignment by the Silver Lake Debtors of such Purchased Contracts shall not be a default thereunder and the Successful Bidder is entitled to the protections afforded under section 363(m) of the Bankruptcy Code with respect thereto.

24.     The Silver Lake Debtors shall be liable for the payment of all Cure Costs with respect to the Purchased Contracts.

25.     Any provision in or effect of any Purchased Contract that prohibits or conditions the assignment of such Purchased Contract or allows the party to such Purchased Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Purchased Contract constitutes an unenforceable anti-assignment provision that is void and of no force and effect pursuant to section 365(f) of the Bankruptcy Code.  All other requirements and conditions under sections 363 and 365 of the

Bankruptcy Code for the assumption by the Silver Lake Debtors and assignment to the Successful Bidder of the Purchased Contracts have been satisfied, and such assumption and assignment shall not constitute a default thereunder. Upon the Closing and the payment of the required Cure Costs by the Silver Lake Debtors, in accordance with sections 363 and 365 of the Bankruptcy Code, the Successful Bidder shall be fully and irrevocably vested with all right, title and interest of the Silver Lake Debtors under each Purchased Contract.

26. The Stalking Horse Bidder may modify the Purchased Contracts List consistent with the APA.

27. Upon the Closing and the payment of the Cure Costs applicable to any Purchased Contract, the Successful Bidder shall be deemed to be substituted for the applicable Silver Lake Debtor or Silver Lake Debtors as a party to such Purchased Contract, and the Silver Lake Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability to the Purchased Contract Counterparties under such Purchased Contracts.

28. Upon the Closing and the payment of the applicable Cure Costs, if any, the Purchased Contracts shall remain in full force and effect, and no default shall exist thereunder nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

29. There shall be no rent accelerations or increases, assignment fees, deposits, increases or any other fees charged to the Successful Bidder or the Silver Lake Debtors as a result of the assumption and assignment (including any change in control) of the Purchased Contracts.

30. Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Purchased Contract Counterparties are forever barred and permanently enjoined from raising or asserting

against the Silver Lake Debtors, their estates, the Successful Bidder, or any of their respective successors and assigns any increased rent or fees, assignment fee, default, breach or claim or pecuniary loss or condition to assignment, arising under or related to the Purchased Contracts existing as of the Closing Date or arising by reason of the Chapter 11 Cases or the Closing.

31.     Notwithstanding anything to the contrary in this Order, the Security Agreements, or the APA (a) the Silver Lake Debtors shall not assume and assign any Purchased Contract that is the subject of a Contract Objection (submitted in accordance with the requirements set forth in the Bidding Procedures Order) absent the consent of the applicable Purchased Contract Counterparty or further order of the Court, (b) upon the later to occur of: (i) entry of an order of the Court approving the Silver Lake Debtors' assumption and assignment of a Purchased Contract or (ii) the Closing Date, the Silver Lake Debtors shall pay the applicable Purchased Contract Counterparty to any Purchased Contract the undisputed portion of the Cure Cost attributable to such Purchased Contract, with any disputed portion of such Cure Cost being escrowed by the Silver Lake Debtors pending either agreement among the applicable Purchased Contract Counterparty and the Silver Lake Debtor, or further order of the Court determining the allowed amount of such disputed Cure Cost, and (c) all timely asserted objections to the Successful Bidder's adequate assurance of future performance under section 365(b)(1)(C) of the Bankruptcy Code and to the Cure Costs are fully preserved.

**Miscellaneous**

32.     Effective upon the Closing Date, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Successful Bidder, Agent, Lenders, their respective successors and assigns, the

Purchased Assets, and the Collateral, including, without limitation the Purchased Contracts, with respect to (a) any Encumbrance arising prior to the Closing Date or (b) any theory of claim or remedy sounding in successor liability.

33.     Except as otherwise provided in this Order and to the maximum extent available under applicable law and to the extent provided for under the APA, the Successful Bidder shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Silver Lake Debtors with respect to the Purchased Assets, including the Purchased Contracts and, to the maximum extent available under applicable law and to the extent provided for under the APA, all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been transferred to the Successful Bidder as of the Closing Date.  All existing licenses or permits applicable to the Purchased Assets shall remain in place for the Successful Bidder's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Successful Bidder on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale.

