# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> PROMISE HEALTHCARE GROUP, LLC, *et al.*, <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 18-12491 (CSS) <br><br> (Jointly Administered) <br><br> Hearing Date: December 4, 2018 at 11:00 a.m. ET <br> Objection Deadline: November 27, 2018 at 4:00 p.m. ET <br><br> Ref. Nos. 37, 158 |

## SUPPLEMENTAL OBJECTION OF STRATEGIC GLOBAL MANAGEMENT, INC. TO DEBTORS' MOTION FOR ENTRY OF ORDERS (I)(A) ESTABLISHING BIDDING PROCEDURES RELATING TO THE SALE OF CERTAIN OF THE DEBTORS' ASSETS, INCLUDING APPROVING A BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (B) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS, (C) APPROVING FORM AND MANNER OF NOTICE RELATING THERETO, AND (D) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE; (II)(A) APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) AUTHORIZING SUCCESS HEALTHCARE 1, LLC TO GRANT LIENS; AND (III) GRANTING <u>RELATED RELIEF</u>

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

Strategic Global Management, Inc. ("Strategic") hereby supplements its Objection [D.I. 158] (the "Objection") to the "*Debtors' Motion for Entry of Orders (I)(A) Establishing Bidding Procedures Relating to the Sale of Certain of the Debtors' Assets, Including Approving a Break-Up Fee and Expense Reimbursement, (B) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, (C) Approving Form and Manner of Notice Relating Thereto, and (D) Scheduling a Hearing to Consider the Proposed Sale; (II)(A) Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Authorizing Success Healthcare 1, LLC To Grant Liens; and (III) Granting Related Relief*" [D.I. 37] (the "Sale Motion"),[2] and respectfully represents as follows:

## INTRODUCTION

1.     The reason for this Supplemental Objection is that subsequent to the filing of its Objection on November 27, 2018, Strategic learned that the Debtors are continuing to comply with the "no shop" provision of the Stalking Horse APA. Strategic had previously understood that the no shop provision had been waived by the Stalking Horse Bidder and was no longer in effect.

2.     As discussed below, no shop provisions chill bidding, violate the policy of the Bankruptcy Code to maximize recoveries for creditors, and are a violation of a debtor's fiduciary duty. Here, compliance with the no shop provision of the Stalking Horse APA is preventing Strategic from obtaining critical information necessary to formulate its bid and obtain financing. The no shop provision should be terminated immediately, and the proposed Bid Deadline should be extended to at least January 4, 2019.

---

[2] Capitalized terms not defined herein have the meanings set forth in the Sale Motion.

## SUPPLEMENTAL OBJECTION

### I. The No Shop Provision of the Stalking Horse APA.

3. Section 7.1(b) of the Stalking Horse APA prohibits the Debtors from, among other things, soliciting, inducing or knowingly encouraging an Acquisition Proposal from the date of the Stalking Horse APA (October 24, 2018) until the earlier of (i) twenty-five (25) days after the Petition Date (November 30, 2018),[3] or (ii) entry of the Bidding Procedures Order:

> (b) From the Agreement Date until the earlier of (i) twenty-five (25) days from the Petition Date, or (ii) the entry of the Bidding Procedures Order by the Bankruptcy Court, Sellers will not, and will cause their respective Affiliates and Representatives to not, directly or indirectly, (i) solicit, initiate or induce the making submission or announcement of, or knowingly encourage, an Acquisition Proposal; or (ii) enter into any contract relating to an Acquisition Proposal.

Stalking Horse APA § 7.1(b) at 38 [D.I. 37-5, p. 46]. The definition of Acquisition Proposal includes "any inquiry" regarding an Alternative Transaction:

> Acquisition Proposal – any inquiry, proposal or offer from any Person (other than Buyer or any of its Affiliates) concerning an Alternative Transaction, in each case, other than pursuant to the Bidding Procedures following entry of the Bidding Procedures Order.

Stalking Horse APA, Appendix 1.1 (Definitions) at 1 [D.I. 37-5, p. 78]. Thus, the Debtors agreed to a prohibition on responding to any inquiries from competing bidders during the period from October 24, 2018 (12 days prior to the Petition Date) until the earlier of November 30 or entry of the Bidding Procedures Order.

