**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: PROMISE HEALTHCARE GROUP, LLC, *et al.*[1] Debtors. | Chapter 11 Case No. 18-12491 (CSS) Jointly Administered **Re: Docket Nos. [10, 52]** |
|---|---|

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) EXTENDING THE TIME TO COMPLY WITH, OR SEEK A WAIVER OF, CERTAIN UNITED STATES TRUSTEE REQUIREMENTS AND SECTION 345(b) OF THE BANKRUPTCY CODE; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; (IV) GRANTING ADMINISTRATIVE EXPENSE PRIORITY TO POSTPETITION INTERCOMPANY CLAIMS; AND (V) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") in the chapter 11 cases of Promise Healthcare Group, LLC (together with its affiliated debtors in possession, the "Debtors") submits this omnibus objection (the "Objection") to the *Motion of the Debtors for*

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

*Entry of Interim and Final Orders (i) Authorizing Continued Use of Existing Cash Management System and Bank Accounts; (ii) Extending the Time to Comply With, or Seek a Waiver of, Certain United States Trustee Requirements and Section 345(b) of the Bankruptcy Code; (iii) Authorizing Continued Performance of Intercompany Transactions; (iv) Granting Administrative Expense Priority to Postpetition Intercompany Claims; and (v) Granting Related Relief* [Docket No. 10] (the "Motion"), and respectfully states as follows:

## PRELIMINARY STATEMENT

Since the Committee's appointment on November 14, 2018, the Committee and its professionals have requested documents and information from the Debtors sufficient to demonstrate that the borrower-Debtors under the requested Intercompany Transactions (as defined in the Motion, the "Intercompany Transactions") have the ability to repay their corresponding lender-Debtors, through the requested post-petition financing facility or otherwise. The Debtors have not provided the requested information or made any such demonstration in these cases, and as a result, the Committee objects to the Motion to the extent that it requests authorization to make the Intercompany Transactions or take other actions that affect the unsecured creditors' substantive rights. Further, because these requests constitute attempts to obtain non-ordinary course post-petition intercompany financing and/or substantive consolidation of the Debtors' estates, the Committee objects to the Motion on the ground that the Debtors have not made the requisite showings for such relief under the applicable provisions of title 11 of the United States Code (the "Bankruptcy Code") or relevant case law.

The Motion seeks authority to make Intercompany Transactions "between and among the Debtors including, for example, payments in connection with intercompany agreements, loans, or advances by or between the Debtors, allocations of overhead, and other charges between and

among the Debtors" (Motion, ¶ 10), but is devoid of any evidence of the results of the these transfers or the borrower-Debtors' ability to pay back the lender-Debtors, leaving the Court, the Committee, and all other parties-in-interest unable to determine the impact of the transactions on each individual Debtor their creditors. Although the lender-Debtors would be granted administrative expense claims against the borrower-Debtors, such claims do not ensure repayment if there is no ability to make such payment.

Further, although the Debtors allege that such intercompany financing occurs "in the ordinary course" of the Debtors' businesses, and is thus permissible post-petition without satisfying the requirements for non-ordinary course financing under section 364(b), the Debtors misinterpret the meaning of "ordinary course," which refers to industry practices and creditor expectations, not whether the Debtors typically engage in such activities. Here, the Debtors' practice of moving funds from one Debtor account to another and lending between Debtors constitutes non-ordinary course intercompany financing for which the Debtors must seek authority under section 364(b) of the Bankruptcy Code, and authority for such financing should not be granted absent a showing that the borrower-Debtors are able to repay the lender-Debtors.

Absent this showing, the Debtors are in reality requesting substantive consolidation of their estates. However, they have not demonstrated that the requirements for substantive consolidation are satisfied in these cases, and should not be permitted use the Motion to consolidate their estates under the guise of a cash management request.

