## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROMISE HEALTHCARE GROUP, LLC, *et al.*[1] | Case No. 18-12491 (CSS) |
| Debtors. | Jointly Administered |
| | Re: Docket Nos. 12 and 14 |

**OMNIBUS OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (I)  MOTION OF THE DEBTORS FOR ENTRY OF FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) PAY CERTAIN PREPETITION WAGES, BENEFITS AND OTHER COMPENSATION, AND (B) CONTINUE EMPLOYEE COMPENSATION AND EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF AND (II) MOTION OF THE DEBTORS FOR ENTRY OF FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY OR HONOR PREPETITION OBLIGATIONS TO CERTAIN CRITICAL VENDORS AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH CRITICAL VENDORS OBLIGATIONS**

The Official Committee of Unsecured Creditors (the "Committee") of Promise

Healthcare Group, LLC, *et al.* (collectively, the "Debtors"), by and through its undersigned

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

counsel, hereby files this omnibus objection (the "Objection") to (i) the *Motion of The Debtors For Entry of Final Orders (I) Authorizing The Debtors to (A) Pay Certain Prepetition Wages, Benefits and Other Compensation, and (B) Continue Employee Compensation and Employee Benefits Programs, and (II) Granting Related Relief* [Docket No. 14] (the "Wages Motion") and (ii) the *Motion of the Debtors for Entry of Final Order  (I) Authorizing the Debtors to Pay or Honor Prepetition Obligations to Certain Critical Vendors and (II) Authorizing Banks to Honor and Process Checks and Transfers Related to Such Critical Vendors Obligations* [Docket No. 12] (the "Critical Vendor Motion").[2]  In support of the Objection, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

The Committee objects to the Debtors' request in the Wages Motion to pay the outstanding pre-petition Employee Obligations[3] to the extent such amounts exceed the Priority Caps (defined below) contained in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. The Priority Caps are designed to strike a balance between paying a debtor's employees for pre-petition services and maximizing a debtor's estate for the benefit of its unsecured creditors.  As such, the Debtors should not be entitled to pay the Employee Obligations on a priority basis in amounts that exceed the Priority Caps, as doing so will negatively impact the unsecured creditors in this case.  Further, imposition of the Priority Caps will not unfairly harm the Debtors' employees because "the *majority* of the unpaid Employee Obligations [are entitled] to priority

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Wages Motion or Critical Vendor Motion, as applicable.

[3] As defined in the Wages Motion, "Employee Obligations" includes, among other things, Wages, amounts owing under Incentive Programs, Paid Time Off and Employee Benefits.  Wages Motion, ¶¶ 8-19; 23-30.

treatment" and thus will already fall within the Priority Caps.  Wages Motion, ¶ 35 (emphasis added).

The Wages Motion also requests authorization to pay a $6 million prepetition IRS claim (the "IRS Claim").  As set forth further below, the Committee has not been provided an opportunity to investigate the IRS Claim or any claims or indemnities related thereto.  Further, the Debtors have not provided any case law or basis for payment of the IRS Claim outside of a chapter 11 plan.  The Committee therefore objects to the payment of the IRS Claim pursuant to the Wages Motion.

With respect to the Critical Vendor Motion, the Committee requests that the Debtors add language to the final order, as set forth below, allowing the Committee the opportunity to review and object, if necessary, to proposed payments to Critical Vendors in amounts that exceed $50,000.  This process will help maximize the value of the Debtors' estates for the benefit of all creditors.

## **BACKGROUND**

1.      On November 5, (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2.      The United States Trustee formed the Committee on November 14, 2018 [Docket No. 91].  The Committee will seek retention of Sills Cummis & Gross P.C. and Pachulski Stang Ziehl & Jones as co-counsel to the Committee.

3.       On the Petition Date, the Debtors filed the Wages Motion to approve, among other things, payment of certain prepetition wages, benefits and other compensation, as well payment of the IRS Claim.

4.       On the Petition Date, the Debtors also filed the Critical Vendor Motion.  Through the Critical Vendor Motion, the Debtors propose to pay Critical Vendor Claims subject to the agreement of each individual Critical Vendor to Customary Trade Terms or Minimum Credit Terms that vary from Customary Trade Terms.  To ensure that each Critical Vendor deals with the Debtors on either Customary Trade Terms or Minimum Trade Terms, the Debtors will require each Critical Vendor execute a Trade Agreement.

