# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---

In re:

PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1]

Debtors.

---

: Chapter 11
:
: Case No. 18-12491 (CSS)
:
: (Jointly Administered)
:
: Related D.I.: 87, 127, 149, 168, 172, *235*

## ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (B) APPROVING BID PROTECTIONS; (C) SCHEDULING THE SALE HEARING; AND (D) GRANTING RELATED RELIEF

Upon consideration of that certain *Motion of the Debtors for Entry of an Order (I) Authorizing the Sale of Certain Real Property Free and Clear of All Liens, Claims, Interests, and Encumbrances, and (II) Authorizing the Debtors to Reject Unexpired Lease of Nonresidential Real Property* (D.I. 87)[2] dated November 13, 2018 (the "San Diego Sale

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

[2] Except as otherwise defined herein, or where reference is made to a definition in the San Diego Sale Motion or the

Motion"), of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"); and Debtor Quantum Properties, L.P. (the "Seller"), having entered into that certain *Purchase and Sale Agreement* dated November 12, 2018, a copy of which is attached hereto as ***Exhibit 1*** (as may be amended or supplemented, the "Stalking Horse Agreement"), pursuant to which National Health Investors, Inc. (the "Stalking Horse Buyer") proposed to acquire the Purchased Assets as set forth in the Stalking Horse Agreement (the "San Diego Real Estate Sale"); upon consideration of that certain *Limited Objection to Motion of the Debtors for Entry of an Order (I) Authorizing the Sale of Certain Real Property Free and Clear of All Liens, Claims, Interests, and Encumbrances, and (II) Authorizing the Debtors to Reject Unexpired Lease of Nonresidential Real Property* filed on November 29, 2018 (D.I. 168) (the "Wells Objection"), by Wells Fargo Bank, National Association ("Wells Fargo"), and that certain *Official Committee of Unsecured Creditors' Objection to the Debtors' Sale Motion* filed on November 29, 2018 (D.I. 172) (the "Committee Objection"), by the Official Committee of Unsecured Creditors (the "Committee"); and having found that sufficient and proper notice of the relief granted herein has been provided to parties in interest; and upon the record of these Chapter 11 Cases and the evidence adduced and the arguments of counsel at a hearing on December 4, 2018; and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that venue of this proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation, and good and sufficient cause appearing therefor,

---

Stalking Horse Agreement, capitalized terms shall have the meanings ascribed to them in the Bidding Procedures.

**IT IS HEREBY ORDERED THAT:**

1. The San Diego Sale Motion is GRANTED in part as set forth below.

2. The Seller is authorized to enter into the Stalking Horse Agreement, subject to higher or otherwise better offers at the Auction.

3. The bid procedures attached hereto as ***Exhibit B*** (the "Bid Procedures") are approved and expressly made a part hereof, and the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures. The Bid Procedures shall govern the submission, receipt, and analysis of all Bids and Qualified Bids (as such terms defined in the Bid Procedures), and any party desiring to submit a higher or otherwise better offer shall do so strictly in accordance with the terms of this Order and the Bid Procedures.

4. The Debtors, in consultation with the Consultation Parties, may modify the Bid Procedures and implement additional procedural rules that the Debtors determine, in their business judgment and in consultation with the Consultation Parties, will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties; *provided that*, any such modification shall not be materially inconsistent with the Bid Procedures approved pursuant to this Order.

5. If the Auction is conducted, (i) each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the sale, (ii) each Qualified Bidder participating in the Auction shall be required to confirm that its Qualified Bid is a good faith, bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bidder, (iii) each Qualified Bidder participating in the Auction shall be required to show proof that it has obtained all necessary government approvals, and (iv) the Auction shall be conducted openly (all creditors are permitted to attend the Auction) and shall be transcribed or videotaped.

3

6. The hearing to approve the sale of the Purchased Assets to the Successful Bidder shall take place in this Court on **December 11, 2018 at 11:00 a.m. (prevailing Eastern Time)** ("Sale Hearing"); provided that the Sale Hearing may be adjourned as set forth in the Bid Procedures. Any objections to the conduct of the Auction, or the approval of the San Diego Real Estate Sale to a Successful Bidder (other than the Stalking Horse Buyer), may be made at or before such hearing.

7. Subject to the Reservation of Rights, the Expense Reimbursement (as defined in the Stalking Horse Agreement) and Break-Up Fee (as defined in the Stalking Horse Agreement, and together with the Expense Reimbursement, the "Bid Protections") are hereby approved as allowed administrative expense claims under section 503(b)(1)(A) and 507 of the Bankruptcy Code and authorized to be paid, pursuant to the terms of the Stalking Horse Agreement out of the proceeds of any consummated sale of any of the Purchased Assets without further Order of this Court. The Bid Protections shall survive termination of the Stalking Horse Agreement. Notwithstanding anything to the contrary herein or in the Stalking Horse Agreement, Wells Fargo, the Debtors, the Stalking Horse Buyer, and the Committee reserve all rights, objections (to the extent set forth in D.I. 168 and 172), and arguments related to whether the Bid Protections shall be paid to the Stalking Horse Buyer if a closing of the San Diego Real Estate Sale to the Stalking Horse Buyer or the closing of an Alternate Transaction does not occur (the "Reservation of Rights").

8. The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

9. This Order shall be immediately effective and enforceable upon entry hereof.

10. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

Dated: December 7, 2018
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE