**EXHIBIT 2 to Bidding Procedures Order**

**(Bidding Procedures)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x
: 
In re: : Chapter 11
: 
PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1] : Case No. 18-12491 (CSS)
: 
Debtors. : (Jointly Administered)
: 
---------------------------------------------------------------x **Related D.I.: 374, \_\_\_**

## BIDDING PROCEDURES FOR THE SALE OF
## THE REMAINING ASSETS

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")[2] have filed chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), jointly administered under Case No. 18-12491 (CSS).

On [_____], the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered the *Order: (I)(A) Approving Bidding Procedures And Bid Protections, (B) Permitting Debtors To Designate Stalking Horse Purchaser(S) And Grant Bid*

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

EAST\163593684.1

*Protections, (C) Scheduling A Hearing To Consider Approval Of The Sale Of Assets, (D) Approving Form And Manner Of Notice Of Sale, And (E) Granting Related Relief; And (Ii)(A) Authorizing And Approving The Sale Of Substantially All Assets Of Certain Of The Debtors Free And Clear Of Liens, Claims, Interests, And Encumbrances, (B) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (C) Granting Related Relief* (D.I. [___]) (the "**Bidding Procedures Order**"), pursuant to which the Bankruptcy Court approved the following procedures (the "**Bidding Procedures**") for the sale of the Remaining Assets. Capitalized terms used but not defined in these Bidding Procedures have the meanings given to them in the Bidding Procedures Order. These Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "**Auction**") for one or more sales of the Remaining Assets.

1. **Submissions to the Debtors.**

    All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "**Bid Notice Parties**"):

    a. **Debtors' Counsel**. John Tishler & Brian Browder, Waller Lansden Dortch & Davis, LLP, Nashville City Center, 511 Union Street, Suite 2700, Nashville, TN 37219, john.tishler@wallerlaw.com, brian.browder@wallerlaw.com; and Stuart Brown, Kaitlin MacKenzie Edelman & Matthew Sarna, DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, stuart.brown@dlapiper.com, kaitlin.edelman@dlapiper.com, matthew.sarna@dlapiper.com;

    b. **Debtors' Financial Advisor and Investment Banker**. Andrew Turnbull, Houlihan Lokey Capital, Inc., 123 North Wacker Drive, 5th Floor, Chicago, Illinois 60606, aturnbull@hlhz.com.

    c. **Counsel to the DIP Agent**. Brian I. Swett, McGuire Woods LLP, 77 West Wacker Drive, Suite 4100, Chicago, Illinois 60601-1818, bswett@mcguirewoods.com.

    d. **Counsel to the Official Committee of Unsecured Creditors**. Andrew H. Sherman & Boris I. Mankovetskiy, Sills Cummis & Gross P.C., One Riverfront Plaza,

Newark, New Jersey 07102, asherman@sillscummis.com, bmankovetskiy@sillscummis.com; and Brad Sandler & Colin Robinson, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Suite 1700, Wilmington, Delaware 19801, bsandler@pszjlaw.com, crobinson@pszjlaw.com.

2. **Potential Bidders.**

The Debtors and their financial advisors have identified, and may in the future identify, parties they believe potentially may be interested in purchasing (and potentially may have the financial resources necessary to purchase) the Remaining Assets. To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a sale for any or all of the Remaining Assets (each, a "***Potential Bidder***") must deliver or have previously delivered:

    a. an executed confidentiality agreement on terms acceptable to the Debtors (a "***Confidentiality Agreement***"), in consultation with the Committee and DIP Agent; and

    b. the most current audited and latest unaudited financial statements (collectively, the "***Financials***") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Remaining Assets, (i) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors, in consultation with the Committee and DIP Agent, (ii) a written commitment acceptable to the Debtors and their advisors, in consultation with the Committee and DIP Agent, of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the proposed transaction, and (iii) copies of any documents evidencing any financing commitments necessary to consummate the transaction.

