# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PROMISE HEALTHCARE GROUP, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-12491 (CSS)<br>(Jointly Administered)<br><br>Hearing Date: January 22, 2019 at 10:00 am<br>Objection Deadline: January 4, 2019 at 4:00<br>RE: Docket No. 349 |

**MIDWEST EMERGENCY DEPARTMENT SERVICES, INC.'S OBJECTION TO THE MOTION OF THE DEBTORS FOR AN ORDER (I) DISMISSING THE CHAPTER 11 CASES OF SUCCESS HEALTHCARE 2, LLC, ST. ALEXIUS HOSPITAL CORPORATION #1, AND ST. ALEXIUS PROPERTIES, LLC AND (II) GRANTING RELATED RELIEF**

Midwest Emergency Department Services, Inc., an Illinois Corporation (hereinafter, "MEDS"), objects to the *Motion of the Debtors for an Order (I) Dismissing the Chapter 11 Cases of Success Healthcare 2, LLC, St. Alexius Hospital Corporation #1, and St. Alexius Properties, LLC and (II) Granting Related Relief* (the "Dismissal Motion", D.I. 349) and in support thereof states:

**Introduction**

1. MEDS is now and has at all times relevant herein been the sole provider of duly licensed physicians and staff to assure emergency services at the St. Alexius Hospital in the City of St. Louis, Missouri, pursuant to that certain Exclusive Contract For Emergency Department Services entered into as of the 15th day of December, 2017 between St. Alexius Hospital Corporation #1 ("St. Alexius") and MEDS (the "EDS Contract").

2. On December 7, 2018, the above-captioned debtors ("Debtors") filed the *Motion of Debtors For Entry of an Order (I) Authorizing the Sale of Equity Interests in Success*

*Healthcare 2, LLC [St. Alexius Facility] Free and Clear of all Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Seller to Assume and Assign Certain Executory Contracts, and (III) Granting Other Related Relief* (the "Sale Motion", D.I. 263 and 268).

3. The EDS Contract has been designated for assumption and assignment to the Purchaser[1] pursuant to the Purchase Agreement by virtue of its listing as item 138 of 238 such contracts on Schedule 3.18 of the Purchase Agreement. (D.I. 268-1).

4. On December 20, 2018, MEDS filed its limited objection to the Sale Motion (the "Sale Objection", D.I. 336) on the grounds, *inter alia*, that the Sale Motion did not provide a clear or adequate mechanism for the payment of cure costs.

## MEDS Is Entitled to Substantial Pre and Post-Petition Cure Costs

5. Since the petition date, November 5, 2018 (the "Petition Date"), the EDS Contract has been and remains in default by virtue of the Debtors' failures to cure prepetition financial defaults and to fully remit payment for amounts which have since accrued.

6. In the Sale Objection, MEDS estimated that the cure costs under the EDS Contract was *at least* $286,978.84 as of December 10, 2018. MEDS stated that the cure costs were *at least* $286,978.84 as: a) additional amounts have and will accrue for the period from December 10, 2018 and the Closing Date, and b) under the EDS Contract the Hospital (as defined therein) is obligated to indemnify and hold MEDS harmless from "costs (including attorneys' fees and costs) … as a result of (a) Hospital's breach of this contract . . .".

---

[1] Capitalized terms used herein not otherwise defined shall have the meaning ascribed to them in the Purchase Agreement.

7. MEDS now estimates that the post-petition amount due under the EDS Contract is *at least* $108,012.00 through December 31, 2018. *See* Invoice, Exhibit "A" hereto.

## The Dismissal Motion Fails to Protect the Rights of Contract Counterparties, Including MEDS

8. Since the time that MEDS filed the Sale Objection, MEDS has been informed that the Debtors do not intend to assume and assign the EDS Contract (or any contracts between counterparties and St. Alexius) to the Purchaser. In any event, MEDS presumes that nothing in the Sale Motion or the Dismissal Motion will provide St. Alexius with any form of discharge or injunction against suit by creditors having claims against St. Alexius; nor will there be any stay under section 362 or otherwise that would limit counterparties' rights under their respective contracts.

9. Nevertheless, the procedures contemplated in the Sale Motion and the Dismissal Motion are still not adequate. The Debtors seek dismissal of certain of their cases without paying post-petition administrative claims that have accrued during the pendency of these proceedings. As a result of 11 U.S.C. §§ 365 and 362, counterparties to executory contracts such as MEDS were required to continue performing under their respective contracts after the Petition Date. Having used the bankruptcy process to extract additional services from MEDS without making payment therefor, the Debtors should not be able to dismiss their cases and leave administrative creditors unpaid. Rather, the Debtors should be required to pay administrative expenses incurred as a condition of obtaining a dismissal.

WHEREFORE, MEDS respectfully prays that the Court deny the Dismissal Motion or condition the granting of such motion on the prompt payment of administrative claims, and that the Court grant MEDS such additional and further relief as is just and proper.

DATED: January 4, 2019

        /s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
Email: loizides@loizides.com

OF COUNSEL:

GOLDSTEIN & PRESSMAN, P.C.
Steven Goldstein (ARN 24807MO, MBE 24807)
10326 Old Olive Street Road
St. Louis, MO 63141-5922
FAX: (314) 727-1447
(314) 727-1717
sg@goldsteinpressman.com