# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 18-12491 (CSS) |
| **PROMISE HEALTHCARE GROUP, LLC, et al.,** | Sale Hearing Date: January 22, 2019 at 10:00 AM |
| | Sale Objection Date: January 15, 2018 |
| Debtors. | Docket Nos. 37, 257 and 296 |

## ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING THE SILVER LAKE DEBTORS' SALE MOTION

Oracle America, Inc., ("Oracle"), a creditor and contract counter-party in the above-captioned jointly administered Chapter 11 cases, submits this Limited Objection and Reservation of Rights ("Rights Reservation") regarding (A) Success Healthcare, LLC, Success Healthcare 1, LLC and HLP of Los Angeles, LLC ("Silver Lake Debtors") Sale Motion (D.E. 37 and 257), and (B) Notice Of Potential Assumption And Assignment Of Business Contracts And Related Cure Amounts related thereto, (the "Contract Schedule") (D.E. 296).

### I. INTRODUCTION

1. By the Sale Motion and Contract Schedule, the Silver Lake Debtors seek Bankruptcy Court authority to, among other things, to sell substantially all of their assets to L.A. Downtown Medical Center LLC ("LADMC"), and in connection therewith to assume and assign certain executory contracts to LADMC, as well as the entry into a Transition Services Agreement between Silver Lake Debtors and LADMC ("TSA").

2. Oracle files this Limited Objection and Rights Reservation to the extent that the Silver Lake Debtors seek approval for (a) the proposed sale of, transfer of or a grant of security interest in and to, any Oracle-licensed software or products to any third party, (b) any proposed assumption and assignment of any agreements between Oracle and the Silver Lake Debtors,

and/or (c) any proposed transitional or shared use of its software, products or services by third parties.

- (a) First, the targeted Oracle agreements pertain to licenses of intellectual property which are not assignable absent Oracle's consent, pursuant to both the underlying license agreement and applicable law;

- (b) Second, the Sale Motion does not describe the contract (or contracts) the Silver Lake Debtors seek to assume and assign, especially in light of the fact that the Contract Schedule does not list any Oracle agreement, but the Sale Motion attempts to contemplate a sale of, transfer of or a grant of security interest in and to any Oracle-licensed software or products. Thus, preventing Oracle from evaluating either the Silver Lake Debtors' proposed cure amount or the assignability of the agreement;

- (c) Third, the Sale Motion does not provide Oracle with sufficient information to determine whether the purchaser/assignee is capable of performing under the terms of the contract, or contracts, the Silver Lake Debtors seek to assume and assign; and

- (d) Finally, the TSA contemplated by the Sale Motion potentially authorizes the shared use of Oracle's licenses and support services between the Silver Lake Debtors and a third party. Such shared use is prohibited by the relevant Oracle contracts.

## II. FACTUAL BACKGROUND

3. Prior to the commencement of the above captioned cases, the Debtors and Oracle are parties to integrated executory contracts, relating to the non-exclusive use of Oracle's patented licensed software by the Debtors, along with provisions of support, products and other services relating to such licenses, which are specifically tailored to the Debtors' business and needs (collectively, the "Oracle Agreements").

4. The above captioned cases were filed on November 5, 2018.

5. On November 6 2018, the Debtors filed the Sale Motion, seeking authority to sell substantially all of the Silver Lake Debtors' assets to LADMC.

6. On December 7, 2018, the Court approved, among other things, the bidding procedures and bid protections for the sale, the procedures for assumption and assignment of

designated executory contracts, the scheduling of an auction and sale hearing and approving various forms and notice relating to same.

7. In connection with the Sale Motion, the Asset Purchase Agreement with LADMC provides, in relevant part, as follows:

(a) Section 2.1. defines the Purchased Assets and, specifically, Section 2.1 (d) includes "all Inventory and other tangible personal property owned by any Seller, including all equipment (including all medical equipment, **computers** and other **data processing equipment** and related **software**)" as one of the Purchased Assets being transferred to LADMC. (emphasis added.)

(b) Similarly, Section 2.1 (j), in relevant part, as part of the definition of Purchased Assets, includes "all documents, records, operating manuals, files, **computers, hardware, data processing equipment, and computer software** (including licenses thereto, to the extent assignable or transferable)." (emphasis added.)

8. The Contract Schedule filed in connection with the Sale Motion on December 11, 2018 does not list any agreement between Oracle and Debtors.

