**<u>Exhibit 6</u>**

**Bill of Sale**

**[See attached]**

FINAL FORM

FORM
OF
**GENERAL BILL OF SALE AND ASSIGNMENT**

**THIS GENERAL BILL OF SALE AND ASSIGNMENT** ("Bill of Sale") is entered into as of _____, 201_, by and among the entities listed as Sellers on the signature pages hereto (each a "Seller" and collectively, the "Sellers") and the entities listed as Buyers on the signature pages hereto (each a "Buyer" and collectively, the "Buyers"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in that certain Asset Purchase Agreement, dated _____, 201_, by and among Sellers, Buyers and certain of their respective affiliates (the "Purchase Agreement").

**RECITALS**

A.    Pursuant to the Purchase Agreement, Sellers have agreed to sell to Buyers and Buyers have agreed to purchase from Sellers, the Purchased Assets.

B.    The parties are entering into this Bill of Sale to satisfy a condition to the Closing of the transactions contemplated by the Purchase Agreement.

**NOW, THEREFORE,** in consideration of the foregoing premises, the mutual covenants and other agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers and Buyers hereby agree as follows:

1.    Sale and Assignment.  Sellers hereby irrevocably and unconditionally sell, assign, convey, transfer and deliver to Buyers, their successors and assigns forever, all of Sellers' right, title and interest to the Purchased Assets (other than Purchased Assets that are Owned Real Property or Assigned Contracts, which are specifically identified in the Purchase Agreement to be sold, conveyed, transferred or delivered to Buyers at the Closing pursuant to an instrument other than this Bill of Sale) (collectively the "Transferred Assets"), free and clear of all Encumbrances other than Permitted Encumbrances, to have and to hold the same and each and all thereof unto Buyers, their successors and assigns forever, to their own use and benefit forever. For the avoidance of doubt, the Excluded Assets are not Purchased Assets.

2.    Additional Conveyance Instruments.  Notwithstanding the foregoing, this Bill of Sale is not applicable to any Seller's sale, assignment, conveyance, transfer or delivery of (a) the Owned Real Property, the conveyance of which is governed by one or more deeds being delivered by Sellers or their Affiliates to Buyers in connection with the Closing or (b) the Assigned Contracts, the assignment of which is governed by an assignment and assumption agreement being delivered by Sellers or their Affiliates to Buyers in connection with the Closing.

3.    Further Assurances.  Sellers covenant that they will do or cause to be done all such further acts, and shall execute and deliver, or cause to be executed and delivered, all transfers, assignments and conveyances, evidences of title, notices and assurances reasonably necessary or appropriate to assure fully to Buyers and their respective successors or permitted assigns, all of the properties, rights, titles, interests, estates, remedies, powers and privileges relating to the Transferred Assets intended to be conveyed to Buyers pursuant to the transactions contemplated by the Purchase Agreement.

4.    Entire Agreement.  This Bill of Sale supersedes any and all prior agreements, either oral or written, between the parties with respect to the subject matter of this Bill of Sale (including any term sheet or similar agreement or document relating to the transaction contemplated hereby) other than the Purchase

Agreement, any such agreements contemplated by the Purchase Agreement, or the other transaction documents entered into pursuant to the terms and conditions of the Purchase Agreement (the "Transaction Documents"). This Bill of Sale, together with the Purchase Agreement and other Transaction Documents, constitutes the entire agreement between the parties with respect to the subject matter hereof.

5.    Waiver. No waiver of any term or condition of this Bill of Sale shall be valid or enforceable unless and until made in writing and signed by all parties hereto. A waiver on one occasion shall not be deemed to be a waiver of the same or any other breach, provision or requirement on any other occasion.

6.    Amendment. This Bill of Sale may be modified or amended only by a written instrument duly executed by each of the parties hereto.

7.    Counterparts and Facsimile Signatures. This Bill of Sale may be executed in counterparts, each and all of which shall be deemed an original and all of which together shall constitute but one and the same instrument. Signatures received via facsimile or other electronic transmission shall be accepted as originals.

8.    No Third Party Beneficiary. The terms and provisions of this Bill of Sale are intended solely for the benefit of the parties hereto and their respective permitted successors and assigns or delegates, and are not intended to, and shall not, create any enforceable third party beneficiary.

9.    Binding Effect. Subject to provisions herein to the contrary, this Bill of Sale shall inure to the benefit of and be binding upon the parties and their respective legal Representatives, successors and permitted assigns and delegates.

10.    Governing Law.

(a) The parties agree that this Bill of Sale and all disputes or controversies arising out of or relating to this Bill of Sale or the transactions contemplated hereby (in contract or tort) shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to conflicts of law principles.

(b) WITHOUT LIMITING THE RIGHT OF ANY PARTY HERETO TO APPEAL ANY ORDER OF THE BANKRUPTCY COURT, THE PARTIES HERETO HEREBY AGREE THAT ANY AND ALL CLAIMS, ACTIONS, CAUSES OF ACTION, SUITS, AND PROCEEDINGS RELATING TO THIS BILL OF SALE SHALL BE FILED AND MAINTAINED ONLY IN THE BANKRUPTCY COURT, AND THE PARTIES HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT; provided, however, that if the Bankruptcy Case has closed or the Bankruptcy Court lacks jurisdiction for whatever reason, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the state or federal courts situated in New Castle County, Delaware and any appellate court from any decision thereof, for the resolution of any such claim or dispute. The parties hereto hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may have now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each party hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment.

(c) Each party hereto hereby consents to process being served by any party to this Bill of Sale in any legal proceeding by delivery of a copy thereof in accordance with the provisions of Section 9.9 of the Purchase Agreement.

(d) EACH PARTY HERETO WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS BILL OF SALE, THE TRANSACTIONS CONTEMPLATED HEREBY OR ANY PROVISION HEREOF.

11.    Construction.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, the feminine or the neuter gender shall include the masculine, feminine and neuter. No provision of this Bill of Sale shall be interpreted for or against any party hereto on the basis that such party was the draftsman of such provision, each party having participated equally in the drafting hereof, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Bill of Sale.

12.    Headings.  The divisions of this Bill of Sale into sections and the use of the captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Bill of Sale.

13.    Severability; Invalid Provisions. If any provision of this Bill of Sale is held to be illegal, invalid or unenforceable under any present or future Law and if the rights or obligations of Sellers or Buyers under this Bill of Sale will not be materially and adversely affected thereby, (a) such provision will be fully severable, (b) this Bill of Sale will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof, (c) the remaining provisions of this Bill of Sale will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom; and (d) in lieu of such illegal, invalid or unenforceable provision, there will be added automatically as a part of this Bill of Sale a legal, valid and enforceable provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible.

14.    Conflicts Between Agreements. This Bill of Sale is made pursuant to the Purchase Agreement and is subject to the terms and conditions thereof. If any conflicts exist between this Bill of Sale and the Purchase Agreement, the Purchase Agreement shall control.

*[SIGNATURE PAGE FOLLOWS]*

**IN WITNESS WHEREOF**, the parties hereto have executed this Bill of Sale or caused this Bill of Sale to be executed by their duly authorized representatives as of the date first above written.

**SELLERS:**

[                                    ]

By:     _____
Name:  _____
Title:   _____


[                                    ]

By:     _____
Name:  _____
Title:   _____


**BUYERS:**

[                                    ]

By:     _____
Name:  _____
Title:   _____


[                                    ]

By:     _____
Name:  _____
Title:   _____


[Signature Page to Bill of Sale]

25328119.4.BUSINESS

**<u>Exhibit 7</u>**

**Assignment and Assumption Agreement**

**[See attached]**

**FORM**
**OF**
**ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT ("*Assignment*") is entered into as of _____, 201_, by and among the entities listed as Assignors on the signature pages hereto (each an "*Assignor*" and collectively, the "*Assignors*") and the entities listed as Assignees on the signature pages hereto (each an "*Assignee*" and collectively, the "*Assignees*"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in that certain Asset Purchase Agreement, dated _____, 201_, by and among Assignors, Assignees and certain of their respective affiliates (the "*Purchase Agreement*").

**RECITALS**

A.    Pursuant to the Purchase Agreement, Assignors have agreed to sell to Assignees, and Assignees have agreed to purchase from Assignors, the Purchased Assets, including the Assigned Contracts.

B.    Pursuant to the Purchase Agreement, Assignors have agreed to transfer to Assignees, and Assignees have agreed to accept and assume from Assignors, all of each Assignor's interest in and the future payment and performance of the Assigned Contracts.

C.    The parties hereto are entering into this Assignment to satisfy a condition to the Closing of the transactions contemplated in accordance with the Purchase Agreement.

NOW, THEREFORE, in consideration of the foregoing premises, the mutual covenants and other agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignors and Assignees hereby agree as follows:

1.    Assignment.  Each applicable Assignor, as set forth on Exhibit A hereto, hereby irrevocably sells, assigns, transfers, conveys and delivers to the corresponding applicable Assignee, as set forth on Exhibit A hereto, and its successors and assigns all of such Assignor's right, title and interests in, to and under any Assigned Contract effective as of 12:01 a.m. on _____, 201_, including any Disputed Contracts that subsequently become Assigned Contracts.

2.    Assumption.  By execution hereof, Assignees accept assignment of, agree to and hereby do assume all of the Assumed Liabilities.  For the avoidance of doubt, notwithstanding anything to the contrary contained herein, Assignees do not hereby assume or agree to perform or discharge, indemnify the Assignors against, or otherwise have any responsibility for, any Excluded Liabilities.  This Assignment does not release the Assignors from any, and the Assignors shall remain liable for all, Excluded Liabilities.

3.    Other Assignment and Assumption Agreements.  Notwithstanding any provision herein to the contrary, this Assignment does not apply to tenant leases or lessor leases, which are being transferred pursuant to a separate agreement.

4821-5014-3354.2

25328899.4.BUSINESS

4.    Cooperation. Each of Assignors and Assignees agree to execute such other documents and take such other actions as may be reasonably necessary or appropriate to confirm or effectuate the assignments and assumptions contemplated hereby or by the Purchase Agreement.

5.    Remedies. Assignors' and Assignees' remedies with respect to any claim arising from a breach of this Assignment shall be subject to the Purchase Agreement.

6.    Entire Agreement. This Assignment supersedes any and all prior agreements, either oral or written, between the parties with respect to the subject matter of this Assignment (including any term sheet or similar agreement or document relating to the transaction contemplated hereby) other than the Purchase Agreement, any such agreements contemplated by the Purchase Agreement, or the other transaction documents entered into pursuant to the terms and conditions of the Purchase Agreement (the "*Transaction Documents*"). This Assignment, together with the Purchase Agreement and the other Transaction Documents, constitutes the entire agreement between the parties with respect to the subject matter hereof.

7.    Waiver. No waiver of any term or condition of this Assignment shall be valid or enforceable unless and until made in writing and signed by all parties hereto. A waiver on one occasion shall not be deemed to be a waiver of the same or any other breach, provision or requirement on any other occasion.

8.    Amendment. This Assignment may be modified or amended only by a written instrument duly executed by each of the parties hereto.

9.    Counterparts and Facsimile Signatures. This Assignment may be executed in counterparts, each and all of which shall be deemed an original and all of which together shall constitute but one and the same instrument. Signatures received via facsimile or other electronic transmission shall be accepted as originals.

10.    No Third Party Beneficiary. The terms and provisions of this Assignment are intended solely for the benefit of the parties hereto and their respective permitted successors and assigns or delegates, and are not intended to, and shall not, create any enforceable third party beneficiary.

11.    Binding Effect. Subject to the provisions herein to the contrary, this Assignment shall inure to the benefit of and be binding upon the parties and their respective legal Representatives, successors and permitted assigns and delegates.

12.    Governing Law.

(a)    The parties agree that this Assignment and all disputes or controversies arising out of or relating to this Assignment or the transactions contemplated hereby (in contract or tort) shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to conflicts of law principles.

(b)    WITHOUT LIMITING THE RIGHT OF ANY PARTY HERETO TO APPEAL ANY ORDER OF THE BANKRUPTCY COURT, THE PARTIES HERETO HEREBY AGREE THAT ANY AND ALL CLAIMS, ACTIONS, CAUSES OF ACTION, SUITS, AND PROCEEDINGS RELATING TO THIS ASSIGNMENT SHALL BE FILED AND MAINTAINED ONLY IN THE BANKRUPTCY COURT, AND THE PARTIES HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT; provided, however, that if the Bankruptcy Case has closed or the Bankruptcy Court lacks

jurisdiction for whatever reason, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the state or federal courts situated in New Castle County, Delaware and any appellate court from any decision thereof, for the resolution of any such claim or dispute. The parties hereto hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may have now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each party hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment.

(c) Each party hereto hereby consents to process being served by any party to this Assignment in any legal proceeding by delivery of a copy thereof in accordance with the provisions of Section 9.9 of the Purchase Agreement.

(d) EACH PARTY HERETO WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS ASSIGNMENT, THE TRANSACTIONS CONTEMPLATED HEREBY OR ANY PROVISION HEREOF.

13. <u>Construction</u>. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, the feminine or the neuter gender shall include the masculine, feminine and neuter. No provision of this Assignment shall be interpreted for or against any party hereto on the basis that such party was the draftsman of such provision, each party having participated equally in the drafting hereof, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Assignment.

14. <u>Headings</u>. The divisions of this Assignment into sections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Assignment.

15. <u>Severability; Invalid Provisions</u>. If any provision of this Assignment is held to be illegal, invalid or unenforceable under any present or future Law and if the rights or obligations of Assignors or Assignees under this Assignment will not be materially and adversely affected thereby, (a) such provision will be fully severable; (b) this Assignment will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof; (c) the remaining provisions of this Assignment will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom; and (d) in lieu of such illegal, invalid or unenforceable provision, there will be added automatically as a part of this Assignment a legal, valid and enforceable provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible.

16. <u>Conflicts Between Agreements</u>. This Assignment is made pursuant to the Purchase Agreement and is subject to the terms and conditions thereof. If any conflicts exist between this Assignment and the Purchase Agreement, the Purchase Agreement shall control.

