# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1] | : | Case No. 18-12491 (CSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

----------------------------------------------------------------x

## GLOBAL NOTES AND STATEMENTS OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

Promise Healthcare, Inc. ("**Promise**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), are filing their respective Schedules of Assets and Liabilities (each, a "**Schedule**," and collectively, the "**Schedules**") and Statements of Financial Affairs (each, a "Statement" and collectively, the "**Statements**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") pursuant to section 521 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

These Global Notes and Statements of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules and Statements (collectively, the "**Global Notes**") pertain to,

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766).  The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL  33431.

and are incorporated by reference in, and comprise and integral part of all of the Schedules and Statements. The Global Notes are in addition to the specific notes set forth below with respect to the Schedules and Statements (the "**Specific Notes**," and, together with the Global Notes, the "**Notes**") and any Specific Note set forth in each Schedule and Statement. These Notes should be referred to and referenced in connection with any review of the Schedules and Statements.

The Debtors' management prepared the Schedules and Statements with the assistance of their advisors and other professionals. The Schedules and Statements are unaudited and are subject to potential adjustment. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of preparation. The Debtors' management team and advisors have made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances; however, subsequent information or discovery or assertions may result in material changes to the Schedules and Statements and errors or omissions may exist. Notwithstanding any such discovery, new information or assertions, or errors or omissions, the Debtors do not undertake any obligation or commitment to update or amend the Schedules and Statements.

The Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim, lien or priority reflected on the Schedules and Statements, including, without limitation, as to amount, liability, classification, identity of Debtor, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated" or move claims from one schedule to another. Furthermore, nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of any of the Debtors' rights, claims, causes of action or defenses or an admission with respect to their chapter 11 cases, including any issues involving objections to claims, classification, substantive consolidation, equitable subordination, defenses, characterization or re- characterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code, or any other relevant applicable laws or in equity to recover assets or avoid transfers or obtain other damages or equitable relief.

## Global Notes and Overview of Methodology

**The Schedules, Statements, and Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors or their affiliates.**

1.    **Description of the Cases**. On November 5, 2018 (the "**Commencement Date**"), each Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 20, 2018, the Bankruptcy Court entered an order authorizing the joint administration of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [D.I. 92]. Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor files its own Schedules and Statements. On November 14, 2018 the United States Trustee for the District of Delaware (the "**U.S. Trustee**")

2

appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "**Creditors' Committee**").

2.    **Basis of Presentation**. For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include information for all of the Debtors' operations ("**Promise Facilities**"). The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on an unconsolidated basis. These Schedules and Statements neither represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("**GAAP**"), nor are they intended to be fully reconciled with the financial statements of other Debtors.

The Debtors used reasonable efforts to attribute the assets and liabilities, certain required financial information, and various cash disbursements to each particular Debtor. Because the Debtors' accounting systems, policies, and practices were developed for consolidated reporting purposes, rather than for reporting by legal entity, it is possible that not all assets and liabilities have been recorded with or allocated to the correct legal entity or in the correct amount on the Schedules and Statements. Accordingly, the Debtors reserve all rights to supplement and amend the Schedules and Statements, including with respect to reallocation of assets or liabilities to any particular entity.

3.    **Reporting Date**. Unless otherwise noted on the specific responses, the Schedules and Statements generally reflect the Debtors' books and records as of the close of business on November 5, 2018. The liability values are as of the Commencement Date, reduced or eliminated by authorized payments made under the First Day Orders (as defined below).

4.    **Current Values**. The assets and liabilities of each Debtor are listed on the basis of the book value of the asset or liability in the respective Debtor's accounting books and records, unless otherwise noted, rather than the current market value.

5.    **Confidentiality**. There may be instances where certain information was not included or was redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential of commercially sensitive nature of certain information, or to protect the privacy of an individual.

6.    **Consolidated Entity Accounts Payable and Disbursement Systems**. As described in the Cash Management Motion [D.I. 10], the Debtors utilize an integrated, centralized cash management system, in the ordinary course of business, to collect, concentrate, and disburse funds generated by their operations (the "**Cash Management System**"). The Debtors maintain a consolidated disbursements system to pay operating and administrative expenses through disbursement accounts.

In the ordinary course of business, the Debtors maintain business relationships among each other, which results in intercompany receivables and payables (the "**Intercompany Claims**") arising from intercompany transactions (the "**Intercompany Transactions**"). As set forth more

3

fully in the Cash Management Motion, the primary Intercompany Transactions giving rise to Intercompany Claims are cash receipts activities, disbursement activities, inventory purchases, and expense allocations. Historically, Intercompany Claims are not settled by actual transfers of cash among the Debtors. Instead, the Debtors track all Intercompany Transactions in their accounting system, which concurrently are recorded on the applicable Debtors' balance sheets. The Debtors' accounting system requires that all general-ledger entries be balanced at the legal-entity level. Unless otherwise noted, the Debtors have reported the aggregate net intercompany balances among the Debtors as assets on Schedule A/B or as liabilities on Schedule E/F, as appropriate, despite that all or certain may be secured claims arising from rights of set off.

7.    **Accuracy**. The financial information disclosed herein was not prepared in accordance with federal or state securities laws or other applicable non-bankruptcy law or in lieu of complying with any periodic reporting requirements thereunder. Persons and entities trading in or otherwise purchasing, selling, or transferring the claims against or equity interests in the Debtors should evaluate this financial information in light of the purposes for which it was prepared. The Debtors are not liable for and undertake no responsibility to indicate variations from securities laws or for any evaluations of the Debtors based on this financial information or any other information.

8.    **Net Book Value of Assets**. In many instances, current market valuations are not maintained by or readily available to the Debtors. As such, wherever possible, net book values as of the Commencement Date are presented. When necessary, the Debtors have indicated that the value of certain assets is "unknown" or "undetermined." Amounts ultimately realized may vary materially from net book value (or other value so ascribed). Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset values set forth in the Schedules and Statements. As applicable, fixed assets and leasehold improvement assets that fully have been depreciated or amortized, or were expensed for GAAP accounting purposes, have no net book value and, therefore, are not included in the Schedules and Statements.

9.    **Undetermined Amounts**. Claim amounts or values that could not readily be quantified by the Debtors are scheduled as "undetermined," "unknown," or "N/A." The description of an amount as "undetermined," "unknown," or "N/A" is not intended to reflect upon the materiality of the amount.

