## TRANSITION SERVICES AGREEMENT

**THIS TRANSITION SERVICES AGREEMENT** (this "*Agreement*") is made and effective as of June 15, 2019 (the "*Effective Date*"), by and among Promise Healthcare, Inc., a Florida corporation ("*Sellers' Parent*"), the entities listed as Sellers on the signature pages hereto (each, a "*Seller*" and, collectively, "*Sellers*"), KPC Promise Healthcare, LLC, a California limited liability company ("*Buyers' Parent*"), and the entities listed as Buyers on the signature pages hereto (each, a "*Buyer*" and, collectively, "*Buyers*"). The term "**Party**" when used herein shall mean, as applicable, either Sellers' Parent and Sellers collectively, or Buyers' Parent and Buyers collectively.

Capitalized terms used but not otherwise defined herein shall have the same meanings herein as ascribed to such terms in the Asset Purchase Agreement, dated as of February 25, 2019, as amended, by and among Sellers' Parent, Sellers, Buyers' Parent (as assignee of Strategic Global Management, Inc., a California corporation), and Buyers (the "*Purchase Agreement*").

### WITNESSETH:

**WHEREAS**, pursuant to the Purchase Agreement, each applicable Buyer purchased from the applicable Seller the Purchased Assets related to the Facilities as specified in the Purchase Agreement (the "*Transaction*") as of the Effective Time (or with respect to any Deferred Assets or Deferred Contracts, will purchase such Purchased Assets as of the Transition Date for the applicable Facility);

**WHEREAS**, to assist in the transition of the ownership and operation of the Purchased Assets (including the Deferred Assets and Deferred Contracts) from each applicable Seller to each applicable Buyer pursuant to the Purchase Agreement and those certain Interim Management Services Agreements by and between Sellers, as operators, and Buyers, as managers, each Party has agreed to provide the other Party certain services in accordance with the terms and conditions of this Agreement;

**NOW, THEREFORE**, for and in consideration of the premises, and the agreements, covenants, representations and warranties hereinafter set forth, and other good and valuable consideration, the receipt and adequacy of all of which are forever acknowledged and confessed, the Parties hereby agree as follows:

1.    **Transition Services to Buyers**.   Sellers' Parent shall use commercially reasonable efforts to provide Buyers' Parent and Buyers with the services and support listed on Exhibit A attached hereto (the "*Seller Services*"), for the period(s) of time and in exchange for the payments set forth on Exhibit A.

2.    **Transition Services to Sellers**.   Buyers' Parent and Buyers shall use commercially reasonable efforts to provide Sellers' Parent and Sellers with the services and support listed on Exhibit B attached hereto (the "*Buyer Services*" and, together with the Seller Services, the "*Services*"), for the period(s) of time and in exchange for the payments set forth on Exhibit B.

3.    **Third Party Consent**.   Each Party shall use commercially reasonable efforts to obtain the consent of third parties that are required, if any, in order to permit such Party to provide the Seller Services and Buyer Services, as applicable, as contemplated hereunder.   The Parties shall use commercially reasonable efforts to cooperate with each other in obtaining any such consents or approvals.

4.    **Term and Termination.**

(a)    **Term.**  The term of this Agreement (the "*Term*") shall commence on the Effective Date and will continue through the respective term(s) set forth on Exhibit A or Exhibit B, as applicable, unless earlier terminated in accordance with the terms hereof.  Notwithstanding the foregoing, nothing in this Agreement shall obligate Sellers' Parent or any Seller to continue the Bankruptcy Case or include any of the Seller Services to be provided hereunder in any plan of liquidation or other actions to be approved by the Bankruptcy Court in connection with the winding down of the businesses and affairs of the Debtors provided that Sellers' Parent provides Buyers' Parent with thirty (30) days prior written notice of any such matter.

(b)    **Termination for Breach.**  Either Party may terminate this Agreement at any time with respect to the Seller Services or Buyer Services, as applicable, upon notice to the other Party in the event of a material breach of this Agreement by the other Party.  Such termination shall become effective upon delivery of notice unless the breach is cured within five (5) days thereafter.

(c)    **Termination Without Cause.**  Any or all of the Seller Services or the Buyer Services with respect to one or more Facilities may be terminated upon the mutual written consent of Sellers' Parent and Buyers' Parent.  In the event of termination of any such Seller Services, Sellers' Parent shall remit to Buyers' Parent a prorated portion of the fees for the terminated Seller Services with respect to the remainder of the applicable month.  In the event of termination of any such Buyer Services, Sellers' Parent shall not be obligated to pay Buyers' Parent any fees for the terminated Buyer Services for the period of time following the effective date of such termination.

5.    **Books and Records**.

(a)    **Availability to Secretary and Others.**  If required by applicable law, the Parties agree that until the expiration of five (5) years after the furnishing of Services under this Agreement, each Party will make available to the Secretary of the United States Department of Health and Human Services and the United States Comptroller General, and their duly authorized representatives, this Agreement and all books, documents and records necessary to certify the nature and extent of the costs of the goods and services provided under this Agreement.  No attorney-client, accountant-client or other legal privilege shall be deemed to have been waived by Sellers' Parent, any Seller, Buyers' Parent or any Buyer by virtue of this provision.

(b)    **Right to Inspect.**  Each Party shall have the right, at its expense, during normal business hours and with reasonable advance notice, to review and photocopy the other Party's books and records that pertain directly to the accounts of such Party, the fees payable to such Party under this Agreement or the Services provided by such Party hereunder.

6.    **Force Majeure**.  Neither Party shall be responsible for performance of any of its obligations to the extent that it is delayed or hindered by warfare, riot, strike, lockout, boycott, act of God, natural calamity or any other cause beyond its reasonable control which cannot be overcome by reasonable diligence.

7.    **Submission to Jurisdiction; Consent to Service of Process**.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of California without regard to any conflicts of law principles that would require the application of any other law.  Each Party agrees to personal jurisdiction in any action brought in the Bankruptcy Court.  Any suit, action or proceeding arising out of or relating to this Agreement shall only be instituted in the Bankruptcy Court.  Each Party

waives any objection which it may have now or hereafter to the laying of the venue of such action or proceeding and irrevocably submits to the jurisdiction of the Bankruptcy Court in any such suit, action or proceeding.

**8.** **Compliance with Laws.** Each Party shall perform its Services, duties and obligations hereunder in material compliance with all applicable federal, state and local laws, ordinances and regulations. The Parties acknowledge that in performing their respective obligations under this Agreement, Buyers' Parent and Buyers will be business associates of Sellers' Parent and Sellers for the Buyer Services, and Sellers' Parent will be a business associate of Buyers' Parent and Buyers for the Seller Services, as that term is defined in 45 CFR § 160.130. Accordingly, the Parties adopt and incorporate by reference the provisions of the Business Associate Addenda attached to this Agreement as Exhibit C and Exhibit D.

**9.** **Assignment.** No assignment of this Agreement or of any rights or obligations hereunder may be made by either Party (by operation of law or otherwise) without the prior written consent of the other Party hereto and any attempted assignment without the required consent shall be void.

**10.** **Notices.** Any notice, demand or communication required, permitted or desired to be given hereunder shall be in accordance with the notice provisions set forth in the Purchase Agreement.

**11.** **Severability.** In the event any provision of this Agreement is held to be invalid, illegal or unenforceable for any reason and in any respect, such invalidity, illegality or unenforceability shall in no event affect, prejudice or disturb the validity of the remainder of this Agreement, which shall be and remain in full force and effect, enforceable in accordance with its terms.

**12.** **Independent Contractor.** Each Party shall perform its services, duties and obligations hereunder for the other Party in the capacity of an independent contractor and not as an employee of such Party. Nothing contained in this Agreement shall be construed to create a partnership or joint venture between the Parties hereto. Personnel of Sellers' Parent, whether or not located on the premises of Buyers' Parent or Buyers, are not employees or agents of Buyers' Parent or any Buyer and shall not hold themselves out as such, and Sellers' Parent assumes full responsibility for their acts and for compliance with any applicable employment and tax laws with respect to such employees. Likewise, personnel of Buyers' Parent or Buyers hereunder, whether or not located on the premises of Sellers' Parent or Sellers, are not employees or agents of Sellers' Parent or any Seller and shall not hold themselves out as such, and Buyers' Parent and Buyers assume full responsibility for their acts and for compliance with any applicable employment and tax laws with respect to such employees.

**13.** **Waiver.** Failure by either Party at any time to exercise any right or remedy granted herein or established by law shall not be deemed to operate as a waiver of its right to exercise such right or remedy at any other future time.

**14.** **Entire Agreement/Amendment.** This Agreement supersedes all prior agreements, whether written or oral, between the Parties with respect to its subject matter and constitutes a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter. This Agreement may not be amended, supplemented, or otherwise modified except by a written agreement executed by the Party to be charged with the amendment.

**15.** **Counterparts.** This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

4829-0693-8260.22

BN 36537697v6
BN 36739322v1

**16.**    **Charges for Services**.  The Parties shall pay each other the fees for each Seller Service and Buyer Service set forth in the Exhibits.  Additionally, any taxes (other than income taxes) assessed on the provision of the Services shall be paid by the Service recipient.  Sellers' Parent shall invoice Buyers' Parent monthly in advance for the amounts owed in connection with the Seller Services to be provided hereunder.  Amounts due for Buyer Services shall be billed by Buyers' Parent to Sellers' Parent on the last day of each month.  Invoices provided by either Buyers' Parent or Sellers' Parent are due upon receipt and will be paid without any setoff or recoupment for any matters except in the event of any undisputed overpayment.  Except with respect to any undisputed overpayment, all payments shall be non-refundable.

**17.**    **Extension of Term**.  Simultaneously with the execution and delivery of this Agreement, Sellers' Parent and Buyers' Parent are concurrently entering into a Post-Closing Letter of Intent (the "***LOI***").  If the transactions contemplated by the LOI do not close, for any reason, on or before August 1, 2019, the term of this Agreement shall be extended for a period of time mutually agreed upon by the Sellers' Parent and the Buyers' Parent.

[Signatures on Following Pages]

IN WITNESS WHEREOF, the Parties have each caused this Agreement to be executed by their respective officers as of the date above written.