34.     Except for the Permitted Exceptions and Assumed Liabilities with respect to Successful Bidder, neither the Successful Bidder, Agent, nor Lenders shall have any liability for any obligation of the Silver Lake Debtors arising under or related to any of the Purchased Assets or the Collateral. Without limiting the generality of the foregoing, neither the Successful Bidder, Agent, nor Lenders shall be liable for any Claims against the Silver Lake Debtors or any of their predecessors or affiliates.  By virtue of the Sale, the Successful Bidder, Agent, Lenders, and their

respective affiliates, successors and assigns shall not be deemed or considered to (a) be a legal successor or otherwise be deemed a successor to any of the Silver Lake Debtors, (b) have, de facto or otherwise, merged with or into the Silver Lake Debtors or (c) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of the Silver Lake Debtors or their estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Successful Bidder, Agent, and Lenders have not assumed nor are they in any way responsible for any liability or obligation of the Silver Lake Debtors or the Silver Lake Debtors' estates, except with respect to the Assumed Liabilities with regard to the Successful Bidder.  Neither the Successful Bidder, Agent, nor Lenders shall have any successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Silver Lake Debtors or any obligations of the Silver Lake Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets and Collateral prior to the Closing.

35.     The transactions contemplated by and consummated under the APA are undertaken by the Successful Bidder and Agent, without collusion and in good faith, as that term is defined in sections 363(m) and 364(e) of the Bankruptcy Code, as applicable, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Purchased Contracts and the Collateral), unless such authorization and such Sale are duly stayed

pending such appeal. The Successful Bidder is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. The APA and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code. The Silver Lake Debtors and the Successful Bidder have not engaged in any conduct that would cause or permit the APA, the Security Agreements, the Subordination Agreements, or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

36.     Pursuant to Bankruptcy Rules 4001, 6004(h), 6006(d), 7062, and 9014, this Order shall be effective immediately upon its entry, and the Silver Lake Debtors and the Successful Bidder are authorized to close the Sale and Success 1 is authorized to execute the Security Agreements and Subordination Agreements immediately.

37.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

38.     The failure specifically to include any particular provision of the APA, the Security Agreements, or the Subordination Agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA, the Security Agreements, and the Subordination Agreements be authorized and approved in their entireties.

39.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court but after consultation with the Committee (during the term of its existence), provided that any such modification, amendment or supplement does not

have a material adverse effect on the Debtors' estates or on the interests of the Successful Bidder.

40.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a) and Local Rule 9006-1.

41.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion filed in these Chapter 11 Cases, the terms of this Order shall govern.

42.     The Silver Lake Debtors are authorized and directed to change their corporate names in the domestic jurisdictions in which they are registered or authorized to do business to names mutually agreed upon between the Silver Lake Debtors and the Successful Bidder, and to provide the Successful Bidder with evidence of such name changes upon request thereof.  Upon the filing of a Certification of Counsel, following consultation with the Successful Bidder, the Committee, and the United States Trustee for the District of Delaware, the caption of all pleadings shall be changed as stated in such Certification of Counsel (with any necessary reflection that the cases were formerly known as *In re Success Healthcare, LLC, In re Success Healthcare 1, LLC, and In re HLP of Los Angeles, LLC*, as applicable), and all pleadings filed in the respective Chapter 11 Case shall be filed under the new caption.

43.     The Court shall retain jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Order, the APA, the Security Agreements, and the Subordination Agreements, and all amendments thereto and any releases, waivers and consents hereunder and thereunder, and each of the agreements executed in connection therewith to which the Silver Lake Debtors are party or which has been assigned by the Silver Lake Debtors to the Successful Bidder, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to any of the foregoing.  So long as the Silver Lake Debtors' Chapter 11 Cases are not

closed (or, if closed but then reopened), the Court shall retain jurisdiction to enforce the injunctions and other rights of Successful Bidder and Agent described in this Order, in the event that after the Closing Date any third parties attempt to or actually interfere with such rights of Successful Bidder or Agent, even if the Silver Lake Debtors are not directly involved or named in any such actions or disputes between Successful Bidder and/or Agent and such third parties.

IT IS SO ORDERED.

Submitted By:


/s/ Stuart Brown
DLA Piper LLP (US)
Stuart Brown (DE Bar Number 4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone:  302.468.5700
Facsimile: 302.778.7913
Email: stuart.brown@dlapiper.com

*Counsel to the Debtors and*
*Debtors in Possession, Promise Healthcare*
*Group, LLC, et al.*

   -and-

MCDERMOTT WILL & EMERY LLP
William P. Smith (*pro hac vice*)
James W. Kapp (*pro hac vice*)
Megan Preusker (*pro hac vice*)
444 West Lake Street
Chicago, Illinois 60606
Telephone: 312.372.2000
Facsimile: 312.984.7700
Email: wsmith@mwe.com
jkapp@mwe.com
mpreusker@mwe.com

*Special Counsel for the Silver Lake Debtors*
*in Connection with the Sale of the Silver Lake Medical Center*