---

[3] The Petition Date for the Silver Lake Debtors was November 5, 2018.

4. To make matters worse, Section 7.1(c) of the Stalking Horse APA only gives the Silver Lake Debtors affirmative permission to respond to inquiries from competing bidders following entry of the Bidding Procedures Order:

> (c) Following entry of the Bidding Procedures Order, Sellers, their Representatives and Affiliates may take the actions prohibited by Section 7.1(b).

Stalking Horse APA § 7.1(c) at 38 [D.I. 37-5, p. 46]. Thus, under the terms of the Stalking Horse APA, the Debtors are only authorized to respond to inquiries from competing bidders following entry of the Bidding Procedures Order. The earliest possible date for entry of the Bidding Procedures Order is the date of the hearing on the Bidding Procedures, which is scheduled for December 4, 2018.

5. If the Debtors do not release full due diligence information until December 4, Strategic will have only 17 days in which to conduct due diligence, obtain financing and formulate a bid prior to the proposed deadline on December 21.

## II. Because Of The No Shop Provision, The Debtors Have Not Provided Critical Financial Information.

6. The Sale Motion was filed with the Court on November 6, 2018, and counsel for Strategic requested due diligence information from counsel for the Silver Lake Debtors on November 12, 2018. Citing the no shop provision of the Stalking Horse APA, counsel for the Silver Lake Debtors initially refused Strategic's request. On November 19, 2018, however, they informed Strategic that they had obtained a waiver of the no shop provision by the Stalking Horse Bidder that would enable Strategic to have access to the Silver Lake data room. A copy of the e-mail correspondence between counsel for Strategic and counsel for the Silver Lake Debtors on November 12 and 19, 2018, is attached as Exhibit A to the attached Declaration of Mary H. Rose (the "Rose Declaration").

7. On November 21, 2018 (the day before Thanksgiving), the Silver Lake Debtors provided Strategic with access to the Silver Lake data room. They also provided Strategic with

copies of the Exhibits, Annexes and Schedules to the Stalking Horse APA, together with a WORD version of the Stalking Horse APA.[4]

8. Strategic's review of the Silver Lake data room revealed, however, that the data room did not contain current information. Except for amended preliminary title reports from September 2018, the documents and information were all from 2017 or earlier. There were no year-end financial statements for 2017, and no financial statements for any portion of 2018. There was no information regarding the basis for the Hospital Quality Assurance Fee (QAF) Program or "meaningful use" adjustments to the Purchase Price, which the Debtors estimate will reduce the Purchase Price from $84,150,000 to approximately $77.5 million (*see* Sale Motion ¶¶ 18-19 [D.I. 37, pp. 7-8]). There was also no information regarding potential liabilities under Medicare or Medi-Cal provider agreements, or expected Disproportionate Share Hospital (DSH) Program payments, all of which can have a significant impact on the financial condition of a hospital and on a prospective purchaser of a hospital.

9. On November 27, 2018, counsel for Strategic sent an e-mail request to counsel for the Silver Lake Debtors requesting a telephone call to discuss some of the most critical issues. Counsel for the Silver Lake Debtors responded that the Stalking Horse Bidder had waived the no shop provision solely with respect to access to the data room and that they were barred from responding to other inquiries. A copy of the e-mail correspondence between counsel for Strategic and counsel for the Silver Lake Debtors on November 27 and 28, 2018, is attached as Exhibit B to the Rose Declaration.

10. Strategic is a serious bidder, but it needs at least 30 days in which to conduct due diligence and properly formulate its bid. If the Debtors do not provide basic financial and other due diligence information until November 30, Strategic will only have three weeks in which to

---

[4] The Stalking Horse APA filed with the Court included almost none of the numerous Exhibits, Annexes and Schedules listed in the Table of Exhibits, Annexes and Schedules (Stalking Horse APA at vi-vii [D.I. 37-5, pp. 7-8]). Among the most critical missing items were the Seller Note (Exhibit 4.2(dd), the post-closing Interim Management Agreement (Exhibit 4.2(r), and the post-closing Interim Subleases (Exhibit 4.2(s)-1 and 4.2(s)-2).

conduct due diligence, obtain financing and formulate a bid prior to the proposed Bid Deadline on December 21. If the Debtors do not provide the necessary due diligence information until December 4, the time period is compressed to a period of only 17 days prior to the proposed Bid Deadline.