Based on the foregoing, as set forth more fully below, the Committee respectfully requests that the Court deny the Motion to the extent it seeks authority to make the Intercompany Transactions or otherwise take actions that affect the unsecured creditors' substantive rights. The Committee does not object to the purely cash management aspects of the Motion such as the

Motion's requests to (i) maintain and continue to use bank accounts, (ii) authorize the Debtors' banks to continue to administer bank accounts, and (ii) close inactive accounts with zero balances.

## BACKGROUND

1. On November 5, 2018 (the "Petition Date"), each of the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

2. Pursuant to this Court's *Order Directing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 40], the Debtors' bankruptcy cases are being jointly administered for procedural purposes only.

3. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

4. On the Petition Date, the Debtors filed the Motion, which, among other things, seeks authorization to make Intercompany Transactions as described therein.

5. On November 6, 2018, the Court entered an interim order granting the Motion [Docket No. 52] (the "Interim Order") and setting a final hearing on the Motion for December 4, 2018 at 11:00 a.m.

## OBJECTION

### I. The Post-Petition Intercompany Transactions Among the Debtors Are Not Ordinary Course Transactions

6. Section 363(c)(1) of the Bankruptcy Code provides that, absent a court order to the contrary, "the trustee may enter into transactions . . . in the ordinary course of business, without notice or a hearing,[.]" 11 U.S.C. § 363(c)(1). However, pursuant to section 363(b), the trustee may only use property of the estate outside the ordinary course, as the Debtors request to

do here, after notice and a hearing.  11 U.S.C. § 363(b)(1).  Further, a debtor's "business judgment is not a statutory grounds for approving administrative costs incurred out of the ordinary course of business."  *In re Lynx Transp., Inc.*, 1999 Bankr. LEXIS 975, *9 (Bankr. E.D. Pa. Aug. 11, 1999) (quoting *Mark IV Prop., Inc. v. Club Dev. & Mgmt. Corp. (In re Club Dev. & Mgmt. Corp.)*, 27 B.R. 610, 612 (B.A.P. 9th Cir. 1982)).

7. Section 364 of the Bankruptcy Code, which deals with post-petition credit, similarly distinguishes between transactions in the ordinary course of business and transactions outside the ordinary course of business.  Section 364(a) provides that a debtor-in-possession "may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense." 11 U.S.C. § 364(a). Section 364(b), however, provides that the trustee may only obtain unsecured creditor or incur unsecured debt other than in the ordinary course after notice and hearing.

8. The Bankruptcy Code does not define the phrase "ordinary course of business" as used in sections 363 and 364, however courts have generally engaged in a fact-intensive two-step inquiry: "This inquiry consists of looking at the transaction from horizontal and vertical dimensions.  The test for the horizontal dimension 'is whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry.' The vertical dimension, which is also known as the creditors' expectation test, 'analyzes the transactions from the vantage point of a hypothetical creditor and the inquiry is whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit.'"  *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 797 (Bankr. D. Del. 2007) (quoting *In re Roth American, Inc.*, 975 F.2d 949, 953 (3d Cir. 1992)).

9. In the Motion, the Debtors request to use their cash management system post-petition to make Intercompany Transactions "between and among the Debtors including, for example, payments in connection with intercompany agreements, loans, or advances by or between Debtors, allocations of overhead, and other charges between and among the Debtors." Motion, ¶ 10. This is a request for authority for the Debtors to obtain post-petition credit and incur post-petition debt through intercompany loans, not a mere cash management issue, a reality acknowledged through the Debtors' reference to section 364(b) (pertaining to post-petition financing). Motion, ¶ 39.

10. To support their assertion that such intercompany financing is appropriate and in the ordinary course of business, the Debtors improperly rely on sections 363(c)(1) and 364(b) of the Bankruptcy Code and a general statement that "the Debtors engage in the Intercompany Transactions regularly and such transactions are common among enterprises such as the Debtors." There is no further discussion of section 363(c)(1) or the standard for determining ordinary course of business thereunder.