5.       On November 6, 2018, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Pay Certain Prepetition Wages, Benefits and Other Compensation, and (B) Continue Employee Compensation and Employee Benefits Programs, and (II) Granting Related Relief* [Docket No. 46] (the "Interim Wages Order") and the *Interim Order (I) Authorizing the Debtors to Pay or Honor Prepetition Obligations to Certain Critical Vendors and (II) Authorizing Banks to Honor and Process Checks and Transfers Related to Such Critical Vendors Obligations* [Docket No. 43].

6.       The Interim Wages Order provided, among other things, that "[t]he Debtors are authorized to pay the Employee Obligations and/or honor their wage and benefit obligations . . . including amounts owing as of the Petition Date on account of: (a) the Payroll Processor; (b) Employee Compensation and Reimbursement of Expenses; (c) the Per Required Need Employees;[4] (d) Deductions and Payroll Taxes; (e) IRS payment plan; and (f) the Employee Benefits, **to the extent such payments do not violate the priority cap in sections 507(a)(4)**

---

[4] This term is not defined in the Motion and the Committee reserves all rights with respect to payments on account of Per Required Need Employees.

**and 507(a)(5) of the Bankruptcy Code,** as set forth in the Motion and as provided herein."
Interim Wages Order, ¶ 2 (emphasis added).

## **OBJECTION**

**I.     The Debtors Should Not Be Authorized to Pay Employee Compensation or
       Employee Benefits Above the Payment Caps Provided in the Bankruptcy Code**

7.     Section 507(a) of the Bankruptcy Code provides a list of expenses and claims that
are afforded priority.  Section 507(a)(4) provides a fourth priority to allowed unsecured claims
for wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by
an individual, "but only to the extent of $12,850 for each individual . . . earned within 180 days
before the date of the filing of the petition or the date of the cessation of the debtor's business,
whichever occurs first" (the "Wages Cap").  11 U.S.C. § 507(a)(4).  Similarly, section 507(a)(5)
provides a fifth priority to allowed unsecured claims for contributions to an employee benefit
plan arising from services rendered within 180 days before the date of the filing of the petition or
the date of the cessation of the debtor's business, whichever occurs first; but only "for each such
plan, to the extent of—(i) the number of employees covered by each such plan multiplied by
$12,850; less (ii) the aggregate amount paid to such employee under [11 U.S.C. § 507(a)(4)],
plus the aggregate amount paid by the estate on behalf of such employees to any other employee
benefit plan" (the "Benefits Cap," and together with the Wages Cap, the "Priority Caps").  11
U.S.C. § 507(a)(5).

8.     The Committee does not object to the Debtors' request to pay the outstanding
Employee Obligations up to the relevant Priority Caps.  However, the Motion goes beyond this
and requests authorization to pay *all* outstanding Employee Obligations, including amounts
above the Priority Caps.  The Debtors have informed the Committee that Paid Time Off will be
subject to the Wages Cap.  As set forth below, the proposed final order should thus be modified

to specifically reference the Priority Caps with respect to Paid Time Off.  Further, the Debtors have not agreed to limit the Wages, amounts owing under Incentive Programs, and Employee Benefits to the relevant Priority Caps.  These payments should also be subject to the Priority Caps established in the Bankruptcy Code and the proposed final order should be amended accordingly, as set forth below.

9.      The Motion makes clear that "the majority of the unpaid Employee Obligations [are entitled to] priority treatment" under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  As such, the Debtors will be able to pay most of the outstanding Employee Obligations without upsetting the priority scheme established by the Bankruptcy Code, which seeks to protect both employees and the Debtors' other unsecured creditors.  Since most outstanding Employee Obligations are entitled to priority treatment and thus the Debtors will be authorized to pay such amounts, neither the Debtors' employees nor its estates will be harmed by limiting such payments to the Priority Caps.  *See* Wages Motion, ¶ 39.