3. **Qualified Bidders.**

    a. A "***Qualified Bidder***" is a Potential Bidder: (i) whose Financials, or the Financials of its equity holder(s), as applicable, demonstrate the financial capability to consummate a sale for any portion of the Remaining Assets, as determined in the Debtors' business judgment (in consultation with the Committee and DIP Agent); and (ii) whose Bid (as defined below) is a Qualified Bid (as defined below). On or before the date that is one (1) Business Day after the Bid Deadline (defined below), the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder, and shall provide a copy of each Qualified Bid to counsel to the DIP Agent, and counsel to the Committee. Any Designated Stalking Horse Bidder shall be deemed a Qualified Bidder that has submitted a Qualified Bid at all times.

3

b. For the avoidance of doubt, two or more Potential Bidders may submit a Bid for any or all of the Remaining Assets, provided that such Bid(s), when taken as a whole (collectively, a "***Joint Bid***"), is determined by the Debtors, in consultation with the Committee and DIP Agent and in accordance with Section 3(a) of the Bidding Procedures, to constitute a Qualified Bid; provided, however, that any Joint Bid must comply with section 363(n) of the Bankruptcy Code and Potential Bidders must seek the Debtors' permission before they contact each other. The Debtors shall consult with the Committee and DIP Agent regarding any request for permission to contact another Potential Bidder. In addition, any Potential Bidder may submit a Bid for any or all of the Remaining Assets. The Debtors, in consultation with the Committee and DIP Agent and in accordance with Section 3(a) of the Bidding Procedures, may thereafter determine the Bid constitutes a Qualified Bid.

c. If any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Debtors will refund such Potential Bidder's Deposit (as defined below) and all accumulated interest thereon on or within three (3) Business Days after the Bid Deadline.

d. Between the date the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtors (in consultation with the Committee and DIP Agent), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures. Bids must remain open offers capable of being accepted until entry of the Sale Order or, in the case of a Backup Bid, until the Backup Bidder closes the Sale Transaction.

e. Any disputes related to these Bidding Procedures shall be resolved by the Bankruptcy Court.

**4. Due Diligence.**

a. **Diligence Provided to Potential Bidders**.

Only Potential Bidders that have entered into a Confidentiality Agreement shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Sellers. **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement.** The Debtors

4

will provide to each Potential Bidder that has entered into a Confidentiality Agreement reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. For all Potential Bidders other than any Designated Stalking Horse Bidder,[3] the due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

The Debtors shall not furnish any confidential information relating to the Remaining Assets, the Debtors' liabilities, or the sale of any or all of the Remaining Assets ("*Confidential Sale Information*") to any person, except to a Potential Bidder that has entered into a Confidentiality Agreement or to such Potential Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; provided that the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' business judgment have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the sale of all or a portion of the Remaining Assets.

The Debtors also reserve the right to withhold from Potential Bidders any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to

---

[3] The duration of the due diligence period for any Designated Stalking Horse Bidder shall terminate upon the Bid Deadline.

furnish information of any kind whatsoever to any person that is not approved by the Debtors as a Potential Bidder.

**All due diligence requests must be directed to:**

Scott Kremeier, SKremeier@HL.com; and Matt Ryan, MRyan@HL.com.

b. **Diligence Provided by Potential Bidders**.

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate a transaction for all or a portion of the Remaining Assets. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine (in consultation with the Committee and DIP Agent) that such Potential Bidder is not a Qualified Bidder or that a bid made by such Potential Bidder is not a Qualified Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the Chapter 11 Cases or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and the Debtors' advisors may disclose confidential information: (a) with the prior written consent of such bidder and the Debtors; (b) to the counsel to the Committee, (c) to the counsel to the DIP Agent, and (d) as otherwise required or allowed by

any applicable confidentiality agreement with respect to a particular Potential Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

5. **Bid Requirements.**

A proposal, solicitation, or offer (each, a "***Bid***") by a Potential Bidder that is submitted in writing and satisfies each of the following requirements (collectively, the "***Bid Requirements***"), as determined by the Debtors in their business judgment (after consultation with the Committee and DIP Agent) may constitute a "***Qualified Bid***." The form of a Bid must include a proposed asset purchase agreement (a "***Bid Purchase Agreement***") duly executed by the Potential Bidder and must also include a redline comparing the Bid Purchase Agreement to the template Asset Purchase Agreement filed with the Motion. The Bid Requirements are as follows:

i. **Assets**. Each Bid must clearly state (i) which Remaining Assets the Potential Bidder is offering to purchase and (ii) whether the Potential Bidder intends to operate all or a portion of the Debtors' business as a going concern, or to liquidate the business.