9. Additionally, Exhibit F to the Sale Motion provides for a grant of security interest to Ally Bank, as agent for the Lenders, to "Intellectual Property", which, among other things, includes "Software."

10. In light of (a) the apparent discrepancy, between the definition of Purchased Assets, which could implicate Oracle software and/or products, and the absence of the listing of any Oracle agreement on the Contract Schedule, (b) the potential granting of a security interest in and to "Intellectual Property", which could implicate Oracle software, (c) Silver Lake Debtors seeking a blanket judicial determination striking any anti-assignment provisions, and (d) any contemplated "shared" or "transitional" use of Oracle software or products by both the Silver Lake Debtors and/or any third party, Oracle files this limited objection and reservation of rights to the extent that any Oracle software and/or product is implicated.

### III. ARGUMENT

#### A. The Silver Lake Debtors May Not Sell, Transfer, Assume And Assign Or Grant A Security Interest In And To The Oracle Agreements, Software or Products Absent Oracle's Consent.

11. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

12. Federal law makes non-exclusive patent and copyright licenses non-assignable absent consent of the licensor. *In Re Catapult Entertainment, Inc.,* 165 F.3d 747 (9th Cir. 1999), C*ert. Dismissed*, 528 U.S. 924 (1999). *See, In Re Access Beyond Technologies, Inc.,* 237 B.R. 32, 48-49 (Bankr. D. Del 1999) *(Citing In Re: West Elec., Inc.) 852 F. 2d 79 (3d Cir. 1988); In Re ANC Rental Corporation, Inc.,* 277 B.R. 226, 235 (Bankr. D. Del. 2002); *In Re Golden Books Family Entertainment, Inc.,* 269 B.R. 311, 316 (Bankr. D. Del. 2001)); *See Also, In Re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-Exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable.")).

13. Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software.

14. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not sell, transfer, assume and assign the Oracle Agreements or grant a security interest in and to the Oracle software and/or products subject thereto, without Oracle's consent.

15. At this time, Oracle does not consent to the Debtors' proposed sale, transfer, assumption and assignment and/or a grant of security interest in and to the Oracle software or products.

16. In addition, the Silver Lake Debtors' Sale Motion requests a blanket determination by the Court that anti-assignment provisions in contracts to be assumed and assigned are unenforceable and void.

17. The Proposed Sale Order provides, in relevant part, as follows:

"Any provision in or effect of any Purchased Contract that prohibits or conditions the assignment of such Purchased Contract or allows the party to such Purchased Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Purchased Contract constitutes an unenforceable anti-assignment provision that is void and of no force and effect pursuant to section 365(f) of the Bankruptcy Code.."

See, Proposed Sale Order, ¶ 25.

18. Oracle objects to the Silver Lake Debtors' requested finding because, as discussed above, the Oracle Agreements involve the non-exclusive license of copyrighted software, which are non-assignable absent Oracle's consent.

19. Because Bankruptcy Code section 365 and applicable law expressly preserve Oracle's right to consent to any assignment of its license agreements, the Silver Lake Debtors may not unilaterally nullify the anti-assignment provisions of the Oracle Agreements.

20. Accordingly, Oracle requests that the Silver Lake Debtors be denied this blanket authorization relating to any of the Oracle Agreements.

**B.    The Silver Lake Debtors Have Not Adequately Identified The Oracle Agreements It Proposes To Be Assumed And Assigned.**

21. As set forth above, the Silver Lake Debtors have not listed any Oracle Agreement in the Contract Schedule. However, the definition of Purchased Assets appears to implicate Oracle Agreements and/or for its products.

22. To the extent that the Silver Lake Debtors seek to assume and assign any Oracle Agreement, it must be listed on the Contract Schedule properly and may not be transferred as part of the general definition of Purchased Assets.

5

23. The Oracle Agreements pertain to licensing of patented software, which are licensed to the Debtors and are not owned by the Debtors.

24. To the extent that the Silver Lake Debtors seek to assume and assign any Oracle Agreement, the Silver Lake Debtors must specify each contract by: (a) name; (b) identification number; (c) any associated support or support renewals; and (d) if not already identified, the governing license agreement.

25. This information will enable Oracle to evaluate whether the Oracle Agreements are assumable and/or assignable, whether they are supported, expired or in default, and, if so, the appropriate cure amount.

26. Oracle reserves its right to be heard on this issue until after the contracts the Silver Lake Debtors seek to assume or assume and assign are identified.