*[SIGNATURE PAGE FOLLOWS]*

**IN WITNESS WHEREOF**, the parties hereto have executed this Assignment or caused this Assignment to be executed by their duly authorized representatives as of the date first above written.

**ASSIGNORS:**

[_____]

By: _____
Name: _____
Title: _____

[_____]

By: _____
Name: _____
Title: _____

**ASSIGNEES:**

[_____]

By: _____
Name: _____
Title: _____

[_____]

By: _____
Name: _____
Title: _____

**Exhibit A**

**Assigned Contracts**

| Applicable Assignor | Applicable Assignee |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

**Exhibit 8**

**Assignment and Assumption of Lease for Real Property**

[See attached]

FINAL FORM

## FORM OF
## ASSIGNMENT AND ASSUMPTION OF LEASE AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION OF LEASE AGREEMENT ("*Assignment*") is made and entered into as of the _____ day of _____, 201_ (the "*Effective Date*") by and between Promise Hospital of Dade, Inc., a Delaware corporation ("*Assignor*"), and _____, a _____ ("*Assignee*").

## RECITALS

A.      Assignor is the tenant under that certain Ground Lease dated July 25, 2012, by and between TGC LL8, LLC and Assignor, as amended, assigned and supplemented (the "*Lease*").

B.      A legal description of the land subject to such Lease is attached hereto and incorporated herein by reference as **Exhibit A**.

C.      Assignor and Assignee are parties to that certain Asset Purchase Agreement dated as of December ___, 2018 (the **"Purchase Agreement"**), pursuant to which Assignor has agreed to assign the Lease to Assignee and Assignee has agreed to assume the Lease from Assignor.

D.      In connection with the Purchase Agreement, Assignor desires to assign, and Assignee desires to assume, the rights, duties, obligations, and liabilities of Assignor as landlord under the Lease.

NOW, THEREFORE, in consideration of the recitals set forth above, which are made a part of this Assignment, the mutual covenants hereinafter contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Assignment of Lease.  Effective as of the Effective Date, Assignor hereby assigns, sets over and transfers to Assignee all of its right, title and interest in, to and under the Lease.

2.      Assumption of Lease.  Effective as of the Effective Date, Assignee hereby assumes the performance of all of the terms, covenants, obligations and conditions imposed upon Assignor under the Lease accruing or arising on or after the Effective Date.

3.      Assignment Subject to the Purchase Agreement. This Assignment is made, executed and delivered pursuant to the Purchase Agreement, and is subject to all the terms, provisions and conditions thereof. Assignor and Assignee acknowledge and agree that neither the representations or warranties nor any of the rights, obligations or remedies of any party under the Purchase Agreement shall be deemed to be modified or altered in any way by this Assignment. To the extent of any conflict between the terms of the Purchase Agreement and this Assignment, the Purchase Agreement shall control.

4.      Governing Law.  This Assignment shall be governed by and construed in accordance with the internal laws of the State of Florida, without giving effect to the conflict of law rules and principles of said state.

5.      Successors, etc., Bound by Assignment.  This Assignment shall apply to and bind the heirs, executors, administrators, successors and assigns of the parties hereto.

6.      Captions.  The marginal headings or titles to the sections and paragraphs of this Assignment and the title of this instrument are not part of the Assignment but are inserted for convenience only and shall have no effect upon the construction or interpretation of any part of this Assignment.

7.    Counterparts. This Assignment may be executed in counterparts, each of which shall be deemed an original, and all of which shall constitute one document. For convenience purposes, this Assignment may be executed in facsimile or portable document file (PDF) form, all of which shall be deemed, when taken together, to be originals.

(Remainder of Page Intentionally Left Blank)

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment and Assumption of Lease as of the day and year first above written.

**ASSIGNOR**:

By: _____
Printed Name: ____ _____
Title: _____

WITNESS my hand and official seal.


Signature _____


WITNESS my hand and official seal.


Signature _____

**<u>ASSIGNEE</u>**:

By: _____
Printed Name: _____
Title: _____

WITNESS my hand and official seal.


Signature _____


WITNESS my hand and official seal.


Signature _____

## Exhibit A

Lease Land

**Exhibit 9**

**[RESERVED]**

**Exhibit 10**

**Drug Enforcement Administration (DEA) Power of Attorney**

[See attached]

FINAL FORM

# FORM
## OF
## LIMITED POWER OF ATTORNEY
## FOR USE OF PHARMACY LICENSES,
## DEA AND OTHER REGISTRATION NUMBERS,
## AND DEA ORDER FORMS

[SELLER ENTITIES] ("*Operator*"), operates [a] long term acute care [facility/facilities] located at [INSERT FACILITY ADDRESS(ES)] (the "[*Facility/Facilities*]"). In connection with the operation of the [Facility/Facilities], Operator currently holds: (1) Pharmacy License Numbers _____; and (2) [List all additional board of pharmacy related licenses, such as state controlled dangerous substance licenses, automated medication system registrations, etc., if applicable]. Operator is also authorized under DEA registration numbers _____ to sign the current applications for registration and licensure as the registrant under the Controlled Substances Act of the United States. This Limited Power of Attorney For Use Of Pharmacy Licenses, DEA And Other Registration Numbers, and DEA Order Forms (this "*Limited POA*") is executed on and effective as of _____ ("*Effective Date*").

Operator has made, constituted, and appointed, and hereby makes, constitutes and appoints [BUYER ENTITY] ("*Agent*"), as the Operator's agent and true and lawful attorney-in-fact for the limited purposes of utilizing Operator's pharmacy licenses, pharmacy health care entity licenses, DEA registrations, and any other registrations required under the laws of the United States or the State of _____ to continue pharmacy operations located at the [Facility/Facilities] (the "*Pharmacies*"). Agent may act in this capacity until such time as Agent or its designee obtains new pharmacy licenses, pharmacy health care entity licenses, DEA registrations and such other registrations for the Pharmacies but in no event shall this Limited POA continue more than one hundred eighty (180) calendar days after the Effective Date, unless, despite Agent's good faith efforts, the issuance of new pharmacy licenses, pharmacy health care entity licenses, DEA registrations and such other registrations for the Pharmacies are delayed by the applicable governmental agency. The Operator further grants this Limited POA to Agent to act as the true and lawful agent and attorney-in-fact of the Operator, and to act in the name, place, and stead of the Operator, to execute applications for books of official order forms, to sign such order forms in requisition for controlled substances, in accordance with Section 308 of the Controlled Substances Act (21 U.S.C. 828) and part 1305 of Title 21 of the Code of Federal Regulations, and to carry out the controlled substance activities of the Pharmacies under Operator's DEA registration(s).

The Operator recognizes that it remains legally responsible for the Pharmacies and controlled substance licenses and DEA and other registrations issued to it, during the period in which this Limited POA is in effect. Therefore, the Operator grants this Limited POA based upon the following covenants and warranties of Agent: (a) Agent shall follow and abide by and comply with all federal and state laws governing the regulation of controlled substances and pharmacy practice at all times while utilizing this Limited POA; and (b) Agent, or its designee, shall make application for and pursue its own pharmacy and controlled substance licenses and DEA and other registrations which are required for the distribution of pharmaceuticals, including but not limited to controlled substances, at the Pharmacies, as soon as practicable.

This Limited POA may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement, binding on all of the parties hereto.

**[signature page follows]**

IN WITNESS WHEREOF, Operator and Agent have executed this Limited POA as of the date first written above.

**OPERATOR:**

[_____]

By:_____

Name: _____

Title: _____

**AGENT:**

[_____]

By:_____

Name: _____

Title: _____

**WITNESSES:**

1._____

2._____

**WITNESSES:**

1._____

2._____

**Exhibit 11**

**Special Warranty Deed**

[See attached]

<b>FINAL FORM</b>

THIS DOCUMENT PREPARED BY AND
AFTER RECORDING RETURN TO:

_____, Esq.
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN  37219

Parcel Identification Number: _____

**FORM**
**OF**
**SPECIAL WARRANTY DEED**

STATE OF _____          )
                                )     KNOW ALL MEN BY THESE PRESENTS
COUNTY OF _____           )

THIS SPECIAL WARRANTY DEED is made this _____ day of _____, 201__, by and between _____, a _____, whose address is _____, ("*Grantor*"), and _____, a _____, whose address is _____, ("*Grantee*"),

WITNESSETH: That Grantor, for and in consideration of the sum of Ten Dollars ($10.00), and other good and valuable considerations in hand paid by Grantee, the receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto Grantee, its successors and assigns forever, all the right, title, interest and claim of the said Grantor in and to the following described land in _____ County, Florida (the "*Property*"), to-wit:

See **Exhibit A** attached hereto and incorporated herein for legal description.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

To Have and to Hold, the same in fee simple forever.

And the Grantor hereby covenants with said Grantee that it is lawfully seized of said land in fee simple, that it has good right and lawful authority to sell and convey said land, and hereby warrants the title to said land and will defend the same against the lawful claims of all persons claiming by, through, or under said Grantor; and that said land is free of all encumbrances except for matters shown on **Exhibit B** attached hereto and incorporated herein.

IN WITNESS WHEREOF, the said Grantor has executed this deed under seal on the date aforesaid.

4839-1037-3754 (Florida SWD)
25327547.2.BUSINESS

Signed, sealed and delivered in          **GRANTOR**:
the presence of:

_____          _____

Witness Signature
Print Name:

                                        By:_____
                                        Print Name: _____
                                        Title: _____

_____

Witness Signature
Print Name:


STATE OF _____          )
COUNTY OF _____          )

     The foregoing instrument was acknowledged before me this __ day of _____,
201_, by _____ as _____ of _____, a
_____ _____, on behalf of the _____. He/She is personally known to
me or has produced _____ as sufficient identification.

                                        _____

                                        Notary Public

                                        _____

                                        Printed Name

My Commission Expires:_____


Send tax bills to:

_____

_____

**Exhibit A**

Legal Description

**Exhibit B**

Permitted Encumbrances

**Exhibit 12**

Affidavit

[See attached]

**FORM**
**OF**
**FINAL AFFIDAVIT**
**TO BE SIGNED BY ENTITY SELLER**

State of _____ )

County of _____ ) SS.

) 

File #:_____

This Affidavit and the information contained herein pertain to the property commonly known as (the "*Property*"): _____,

The undersigned, being duly sworn, deposes and says that:

The limited liability company, corporation, limited partnership, general partnership, or trust ("*Entity*") signing this Affidavit has owned the Property continuously for _____ years last past, and its enjoyment thereof has been peaceable and undisturbed and the title to the Property has never been disputed or questioned, nor are there any facts by reason of which the title to, or possession of, the property might be disputed or questioned, or by reason of which any claim to any of the Property might be asserted adversely against the Entity;

Proceedings in bankruptcy have been instituted by the Entity, and the Entity made an assignment for the benefit of creditors;

To the undersigned's knowledge, there are no unpaid bills, actions or proceedings relating to Property which are now pending in federal, state or municipal courts in the United States which constitutes a lien or charge upon the Property;

Except as otherwise disclosed on the Commitment, No. _____, there are no tenancies, leases, or other occupancies with respect to the Property;

To the undersigned's knowledge, there are no written notices from any public authority, requiring any improvement, alteration or change to be made in or about the Property;

To the undersigned's knowledge, there are no unpaid bills or claims for labor or services performed or material furnished or delivered during the last 12 months for alterations, repair work or new construction on the Property, except (**if none, state "none"**);

To the undersigned's knowledge, there are currently no contracts for the making of repairs or improvements to the Property ~~and there have been no improvements made on the Property~~, except (**if none, state "none"**);

To the undersigned's knowledge, there are no chattel mortgages, conditional sale contracts, security agreements, financing statements, retention of title agreements, or personal property leases affecting any materials, fixtures, appliances, furnishings, or equipment placed upon or installed in or upon the Property

4812-3139-2890.3 (Owner's Affidavit)

25359451.1.BUSINESS

or the improvements thereon, and all plumbing, heating, lighting, refrigerating, and other equipment is fully paid for, including all bills for the repair thereof, except (**if none, state "none"**);

Except as otherwise disclosed on the Commitment, No. _____, there are no real estate taxes, special taxes, special assessments, sewer, water, or trustee assessments against the Property, which are now due and payable or delinquent; and

Except as otherwise disclosed on the Commitment, No. _____, the Property is not subject to any unrecorded rights-of-way, easements, or party walls.

This Affidavit is given to induce the title insurance underwriter ("**Title Company**") to issue its title insurance policy(ies) with respect to the Property. Title Company will justifiably rely on the information provided herein in the closing of the purchase/sale or refinance of the Property and the issuance of its title insurance policy(ies) with respect to the Property. The Entity shall indemnify, defend and hold Title Company harmless from and against any loss, cost, or damage (including court costs, attorney fees, and expenses) resulting from inaccurate information contained herein.

MAILING
ADDRESS:        _____

NAME OF SELLER:

By: _____
Name: _____
Title: _____

Subscribed and sworn before me on this _____ day of _____, 201_.

_____
Notary Public: _____

My term expires: _____

4812-3139-2890.3

25359451.1.BUSINESS

EXECUTION VERSION

## ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** ("*Agreement*"), dated effective as of December 23, 2018 ("*Effective Date*"), is by and among SELECT MEDICAL CORPORATION, a Delaware corporation ("*Buyers' Parent*"), PROMISE HEALTHCARE, INC., a Florida corporation ("*Sellers' Parent*"), and U.S. BANK NATIONAL ASSOCIATION, a national banking association, as escrow agent hereunder ("*Escrow Agent*").