10.    **Excluded Assets and Liabilities**. The Debtors believe that they have identified, but did not necessarily value, all material categories of assets and liabilities in the Schedules. The Debtors have excluded the following items from the Schedules and Statements: certain accrued liabilities, including, without limitation, accrued salaries and wages, employee benefit accruals, and certain other accruals, and certain prepaid and other current assets considered to have *de minimis* or no market value. Other immaterial assets and liabilities may also have been excluded.

11.    **Totals**. All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements and exclude items identified as "unknown" or "undetermined." If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals.

4

12.      **Currency**. All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated.

13.      **Payment of Prepetition Claims Pursuant to First Day Orders**. The Debtors have authority to pay certain outstanding prepetition payables pursuant to bankruptcy or other court order, including, but not limited to, certain orders the Bankruptcy Court entered within the first two days of the Debtors' chapter 11 cases authorizing the Debtors to pay certain prepetition amounts (collectively, the "**First Day Orders**") and certain final or supplemental orders that may have authorized additional amounts to be paid. As such, outstanding liabilities may have been reduced by any court-approved postpetition payments made on prepetition payables. Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements unless otherwise noted. To the extent the Debtors later pay any amount of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities.

14.      **Other Paid Claims**. To the extent the Debtors have reached any post-petition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Debtors' Schedules and Statements, and shall be enforceable by all parties, subject to Bankruptcy Court approval.

15.      **Setoffs**. The Debtors routinely incur certain setoffs from governmental authorities, private payors, and suppliers in the ordinary course of business. Setoffs in the ordinary course can result from various items including, but not limited to, pricing discrepancies, customer programs, returns, promotional funding, and other disputes between the Debtors and such third parties. These routine setoffs are consistent with the ordinary course of business in the Debtors' industry and, therefore, can be particularly voluminous, unduly burdensome, and costly for the Debtors to regularly document. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs may not be independently accounted for, and, as such, may be excluded from the Debtors' Schedules and Statements. Any setoff of a prepetition debt to be applied against the Debtors is subject to the automatic stay and must comply with section 553 of the Bankruptcy Code.

16.      **Inventory**. Inventories are reflective of the Debtors' supplies and are valued at cost on the Debtors' balance sheet.

17.      **Property, Plant and Equipment**. Property and equipment are recorded at historical cost. Depreciation is computed on the straight-line method over the estimated useful lives of the furniture, fixtures, and equipment, which generally range from five to ten years. Amortization of leasehold improvements is computed on the straight-line method based upon the shorter of the estimated useful lives of the assets or the terms of the respective leases.

18.    **Debtors' Reservation of Rights**. Nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of rights with respect to these chapter 11 cases, including, but not limited to, the following:

a.    Any failure to designate a claim listed on the Debtors' Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such claim, amount, status or priority is not "disputed," "contingent," or "unliquidated." The Debtors reserve the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on the Schedules as to amount, liability, priority and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

b.    Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items. The Debtors thus reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as is necessary and appropriate, but do not undertake any obligation to do so.

c.    The listing of a claim (i) on Schedule D as "secured," (ii) on Schedule E/F (Part 1) as "priority," (iii) on Schedule E/F (Part 2) as "unsecured," or (iv) listing a contract or lease on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract pursuant to an amendment to the Schedules and Statements, claim objection or otherwise. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken. Except as provided in an order of the Bankruptcy Court, the Debtors and their estates reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims or liens or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim or lien.

d.    In the ordinary course of their businesses, the Debtors lease equipment and other assets from certain third-party lessors for use in their daily operations. The Debtors have made commercially reasonable efforts to list any such leases in Schedule G, and any current amounts due under such leases that were outstanding as of the Commencement Date are listed on Schedule E/F. Except as otherwise noted herein, the property subject to any such leases and other property owned by third parties that is in the Debtors' control is not reflected in Schedule A/B as either owned property or assets of the Debtors. Nothing in the Schedules is or shall be construed as an admission or determination as to the legal status of any contract (including whether any contract is executory) or lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect thereto, including the recharacterization thereof.

6

e.      The claims of creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances or other adjustments due to or from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances and other adjustments, including the right to assert causes or action, claims objections, defenses and/or setoffs with respect to the same.

f.      The Debtors' businesses are part of a complex enterprise. Although the Debtors have exercised their reasonable efforts to ensure the accuracy of their Schedules and Statements, they nevertheless may contain errors and omissions. The Debtors hereby reserve all of their rights to dispute the validity, status, and enforceability of any contracts, agreements, and leases identified in the Debtors' Schedules and Statements, and to amend and supplement the Schedules and Statements as necessary.

g.      The Debtors further reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on the Schedules and Statements, including, but not limited to, the right to dispute and challenge the characterization or the structure of any transaction, document, and instrument related to a creditor's claim.

h.      The Debtors exercised their reasonable efforts to locate and identify guarantees and other secondary liabilities ("**Guarantees**") in their executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Where such Guarantees have been identified, they are included in the relevant Schedules and Statements. Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements may have been omitted inadvertently.  Debtors' books and records do not reflect rights of contribution, indemnification, subrogation or reimbursement between or among the Debtors and, therefore, such rights may not be reflected in the Schedules and Statements. The Debtors reserve their rights to amend and supplement the Schedules and Statements to the extent that additional Guarantees are identified. In addition, the Debtors reserve the right to amend the Schedules and Statements to re-characterize and reclassify any such contract or claim.

i.      Listing a contract or lease on the Debtors' Schedules and Statements shall not be deemed an admission that such contract is an executory contract, such lease is an unexpired lease, or that either necessarily is a binding, valid, or enforceable contract, in whole or in part. The Debtors hereby expressly reserve the right to assert that any contract listed on the Debtors' Schedules and Statements is not an executory contract within the purview of section 365 of the Bankruptcy Code, and the right to assert that any lease so listed does not constitute an unexpired lease within the purview of section 365 of the Bankruptcy Code.

j.      Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain

7

intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

19.    **Notes Control.** In the event that the Schedules or Statements differ from any of the Notes, the Notes shall control.