**SELLERS' PARENT:**

**PROMISE HEALTHCARE, INC. a Florida corporation**

By: _____
Name: ____Andrew Hinkelman_____
Title: ____Chief Restructuring Officer_____

**SELLERS:**

**PROMISE HOSPITAL OF PHOENIX, INC., a Florida corporation**

By: _____
Name: ____Andrew Hinkelman_____
Title: ____Chief Restructuring Officer_____

**PROMISE HOSPITAL OF OVERLAND PARK, INC., a Kansas corporation**

By: _____
Name: ____Andrew Hinkelman_____
Title: ____Chief Restructuring Officer_____

**PROMISE SKILLED NURSING FACILITY OF OVERLAND PARK, INC., a Kansas corporation**

By: _____
Name: ____Andrew Hinkelman_____
Title: ____Chief Restructuring Officer_____

**PROMISE HOSPITAL OF ASCENSION, INC., a Florida corporation, dba Promise Hospital Baton Rouge**

By: _____
Name: ____Andrew Hinkelman_____
Title: ____Chief Restructuring Officer_____

**PROMISE HOSPITAL OF BATON ROUGE, INC., a Louisiana corporation**

By:_____
Name:\_\_\_Andrew Hinkelman_____
Title:\_\_Chief Restructuring Officer_____

**PROMISE HOSPITAL OF VICKSBURG INC., a Louisiana corporation**

By:_____
Name:\_\_\_Andrew Hinkelman_____
Title:\_\_\_Chief Restructuring Officer_____

**PROMISE HOSPITAL OF WICHITA FALLS, INC., a Texas corporation**

By:_____
Name:\_\_\_Andrew Hinkelman_____
Title:\_\_\_Chief Restructuring Officer_____

**PROMISE SKILLED NURSING FACILITY OF WICHITA FALLS, INC., a Texas corporation**

By:_____
Name:\_\_\_Andrew Hinkelman_____
Title:\_\_Chief Restructuring Officer_____

**PROMISE HOSPITAL OF SALT LAKE, INC., a Louisiana corporation**

By:_____
Name:\_\_\_Andrew Hinkelman_____
Title:\_\_\_Chief Restructuring Officer_____

**PROMISE HOSPITAL OF DALLAS, INC., a Texas corporation**

By:_____
Name:\_\_\_Andrew Hinkelman_____
Title:\_\_\_Chief Restructuring Officer_____

**BUYERS' PARENT:**

**KPC PROMISE HEALTHCARE, LLC, a California limited liability company**

By: _____

Name:   Kali P. Chaudhuri

Title:    Manager

**BUYERS:**

**KPC PROMISE HOSPITAL OF PHOENIX, LLC, a California limited liability company**

By: _____

Name:   Kali P. Chaudhuri

Title:    Manager

**KPC PROMISE HOSPITAL OF OVERLAND PARK, LLC, a California limited liability company**

By: _____

Name:   Kali P. Chaudhuri

Title:    Manager

**KPC PROMISE SKILLED NURSING FACILITY OF OVERLAND PARK, LLC, a California limited liability company**

By: _____

Name:   Kali P. Chaudhuri

Title:    Manager

**KPC PROMISE HOSPITAL OF BATON ROUGE, LLC, a California limited liability company**

By: _____

Name:   Kali P. Chaudhuri

Title:    Manager

**KPC PROMISE HOSPITAL OF VICKSBURG, LLC,
a California limited liability company**

By: _____

Name: _Kali P. Chaudhuri_____

Title: _Manager_____

**KPC PROMISE HOSPITAL OF WICHITA FALLS,
LLC, a California limited liability company**

By: _____

Name: _Kali P. Chaudhuri_____

Title: _Manager_____

**KPC PROMISE SKILLED NURSING FACILITY
OF WICHITA FALLS, LLC, a California limited
liability company**

By: _____

Name: _Kali P. Chaudhuri_____

Title: _Manager_____

**KPC PROMISE HOSPITAL OF SALT LAKE, LLC,
a California limited liability company**

By: _____

Name: _Kali P. Chaudhuri_____

Title: _Manager_____

**KPC PROMISE HOSPITAL OF DALLAS, LLC, a
California limited liability company**

By: _____

Name: _Kali P. Chaudhuri_____

Title: _Manager_____

## Exhibit A

### Seller Services

| Transition Category | Transition Service | Duration | Daily Cost |
|---|---|---|---|
| IT Infrastructure and Support Services | IT infrastructure and support services specified in Exhibit A-1 following the date hereof through July 31, 2019 in exchange for the payment set forth on Exhibit A-1. The IT infrastructure and support services are limited to the provision of access to the information technology applications described in Exhibit A-1 under the heading "IT Infrastructure and Support Services". | Through July 31, 2019 | Purchased Services: $2,206<br><br>Labor: $586 in June and $465 in July<br><br>Total: $2,792 in June and $2,671 in July |
| Billing and Collections | Billing and collections services following the date hereof through July 31, 2019 in exchange for the payment set forth on Exhibit A-1. The billing and collections services are limited to applying the proper codes, preparing and submitting claims to the applicable payor, filing appeals and access to the information technology applications described under the heading "Billing and Collections" in Exhibit A-1. The billing and collection services do not include any obligation to file suit or take actions other than as described in the preceding sentence. | Through July 31, 2019 | Purchased Services: $1,711<br><br>Labor: $414 in June and $646 in July<br><br>Total: $2,125 in June and $2,357 in July |
| Clinical/Other Operations | Clinical/Other Operations services following the date hereof through July 31, 2019 in exchange for the payment set forth in Exhibit A-1. The Clinical/Other Operations services only include access to the information systems listed on Exhibit A-1 and admissions screening, physician credentialing pharmacy related services and supply chain services. | Through July 31, 2019 | Purchased Services: $4,518<br><br>Labor: $178 in June and $99 in July<br><br>Total: $4,696 in June and $4,617 in July |
| Finance & Accounting | Finance and accounting services following the date hereof through July 31, 2019 in exchange for the payment set forth on Exhibit A-1. The finance and accounting services are limited to routine and recurring preparation of internal financial statements, management of accounts payable, cash disbursements, collecting and depositing funds generated from the operation of each Facility in the applicable account. | Through July 31, 2019 | Purchased Services: $114<br><br>Labor: $539 in June and $465 in July<br><br>Total: $653 in June and $579 in July |

| Transition Category | Transition Service | Duration | Daily Cost |
|---|---|---|---|
| HR, Benefits and Payroll | Human resources services and administrative services following the date hereof through July 31, 2019 in exchange for the payment set forth on Exhibit A-1. The human resources services and administrative services are limited to professional recruitment, performance appraisal systems, and personnel education, together with administration of hospital-based physician contracts, physician recruitment and physician employment matters and patient confidentiality issues. The services include access to the information technology applications described in Exhibit A-1 under the heading "HR and Admin". | Through July 31, 2019 | Purchased Services: $207<br><br>Labor: $307<br><br>Total: $514 |

4829-0693-8260.22

BN 36537697v6
BN 36739322v1

## EXHIBIT B

### Buyer Services

Buyers shall make the following persons (or, in accordance with this Agreement and to the extent feasible, another employee that can perform equivalent services) available to (i) assist Sellers' Parent in closing the books and records of the Sellers for the months of May and June 2019, (ii) provide accounts payable support in the form of coding and entering invoices mailed to the Seller Facilities that remain obligations of any Seller or Sellers' Parent, and (iii) provide coding charges for patients discharged prior to the Effective Time, in each case upon reasonably advanced notice to Buyers' applicable Service Coordinator for up to a total of thirty (30) hours per month, per person set forth below in exchange for the applicable hourly rate specified below. Notwithstanding the foregoing, the first twenty (20) hours of such Services (on an aggregate basis) shall be provided at no cost and fifteen (15) hours of such Services (on an aggregate basis) shall be provided at no cost for the thirty (30) days thereafter. The term for these Buyer Services shall commence as of the Effective Date and expire on July 31, 2019.

| Facility | Facility Level Employee | Current Role Provided for Corp | Reverse TSA Need | Hourly Rate |
|---|---|---|---|---|
| Dallas | Araceli Rosales | AP Coordinator | Invoice entry | $ 20.60 |
| Overland Park (Both Facilities – Hosp & SNF) | Karin Lintz | AP Coordinator - invoice entry | Invoice entry | $ 23.00 |
| Overland Park (Both Facilities – Hosp & SNF) | Betty Priestley | AP/Accruals Coordinator | Month-end close/Invoice entry | $ 31.79 |
| Overland Park | Betty Adam | AP/Accruals Coordinator | Month-end close/Invoice entry | $ 22.96 |
| Overland Park | Wendy Sayre | AP/Accruals Coordinator | Month-end close/Invoice entry | $ 27.91 |
| Wichita Falls (Both Facilities – Hosp & SNF) | Amanda Scott | Accruals Coordinator | Month-end close/Invoice entry | $ 20.00 |
| Dallas | Rosa Villanueva | AP/Accruals Coordinator | Month-end close/Invoice entry | $ 22.01 |
| Dallas | Alan Spidle | Inventory | Month-end close | $ 28.91 |
| Dallas | DeeLynn Phillips | Inventory | Month-end close | $ 19.03 |
| Ascension | Sunita Godfrey | AP, Revenue, Invoice Posting | Month-end close/Invoice entry | $ 29.25 |
| Vicksburg | Nichole Litte | AP, Revenue, Invoice Posting | Month-end close/Invoice entry | $ 27.63 |
| Phoenix | Amanda Watson | AP, Revenue, Invoice Posting | Month-end close/Invoice entry | $ 39.61 |
| Salt Lake | Cora Morgan | AP, Revenue, Invoice Posting | Month-end close/Invoice entry | $ 45.47 |
| Baton Rouge | Julie Millet | Billing Coder | Coding for final billing post-close | $ 39.93 |

| Facility | Facility Level Employee | Current Role Provided for Corp | Reverse TSA Need | Hourly Rate |
|---|---|---|---|---|
| Salt Lake City | Kim Clark | Billing Coder | Coding for final billing post-close | $ 43.53 |
| Phoenix | Natasha Chapman | Billing Coder | Coding for final billing post-close | $ 29.67 |
| Vicksburg | Barbara Whiting | Billing Coder | Coding for final billing post-close | TBD |
| Wichita Falls | Virginia Solorio | Billing Coder | Coding for final billing post-close | $ 18.32 |
| Overland Park | Deborah Martin (part-time) | Billing Coder | Coding for final billing post-close | $ 39.00 |
| Dallas | Martha Jones | Billing Coder | Coding for final billing post-close | $ 39.00 |

4829-0693-8260.22

BN 36537697v6
BN 36739322v1

## **<u>EXHIBIT C</u>**

**Business Associate Agreement**

**(Buyers' Parent and Buyers as Business Associates)**

See attached.