11. According to the Sale Motion, the Stalking Horse Bidder has had more than a year in which to conduct due diligence and obtain financing.[5] Strategic needs only 30 days, but anything less than that is unreasonable. The Bid Deadline should be extended to at least January 4, 2019.

### III. No Shop Provisions Are Improper In Bankruptcy And Chill The Bidding.

12. No shop provisions are improper in bankruptcy where the goal is to maximize the recovery for creditors. In *Pacificorp Ky. Energy Corp. v. Big Rivers Elec. Corp. (In re Big Rivers Elec. Corp.)*, 232 B.R. 739, 753 (D. Ky. 1998) (*"Big Rivers"*), the district court held that a no shop provision that prevented the debtor from soliciting or entertaining competing offers "violates the underlying policy of the Bankruptcy Code to maximize the value of the estate for the creditors by stifling the bidding process for the assets of the debtor." The court further held that "a contract containing such a clause which prevents a party from fulfilling his or her fiduciary duty is void as a violation of public policy." *Id.; see also Prime Healthcare Mgmt. v. Valley Health Sys. (In re Valley Health Sys.)*, 429 B.R. 692, 711-16 (Bankr. C.D. Cal. 2010) (holding that a Chapter 9 debtor, unlike a Chapter 11 debtor, has no fiduciary obligations and may enter into a no shop agreement that prevents competitive bidding).

13. Only one reported decision in this district has considered the propriety of no shop provisions in bankruptcy. In *Fox Sports Net West 2, LLC v. Los Angeles Dodgers LLC (In re Los Angeles Dodgers LLC)*, 465 B.R. 18, 28-29 (D. Del. 2011), the district court concluded that a no

---

[5] The Sale Motion states that the final round of pre-petition bids was conducted in July 2017, and the Debtors executed the Original Purchase Agreement with the Stalking Horse Bidder on February 7, 2018. Sale Motion ¶¶ 15-16 at 7 [D.I. 37 at 7].

shop provision is not *per se* unenforceable in bankruptcy and suggested that the *Big Rivers* decision invalidating a no shop provision should be limited to the factual context of that case in which "a contact containing a no shop provision was executed in anticipation of a bankruptcy filing and was 'condition[ed] on approval of the bankruptcy court." As such, the *Big Rivers* decision "merely reflects the *Revlon*-like principle that 'no shop' provisions are invalid only if at the time they were adopted they were in violation of a board's fiduciary duty." *Id. (citing Big Rivers,* 233 B.R. at 751-54 and *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,* 506 A.2d 173, 182 (Del. 1986)).

14.    The situation in this case is precisely like the facts of *Big Rivers*. The Stalking Horse APA was executed only twelve days prior to the Petition Date and is conditioned on approval of this Court. The no shop provision contained therein clearly violates the policy of the Bankruptcy Code to maximize the recovery for creditors and chills the bidding. At this point in time, the only available remedy of this Court is to ensure that the no shop provision of the Stalking Horse APA is terminated immediately and to extend the proposed time period for submission of bids to at least January 4, 2019.

34724973v2

## CONCLUSION

15.     In view of the foregoing, Strategic respectfully requests that in addition to granting the relief requested in the Objection, the Court (a) direct the Debtors to immediately terminate the no shop provision of the Stalking Horse APA, (b) extend the Bid Deadline to at least January 4, 2019, and (c) grant such other and further relief as is just.

Dated:  November 29, 2018
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kerri Mumford*

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
       mumford@lrclaw.com
       pierce@lrclaw.com

-and-

**BUCHALTER, A Professional Corporation**
Mary H. Rose *(pro hac vice pending)*
Paul S. Arrow *(pro hac vice pending)*
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email: mrose@buchalter.com
       parrow@buchalter.com

*Attorneys for Strategic Global Management, Inc.*

34724973v2