11. With respect to the "horizontal" dimension of the ordinary course test, the Debtors present no evidence that intercompany financing like the Intercompany Transactions is commonly undertaken by companies in the Debtors' industry. Further, with respect to the "vertical" dimension of the ordinary course test, the Debtors present no evidence that the Intercompany Transactions, from the vantage point of a creditor, would not subject the creditor to economic risks of a nature different from those accepted when the creditor decided to extend credit. Indeed, it is doubtful that a creditor extending credit to a health care facility would generally expect that health care facility to transfer or lend money to another health care facility, particularly without a guarantee of the borrowing facility's ability to repay the amounts owed.

12. This concern is particularly acute in these cases, where the Committee and its professionals have requested documents and information sufficient to demonstrate the borrower-Debtors' ability to pay back the lender-Debtors but have not been provided such information.

13. Accordingly, based on the Motion and the information available to the Court, the Committee, and other parties-in-interest, the Debtors' proposed intercompany financing satisfies neither the horizontal inquiry nor the vertical inquiry, and is not "ordinary course." As such, the Debtors must file a motion under section 364(b) requesting permission for non-ordinary course intercompany post-petition financing rather attempt to obtain this relief through a cash management motion. Further, any request for such intercompany financing should be denied absent a showing that the borrower-Debtors are able to repay their intercompany loans.

**II. The Motion Is an Attempt by the Debtors to Substantively Consolidate Their Estates**

14. "[L]imited liability . . . is a hallmark of corporate law in the United States [along with] the legal separateness of an entity that it proves for." *TTOD Liquidation, Inc. v. Jin Lim (In re Dott Acquisition, LLC)*, 520 B.R. 588, 626 (Bankr. E.D. Mich. 2014). Thus, substantive consolidation, which "treats separate legal entities as if they were merged into a single entity, pooling the assets and liabilities of the two entities," is an extraordinary remedy that must be used sparingly. *Id.* at 588, 626. As stated by the Third Circuit, "because substantive consolidation is extreme . . . and imprecise, this 'rough justice' remedy should be rare and, in any event, one of last resort after considering and rejecting other remedies[.]" *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005).

15. Joint administration, in contrast, benefits case administration without affecting the creditors. *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 618 (Bankr. D. Del. 2001) (citing *In re Cooper*, 147 B.R. 678 (Bankr. D.N.J. 1992)). Under joint administration, "[a]dministrative

expenses incurred in each jointly administered debtor's bankruptcy estate are not treated as a joint debt." *In re Appalachian Fuels, LLC*, 493 B.R. 1, 21 (B.A.P. 6th Cir. 2013) (*citing In re Las Torres Development, L.L.C.*, 413 B.R. 687, 698 (Bankr. S.D.Tex. 2009)).

16. In the Third Circuit, proponents of substantive consolidation must demonstrate that: "(i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors." *Id.*

17. Here, the Debtors have obtained joint administration for procedural purposes only, and have not filed any motion requesting substantive consolidation. Nevertheless, through the Motion, they are seeking to effectively substantively consolidate the assets of separate Debtor entities by making lender-Debtors liable for the debts of borrower-Debtors without demonstrating that either requirement for substantive consolidation has been satisfied, or that substantive consolidation will benefit their creditors. The requested relief relating to Intercompany Transactions should accordingly be denied.

WHEREFORE, the Committee respectfully request that the Court (i) deny the Motion to the extent it seeks authority to make the Intercompany Transactions or otherwise take actions that affect the unsecured creditors' substantive rights and (ii) grant such other and further relief that the Court deems just and appropriate.

Dated: November 29, 2018                           PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bradford J. Sandler*
Jeffrey N. Pomerantz, Esq.
Bradford J. Sandler, Esq.
Colin R. Robinson, Esq.
919 N. Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
E-mail:  jpomerantz@pszjlaw.com
             bsandler@pszjlaw.com
             crobinson@pszjlaw.com

- and -

Andrew H. Sherman
Boris I. Mankovetskiy
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
Telephone:  973-643-7000
Facsimile:  973-643-6500
Email:  asherman@sillscummis.com
             bmankovetskiy@sillscummis.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*