10.      As noted above, the Interim Wage Order recognizes that employees should not be entitled to amounts above the Priority Caps.  As such, it provides that "[t]he Debtors are authorized to pay the Employee Obligations and/or honor their wage and benefit obligations . . . including amounts owing as of the Petition Date on account of: (a) the Payroll Processor; (b) Employee Compensation and Reimbursement of Expenses; (c) the Per Required Need Employees;[5] (d) Deductions and Payroll Taxes; (e) IRS payment plan; and (f) the Employee Benefits, **to the extent such payments do not violate the priority cap in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code,** as set forth in the Motion and as provided herein." Interim Wages Order, ¶ 2 (emphasis added).  The language in bold in the foregoing sentence (the

---

[5] This term is not defined in the Motion and the Committee reserves all rights with respect to payments on account of Per Required Need Employees.

"<u>Priority Cap Language</u>") is not included in the proposed form of final order attached to the
Wages Motion and thus the Committee requests the addition of the Priority Cap Language in the
final order.

11.     The Committee also requests that the Priority Cap Language be clarified to make
clear that it applies to payment of obligations included in sections (a) through (f), rather than just
to the payment of Employee Benefits in section (f).  The Priority Cap Language should be
therefore be revised as follows (revisions in bold): " . . . to the extent such **forgoing** payments **in**
**sections (a) through (f)** do not violate the priority cap**s** in sections 507(a)(4) and 507(a)(5) of the
Bankruptcy Code**, as applicable** . . ."

12.     The Committee also requests the addition of the following language to the
currently proposed final order, as indicated in bold below:

- "Except as otherwise provided herein, **and subject to the priority caps in**
  **sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code,** the Debtors are
  authorized to make payments on account of Employee Obligations in accordance
  with the Debtors' ordinary course of business and stated policies, as set forth in
  the Motion."  Proposed Final Order, ¶ 3.

- The Debtors are authorized to continue to honor their Employee Benefits, make
  necessary contributions to such programs, and pay any unpaid premium, claim,
  or amount owed in connection therewith as of the Petition Date, **subject to the**
  **priority caps in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code,** in
  accordance with the Debtors' ordinary course of business and stated policies as
  set forth in the Motion.  Proposed Final Order, ¶ 5.

13.     Further, the Debtors have informed the Committee that Dr. Posternack is not
eligible to receive any payments under the Incentive Programs.  The Committee agrees with the
Debtors and reserves all rights with respect to the Debtors' motion seeking approval of a Key
Employee Incentive Program with respect to Dr. Posternack [Docket No. 106].

**II.**     **The Debtors Should Not Be Authorized to Pay the IRS Pre-Petition Claim**

14.     The Wages Motion provides that "[t]he Debtors owe certain amounts to the IRS and have been paying them off through a payment plan with certain taxing authorities.  As of the Petition Date, the Debtors owe an estimated $222,000 for the payment obligation due in October 2018 to the taxing authorities, and, as of September 30, 2018, $6 million remains owing to the taxing authorities."  Wages Motion, ¶ 32.  The Committee understands that the origin of the IRS Claim is defalcation with respect to withholding taxes.  The Debtors informed the Committee that the IRS Claim is secured by liens on certain properties of one or more Debtors.  However, the Debtors have not provided the Committee or this Court with the underlying agreement with IRS.  Similarly, the Debtors have not provided any evidence of the alleged liens nor has the Committee had an opportunity to investigate the extent, validity or priority of such alleged liens. In addition, the Debtors informed the Committee that certain parties received an indemnification with respect to the IRS Claim from one or more Debtors secured by mortgages against certain of the Debtors' properties.  The Committee has likewise not had an opportunity to investigate such indemnifications and the validity or enforceability thereof.

15.     Further, the Debtors have not provided any case law or basis for paying the prepetition IRS Claim outside of a chapter 11 plan.  The "doctrine of necessity" or any similar doctrine should not apply to payment of the IRS Claim, as the doctrine of necessity is reserved for instances where post-petition payment of a pre-petition claim is "essential to the continued operation" of the debtor.  *In re Lehigh & New England Ry. Co.*, 657 F. 2d 570, 581 (3d Cir. 1981) ("[T]he 'necessity of payment' doctrine [provides that] if payment of a claim which arose prior to reorganization is essential to the continued operation . . . during reorganization, payment may be authorized even if it is made out of corpus.").  The Debtors have not demonstrated that payment of the IRS Claim is essential to the Debtors' reorganization or is otherwise authorized

to be paid pursuant to the contours of the Bankruptcy Code.   Accordingly, the Committee objects to the Debtors making payments in satisfaction of its IRS payment plan pursuant to the Wages Motion.