ii. **Assumption of liabilities.** Each Bid must expressly identify the liabilities it proposes to (i) assume or (ii) satisfy with consideration, including cure amounts.

iii. **Purchase Price**. Each Bid must clearly set forth the purchase price to be paid (the "*Purchase Price*"). The Bid must propose a Purchase Price for the subject Remaining Assets, including any assumption of liabilities with respect to any Remaining Assets that are the subject of a Designated Stalking Horse Bidder's bid, that exceeds the value of such bid, plus the Bid Protections, plus an amount at least greater than $100,000 (a "*Minimum Bid*"), as determined one week prior to the Bid Deadline in consultation with the Committee and DIP Agent: provided, however, in the event that a Bid is for a combination of Remaining Assets different from those set forth in a prior Bid, such consideration shall reasonably represent a premium, as determined by the Debtors in consultation with the Committee and DIP Agent; provided, further, that in determining the value of any such Bid, the Debtors will not be limited to evaluating the dollar value of the consideration but may also consider other factors, including, without limitation, the speed, certainty, and value of the proposed transaction. Subject to the immediately preceding sentence, the Purchase Price contained in a Bid may be structured in whatever form the Potential Bidder desires (*e.g.*, a Potential Bidder may propose an all cash Bid).

iv. **Deposit**. With a Bid, a Potential Bidder must submit by wire transfer of immediately available funds, a cash deposit in the amount not less than 5% of the aggregate Purchase Price set forth in the Bid, to be held in a noninterest-bearing escrow account to be identified and established by the Debtors (the "*Deposit*").

v. **Same or better terms**. Each Bid must be on terms that are not more burdensome to the Debtors than the terms of a prior Bid, as determined by the Debtors (in consultation with the Committee and DIP Agent). Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the sale contemplated by the Bid and shall include a schedule of executory contracts and unexpired leases proposed to be assumed by the Debtors and assigned and sold to the Potential Bidder ("*Assumed Contracts*"), and a copy of the purchase agreement representing the Bid clearly marked to show all changes requested by the Potential Bidder from the template Asset Purchase Agreement filed with the Motion, including those related to the respective Purchase Price and assets to be acquired by such Potential Bidder, as well as all other material documents integral to such bid and a written commitment demonstrating to the satisfaction of the Debtors (in consultation with the Committee and DIP Agent) that the Potential Bidder will be able to close the transaction proposed in its Bid on the terms and conditions set forth therein (the "*Qualified Bid Documents*").

vi. **Contingencies; No financing or diligence outs**. A Bid shall not be conditioned on (i) obtaining financing, (ii) shareholder, board of directors, or other internal approval, or (iii) the outcome or completion of a due diligence review by the Potential Bidder. Notwithstanding the foregoing, a Bid may be subject to (i) the accuracy at the closing of the sale of specified representations and warranties or (ii) the satisfaction at the closing of the sale of specified conditions, which shall not be more burdensome to the Debtors, as determined by the Debtors (in consultation with the Committee and DIP Agent), than those set forth in a prior Bid.

vii. **Identity**. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating a sale of the Remaining Assets), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific persons and counsel whom the Debtors and their advisors should contact regarding such Bid. Each Bid must also disclose any past or present connections or agreements with the Debtors, any other Potential Bidder and its affiliates, and/or any officer or director of the foregoing (including any current officer or director of the Debtors).

viii. **Demonstrated financial capacity**. A Potential Bidder must have, in the Debtors' business judgment (in consultation with the Committee and DIP Agent), the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all Assumed Contracts to be assumed by such Bid. Each Bid must be accompanied by reasonable evidence of the Potential Bidder's ability to operate the business related to the applicable Remaining Assets and include a packet of information, including financial information that will be provided to the non-Debtor counterparties to Assumed Contracts sufficient to demonstrate adequate assurance of future performance.