**C.  Reservation of Rights Regarding Cure Amount.**

27. Before assuming and assigning any executory contract, the Silver Lake Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contract. 11 U.S.C. § 365(b)(1).

28. However, as discussed above, the Silver Lake Debtors have failed to describe the Oracle Agreements at issue, thereby preventing Oracle from ascertaining the correct cure amount.

29. Therefore, Oracle reserves its right to be heard further regarding the appropriate cure amount until after the contract, or contracts, the Silver Lake Debtors seek to assume and assign are identified with enough specificity to allow Oracle to determine the correct cure amount.

**D. The Sale Motion Should Be Denied With Respect To Any Oracle Agreements Because It Fails To Confirm the Ultimate Buyer/Potential Assignee's Identity.**

30. Section 365(b) of the Bankruptcy Code sets forth specific prerequisites that must be met before a trustee/debtor can assume and assign an executory contract, including (a) curing (or providing adequate assurance of a prompt cure of) any defaults under the subject contracts, and (b) providing adequate assurance of future performance under the contract. Absent the foregoing, the executory contracts may not be assumed, or assumed and assigned.

31. Although, the existing purchaser is identified as LADMC, the sale is subject to auction and an overbidder may emerge at, or prior to the Sale Hearing. Thus, there is uncertainty regarding the Purchaser's ultimate identity.

32. Moreover, the Auction is scheduled for January 17, 2019, a date after the deadline to object to the sale or to object to the proposed assumption and assignment of executory contracts[1].

**E. The Silver Lake Debtors Have Not Provided Adequate Assurance Of Future Performance By The Assignee.**

33. Before assuming and assigning any executory contract, the Silver Lake Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1).

34. To satisfy 11 U.S.C. § 365(b), Oracle requests that the Silver Lake Debtors provide the following information about LADMC or ultimate assignee: (a) financial bona fides; (b) confirmation that the proposed assignee is not an Oracle competitor; and (c) confirmation that the proposed assignee will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity <u>all</u> of the Oracle executory contracts to be assumed and assigned, and, if appropriate, (ii) enter into an Oracle Master License Agreement.

---

[1] Oracle is aware that the deadline to object to Adequate Assurance as to a Successful Bidder Other than the Stalking Horse Bidder is January 18, 2019. In order to avoid duplicate filings, Oracle includes its objection and reserves its rights to be heard on this issue.

35. Absent these assurances, Oracle cannot determine the ultimate assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Oracle Agreements.

**F.  Unauthorized "Shared" or "Transitional" Use of Oracle's Software is Prohibited.**

36. The TSA contemplates that certain transition services will be provided between the Silver Lake Debtors and ultimate assignee.

37. Oracle objects to any contemplated transition or shared services, of any Oracle software and/or products, as none of them are authorized by the Oracle Agreements.

38. Any simultaneous or shared use of, and access to, Oracle's software may exceed the scope of the permitted users under the Oracle Agreements, and would potentially result in an unauthorized "splitting" of the licenses between the authorized party and any purported transitional or shared user.

39. Accordingly, Oracle objects and reserves its right to be heard on the transitional or shared use contemplated by the TSA.

**IV.  CONCLUSION**

40. For the reasons set forth above, Oracle respectfully requests that the Court deny the Sale Motion, to the extent that (a) it authorizes sale or transfer of any Oracle software or products to LADMC or ultimate purchaser, (b) granting of any security interest in and to any Oracle products, or (c) seeks authority for any transitional or shared use by any authorized parties.  Oracle reserves its right to be heard on all issues set forth herein.

| | |
|---|---|
| Dated: January 15, 2019<br>Wilmington, Delaware | **MARGOLIS EDELSTEIN**<br><br>By:     /s/ James E. Huggett<br>    James E. Huggett, Esq. (#3956)<br>300 Delaware Avenue, Suite 800<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-1112<br>E-mail: jhuggett@margolisedelstein.com<br><br>Amish R. Doshi, Esq.<br>**DOSHI LEGAL GROUP, P.C.**<br>1979 Marcus Avenue, Suite 210E<br>Lake Success, NY 11042<br>Tel: (516) 622-2335<br>E-Mail: amish@doshilegal.com<br><br>Deborah Miller, Esq.<br>Benjamin Wheeler, Esq.<br>**ORACLE AMERICA, INC.**<br>500 Oracle Parkway<br>Redwood City, California 94065<br>Telephone: (650) 506-5200<br><br>**Attorneys for Oracle America, Inc.** |