## BACKGROUND

A.  Buyers' Parent, Sellers' Parent and certain of their respective affiliates have entered into an Asset Purchase Agreement (the "*Underlying Agreement*"), dated as of December 23, 2018, pursuant to which affiliates of Buyers' Parent have agreed to purchase and affiliates of Sellers' Parent have agreed to sell the Purchased Assets (as defined in the Underlying Agreement).  The Underlying Agreement provides that, as of the date hereof, Buyers' Parent shall deposit the Deposit (defined below) and, as of the Closing, Buyers' Parent shall deposit the Cure Amount Escrow (as defined below), in each case in a segregated escrow account to be held by Escrow Agent as an earnest money deposit pursuant to the Underlying Agreement.

B.  Escrow Agent has agreed to accept, hold, and disburse the funds deposited with it and any earnings thereon in accordance with the terms of this Agreement.

C.  Buyers' Parent and Sellers' Parent have appointed the Representatives (as defined below) to represent them for all purposes in connection with the funds to be deposited with Escrow Agent and this Agreement.

D.  Buyers' Parent and Sellers' Parent acknowledge that (i) Escrow Agent is not a party to and has no duties or obligations under the Underlying Agreement; (ii) all references in this Agreement to the Underlying Agreement are solely for the convenience of Buyers' Parent and Sellers' Parent; and (iii) Escrow Agent shall have no implied duties beyond the express duties set forth in this Agreement.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, for themselves, their successors and assigns, hereby agree as follows:

1.  <u>Definitions</u>. The following terms shall have the following meanings when used herein:

"*Applicable Party*" have the meaning set forth in <u>Section 5</u>.

"*Bankruptcy Court*" shall mean the United States Bankruptcy Court for the District of Delaware.

"*Business Day*" shall mean any day other than a Saturday, Sunday or day on which banks are authorized or required to be closed in New York, New York.

"*Buyer Representative*" shall mean the person(s) so designated on <u>Schedule C</u> hereto or any other person designated in a writing signed by Buyers' Parent and delivered to Escrow Agent and a Seller Representative in accordance with the notice provisions of this Agreement, to act as its representative under this Agreement.

"*Closing*" shall have the meaning ascribed to such term in the Underlying Agreement.

4822-7008-1658.5
25330363.4.BUSINESS

"*Deposit*" shall have the meaning ascribed to such term in the Underlying Agreement.

"*Escrow Funds*" shall mean the funds deposited with Escrow Agent pursuant to <u>Section 3</u> of this Agreement in either the Deposit Escrow Account or the Cure Amount Escrow Account, together with any interest and other income thereon.

"*Final Order*" shall mean a final and nonappealable Order, which Order is delivered to Escrow Agent accompanied by a written instruction from Buyers' Parent or Sellers' Parent given to effectuate such Order and confirming that such Order is final and nonappealable, and Escrow Agent shall be entitled to conclusively rely upon any such confirmation and instruction and shall have no responsibility to review the Order to which such confirmation and instruction refers.

"*Indemnified Party*" shall have the meaning set forth in <u>Section 11</u>.

"*Joint Written Direction*" shall mean a written direction executed by a Buyer Representative and a Seller Representative, delivered to Escrow Agent in accordance with <u>Section 15</u> and directing Escrow Agent to disburse all or a portion of the Escrow Funds or to take or refrain from taking any other action pursuant to this Agreement.

"*Order*" shall mean a final nonappealable order of the Bankruptcy Court or any other court of competent jurisdiction.

"*Receiving Party*" shall have the meaning set forth in <u>Section 5</u>.

"*Representatives*" shall mean a Buyer Representative and a Seller Representative.

"*Seller Representative*" shall mean the person(s) so designated on <u>Schedule C</u> hereto or any other person designated in a writing signed by Sellers' Parent and delivered to Escrow Agent and a Buyer Representative in accordance with the notice provisions of this Agreement, to act as its representative under this Agreement.

"*Termination Claim*" shall mean a claim by an Applicable Party for payment of the Deposit pursuant to <u>Section 8.1</u> of the Underlying Agreement.

"*Termination Notice*" shall mean a written notification signed on behalf of an Applicable Party demanding payment of the Deposit in connection with a Termination Claim, and otherwise complying with the requirements of the Underlying Agreement.

"*Termination Response*" shall mean a written notification, signed on behalf of a Receiving Party, which shall set forth whether or not such Receiving Party disputes any matter with respect to a Termination Notice together with a reasonable level of detail regarding the basis for such dispute.

"*Termination Response Period*" shall mean the period from the delivery of a Termination Notice until 5 p.m. ET on the date that is three (3) Business Days following such delivery.

      2.    <u>Appointment of and Acceptance by Escrow Agent</u>.  Buyers' Parent and Sellers' Parent hereby appoint Escrow Agent to serve as escrow agent hereunder.  Escrow Agent hereby accepts such appointment and, upon receipt by wire transfer of any of the Escrow Funds in accordance with <u>Section 3</u>, agrees to hold, invest and disburse the Escrow Funds in accordance with this Agreement.

3.    Deposit of Escrow Funds.

(a)    Within one (1) Business Day following the execution and delivery of this Agreement, Buyers' Parent will transfer $3,780,000 by wire transfer of immediately available funds to an account designated by Escrow Agent (the "*Deposit Escrow Account*").

(b)    At the Closing, Buyers' Parent will transfer an amount of cash equal to the Aggregate Disputed Amount (as defined in the Underlying Agreement) (the "*Cure Amount Escrow*") by wire transfer of immediately available funds to an account designated by the Escrow Agent (the "*Cure Amount Escrow Account*").

(c)    All Escrow Funds shall remain uninvested except as provided in Section 7.

4.    Disbursements of Escrow Funds.

(a)    Subject to compliance with the procedures of Section 5 hereof, Escrow Agent shall disburse the Escrow Funds at any time and from time to time, upon receipt of, and in accordance with, (i) a Joint Written Direction substantially in the form of Attachment 1 hereto, which shall contain complete payment instructions, including funds transfer instructions or an address to which a check in such amount shall be sent or (ii) a Final Order.

(b)    Upon receipt of notice from the Buyers' Parent and Sellers' Parent that the Closing has occurred, Escrow Agent shall distribute to Sellers' Parent, as promptly as practicable, any funds then remaining in the Deposit Escrow Account.

(c)    Prior to any disbursement, Escrow Agent must receive reasonable identifying information regarding the recipient so that Escrow Agent may comply with its regulatory obligations and reasonable business practices, including without limitation a completed United States Internal Revenue Service ("*IRS*") Form W-9 or Form W-8, as applicable. All disbursements of Escrow Funds shall be subject to the fees and claims of Escrow Agent pursuant to Section 11 and Section 12.

(d)    Buyers' Parent and Sellers' Parent may each deliver written notice to Escrow Agent in accordance with Section 15 changing their respective funds transfer instructions, which notice shall be effective only upon receipt by Escrow Agent and after Escrow Agent has had a reasonable period of time to act upon such notice.

5.    Termination Claims.  Subject to Section 5(a) below, in the event the Closing does not occur Sellers' Parent or Buyers' Parent (the "*Applicable Party*") may deliver a Termination Notice to the other party (the "*Receiving Party*") and Escrow Agent directing that the Deposit be released to the Applicable Party and in so doing shall certify to Escrow Agent that the Termination Notice complies with the requirements of notice pursuant to the Underlying Agreement.

(a)    In the event the Closing does not occur due to a Qualifying Termination (as defined in the Underlying Agreement), Sellers' Parent may deliver a Termination Notice to Buyers' Parent and Escrow Agent directing Escrow Agent to release the Deposit to Sellers' Parent.  In the event the Closing does not occur due to any other termination of the Underlying Agreement in accordance with the terms thereof, Buyers' Parent may deliver a Termination Notice to Sellers' Parent and Escrow Agent directing Escrow Agent to release the Deposit to Buyers' Parent.

(b)    Within the Termination Response Period, the Receiving Party may deliver a Termination Response to the Applicable Party and Escrow Agent. If the Receiving Party fails to provide the Applicable Party and Escrow Agent with a Termination Response within the Termination Response Period, then the Receiving Party shall be deemed to have consented to the release by Escrow Agent of the Escrow Funds to the Applicable Party; and Escrow Agent shall promptly disburse to the Applicable Party the Escrow Funds in accordance with the Termination Notice.

(b)    In the event the Applicable Party and Escrow Agent are provided with a Termination Response during the Termination Response Period, Escrow Agent shall not disburse any Escrow Funds until Escrow Agent receives a Joint Written Direction or a Final Order.

(c)    Escrow Agent shall have no responsibility to determine whether any Termination Notice or Termination Response has been received by a Receiving Party or an Applicable Party, as applicable, or to provide any Termination Notice or Termination Response to a Receiving Party or an Applicable Party.

6.    Suspension of Performance; Disbursement into Bankruptcy Court.  If, at any time, (a) a dispute exists with respect to any obligation of Escrow Agent hereunder, (b) Escrow Agent is unable to determine, to Escrow Agent's sole satisfaction,  Escrow Agent's proper actions with respect to its obligations hereunder, or (c) the Representatives have not, within 10 days of receipt of a notice of resignation, appointed a successor Escrow Agent to act hereunder, then Escrow Agent may, in its sole discretion, take the following actions:

(i)    suspend the performance of any of its obligations (including without limitation any disbursement obligations) under this Agreement until such dispute or uncertainty shall be resolved to the sole satisfaction of Escrow Agent or until a successor Escrow Agent shall have been appointed.

(ii)    petition (by means of an interpleader action or any other appropriate method) by the Bankruptcy Court, for instructions with respect to such dispute or uncertainty and, to the extent required or permitted by law, pay into the Bankruptcy Court, for holding and disposition in accordance with the instructions of the Bankruptcy Court, all Escrow Funds, after deduction and payment to Escrow Agent of all fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder.

Escrow Agent shall have no liability to Buyers' Parent or Sellers' Parent for suspension of performance or disbursement into court, specifically including any liability or claimed liability that may arise due to any delay in any other action required or requested of Escrow Agent.

7.    Investment of Funds.  (a) Based upon Buyers' Parent's and Sellers' Parent's prior review of investment alternatives, in the absence of further Joint Written Direction to the contrary at any time that an investment decision must be made, Escrow Agent is directed to invest and reinvest the Escrow Funds in the investment identified in Schedule A. Buyers' Parent and Sellers' Parent may deliver to Escrow Agent a Joint Written Direction changing the investment of the Escrow Funds, which direction Escrow Agent shall conclusively rely without inquiry or investigation; provided, however, that Buyers' Parent and Sellers' Parent warrant that no investment or reinvestment direction shall be given except the following: (a) direct obligations of the United States of America or obligations the principal of and the interest on which are unconditionally guaranteed by the United States of America; (b) U.S. dollar

denominated deposit accounts and certificates of deposit issued by any bank, bank and trust company, or national banking association (including Escrow Agent and its affiliates), which are either (i) insured by the Federal Deposit Insurance Corporation ("**FDIC**") up to FDIC limits, or (ii) with domestic commercial banks which have a rating on their short-term certificates of deposit on the date of purchase of at least "*A-I*" by S&P or "*P-I*" by Moody's (ratings on holding companies are not considered as the rating of the bank); or (c) money market funds, including funds managed by Escrow Agent or any of its affiliates; provided further, however, that Escrow Agent will not be directed to invest in investments that Escrow Agent determines are not consistent with Escrow Agent's policies or practices. Buyers' Parent and Sellers' Parent recognize and agree that Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of Escrow Funds or the purchase or disposition of any investment and the Escrow Agent shall not have any liability for any loss in an investment made pursuant to the terms of this Agreement. Escrow Agent has no responsibility whatsoever to determine the market or other value of any investment and makes no representation or warranty as to the accuracy of any such valuations. To the extent applicable regulations grant rights to receive brokerage confirmations for certain security transactions, Buyers' Parent and Sellers' Parent waive receipt of such confirmations.

(b)    All investments shall be made in the name of Escrow Agent. Escrow Agent may, without notice to Buyers' Parent and Sellers' Parent, sell or liquidate any of the foregoing investments at any time for any disbursement of Escrow Funds permitted or required hereunder and shall not be liable for any loss, cost or penalty resulting from any sale or liquidation of any such investment. All investment earnings shall become part of the Escrow Funds and investment losses shall be charged against the Escrow Funds. With respect to any Escrow Funds or investment instruction received by Escrow Agent after 11:00 a.m., U.S. Central Time, Escrow Agent shall not be required to invest applicable funds until the next Business Day. Receipt of the Escrow Funds and investment and reinvestment of the Escrow Funds shall be confirmed by Escrow Agent by an account statement sent to Buyers' Parent and Sellers' Parent. Failure to inform Escrow Agent in writing of any error or omission in any such account statement within 90 days after receipt shall conclusively be deemed confirmation and approval by Buyers' Parent and Sellers' Parent of such account statement.

8.    Tax Reporting.    Escrow Agent shall have no responsibility for the tax consequences of this Agreement. Except as otherwise agreed by Escrow Agent in writing, Escrow Agent has no tax reporting or withholding obligation except with respect to Form 1099-B reporting on payments of gross proceeds under Internal Revenue Code Section 6045 and Form 1099 and Form 1042-S reporting with respect to investment income earned on the Escrow Funds, if any. To the extent that U.S. federal imputed interest regulations apply, Buyers' Parent and Sellers' Parent shall, no later than five (5) Business Days after the Effective Date, so inform the Escrow Agent, provide the Escrow Agent with all imputed interest calculations and direct the Escrow Agent to disburse imputed interest amounts as Buyers' Parent and Sellers' Parent deem appropriate. The Escrow Agent shall rely solely on such provided calculations and information and shall have no responsibility for the accuracy or completeness of any such calculations or information. Buyers' Parent and Sellers' Parent shall provide Escrow Agent a properly completed IRS Form W-9 or Form W-8, as applicable, for each payee. If requested tax documentation is not so provided, Escrow Agent is authorized to withhold taxes as required by the United States Internal Revenue Code and related regulations. Buyers' Parent and Sellers' Parent have determined that any interest or income on Escrow Funds shall be reported on an accrual basis and deemed to be for the account of Seller.