### <u>Specific Notes with Respect to the Debtors' Schedule of Assets and Liabilities</u>

1.    **Schedule A/B.**

a.    **A/B.3**. As set forth more fully in the Cash Management Motion, the Debtors conduct their operations through an extensive network of bank accounts managed throughout the country. The values provided in Schedule A/B, Item 3 for each account for a given Debtor reflects the ending cash balance of such account as of the close of business on November 4, 2018 net of outstanding checks.

b.    **A/B.7**. Professional fee retainer balances are not reflective of the application of prepetition invoices received by the Debtors after November 5, 2018.

c.    **A/B.11.**    As the Debtors allowance for doubtful accounts does not necessarily correspond to the aging of Accounts Receivable, the Accounts Receivable were presented as a whole and not split between 0-90 days and over 90 days.

d.    **A/B.15.**    The dollar value of the Debtors interest reflects the current and only values on the balance sheet that relate to interests in incorporated and unincorporated businesses

e.    **A/B.19-26**. The Debtors received certain inventory within 20 days before the Commencement Date (within the purview of Section 502(b)(9) of the Bankruptcy Code), but have not yet determined the amount or value of such inventory. Any such inventory is included in the amounts listed in Schedule F.

f.    **A/B.55–58**. The Debtors considered only real property owned in responding to Schedule A/B, Items 54–58. However, the Debtors' real property leases are listed in Schedule G and are incorporated into Schedule A/B, Items 54-58 by reference.

g.    **A/B.71**. Where a Debtor holds a positive net intercompany balance, such amount has been listed on Item 71, Schedule A/B for such Debtor. Correspondingly, where a Debtor holds a negative net intercompany balance, such amount has been listed on Schedule E/F, Part 2 for such Debtor as reflected on the balance sheet on November 4, 2018.

8

h.      **A/B.72**. The Debtors file consolidated federal tax returns, as well as certain of their state tax returns, under Promise Healthcare Group, LLC, Promise Healthcare, Inc. and St. Alexius Hospital Corporation #1. Consequently, where the Debtors maintain net operating losses from consolidated tax filings made by Promise Healthcare, Inc., those net operating losses are listed only under Item 72 of Schedule A/B for Promise Inc. Additionally, the values of the NOLs listed in Schedule A/B, Item 72 reflect the amounts listed in the Debtors' books and records, and may reflect NOLs accumulated for more than one tax year.

i.      **A/B.74**. Despite exercising efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action as assets in their Schedules. Unless otherwise noted on specific responses, items reported on Schedule A/B are reported from the Debtors' books and records as of the Commencement Date. The Debtors reserve all of their rights with respect to any claims and causes of action they may have. Neither these Notes nor the Schedules or Statements shall be deemed a waiver of any such claims or causes of action or to prejudice or impair the assertion thereof in any way.

2.      **Schedule D**. The claims listed on Schedule D, as well as the guarantors or co-debtors of those claims listed on Schedule H, arose and were incurred on various dates; a determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, not all such dates are included for each claim. To the best of the Debtors' knowledge, all claims listed on Schedule D arose or were incurred before the Commencement Date. The amounts in Schedule D are consistent with the Debtors' stipulations set forth in the *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Adequate Protection to the Prepetition ABL Parties, (IV) Granting Adequate Protection to the Prepetition ABL Parties and, (V) Modifying the Automatic Stay* [D.I. 218] (the "**DIP Order**"), which may be subject to investigation and challenge by the Creditors' Committee or other parties in interest, all as more fully set forth in the DIP Order.

Wells Fargo Bank, National Association is checked as an "insider" solely because it acts as agent in connection with a pre-petition term loan, the obligations of which are held by insiders.  The Debtors do not view Wells Fargo Bank, National Association as an insider within the purview of section 101(31) of the Bankruptcy Code.

Except as otherwise agreed to or stated pursuant to a stipulation, agreed order, or order entered by the Bankruptcy Court that is or becomes final, including the DIP Order, the Debtors and their estates reserve their right to dispute and challenge the validity, perfection, enforceability, extent or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor and, subject to the foregoing limitations, note as follows:

(a) although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken; (b) the Debtors have included the results of UCC lien searches performed prior to the Commencement Date (the reporting of such results, however, shall not be

9

deemed an admission as to the validity or existence of any such lien); (c) the Debtors reserve all rights to dispute and challenge the secured nature of any creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim; and (d) the descriptions provided on Schedule D only are intended to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the debt contained on Schedule D are contained in the *Declaration of Andrew Hinkelman In Support of First Day Relief* (the "**First Day Declaration**") [D.I. 18].

3.      **Schedule E/F**

a.      **(Part 1)**. The claims listed on Schedule E/F (Part 1) arose and were incurred on various dates; a determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, not all such dates are included for each claim. To the best of the Debtors' knowledge, all claims listed on Schedule E/F arose or were incurred before the Commencement Date.

The Debtors have not listed certain wage, or wage-related obligations that the Debtors have paid pursuant to First Day Orders on Schedule E/F. The Debtors reserve the right to dispute or challenge whether creditors listed on Schedule E/F are entitled to priority status pursuant to sections 503 and/or 507 of the Bankruptcy Code.

Claims owing to various taxing authorities to which the Debtors potentially may be liable are included on the Debtors' Schedule E/F. Certain of such claims, however, may be subject to ongoing audits and/or the Debtors otherwise are unable to determine with certainty the amount of the remaining claims listed on Schedule E/F or the amount of such claim may exceed any statutory limit.

The Debtors reserve the right to assert that any claim listed on Schedule E/F does not constitute a priority claim under the Bankruptcy Code.

b.      **(Part 2)**. The Debtors have tried to list all liabilities on Schedule E/F of each applicable Debtor. As a result of the Debtors' consolidated operations, however, one should review Schedule E/F for all Debtors in these chapter 11 cases for a complete understanding of the unsecured debts of the Debtors. Certain creditors listed on Schedule E/F may owe amounts to the Debtors and, as such, the Debtors may have valid setoff and recoupment rights with respect to such amounts. The amounts listed on Schedule E/F may not reflect any such right of setoff or recoupment, and the Debtors reserve all rights to assert or implement the same and to dispute and challenge any setoff and/or recoupment rights that may be asserted against the Debtors by a creditor. Additionally, certain creditors may assert mechanic's, materialman's, or other similar liens or priority claims, including, without limitation, under 11 U.S.C. § 503(b)(9), against the Debtors for amounts listed on Schedule E/F. The Debtors reserve their rights to dispute and challenge the validity,

10

perfection, priority, extent, and immunity from avoidance of any lien or priority claim asserted by a creditor listed on Schedule E/F of any Debtor. .