[Exhibit C]

4829-0693-8260.22

BN 36537697v6
BN 36739322v1

## BUSINESS ASSOCIATE ADDENDUM

### (Buyers' Parent and Buyers as Business Associates)

### ARTICLE I
### SCOPE AND PURPOSE

Sellers' Parent and Sellers (each a "**Covered Entity**," and collectively, the "**Covered Entities**"), and Buyers' Parent and Buyers (each a "**Business Associate**," and collectively, the "**Business Associates**"), have entered into the Transition Services Agreement dated on or about June 15, 2019 (the "**TSA**") to which this Business Associate Addendum (this "**Addendum**") is attached. Pursuant to the TSA, in connection with providing Buyer Services each Business Associate may create, receive, maintain, or transmit Protected Health Information from or on behalf of a Covered Entity, which information is subject to protection under the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**"), the Health Information Technology for Economic and Clinical Health Act (the "**HITECH Act**"), and related regulations (the "**HIPAA Regulations**"). The terms and provisions of this Addendum (the "**BA Provisions**") shall control with respect to such Protected Health Information and shall supersede any conflicting or inconsistent terms and provisions of the TSA, including all exhibits or other attachments thereto and all documents incorporated therein by reference, to the extent of such conflict or inconsistency. The Covered Entities and Business Associates are sometimes referred to collectively as the "**Parties.**"

### ARTICLE II
### DEFINITIONS

**2.1      General.** Terms used, but not otherwise defined, in these BA Provisions shall have the same meaning given to those terms by the TSA to which this Addendum is attached and by HIPAA, the HITECH Act, and HIPAA Regulations as in effect or as amended from time to time. The obligations and commitments, and rights, applicable hereunder to Business Associates will apply to each Business Associate if and to the extent such Business Associate creates, receives, maintains, or transmits Protected Health Information received from or on behalf of one or more Covered Entities and then only with respect to the Protected Health Information so created, received, maintained, or transmitted by such Business Associate. The obligations and commitments, and rights, applicable hereunder to Covered Entities will apply to each Covered Entity if and to the extent any Business Associate creates, receives, maintains, or transmits Protected Health Information received from or on behalf of such Covered Entity and then only with respect to the Protected Health Information so created, received, maintained, or transmitted by such Business Associate.

**2.2      Specific.**

**(a)      "Electronic Protected Health Information"** shall have the same meaning as the term "electronic protected health information" in 45 CFR § 160.103, limited to the information that Business Associate creates, receives, maintains, or transmits from or on behalf of a Covered Entity.

**(b)      "Individual"** shall have the same meaning as the term "individual" in 45 CFR § 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 CFR § 164.502(g).

**(c)      "Privacy Rule"** shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 164, Subpart E.

C-1

(d)    **"Protected Health Information"** or **"PHI"** shall have the same meaning as the term "protected health information" in 45 CFR § 160.103, limited to the information created, maintained, received or transmitted by a Business Associate from or on behalf of a Covered Entity.

(e)    **"Secretary"** shall mean the Secretary of the Department of Health and Human Services or his designee.

(f)    **"Security Rule"** shall mean the Security Standards at 45 CFR Part 160 and Subparts A and C of Part 164.

(g)    **"Subcontractor"** shall mean any third party with which any Business Associate contracts to provide any Buyer Services.

(h)    **"State Law"** shall mean the statutes and regulations of the state of California relating to the privacy and security of Protected Health Information, personal information, or similar information.

## ARTICLE III
## OBLIGATIONS AND ACTIVITIES OF BUSINESS ASSOCIATE

**3.1    Use and Disclosure.**    Each Business Associate agrees not to use or disclose any Protected Health Information other than as permitted or required by these BA Provisions or as Required By Law. Each Business Associate shall comply with these BA Provisions and all present and future provisions of HIPAA, the HITECH Act, the HIPAA Regulations and State Law that relate to the privacy and security of Protected Health Information and that are applicable to such Business Associate. Without limiting the generality of the foregoing, each Business Associate shall not directly or indirectly receive remuneration in exchange for disclosing PHI received from or on behalf of a Covered Entity except as permitted by HITECH Act § 13405, the HIPAA Regulations and State Law, nor shall a Business Associate use PHI for marketing purposes, attempt to re-identify PHI or use or disclose PHI in any manner that would violate State Law, HIPAA, the HITECH Act, or the HIPAA Regulations, regardless of whether such action is on behalf of or permitted by a Covered Entity.

**3.2    Appropriate Safeguards.** Each Business Associate agrees to use appropriate safeguards to prevent the use or disclosure of the Protected Health Information other than as provided for by these BA Provisions. Without limiting the generality of the foregoing sentence, each Business Associate will:

(a)    Implement Administrative, Physical, and Technical Safeguards that reasonably and appropriately protect the Confidentiality, Integrity and Availability of Electronic Protected Health Information and shall comply with the Security Rule with respect to Electronic Protected Health Information;

(b)    Promptly report to each applicable Covered Entity any Security Incident of which the Business Associate becomes aware;

(c)    Without unreasonable delay, but in no even later than five business days following Discovery, notify the applicable Covered Entity of a Breach of Unsecured Protected Health Information in accordance with 45 C.F.R. § 164.410. A Breach is considered "discovered" as of the first day on which the Breach is known, or reasonably should have been known, to each Business Associate or any employee, officer or agent of the Business Associate, other than the individual committing the Breach. In addition, each Business Associate shall comply with applicable State Law regarding notification of data breaches.

**3.3** **Reporting.** Each Business Associate agrees to report to each applicable Covered Entity any use or disclosure of Protected Health Information not permitted by these BA Provisions of which such Business Associate becomes aware without unreasonable delay, but in no event later than five business days following such awareness.

**3.4** **Mitigation.** Each Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to such Business Associate of a use or disclosure of Protected Health Information by such Business Associate or its employees, officers, agents, or Subcontractors in violation of the requirements of these BA Provisions (including, without limitation, any Security Incident or Breach of Unsecured Protected Health Information). Each Business Associate agrees to reasonably cooperate and coordinate with each applicable Covered Entity in the investigation of any violation of the requirements of these BA Provisions and/or any Security Incident or Breach. Each Business Associate shall also reasonably cooperate and coordinate with each applicable Covered Entity in the preparation of any reports or notices to the Individual, a regulatory body or any third party required to be made under HIPAA, HIPAA Regulations, the HITECH Act, or any other federal or state laws, rules or regulations, provided that any such reports or notices shall be subject to the prior written approval of each applicable Covered Entity. This Section 3.4 shall survive the termination of these BA Provisions.

**3.5** **Subcontractors.** Each Business Associate shall ensure that any Subcontractor (including, without limitation, a Subcontractor that is an agent under applicable law) that creates, receives, maintains, or transmits Protected Health Information on behalf of the Business Associate enters into a written agreement meeting the requirements of 45 C.F.R. §§ 164.504(e) and 164.314(a)(2) that obligates the Subcontractor to comply with the same restrictions and conditions that apply through these BA Provisions to such Business Associate with respect to such Protected Health Information.

**3.6** **Access to Designated Record Sets.** To the extent that a Business Associate possesses or maintains Protected Health Information in a Designated Record Set, such Business Associate agrees to provide access, at the request of the applicable Covered Entity, and in the time and manner designated by each such Covered Entity, to Protected Health Information in a Designated Record Set, to such Covered Entity or, as directed by such Covered Entity, to an Individual in order to meet the requirements under HIPAA Regulations. If an Individual makes a request for access to Protected Health Information directly to a Business Associate, such Business Associate shall notify the applicable Covered Entity of the request within three (3) business days of such request and will cooperate with such Covered Entity and allow such Covered Entity to send the response to the Individual.

**3.7** **Amendments to Designated Record Sets.** To the extent that a Business Associate possesses or maintains Protected Health Information in a Designated Record Set, such Business Associate agrees to make any amendment(s) to Protected Health Information in a Designated Record Set that the applicable Covered Entity directs or agrees to pursuant to HIPAA Regulations at the request of such Covered Entity or an Individual, and in the time and manner designated by such Covered Entity. If an Individual makes a request for an amendment to Protected Health Information directly to a Business Associate, such Business Associate shall notify the applicable Covered Entity of the request within three business (3) days of such request and will cooperate with such Covered Entity and allow such Covered Entity to send the response to the Individual.

**3.8** **Access to Books and Records.** Each Business Associate agrees to make its internal practices, books, and records, including policies and procedures and Protected Health Information, relating to the use and disclosure of Protected Health Information which such Business Associate received from, or created or received by such Business Associate on behalf of, the applicable Covered Entity available to the Secretary, in a time and manner designated by the Secretary, for purposes of the Secretary determining such Covered Entity's compliance with the Privacy Rule.

4829-0693-8260.22

C-3

**3.9    Accountings.**  Each Business Associate agrees to document such disclosures of Protected Health Information and information related to such disclosures as would be required for the applicable Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with HIPAA, HIPAA Regulations and the HITECH Act.

**3.10    Requests for Accountings.**  Each Business Associate agrees to provide to the applicable Covered Entity or Individual, in the time and manner designated by such Covered Entity, information collected in accordance with Section 3.9 of these BA Provisions, to permit such Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with HIPAA, HIPAA Regulations and the HITECH Act.  If an Individual makes a request for an accounting directly to a Business Associate, such Business Associate shall notify the applicable Covered Entity of the request within three (3) business days of such request and will cooperate with such Covered Entity and allow such Covered Entity to send the response to the Individual.

**3.11    Minimum Necessary Standard.**  To the extent required by the "minimum necessary" requirements of HIPAA, each Business Associate shall only request, use and disclose the minimum amount of PHI necessary to accomplish the purpose of the request, use or disclosure.

**3.12    Covered Entity's Obligations.**  To the extent that a Business Associate is to carry out one or more of a Covered Entity's obligations under the Privacy Rule, such Business Associate shall comply with the requirements of the Privacy Rule that apply to the Covered Entity in the performance of such obligations.

**ARTICLE IV**
**PERMITTED USES AND DISCLOSURES**
**BY BUSINESS ASSOCIATES**

**4.1    TSA.**  Except as otherwise limited in these BA Provisions, each Business Associate may use or disclose Protected Health Information to perform functions, activities, or services for, or on behalf of, a Covered Entity as specified in the TSA, provided that such use or disclosure would not violate HIPAA, HIPAA Regulations, the HITECH Act or State Law if done by the applicable Covered Entity or the minimum necessary policies and procedures of such Covered Entity.

**4.2    Use for Administration of Business Associates.**  Except as otherwise limited in these BA Provisions, each Business Associate may use Protected Health Information for the proper management and administration of the Business Associate or to carry out the legal responsibilities of the Business Associate.

**4.3    Disclosure for Administration of Business Associates.**  Except as otherwise limited in these BA Provisions, each Business Associate may disclose Protected Health Information for the proper management and administration of the Business Associate, provided that (i) disclosures are Required by Law, or (ii) the Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as Required by Law or for the purpose for which it was disclosed to the person, and the person notifies the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.

## ARTICLE V
## OBLIGATIONS OF COVERED ENTITY

**5.1**    **Notice of Privacy Practices.**  Each Covered Entity shall provide the applicable Business Associate with a copy of its Notice of Privacy Practices, as well as any amendments to such notice that such Covered Entity may adopt from time to time.

**5.2**    **Changes in Authorization or Permission.**    Each Covered Entity shall provide the applicable Business Associate with any changes in or revocation of any permission by an Individual to disclose the Individual's PHI, if such changes affect the Business Associate's permitted or required uses and or disclosures.