**III.    The Final Critical Vendor Order Should Provide the Committee Notice and Objection Rights With Respect to Certain Critical Vendor Payments**

16.    On November 18, 2018, the Committee requested that the Debtors include the following language (the "Proposed Language") in the final order with respect to the Critical Vendor Motion:

> The Debtors shall provide notice (the "Notice") to the counsel for the Committee which may be provided by electronic mail, before making a payment to a Critical Vendor under this Order when such proposed payment exceeds $50,000. The Notice shall identify (1) the proposed Critical Vendor; (2) the Debtor(s) against which the proposed Critical Vendor is asserting a claim; (3) the amount of the proposed Critical Vendor claim; (4) the basis for the Critical Vendor claim, including the amount of such claim that is entitled to priority under section 503(b)(9) of the Bankruptcy Code and the amount that is a general unsecured claim; (5) whether the Debtor(s) is/are providing a waiver under section 547 of the Bankruptcy Code; and (6) any other information reasonably requested by the Committee.  The Committee shall have through 5:00 p.m., prevailing Eastern Time, on the third (3rd) business day after receipt of such Notice (the "Review Period") to review the proposed payment and to notify the Debtors in writing, which may be by electronic mail, of any issues (the "Issues") with respect to such proposed payment.  If the Committee does not notify the Debtors of any Issues by the expiration of the Review Period, or if the Committee consents to the proposed payment of the Critical Vendor claim before expiration of the Review Period, the Debtors shall be permitted to pay the Critical Vendor as proposed, subject to the terms of this Order.  If the Committee timely notifies the Debtors of the Issues with respect to any proposed Critical Vendor payment (a "Questioned Payment") prior to the expiration of the Review Period, then the Debtors shall not pay such Questioned Payment without the Committee's consent or without further order of this Court, which the Debtors and the Committee shall seek to have heard at the next scheduling hearing or otherwise on an expedited basis.

17.    The Debtors did not agree to include such language in the final order.  Instead, the Debtors stated they would provide the Committee with a copy of the already executed Trade Agreements, without any opportunity for the Committee to review and object, if necessary, to the Critical Vendor payments.  The addition of the Proposed Language to the final order will ensure

DOCS_DE:222108.1 72551/002

proper oversight of the Critical Vendor payment process, thus maximizing value for the Debtors'

estates.

## RESERVATION OF RIGHTS

18.     The Committee reserves the right to raise further and other objections to the

Wages Motion and Critical Vendor Motion prior to or at the hearings thereon based upon its

continuing discussions with the Debtors and any discovery to be conducted herein.

WHEREFORE, the Committee respectfully requests that the Court deny the Motion as

described herein.

Dated: November 29, 2018                    PACHULSKI STANG ZIEHL & JONES LLP

                                            */s/ Bradford J. Sandler*
                                            Jeffrey N. Pomerantz, Esq.
                                            Bradford J. Sandler, Esq.
                                            Colin R. Robinson, Esq.
                                            919 N. Market Street, 17th Floor
                                            Wilmington, DE  19801
                                            Telephone:  (302) 652-4100
                                            Facsimile:   (302) 652-4400
                                            E-mail:  jpomerantz@pszjlaw.com
                                                         bsandler@pszjlaw.com
                                                         crobinson@pszjlaw.com

                                            - and –

                                            Andrew H. Sherman
                                            Boris I. Mankovetskiy
                                            Rachel E. Brennan
                                            SILLS CUMMIS & GROSS P.C.
                                            One Riverfront Plaza
                                            Newark, NJ 07102
                                            Telephone:  973-643-7000
                                            Facsimile:  973-643-6500
                                            Email: asherman@sillscummis.com
                                                        bmankovetskiy@sillscummis.com
                                                        rbrennan@sillscummis.com

                                            *Proposed Counsel to the Official Committee of*
                                            *Unsecured Creditors*