ix. **Committed financing**. To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include executed unconditional committed financing from a qualified source documented to the satisfaction of the Debtors (in consultation with the Committee and DIP Agent), which demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors (in consultation with the Committee and DIP Agent).

x. **Binding and irrevocable**. A Potential Bid must include a signed writing stating that: (i) the Potential Bid is irrevocable until two (2) Business Days after the closing of the sale to a person or entity other than the Potential Bidder; and (ii) the Potential Bidder agrees to serve as a Backup Bidder upon the terms and conditions set forth in the Bidding Procedures, if such Potential Bidder is not a Successful Bidder.

xi. **Expenses; Disclaimer of fees**. Each Potential Bid (other than an asset purchase agreement put forth by a Designated Stalking Horse Bidder) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation or bid protection. For the avoidance of doubt, no Potential Bidder (other than any Designated Stalking Horse Bidder) will be permitted to request, or be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation or bid protection, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

xii. **Authorization**. Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors in consultation with the Committee and DIP Agent) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

xiii. **As-Is, Where-Is**. Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Remaining Assets prior to submitting the Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Remaining Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Remaining Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid.

xiv. **Adherence to Bidding Procedures**. By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction. Each Bid must expressly state that the Potential Bidder agrees to serve as a Backup Bidder (as defined below) if such bidder's Qualified Bid is selected as the next highest or otherwise next best bid after the Successful Bid.

xv.     **Regulatory Approvals and Covenants**. A Bid must set forth each regulatory and third-party approval needed to consummate the transaction contemplated by such Bid and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following the Bid Deadline, those actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible). A Bid must also state that all necessary filings under applicable regulatory, antitrust, and other laws will be made and that payment of the fees associated therewith shall be made by the Potential Bidder.

xvi.     **Consent to Jurisdiction**. Each Potential Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the closing of the sale, as applicable.

xvii.     **Bid Deadline**. Each Bid must be transmitted via email (in .pdf or similar format) as to be **actually received** on or before **February 15, 2019 at 4:00 p.m.** (the "*Bid Deadline*") by the Bid Notice Parties.

The Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Remaining Assets that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid. The Debtors may also permit otherwise Qualified Bidders who submitted Bids by the Bid Deadline for a material portion of the Remaining Assets but who are not identified as a component of a single Qualified Bid consisting of multiple Bids, to participate in the Auction and to submit higher and/or otherwise better Bids that in subsequent rounds of bidding may be considered, together with other Bids for non-overlapping portions of the Debtors' assets, as part of such a single Qualified Bid.

6.     **Auction.**

If the Debtors receive more than one Qualified Bid, the Debtors will conduct an Auction to determine (in consultation with the Committee and DIP Agent) the Successful Bidder(s) for the

Remaining Assets. If the Debtors do not receive more than one Qualified Bid, the Debtors will not conduct an Auction and shall designate the sole Bid as the applicable Successful Bid.

On the date that is one (1) Business Day after the Bid Deadline or such other time as is reasonably practicable, the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment (the "***Baseline Bid***") for the Remaining Assets, after consultation with the Committee and DIP Agent, and provide copies of the applicable Qualified Bid Documents supporting the Baseline Bid to each Qualified Bidder. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors (in consultation with the Committee and DIP Agent) reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, which may include, among other things: (a) the number, type, and nature of any changes to the template Asset Purchase Agreement (or other applicable purchase agreement), if any, requested by the Qualified Bidder, including the type and amount of Remaining Assets sought to be acquired and obligations sought to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close the applicable purchase of the Remaining Assets and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (e) the tax consequences of such Qualified Bid (collectively, the "***Bid Assessment Criteria***"). Only a Designated Stalking Horse Bidder, if one is designated, and other Qualified Bidders will be entitled to make any subsequent bids at the Auction. At least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction and

12

EAST\163593684.1

all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person.

The Auction, if necessary, will be conducted on **February 20, 2019 at 10:00 a.m. (prevailing Eastern time)** at the offices of DLA Piper LLP, 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, or at such other time and location as designated by the Debtors. The Auction, if necessary, shall be conducted in a timely fashion according to the following procedures:

    a.    **The Debtors Shall Conduct the Auction**.