9.    Resignation or Removal of Escrow Agent.    Escrow Agent may resign and be discharged from the performance of its duties hereunder at any time by giving thirty (30) days' prior written notice to Buyers' Parent and Sellers' Parent specifying a date when such resignation shall take effect and, after the date of such resignation notice, notwithstanding any other provision of this Agreement, Escrow Agent's sole obligation will be to hold the Escrow Funds pending appointment of a successor Escrow Agent.

Similarly, Escrow Agent may be removed at any time by Buyers' Parent and Sellers' Parent giving at least thirty (30) days' prior written notice to Escrow Agent specifying the date when such removal shall take effect. If Buyers' Parent and Sellers' Parent fail to jointly appoint a successor Escrow Agent prior to the effective date of such resignation or removal, Escrow Agent may petition the Bankruptcy Court to appoint a successor escrow agent, and all costs and expenses related to such petition shall be paid jointly and severally by Buyers' Parent and Sellers' Parent. The retiring Escrow Agent shall transmit all records pertaining to the Escrow Funds and shall pay all Escrow Funds to the successor Escrow Agent, after making copies of such records as the retiring Escrow Agent deems advisable and after deduction and payment to the retiring Escrow Agent of all fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by the retiring Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder. After any retiring Escrow Agent's resignation or removal, the provisions of this Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Escrow Agent under this Agreement.

10.     Duties and Liability of Escrow Agent.

(a)     Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. Escrow Agent has no fiduciary or discretionary duties of any kind. Escrow Agent's permissive rights shall not be construed as duties. Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any document other than this Agreement, including without limitation the Underlying Agreement or any other agreement between any or all of the parties hereto or any other persons even though reference thereto may be made herein and whether or not a copy of such document has been provided to Escrow Agent. Escrow Agent's sole responsibility shall be for the safekeeping of the Escrow Funds in accordance with Escrow Agent's customary practices and disbursement thereof in accordance with the terms of this Agreement. Escrow Agent shall not be responsible for or have any duty to make any calculations under this Agreement, or to determine when any calculation required under the provisions of this Agreement should be made, how it should be made or what it should be, or to confirm or verify any such calculation. Escrow Agent shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. This Agreement shall terminate upon the distribution of all the Escrow Funds pursuant to this Agreement, and Escrow Agent shall thereafter have no further obligation or liability whatsoever with respect to this Agreement or the Escrow Funds.

(b)     Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that the Bankruptcy Court or any other court of competent jurisdiction determines, which determination is not subject to appeal, that Escrow Agent's fraud, gross negligence or willful misconduct was the cause of any loss to Buyers' Parent or Sellers' Parent. Escrow Agent may retain and act hereunder through agents, and shall not be responsible for or have any liability with respect to the acts of any such agent retained by Escrow Agent in good faith.

(c)     Escrow Agent may rely upon any notice, instruction, request or other instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent believes to be genuine and to have been signed or presented by the person or parties purporting to sign the same. In no event shall Escrow Agent be liable for (i) acting in accordance with or conclusively relying upon any instruction, notice, demand, certificate or document believed by Escrow Agent to have been created by or on behalf of Buyers' Parent or Sellers' Parent or (ii) incidental, indirect, special, consequential or punitive damages or penalties of any kind (including, but not limited to lost profits), even if Escrow Agent has been advised of the likelihood of such damages or penalty and regardless of the form of action.

(d)    Escrow Agent shall not be responsible for delays or failures in its performance hereunder resulting from acts of God, strikes, lockouts, riots, acts of war or terror, epidemics, governmental regulations, fire, communication line failures, computer viruses, attacks or intrusions, power failures, earthquakes or any other circumstance beyond its control. Except for any action by a party hereto against Escrow Agent, Escrow Agent shall not be obligated to take any legal action in connection with the Escrow Funds, this Agreement or the Underlying Agreement or to appear in, prosecute or defend any such legal action or to take any other action that in Escrow Agent's sole judgment may expose it to potential expense or liability.

(e)    Escrow Agent may consult, at Buyers' Parent and Sellers' Parent's cost, legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, or relating to any dispute involving this Agreement, and shall incur no liability and shall be fully indemnified from any liability reasonably incurred in acting in accordance with the advice of such counsel; provided, however, that Buyers' Parent and Sellers' Parent agree, solely as between Buyers' Parent and Sellers' Parent, that all such amounts shall be paid one-half by Buyers' Parent and one-half by Sellers' Parent; provided further, however, that the Escrow Agent shall not be entitled to the payment or reimbursement of any such costs incurred to the extent determined by a court of competent jurisdiction to have resulted from the fraud, gross negligence or willful misconduct of the Escrow Agent. Buyers' Parent and Sellers' Parent agree to perform or procure the performance of all further acts and things, and execute and deliver such further documents, as may be required by law or as Escrow Agent may reasonably request in connection with its duties hereunder. When any action is provided for herein to be done on or by a specified date that falls on a day other than a Business Day, such action may be performed on the next ensuing Business Day.

(f)    If any portion of the Escrow Funds is at any time attached, garnished or levied upon, or otherwise subject to any writ, order, decree or process of the Bankruptcy Court, or in case disbursement of Escrow Funds is stayed or enjoined by the Bankruptcy Court, Escrow Agent is authorized, in its sole discretion, to respond as it deems appropriate or to comply with all writs, orders, decrees or process so entered or issued, including but not limited to those which it is advised by legal counsel of its own choosing is binding upon it; and if Escrow Agent relies upon or complies with any such writ, order, decree or process, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even if such order is reversed, modified, annulled, set aside or vacated.

(g)    Escrow Agent and any stockholder, director, officer or employee of Escrow Agent may buy, sell and deal in any of the securities of any other party hereto and contract and lend money to any other party hereto and otherwise act as fully and freely as though it were not Escrow Agent under this Agreement. Nothing herein shall preclude Escrow Agent from acting in any other capacity for any other party hereto or for any other person or entity.

(h)    In the event instructions, including funds transfer instructions, address change or change in contact information are given to Escrow Agent (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile or otherwise, Escrow Agent is authorized but shall not be required to seek confirmation of such instructions by telephone call-back to the applicable Representative, and Escrow Agent may rely upon the confirmation of anyone purporting to be the person so designated. The persons and telephone numbers for call-backs may be changed only in writing actually received and acknowledged by Escrow Agent and shall be effective only after Escrow Agent has a reasonable opportunity to act on such changes. Buyers' Parent and Sellers' Parent agree that Escrow Agent may at its option record any telephone calls made pursuant to this Section. Escrow Agent in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by Buyers' Parent or Sellers' Parent to identify (i) the beneficiary, (ii) the beneficiary's bank, or (iii) an intermediary bank,

even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank so designated. Buyers' Parent and Sellers' Parent acknowledge that these optional security procedures are commercially reasonable.

11.    Indemnification of Escrow Agent.  Buyers' Parent and Sellers' Parent, jointly and severally, shall indemnify and hold harmless Escrow Agent and each director, officer, employee and affiliate of Escrow Agent (each, an "*Indemnified Party*") upon demand against any and all claims (whether asserted by Buyers' Parent, Sellers' Parent or any other person or entity and whether or not valid), actions, proceedings, losses, damages, liabilities, penalties, costs and expenses of any kind or nature (including without limitation reasonable attorneys' fees, costs and expenses) (collectively, "*Losses*") arising from this Agreement or Escrow Agent's actions hereunder, except to the extent such Losses are finally determined by the Bankruptcy Court or any other court of competent jurisdiction, to have been directly caused by the fraud, gross negligence or willful misconduct or breach of this Agreement of such Indemnified Party in connection with Escrow Agent's breach of this Agreement. Buyers' Parent and Sellers' Parent further agree, jointly and severally, to indemnify each Indemnified Party for all costs, including without limitation reasonable attorneys' fees, incurred by such Indemnified Party in connection with the enforcement of Buyers' Parent's and Sellers' Parent's obligations hereunder. Each Indemnified Party shall, in its sole discretion, have the right to select and employ separate counsel with respect to any action or claim brought or asserted against it, and the reasonable fees of such counsel shall be paid upon demand by Buyers' Parent and Sellers' Parent jointly and severally. The obligations of Buyers' Parent and Sellers' Parent under this Section shall survive any termination of this Agreement and the resignation or removal of Escrow Agent. Notwithstanding the foregoing, (i) as between Buyers' Parent and Sellers' Parent, each such party shall be responsible for one-half of any such amounts and (ii) in no event shall Buyers' Parent or Sellers' Parent be liable for incidental, indirect, special, consequential or punitive damages or penalties of any kind (including, but not limited to lost profits), even if Buyers' Parent or Sellers' Parent has been advised of the likelihood of such damages or penalty and regardless of the form of action.

12.    Compensation of Escrow Agent.

(a)    Fees and Expenses.  Buyers' Parent and Sellers' Parent agree, jointly and severally, to compensate Escrow Agent upon demand for its services hereunder in accordance with Schedule B attached hereto. Without limiting the joint and several nature of their obligations to Escrow Agent, Buyers' Parent and Sellers' Parent agree between themselves that each will be responsible to the other for one-half of Escrow Agent's compensation. The obligations of Buyers' Parent and Sellers' Parent under this Section shall survive any termination of this Agreement and the resignation or removal of Escrow Agent.

(b)    Disbursements from Escrow Funds to Pay Escrow Agent.  Escrow Agent is authorized to, and may disburse to itself from the Escrow Funds, from time to time, the amount of any compensation and reimbursement of expenses due and payable hereunder (including any amount to which Escrow Agent or any other Indemnified Party is entitled to seek indemnification hereunder). Escrow Agent shall notify Buyers' Parent and Sellers' Parent of any such disbursement from the Escrow Funds to itself or any other Indemnified Party and shall furnish Buyers' Parent and Sellers' Parent copies of related invoices and other statements.

(c)    Security and Offset.  Buyers' Parent and Sellers' Parent hereby grant to Escrow Agent and the other Indemnified Parties a first priority security interest in, lien upon and right of sale and offset against the Escrow Funds with respect to any compensation or reimbursement due any of them hereunder (including any claim for indemnification hereunder). If for any reason the Escrow Funds are insufficient

to cover such compensation and reimbursement, Buyers' Parent and Sellers' Parent shall promptly pay such amounts upon receipt of an itemized invoice.

13.    <u>Representations and Warranties</u>.  Buyers' Parent and Sellers' Parent each respectively make the following representations and warranties to Escrow Agent:

(a)    it has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder; and this Agreement has been duly approved by all necessary action and (subject to approval by the Bankruptcy Court) constitutes its valid and binding agreement enforceable in accordance with its terms.

(b)    each of the applicable persons designated on <u>Schedule C</u> attached hereto has been duly appointed to act as its authorized representative hereunder and individually has full power and authority on its behalf to execute and deliver any instruction or direction, to amend, modify or waive any provision of this Agreement and to take any and all other actions as its authorized representative under this Agreement and no change in designation of such authorized representatives shall be effective until written notice of such change is delivered to each other party to this Agreement pursuant to <u>Section 15</u> and Escrow Agent has had reasonable time to act upon it.

(c)    the execution, delivery and performance of this Agreement by Escrow Agent does not and will not violate any applicable law or regulation and no printed or other material in any language, including any prospectus, notice, report, and promotional material that mentions "*U.S. Bank*" or any of its affiliates by name or the rights, powers, or duties of Escrow Agent under this Agreement shall be issued by any other parties hereto, or on such party's behalf, without the prior written consent of Escrow Agent.

14.    <u>Identifying Information</u>.  To help the Federal government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.  For a non-individual person such as a business entity, a charity, a trust or other legal entity, Escrow Agent requires documentation to verify its formation and existence as a legal entity.  Escrow Agent may require financial statements, licenses or identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.  Buyers' Parent and Sellers' Parent agree to provide all information requested by Escrow Agent in connection with any legislation or regulation to which Escrow Agent is subject, in a timely manner.  Escrow Agent's appointment and acceptance of its duties under this Agreement is contingent upon verification of all regulatory requirements applicable to Buyers' Parent, Sellers' Parent and any of their permitted assigns, including successful completion of a final background check. These conditions include, without limitation, requirements under the USA Patriot Act, the USA FREEDOM Act, the Bank Secrecy Act, and the U.S. Department of the Treasury Office of Foreign Assets Control. If these conditions are not met, Escrow Agent may at its option promptly terminate this Agreement in whole or in part, and refuse any otherwise permitted assignment by Buyers' Parent or Sellers' Parent, without any liability or incurring any additional costs.

15.    <u>Notices</u>.  All notices, approvals, consents, requests and other communications hereunder shall be in writing (provided that any communication sent to Escrow Agent hereunder must be in the form of a manually signed document or electronic copy thereof), in English, and shall be delivered (a) by personal delivery, or (b) by national overnight courier service, or (c) by certified or registered mail, return receipt requested, or (d) via facsimile transmission, with confirmed receipt or (e) via email by way of a PDF attachment thereto. Notice shall be effective upon receipt except for notice via email, which shall be effective only when the recipient, by return email or notice delivered by other method provided for in this

4822-7008-1658.5

9

25330363.4.BUSINESS

Section, acknowledges having received that email (with an automatically generated receipt or similar notice not constituting an acknowledgement of an email receipt for purposes of this Section). Such notices shall be sent to the applicable party or parties at the address specified below:

If to Buyers' Parent or Buyer Representative, at:

c/o Select Medical Corporation
4717 Gettysburg Road
Mechanicsburg, PA 17088
Attention: Michael E. Tarvin
Facsimile No.: (717) 412-9142
Email: MTarvin@selectmedical.com

With a copy to (which shall not constitute notice):

Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Attention: Stephen M. Leitzell
Telephone: (215) 994-2621
Facsimile: (215) 655-2621
Email: Stephen.Leitzell@dechert.com

If to Sellers' Parent or Seller Representative, at:

With a copy to (which shall not constitute notice):

Waller Lansden Dortch & Davis LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Attention: John Tishler and Brian Browder
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: John.Tishler@wallerlaw.com
        Brian.Browder@wallerlaw.com

If to Escrow Agent, at:

U.S. Bank National Association, as Escrow Agent
Attn: Global Corporate Trust
333 Commerce Street, Suite 800
Nashville, TN 37201
Telephone:   615-251-0733
Facsimile:    615-251-0737
E-mail:       wally.jones@usbank.com

and to:

U.S. Bank National Association
Attn: Melissa McClellion
Trust Finance Management
214 N Tryon Street, Suite 2700

4822-7008-1658.5

25330363.4.BUSINESS

10

Charlotte, NC  28202
Telephone:      704-335-4632
Facsimile:       855-354-0849
E-mail:           melissa.mcclellion@usbank.com

or to such other address as each party may designate for itself by like notice and unless otherwise provided herein shall be deemed to have been given on the date received. Buyers' Parent and Sellers' Parent agree to assume all risks arising out of the use of electronic methods to submit instructions and directions to Escrow Agent, including without limitation the risk of Escrow Agent acting on unauthorized instructions, and the risk of interception and misuse by third parties.