The Debtors tried to include all unsecured creditors on Schedule E/F including, but not limited to, occupancy creditors, consultants, and other service providers. The Debtors have also included trade creditors and taxing authorities on Schedule E/F, some of whose claims have been satisfied, in whole or in part, pursuant to the First Day Orders. Notwithstanding the foregoing, the Debtors believe that there are instances where creditors have yet to provide proper invoices for prepetition goods or services. Additionally, certain bank maintenance fees have not been listed in Schedule E/F for the Debtors where determining and allocating such amounts among the Debtors would be unduly burdensome. Moreover, Schedule E/F does not include certain balances including deferred liabilities, accruals, or general reserves. Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals primarily represent general estimates of liabilities and do not represent specific claims as of the Commencement Date. The Debtors tried to include as contingent, unliquidated and/or disputed the claim of any party not included on the Debtors' open accounts payable that is associated with an account that has an accrual or receipt not invoiced.

The Debtors own or lease premises and operate businesses that are open to the public and Debtors' invitees. The Debtors scheduled all known pending litigation. The Debtors did not schedule threatened claims or litigation or other asserted personal injuries. The Debtors are aware that certain reports may have been received respecting "slip and fall" and other reports of personal injuries, but the Debtors have not scheduled all such claims and would not until such time as any such claim became a reportable event under any applicable insurance policy.

The Debtors are in the healthcare business. The Debtors' patients and their families may have suffered personal injuries or other damages as a result of acts and omissions of the Debtors', physicians or staff. The Debtors are aware that certain reports may have been received respecting medical malpractice and other reports of personal injuries, but the Debtors have not scheduled all such claims and would not until such time as any such claim became a reportable event under any applicable insurance policy.

Schedule E/F also contains information regarding pending litigation involving the Debtors. In certain instances, the relevant Debtor that is the subject of the litigation is unclear or undetermined or the litigation was asserted against the wrong Debtor. To the extent that litigation involving a particular Debtor has been identified, such information is included on that Debtor's Schedule E/F. The amounts for these potential claims are listed as undetermined and marked as contingent, unliquidated, and disputed in the Schedules.

The aggregate net intercompany payable amounts listed in Schedule E/F may or may not result in allowed or enforceable claims by or against a given Debtor, and listing these payables is not an admission on the part of the Debtors that the Intercompany Claims are enforceable or collectable or not subject to avoidance. The intercompany payables also

11

may be subject to recoupment, netting, or other adjustments made pursuant to intercompany policies and arrangements not reflected in the Schedules and may not reflect all obligations for indemnification, contribution or reimbursement between or among Debtors.

Additionally, the Bankruptcy Court has authorized the Debtors to pay, in their discretion, certain unsecured claims, pursuant to the First Day Orders. To the extent practicable, each Debtor's Schedule E/F is intended to reflect the balance as of November 5, 2018, adjusted for postpetition payments of some or all of the Bankruptcy Court-approved payments. Each Debtor's Schedule E/F will reflect some of the Debtor's payments of certain claims pursuant to the First Day Orders and, to the extent an unsecured claim has been paid or may be paid in accordance with any First Day Order or other order of the Bankruptcy Court, it is possible such claim is not included on Schedule E/F. Certain Debtors may pay additional claims listed on Schedule E/F during these Chapter 11 cases pursuant to these and other orders of the Bankruptcy Court, including, without limitation for example, cure of defaults respecting assumed contracts or leases, and the Debtors reserve all of their rights to amend Schedule E/F to reflect such payments or to modify the claims register to account for the satisfaction of such claim, but the Debtors assume no obligation to do so. Additionally, Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that have been, or may be, rejected.

4.      **Schedule G**. Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding purported executory contracts and unexpired leases (collectively, the "**Agreements**"), review is ongoing and inadvertent errors, omissions or overinclusion may have occurred. The Debtors may have entered into various other types of agreements, arrangement, understandings or undertakings in the ordinary course of their businesses that may not be set forth in Schedule G. In addition, as described herein, certain non-disclosure agreements and other confidential information have been omitted, as well as certain short-term purchase and sales orders given their large number and transitory nature.

Omission of an agreement from Schedule G does not constitute an admission that such omitted agreement is not a contract or lease. Schedule G may be amended at any time to add any omitted contracts or leases. Likewise, the listing of a contract or lease on Schedule G does not constitute an admission that it is an executory contract or unexpired lease or that it was in effect on the Commencement Date or is valid or enforceable. The contracts and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letter and other documents, instruments and agreements that may not be listed on Schedule G. Executory agreements that are oral in nature have not been included in Schedule G. Any and all of the Debtors' rights, claims and causes of action with respect to the contracts and leases listed on Schedule G are hereby reserved and preserved and, as such, the Debtors hereby reserve all of their rights to (i) dispute the validity, status or enforceability of any contract or lease set forth on Schedule G, (ii) dispute or challenge the characterization of the structure of any transaction, or any document or instrument related to a creditor's claim, including, but not limited to, the contract or lease listed on Schedule G and (iii)

EAST\164540670.1

to amend or supplement such Schedule as necessary, but the Debtors assume no obligation to do so. Certain of the contracts and leases listed on Schedule G may have been entered into on behalf of more than one Debtor. Additionally, the specific Debtor to certain contracts and leases may not have been specifically ascertained in every circumstance. In such cases, the Debtors tried to identify the correct Debtor's Schedule G on which to list such contract or lease and, where a contract party remained uncertain, such contract or lease may have been listed on a different Debtor's Schedule G.

5.    **Schedule H**. The Debtors are party to various debt and other agreements, which were executed by multiple Debtors. The obligations of guarantors under prepetition, secured credit agreements are noted on Schedule H for each individual Debtor. In the ordinary course of their businesses, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their businesses. Some of these matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because such claims may be listed on each Debtor's Schedule E/F, as applicable, they may have not been set forth individually on Schedule H. Further, the Debtors may not have identified certain guarantees that are embedded in the Debtors' contracts, leases, secured financings, debt instruments and other agreements.

No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors. To the extent there are guarantees connected with any joint ventures to which any Debtor may be a party, such agreements are not identified in the Debtors' Schedules. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable, but the Debtors assume no obligation to do so.