**5.3**    **Permissible Requests.**  No Covered Entity shall request a Business Associate to use or disclose PHI in any manner that would not be permissible under HIPAA if done directly by such Covered Entity (except as provided in 5.2 and 5.3 of the BA Provisions).

**5.4**    **Minimum Necessary.**  When a Covered Entity discloses PHI to a Business Associate, such Covered Entity shall provide the minimum amount of PHI necessary for the accomplishment of the Business Associate's purpose.

**5.5**    **Permissions; Restrictions.**  Each Covered Entity warrants that it has obtained and will obtain any consents, authorizations and/or other legal permissions required under HIPAA and other applicable law for the disclosure of PHI to a Business Associate.  Each Covered Entity shall notify each applicable Business Associate of any changes in, or revocation of, the permission by an Individual to use or disclose his or her PHI, to the extent that such changes may affect such Business Associate's use or disclosure of PHI.

## ARTICLE VI
## TERM AND TERMINATION

**6.1**    **Term.**  These BA Provisions shall be effective as of the Effective Date of the TSA and shall terminate upon the earlier of (i) the expiration or termination of the TSA or (ii) termination in accordance with Section 6.2 of these BA Provisions.

**6.2**    **Termination for Cause.**  Upon a Covered Entity's knowledge of a material breach by a Business Associate of the terms of these BA Provisions, such Covered Entity shall either:

**(a)**    Provide an opportunity for the applicable Business Associate to cure the breach or end the violation.  If such Business Associate does not cure the breach or end the violation within the time specified by the Covered Entity, the Covered Entity shall terminate: (i) these BA Provisions as applicable to such Business Associate; (ii) all of the provisions of the TSA that involve the creation, receipt, maintenance, or transmission of Protected Health Information by such Business Associate; and (iii) such other provisions, if any, of the TSA as such Covered Entity designates in its sole discretion; or

**(b)**    If a Business Associate has breached a material term of these BA Provisions and cure is not possible, immediately terminate: (i) these BA Provisions as applicable to such Business Associate; (ii) all of the provisions of the TSA that involve the creation, receipt, maintenance, or transmission of Protected Health Information by such Business Associate; and (iii) such other provisions, if any, of the TSA as such Covered Entity designates in its sole discretion.

**6.3    Effect of Termination.**

(a)    Except as provided in this ARTICLE VI, upon termination of these BA Provisions, for any reason, each Business Associate shall return or destroy all Protected Health Information received by such Business Associate from a Covered Entity, or created or received by the Business Associate on behalf of the Covered Entity. This provision shall apply to Protected Health Information that is in the possession of Subcontractors or agents of each Business Associate. Each Business Associate shall retain no copies of the Protected Health Information.

(b)    In the event that a Business Associate determines that returning or destroying the Protected Health Information is infeasible, such Business Associate shall provide to the applicable Covered Entity notification of the conditions that make return or destruction infeasible. Upon mutual agreement of the Parties that return or destruction of Protected Health Information is infeasible, each applicable Business Associate shall extend the protections of these BA Provisions to such Protected Health Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction infeasible, for so long as such Business Associate maintains such Protected Health Information. This Section (b) shall survive the termination of these BA Provisions.

## ARTICLE VII
## MISCELLANEOUS

**7.1    Regulatory References.** A reference in these BA Provisions to a section in HIPAA, HIPAA Regulations, the HITECH Act or State Law means the section as in effect or as amended or modified from time to time, including any corresponding provisions of subsequent superseding laws or regulations.

**7.2    Amendment.** The Parties agree to take such action as is necessary to amend the TSA (and this Addendum thereto) from time to time as is necessary for each Covered Entity to comply with the requirements of HIPAA, the HIPAA Regulations and the HITECH Act.

**7.3    Interpretation.** Any ambiguity in these BA Provisions shall be resolved to permit each Covered Entity and Business Associate to comply with HIPAA, the HITECH Act and State Law. If there is any conflict between the HIPAA Regulations and State Law, the most stringent requirements shall control the Parties' obligations under the TSA and these BA Provisions.

**7.4    Miscellaneous.** In the event of a conflict or inconsistency between these BA Provisions and the terms of the TSA, these BA Provisions shall prevail to the extent of such conflict or inconsistency. These BA Provisions supersede and replaces any former business associate agreement or addendum entered into by the Parties.

**7.5    No Third Party Beneficiaries.** The Parties have not created and do not intend to create by this Agreement any third party rights, including, but not limited to, third party rights for Covered Entities' patients.

## EXHIBIT D

**Business Associate Agreement**

**(Sellers' Parent as Business Associate)**

See attached.

## BUSINESS ASSOCIATE ADDENDUM

### (Sellers' Parent as Business Associate)

### ARTICLE I
### SCOPE AND PURPOSE

Buyers' Parent and Buyers (each a "**Covered Entity**," and collectively, the "**Covered Entities**"), and Sellers' Parent ("**Business Associate**"), have entered into the Transition Services Agreement dated on or about June 15, 2019 (the "**TSA**") to which this Business Associate Addendum (this "**Addendum**") is attached.  Pursuant to the TSA, in connection with providing Seller Services, Business Associate may create, receive, maintain, or transmit Protected Health Information from or on behalf of a Covered Entity, which information is subject to protection under the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**"), the Health Information Technology for Economic and Clinical Health Act (the "**HITECH Act**"), and related regulations (the "**HIPAA Regulations**").  The terms and provisions of this Addendum (the "**BA Provisions**") shall control with respect to such Protected Health Information and shall supersede any conflicting or inconsistent terms and provisions of the TSA, including all exhibits or other attachments thereto and all documents incorporated therein by reference, to the extent of such conflict or inconsistency.  The Covered Entities and Business Associate are sometimes referred to collectively as the "**Parties**."

### ARTICLE II
### DEFINITIONS

**2.1**    **General.**  Terms used, but not otherwise defined, in these BA Provisions shall have the same meaning given to those terms by the TSA to which this Addendum is attached and by HIPAA, the HITECH Act, and HIPAA Regulations as in effect or as amended from time to time. The obligations and commitments, and rights, applicable hereunder to Business Associate will apply to Business Associate if and to the extent Business Associate creates, receives, maintains, or transmits Protected Health Information received from or on behalf of one or more Covered Entities and then only with respect to the Protected Health Information so created, received, maintained, or transmitted by Business Associate.  The obligations and commitments, and rights, applicable hereunder to Covered Entities will apply to each Covered Entity if and to the extent Business Associate creates, receives, maintains, or transmits Protected Health Information received from or on behalf of such Covered Entity and then only with respect to the Protected Health Information so created, received, maintained, or transmitted by Business Associate.

**2.2**    **Specific.**

(a)    "**Electronic Protected Health Information**" shall have the same meaning as the term "electronic protected health information" in 45 CFR § 160.103, limited to the information that Business Associate creates, receives, maintains, or transmits from or on behalf of a Covered Entity.

(b)    "**Individual**" shall have the same meaning as the term "individual" in 45 CFR § 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 CFR § 164.502(g).

(c)    "**Privacy Rule**" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 164, Subpart E.

D-1

(d)     **"Protected Health Information"** or **"PHI"** shall have the same meaning as the term "protected health information" in 45 CFR § 160.103, limited to the information created, maintained, received or transmitted by Business Associate from or on behalf of a Covered Entity.

(e)     **"Secretary"** shall mean the Secretary of the Department of Health and Human Services or his designee.

(f)     **"Security Rule"** shall mean the Security Standards at 45 CFR Part 160 and Subparts A and C of Part 164.

(g)     **"Subcontractor"** shall mean any third party with which Business Associate contracts to provide any Seller Services.

(h)     **"State Law"** shall mean the statutes and regulations of the state of California relating to the privacy and security of Protected Health Information, personal information, or similar information.

## ARTICLE III
## OBLIGATIONS AND ACTIVITIES OF BUSINESS ASSOCIATE

**3.1     Use and Disclosure.**  Business Associate agrees not to use or disclose any Protected Health Information other than as permitted or required by these BA Provisions or as Required By Law. Business Associate shall comply with these BA Provisions and all present and future provisions of HIPAA, the HITECH Act, the HIPAA Regulations and State Law that relate to the privacy and security of Protected Health Information and that are applicable to Business Associate.  Without limiting the generality of the foregoing, Business Associate shall not directly or indirectly receive remuneration in exchange for disclosing PHI received from or on behalf of a Covered Entity except as permitted by HITECH Act § 13405, the HIPAA Regulations and State Law, nor shall Business Associate use PHI for marketing purposes, attempt to re-identify PHI or use or disclose PHI in any manner that would violate State Law, HIPAA, the HITECH Act, or the HIPAA Regulations, regardless of whether such action is on behalf of or permitted by a Covered Entity.

**3.2     Appropriate Safeguards.**  Business Associate agrees to use appropriate safeguards to prevent the use or disclosure of the Protected Health Information other than as provided for by these BA Provisions.  Without limiting the generality of the foregoing sentence, Business Associate will:

(a)     Implement Administrative, Physical, and Technical Safeguards that reasonably and appropriately protect the Confidentiality, Integrity and Availability of Electronic Protected Health Information and shall comply with the Security Rule with respect to Electronic Protected Health Information;

(b)     Promptly report to each applicable Covered Entity any Security Incident of which Business Associate becomes aware;

(c)     Without unreasonable delay, but in no even later than five business days following Discovery, notify the applicable Covered Entity of a Breach of Unsecured Protected Health Information in accordance with 45 C.F.R. § 164.410.  A Breach is considered "discovered" as of the first day on which the Breach is known, or reasonably should have been known, to Business Associate or any employee, officer or agent of Business Associate, other than the individual committing the Breach.  In addition, Business Associate shall comply with applicable State Law regarding notification of data breaches.

**3.3    Reporting.**  Business Associate agrees to report to each applicable Covered Entity any use or disclosure of Protected Health Information not permitted by these BA Provisions of which Business Associate becomes aware without unreasonable delay, but in no event later than five business days following such awareness.

**3.4    Mitigation.**  Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of Protected Health Information by Business Associate or its employees, officers, agents, or Subcontractors in violation of the requirements of these BA Provisions (including, without limitation, any Security Incident or Breach of Unsecured Protected Health Information).  Business Associate agrees to reasonably cooperate and coordinate with each applicable Covered Entity in the investigation of any violation of the requirements of these BA Provisions and/or any Security Incident or Breach.  Business Associate shall also reasonably cooperate and coordinate with each applicable Covered Entity in the preparation of any reports or notices to the Individual, a regulatory body or any third party required to be made under HIPAA, HIPAA Regulations, the HITECH Act, or any other federal or state laws, rules or regulations, provided that any such reports or notices shall be subject to the prior written approval of each applicable Covered Entity. This Section 3.4 shall survive the termination of these BA Provisions.