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of each Baseline Bid. All incremental Bids made thereafter shall be Overbids (defined below) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Qualified Bids. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, the Successful Bid(s), and Backup Bid(s).

The Auction will be conducted openly and all creditors will be permitted to attend. The Qualified Bidders and any Designated Stalking Horse Bidder may appear at the Auction in person or through duly authorized representatives.

    b.    **Terms of Overbids**.

"*Overbid*" means any bid made at the Auction by a Qualified Bidder[4] subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

---

[4] Or Qualified Bidders, in the event of a Joint Bid.

13

(i) **Minimum Overbid Increment**. The initial Overbid, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the applicable Baseline Bid by an incremental amount that is not less than the $250,000 (a "***Minimum Overbid Increment***").

(ii) **Conclusion of Each Overbid Round**. Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their reasonable business judgment, after consultation with the Committee and DIP Agent, extend from time to time, the "***Overbid Round Deadline***") by which time any Overbids must be submitted to the Debtors.

(iii) **Overbid Alterations**. An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior applicable Bid or Overbid, as determined in the Debtors' business judgment (in consultation with the Committee and DIP Agent), but shall otherwise comply with the terms of these Bidding Procedures. Any Overbid must comply with the conditions for a Qualified Bid.

(iv) **Announcing Highest Bid**. Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified (in consultation with the Committee and DIP Agent) in the initial applicable Overbid round, an Overbid or Overbids as being higher or otherwise better than the applicable Baseline Bid(s) for the Remaining Assets, or in subsequent rounds, the Overbid(s) previously designated by the Debtors (after consultation with the Committee and DIP Agent) as the prevailing highest or otherwise best Bid for the Remaining Assets (the "***Prevailing Highest Bid***"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbids designated by the Debtors as the Prevailing Highest Bid(s) as well as the value attributable by the Debtors to such Prevailing Highest Bid(s).

c. **Consideration of Overbids**.

The Debtors reserve the right, in their discretion (in consultation with the Committee and DIP Agent) to adjourn the Auction one or more times to, among other things: (i) facilitate discussions among the Debtors and any Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment (in consultation with the Committee and DIP Agent), may require, including that the Qualified Bidder has sufficient internal

resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount; and (iv) to provide the Debtors with an opportunity to consider (in consultation with the Committee and DIP Agent) how to value each Overbid. The full amount of the Bid Protections shall be included as value of any bid made by any Designated Stalking Horse Bidder in each round of bidding at the Auction, including for purposes of comparing the value of a Qualified Bidder's Overbid to the bid of such Designated Stalking Horse Bidder in any round of bidding.

    d.    **Closing the Auction**.

        (i)    The Auction shall continue until there is only one Bid or Joint Bid, as applicable, that the Debtors determine, in their business judgment (in consultation with the Committee and DIP Agent), is the highest or otherwise best Bid for the Remaining Assets. Such Bid or Joint Bid, as applicable, shall be declared the "*Successful Bid*," and such Qualified Bidder (or Qualified Bidders, in the event of a Joint Bid) the "*Successful Bidder(s)*," at which point the Auction will be closed. The Debtors shall notify the Qualified Bidders of the Successful Bid within one Business Day following such selection. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Bankruptcy Court of the Successful Bid.

        (ii)    The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

        (iii)    As soon as reasonably practicable after closing the Auction, the Debtors shall file on the docket, but not serve, a notice with the Court identifying the Successful Bidder(s) and Backup Bidder(s).

    e.    **No Collusion; Good-Faith Offer**.

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith offer and it intends to consummate the transaction contemplated by such Bid if selected as the Successful Bidder(s). All Potential Bidders and all Qualified Bidders will

15

immediately disclose to the Debtors, the United States Trustee, the DIP Agent, and the Committee any discussions regarding employment of or offers to retain or employ any officer or insider of the Debtors.