16.      Amendment and Assignment.  None of the terms or conditions of this Agreement may be changed, waived, modified, discharged, terminated or varied in any manner whatsoever unless in writing duly signed by each party to this Agreement. No course of conduct shall constitute a waiver of any of the terms and conditions of this Agreement, unless such waiver is specified in writing, and then only to the extent so specified. No party may assign this Agreement or any of its rights or obligations hereunder without the written consent of the other parties, provided that if Escrow Agent consolidates, merges or converts into, or transfers all or substantially all of its corporate trust business (including the escrow contemplated by this Agreement) to another entity, the successor or transferee entity without any further act shall be the successor Escrow Agent.

17.      Governing Law, Jurisdiction and Venue.

(A)  This Agreement and all disputes or controversies arising out of or relating to this Agreement or the transactions contemplated hereby (in contract or tort) shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to conflicts of law principles.

(B)  WITHOUT LIMITING THE RIGHT OF ANY PARTY HERETO TO APPEAL ANY ORDER OF THE BANKRUPTCY COURT, THE PARTIES HERETO HEREBY AGREE THAT ANY AND ALL CLAIMS, ACTIONS, CAUSES OF ACTION, SUITS, AND PROCEEDINGS RELATING TO THIS AGREEMENT SHALL BE FILED AND MAINTAINED ONLY IN THE BANKRUPTCY COURT, AND THE PARTIES HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT; provided, however, that if the Bankruptcy Case (as defined in the Underlying Agreement) has closed or the Bankruptcy Court lacks jurisdiction for whatever reason, the parties hereto agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the state or federal courts situated in New Castle County, Delaware and any appellate court from any decision thereof, for the resolution of any such claim or dispute. The parties hereto hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may have now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each party hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment.

(C)  EACH PARTY HERETO WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS AGREEMENT OR ANY PROVISION HEREOF.

18.      Entire Agreement, No Third Party Beneficiaries.  This Agreement constitutes the entire agreement between the signatory parties hereto relating to the holding, investment and disbursement of Escrow Funds and sets forth in their entirety the obligations and duties of Escrow Agent with respect to

4822-7008-1658.5

11

25330363.4.BUSINESS

Escrow Funds. This Agreement and any Joint Written Direction may be executed in two or more counterparts, which when so executed shall constitute one and the same agreement or direction. To the extent any provision of this Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. The Section headings appearing in this instrument have been inserted for convenience only and shall be given no substantive meaning or significance whatsoever in construing the terms and conditions of this Agreement. Nothing in this Agreement, express or implied, is intended to or shall confer upon any person other than the signatory parties hereto and the Indemnified Parties any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

[signature page follows]

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed under seal as of the date first above written.

**SELECT MEDICAL CORPORATION**

By:
Name: Martin F. Jackson
Title: Executive Vice President and Chief Financial
Officer

**PROMISE HEALTHCARE, INC.**

By: _____
Name: _____
Title: _____

**U.S. BANK NATIONAL ASSOCIATION**
**as Escrow Agent**

By: _____
Name: _____
Title: _____

**[Signature Page to Escrow Agreement]**

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed under seal as of the date first above written.

**SELECT MEDICAL CORPORATION**

By: _____
Name: _____
Title: _____

**PROMISE HEALTHCARE, INC.**

By: _____
Name: ___Andrew Hinkelman___
Title: ___Chief Restructuring Officer___

**U.S. BANK NATIONAL ASSOCIATION**
**as Escrow Agent**

By: _____
Name: _____
Title: _____

4822-7008-1658          **[Signature Page to Escrow Agreement]**

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed under seal as of the date first above written.

SELECT MEDICAL CORPORATION

By: _____
Name: _____
Title: _____

PROMISE HEALTHCARE, INC.

By: _____
Name: _____
Title: _____

U.S. BANK NATIONAL ASSOCIATION
as Escrow Agent

By: _Wally Jones_
Name: Wally Jones
Title: Vice President

[Signature Page to Escrow Agreement]

SCHEDULE A

**U.S. BANK NATIONAL ASSOCIATION**
**Investment Authorization Form**

**U.S. BANK MONEY MARKET DEPOSIT ACCOUNT**

<u>**Description and Terms**</u>

The U.S. Bank Money Market Deposit Account is a U.S. Bank National Association ("***U.S. Bank***") interest-bearing money market deposit account designed to meet the needs of U.S. Bank's Corporate Trust Services Escrow Group and other Corporate Trust customers of U.S. Bank. Selection of this investment includes authorization to place funds on deposit and invest with U.S. Bank.

U.S. Bank uses the daily balance method to calculate interest on this account (actual/365 or 366). This method applies a daily periodic rate to the principal balance in the account each day. Interest is accrued daily and credited monthly to the account. Interest rates are determined at U.S. Bank's discretion, and may be tiered by customer deposit amount.

The owner of the account is U.S. Bank as agent for its Corporate Trust customers. U.S. Bank's Corporate Trust Services Escrow Group performs all account deposits and withdrawals. Deposit accounts are FDIC insured per depositor, as determined under FDIC Regulations, up to applicable FDIC limits.

U.S. BANK IS NOT REQUIRED TO REGISTER AS A MUNICIPAL ADVISOR WITH THE SECURITIES AND EXCHANGE COMMISSION FOR PURPOSES OF COMPLYING WITH THE DODD-FRANK WALL STREET REFORM & CONSUMER PROTECTION ACT. INVESTMENT ADVICE, IF NEEDED, SHOULD BE OBTAINED FROM YOUR FINANCIAL ADVISOR.

<u>**Automatic Authorization**</u>

In the absence of specific written direction to the contrary, U.S. Bank is hereby directed to invest and reinvest proceeds and other available moneys in the U.S. Bank Money Market Deposit Account. The customer(s) confirm that the U.S. Bank Money Market Deposit Account is a permitted investment under the operative documents and this authorization is the permanent direction for investment of the moneys until notified in writing of alternate instructions.

## SCHEDULE B

### Schedule of Fees for Services as Escrow Agent

| | |
|---|---|
| Acceptance Fee: | $Waived |
| Annual Escrow Fee: | $1,500.00 |
| Out-of-Pocket Expenses: | $Waived |
| Transactional Costs: | $Waived |
| Total due at Execution: | $1,500.00 |

*Wire Instructions*
RBK    U.S. Bank N.A.
ABA    091000022
BNF    US BANK TFM ESCROW
Beneficiary Account Number:        104793255431
Beneficiary Account Address:       777 E. Wisconsin Avenue
                                   Milwaukee, WI 53202-5300

Ref: Select and Promise Escrow

The fees quoted in this schedule apply to services ordinarily rendered in the administration of an Escrow Account and are subject to reasonable adjustment based on final review of documents, or when the Escrow Agent is called upon to undertake unusual duties or responsibilities, or as changes in law, procedures, or the cost of doing business demand. Services in addition to and not contemplated in this Agreement, including, but not limited to, document amendments and revisions, non-standard cash and/or investment transactions, calculations, notices and reports, and legal fees, will be billed as extraordinary expenses.

Unless otherwise indicated, the above fees relate to the establishment of one escrow account. Additional sub-accounts governed by the same Escrow Agreement may incur an additional charge. Transaction costs include charges for wire transfers, checks, internal transfers and securities transaction

### SCHEDULE C

Each of the following person(s) is a **Buyer Representative** authorized to execute documents and direct Escrow Agent as to all matters, including fund transfers, address changes and contact information changes, on Buyers' behalf (only one signature required):

| Robert J. Bein | _____ | 717-972-1125 |
| Name | Specimen signature | Telephone No. |

| Martin F. Jackson | _____ | 717-972-3814 |
| Name | Specimen signature | Telephone No. |

| Scott A. Romberger | _____ | 717-972-1130 |
| Name | Specimen signature | Telephone No. |

| Joel T. Veit | _____ | 717-972-1101 |
| Name | Specimen signature | Telephone No. |

If only one person is identified above, the following person is authorized for call-back confirmations:

_____                    _____
Name                               Telephone Number


Each of the following person(s) is a **Seller Representative** authorized to execute documents and direct Escrow Agent as to all matters, including fund transfers, address changes and contact information changes, on Sellers' Parent's behalf (only one signature required):

| _____ | _____ | _____ |
| Name | Specimen signature | Telephone No. |

| _____ | _____ | _____ |
| Name | Specimen signature | Telephone No. |

| _____ | _____ | _____ |
| Name | Specimen signature | Telephone No. |

If only one person is identified above, the following person is authorized for call-back confirmations:

_____                    _____
Name                               Telephone Number

**ATTACHMENT 1**

**FORM OF JOINT WRITTEN DIRECTION**

**[To be completed on closing]**

U.S. Bank National Association, as Escrow Agent
ATTN:  Global Corporate Trust Services
Address:  _____

RE:  ESCROW AGREEMENT made and entered into as of [     ] by and among [          ] ("*Buyers' Parent*"), Promise Healthcare, Inc. ("*Sellers' Parent*") and U.S. Bank National Association, in its capacity as escrow agent (the "*Escrow Agent*").

Pursuant to Section 4 of the above-referenced Escrow Agreement, Buyers' Parent and Sellers' Parent hereby instruct Escrow Agent to disburse the amount of [$_____] from the **[Deposit Escrow Account] [Cure Amount Escrow Account]** to **[Buyers' Parent][Sellers' Parent]**, as provided below:

Buyers' Parent                          Sellers' Parent

Bank Name: _____    Bank Name: _____
Bank Address: _____    Bank Address: _____
ABA No.: _____    ABA No. _____
Account Name: _____    Account Name: _____
Account No.: _____    Account No.: _____

**Select Medical Corporation**
By: _____
Name:
Date: _____

**Promise Healthcare, Inc.**
By: _____
Name:
Date: _____

**Exhibit 2 to Bidding Procedures Order**
**Bidding Procedures**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1]            :    Case No. 18-12491 (CSS)
                                                       :
Debtors.                                               :    (Jointly Administered)
                                                       :
-------------------------------------------------------x

## BIDDING PROCEDURES FOR
## THE SALE OF CERTAIN OF THE DEBTORS' ASSETS

The above-captioned debtors and debtors-in-possession (collectively, the "***Debtors***")

have filed chapter 11 cases pending in the United States Bankruptcy Court for the District of

Delaware (the "***Bankruptcy Court***"), jointly administered under Case No. 18-12491 (CSS).

On [_____], the United States Bankruptcy Court for the District of Delaware (the

"***Bankruptcy Court***") entered the *Order: (I) Authorizing and Approving (A) Debtors' Entry Into*

*Stalking Horse Purchase Agreement, (B) Bidding Procedures, (C) Bid Protections,*

*(D) Assumption Procedures, and (E) Form and Manner of Notice of the Bidding Procedures,*

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

*Assumption Procedures, and Sale Hearing; (II) Scheduling a Hearing to Consider the Sale, Pursuant to and in Accordance With the Bidding Procedures; and (III) Granting Related Relief* (D.I. [___]) (the "**Bidding Procedures Order**"), pursuant to which the Bankruptcy Court approved the following procedures (the "**Bidding Procedures**") relating to the sales contemplated by the Select Purchase Agreement for the sale of the Select Assets. Capitalized terms used but not defined in these Bidding Procedures have the meanings given to them in the Bidding Procedures Order. These Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "**Auction**") for one or more sales of the Select Assets in accordance with and as described in the Select Purchase Agreement and the Bidding Procedures Order.

1.    **Submissions to the Debtors.**

All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "**Bid Notice Parties**"):

a.    **Select Sellers.** Andrew Hinkelman & Jennifer Byrne, FTI Consulting, 214 North Tryon Street, Suite 1900, Charlotte, North Carolina 28202, andrew.hinkelman@fticonsulting.com, jennifer.byrne@fticonsulting.com.

b.    **Debtors' Counsel in connection with the Sale Transaction.** John Tishler & Brian Browder, Waller Lansden Dortch & Davis, LLP, Nashville City Center, 511 Union Street, Suite 2700, Nashville, TN 37219, john.tishler@wallerlaw.com, brian.browder@wallerlaw.com.

c.    **Debtors' Financial Advisor and Investment Banker.** Andrew Turnbull, Houlihan Lokey Capital, Inc., 123 North Wacker Drive, 5th Floor, Chicago, Illinois 60606, aturnbull@hlhz.com.

d.    **Counsel to the DIP Agent.** Brian I. Swett, McGuire Woods LLP, 77 West Wacker Drive, Suite 4100, Chicago, Illinois 60601-1818, bswett@mcguirewoods.com.

e.    **Counsel to the Official Committee of Unsecured Creditors in the Select Sellers' Chapter 11 Cases.** Andrew H Sherman & Boris I. Mankovetskiy, Sills

Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102, asherman@sillscummis.com, bmankovetskiy@sillscummis.com.