## <u>Specific Notes with Respect to the Debtors' Statement of Financial Affairs</u>

**Part 1, Question 1 and 2:**
The revenue stated in the Debtors' response to Part 1, Question 1 and 2 is consistent with the consolidated sales disclosed in compliance with GAAP. Sales are reflected net of inpatient and outpatient deductions and certain other adjustments.
The presented revenues are for periods:
FY 2016: January 1st, 2016 - December 31st, 2016
FY 2017: January 1st, 2017 - December 31st, 2017
YTD 2018: January 1st, 2018 - November 4th, 2018

**Part 2, Question 3**:
The obligations of the Debtors are primarily paid by and through Promise Healthcare, Inc. and Success Healthcare, LLC, notwithstanding the fact that certain disbursements may be for the benefit of one or more of the affiliated Debtors. The payments disclosed in Question 3 are based on payments made by the Debtors with payment dates from August 5th, 2018 to November 5th, 2018. The actual dates that cash cleared the Debtors' bank accounts may differ based on the form

EAST\164540670.1

of payment and date the transferee presented checks for payment. The Debtors' accounts payable system does not include the corresponding payment clear dates and compiling this data would have required a significant manual review of individual bank statements. It is expected, however, that many payments included in Question 3 have payment clear dates that are the same as payment dates (*e.g.*, wires and other forms of electronic payments). The responses to Question 3 exclude certain petty cash disbursements due to data being unavailable.

**Part 2, Question 4**:
The Debtors reserve all rights with respect to the determination or
status of a person as an "insider" as defined in section 101(13) of the Bankruptcy Code.

**Part 2, Question 6:**
The operating Debtors engage in certain patient programs including refund programs pursuant to which customers may receive cash refunds. Such recoupment and set off transactions were not considered setoffs for the purpose of responding to Question 6, although the Debtors reserve all rights with respect thereto and make no admission of waiver thereby.

**Part 3, Question 7:**
As it would be unduly burdensome for the Debtors to gather this information for each case, the court agency and location was omitted from certain cases in the Statement of Financial Affairs.

**Part 7, Question 14:**
The exact dates that the company moved into the facilities that have since closed down are unknown.

**Part 13, Question 25:**
Refer to organization chart for information regarding this question.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                           :     Chapter 11
                                                 :
Promise Healthcare Group, LLC, *et al*.,[1]      :     Case No. 18-12491 (CSS)
                                                 :
                             Debtors.            :     (Jointly Administered)
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SCHEDULE OF ASSETS AND LIABILITIES FOR
## PROMISE HEALTHCARE GROUP, LLC (CASE NO. 18-12491)

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

**Fill in this information to identify the case:**

Debtor name    **Promise Healthcare Group, LLC**

United States Bankruptcy Court for the:    DISTRICT OF DELAWARE

Case number (if known)    **18-12491**

☐ Check if this is an amended filing

Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals    12/15

| Part 1: | Summary of Assets |
| --- | --- |

1.    *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

    1a. **Real property:**
        Copy line 88 from *Schedule A/B*.................................................................................... $ **0.00**

    1b. **Total personal property:**
        Copy line 91A from *Schedule A/B*................................................................................ $ **488,266,648.52**

    1c. **Total of all property:**
        Copy line 92 from *Schedule A/B*.................................................................................. $ **488,266,648.52**

| Part 2: | Summary of Liabilities |
| --- | --- |

2.    *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
    Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*................................... $ **76,657,558.00**

3.    *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

    **3a. Total claim amounts of priority unsecured claims:**
        Copy the total claims from Part 1 from line 5a of *Schedule E/F*............................................................ $ **0.00**

    **3b. Total amount of claims of nonpriority amount of unsecured claims:**
        Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*................................................ +$ **995,525.98**

4.    Total liabilities ........................................................................................................
    Lines 2 + 3a + 3b    $ **77,653,083.98**

**Fill in this information to identify the case:**

Debtor name **Promise Healthcare Group, LLC**

United States Bankruptcy Court for the: DISTRICT OF DELAWARE

Case number (if known) **18-12491**

☐ Check if this is an amended filing

# Official Form 206A/B
# Schedule A/B: Assets - Real and Personal Property                                          12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:**    **Cash and cash equivalents**

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☑ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | CITY NATIONAL | Operating Account | 7604 | $0.00 |

4. **Other cash equivalents** *(Identify all)*

5. **Total of Part 1.**
   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| | |
|---|---|
| | $0.00 |

**Part 2:**    **Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

☐ No. Go to Part 3.
☑ Yes Fill in the information below.

7. **Deposits, including security deposits and utility deposits**
   Description, including name of holder of deposit

| | | |
|---|---|---|
| 7.1. | **See Schedule A/B Part 2, Question 7 Attachment** | $1,140,000.00 |

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
   Description, including name of holder of prepayment

| | | |
|---|---|---|
| 8.1. | **EFRONT - SOFTWARE & SERVICE AGREEMENT** | $29,218.00 |

Debtor    **Promise Healthcare Group, LLC**                    Case number *(If known)* **18-12491**
          Name

9.    **Total of Part 2.**                                                          $1,169,218.00
      Add lines 7 through 8. Copy the total to line 81.

| Part 3: | Accounts receivable |

10. **Does the debtor have any accounts receivable?**

☑ No.  Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |

13. **Does the debtor own any investments?**

☐ No.  Go to Part 5.
☑ Yes Fill in the information below.

|  |  | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 14. | **Mutual funds or publicly traded stocks not included in Part 1**<br>Name of fund or stock: | | |
| 15. | **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**<br>Name of entity:          % of ownership | | |

| | | % of ownership | | Valuation method | Current value |
|---|---|---|---|---|---|
| 15.1. | **Promise Healthcare Holdings, Inc.** | 100 % | | BOOK VALUE | $340,698,150.00 |
| 15.2. | **Success Healthcare, LLC** | 100 % | | BOOK VALUE | Unknown |

16.    **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**
       Describe:

17.    **Total of Part 4.**                                                          $340,698,150.00
       Add lines 14 through 16.  Copy the total to line 83.

| Part 5: | Inventory, excluding agriculture assets |

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No.  Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No.  Go to Part 7.
☐ Yes Fill in the information below.

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No.  Go to Part 8.
☐ Yes Fill in the information below.

| Debtor | **Promise Healthcare Group, LLC** | | Case number *(If known)* **18-12491** |
|---|---|---|---|
| | Name | | |

## Part 8: Machinery, equipment, and vehicles

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No.  Go to Part 9.
☐ Yes Fill in the information below.

## Part 9: Real property

**54. Does the debtor own or lease any real property?**

■ No.  Go to Part 10.
☐ Yes Fill in the information below.