**3.5    Subcontractors.**  Business Associate shall ensure that any Subcontractor (including, without limitation, a Subcontractor that is an agent under applicable law) that creates, receives, maintains, or transmits Protected Health Information on behalf of Business Associate enters into a written agreement meeting the requirements of 45 C.F.R. §§ 164.504(e) and 164.314(a)(2) that obligates the Subcontractor to comply with the same restrictions and conditions that apply through these BA Provisions to Business Associate with respect to such Protected Health Information.

**3.6    Access to Designated Record Sets.**  To the extent that Business Associate possesses or maintains Protected Health Information in a Designated Record Set, Business Associate agrees to provide access, at the request of the applicable Covered Entity, and in the time and manner designated by each such Covered Entity, to Protected Health Information in a Designated Record Set, to such Covered Entity or, as directed by such Covered Entity, to an Individual in order to meet the requirements under HIPAA Regulations.  If an Individual makes a request for access to Protected Health Information directly to Business Associate, Business Associate shall notify the applicable Covered Entity of the request within three (3) business days of such request and will cooperate with such Covered Entity and allow such Covered Entity to send the response to the Individual.

**3.7    Amendments to Designated Record Sets.**  To the extent that Business Associate possesses or maintains Protected Health Information in a Designated Record Set, Business Associate agrees to make any amendment(s) to Protected Health Information in a Designated Record Set that the applicable Covered Entity directs or agrees to pursuant to HIPAA Regulations at the request of such Covered Entity or an Individual, and in the time and manner designated by such Covered Entity.  If an Individual makes a request for an amendment to Protected Health Information directly to Business Associate, Business Associate shall notify the applicable Covered Entity of the request within three business (3) days of such request and will cooperate with such Covered Entity and allow such Covered Entity to send the response to the Individual.

**3.8    Access to Books and Records.**  Business Associate agrees to make its internal practices, books, and records, including policies and procedures and Protected Health Information, relating to the use and disclosure of Protected Health Information which Business Associate received from, or created or received by Business Associate on behalf of, the applicable Covered Entity available to the Secretary, in a time and manner designated by the Secretary, for purposes of the Secretary determining such Covered Entity's compliance with the Privacy Rule.

4829-0693-8260.22

D-3

**3.9    Accountings.**  Business Associate agrees to document such disclosures of Protected Health Information and information related to such disclosures as would be required for the applicable Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with HIPAA, HIPAA Regulations and the HITECH Act.

**3.10    Requests for Accountings.**  Business Associate agrees to provide to the applicable Covered Entity or Individual, in the time and manner designated by such Covered Entity, information collected in accordance with <u>Section 3.9</u> of these BA Provisions, to permit such Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with HIPAA, HIPAA Regulations and the HITECH Act.  If an Individual makes a request for an accounting directly to Business Associate, Business Associate shall notify the applicable Covered Entity of the request within three (3) business days of such request and will cooperate with such Covered Entity and allow such Covered Entity to send the response to the Individual.

**3.11    Minimum Necessary Standard.**  To the extent required by the "minimum necessary" requirements of HIPAA, Business Associate shall only request, use and disclose the minimum amount of PHI necessary to accomplish the purpose of the request, use or disclosure.

**3.12    Covered Entity's Obligations.**  To the extent that Business Associate is to carry out one or more of a Covered Entity's obligations under the Privacy Rule, Business Associate shall comply with the requirements of the Privacy Rule that apply to the Covered Entity in the performance of such obligations.

**ARTICLE IV**
**PERMITTED USES AND DISCLOSURES**
**BY BUSINESS ASSOCIATE**

**4.1    TSA.**  Except as otherwise limited in these BA Provisions, Business Associate may use or disclose Protected Health Information to perform functions, activities, or services for, or on behalf of, a Covered Entity as specified in the TSA, provided that such use or disclosure would not violate HIPAA, HIPAA Regulations, the HITECH Act or State Law if done by the applicable Covered Entity or the minimum necessary policies and procedures of such Covered Entity.

**4.2    Use for Administration of Business Associate.**  Except as otherwise limited in these BA Provisions, Business Associate may use Protected Health Information for the proper management and administration of Business Associate or to carry out the legal responsibilities of Business Associate.

**4.3    Disclosure for Administration of Business Associate.**  Except as otherwise limited in these BA Provisions, Business Associate may disclose Protected Health Information for the proper management and administration of Business Associate, provided that (i) disclosures are Required by Law, or (ii) Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as Required by Law or for the purpose for which it was disclosed to the person, and the person notifies Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.

**ARTICLE V**
**OBLIGATIONS OF COVERED ENTITY**

**5.1    Notice of Privacy Practices.**  Each Covered Entity shall provide Business Associate with a copy of its Notice of Privacy Practices, as well as any amendments to such notice that such Covered Entity may adopt from time to time.

4829-0693-8260.22

D-4

BN 36537697v6
BN 36739322v1

**5.2    Changes in Authorization or Permission.**  Each Covered Entity shall provide Business Associate with any changes in or revocation of any permission by an Individual to disclose the Individual's PHI, if such changes affect Business Associate's permitted or required uses and or disclosures.

**5.3    Permissible Requests.**  No Covered Entity shall request Business Associate to use or disclose PHI in any manner that would not be permissible under HIPAA if done directly by such Covered Entity (except as provided in 5.2 and 5.3 of the BA Provisions).

**5.4    Minimum Necessary.**  When a Covered Entity discloses PHI to Business Associate, such Covered Entity shall provide the minimum amount of PHI necessary for the accomplishment of Business Associate's purpose.

**5.5    Permissions; Restrictions.**  Each Covered Entity warrants that it has obtained and will obtain any consents, authorizations and/or other legal permissions required under HIPAA and other applicable law for the disclosure of PHI to Business Associate.  Each Covered Entity shall notify Business Associate of any changes in, or revocation of, the permission by an Individual to use or disclose his or her PHI, to the extent that such changes may affect Business Associate's use or disclosure of PHI.

**ARTICLE VI**
**TERM AND TERMINATION**

**6.1    Term.**  These BA Provisions shall be effective as of the Effective Date of the TSA and shall terminate upon the earlier of (i) the expiration or termination of the TSA or (ii) termination in accordance with <u>Section 6.2</u> of these BA Provisions.

**6.2    Termination for Cause.**  Upon a Covered Entity's knowledge of a material breach by Business Associate of the terms of these BA Provisions, such Covered Entity shall either:

**(a)**    Provide an opportunity for Business Associate to cure the breach or end the violation.  If Business Associate does not cure the breach or end the violation within the time specified by the Covered Entity, the Covered Entity shall terminate: (i) these BA Provisions as applicable to Business Associate; (ii) all of the provisions of the TSA that involve the creation, receipt, maintenance, or transmission of Protected Health Information by Business Associate; and (iii) such other provisions, if any, of the TSA as such Covered Entity designates in its sole discretion; or

**(b)**    If Business Associate has breached a material term of these BA Provisions and cure is not possible, immediately terminate: (i) these BA Provisions as applicable to Business Associate; (ii) all of the provisions of the TSA that involve the creation, receipt, maintenance, or transmission of Protected Health Information by Business Associate; and (iii) such other provisions, if any, of the TSA as such Covered Entity designates in its sole discretion.

**6.3    Effect of Termination.**

**(a)**    Except as provided in this <u>ARTICLE VI</u>, upon termination of these BA Provisions, for any reason, Business Associate shall return or destroy all Protected Health Information received by Business Associate from a Covered Entity, or created or received by Business Associate on behalf of the Covered Entity.  This provision shall apply to Protected Health Information that is in the possession of Subcontractors or agents of Business Associate.  Business Associate shall retain no copies of the Protected Health Information.

**(b)**     In the event that Business Associate determines that returning or destroying the Protected Health Information is infeasible, Business Associate shall provide to the applicable Covered Entity notification of the conditions that make return or destruction infeasible. Upon mutual agreement of the Parties that return or destruction of Protected Health Information is infeasible, Business Associate shall extend the protections of these BA Provisions to such Protected Health Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such Protected Health Information. This <u>Section (b)</u> shall survive the termination of these BA Provisions.

**ARTICLE VII**
**MISCELLANEOUS**

**7.1     Regulatory References.** A reference in these BA Provisions to a section in HIPAA, HIPAA Regulations, the HITECH Act or State Law means the section as in effect or as amended or modified from time to time, including any corresponding provisions of subsequent superseding laws or regulations.

**7.2     Amendment.** The Parties agree to take such action as is necessary to amend the TSA (and this Addendum thereto) from time to time as is necessary for each Covered Entity to comply with the requirements of HIPAA, the HIPAA Regulations and the HITECH Act.

**7.3     Interpretation.** Any ambiguity in these BA Provisions shall be resolved to permit each Covered Entity and Business Associate to comply with HIPAA, the HIPAA Regulations, the HITECH Act and State Law. If there is any conflict between the HIPAA Regulations and State Law, the most stringent requirements shall control the Parties' obligations under the TSA and these BA Provisions.

**7.4     Miscellaneous.** In the event of a conflict or inconsistency between these BA Provisions and the terms of the TSA, these BA Provisions shall prevail to the extent of such conflict or inconsistency. These BA Provisions supersede and replaces any former business associate agreement or addendum entered into by the Parties.

**7.5     No Third Party Beneficiaries.** The Parties have not created and do not intend to create by this Agreement any third party rights, including, but not limited to, third party rights for Covered Entities' patients.

EXHIBIT 6

## LIMITED POWER OF ATTORNEY
## FOR PHARMACY LICENSES, AND
## DEA FORMS AND ELECTRONIC ORDERS

Registrant: **Promise Hospital of Phoenix, Inc.**
Address:    **433 E. 6th Street**
**Mesa, AZ 85203-7104**
DEA Registration Number: **BP8721373**
Pharmacy License Number: **Y003956**

      **Promise Hospital of Phoenix, Inc.** ("*Registrant*") operates a long term acute care hospital at **433 E. 6th Street, Mesa, AZ 85203-7104** (the "*Facility*"). In connection with the operation of the Facility, Registrant currently holds: (1) Pharmacy License Number Y003956; and (2) Registrant is also authorized under DEA registration number BP8721373 to sign the current applications for registration and licensure as the registrant under the Controlled Substances Act (21 U.S.C. §801 et seq.) or the Controlled Substances Import and Export Act of the United States (21 U.S.C. §951 et seq.). This Limited Power of Attorney for Pharmacy Licenses, and DEA Forms and Electronic Orders (this "*Limited POA*") is effective as of the Transition Date, as defined in that certain Asset Purchase Agreement dated February 25, 2019, as amended, between, *inter alios*, Registrant and Agent (as defined below) (the "*Effective Date*").