7. **Backup Bidder**.

   a. Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Bid for all or a portion of the Remaining Assets at the Auction, as determined by the Debtors in their discretion and in consultation with the Committee and DIP Agent (the "***Backup Bid***"), shall be required to serve as a backup bidder (the "***Backup Bidder***"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

   b. The identity of the Backup Bidder(s) and the amount and material terms of the Backup Bid(s) shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder(s). The Backup Bidder(s) shall be required to keep the Backup Bid(s) open and irrevocable, until the closing of the sale with the Successful Bidder(s). Each Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder(s) and shall thereafter be returned within five (5) Business Days.

   c. If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may select (in consultation with the Committee and DIP Agent) the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid without further order of the Bankruptcy Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors. The Debtors specifically reserve the right to seek all available remedies against any defaulting Successful Bidder(s), including with respect to specific performance.

   d. Notwithstanding anything to the contrary in this section or the Bidding Procedures Order, if any Designated Stalking Horse Bidder is required to serve as Backup Bidder, the terms and conditions of such service shall be governed by such Designated Stalking Horse Bidder's asset purchase agreement.

8. **Reservation of Rights**.

Without prejudice to the rights of any Designated Stalking Horse Bidder, or the rights of any DIP Agent in respect of any sale-related milestones set forth in the Debtors' debtor-in-possession credit agreement, the Debtors reserve their rights to modify these Bidding Procedures

16

in their business judgment (in consultation with the Committee and DIP Agent) in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Remaining Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any and all bids or Bids.

9. **Sale Hearing**.

A hearing to consider approval of the Sale of the Remaining Assets to the Successful Bidder(s) (or to approve the sale of the Remaining Assets to a Designated Stalking Horse Bidder, if one is designated, if no Auction is held) (the "*Sale Hearing*") is currently proposed to be scheduled to take place on February 26, 2019, before the Honorable Christopher S. Sontchi, at the Bankruptcy Court, 824 Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including to any Designated Stalking Horse Bidder).**

At the Sale Hearing, the Debtors shall present the Successful Bid(s) to the Bankruptcy Court for approval.

10. **Bid Protections**.

To provide an incentive and to compensate any Designated Stalking Horse Bidder for performing the substantial due diligence and incurring the expenses necessary and entering into a corresponding asset purchase agreement, with the knowledge and risk that arises from participating

17

in the sale and subsequent bidding process, the Debtors have agreed to pay any Designated Stalking Horse Bidder, under the conditions and in the amount set forth in the Bidding Procedures Order:

> **Bid Protections.** Pursuant to the Bidding Procedures, in the event any Designated Stalking Horse Bidder is not the Successful Bidder for the subject Remaining Assets (or otherwise does not purchase the subject Remaining Assets as a Backup Bidder), the Designated Stalking Horse Bidder is to be provided an expense reimbursement for its actual, reasonable and documented expenses not to exceed 1.5% of the Designated Stalking Horse Bidder's Purchase Price and a break-up fee in an amount equal to 3% of the Designated Stalking Horse Bidder's Purchase Price.

The Debtors have agreed that their obligations to pay the Bid Protections from the consideration received from the consummation of a transaction with a Successful Bidder that is not a Designated Stalking Horse Bidder, shall survive termination of any Designated Stalking Horse Bidder's asset purchase agreement, and shall be payable under the terms of such asset purchase agreement and the Bidding Procedures Order.

Any Designated Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auction, including the right to object to the conduct of the Auction and interpretation of these Bidding Procedures.

11. **Return of Deposit**.

The Deposit of the Successful Bidder(s) shall be applied to the Purchase Price of the transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their business judgment and shall be returned (other than with respect to the Successful Bidder(s) and the Backup Bidder) on or within five (5) Business Days after the Auction.

If any Successful Bidder fails to consummate the sale because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the applicable Deposit deposited by the Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors,

and the Debtors shall be free to consummate the sale with the applicable Backup Bidder without the need for an additional hearing or order of the Bankruptcy Court, in which case the Backup Bidder's Deposit shall be applied to the Purchase Price.

12. **Fiduciary Out**.

Nothing in these Bidding Procedures shall require the Debtors' boards of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent the Debtors' boards of directors determine, based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or their fiduciary obligations under applicable law; provided that in the event of any such action, all rights and remedies of any Designated Stalking Horse Bidder in these Bidding Procedures and/or applicable law shall be reserved and preserved.