2.    **Potential Bidders.**

The Debtors and their financial advisors have identified, and may in the future identify, parties they believe potentially may be interested in consummating (and potentially may have the financial resources necessary to consummate) a competing transaction. To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a sale for any or all of the Select Assets (each, a "***Potential Bidder***") must deliver or have previously delivered:

a.    an executed confidentiality agreement on terms acceptable to the Debtors (a "***Confidentiality Agreement***"), in consultation with the Committee and DIP Agent; and

b.    the most current audited and latest unaudited financial statements (collectively, the "***Financials***") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Select Assets, (i) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors, in consultation with the Committee and DIP Agent, (ii) a written commitment acceptable to the Debtors and their advisors, in consultation with the Committee and DIP Agent, of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the proposed transaction, and (iii) copies of any documents evidencing any financing commitments necessary to consummate the transaction.

3.    **Qualified Bidders.**

a.    A "***Qualified Bidder***" is a Potential Bidder: (i) whose Financials, or the Financials of its equity holder(s), as applicable, demonstrate the financial capability to consummate a sale for any portion of the Select Assets, as determined in the Debtors' reasonable business judgment (in consultation with the Committee and DIP Agent); and (ii) whose Bid (as defined below) is a Qualified Bid (as defined below). On or before the date that is one (1) Business Day after the Bid Deadline (defined below), the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder, and shall provide a copy of each Qualified Bid to counsel to the DIP Agent, counsel to the Committee, and counsel to the Select Purchaser. The Select Purchaser shall be deemed a Qualified Bidder that has submitted a Qualified Bid at all times.

3

b.   For the avoidance of doubt, two or more Potential Bidders may submit a Bid for any or all of the Select Assets, provided that such Bid(s), when taken as a whole (collectively, a *"Joint Bid"*), is determined by the Debtors, in consultation with the Committee and DIP Agent and in accordance with Section 3(a) of the Bidding Procedures, to constitute a Qualified Bid; provided, however, that any Joint Bid must comply with section 363(n) of the Bankruptcy Code and Potential Bidders must first seek the Debtors' permission before they contact each other. The Debtors shall consult with the Committee and DIP Agent regarding any request for permission to contact another Potential Bidder. In addition, any Potential Bidder may submit a Bid for any or all of the Select Assets, provided that such Bid is determined by the Debtors, in consultation with the Committee and DIP Agent and in accordance with Section 3(a) of the Bidding Procedures, to constitute a Qualified Bid.

c.   If any Potential Bidder is determined by the Debtors, in consultation with the Committee and the DIP Agent, not to be a Qualified Bidder, the Debtors will refund such Potential Bidder's Deposit (as defined below) and all accumulated interest thereon on or within three (3) Business Days after the Bid Deadline.

d.   Between the date the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors, in consultation with the Committee and the DIP Agent, may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Except as otherwise set forth in the Select Purchase Agreement, without the written consent of the Debtors (in consultation with the Committee and DIP Agent), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures. Bids must remain open offers capable of being accepted until the later of (i) two (2) Business Days after the closing of the sale to a person or entity other than the applicable Qualified Bidder and (ii) thirty (30) days after the conclusion of the Sale Hearing (as defined below).

e.   Any disputes related to these Bidding Procedures shall be resolved by the Bankruptcy Court.

4.   **Due Diligence.**

a.   **Diligence Provided to Potential Bidders**.

Only Potential Bidders that have entered into a Confidentiality Agreement shall be eligible to receive due diligence information and access to the Debtors' electronic data room and

4

to additional non-public information regarding the Select Sellers. **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement.** The Debtors will provide to each Potential Bidder that has entered into a Confidentiality Agreement reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. For all Potential Bidders other than the Select Purchaser,[2] the due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

The Debtors shall not furnish any confidential information relating to the Select Assets, the Debtors' liabilities, or the sale of any or all of the Select Assets (*"Confidential Sale Information"*) to any person, except to a Potential Bidder that has entered into a Confidentiality Agreement or to such Potential Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; provided that, in consultation with the Committee, the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the sale of all or a portion of the Select Assets.

In consultation with the Committee, the Debtors also may withhold from Potential Bidders any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors determine is a competitor of the

---

[2] The Select Purchaser's due diligence period shall be governed by the Select Purchase Agreement.

Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not approved by the Debtors as a Potential Bidder.

**All due diligence requests must be directed to:**

Scott Kremeier, SKremeier@HL.com

b.      **Diligence Provided by Potential Bidders.**

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate a transaction for all or a portion of the Select Assets. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine (in consultation with the Committee and DIP Agent) that such Potential Bidder is not a Qualified Bidder or that a bid made by such Potential Bidder is not a Qualified Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the Chapter 11 Cases or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and the Debtors' advisors may disclose confidential information: (a) with the prior written consent of such bidder and the Debtors; (b) to the counsel to the Committee, (c) to the counsel to the DIP Agent, and (d) as otherwise required or allowed

6

by any applicable confidentiality agreement with respect to a particular Potential Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies. The terms of this section 4(b) shall not apply to the Select Purchaser, and the treatment of the Select Purchaser's confidential information shall be governed by the confidentiality agreements previously entered between the Debtors and the Select Purchaser (the "*Select Purchaser's Confidentiality Agreement*"); provided that notwithstanding anything in the Select Purchaser's Confidentiality Agreement to the contrary, the Debtors and Debtors' advisors may disclose confidential information with respect to the Select Purchaser's bid to the Committee, the DIP Agent, and their respective advisors, subject to the agreement of such parties to treat such information as confidential pursuant to their respective confidentiality agreements with the Debtors.

5.    **Bid Requirements.**

A proposal, solicitation, or offer (each, a "*Bid*") by a Potential Bidder that is submitted in writing and satisfies each of the following requirements (collectively, the "*Bid Requirements*"), as determined by the Debtors in their reasonable business judgment (after consultation with the Committee and DIP Agent) shall constitute a "*Qualified Bid*." For the avoidance of doubt, notwithstanding the following, the Select Purchase Agreement will be deemed a Qualified Bid for all purposes and at all times. The form of a Bid must include a proposed asset purchase agreement (a "*Bid Purchase Agreement*") duly executed by the Potential Bidder and must also include a redline comparing the Bid Purchase Agreement to the Select Purchase Agreement. The Bid Requirements are as follows:

a.    **Assets**. Each Bid must provide for the purchase of all or a portion of the Select Assets, and must clearly state (i) which Select Assets the Potential Bidder is agreeing to purchase and (ii) whether the Potential Bidder intends to operate all or a portion of the Debtors' business as a going concern, or to liquidate the business.

7

b.   **Assumption of liabilities**. Each Bid must expressly identify the liabilities it proposes to (i) assume or (subject to the terms hereof) or (ii) satisfy with cash consideration.

c.   **Purchase Price**. Each Bid must clearly set forth the purchase price to be paid (the "*Purchase Price*"). The Bid must propose a Purchase Price for all or a portion of the Select Assets, including any assumption of liabilities, that has a value that equals or exceeds (a "*Minimum Bid*"): (a) the sum of (i) $63,000,000 and (ii) $2,750,000, subject to the adjustments set forth in the Select Purchase Agreement; or (b) such other combination of cash, assumed liabilities and/or excluded assets as the Debtors, in consultation with the Committee and the DIP Agent, may determine to exceed the value to the Debtors' estates from the Select Purchase Agreement by at least $2,750,000; provided, however, in the event that a Bid is for a combination of Select Assets different from those set forth in the Select Purchase Agreement, such consideration shall reasonably represent a premium, as determined by the Debtors in consultation with the Committee and DIP Agent, to an approximate allocation of the Select Purchase Agreement; provided, further, that in determining the value of any such Bid, the Debtors, in consultation with the Committee and the DIP Agent, will not be limited to evaluating the dollar value of the consideration but may also consider other factors, including the speed, certainty, and value of the proposed transaction. Subject to the immediately preceding sentence, the Purchase Price contained in a Bid may be structured in whatever form the Potential Bidder desires (*e.g.*, a Potential Bidder may propose an all cash Bid).

d.   **Deposit**. With a Bid, a Potential Bidder must submit by wire transfer of immediately available funds, a cash deposit in the amount equal to six percent (6%) of the aggregate Purchase Price set forth in the Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "*Deposit*").

e.   **Same or better terms**. Each Bid must be on terms that are not more burdensome to the Debtors than the terms of the Select Purchase Agreement, as determined by the Debtors (in consultation with the Committee and DIP Agent). Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the sale contemplated by the Bid and shall include a schedule of executory contracts and unexpired leases proposed to be assumed by the Debtors and assigned to the Potential Bidder ("*Assumed Contracts*"), and a copy of the purchase agreement representing the Bid clearly marked to show all changes requested by the Potential Bidder, including those related to the respective Purchase Price and assets to be acquired by such Potential Bidder, as well as all other material documents integral to such bid and a written commitment demonstrating to the satisfaction of the Debtors (in consultation with the Committee and DIP Agent) that the Potential Bidder will be able to close the transaction proposed in its Bid on the terms and conditions set forth therein (the "*Qualified Bid Documents*").

8

f.  **Contingencies; No financing or diligence outs.** A Bid shall not be conditioned on (i) obtaining financing, (ii) shareholder, board of directors, or other internal approval, or (iii) the outcome or completion of a due diligence review by the Potential Bidder. Notwithstanding the foregoing, a Bid may be subject to (i) the accuracy at the closing of the sale of specified representations and warranties or (ii) the satisfaction at the closing of the sale of specified conditions, which shall not be more burdensome to the Debtors, as determined by the Debtors (in consultation with the Committee and DIP Agent), than those set forth in the Select Purchase Agreement.

g.  **Identity.** Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating a sale of the Select Assets), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific persons and counsel whom the Debtors and their advisors should contact regarding such Bid. Each Bid must also disclose any past or present connections or agreements with the Debtors, the Select Purchaser, any other Potential Bidder or Qualified Bidder and its affiliates, and/or any officer or director of the foregoing (including any current officer or director of the Debtors).

h.  **Demonstrated financial capacity.** A Potential Bidder must have, in the Debtors' reasonable business judgment (in consultation with the Committee and DIP Agent), the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid. Each Bid must be accompanied by reasonable evidence of the Potential Bidder's ability to operate the business related to the applicable Select Assets and include a packet of information, including financial information that will be provided to the non-Debtor counterparties to Assumed Contracts sufficient to demonstrate adequate assurance of future performance.

i.  **Committed financing.** To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include executed unconditional committed financing from a qualified source documented to the satisfaction of the Debtors (in consultation with the Committee and DIP Agent), which demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors (in consultation with the Committee and DIP Agent).

9

j.  **Binding and irrevocable.** A Qualified Bid must include a signed writing stating that: (i) the Qualified Bid is irrevocable until the later of (a) two (2) Business Days after the closing of the sale to a person or entity other than such Qualified Bidder and (b) thirty (30) days after the conclusion of the Sale Hearing (as defined below); and (ii) the Qualified Bidder agrees to serve as a Backup Bidder upon the terms and conditions set forth in these Bidding Procedures, if such Qualified Bidder is not a Successful Bidder.

k.  **Expenses; Disclaimer of fees.** Except with respect to the Select Purchaser, each Bid (other than the Select Purchase Agreement) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Potential Bidder (other than the Select Purchaser) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

l.  **Authorization.** Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors in consultation with the Committee and DIP Agent) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

m.  **As-Is, Where-Is.** Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Select Assets prior to submitting the Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Select Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Select Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid.

n.  **Adherence to Bidding Procedures.** By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid to reopen the Auction after conclusion of the Auction. Each Bid must expressly state that the Potential Bidder agrees to serve as a Backup Bidder (as defined below) if such bidder's Qualified Bid is selected as the next highest or otherwise next best bid after the Successful Bid.

o.  **Regulatory Approvals and Covenants.** A Bid must set forth each regulatory and third-party approval needed to consummate the transaction contemplated by such Bid and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such

10

regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement, those actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible). A Bid must also state that all necessary filings under applicable regulatory, antitrust, and other laws will be made and that payment of the fees associated therewith shall be made by the Potential Bidder. Each Qualified Bid must provide that the Potential Bidder, if successful, will either (i) assume the Debtor's Medicare and Medicaid provider agreements or (ii) obtain its own, in each instance within a timeframe acceptable to the Debtors in consultation with the Committee and the DIP Agent.

p.    **Consent to Jurisdiction.** Each Potential Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the closing of the Sale, as applicable.

q.    **Bid Deadline.** Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before **12:00 p.m. (prevailing Eastern Time) on February 19, 2019** (the "*Bid Deadline*") by the Bid Notice Parties.

The Debtors reserve the right, in consultation with the Committee and the DIP Agent, to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors, in consultation with the Committee and the DIP Agent, may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Select Assets that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid. The Debtors, in consultation with the Committee and the DIP Agent, may also permit otherwise Qualified Bidders who submitted Bids by the Bid Deadline for a material portion of the Select Assets but who are not identified as a component of a single Qualified Bid consisting of multiple Bids, to participate in the Auction and to submit higher and/or otherwise better Bids that in subsequent rounds of bidding may be considered, together with other Bids for non-overlapping portions of the Debtors' assets, as part of such a single Qualified Bid.

11

6.    **Auction.**

If the Debtors receive a Qualified Bid, other than the Select Purchase Agreement, the Debtors will conduct an Auction to determine (in consultation with the Committee and DIP Agent) the Successful Bidder(s) for the Select Assets. The Debtors shall notify the Select Purchaser if one or more Qualified Bids are received and provide the identity of the bidders making any such Qualified Bids. (To the extent that the Select Purchaser has not previously received a copy of any Bid, the Debtors shall promptly provide a copy thereof, or copies thereof, as the case may be, to the Select Purchaser, and prior to a determination by the Debtors, in consultation with the Committee and the DIP Agent, as to whether a Bid is a Qualified Bid.) If the Debtors do not receive a Qualified Bid (other than the Select Purchase Agreement), the Debtors will not conduct an Auction and shall designate the Select Purchaser's Bid as the applicable Successful Bid.