## Part 10: Intangibles and intellectual property

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

## Part 11: All other assets

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No.  Go to Part 12.
■ Yes Fill in the information below.

|  |  | **Current value of debtor's interest** |
|---|---|---|

| 71. | **Notes receivable**<br>Description (include name of obligor)<br>**See Schedule A/B Part 11, Question 71 Attachment** | 146,399,280.52 <br>Total face amount | – | 0.00 <br>doubtful or uncollectible amount | = | **$146,399,280.52** |
|---|---|---|---|---|---|---|

| 72. | **Tax refunds and unused net operating losses (NOLs)**<br>Description (for example, federal, state, local) |
|---|---|

73. **Interests in insurance policies or annuities**

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

76. **Trusts, equitable or future interests in property**

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

| 78. | **Total of Part 11.** | **$146,399,280.52** |
|---|---|---|
| | Add lines 71 through 77. Copy the total to line 90. | |

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
■ No
☐ Yes

Debtor    **Promise Healthcare Group, LLC**                              Case number *(If known)* **18-12491**
_____
Name

| Part 12: | Summary |

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $1,169,218.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $340,698,150.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*.......................................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $146,399,280.52 | |
| 91. **Total.** Add lines 80 through 90 for each column | $488,266,648.52 | + 91b. $0.00 |

92. **Total of all property on Schedule A/B**. Add lines 91a+91b=92          $488,266,648.52

In re Promise Healthcare Group, LLC
Case No. 18-12491 (CSS)
Schedule A/B:  Part 2, Question 7:  Deposits, including security deposits and utility deposits

| Name of Holder of the Deposit | Description of the Deposit | Current Value of Debtor's Interest |
|---|---|---|
| BUTLER SNOW | RETAINER | $180,000.00 |
| CREDIT VALUE PARTNERS | RETAINER | $65,000.00 |
| DLA PIPER | RETAINER | $300,000.00 |
| DLA PIPER | RETAINER | $110,000.00 |
| FTI | RETAINER | $250,000.00 |
| PRIME CLERK | RETAINER | $35,000.00 |
| PROSKAUER | RETAINER | $100,000.00 |
| WALLER | RETAINER | $100,000.00 |
| TOTAL: | | $1,140,000.00 |

In re Promise Healthcare Group, LLC
Case No. 18-12491 (CSS)
Schedule A/B:  Part 11, Question 71 - Notes receivable

| Description (include name of Obligor) | Total Face Amount | Doubtful or Uncollectible Accounts | Current Value of Debtor's Interest |
|---|---|---|---|
| DUE FROM 121-HLP MIAMI DADE | $2,167,271.00 | | $2,167,271.00 |
| DUE FROM HLP OF LOS ANGELES, LLC | $20,675,060.00 | | $20,675,060.00 |
| DUE FROM PROMISE HEALTHCARE, INC. | $4,338,778.00 | | $4,338,778.00 |
| DUE FROM PROMISE PROPERTIES OF LEE, INC. | $1,599,165.00 | | $1,599,165.00 |
| DUE FROM QUANTUM HEALTH, INC. | $4,054.00 | | $4,054.00 |
| DUE FROM SILVER LAKE PACIFICA PRINCIPAL | $1,405,513.00 | | $1,405,513.00 |
| DUE FROM SILVER LAKE SUNCAPITAL PRINCIPAL | $25,993,177.00 | | $25,993,177.00 |
| DUE FROM ST. ALEXIUS HOSPITAL CORPORATION #1 DBA ST. ALEXIUS HOSPITAL | $90,000.00 | | $90,000.00 |
| DUE FROM ST. ALEXIUS HOSPITAL CORPORATION #1 DBA ST. ALEXIUS HOSPITAL | $86,056.00 | | $86,056.00 |
| DUE FROM ST. ALEXIUS PACIFICA PRINCIPAL | $1,390,000.00 | | $1,390,000.00 |
| DUE FROM ST.ALEXIUS SUNCAPITAL PRINCIPAL | $59,797.00 | | $59,797.00 |
| FP HOLDINGS | $75,000,000.00 | | $75,000,000.00 |
| UNPAID INTEREST ACCRUED FPD | $12,297,445.52 | | $12,297,445.52 |
| UNPAID INTEREST FOR PACIFICA 2014-2016 | $63,457.00 | | $63,457.00 |
| UNPAID INTEREST FOR PACIFICA 2015-2016 | $53,427.00 | | $53,427.00 |
| UNPAID INTEREST FOR SUNCAP PORTION 2014-2016 | $1,173,775.00 | | $1,173,775.00 |
| UNPAID INTEREST FOR SUNCAP PORTION 2015-2016 | $2,305.00 | | $2,305.00 |
| TOTAL: | $146,399,280.52 | | $146,399,280.52 |

**Fill in this information to identify the case:**

Debtor name    **Promise Healthcare Group, LLC**

United States Bankruptcy Court for the:    DISTRICT OF DELAWARE

Case number (if known)    **18-12491**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|
| **2.1** **TETRA FINANCIAL GROUP, LLC**<br>Creditor's Name<br>**6995 UNION PARK CENTER SUITE 400 COTTONWOOD HEIGHTS, UT 84047**<br>Creditor's mailing address | Describe debtor's property that is subject to a lien | **$0.00** | **Unknown** |

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Describe the lien**
**LINE OF CREDIT**
Is the creditor an insider or related party?
■ No
☐ Yes
Is anyone else liable on this claim?
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
■ Contingent
■ Unliquidated
■ Disputed

| | | | |
|---|---|---|---|
| **2.2** **VFI CORPORATE FINANCE**<br>Creditor's Name<br>**6340 SOUTH 3000 EAST 4TH FLOOR SALT LAKE CITY, UT 84121**<br>Creditor's mailing address | Describe debtor's property that is subject to a lien | **$0.00** | **Unknown** |

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Describe the lien**
**LINE OF CREDIT**
Is the creditor an insider or related party?
■ No
☐ Yes
Is anyone else liable on this claim?
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

| Debtor | **Promise Healthcare Group, LLC** | | Case number (if known) | **18-12491** |
|---|---|---|---|---|
| | Name | | | |

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply |
|---|---|
| ■ No | ■ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ■ Unliquidated |
| | ■ Disputed |

---

| 2.3 | **WELLS FARGO, NATIONAL ASSOCIATION, AGENT** | Describe debtor's property that is subject to a lien | $76,657,558.00 | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **ALL ASSETS** | | |

**428 MONTGOMERY STREET**
**SAN FRANCISCO, CA 94104**
Creditor's mailing address

**Describe the lien**
**REVOLVER AND TERM LOAN**

**Is the creditor an insider or related party?**
☐ No
■ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
☐ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**3/21/2016**
**Last 4 digits of account number**

| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** Check all that apply |
|---|---|
| ■ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

---

| 3. | Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | $76,657,558.00 |
|---|---|---|

| **Part 2:** | **List Others to Be Notified for a Debt Already Listed in Part 1** |
|---|---|

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

| Fill in this information to identify the case: |
| --- |

Debtor name **Promise Healthcare Group, LLC**

United States Bankruptcy Court for the: DISTRICT OF DELAWARE

Case number (if known) **18-12491**

☐ Check if this is an
amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1.  **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

    ■ No. Go to Part 2.