      Registrant has made, constituted, and appointed, and hereby makes, constitutes and appoints **KPC Promise Hospital of Phoenix, LLC.** ("*Agent*") and **Bessie Vardianos** (the "*Pharmacist*," and collectively with Agent, the "*Permitted Group*") as Registrant's agent and true and lawful attorney-in-fact for the limited purposes of utilizing Registrant's DEA registration and DEA order forms, and pharmacy licenses, pharmacy health care entity licenses, and any other registrations required under the laws of the United States or the State of Arizona, to the extent permissible under applicable laws, to continue pharmacy operations located at the Facility (the "*Pharmacy*"). The Permitted Group may act in this capacity until such time as Agent or its designee obtains a new pharmacy license, pharmacy health care entity license, DEA registration, and any other such registrations, as required by law for the Pharmacy, but in no event shall this Limited POA continue more than one hundred eighty (180) calendar days after the Effective Date (unless otherwise extended by the parties). Registrant further grants this Limited POA to Agent to act as the true and lawful agent and attorney-in-fact of Registrant, and to act in the name, place, and stead of Registrant, to execute applications for books of official order forms, to sign such orders and order forms in requisition for Schedules, I, II, III, IV, and V controlled substances, whether these orders be on written forms or electronic, in accordance with Section 308 of the Controlled Substances Act (21 U.S.C. §828) and part 1305 of Title 21 of the Code of Federal Regulations, and to carry out the controlled substance activities of the Pharmacy under Registrant's DEA registration.

      Registrant recognizes that it remains legally responsible for the Pharmacy and controlled substance licenses and DEA and other registrations issued to it, during the period in which this Limited POA is in effect. Therefore, Registrant grants this Limited POA based upon the following covenants and warranties of Agent: (a) the Permitted Group shall follow and abide by and comply with all federal and state laws governing the regulation of controlled substances and pharmacy practice at all times while utilizing this Limited POA; and (b) Agent, or its designee, shall make application for and pursue its own pharmacy and controlled substance licenses and DEA and other registrations which are required for the distribution of pharmaceuticals, including but not limited to controlled substances, at the Pharmacy, as soon as practicable after the Effective Date.

This Limited POA shall exist from the Effective Date until the earlier of the occurrence of one of the following events, at which time this Limited POA shall automatically terminate (unless otherwise extended by the parties): (a) one hundred eighty (180) days after the Effective Date; or (b) the date upon which Agent is issued all pharmacy and controlled substance licenses, and DEA and other registrations required for the distribution of pharmaceuticals at the Pharmacy.

This Limited POA may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement, binding on all of the parties hereto.

**[signature page follows]**

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**

Promise Hospital of Phoenix, Inc.

By: _____

Name: _____

Title: __C E O_____

**AGENT:**

KPC Promise Hospital of Phoenix, LLC

By: _____

Name: _____

Title: _____

**WITNESSES:**

1. _____

2. _____

**WITNESSES:**

1. _____

2. _____

**PHARMACIST:**

By: Bessie Vardianos

Signature: _____

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**

**Promise Hospital of Phoenix, Inc.**

By:_____

Name:_____

Title:_____

**AGENT:**

**KPC Promise Hospital of Phoenix, LLC**

By_____

Name: _Kali P. Chandhuri_____

Title: _Manager_____

**WITNESSES:**

1._____

2._____

**WITNESSES:**

1._____
   WILLIAM B. THOMAS

2._____
   NORA C. DE CAMPO

**PHARMACIST:**

By: Bessie Vardianos

Signature: _____

**EXHIBIT 6**

**LIMITED POWER OF ATTORNEY**
**FOR PHARMACY LICENSES, AND**
**DEA FORMS AND ELECTRONIC ORDERS**

Registrant: **Promise Hospital of Overland Park, Inc.**
Address:   **6509 W. 103rd Street**
**Overland Park, KS 66212-1728**
DEA Registration Number: **FP4394564**
Pharmacy License Number:**2-13029**


Promise Hospital of Overland Park, Inc. ("*Registrant*") operates a long term acute care hospital at **6509 W. 103rd Street, Overland Park, KS 66212-1728** (the "*Facility*"). In connection with the operation of the Facility, Registrant currently holds: (1) Pharmacy License Number 2-13029; and (2) Registrant is also authorized under DEA registration number FP4394564 to sign the current applications for registration and licensure as the registrant under the Controlled Substances Act (21 U.S.C. §801 et seq.) or the Controlled Substances Import and Export Act of the United States (21 U.S.C. §951 et seq.). This Limited Power of Attorney for Pharmacy Licenses, and DEA Forms and Electronic Orders (this "*Limited POA*") is effective as of the Transition Date, as defined in that certain Asset Purchase Agreement dated February 25, 2019, as amended, between, *inter alios*, Registrant and Agent (as defined below) (the "*Effective Date*").

Registrant has made, constituted, and appointed, and hereby makes, constitutes and appoints **KPC Promise Hospital of Overland Park, LLC.** ("*Agent*") and Karen Santa Cruz (the "*Pharmacist*," and collectively with Agent, the "*Permitted Group*") as Registrant's agent and true and lawful attorney-in-fact for the limited purposes of utilizing Registrant's DEA registration and DEA order forms, and pharmacy licenses, pharmacy health care entity licenses, and any other registrations required under the laws of the United States or the State of Kansas, to the extent permissible under applicable laws, to continue pharmacy operations located at the Facility (the "*Pharmacy*"). The Permitted Group may act in this capacity until such time as Agent or its designee obtains a new pharmacy license, pharmacy health care entity license, DEA registration, and any other such registrations, as required by law for the Pharmacy, but in no event shall this Limited POA continue more than one hundred eighty (180) calendar days after the Effective Date (unless otherwise extended by the parties). Registrant further grants this Limited POA to Agent to act as the true and lawful agent and attorney-in-fact of Registrant, and to act in the name, place, and stead of Registrant, to execute applications for books of official order forms, to sign such orders and order forms in requisition for Schedules, I, II, III, IV, and V controlled substances, whether these orders be on written forms or electronic, in accordance with Section 308 of the Controlled Substances Act (21 U.S.C. §828) and part 1305 of Title 21 of the Code of Federal Regulations, and to carry out the controlled substance activities of the Pharmacy under Registrant's DEA registration.

Registrant recognizes that it remains legally responsible for the Pharmacy and controlled substance licenses and DEA and other registrations issued to it, during the period in which this Limited POA is in effect. Therefore, Registrant grants this Limited POA based upon the following covenants and warranties of Agent: (a) the Permitted Group shall follow and abide by and comply with all federal and state laws governing the regulation of controlled substances and pharmacy practice at all times while utilizing this Limited POA; and (b) Agent, or its designee, shall make application for and pursue its own pharmacy and controlled substance licenses and DEA and other registrations which are required for the distribution of pharmaceuticals, including but not limited to controlled substances, at the Pharmacy, as soon as practicable after the Effective Date.

This Limited POA shall exist from the Effective Date until the earlier of the occurrence of one of the following events, at which time this Limited POA shall automatically terminate (unless otherwise extended by the parties): (a) one hundred eighty (180) days after the Effective Date; or (b) the date upon which Agent is issued all pharmacy and controlled substance licenses, and DEA and other registrations required for the distribution of pharmaceuticals at the Pharmacy.

This Limited POA may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement, binding on all of the parties hereto.

**[signature page follows]**

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**

Promise Hospital of Overland Park, Inc.

By: _____

Name: __Robert Beck_____

Title: __CEO_____

**AGENT:**

KPC Promise Hospital of Overland Park, LLC

By: _____

Name: _____

Title: _____

**WITNESSES:**

1. _____

2. _____

**WITNESSES:**

1. _____

2. _____

**PHARMACIST:**

By: Karen Santa Cruz

Signature: _____

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**                                    **AGENT:**

**Promise Hospital of Overland Park, Inc.**        **KPC Promise Hospital of Overland Park, LLC**

By: _____                         By: _____

Name: _____                         Name: _Kali P. Chaudhvri_

Title: _____                         Title: _Manager_

**WITNESSES:**                                     **WITNESSES:**

1. _____                          1. _____
                                                      WILLIAM B. THOMAS

2. _____                          2. _____
                                                      NORA C. DE' CAMPO

                                                   **PHARMACIST:**

                                                   By: Karen Santa Cruz

                                                   Signature: _____

## EXHIBIT 6

## LIMITED POWER OF ATTORNEY
## FOR PHARMACY LICENSES, AND
## DEA FORMS AND ELECTRONIC ORDERS

Registrant: **Promise Hospital of Ascension, Inc.**
Address:    **5130 Mancuso Lane**
**Baton Rouge, LA 70809-3583**
DEA Registration Number: **FP4953394**
Pharmacy License Number: **PHY.006981-HOS**

      **Promise Hospital of Ascension, Inc.** ("*Registrant*") operates a long term acute care hospital at **5130 Mancuso Lane, Baton Rouge, LA 70809-3583** (the "*Facility*"). In connection with the operation of the Facility, Registrant currently holds: (1) Pharmacy License Number PHY.006981-HOS; and (2) State Controlled Substance License Number CDS.034187-HOS. Registrant is also authorized under DEA registration number FP4953394 to sign the current applications for registration and licensure as the registrant under the Controlled Substances Act (21 U.S.C. §801 et seq.) or the Controlled Substances Import and Export Act of the United States (21 U.S.C. §951 et seq.). This Limited Power of Attorney for Pharmacy Licenses, and DEA Forms and Electronic Orders (this "*Limited POA*") is effective as of the Transition Date, as defined in that certain Asset Purchase Agreement dated February 25, 2019, as amended, between, *inter alios*, Registrant and Agent (as defined below) (the "*Effective Date*").

      Registrant has made, constituted, and appointed, and hereby makes, constitutes and appoints **KPC Promise Hospital of Baton Rouge, LLC.** ("*Agent*") and **Elizabeth Britt** (the "*Pharmacist*," and collectively with Agent, the "*Permitted Group*") as Registrant's agent and true and lawful attorney-in-fact for the limited purposes of utilizing Registrant's DEA registration and DEA order forms, and pharmacy licenses, pharmacy health care entity licenses, and any other registrations required under the laws of the United States or the State of Louisiana, to the extent permissible under applicable laws, to continue pharmacy operations located at the Facility (the "*Pharmacy*"). The Permitted Group may act in this capacity until such time as Agent or its designee obtains a new pharmacy license, pharmacy health care entity license, DEA registration, and any other such registrations, as required by law for the Pharmacy, but in no event shall this Limited POA continue more than one hundred eighty (180) calendar days after the Effective Date (unless otherwise extended by the parties). Registrant further grants this Limited POA to Agent to act as the true and lawful agent and attorney-in-fact of Registrant, and to act in the name, place, and stead of Registrant, to execute applications for books of official order forms, to sign such orders and order forms in requisition for Schedules, I, II, III, IV, and V controlled substances, whether these orders be on written forms or electronic, in accordance with Section 308 of the Controlled Substances Act (21 U.S.C. §828) and part 1305 of Title 21 of the Code of Federal Regulations, and to carry out the controlled substance activities of the Pharmacy under Registrant's DEA registration.