On the date that is one (1) Business Day after the Bid Deadline or such other time as is reasonably practicable, the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid, as determined in the Debtors' sole business judgment (the *"Baseline Bid"*) for the Select Assets, after consultation with the Committee and DIP Agent, and provide copies of the applicable Qualified Bid Documents supporting the Baseline Bid to each Qualified Bidder. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors (in consultation with the Committee and DIP Agent) reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, which may include, among other things: (a) the number, type, and nature of any changes to the Select Purchase Agreement (or other applicable purchase agreement), if any, requested by the Qualified Bidder, including the type and amount of Select Assets sought to be acquired and obligations sought to be assumed in the Qualified Bid; (b) the amount and nature

12

of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close the applicable purchase of the Select Assets and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (e) the tax consequences of such Qualified Bid (collectively, the "*Bid Assessment Criteria*"). Only the Select Purchaser and other Qualified Bidders will be entitled to make any subsequent bids at the Auction. At least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction and all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person.

The Auction, if necessary, will be conducted on **February 21, 2019 at 10:00 a.m. (prevailing Eastern time)** at the offices of DLA Piper LLP, 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801, or at such other time and location as designated by the Debtors, in consultation with the Committee and the DIP Agent,. The Auction, if necessary, shall be conducted in a timely fashion according to the following procedures:

a.    **The Debtors Shall Conduct the Auction.**

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of each Baseline Bid. All incremental Bids made thereafter shall be Overbids (defined below) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Qualified Bids. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, the Successful Bid(s), and Backup Bid(s).

The Auction will be conducted openly and all creditors will be permitted to attend. The Qualified Bidders and the Select Purchaser may appear at the Auction in person or through duly authorized representatives.

    b.    **Terms of Overbids**.

"*Overbid*" means any bid made at the Auction by a Qualified Bidder[3] subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

(i)    <u>**Minimum Overbid Increment**</u>. The initial Overbid, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the applicable Baseline Bid by an incremental amount that is not less than the $500,000 (a "*Minimum Overbid Increment*").

(ii)    <u>**Conclusion of Each Overbid Round**</u>. Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their reasonable business judgment, after consultation with the Committee and DIP Agent, extend from time to time, the "*Overbid Round Deadline*") by which time any Overbids must be submitted to the Debtors.

(iii)    <u>**Overbid Alterations**</u>. An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior applicable Bid or Overbid, as determined in the Debtors' reasonable business judgment (in consultation with the Committee and DIP Agent), but shall otherwise comply with the terms of these Bidding Procedures. Any Overbid must comply with the conditions for a Qualified Bid.

(iv)    <u>**Announcing Highest Bid**</u>. Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified (in consultation with the Committee and DIP Agent) in the initial applicable Overbid round, an Overbid or Overbids as being higher or otherwise better than the applicable Baseline Bid(s) for the Select Assets, or in subsequent rounds, the Overbid(s) previously designated by the Debtors (after consultation with the Committee and DIP Agent) as the prevailing highest or otherwise best Bid for the Select Assets (the "*Prevailing Highest Bid*"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbids designated by the Debtors, in consultation with the

---

[3] Or Qualified Bidders, in the event of a Joint Bid.

EAST\163523385.4

Committee and the DIP Agent, as the Prevailing Highest Bid(s) as well as the value attributable by the Debtors, in consultation with the Committee and the DIP Agent, to such Prevailing Highest Bid(s).

c.    **Consideration of Overbids.**

The Debtors reserve the right, in their discretion (in consultation with the Committee and DIP Agent) to adjourn the Auction one or more times to, among other things: (i) facilitate discussions among the Debtors and any Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment (in consultation with the Committee and DIP Agent), may require, including that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount; and (iv) to provide the Debtors with an opportunity to consider (in consultation with the Committee and DIP Agent) how to value each Overbid. The full amount of the Bid Protections shall be included as value of any bid made by the Select Purchaser in each round of bidding at the Auction, including for purposes of comparing the value of a Qualified Bidder's Overbid to the bid of the Select Purchaser in any round of bidding.

d.    **Closing the Auction.**

(i)    The Auction shall continue until there is only one Bid or Joint Bid, as applicable, that the Debtors determine, in their reasonable business judgment (in consultation with the Committee and DIP Agent), is the highest or otherwise best Bid for the Select Assets. Such Bid or Joint Bid, as applicable, shall be declared the "*Successful Bid*," and such Qualified Bidder (or Qualified Bidders, in the event of a Joint Bid) the "*Successful Bidder(s)*," at which point the Auction will be closed. The Debtors shall notify the Qualified Bidders of the Successful Bid within one Business Day following such selection. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors, in consultation with the Committee and the

15

DIP Agent, of the Successful Bid is conditioned upon approval by the Bankruptcy Court of the Successful Bid.

(ii)    Subject to the Fiduciary Out in section 12 herein and as may be otherwise required by the Bankruptcy Court, the Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely.

(iii)   As soon as reasonably practicable after closing the Auction, the Debtors shall file on the docket, but not serve, a notice with the Court identifying the Successful Bidder(s) and Backup Bidder(s).

e.    **No Collusion; Good-Faith Offer.**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith offer and it intends to consummate the transaction contemplated by such Bid if selected as the Successful Bidder(s). All Potential Bidders and all Qualified Bidders will immediately disclose to the Debtors, the United States Trustee, the DIP Agent, and the Committee any discussions regarding employment of or offers to retain or employ any officer or insider of the Debtors.

7.    **Backup Bidder.**

a.    Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Bid for all or a portion of the Select Assets at the Auction, as determined by the Debtors in their discretion and in consultation with the Committee and DIP Agent (the "*Backup Bid*"), shall be required to serve as a backup bidder (the "*Backup Bidder*"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

b.    The identity of the Backup Bidder(s) and the amount and material terms of the Backup Bid(s) shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder(s). The Backup Bidder(s) shall be required to keep the Backup Bid(s) open and irrevocable, until the closing of the sale with the Successful Bidder(s). Each Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder(s) and shall thereafter be returned within five (5) Business Days.

16

c.  If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may select (in consultation with the Committee and DIP Agent) the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, in consultation with the Committee and the DIP Agent, to consummate all transactions contemplated by the Backup Bid without further order of the Bankruptcy Court or notice to any party (other than the Committee and the DIP Agent). In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors. The Debtors specifically reserve the right to seek all available remedies against any defaulting Successful Bidder(s), including with respect to specific performance.

d.  Notwithstanding anything to the contrary in this section or the Bidding Procedures Order, if the Select Purchaser is required to serve as Backup Bidder, the terms and conditions of such service shall be governed by its final Overbid (including the Select Purchase Agreement, as the same may have been amended or otherwise revised during the Auction).

**8.    Reservation of Rights.**

Without prejudice to the rights of the Select Purchaser under the terms the Select Purchase Agreement, or the rights of any DIP Agent in respect of any sale-related milestones set forth in the Debtors' debtor-in-possession credit agreement, the Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment (in consultation with the Committee and DIP Agent) in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Select Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any and all bids or Bids.

**9.    Sale Hearing.**

A hearing to consider approval of the Sale of the Select Assets to the Successful Bidder(s) (or to approve the sale of the Select Assets to the Select Purchaser, if no Auction is

17

held) (the "*Sale Hearing*") is currently scheduled to take place on **February 26, 2019 at 1:00 p.m. (prevailing Eastern Time)**, before the Honorable Christopher S. Sontchi, at the Bankruptcy Court, 824 Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801.

**Subject to the rights and remedies of the Select Purchasers under Select Purchase Agreement, the Sale Hearing may be continued to a later date by the Debtors, in consultation with the Committee and the DIP Agent, by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including the Select Purchaser).**

At the Sale Hearing, the Debtors shall present the Successful Bid(s) to the Bankruptcy Court for approval.

**10.    Bid Protections.**

To provide an incentive and to compensate the Select Purchaser for performing the substantial due diligence and incurring the expenses necessary and entering into the Select Purchase Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed to pay the Select Purchaser, under the conditions and in the amount set forth in the Bidding Procedures Order and the Select Purchase Agreement:

> **Select Bid Protections.** Pursuant to the Select Purchase Agreement, Bidding Procedures, and Bidding Procedures Order, in the event the Select Purchaser is not the Successful Bidder for all of the Select Assets (or does not otherwise purchase all of the Select Assets as a Backup Bidder) and is not in default under the Select Purchase Agreement, the Select Purchaser is to be provided an expense reimbursement in an amount up to $250,000 of the reasonable and actual out-of-pocket and third-party costs and expenses (including expenses of counsel and other outside consultants) incurred and documented pursuant to the terms of the Select Purchase Agreement (the "***Expense Reimbursement***"), and a break-up fee in an amount equal to $1,890,000 (which is three percent (3%) percent of the Select Purchaser's purchase price of $63 million pursuant to the Select Purchase Agreement) (the "***Break-Up Fee***" and together with the Expense Reimbursement,

18

the "*Bid Protections*"), as more specifically set forth in Section 5.6(i) of the Select Purchase Agreement.

The Debtors have agreed that their obligations to pay the Bid Protections from the consideration received from the consummation of a transaction with a Successful Bidder that is not the Select Purchaser, as set forth in the Select Purchase Agreement, shall survive termination of the Select Purchase Agreement, and shall be payable under the terms of the Select Purchase Agreement and the Bidding Procedures Order.

The Select Purchaser shall have standing to appear and be heard on all issues related to the Auction, including the right to object to the conduct of the Auction and interpretation of these Bidding Procedures.

11. **Return of Deposit**.

The Deposit of the Successful Bidder(s) shall be applied to the Purchase Price of the transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their reasonable business judgment and shall be returned (other than with respect to the Successful Bidder(s) and the Backup Bidder) on or within five (5) Business Days after the Auction.

If any Successful Bidder fails to consummate the sale because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the applicable Deposit deposited by the Successful Bidder (except as otherwise set forth in the Select Purchase Agreement, as to the Select Purchaser), which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors (and subject to the Select Purchase Agreement, as to the Select Purchaser), and the Debtors shall be free to consummate the sale with the applicable Backup Bidder, in consultation with the Committee and the DIP Agent, without the need for an additional hearing or order of the

19

Bankruptcy Court, in which case the Backup Bidder's Deposit shall be applied to the Purchase Price.

**12.    Fiduciary Out.**

Nothing in these Bidding Procedures shall require the Debtors' boards of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent the Debtors' boards of directors determine, based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or their fiduciary obligations under applicable law; provided that in the event of any such action, all rights and remedies of the Select Purchaser in these Bidding Procedures, the Select Purchase Agreement, and/or applicable law shall be reserved and preserved.