    ☐ Yes. Go to line 2.

### Part 2:    List All Creditors with NONPRIORITY Unsecured Claims

3.  **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

|  |  | Amount of claim |
| --- | --- | --- |

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $995,525.98 |
| | **See Attached Schedule E/F: Part 2** | ☐ Contingent | |
| | | ☐ Unliquidated | |
| | **Date(s) debt was incurred** _ | ☐ Disputed | |
| | **Last 4 digits of account number** _ | **Basis for the claim:** _ | |
| | | Is the claim subject to offset? ■ No ☐ Yes | |

### Part 3:    List Others to Be Notified About Unsecured Claims

4. **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

   If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
| --- | --- | --- |

### Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims

5.  Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
| --- | --- | --- |
| 5a. Total claims from Part 1 | 5a. | $  0.00 |
| 5b. Total claims from Part 2 | 5b. + | $  995,525.98 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $  995,525.98 |

In re Promise Healthcare Group, LLC

Case No. 18-12491 (CSS)

Schedule E/F:  Part 2 - Creditors With Nonpriority Unsecured Claims

| Creditor Name, Mailing Address, Last 4 of Account Number | Date Debt was Incurred, Basis for Claim | Contingent | Unliquidated | Disputed | Claim subject to offset? | Total Claim |
|---|---|---|---|---|---|---|
| BAKER, DONELSON, BEARMAN, CALDWELL | VARIOUS DATES, TRADE AP | | | | | $12,133.40 |
| CREDIT VALUE PARTNERS, LP<br>49 W. PUTNAM AVENUE<br>GREENWICH CT 06830 | VARIOUS DATES, TRADE AP | | | | | $34,750.00 |
| CROWE, LLP<br>PO BOX 71570<br>CHICAGO IL 60694-1570 | VARIOUS DATES, TRADE AP | | | | | $249,167.00 |
| EFRONT FINANCIAL SOLUTIONS INC<br>11 EAST 44TH STREET 9TH FLOOR<br>NEW YORK NY 10017 | VARIOUS DATES, TRADE AP | | | | | $39,622.90 |
| FRANCHISE TAX BOARD<br>PO BOX 942857<br>SACRAMENTO CA 94257 | VARIOUS DATES, TRADE AP | | | | | $800.00 |
| HINSHAW & CULBERTSON, LLP | VARIOUS DATES, TRADE AP | | | | | $14,345.72 |
| HOOPER LUNDY & BOOKMAN INC<br>1875 CENTURY PARK EAST<br>SUITE 1600<br>LOS ANGELES CA 90067-2799 | VARIOUS DATES, TRADE AP | | | | | $212.50 |
| K&L GATES, LLP | VARIOUS DATES, TRADE AP | | | | | $20,045.46 |
| REED SMITH LLP<br>225 FIFTH AVENUE<br>PITTSBURGH PA 15222 | VARIOUS DATES, TRADE AP | | | | | $2,248.00 |
| SUCCESS HEALTHCARE, LLC<br>999 YAMATO RD<br>THIRD FLOOR<br>BOCA RATON FL 33431 | VARIOUS DATES, INTERCOMPANY LIABILITY | | | | X | $622,201.00 |

In re Promise Healthcare Group, LLC
Case No. 18-12491 (CSS)
Schedule E/F:  Part 2 - Creditors With Nonpriority Unsecured Claims

| Creditor Name, Mailing Address, Last 4 of Account Number | Date Debt was Incurred, Basis for Claim | Contingent | Unliquidated | Disputed | Claim subject to offset? | Total Claim |
|---|---|---|---|---|---|---|
| **TOTAL:** | | | | | | **$995,525.98** |

**Fill in this information to identify the case:**

Debtor name   **Promise Healthcare Group, LLC**

United States Bankruptcy Court for the:  DISTRICT OF DELAWARE

Case number (if known)  **18-12491**

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases     12/15

**Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.**

1.  **Does the debtor have any executory contracts or unexpired leases?**
     ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
     ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.1.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **See Schedule G Attachment** |

In re Promise Healthcare Group, LLC
Case No. 18-12491 (CSS)
Schedule G:  Executory Contracts and Unexpired Leases