      Registrant recognizes that it remains legally responsible for the Pharmacy and controlled substance licenses and DEA and other registrations issued to it, during the period in which this Limited POA is in effect. Therefore, Registrant grants this Limited POA based upon the following covenants and warranties of Agent: (a) the Permitted Group shall follow and abide by and comply with all federal and state laws governing the regulation of controlled substances and pharmacy practice at all times while utilizing this Limited POA; and (b) Agent, or its designee, shall make application for and pursue its own pharmacy and controlled substance licenses and DEA and other registrations which are required for the distribution of pharmaceuticals, including but not limited to controlled substances, at the Pharmacy, as soon as practicable after the Effective Date.

This Limited POA shall exist from the Effective Date until the earlier of the occurrence of one of the following events, at which time this Limited POA shall automatically terminate (unless otherwise extended by the parties): (a) one hundred eighty (180) days after the Effective Date; or (b) the date upon which Agent is issued all pharmacy and controlled substance licenses, and DEA and other registrations required for the distribution of pharmaceuticals at the Pharmacy.

This Limited POA may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement, binding on all of the parties hereto.

**[signature page follows]**

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**

Promise Hospital of Ascension, Inc.

By: _KL bll CEO_

Name: _Kiley Cedotal_

Title: _CEO_

**AGENT:**

KPC Promise Hospital of Baton Rouge, LLC

By: _____

Name: _____

Title: _____

**WITNESSES:**

1. _MC Joal_

2. _[signature]_

**WITNESSES:**

1. _____

2. _____

**PHARMACIST:**

By: Elizabeth Britt

Signature: _Elizabeth Britt, PharmD_

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**

**Promise Hospital of Ascension, Inc.**

By:_____

Name: _____

Title: _____

**AGENT:**

**KPC Promise Hospital of Baton Rouge, LLC**

By:_____

Name: _Kali P. Chandhuri_____

Title: _Manager_____

**WITNESSES:**

1._____

2._____

**WITNESSES:**

1._WILLIAM E. THOMAS_____

2._Nora C. De' Campo_____
   NORA C. DE' CAMPO

**PHARMACIST:**

By: Elizabeth Britt

Signature: _____

## EXHIBIT 6

## LIMITED POWER OF ATTORNEY
## FOR PHARMACY LICENSES, AND
## DEA FORMS AND ELECTRONIC ORDERS

Registrant: **Promise Hospital of Vicksburg, Inc.**
Address:    **2100 Highway 61 North**
**Vicksburg, MS 39183-8211**
DEA Registration Number: BP8525098
Pharmacy License Number:**06025/3.1**

     **Promise Hospital of Vicksburg, Inc.** ("**Registrant**") operates a long term acute care hospital at **2100 Highway 61 North, Vicksburg, MS 39183-8211** (the "**Facility**"). In connection with the operation of the Facility, Registrant currently holds: (1) Pharmacy License Number 06025/3.1; and (2) State Controlled Substance License Number CS-06025. Registrant is also authorized under DEA registration number BP8525098 to sign the current applications for registration and licensure as the registrant under the Controlled Substances Act (21 U.S.C. §801 et seq.) or the Controlled Substances Import and Export Act of the United States (21 U.S.C. §951 et seq.). This Limited Power of Attorney for Pharmacy Licenses, and DEA Forms and Electronic Orders (this "**Limited POA**") is effective as of the Transition Date, as defined in that certain Asset Purchase Agreement dated February 25, 2019, as amended, between, *inter alios*, Registrant and Agent (as defined below) (the "**Effective Date**").

     Registrant has made, constituted, and appointed, and hereby makes, constitutes and appoints **KPC Promise Hospital of Vicksburg, LLC.** ("**Agent**") and **Brooke Coffelt DPH** (the "**Pharmacist**," and collectively with Agent, the "**Permitted Group**") as Registrant's agent and true and lawful attorney-in-fact for the limited purposes of utilizing Registrant's DEA registration and DEA order forms, and pharmacy licenses, pharmacy health care entity licenses, and any other registrations required under the laws of the United States or the State of Mississippi, to the extent permissible under applicable laws, to continue pharmacy operations located at the Facility (the "**Pharmacy**"). The Permitted Group may act in this capacity until such time as Agent or its designee obtains a new pharmacy license, pharmacy health care entity license, DEA registration, and any other such registrations, as required by law for the Pharmacy, but in no event shall this Limited POA continue more than one hundred eighty (180) calendar days after the Effective Date (unless otherwise extended by the parties). Registrant further grants this Limited POA to Agent to act as the true and lawful agent and attorney-in-fact of Registrant, and to act in the name, place, and stead of Registrant, to execute applications for books of official order forms, to sign such orders and order forms in requisition for Schedules, I, II, III, IV, and V controlled substances, whether these orders be on written forms or electronic, in accordance with Section 308 of the Controlled Substances Act (21 U.S.C. §828) and part 1305 of Title 21 of the Code of Federal Regulations, and to carry out the controlled substance activities of the Pharmacy under Registrant's DEA registration.

     Registrant recognizes that it remains legally responsible for the Pharmacy and controlled substance licenses and DEA and other registrations issued to it, during the period in which this Limited POA is in effect. Therefore, Registrant grants this Limited POA based upon the following covenants and warranties of Agent: (a) the Permitted Group shall follow and abide by and comply with all federal and state laws governing the regulation of controlled substances and pharmacy practice at all times while utilizing this Limited POA; and (b) Agent, or its designee, shall make application for and pursue its own pharmacy and controlled substance licenses and DEA and other registrations which are required for the distribution of pharmaceuticals, including but not limited to controlled substances, at the Pharmacy, as soon as practicable after the Effective Date.

This Limited POA shall exist from the Effective Date until the earlier of the occurrence of one of the following events, at which time this Limited POA shall automatically terminate (unless otherwise extended by the parties): (a) one hundred eighty (180) days after the Effective Date; or (b) the date upon which Agent is issued all pharmacy and controlled substance licenses, and DEA and other registrations required for the distribution of pharmaceuticals at the Pharmacy.

This Limited POA may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement, binding on all of the parties hereto.

**[signature page follows]**

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

REGISTRANT:                                          AGENT:

Promise Hospital of Vicksburg, Inc.                   KPC Promise Hospital of Vicksburg, LLC

By: _____                          By: _____

Name: _Kiley Cedotal_____                           Name: _____

Title: _Chief Executive Officer_                      Title: _____


WITNESSES:                                            WITNESSES:

1. _____                            1. _____

2. _____                            2. _____

                                                      PHARMACIST:

                                                      By: Brooke Coffelt, DPH Pharm D

                                                      Signature: _____

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**

**Promise Hospital of Vicksburg, Inc.**

By:_____

Name: _____

Title: _____

**AGENT:**

**KPC Promise Hospital of Vicksburg, LLC**

By:_____

Name: _Kali P. Chaudhuri_____

Title: _Manager_____

**WITNESSES:**

1._____

2._____

**WITNESSES:**

1._____
WILLIAM E. THOMAS

2._____
NORA C DE CAMPO

**PHARMACIST:**

By: Brooke Coffelt DPH

Signature: _____

EXHIBIT 6

## LIMITED POWER OF ATTORNEY
## FOR PHARMACY LICENSES, AND
## DEA FORMS AND ELECTRONIC ORDERS

Registrant: **Promise Hospital of Wichita Falls, Inc.**
Address:    **1103 Grace Street**
**Wichita Falls, TX 76301-4414**
DEA Registration Number: **FP4582412**
Pharmacy License Number:**29234**

       **Promise Hospital of Wichita Falls, Inc.** ("*Registrant*") operates a long term acute care hospital at **1103 Grace Street, Wichita Falls, TX 76301-4414** (the "*Facility*"). In connection with the operation of the Facility, Registrant currently holds: (1) Pharmacy License Number 29234; and (2) Registrant is also authorized under DEA registration number FP4582412 to sign the current applications for registration and licensure as the registrant under the Controlled Substances Act (21 U.S.C. §801 et seq.) or the Controlled Substances Import and Export Act of the United States (21 U.S.C. §951 et seq.). This Limited Power of Attorney for Pharmacy Licenses, and DEA Forms and Electronic Orders (this "*Limited POA*") is effective as of the Transition Date, as defined in that certain Asset Purchase Agreement dated February 25, 2019, as amended, between, *inter alios*, Registrant and Agent (as defined below) (the "*Effective Date*").

       Registrant has made, constituted, and appointed, and hereby makes, constitutes and appoints **KPC Promise Hospital of Wichita Falls, LLC.** ("*Agent*") and Teresa Harrelson (the "*Pharmacist*," and collectively with Agent, the "*Permitted Group*") as Registrant's agent and true and lawful attorney-in-fact for the limited purposes of utilizing Registrant's DEA registration and DEA order forms, and pharmacy licenses, pharmacy health care entity licenses, and any other registrations required under the laws of the United States or the State of Texas, to the extent permissible under applicable laws, to continue pharmacy operations located at the Facility (the "*Pharmacy*"). The Permitted Group may act in this capacity until such time as Agent or its designee obtains a new pharmacy license, pharmacy health care entity license, DEA registration, and any other such registrations, as required by law for the Pharmacy, but in no event shall this Limited POA continue more than one hundred eighty (180) calendar days after the Effective Date (unless otherwise extended by the parties). Registrant further grants this Limited POA to Agent to act as the true and lawful agent and attorney-in-fact of Registrant, and to act in the name, place, and stead of Registrant, to execute applications for books of official order forms, to sign such orders and order forms in requisition for Schedules, I, II, III, IV, and V controlled substances, whether these orders be on written forms or electronic, in accordance with Section 308 of the Controlled Substances Act (21 U.S.C. §828) and part 1305 of Title 21 of the Code of Federal Regulations, and to carry out the controlled substance activities of the Pharmacy under Registrant's DEA registration.

       Registrant recognizes that it remains legally responsible for the Pharmacy and controlled substance licenses and DEA and other registrations issued to it, during the period in which this Limited POA is in effect. Therefore, Registrant grants this Limited POA based upon the following covenants and warranties of Agent: (a) the Permitted Group shall follow and abide by and comply with all federal and state laws governing the regulation of controlled substances and pharmacy practice at all times while utilizing this Limited POA; and (b) Agent, or its designee, shall make application for and pursue its own pharmacy and controlled substance licenses and DEA and other registrations which are required for the distribution of pharmaceuticals, including but not limited to controlled substances, at the Pharmacy, as soon as practicable after the Effective Date.

This Limited POA shall exist from the Effective Date until the earlier of the occurrence of one of the following events, at which time this Limited POA shall automatically terminate (unless otherwise extended by the parties): (a) one hundred eighty (180) days after the Effective Date; or (b) the date upon which Agent is issued all pharmacy and controlled substance licenses, and DEA and other registrations required for the distribution of pharmaceuticals at the Pharmacy.

This Limited POA may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement, binding on all of the parties hereto.