20

**Exhibit 3 to Bidding Procedures Order**
Notice of Auction and Sale Hearing

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------x
                                                 :
In re:                                           :   Chapter 11
                                                 :
PROMISE HEALTHCARE GROUP, LLC, et al.,¹          :   Case No. 18-12491 (CSS)
                                                 :
        Debtors.                                 :   (Jointly Administered)
                                                 :
------------------------------------------------x   Re: D.I. ___
```

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") sought relief from the United States Bankruptcy Court for the District of Delaware to effectuate one or more sales for the sale of substantially all of the Debtors' assets.

**PLEASE TAKE FURTHER NOTICE** that on [_____], 2019, the United States Bankruptcy Court for the District of Delaware (the "***Court***") entered the *Order: (I) Authorizing and Approving (A) Debtors' Entry Into Stalking Horse Purchase Agreement, (B) Bidding Procedures, (C) Bid Protections, (D) Assumption Procedures, and (E) Form and Manner of Notice of the Bidding Procedures, Assumption Procedures, and Sale Hearing; (II) Scheduling a Hearing to Consider the Sale, Pursuant to and in Accordance With the Bidding Procedures; and*

---

¹ The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

*(III) Granting Related Relief* (D.I. [___]) (the ***Bidding Procedures Order***"),[2] pursuant to which the Court approved the Bidding Procedures, which establish key dates and times related to the Debtors' efforts to sell certain assets of the Debtors' estates.

**PLEASE TAKE FURTHER NOTICE** that the summary of the Bidding Procedures contained in this notice is provided for convenience only, all interested bidders should carefully read the Bidding Procedures Order and Bidding Procedures, and, to the extent of any inconsistencies between this notice and the Bidding Procedures Order or Bidding Procedures, the terms of the Bidding Procedures Order and Bidding Procedures shall control.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all Qualified Bids must be **actually received** by the parties specified in the Bidding Procedures is [_____, **2019 at 4:00 p.m. (prevailing Eastern time)]**.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Order, Bidding Procedures, all related exhibits, and any other filings related to the foregoing are available for free on the website of the court-appointed claims and noticing agent in these cases, Prime Clerk LLC, at https://cases.primeclerk.com/promisehealthcaregroup/, or can be requested by calling: (a) 844-822-9230 (domestic, toll-free); or (b) 347-338-6503 (international).

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors timely receive one or more Qualified Bids (in addition to the Select Purchase Agreement), the Debtors will conduct the Auction on [_____, **2019 at 10:00 a.m. (prevailing Eastern time)]** at the offices of DLA Piper LLP, 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801 or at such other location as the Debtors may later designate, to determine the highest or otherwise best Bids for the Select Assets.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors do not timely receive one or more Qualified Bids (in addition to the Select Purchase Agreement), the Debtors will not conduct the Auction and, instead, will (a) file a notice with the Court identifying the Select Purchaser as a Successful Bidder for the Select Assets and (b) promptly seek the Court's approval of the sale of the Select Assets.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the sale of the Select Assets before the Honorable Christopher S. Sontchi, Chief United States Bankruptcy Judge for the District of Delaware, 824 North Market Street, 5th Floor, Wilmington, Delaware 19801, on [_____], **2019 at [    ] (prevailing Eastern time)**.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, must (i) be in writing, (ii) conform to the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (iii) state with particularity the legal and factual basis for the objection and the specific grounds for such objection, and (iv) be filed with the Court and served so as to be **actually received** no later than [_____, **2019 at 4:00 p.m. (prevailing Eastern time)]** by the following parties: (i) counsel to the Debtors, (a) John Tishler, Waller Lansden Dortch & Davis, LLP, 511 Union Street, Suite 2700, Nashville, Tennessee 37219 and (b) Stuart M. Brown,

---

[2] Capitalized terms used but not defined in this notice shall have the meanings ascribed to them in the Bidding Procedures Order and Bidding Procedures, as applicable.

DLA Piper LLP, 1201 N. Market Street, Suite 2100, Wilmington, Delaware 19801; (ii) counsel to the Committee, (a) Jeffrey N. Pomerantz, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware 19801 and (b) Andrew H. Sherman, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102; (iii) counsel to the Select Purchaser, (a) Stephen M. Leitzell, Dechert LLP, Cira Centre, 2929 Arch Street, Philadelphia, Pennsylvania 19104-2808, (b) Brian Greer, Dechert LLP, Three Bryant Park, 1095 Avenue of the Americas, New York, New York 10036-6797, and (c) Jonathan Stott, Dechert LLP, Cira Centre, 2929 Arch Street, Philadelphia, Pennsylvania 19104-2808; (iv) counsel to Wells Fargo, National Association, (a) Brian I. Swett, McGuire Woods LLP, 77 West Wacker Drive, Suite 4100, Chicago, Illinois 60601-1818 and (b) John Knight, Richards, Layton & Finger, PA, 920 N. King Street, Wilmington, Delaware 19801; (v) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Lockbox 35, Wilmington, Delaware 19801, Attn: Brya Keilson; and (vi) counsel to any Successful Bidder and Backup Bidder as identified in accordance with the Bidding Procedures.

PLEASE TAKE FURTHER NOTICE THAT ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE(S), INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELECT ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS.

PLEASE TAKE FURTHER NOTICE THAT THE PROPOSED SALE ORDER PROVIDES THAT A PURCHASER OF THE SELECT ASSETS WILL HAVE NO RESPONSIBILITY FOR, AND THE SELECT ASSETS WILL BE SOLD FREE AND CLEAR OF, ANY SUCCESSOR LIABILITY, INCLUDING THE FOLLOWING:

a.  To the greatest extent allowable by applicable law, any Successful Bidder shall not be deemed, as a result of any action taken in connection with the Select Purchase Agreement or other competing purchase agreement, the consummation of a sale of the Select Assets contemplated by the Select Purchase Agreement or other competing purchase agreement, or the transfer or operation of any part of the Select Assets, to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for any Successful Bidder, with respect to any obligations as an assignee under the executory contracts or unexpired leases assumed and assigned pursuant to 11 U.S.C. § 365 arising after the applicable closing); (b) have, *de facto* or otherwise, merged with or into the Debtors; or (c) be an alter ego or mere continuation or substantial continuation of the Debtors, including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101, et seq.), the Comprehensive Environmental Response Compensation and Liability Act ("*CERCLA*"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the applicable closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

3

b.  All rights of any party to set off any claims, debts or obligations owed by or to a Successful Bidder in connection with the Select Assets shall be extinguished on the applicable closing date pursuant to the proposed Sale Order, with such rights attaching to the proceeds of the applicable sale. Other than as expressly set forth in the Select Purchase Agreement or competing purchase agreement with respect to assumed liabilities, a Successful Bidder shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the Select Assets or (b) any claims (as such term is defined in section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates.

c.  To the greatest extent allowed by applicable law, a Successful Bidder shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or in part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the applicable closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Select Assets prior to the applicable closing.

Dated: [_____], 2019              DLA PIPER LLP (US)
Wilmington, Delaware

/s/ *Stuart M. Brown*_____
Stuart M. Brown (#4050)
Kaitlin MacKenzie Edelman (#5924)
Matthew S. Sarna (#6578)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@dlapiper.com
          Kaitlin.Edelman@dlapiper.com
          Matthew.Sarna@dlapiper.com

-and-

WALLER LANSDEN DORTCH & DAVIS, LLP
John Tishler (admitted *pro hac vice*)
Katie G. Stenberg (admitted *pro hac vice*)
Blake D. Roth (admitted *pro hac vice*)
Tyler N. Layne (admitted *pro hac vice*)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: John.Tishler@wallerlaw.com
          Katie.Stenberg@wallerlaw.com
          Blake.Roth@wallerlaw.com
          Tyler.Layne@wallerlaw.com

*Attorneys for the Debtors and*
*Debtors in Possession*

4

EAST\163523385.4

**Exhibit 4 to Bidding Procedures Order**
**Notice of Potential Assumption**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
| PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1] | : Case No. 18-12491 (CSS) |
|  | : |
| Debtors. | : (Jointly Administered) |
|  | : |

------------------------------------------------------------x  Re: D.I. ___

## NOTICE OF (I) CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO POTENTIALLY BE ASSUMED AND ASSIGNED AND (II) POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE** that, pursuant to the *Order: (I) Authorizing and Approving (A) Debtors' Entry Into Stalking Horse Purchase Agreement, (B) Bidding Procedures, (C) Bid Protections, (D) Assumption Procedures, and (E) Form and Manner of Notice of the Bidding Procedures, Assumption Procedures, and Sale Hearing; (II) Scheduling a Hearing to Consider the Sale, Pursuant to and in Accordance With the Bidding Procedures; and (III) Granting Related Relief* (D.I. [___]) (the "**Bidding Procedures Order**")[2] entered by the United States Bankruptcy Court for the District of Delaware (the "**Court**"), the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") provide this notice that you and one or more

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179),  Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766).  The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

[2] Capitalized terms used but not defined in this notice shall have the meanings ascribed to them in the Bidding Procedures Order and Bidding Procedures, as applicable.

of the Debtors are party to one or more of the various executory contracts and unexpired leases set forth on **Exhibit 1** to this notice (the "**Executory Contracts**" and "**Unexpired Leases**," as applicable), which Executory Contracts and Unexpired Leases may be assumed and assigned to a Successful Bidder in connection with the proposed sale of the Select Assets.

      **PLEASE TAKE FURTHER NOTICE** that set forth on **Exhibit 1** is the amount the Debtors' records reflect is owing to cure any and all defaults under each Executory Contract and Unexpired Lease (each amount, a "**Cure Amount**") to permit the assumption and assignment of each Executory Contract and Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

      **PLEASE TAKE FURTHER NOTICE** that the Debtors' books and records reflect that all postpetition amounts owing under each Executory Contract and Unexpired Lease have been paid and will continue to be paid and no other defaults exist under any of the Executory Contracts and Unexpired Leases and, therefore, amounts due and owing since the Petition Date are not included in the Cure Amount for each Executory Contract and Unexpired Lease.

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Cure Amounts set forth on **Exhibit 1** or to the possible assumption and assignment of any Executory Contract or Unexpired Lease to a Successful Bidder, as applicable, must be filed with the Court and served so as to be **actually received** on or before [_____, **2019 at 4:00 p.m. (prevailing Eastern time)**] (the "**Objection Deadline**"). Service of any objections should be made to: (i) counsel to the Debtors, (a) John Tishler, Waller Lansden Dortch & Davis, LLP, 511 Union Street, Suite 2700, Nashville, Tennessee 37219 and (b) Stuart M. Brown, DLA Piper LLP, 1201 N. Market Street, Suite 2100, Wilmington, Delaware 19801; (ii) counsel to the Committee, (a) Jeffrey N. Pomerantz, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware 19801 and (b) Andrew H. Sherman, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102; (iii) counsel to the Select Purchaser, (a) Stephen M. Leitzell, Dechert LLP, Cira Centre, 2929 Arch Street, Philadelphia, Pennsylvania 19104-2808, (b) Brian Greer, Dechert LLP, Three Bryant Park, 1095 Avenue of the Americas, New York, New York 10036-6797, and (c) Jonathan Stott, Dechert LLP, Cira Centre, 2929 Arch Street, Philadelphia, Pennsylvania 19104-2808; (iv) counsel to Wells Fargo, National Association, (a) Brian I. Swett, McGuire Woods LLP, 77 West Wacker Drive, Suite 4100, Chicago, Illinois 60601-1818 and (b) John Knight, Richards, Layton & Finger, PA, 920 N. King Street, Wilmington, Delaware 19801; (v) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Lockbox 35, Wilmington, Delaware 19801, Attn: Brya Keilson; and (vi) counsel to any Successful Bidder and Backup Bidder as identified in accordance with the Bidding Procedures.

      **PLEASE TAKE FURTHER NOTICE** that all objections to the Cure Amount or possible assumption and assignment of any Executory Contract or Unexpired Lease must (i) be in writing, (ii) conform to the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (iii) state with particularity the legal and factual basis for the objection and the specific grounds for such objection, and (iv) if challenging the Cure Amount, set forth the prepetition cure amount being claimed with appropriate documentation in support of such amount.

2

EAST\163523385.4

**PLEASE TAKE FURTHER NOTICE** that any timely filed objections that cannot be resolved will be heard at a hearing to be held before the Honorable Christopher S. Sontchi, Chief United States Bankruptcy Judge for the District of Delaware, 824 North Market Street, 5th Floor, Wilmington, Delaware 19801 on [_____] at [   ] **(prevailing Eastern time)** unless otherwise agreed by the Debtors and any applicable Successful Bidder or otherwise ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that the failure to file an objection on or before the Objection Deadline shall (i) forever bar any objections to the Cure Amount or the assertion that any additional or other amounts are due and owing, (ii) be deemed as consent to the assumption, assignment, and/or transfer of each Executory Contract and Unexpired Lease to the applicable Successful Bidder, and (iii) forever bar and estop any assertion or claim against the Debtors or Successful Bidder that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied, or that any right or benefit under each Executory Contract or Unexpired Lease cannot or will not be available to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that the Debtors shall present evidence necessary to demonstrate adequate assurance of future performance by any Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that the presence of an Executory Contract or Unexpired Lease on **Exhibit 1** to this notice does not constitute an admission that such contract, lease, or other agreement is an executory contract or unexpired lease or that such contract, lease, or other agreement will be assumed by the Debtors and assigned to any Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that, if an Executory Contract of Unexpired Lease is finally determined to be assumed and assigned to a Successful Bidder, a separate notice of such assumption and assignment will be provided to you.

**PLEASE TAKE FURTHER NOTICE** that all documents filed with the Court in connection with the above-captioned cases are available for free on the website of the court-appointed claims and noticing agent in these cases, Prime Clerk LLC, at https://cases.primeclerk.com/promisehealthcaregroup/.

3

EAST\163523385.4

Dated: [_____], 2019
Wilmington, Delaware

DLA PIPER LLP (US)

/s/ *Stuart M. Brown*
Stuart M. Brown (#4050)
Kaitlin MacKenzie Edelman (#5924)
Matthew S. Sarna (#6578)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@dlapiper.com
      Kaitlin.Edelman@dlapiper.com
      Matthew.Sarna@dlapiper.com

-and-

WALLER LANSDEN DORTCH & DAVIS, LLP
John Tishler (admitted *pro hac vice*)
Katie G. Stenberg (admitted *pro hac vice*)
Blake D. Roth (admitted *pro hac vice*)
Tyler N. Layne (admitted *pro hac vice*)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: John.Tishler@wallerlaw.com
      Katie.Stenberg@wallerlaw.com
      Blake.Roth@wallerlaw.com
      Tyler.Layne@wallerlaw.com

*Attorneys for the Debtors and*
*Debtors in Possession*

4

**Exhibit 5 to Bidding Procedures Order**
<u>Notice of Assumption and Assignment</u>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
                                                         :
In re:              ʼ                                    : Chapter 11
                                                         :
PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1]              : Case No. 18-12491 (CSS)
                                                         :
                    Debtors.                             : (Jointly Administered)
                                                         :
---------------------------------------------------------x Re: D.I. ___

### NOTICE OF ASSUMPTION AND ASSIGNMENT
### OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE** that on [_____], 2019, the United States Bankruptcy Court for the District of Delaware (the "***Court***") entered the *Order: (I) Authorizing and Approving (A) Debtors' Entry Into Stalking Horse Purchase Agreement, (B) Bidding Procedures, (C) Bid Protections, (D) Assumption Procedures, and (E) Form and Manner of Notice of the Bidding Procedures, Assumption Procedures, and Sale Hearing; (II) Scheduling a Hearing to Consider the Sale, Pursuant to and in Accordance With the Bidding Procedures; and (III) Granting Related Relief* (D.I. [___]) (the "***Bidding Procedures Order***").[2]

**PLEASE TAKE FURTHER NOTICE** that on [_____], 2019, the Court entered the *Order (I) Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of*

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

[2] Capitalized terms used but not defined in this notice shall have the meanings ascribed to them in the Bidding Procedures Order and Bidding Procedures, as applicable.

EAST\163523385.4

*Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (D.I. [___]) (the "*Sale Order*").

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures Order, Bidding Procedures, and Sale Order, the Debtors have identified [_____] as a Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that attached to this notice as **Exhibit 1** is a schedule of executory contracts and unexpired leases the Debtors will assume and assign to the Successful Bidder, in accordance with and subject to the Bidding Procedures Order and Sale Order.

**PLEASE TAKE FURTHER NOTICE** that all documents filed with the Court in connection with the above-captioned cases are available for free on the website of the court-appointed claims and noticing agent in these cases, Prime Clerk LLC, at https://cases.primeclerk.com/promisehealthcaregroup/.

Dated: [_____], 2019
Wilmington, Delaware

DLA PIPER LLP (US)

/s/ *Stuart M. Brown*
Stuart M. Brown (#4050)
Kaitlin MacKenzie Edelman (#5924)
Matthew S. Sarna (#6578)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@dlapiper.com
       Kaitlin.Edelman@dlapiper.com
       Matthew.Sarna@dlapiper.com

-and-

WALLER LANSDEN DORTCH & DAVIS, LLP
John Tishler (admitted *pro hac vice*)
Katie G. Stenberg (admitted *pro hac vice*)
Blake D. Roth (admitted *pro hac vice*)
Tyler N. Layne (admitted *pro hac vice*)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: John.Tishler@wallerlaw.com
       Katie.Stenberg@wallerlaw.com
       Blake.Roth@wallerlaw.com
       Tyler.Layne@wallerlaw.com

*Attorneys for the Debtors and Debtors in Possession*

2

EAST\163523385.4