| Contract Counterparty | Address1 | Address2 | Address3 | Address4 | City | State | Postal Code | Description of Contract or Lease and Nature of Debtor's Interest | Date of Contract or Lease | Remaining Term |
|---|---|---|---|---|---|---|---|---|---|---|
| Atlantic Personnel & Tenant Screening, Inc | Attn: General Counsel | 8895 N Military Trail | Suite 301C | | Palm Beach Gardens | FL | 33410 | Service Contract | 9/21/17 | Undetermined |
| BDO USA, LLP | Attn: Office of General Counsel | 330 North Wabash | Suite 3200 | | Chicago | IL | 60611 | Confidentiality Agreement | 5/22/17 | 5/17/19 |
| Chase Transcriptions, Inc | Attn: Michael C Geaney | 1737 Georgetown Road | Suite G | | Hudson | OH | 44236 | Confidentiality Agreement | 8/1/17 | Undetermined |
| Diagnostic Systems Consulting, LLC dba Medicus Laboratory Information Systems | Attn: General Counsel | 1137 Laguna Springs Drive | | | Weston | Fl | 33326 | Confidentiality Agreement | 8/10/17 | 8/9/19 |
| DLA Piper | Attn: General Counsel | 1201 North Market Street | Suite 2100 | | Wilmington | DE | 19801-1147 | Service Contract | 8/6/18 | Duration not stated |
| FMLA Source | Attn: General Counsel | 455 North Cityfront Plaza Drive | | | Chicago | IL | 60611 | Service Contract | 6/1/15 | 2/28/19 |
| HIE Networks, LLC | Attn: Allen Byington | 3411 Capital Medical Blvd | | | Tallahassee | FL | 32308 | Confidentiality Agreement | 6/13/17 | 6/7/19 |
| Peak 10, Inc | Attn: General Counsel | 5301 NW 33rd Avenue | | | Fort Lauderdale | FL | 33309 | Confidentiality Agreement | 7/25/17 | 7/24/19 |
| ProVation Medical, Inc | c/o CSS CM Contract Management | Attn: General Counsel | 800 N Washington Avenue | #400 | Minneapolis | MN | 55401 | Confidentiality Agreement | 4/20/17 | Duration not stated |
| Reliance Standard Life Insurance Company | Attn: General Counsel | 2001 Market Street | Suite 1500 | | Philadelphia | PA | 19103-7090 | Service Contract | 5/16/16 | Duration not stated |
| Reliance Standard Life Insurance Company | Attn: General Counsel | 2001 Market Street | Suite 1500 | | Philadelphia | PA | 19103-7090 | Service Contract | 8/3/16 | Duration not stated |
| Sclmage, Inc | Attn: Robert Tinker, Director of Business Operations | 4916 El Camino Real | | | Los Altos | CA | 94022 | Confidentiality Agreement | 5/15/17 | 5/14/19 |
| Southeast Series of Lockton, LLC | Attn: Stan Shaffer | 3601 SW 160th Avenue | | | Fort Lauderdale | FL | 33027 | Confidentiality Agreement | 4/17/17 | 4/9/19 |
| Specialized Healthcare Partners | Attn: General Counsel | 220 Congress Park Drive | Suite 210 | | Delray Beach | FL | 33445 | Service Contract | 11/4/16 | Duration not stated |
| TFG-Florida, LP | Attn: General Counsel | 6995 Union Park Center | Suite 400 | | Cottonwood Heights | UT | 84047 | Guarantees | 7/13/16 | Duration not stated |
| The Guardian Life Insurance Company of America | Attn: General Counsel | 6255 Sterners Way | | | Bethlehem | PA | 18017 | Insurance Policies | 1/6/17 | Undetermined |
| ViaCloud Technologies, Inc | Attn: Tish Calvert, CEO | 4409 Chiming Lane | | | Viera | FL | 32955 | Confidentiality Agreement | 4/5/17 | 4/3/19 |
| Wells Fargo Bank, National Association | Attn: Specialty Finance Loan Portfolio Manager | 2450 Colorado Avenue | Suite 3000 West | | Santa Monica | CA | 90404 | Finance Agreement (Secured Lenders, Bonds, Mortgages, etc.) | 3/21/16 | 3/31/21 |
| Wells Fargo Insurance Services | Attn: Britt Pogue | 2502 N Rocky Point Drive | | | Tampa | FL | 33607 | Confidentiality Agreement | 4/12/17 | 4/11/19 |

**Fill in this information to identify the case:**

Debtor name __**Promise Healthcare Group, LLC**__

United States Bankruptcy Court for the: __DISTRICT OF DELAWARE__

Case number (if known) __**18-12491**__

☐ Check if this is an amended filing

Official Form 206H
# Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

*Column 1:* **Codebtor**

*Column 2:* **Creditor**

| | Name | Mailing Address | Name | Check all schedules that apply: |
|---|---|---|---|---|
| 2.1 | **See Schedule H Attachment** | | | ☐ D _____ <br> ☐ E/F _____ <br> ☐ G _____ |

In re Promise Healthcare Group, LLC
Case No. 18-12491 (CSS)
Schedule H: Codebtors

| Name of Codebtor | Address 1 | Address 2 | Address 3 | Address 4 | City | State | Zip | Country | Name of Creditor | Applicable Schedules (D, E/F, G) |
|---|---|---|---|---|---|---|---|---|---|---|
| HLP HEALTHCARE, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| HLP HEALTHCARE, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | VFI CORPORATE FINANCE | D |
| PH-ELA, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROFESSIONAL REHABILITATION HOSPITAL, LLC, DBA PROMISE HOSPITAL OF MISS LOU | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HEALTHCARE #2, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HEALTHCARE #2, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | VFI CORPORATE FINANCE | D |
| PROMISE HEALTHCARE HOLDINGS, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HEALTHCARE HOLDINGS, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | VFI CORPORATE FINANCE | D |
| PROMISE HEALTHCARE OF CALIFORNIA, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HEALTHCARE OF CALIFORNIA, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | VFI CORPORATE FINANCE | D |
| PROMISE HEALTHCARE, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HEALTHCARE, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | TETRA | D |
| PROMISE HOSPITAL OF ASCENSION, INC. DBA PROMISE HOSPITAL BATON ROUGE | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HOSPITAL OF BATON ROUGE, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HOSPITAL OF DADE, INC. DBA PROMISE HOSPITAL OF MIAMI | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HOSPITAL OF DADE, INC. DBA PROMISE HOSPITAL OF MIAMI | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | VFI CORPORATE FINANCE | D |
| PROMISE HOSPITAL OF DALLAS, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HOSPITAL OF EAST LOS ANGELES, L.P. DBA SUBURBAN MEDICAL CENTER | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HOSPITAL OF EAST LOS ANGELES, L.P. DBA SUBURBAN MEDICAL CENTER | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | VFI CORPORATE FINANCE | D |
| PROMISE HOSPITAL OF FLORIDA AT THE VILLAGES, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HOSPITAL OF FLORIDA AT THE VILLAGES, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | VFI CORPORATE FINANCE | D |
| PROMISE HOSPITAL OF LEE, INC. DBA PROMISE HOSPITAL OF FORT MYERS | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HOSPITAL OF LEE, INC. DBA PROMISE HOSPITAL OF FORT MYERS | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | VFI CORPORATE FINANCE | D |
| PROMISE HOSPITAL OF LOUISIANA, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HOSPITAL OF OVERLAND PARK, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HOSPITAL OF PHOENIX, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HOSPITAL OF SALT LAKE, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HOSPITAL OF SALT LAKE, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | VFI CORPORATE FINANCE | D |
| PROMISE HOSPITAL OF VICKSBURG | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE HOSPITAL OF WICHITA FALLS, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE SKILLED NURSING FACILITY OF OVERLAND PARK, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| PROMISE SKILLED NURSING FACILITY OF WICHITA FALLS, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| QUANTUM HEALTH, INC. | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| ST. ALEXIUS HOSPITAL CORPORATION #1 DBA ST. ALEXIUS HOSPITAL | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| SUCCESS HEALTHCARE #1, LLC DBA SILVER LAKE MEDICAL CENTER | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| SUCCESS HEALTHCARE 2, LLC | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| SUCCESS HEALTHCARE, LLC | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | WELLS FARGO BANK, NATIONAL ASSOCIATION, AGENT | D |
| SUCCESS HEALTHCARE, LLC | 999 YAMATO ROAD | THIRD FLOOR | | | BOCA RATON | FL | 33431 | | VFI CORPORATE FINANCE | D |