**[signature page follows]**

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**

Promise Hospital of Wichita Falls, Inc.

By: _Rachel Bailey_

Name: _Rachel Bailey_

Title: _CEO_

**AGENT:**

KPC Promise Hospital of Wichita Falls, LLC

By: _____

Name: _____

Title: _____

**WITNESSES:**

1. _Amanda Scott_

2. _Jerry Pack_

**WITNESSES:**

1. _____

2. _____

**PHARMACIST:**

By: Teresa Harrelson

Signature: _Teresa Harrelson RPh_

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**

**Promise Hospital of Wichita Falls, Inc.**

By:_____

Name: _____

Title: _____

**AGENT:**

**KPC Promise Hospital of Wichita Falls, LLC**

By:_____

Name: Kali P. Chandhuri

Title: Manager

**WITNESSES:**

1._____

2._____

**WITNESSES:**

1._____
WILLIAM E. THOMAS

2._____
NORA CDE CAMPO

**PHARMACIST:**

By: Teresa Harrelson

Signature: _____

**EXHIBIT 6**

**LIMITED POWER OF ATTORNEY
FOR PHARMACY LICENSES, AND
DEA FORMS AND ELECTRONIC ORDERS**

Registrant: **Promise Hospital of Dallas, Inc.**
Address:    **7955 Harry Hines Blvd**
**Dallas, TX 75235-3305**
DEA Registration Number: **FP4582400**
Pharmacy License Number:**29233**


      **Promise Hospital of Dallas, Inc.** ("*Registrant*") operates a long term acute care hospital at **7955 Harry Hines Blvd, Dallas, TX 75235-3305** (the "*Facility*"). In connection with the operation of the Facility, Registrant currently holds: (1) Pharmacy License Number 29233; and (2) Registrant is also authorized under DEA registration number FP4582400 to sign the current applications for registration and licensure as the registrant under the Controlled Substances Act (21 U.S.C. §801 et seq.) or the Controlled Substances Import and Export Act of the United States (21 U.S.C. §951 et seq.). This Limited Power of Attorney for Pharmacy Licenses, and DEA Forms and Electronic Orders (this "*Limited POA*") is effective as of the Transition Date, as defined in that certain Asset Purchase Agreement dated February 25, 2019, as amended, between, *inter alios*, Registrant and Agent (as defined below) (the "*Effective Date*").

      Registrant has made, constituted, and appointed, and hereby makes, constitutes and appoints **KPC Promise Hospital of Dallas, LLC.** ("*Agent*") and **Thomas V. Thomas** (the "*Pharmacist*," and collectively with Agent, the "*Permitted Group*") as Registrant's agent and true and lawful attorney-in-fact for the limited purposes of utilizing Registrant's DEA registration and DEA order forms, and pharmacy licenses, pharmacy health care entity licenses, and any other registrations required under the laws of the United States or the State of Texas, to the extent permissible under applicable laws,  to continue pharmacy operations located at the Facility (the "*Pharmacy*"). The Permitted Group may act in this capacity until such time as Agent or its designee obtains a new pharmacy license, pharmacy health care entity license, DEA registration, and any other such registrations, as required by law for the Pharmacy, but in no event shall this Limited POA continue more than one hundred eighty (180) calendar days after the Effective Date (unless otherwise extended by the parties). Registrant further grants this Limited POA to Agent to act as the true and lawful agent and attorney-in-fact of Registrant, and to act in the name, place, and stead of Registrant, to execute applications for books of official order forms, to sign such orders and order forms in requisition for Schedules, I, II, III, IV, and V controlled substances, whether these orders be on written forms or electronic, in accordance with Section 308 of the Controlled Substances Act (21 U.S.C. §828) and part 1305 of Title 21 of the Code of Federal Regulations, and to carry out the controlled substance activities of the Pharmacy under Registrant's DEA registration.

      Registrant recognizes that it remains legally responsible for the Pharmacy and controlled substance licenses and DEA and other registrations issued to it, during the period in which this Limited POA is in effect. Therefore, Registrant grants this Limited POA based upon the following covenants and warranties of Agent: (a) the Permitted Group shall follow and abide by and comply with all federal and state laws governing the regulation of controlled substances and pharmacy practice at all times while utilizing this Limited POA; and (b) Agent, or its designee, shall make application for and pursue its own pharmacy and controlled substance licenses and DEA and other registrations which are required for the distribution of pharmaceuticals, including but not limited to controlled substances, at the Pharmacy, as soon as practicable after the Effective Date.

This Limited POA shall exist from the Effective Date until the earlier of the occurrence of one of the following events, at which time this Limited POA shall automatically terminate (unless otherwise extended by the parties): (a) one hundred eighty (180) days after the Effective Date; or (b) the date upon which Agent is issued all pharmacy and controlled substance licenses, and DEA and other registrations required for the distribution of pharmaceuticals at the Pharmacy.

This Limited POA may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement, binding on all of the parties hereto.

**[signature page follows]**

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**

Promise Hospital of Dallas, Inc.

By: _____

Name: _J̲a̲m̲e̲s̲ ̲W̲h̲i̲t̲a̲c̲r̲e̲,̲ ̲J̲r̲_

Title: _____C̲E̲O̲_____

**AGENT:**

KPC Promise Hospital of Dallas, LLC

By: _____

Name: _____

Title: _____

**WITNESSES:**

1. _Theresa Hankins_

2. _Kim White_

**WITNESSES:**

1. _____

2. _____

**PHARMACIST:**

By: Thomas V. Thomas

Signature: _____

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**

**Promise Hospital of Dallas, Inc.**

By:_____

Name:_____

Title:_____

**AGENT:**

**KPC Promise Hospital of Dallas, LLC**

By:_____

Name: _Kal P. Chaudhuri_____

Title: _Manager_____

**WITNESSES:**

1._____

2._____

**WITNESSES:**

1._____
    William E. Thomas

2._____
    NORA C. DE' CAMPO

**PHARMACIST:**

By: Thomas V. Thomas

Signature: _____

**EXHIBIT 6**

**LIMITED POWER OF ATTORNEY**
**FOR PHARMACY LICENSES, AND**
**DEA FORMS AND ELECTRONIC ORDERS**

Registrant: **Promise Hospital of Salt Lake, Inc.**
Address:    **4252 Birkhill Boulevard**
**Murray, UT 84107**
DEA Registration Number: **FP8318366**
Pharmacy License Number:**11240499-1704**

      **Promise Hospital of Salt Lake, Inc.** ("*Registrant*") operates a long term acute care hospital at **4252 Birkhill Boulevard, Murray, UT 84107** (the "*Facility*"). In connection with the operation of the Facility, Registrant currently holds: (1) Pharmacy License Number 11240499-1704; and (2) State Controlled Substance License Number 11240499-8913. Registrant is also authorized under DEA registration number **FP8318366** to sign the current applications for registration and licensure as the registrant under the Controlled Substances Act (21 U.S.C. §801 et seq.) or the Controlled Substances Import and Export Act of the United States (21 U.S.C. §951 et seq.). This Limited Power of Attorney for Pharmacy Licenses, and DEA Forms and Electronic Orders (this "*Limited POA*") is effective as of the Transition Date, as defined in that certain Asset Purchase Agreement dated February 25, 2019, as amended, between, *inter alios*, Registrant and Agent (as defined below) (the "*Effective Date*").

      Registrant has made, constituted, and appointed, and hereby makes, constitutes and appoints **KPC Promise Hospital of Salt Lake, LLC.** ("*Agent*") and **John Benson** (the "*Pharmacist*," and collectively with Agent, the "*Permitted Group*") as Registrant's agent and true and lawful attorney-in-fact for the limited purposes of utilizing Registrant's DEA registration and DEA order forms, and pharmacy licenses, pharmacy health care entity licenses, and any other registrations required under the laws of the United States or the State of Utah, to the extent permissible under applicable laws, to continue pharmacy operations located at the Facility (the "*Pharmacy*"). The Permitted Group may act in this capacity until such time as Agent or its designee obtains a new pharmacy license, pharmacy health care entity license, DEA registration, and any other such registrations, as required by law for the Pharmacy, but in no event shall this Limited POA continue more than one hundred eighty (180) calendar days after the Effective Date (unless otherwise extended by the parties). Registrant further grants this Limited POA to Agent to act as the true and lawful agent and attorney-in-fact of Registrant, and to act in the name, place, and stead of Registrant, to execute applications for books of official order forms, to sign such orders and order forms in requisition for Schedules, I, II, III, IV, and V controlled substances, whether these orders be on written forms or electronic, in accordance with Section 308 of the Controlled Substances Act (21 U.S.C. §828) and part 1305 of Title 21 of the Code of Federal Regulations, and to carry out the controlled substance activities of the Pharmacy under Registrant's DEA registration.

      Registrant recognizes that it remains legally responsible for the Pharmacy and controlled substance licenses and DEA and other registrations issued to it, during the period in which this Limited POA is in effect. Therefore, Registrant grants this Limited POA based upon the following covenants and warranties of Agent: (a) the Permitted Group shall follow and abide by and comply with all federal and state laws governing the regulation of controlled substances and pharmacy practice at all times while utilizing this Limited POA; and (b) Agent, or its designee, shall make application for and pursue its own pharmacy and controlled substance licenses and DEA and other registrations which are required for the distribution of pharmaceuticals, including but not limited to controlled substances, at the Pharmacy, as soon as practicable after the Effective Date.

This Limited POA shall exist from the Effective Date until the earlier of the occurrence of one of the following events, at which time this Limited POA shall automatically terminate (unless otherwise extended by the parties): (a) one hundred eighty (180) days after the Effective Date; or (b) the date upon which Agent is issued all pharmacy and controlled substance licenses, and DEA and other registrations required for the distribution of pharmaceuticals at the Pharmacy.

This Limited POA may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement, binding on all of the parties hereto.

**[signature page follows]**

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**

Promise Hospital of Salt Lake, Inc.

By: _____

Name: __Wayne Kinsey__

Title: __CEO__

**AGENT:**

KPC Promise Hospital of Salt Lake, LLC

By: _____

Name: _____

Title: _____


**WITNESSES:**

1. _____ Sam Floyd

2. _____ Tracy W. McCluskey

**WITNESSES:**

1. _____

2. _____

**PHARMACIST:**

By: John Benson

Signature: _____

IN WITNESS WHEREOF, Registrant and Agent have executed this Limited POA as of the date first written above.

**REGISTRANT:**

**Promise Hospital of Salt Lake, Inc.**

By:_____

Name:_____

Title:_____

**AGENT:**

**KPC Promise Hospital of Salt Lake, LLC**

By:_____

Name: _Kali P. Chaudhuri_____

Title: _Manager_____

**WITNESSES:**

1._____

2._____

**WITNESSES:**

1._____
WILLIAM E. THOMAS

2._____
NORA C DE'CAMPO

**PHARMACIST:**

By: John Benson

Signature:_____