## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PROMISE HEALTHCARE GROUP, LLC., *et al.*,[1] | : | Case No. 18-12491 (CSS) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

### **SECOND AMENDED JOINT PLAN OF LIQUIDATION**

DLA PIPER LLP (US)
Stuart M. Brown (#4050)
Matthew S. Sarna (#6578)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: Stuart.Brown@dlapiper.com
      Matthew.Sarna@dlapiper.com

WALLER LANSDEN DORTCH & DAVIS, LLP
John Tishler (admitted *pro hac vice*)
Katie G. Stenberg (admitted *pro hac vice*)
Blake D. Roth (admitted *pro hac vice*)
Tyler N. Layne (admitted *pro hac vice*)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: John.Tishler@wallerlaw.com
      Katie.Stenberg@wallerlaw.com
      Blake.Roth@wallerlaw.com
      Tyler.Layne@wallerlaw.com

July 30, 2020

*Counsel for the Debtors*

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, L.L.C. (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179),  Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc.  (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc.  (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), Success Healthcare 1, LLC (6535), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766).  The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL  33431.

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz, Esq.
Bradford J. Sandler, Esq.
Colin R. Robinson, Esq.
919 N. Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:  jpomerantz@pszjlaw.com
           bsandler@pszjlaw.com
           crobinson@pszjlaw.com

SILLS CUMMIS & GROSS P.C.
Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
One Riverfront Plaza
Newark, NJ 07102
Telephone:  973-643-7000
Facsimile:  973-643-6500
Email: asherman@sillscummis.com
bmankovetskiy@sillscummis.com

July 30, 2020

*Counsel to the Official Committee of Unsecured Creditors*

# TABLE OF CONTENTS

Page

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ................................... 1

    A.   Defined Terms ........................................................................................................ 1

    B.   Rules of Interpretation ......................................................................................... 18

    C.   Exhibits ............................................................................................................... 19

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS ................................................ 19

    A.   Establishment of Final Administrative Claims Bar Date ...................................... 19

    B.   Administrative Claims ......................................................................................... 20

    C.   Professional Compensation and Reimbursement Claims ...................................... 20

    D.   Priority Tax Claims .............................................................................................. 21

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS ....................................................................................................................... 21

    A.   Summary ............................................................................................................. 21

    B.   Classification and Treatment of Claims and Equity Interests ............................... 23

    C.   Objections and Defenses ...................................................................................... 26

    D.   Attachment of Liens ............................................................................................ 26

    E.   Survival and Release of Liens .............................................................................. 26

    F.   Surcharge Under Section 506(c) of the Bankruptcy Code .................................... 27

    G.   Estimation of Claims ........................................................................................... 27

    H.   Distribution Cap .................................................................................................. 28

    I.   Special Provision Governing Unimpaired Claims ................................................ 28

    J.   Elimination of Vacant Classes ............................................................................. 28

    K.   Presumed Acceptance by Voting Classes That Do Not Vote ................................ 29

    L.   Nonconsensual Confirmation ............................................................................... 29

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ....................................... 29

    A.   Overview ............................................................................................................. 29

    B.   Substantive Consolidation for Voting and Distribution Purposes ........................ 29

    C.   Sources of Consideration for Distributions under the Plan ................................... 31

    D.   The Liquidating Trustee and Debtor Representative ............................................ 31

    E.   Role of the Liquidating Trustee ........................................................................... 32

    F.   Role of the Debtor Representative ........................................................................ 32

    G.   Vesting of Assets ................................................................................................. 32

    H.   The Liquidating Trust .......................................................................................... 33

I.  Income Tax Status.................................................................................... 34

J.  Liquidating Trust's Post-Effective Date Expenses ..................................... 35

K.  Powers and Authority of the Liquidating Trustee...................................... 35

L.  Authority of the Debtor Representative .................................................... 36

M.  Employment and Compensation ................................................................ 36

N.  Liquidating Trustee as Successor in Interest to the Debtors and Committee ................ 36

O.  Use of Existing Accounts........................................................................... 37

P.  Tax Reporting ............................................................................................ 37

Q.  Dissolution ................................................................................................ 37

R.  Indemnification of the Liquidating Trustee and Debtor Representative ........................... 38

S.  Continued Corporate Existence ................................................................ 38

T.  Cancellation of Existing Securities and Agreements................................. 38

U.  Operations of the Debtors Between the Confirmation Date and the Effective Date ........ 38

V.  Automatic Stay........................................................................................... 39

W.  The Committee........................................................................................... 39

X.  Books and Records .................................................................................... 40

Y.  Corporate Action........................................................................................ 40

Z.  Preservation of Causes of Action.............................................................. 40

ARTICLE V. PROVISIONS GOVERNING DISTRIBUTIONS ................................. 42

A.  Distribution Dates ..................................................................................... 42

B.  Disbursing Agents..................................................................................... 42

C.  Record Date for Distributions ................................................................... 43

D.  Delivery of Distributions ........................................................................... 43

E.  Undeliverable and Unclaimed Distributions.............................................. 43

F.  Manner of Cash Payments under the Plan ............................................... 44

G.  Compliance with Tax Requirements.......................................................... 44

H.  Interest on Claims ..................................................................................... 44

I.  No Distribution in Excess of Allowed Amount of Claim............................. 45

J.  Setoff and Recoupment............................................................................. 45

K.  De Minimis Distributions; Charitable Donation......................................... 45

L.  United States Trustee Fees....................................................................... 45

M.  No Distributions on Late-Filed Claims...................................................... 46

N.  Claims Paid or Payable by Third Parties .................................................. 46

O.    Distributions Free and Clear ......................................................................... 47

P.    Not Securities; Section 1145 Exemption ..................................................... 47

ARTICLE VI. DISPUTED CLAIMS AND CLAIM OBJECTIONS ......................................... 47

A.    Payments and Distributions on Disputed Claims and Claims That Have Otherwise Not Been Allowed......................................................................................................... 47

B.    Disputed Claims Reserve .............................................................................. 47

C.    Claim Objections ........................................................................................... 48

D.    Objection Deadline ........................................................................................ 48

E.    Disallowance of Untimely Claims ................................................................ 48

F.    Allowance of Claims...................................................................................... 49

ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS............................................. 49

A.    Assumption or Rejection of Executory Contracts and Unexpired Leases ....... 49

B.    Claims Based on Rejection of Executory Contracts and Unexpired Leases ............ 50

C.    Indemnification and Reimbursement ............................................................. 50

D.    Certain Insurance Policy Matters.................................................................. 50

ARTICLE VIII. CONDITIONS PRECEDENT ........................................................................ 51

A.    Conditions Precedent ..................................................................................... 51

B.    Waiver............................................................................................................. 52

C.    Effect of Failure of Conditions ..................................................................... 52

D.    Substantial Consummation ............................................................................ 53

E.    Notice of Effective Date ................................................................................ 53

ARTICLE IX. INDEMNIFICATION, RELEASE, INJUNCTIVE, AND RELATED PROVISIONS .................................................................................................................... 53

A.    Term of Bankruptcy Injunction or Stay ........................................................ 53

B.    Releases........................................................................................................... 53

C.    Exculpation ..................................................................................................... 55

D.    Injunctive Provisions ..................................................................................... 55

E.    Limitation on Liability of the Liquidating Trustee and Debtor Representative ............... 58

F.    Injunction in Furtherance of Releases, Exculpations, and Limitations of Liability ......... 58

G.    Releases of Liens and Cancellation of Documents........................................ 58

ARTICLE X. RETENTION OF JURISDICTION ................................................................... 59

ARTICLE XI. MISCELLANEOUS PROVISIONS................................................................. 61

A.    Modification of Plan ...................................................................................... 61

B.    Extension of Time........................................................................................... 62

C.  Post-Effective Date Notice List ................................................................................. 62

D.  Revocation of the Plan ................................................................................................ 62

E.  Binding Effect .............................................................................................................. 62

F.  Successors and Assigns ................................................................................................ 63

G.  Governing Law ............................................................................................................ 63

H.  Reservation of Rights .................................................................................................. 63

I.  Article 1146 Exemption .............................................................................................. 63

J.  Section 1125(e) Good Faith Compliance .................................................................... 63

K.  Further Assurances ...................................................................................................... 63

L.  Service of Documents .................................................................................................. 64

M.  Filing of Additional Documents ................................................................................. 65

N.  Severability .................................................................................................................. 65

O.  Entire Agreement ......................................................................................................... 65

P.  No Stay of Confirmation Order ................................................................................... 65

The Debtors in these Chapter 11 Cases and the Committee (as defined below, and together with the Debtors, the "***Plan Proponents***") jointly propose the following Second Amended Joint Plan of Liquidation under chapter 11 of the Bankruptcy Code.

# ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Defined Terms

Unless the context requires, the following terms shall have the following meanings when used in capitalized form in this Plan:

1.    "***Accrued Professional Compensation***" means, at any given moment, all accrued fees and expenses (including, without limitation, fees or expenses Allowed or awarded by a Final Order of the Bankruptcy Court), whether paid or unpaid, (i) for legal, financial advisory, accounting, liquidation, and other professional services, and reimbursement of expenses, of Professionals that are awardable and allowable under sections 328, 330(a), or 331 of the Bankruptcy Code and rendered prior to the Effective Date, or (ii) for which compensation and reimbursement is awardable and allowable under sections 503(b)(3) through 503(b)(6) of the Bankruptcy Code, including in connection with (a) applications for allowance of fees and expenses prepared and/or filed in accordance with the Bankruptcy Code and Bankruptcy Rules before or after the Effective Date, (b) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, and (c) applications for allowance of Administrative Claims arising under sections 503(b)(2) or 503(b)(3) through 503(b)(6) of the Bankruptcy Code. Accrued Professional Compensation also includes all accrued fees and expenses of the Claims Agent as of the Effective Date.  To the extent any Professional has voluntarily reduced monthly or interim or final applications for fees and expenses or the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

2.    "***Administrative Claims***" means Claims that have been filed timely and properly (a) with respect to Claims accruing on or after the Petition Date through and including April 30, 2019 that remain unpaid, before the Interim Administrative Claims Bar Date, (b) with respect to Claims accruing on or after May 1, 2019 through and including September 1, 2019 that remain unpaid, before the Second Interim Administrative Claims Bar Date and (c) with respect to Claims accruing (i) on or after September 1, 2019 through the Effective Date that remain unpaid and (ii) prior to September 1, 2019 where the applicable Holder of such claim was not served with notice of the Interim Administrative Claims Bar Date or Second Interim Administrative Claims Bar Date, as applicable, before the Final Administrative Claims Bar Date set forth in the Confirmation Order (except, in each case, as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation: the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and

payments for goods and other services and leased premises, as determined by the Bankruptcy Court). Any fees or charges assessed against the Estates under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Claims and shall be paid in accordance with Article V.L of this Plan. Notwithstanding anything to the contrary in this Plan, the filing of an Administrative Claim shall not be required in order to receive payment for any tax liability described in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code.  Notwithstanding anything contained herein, no Intercompany Claims or Settlement Claims shall constitute Administrative Claims.

3.      "*Alleged Lease Indemnification Claims*" means any alleged indemnification Claims related to PHI's assumption of the Principal Guarantees, which Alleged Lease Indemnification Claims shall be deemed Allowed on the Effective Date pursuant to the terms of the Lease Indemnification Estimation set forth in Article III.G of this Plan.

4.      "*Alleged Legal Expense Indemnification Claim*" means any alleged legal expense indemnification Claim arising under section 6.1 of the Sun Capital Settlement Agreement.

5.      "*Allowed*" means, with respect to any Claim against the Debtors, except as otherwise provided in this Plan:

      a.   a Claim that both (i) has been scheduled by the Debtors in their Schedules as other than disputed, contingent, or unliquidated and (ii) has not been objected to on or before the Claims Objection Bar Date;

      b.   a Claim evidenced by a valid proof of claim filed in the Chapter 11 Cases by the applicable Bar Date that either (i) has not been objected to on or before the Claims Objection Bar Date or (ii) has been allowed by a Final Order of the Bankruptcy Court;

      c.   a Claim that is allowed: (i) in any stipulation or written agreement with the Debtors of amount and nature of Claim executed prior to the Effective Date and approved by Final Order of the Bankruptcy Court; (ii) in any stipulation or written agreement with the Liquidating Trustee of amount and nature of Claim executed after the Effective Date; or (iii) by any contract, instrument, or other agreement entered into or assumed in connection with this Plan;

      d.   a Claim that is allowed by this Plan, upon the Effective Date of the Plan; or

      e.   is not a Disputed Claim.

6.      "*Amended Schedules Bar Date*" means the later of (a) the General Bar Date, or (b) 4:00 p.m. (prevailing Eastern time) on the date that is thirty (30) days after service of a notice on the applicable claimant of the Schedules Amendment (as defined in the Bar Date Order), as established in the Bar Date Order.

7.      "***Bankruptcy Code***" means sections 101 *et seq.* of title 11 of the United States Code and applicable portions of titles 18 and 28 of the United States Code.

8.      "***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases and, to the extent of any withdrawal of the reference made pursuant to section 157 of title 28 of the United States Code, the unit of such District Court pursuant to section 151 of title 28 of the United States Code or any other court exercising competent jurisdiction over the parties and subject matter or res.

9.      "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 28 of the United States Code, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

10.      "***Bar Date***" means, collectively or individually, as applicable, (i) the General Bar Date, (ii) the Amended Schedules Bar Date, (iii) the Interim Administrative Claims Bar Date, (iv) the Second Interim Administrative Claims Bar Date, (v) the Final Administrative Claims Bar Date, (vi) the Governmental Bar Date, and (vii) any other deadline established for filing a proof of claim or claim payment request in the Chapter 11 Cases by this Plan or a Final Order.

11.      "***Bar Date Order***" means the order of the Bankruptcy Court dated April 17, 2019 [D.I. 984], establishing the General Bar Date, the Governmental Bar Date, the Interim Administrative Claims Bar Date, and the Amended Schedules Bar Date, with only those exceptions permitted thereby.

12.      "***Beneficial Holder Record***" means the list prepared by the Debtors of Beneficiaries of the Intercompany Loans as of the Voting Record Date and the PHG Percentage Membership of each Beneficiary of the Intercompany Loans, which list shall be used for solicitation, voting and distribution purposes with respect to Settlement Claims in Class 4.

13.      ***Beneficiaries of the Intercompany Loans***" means the beneficial holders of the Settlement Claims as set forth on the Beneficial Holder Record.

14.      "***Books and Records***" means all available books and records of the Debtors, including, without limitation, all documents and communications of any kind, whether physical or electronic.

15.      "***Business Day***" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

16.      "***Cash***" means cash and cash equivalents in certified or immediately available U.S. funds, including, but not limited to, bank deposits, checks, and similar items.

17.    "***Causes of Action***" means any and all Claims, actions, causes of action, choses in action, rights, demands, suits, liabilities, encumbrances, lawsuits, adverse consequences, debts, damages, dues, sums of money, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, restraints, injunctions, remedies (legal, equitable, mixed, or otherwise), rights of setoff, rights of recoupment, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including those of the Debtors and/or the Estates), subordination rights, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, and whether held in a personal or representative capacity, that are or may be pending as of the Effective Date or instituted thereafter against any Entity, based in law or equity (or mixed law and equity), including under the Bankruptcy Code or any under any other federal or state statute, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the Effective Date, including, without limitation, (i) the right to object to, challenge or otherwise contest any Claims, whether or not any such Claim is the subject of a proof of claim; (ii) all Claims, causes of action (avoidance actions or otherwise), objections, rights, and remedies arising under chapter 5 of the Bankruptcy Code pursuant to, among others, sections 502, 510, 542 through 545 and 547 through 553 or 558 thereof, including all Chapter 5 Actions, or similar or equivalent Claims, causes of action, objections, rights, and remedies arising under state law; (iii) all Tort Claims, D&O Claims, Principal Claims, and Professional Claims; (iv) Claims under any Insurance Policies applicable to the Debtors; (v) all Claims of any kind or nature arising under state or federal law against any of the Debtors' consultants, managers (current or past), advisors, auditors, or other professionals relating to services rendered prior to the Petition Date; (vi) all Claims, causes of action, and other rights (including rights to challenge any asserted Lien) of any kind or nature against any Creditor asserting a secured claim in these cases, other than Claims or causes of action released or otherwise waived during the Chapter 11 Cases; (vii) all legal and equitable defenses against any Claim or cause of action asserted against the Debtors; (viii) all Claims, causes of action, and other rights (including rights to challenge any asserted Lien) of any kind or nature against any Creditor asserting a secured claim in the Chapter 11 Cases, other than Claims or causes of action released or otherwise waived during the Chapter 11 Cases; (ix) all Claims and/or causes of action of any kind or nature arising under state or federal law arising under a theory of negligence, professional negligence, and/or malpractice; (x) all Claims and/or causes of action of any kind or nature arising under state or federal law based upon the formation and capitalization of the Debtors; (xi) all Claims and/or causes of action of any kind or nature arising under state law based fraudulent conveyance theories; (xii) all Claims and/or causes of action of any kind or nature arising from the payment and/or repayment of Claims by and/or to any affiliate of any Debtor herein; and (xiii) all Claims and avoidance, preference, recovery, subordination or other actions against insiders.  The foregoing definition shall be construed in accordance with its broadest possible meaning, and any doubts or ambiguities shall be resolved in favor of inclusivity.  **As set forth more fully in Article IV, except as otherwise expressly provided in the Plan, any and all Causes of Action, including Debtor Rep Causes of Action, are preserved under the Plan.**

18.     "*Chapter 5 Actions*" means any and all Claims arising under chapter 5 of the Bankruptcy Code and any and all fraudulent conveyance, voidable preference, or avoidable transfer Claims that, in any instance, could be brought under state or federal law.  The term "Chapter 5 Actions" shall include, but not be limited to, all causes of action under chapter 5 of the Bankruptcy Code and any similar state or federal law against persons and entities identified as recipients of transfers from any of the Debtors prior to the Petition Date identified in the Debtors' respective Statements of Financial Affairs, which are available at https://cases.primeclerk.com/promisehealthcaregroup/ under the "Schedules and SOFA" quick link.

19.     "*Chapter 11 Cases*" means the chapter 11 cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court, which Chapter 11 Cases are jointly administered.

20.     "*Claim*" has the meaning as defined in section 101(5) of the Bankruptcy Code.

21.     "*Claims Agent*" means Prime Clerk LLC, the Bankruptcy Court-appointed claims and noticing agent in the Chapter 11 Cases.

22.     "*Claims Objection Bar Date*" means the date by which objections to Claims must be filed, which shall be one hundred eighty (180) days after the Effective Date for Other Secured Claims, Administrative or Priority Claims, including Other Priority Claims, and two hundred forty days (240) days after the Effective Date for Alleged Legal Expense Indemnification Claims, General Unsecured Claims and Convenience Class Claims; *provided, however*, that the Liquidating Trustee may seek extensions of this date from the Bankruptcy Court, with notice only to the Post-Effective Date Notice List.

23.     "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III in this Plan and under section 1122(a) of the Bankruptcy Code.

24.     "*Class A Interest*" means a non-certificated beneficial interest in the Liquidating Trust granted to the holders of Allowed Settlement Claims pro rata based on each holder's PHG Percentage Membership, which shall entitle such holders to share pro rata in the Class A Trust Recovery based on each holder's PHG Percentage Membership.

25.     "*Class A Trust Recovery*" means 25% of all assets held or the proceeds thereof vested or recovered in the Liquidating Trust other than (i) the Disputed Claims Reserve, (ii) the Legal Expense Escrow (except as otherwise provided in the Plan), and (iii) proceeds of any Causes of Action against non-insiders arising under chapter 5 of the Bankruptcy Code, after the full satisfaction of or reserve for Allowed Administrative Claims, Allowed Accrued Professional Compensation Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, Allowed Other Priority Claims, and the costs and expenses of the Liquidating Trustee and Debtor Representative (including all Post-Effective Date Expenses).

26.     "***Class B Interest***" means a non-certificated beneficial interest in the Liquidating Trust granted pro rata to holders of Allowed General Unsecured Claims, which shall entitle such holders to share pro rata in the Class B Trust Recovery.

27.     "***Class B Trust Recovery***" means:

(A) 75% of all assets held or the proceeds thereof vested or recovered in the Liquidating Trust other than (i) the Disputed Claims Reserve, (ii) the Legal Expense Escrow (except as otherwise provided in the Plan), and (iii) proceeds of any Causes of Action against non-insiders arising under chapter 5 of the Bankruptcy Code (which proceeds shall be distributed pursuant to subsection (B) below); and

(B) 100% of the proceeds of any Causes of Action against non-insiders arising under chapter 5 of the Bankruptcy Code,

after the full satisfaction of or reserve for Allowed Administrative Claims, Allowed Accrued Professional Compensation Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, Allowed Other Priority Claims, and the costs and expenses of the Liquidating Trustee and Debtor Representative (including all Post-Effective Date Expenses).

28.     "***Committee***" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the U.S. Trustee.

29.     "***Concordia Lease***" means that certain agreement between Vidalia Real Estate Partners LLC and Concordia Bank & Trust, Co., with respect to that certain financing arrangement.

30.     "***Confirmation Date***" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

31.     "***Confirmation Hearing***" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Plan Proponents seek entry of the Confirmation Order, as such hearing(s) may be adjourned or continued from time to time.

32.     "***Confirmation Order***" means the order of the Bankruptcy Court (including all exhibits and schedules thereto) confirming the Plan under section 1129 of the Bankruptcy Code, which order shall be acceptable to the Plan Proponents in their sole discretion.

33.     "***Convenience Class Claim***" means a Claim that would otherwise be a General Unsecured Claim but for treatment as a Convenience Class Claim that is (i) scheduled or asserted in the amount of $10,000 or less or (ii) scheduled or asserted in an amount greater than $10,000 but reduced to $10,000 by election of its Holder.

34.     "***Creditor***" has the meaning in section 101(10) of the Bankruptcy Code.

35.    "**D&O Claims**" means any and all rights, Causes of Action and Claims arising under state and/or federal law against the Debtors' current and former directors, trustees, managers and/or officers, including Claims for breach of fiduciary duty, and the proceeds of any such rights and Claims, including from any Insurance Policies associated therewith.

36.    "**Debtor Loan Guarantors**" means any Debtor entity that allegedly guaranteed PHI's obligations under any of the Intercompany Loan Documents and/or pledged its assets as security for PHI's obligations under any of the Intercompany Loan Documents.

37.    "**Debtor Releasing Parties**" has the meaning given to it under Article IX.B.1 of this Plan.

38.    "**Debtor Rep Causes of Action**" means all Tort Claims, D&O Claims, Principal Claims, Professional Claims, and Claims under any Insurance Policies applicable to the Debtors.

39.    "**Debtor Representative**" means the person or entity identified in the Plan Supplement and any successor Debtor Representative.  Any successor Debtor Representative must file with the Bankruptcy Court a notice regarding the change to the identity of the Debtor Representative and the identity of any such successor Debtor Representative will become part of the Plan pursuant to the Confirmation Order.

40.    "**Debtor Representative Professionals**" means the professionals selected by the Debtor Representative, in his discretion after consultation with the POC, reasonably necessary to assist the Debtor Representative in the performance of his duties under the Plan.

41.    "**Debtors**" means the debtors and debtors in possession in the Chapter 11 Cases, and where applicable, the Estates thereof, provided, that 'Debtors' does not include Professional Rehabilitation Hospital, L.L.C. (Case No. 18-12514); St. Alexius Properties, LLC (Case No. 18-12527); Success Healthcare 2, LLC (Case No. 18-12525); St. Alexius Hospital Corporation #1 (Case No. 18-12526); or any other debtor whose case had been dismissed as of the date of the Plan.  Notwithstanding anything contained herein, all orders of this Court effectuating the dismissal of Professional Rehabilitation Hospital, L.L.C. (Case No. 18-12514); St. Alexius Properties, LLC (Case No. 18-12527); Success Healthcare 2, LLC (Case No. 18-12525); St. Alexius Hospital Corporation #1 (Case No. 18-12526); or any other debtor whose case had been dismissed as of the date of the Plan shall remain in full force and effect, including, but not limited to, with respect to the rights of any creditors to pursue any claims or causes of action against such Debtor entities who cases have been dismissed and all such rights, claims and causes of action are expressly reserved and preserved.  Further, notwithstanding anything else in the Plan to the contrary, nothing in this Plan affects any rights or obligations of any chapter 11 debtor in these jointly administered cases whose case has been dismissed, nor the rights of any creditor or equity security holder of any such debtor.

42.    "**DIP Agent**" means Wells Fargo Bank, National Association, a national banking association, as the administrative agent for the lenders under the DIP Credit Agreement.

43.    "***DIP Credit Agreement***" means that certain Senior Secured, Priming and Superpriority Debtor-in-Possession Credit Agreement, dated as of November 7, 2018, by and among the lenders identified on the signature pages thereto, the DIP Agent, and certain of the Debtors, as borrowers and guarantors, as amended, restated, supplemented or otherwise modified from time to time.

44.    "***DIP Indemnification Claims***" means any contingent indemnification obligations and other contingent claims under the DIP Credit Agreement, the other Loan Documents (as defined in the DIP Credit Agreement) or otherwise in respect of the Obligations (as defined in the DIP Credit Agreement).

45.    "***DIP Payoff Letter***" means that certain letter agreement, dated as of May 2, 2019, by and between the DIP Agent and certain of the Debtors, as borrowers and guarantors.

46.    "***Disbursing Agent***" means the Entity empowered and authorized to make all Distributions under Article V.C of this Plan.

47.    "***Disclosure Statement***" means that certain *Plan Proponents' Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code*, including, without limitation, all exhibits and schedules thereto, as amended, supplemented, or modified from time to time, filed on the date hereof [D.I.  ].

48.    "***Disputed***" means any Claim: (a) listed on the Schedules as unliquidated, disputed, or contingent, and for which no proof of Claim has been filed with respect to such Claim; (b) as to which the Debtors, the Liquidating Trustee, or any other party in interest, has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, or this Plan, which has not been withdrawn or determined by a Final Order; or (c) otherwise disputed in accordance with applicable bankruptcy or insolvency law, provided such dispute has not been withdrawn or determined by a Final Order.

49.    "***Disputed Claims Reserve***" means the reserve created and funded in compliance with Article VI.B of this Plan, which, for the avoidance of doubt, does not include any funds in the Tax Escrow, the Legal Expense Escrow or the Guarantees Escrow, all of which shall be treated pursuant to Article VI(B) of the Plan.

50.    "***Dissolved Subsidiaries***" means, collectively, Promise Hospital of San Antonio, Inc.; Promise Hospital of Southeast Texas, Inc.; Promise Hospital of Gonzales, Inc.; HLP Partners of Miami Dade, L.L.C.; HLP Properties of Lee, L.L.C.; and HLP Properties of Port Arthur, LLC.

51.    "***Distributions***" means the distributions of Cash and property to be made in accordance with the Plan.

52.    "***Effective Date***" means a Business Day selected by the Plan Proponents that is on or after the date by which all conditions precedent specified in Article VIII of this Plan have been satisfied or waived. Within five (5) Business Days following the Effective Date, the Debtors shall file a notice of the Effective Date with the Bankruptcy Court.

53.    "***Entity***" has the meaning set forth in section 101(15) of the Bankruptcy Code and shall include any Person as such term is defined in section 101(41) of the Bankruptcy Code.

54.    "***Equity Interest***" means any equity interest in a Debtor that existed immediately prior to the Petition Date.

55.    "***Estates***" means the Debtors' estates created under section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Cases.

56.    "***Exculpated Parties***" means each of the following, solely in their capacity as such, collectively and individually:  (a) the Debtors, (b) the Released Parties (excluding the firm of Butler Snow, LLP), (c) the Committee, (d) the Committee's members (solely in their capacity as members), (e) the Committee's Professionals, (f) the Post-Petition Officers, (g) the Fee Examiner, and (h) the Patient Care Ombudsman.

57.    "***Fee Examiner***" means M. Jacob Renick of M.J. Renick & Associates, LLC, in his capacity as fee examiner, as appointed by the Court pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures Concerning Compensation and Reimbursement of Expenses of Professional and Members of Official Committees and Consideration of Fee Applications* [D.I. 274].

58.    "***Final Administrative Claims Bar Date***" means the first Business Day that is thirty (30) days after the Effective Date and is the deadline for Holders of Administrative Claims accruing (i) on or after September 1, 2019 through the Effective Date and (ii) prior to September 1, 2019 where the applicable Holder of such claim was not served with notice of the Interim Administrative Claims Bar Date or Second Interim Administrative Claims Bar Date, as applicable, to file a request with the Bankruptcy Court for payment of an Administrative Claim in the manner indicated in Article II of this Plan.  The Final Administrative Claims Bar Date shall not apply to Professionals.

59.    "***Final Decree***" means the decree(s) contemplated under Bankruptcy Rule 3022.

60.    "***Final DIP Order***" means that certain *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition ABL Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief [D.I. 218] as amended by the Order Amending Final Debtorin-Possession Financing Order and Approving Amendment to Debtor-in-Possession Credit Agreement* [D.I. 1028].

61.    "***Final Order***" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to file an appeal, motion for reconsideration or rehearing, or request for a stay has expired with no appeal, motion for reconsideration or rehearing, or request for a stay having been timely filed, without giving effect to any motion that may be filed under Rule 7060; *provided*, *however*, that the Confirmation Order shall be deemed a Final Order upon its entry unless it has been stayed.

62.    "***General Bar Date***" means May 31, 2019 at 4:00 p.m. (prevailing Eastern time), as established in the Bar Date Order.

63.    "***General Unsecured Claims***" means Claims against any Debtor that are not Administrative Claims, Accrued Professional Compensation Claims, Priority Tax Claims, DIP Indemnification Claims, Secured Claims, Other Secured Claims, Other Priority Claims, Alleged Lease Indemnification Claims, Settlement Claims, Alleged Legal Expense Indemnification Claims, Convenience Class Claims, Intercompany Claims, or Equity Interests.  For the avoidance of doubt, General Unsecured Claims do not include any fees or charges assessed against the Estates under section 1930 of chapter 123 of title 28 of the United States Code.

64.    "***Governmental Bar Date***" means July 15, 2019 at 4:00 p.m. (prevailing Eastern time), as established in the Bar Date Order.

65.    "***Guarantees Escrow***" means the escrow established pursuant to the Lexmark Sale Order on account of the Alleged Lease Indemnification Claims in an amount of $1,780,000.

66.    "***Holder***" means a Person or Entity that is the legal or beneficial holder of a Claim or Equity Interest.

67.    "***Impaired***" has the meaning within sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

68.    "***Indemnified Persons***" means the Liquidating Trustee, the Liquidating Trust, and its employees, officers, directors, agents, representatives, and professionals, as the case may be, including the POC and the Liquidating Trustee Professionals.

69.    "***Insurance Policies***" includes any policy of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that at any time belonged or belongs to or included or includes a Debtor as a named insured, additional insured, beneficiary, or assignee, including, without limitation, any director and/or officer liability insurance policy.

70.    "***Intercompany Claims***" means any pre- or postpetition Claim against a Debtor held by another Debtor or by a controlled non-Debtor direct or indirect subsidiary of PHG, excluding any Settlement Claims.

71.     "***Intercompany Loan and Security Agreement***" means that certain Loan and Security Agreement, dated as of March 17, 2014, among PHI, as Borrower, the Intercompany Loan Guarantors, as Guarantors, and PHHI, as Lender, evidencing an alleged $75 million senior secured term loan deemed fully funded from alleged prior existing indebtedness.

72.     "***Intercompany Loan Documents***" means (a) the Intercompany Loan and Security Agreement, (b) the Intercompany Secured Note, and (c) and any amendments, modifications, supplements thereto, as well as any related notes, certificates, agreements, security agreements, documents and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) executed in connection with the Intercompany Loan and Security Agreement or the Intercompany Secured Note.

73.     "***Intercompany Secured Note***" means that certain Subordinated Term Note, dated as of March 17, 2014, among PHI, as Borrower, the Intercompany Loan Guarantors, as Guarantors, and PHHI, as Lender, evidencing an alleged $125,000,000 subordinated term loan deemed fully funded from alleged prior existing indebtedness.

74.     "***Intercompany Loan Guarantors***" means the Dissolved Subsidiaries and the Debtor Loan Guarantors.

75.     "***Interim Administrative Claims Bar Date***" means July 15, 2019 at 4:00 p.m. (prevailing Eastern time), as established in the Bar Date Order, with respect to Administrative Claims accruing on or before April 30, 2019.

76.     "***Lease Indemnification Estimation***" has the meaning given to it in Article III.G of this Plan.

77.     "***Legal Expense Escrow***" means the escrow established pursuant to the Lexmark Sale Order on account of the Alleged Legal Expense Indemnification Claims in an amount of $3,000,000.

78.     "***Legal Expense Indemnification Recovery***" means, in each instance upon the entry of a Final Order:

(i) to the extent the Liquidating Trustee successfully challenges the validity of any Alleged Legal Expense Indemnification Claim or successfully avoids the Debtors' obligations with respect thereto (collectively, a "***Successful Validity Challenge***"), then

(a) the Holders of such Alleged Legal Expense Indemnification Claims subject to a Successful Validity Challenge shall not be entitled to any Distribution on account thereof, and

(b) the funds in the Legal Expense Escrow shall be immediately released to the Liquidating Trust, free and clear of any liens, interests or other encumbrances (unless

there are remaining Alleged Legal Expense Indemnification Claims not subject to a Successful Validity Challenge, in which case the Legal Expense Escrow shall be treated as set forth in subsections (ii) or (iii) hereof) and shall be available for Distribution pursuant to the terms of this Plan;

(ii) to the extent the Liquidating Trustee successfully challenges the secured status of any Alleged Legal Expense Indemnification Claim (a "*Successful Status Challenge*"), then

(a) such Alleged Legal Expense Indemnification Claims subject to a Successful Status Challenge shall be treated as General Unsecured Claims and Holders of such Alleged Legal Expense Indemnification Claims shall receive Distributions in accordance with Article III(B)(6), and

(b) the funds in the Legal Expense Escrow shall be immediately released to the Liquidating Trust, free and clear of any liens, interests or other encumbrances (unless there are remaining Alleged Legal Expense Indemnification Claims that are not subject to a Successful Status Challenge, in which case the Legal Expense Escrow shall be treated as set forth in subsection (iii) hereof) and shall be available for Distribution pursuant to the terms of this Plan; or

(iii) to the extent any Alleged Legal Expense Indemnification Claim is not subject to a Successful Validity Challenge and/or a Successful Status Challenge (a "*Secured Legal Expense Indemnification Claim*"), then

(a) the Holders of such Secured Legal Expense Indemnification Claim shall be entitled to recovery in the amount of such Holder's Allowed Secured Legal Expense Indemnification Claim solely from the Legal Expense Escrow, which amount in the Legal Expense Escrow represents the maximum amount available for Distribution to all Holders of Allowed Secured Legal Expense Indemnification Claims, and

(b) any remaining funds in the Legal Expense Escrow after all distributions on account of Allowed Secured Legal Expense Indemnification Claims in accordance herewith shall be immediately released to the Liquidating Trust, free and clear of any liens, interests or other encumbrances;

*provided, however*, no Distribution shall be made on account of any contingent or unliquidated Alleged Legal Expense Indemnification Claim, including any Alleged Legal Expense Indemnification Claim treated as a General Unsecured Claim pursuant to the terms hereof and/or any Secured Legal Expense Indemnification Claim, unless and until any such contingent or unliquidated Alleged Legal Expense Indemnification Claim becomes a non-contingent, liquidated, and Allowed Claim.

79.     "*Lexmark Sale Order*" means the order entered by the Bankruptcy Court on February 18, 2019 (as amended on February 19, 2019), approving the sale of certain assets of Bossier Land Acquisition Corp., Promise Properties of Shreveport, LLC, and Promise Hospital

of Louisiana Inc. to Lexmark [Docket No. 788], as further amended on August 29, 2019 [Docket No. 1410]. Notwithstanding anything to the contrary, to the extent of any conflict or inconsistency between the Lexmark Sale Order and this Plan (including, without limitation, with respect to the adequate protection provisions for the Alleged Legal Expense Indemnification Claims and/or the Alleged Lease Indemnification Claims), any such conflicting and/or inconsistent provisions of the Lexmark Sale Order are superseded by this Plan, which Plan shall control and govern for all purposes.

80.    "*Lien*" has the meaning in section 101(37) of the Bankruptcy Code.

81.    "*Liquidating Trust*" means the trust to be established pursuant to this Plan and the Liquidating Trust Agreement that will effectuate the wind down of the Debtors and their Estates and make distributions pursuant to the terms of this Plan and Liquidating Trust Agreement. With respect to any action required or permitted to be taken by the Liquidating Trust, the term includes the Liquidating Trustee or any other Person or Entity authorized to take such action in accordance with the Liquidating Trust Agreement. In the event of any conflict between the terms of this Plan and the terms of the Liquidating Trust Agreement, the terms of this Plan shall govern.

82.    "*Liquidating Trust Agreement*" means the agreement establishing the Liquidating Trust, dated effective as of the Effective Date, between the Debtors and the Liquidating Trustee, which will be deemed approved by the Bankruptcy Court and become part of the Plan upon the entry of the Confirmation Order. The Debtors will file the final executed version of the Liquidating Trust Agreement with the Bankruptcy Court not less than seven (7) days prior to the anticipated occurrence of the Effective Date.

83.    "*Liquidating Trust Assets*" means, from and after the Effective Date (other than the Debtor Rep Causes of Action), (i) all assets, interests, and rights of the Debtors and their Estates that exist as of the Effective Date (whether received or acquired on or after the occurrence of the Effective Date) and any proceeds thereof, whether choate or inchoate, wherever and by whomever held, including, inter alia, the Debtors' Cash, Causes of Action, Chapter 5 Actions, Insurance Policies, Books and Records (collectively, the "*Debtors' Assets*"), all of which shall be transferred to the Liquidating Trust on the Effective Date pursuant to the terms of this Plan; (ii) the property or assets vested in the Liquidating Trust or the Liquidating Trustee pursuant to the terms of this Plan on or after the Effective Date, and (iii) any proceeds of the Debtor Rep Causes of Action.

84.    "*Liquidating Trustee*" means the person or entity identified in the Plan Supplement and any successor Liquidating Trustee appointed as provided in the Liquidating Trust Agreement. Any successor Liquidating Trustee must file with the Bankruptcy Court a notice regarding the change to the identity of the Liquidating Trustee and the identity of any such successor Liquidating Trustee will become part of the Plan pursuant to the Confirmation Order.

85.    "*Liquidating Trustee Professionals*" means the professionals selected by the Liquidating Trustee, in his discretion after consultation with the POC, reasonably necessary to

assist the Liquidating Trustee in the performance of his duties under the Liquidating Trust Agreement and the Plan.

86. "*Ordinary Course Professionals*" means any Person or Entity retained pursuant to the *Order Authorizing Debtors' Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [D.I. 199].

87. "*Other Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims, *provided, however*, that no Intercompany Claims or Settlement Claims shall constitute Other Priority Claims.

88. "*Other Secured Claim*s" means Secured Claims other than any Secured Claims that are Intercompany Claims or Settlement Claims; *provided, however*, that the DIP Indemnification Claims shall not be considered Other Secured Claims and payment of such DIP Indemnification Claims shall be governed by the terms of the DIP Payoff Letter and satisfaction of such DIP Indemnification Claims shall be limited to the amounts in the DIP Indemnity Account (as defined in the Final DIP Order).

89. "*Patient Care Ombudsman*" means Melanie L. Cyganowski, in her capacity as patient care ombudsman, as appointed by the U.S. Trustee [D.I. 159].

90. "*Person*" means a "person," as such term is defined in section 101(41) of the Bankruptcy Code.

91. "*Petition Date*" means the date on which the Debtors filed the Chapter 11 Cases, November 5, 2018.

92. "*PHG*" means Promise Healthcare Group, LLC.

93. "*PHG Percentage Membership*" means the percentage membership interest in PHG of each Beneficiary of the Intercompany Loans, which percentage membership interest for each Beneficiary of the Intercompany Loans shall be included on the ballot distributed to each such Beneficiary of the Intercompany Loans.

94. "*PHHI*" means Promise Healthcare Holdings, Inc.

95. "*PHI*" means Promise Healthcare, Inc.

96. "*Plan*" means this Second Amended Joint Plan of Liquidation, as described herein, including exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance herewith, with the Bankruptcy Code, with the Bankruptcy Rules, or with any order of the Bankruptcy Court.

97.     "*Plan Settlement*" means the settlement as set forth and approved in the Settlement Order.

98.     "*Plan Supplement*" means one or more supplements to the Plan containing certain schedules, documents, and/or forms of documents relevant to the implementation of the Plan, including, without limitation, (a) the identity of the Liquidating Trustee and Debtor Representative, (b) the Liquidating Trust Agreement, (c) the schedule setting forth a non-exhaustive list of potential Causes of Action, and (d) all other schedules, documents, and/or forms of documents necessary to comply with sections 1123(a)(7) and 1129(a)(5) of the Bankruptcy Code filed by the Debtors no later than seven (7) days before the Voting Deadline.

99.     "*POC*" means the committee of persons appointed as of the Effective Date to advise the Liquidating Trustee and Debtor Representative in the performance of their duties and obligations under the Plan for the benefit of the Holders of Allowed Claims.

100.     "*Post-Effective Date Expenses*" means all fees, costs, and expenses of the Debtor Representative, the Debtor Representative Professionals, the Liquidation Trustee, the Liquidating Trust, and the Liquidation Trustee Professionals, relating to the effectuation of this Plan and administration of the Liquidation Trust as described in this Plan and the Liquidating Trust Agreement.

101.     "*Post-Effective Date Notice List*" means the post-effective date notice list established pursuant to Article XI.C below.

102.     "*Post-Petition Officers*" means Charles Posternack, Suzanne Sterline, and Andrew Hinkelman.

103.     "*Priority Tax Claims*" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

104.     "*Principal Guarantees*" means the following personal guarantees of the Principals to third parties: (i) Guaranty of Lease dated as of November 14, 2008 by the Principals in favor of AFG Investment 5, LLC, pursuant to which the Principals, jointly and severally, guaranteed the obligations of Success Healthcare 1, LLC owing to AFG Investment 5, LLC pursuant to the Rosemead Lease, up to an aggregate amount not to exceed $1,000,000; and (ii) Limited Guaranty dated September 19, 2008 by the Principals in favor of Concordia Bank & Trust, Co., pursuant to which the Principals, jointly and severally, guaranteed the obligations of Vidalia Real Estate Partners LLC owing to Concordia Bank & Trust, Co., pursuant the Concordia Lease, up to a maximum amount not to exceed $780,000. As of the date hereof, there are no amounts due or owing or to become due and owing by the Principals pursuant to the Principal Guarantees.

105.     "*Principals*" means Peter R. Baronoff, Howard Koslow, and Lawrence Leder.

106.    "***Principal Claims***" means any and all rights, Causes of Action and Claims of any kind or nature arising under state and/or federal law against the Principals, including, but not limited to, Claims for any tort, including breach of fiduciary duty, and breach of contract, and the proceeds of any such rights and Claims, including from any Insurance Policies associated therewith.

107.    "***Pro Rata***" means the proportion that the amount of a Claim or Interest in a particular Class or Classes bears to the aggregate amount of all Claims (including Disputed Claims, but excluding disallowed Claims) or Interests in such Class or Classes.

108.    "***Professionals***" means (i) any Person or Entity employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code (including, but not limited to, Ordinary Course Professionals), and to be compensated for services rendered prior to the Effective Date under sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; and (ii) to the extent not included in the foregoing, the Claims Agent.

109.    "***Professional Claims***" means any and all rights, Causes of Action and Claims of any kind or nature arising under state and/or federal law against any of the Debtors' attorneys, consultants, managers, advisors, auditors, or other professionals (unless specifically released pursuant to Article IX of the Plan), including, but not limited to, Claims for any tort, including professional negligence claims.

110.    "***Released Parties***" means each of the following, solely in their capacity as such, collectively and individually:  (a) the Specified Directors, (b) Waller, Lansden Dortch & Davis, LLP, (c) DLA Piper LLP (US), (d) FTI Consulting, Inc., and (e) McDermott Will & Emery LLP.

111.    "***Rosemead Lease***" means that certain agreement between Success Healthcare 1, LLC and AFG Investment 5, LLC with respect to that certain real property located at 7500 East Hellman Avenue, Rosemead, California.

112.    "***Schedules***" mean the schedules of assets and liabilities, schedules of executory contracts and unexpired leases and statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, as may be amended, modified or supplemented from time to time.

113.    "***Second Bar Date Order***" means the order of the Bankruptcy Court dated December 4, 2019 [D.I. 1627], establishing the Second Interim Administrative Claims Bar Date, with only those exceptions permitted thereby.

114.    "***Second Interim Administrative Claims Bar Date***" means January 31, 2020 at 4:00 p.m. (prevailing Eastern time), as established in the Second Bar Date Order, with respect to Administrative Claims accruing on and after May 1, 2019 through and including September 1, 2019 that remain unpaid.

115.    "*Secured Claim*" means a Claim against the Debtors that is secured by a Lien on property in which the Estates have an interest, which Liens are valid, perfected, unavoidable and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined under section 506(a) of the Bankruptcy Code.

116.    "*Settlement Claims*" means the Unsecured PHG Intercompany Note Claims and any and all claims arising under or related to the Intercompany Loan Documents held by the Beneficiaries of the Intercompany Loans, which Settlement Claims shall be deemed Allowed on the Effective Date.

117.    "*Settlement Order*" means that certain [*Order Approving the Settlement Agreement among Debtors, the Committee, and the Beneficiaries of the Intercompany Loans*] [D.I. __].

118.    "*Solicitation Procedures Order*" means any order, including the exhibits and schedules thereto, entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan and approving the Disclosure Statement [D.I.   ].

119.    "*Specified Directors*" means Keith Kennedy, James Brown, Edmund Woodbury, Michael Keller, Donald Pollard, and Evatt Tamine, and the firm of Butler Snow LLP, in its capacity as counsel to Messrs. Kennedy, Brown and Woodbury as directors or managers of the Debtors in connection with these cases.

120.    "*Sun Capital Settlement Agreement*" means that certain settlement agreement dated January 9, 2013, by and among the Debtors (or predecessors thereof), the Principals and certain other entities.

121.    "*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

122.    "*Tax Escrow*" means the escrow established pursuant to the Lexmark Sale Order representing the unpaid balances that are alleged to be owed to certain taxing authorities under the Debtors' payment plan with such taxing authorities.

123.    "*Tort Claims*" means any and all claims of the Debtors based on any tort, including but not limited to any such D&O Claims, Principal Claims, or Professional Claims.

124.    "*U.S. Trustee*" means the Office of the United States Trustee in the District of Delaware.

125.    "*Unimpaired*" means not Impaired.

126.    "***Unsecured PHG Intercompany Note***" means that certain Unsecured Promissory Note, dated as of March 17, 2014, by PHHI in favor of PHG, evidencing an alleged $75,000,000 unsecured loan from PHG to PHHI.

127.    "***Unsecured PHG Intercompany Note Claims***" means any and all asserted Claims held by PHG arising under or related to the Unsecured PHG Intercompany Note.

128.    "***Voting Deadline***" means the date by which Creditors entitled to vote to accept or reject the Plan must submit their ballot(s) in accordance with the terms and instructions set forth in the Solicitation Procedures Order, which date shall be [_____], 2020 at [__]:[__] p.m. (prevailing Eastern Time), or such other date established by the Bankruptcy Court [D.I.  ].

129.    "***Voting Record Date***" means the record date established by the Bankruptcy Court pursuant to the Solicitation Procedures Order [D.I.  ].

## B.    Rules of Interpretation

1.    For purposes of this Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender include the masculine, feminine and the neutral gender; (b) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference in this Plan to an existing document or exhibit having been filed or to be filed means that document or exhibit, as it may thereafter be amended, modified or supplemented through and including the Confirmation Date, which, after they are filed, may be amended, modified, or supplemented only with the express written consent of the Plan Proponents; (d) unless otherwise specified, all references in this Plan to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) all exhibits and/or supplements to the Plan are incorporated herein, regardless of when those exhibits are filed; (h) except as expressly set forth in the Plan, to the extent any discrepancy exists between the description herein of a document or agreement that is an exhibit to the Plan and with the provisions of that exhibit, the actual agreement or document shall govern; (i) the words "includes" and "including" are not limiting; (j) any reference to an Entity or a Person as Holder includes that Entity's or Person's successors and assigns; (k) any immaterial effectuating provisions may be interpreted by the Plan Proponents in a manner that is consistent with the overall purpose and intent of the Plan, all without further order of the Bankruptcy Court; (l) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (m) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (m) the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby; (n) whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date, or as soon as practicable

4810-7810-7074.4

18

7118050

7362993

thereafter; and (o) all references in this Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

## C.    Exhibits

All exhibits and schedules, if any, to this Plan are incorporated into and are part of this Plan as if set forth herein. All exhibits and schedules to this Plan shall be filed with the Clerk of the Bankruptcy Court no later than at least seven (7) days before the Voting Deadline. The public may inspect these exhibits at the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. The Debtors will also post the exhibits on the Debtors' Claims Agent's website at https://cases.primeclerk.com/promisehealthcaregroup. Holders of Claims or Equity Interests may also request a copy of the exhibits, once filed, from the Debtors' Claims Agent by a written request sent to the following address:

Promise Healthcare Group, LLC Claims Processing Center
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street
Suite 1440
New York, NY 10165

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

Certain types of Claims are not placed into Classes; instead, such Claims are unclassified Claims.  Such unclassified Claims are not considered Impaired and their Holders are not entitled to vote on the Plan because they automatically receive specific treatment provided for them in the Bankruptcy Code.  As such, the Plan Proponents did not place the following Claims in any Class.  The respective treatment for these Claims is provided below.

## A.    Establishment of Final Administrative Claims Bar Date

1.    Except as otherwise provided in the Plan, the Bar Date Order, the Second Bar Date Order, or another order of the Bankruptcy Court, any Entity or Person that seeks allowance of an Administrative Claim arising on or after September 1, 2019 through the Effective Date shall file with the Bankruptcy Court and serve on counsel for the Liquidating Trustee a request for payment of such Administrative Claim by 5:00 p.m., prevailing Eastern time, on the Final Administrative Claims Bar Date. Requests for payment of an Administrative Claim must include at a minimum: (a) the name of the Holder seeking allowance of an Administrative Claim; (b) the amount of the Administrative Claim sought; (c) the basis asserted for allowance of the Administrative Claim; and (d) all supporting documentation that justifies allowance of the Administrative Claim asserted.  Any Person or Entity that is required to file and serve a request for allowance of an Administrative Claim by the Final Administrative Claims Bar Date that fails to file and serve a timely request will be forever barred, estopped, and enjoined from asserting any request for allowance of such Administrative Claim or participating in Distributions under the Plan on account thereof.

2.      A request for payment of an Administrative Claim consistent with the foregoing paragraph will be considered timely filed only if it is filed with the Bankruptcy Court and actually received by parties identified in Article II.A.1 of this Plan by 5:00 p.m., prevailing Eastern time, on the Final Administrative Claims Bar Date.  Requests for payment of Administrative Claims may not be delivered by facsimile, telecopy, or electronic mail transmission. The Final Administrative Claims Bar Date shall not apply to (a) Claims for Accrued Professional Compensation, or (b) Administrative Claims accruing on and after the Petition Date through and including April 30, 2019 or September 1, 2019, as applicable, to the extent the holders of such Administrative Claims received notice of the Interim Administrative Claims Bar Date or Second Interim Administrative Claims Bar Date, as applicable.  For the avoidance of doubt, to the extent any Claim is or was subject to a different and/or previously-established Bar Date, such different and/or previously-established Bar Date shall be deemed operative and will not be extended or deemed extended by virtue of this Article III.A.

3.      Notwithstanding anything to the contrary in this Plan, the Debtors' and the Committee's Professionals shall not be required to file a request for payment of any Administrative Claim by the Final Administrative Claims Bar Date for fees and expenses allowable under sections 330, 331, or 503(b)(2-6) of the Bankruptcy Code, because Professionals will instead file final fee applications as required by the Article II.C of this Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation Order.

## B.      Administrative Claims

In full and final satisfaction of each Allowed Administrative Claim, except to the extent that a Holder of an Allowed Administrative Claim and the Debtors or the Liquidating Trustee (as applicable) agree in writing to less favorable treatment for such Administrative Claim, the Liquidating Trustee shall pay in Cash, from the assets of the Debtors' Estates and/or the Liquidating Trust, each Holder of an Allowed Administrative Claim any unpaid amount of that Allowed Administrative Claim as follows: (a) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as practicable thereafter); (b) if such Claim is Allowed after the Effective Date, on the date the Claim is Allowed or as soon as practicable after it is Allowed (or, if not then due, when such Allowed Administrative Claim becomes due, or as soon as reasonably practicable); (c) when and upon such terms as may be agreed upon by the Holder of the Allowed Administrative Claim and the Liquidating Trustee; or (d) in accordance with any Final Order of the Bankruptcy Court, as applicable.

## C.      Professional Compensation and Reimbursement Claims

The deadline for Professionals to submit final applications for approval of Accrued Professional Compensation to the Bankruptcy Court shall be sixty (60) days after the Effective Date.  Any Professional or other Person or Entity that is required to file and serve a final application for approval of Accrued Professional Compensation that fails to file and serve a timely application will be forever barred, estopped, and enjoined from asserting any request for

payment of Accrued Professional Compensation or participating in Distributions under the Plan on account thereof.

All Professionals employed by the Debtors or the Committee (including Ordinary Course Professionals) shall provide to the Debtors an estimate of their paid and unpaid Accrued Professional Compensation through the Effective Date (including an estimate for fees and expenses expected to be incurred after the Effective Date to prepare and prosecute allowance of final fee applications) no later than five (5) days prior to the Confirmation Hearing. Thereafter, but in any event no later than the Effective Date, the Debtors shall fully fund an escrow account to provide for the payment of Accrued Professional Compensation such that the condition precedent in Article VIII.A.5 herein shall be deemed satisfied.

**D.      Priority Tax Claims**

In full and final satisfaction of each Allowed Priority Tax Claim, except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors or the Liquidating Trustee (as applicable) agree in writing to less favorable treatment for such Priority Tax Claim, the Liquidating Trustee shall pay in Cash, from the assets of the Debtors' Estates and/or the Liquidating Trust, each Holder of an Allowed Priority Tax Claim any unpaid amount of that Allowed Priority Tax Claim as follows: (a) on the Effective Date or as soon as practicable thereafter; (b) if such Claim is Allowed after the Effective Date, on the date the Claim is Allowed or as soon as practicable after it is Allowed; (c) when and upon such terms as may be agreed upon by the Holder of the Allowed Priority Tax Claim and the Liquidating Trustee; or (d) in accordance with any Final Order of the Bankruptcy Court, as applicable.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.      Summary**

1.      This Plan is wholly integrated with a global settlement, under section 9019 of the Bankruptcy Code, of all Claims and Equity Interests in the Debtors and their Estates, as set forth herein and in the Plan Settlement, including the substantive consolidation of the Debtors' estates described herein. Except for the Claims addressed in Article II of this Plan, all Claims and Equity Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or an Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and the remainder is classified in one or more other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes, without duplication.  A Claim or an Equity Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  Further, the provision in this Plan for a Class of Claims or Equity Interests does not presume, and does not constitute any admission or determination regarding, the existence or validity of any Claim (including any purported Secured Claims) or Equity Interest within such Class.

2.      This Plan is intended to deal with all Claims against and Equity Interests in the Debtors of whatever character, whether known or unknown, whether or not with recourse, whether or not contingent or unliquidated, and whether or not previously Allowed by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code, including unclassified Claims.  However, only Holders of Allowed Claims and Equity Interests will receive any distribution under this Plan, and no Holder of a Claim or Equity Interest shall receive any distribution unless and until such Claim or Equity Interest is Allowed.  For purposes of determining Pro Rata distributions under this Plan, Disputed Claims shall be included in the Class in which such Claims would be included if Allowed, until such Claims are finally disallowed.  This Plan will not provide any distributions on account of a Claim or Equity Interest to the extent that such Claim or Equity Interest has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date.

3.      In accordance with section 1123(a)(1) of the Bankruptcy Code, as set forth above, the Plan Proponents have not classified Administrative Claims, Accrued Professional Compensation Claims, or Priority Tax Claims, and the Plan describes their treatment under this Plan in Article II.

4.      The following table classifies Claims against and Equity Interests in the Debtors for all purposes, including voting, confirmation, and Distribution under this Plan and in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code, unless a Final Order provides otherwise. Each Class set forth below is treated under this Plan as a distinct Class for voting and Distribution purposes.

5.      As set forth in the following table, Classes 4 – 9 are Impaired under the Plan.  The treatment of Allowed Claims and Equity Interests in the Impaired Classes under this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights of each Holder of an Allowed Claim or Equity Interest in each such Impaired Class.  Subject to the provisions of any Order approving the Disclosure Statement, Holders of Claims in the Impaired Classes 4 – 7 are entitled to vote on the Plan.  Because Holders of Claims and Equity Interests in Classes 8 – 9 will not receive any distribution under the Plan, they are conclusively presumed to have rejected the Plan, and are not entitled to vote.  Holders in Claims in Classes 1 – 3 are unimpaired, deemed to accept the Plan, and not entitled to vote on the Plan.

**B.**  **Classification and Treatment of Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 3 | Alleged Lease Indemnification Claims | Unimpaired | Deemed to Accept |
| 4 | Settlement Claims | Impaired | Entitled to Vote |
| 5 | Alleged Legal Expense Indemnification Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Convenience Class Claims | Impaired | Entitled to Vote |
| 8 | Intercompany Claims | Impaired | Deemed to Reject |
| 9 | Equity Interests | Impaired | Deemed to Reject |

1.    **Other Secured Claims (Class 1)**

(a)    **Classification**: Class 1 consists of Other Secured Claims. The pre-petition senior secured claims of the DIP Agent were rolled up into the DIP Facility, which was paid in full and the liens released as of May 2, 2019.  Accordingly, no Secured Claim on account of the DIP Facility exists or is treated under the Plan.

(b)    **Treatment**: In full and final satisfaction of each Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim, on or as soon as practicable after the later of the Effective Date or the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, will, at the sole election of the Liquidating Trustee, (i) either be paid the full amount of such Holder's Allowed Other Secured Claim, or such lesser amount as the Liquidating Trustee and the Holder of the Other Secured Claim may agree to in writing, in Cash; (ii) receive the collateral securing such Allowed Other Secured Claim; or (iii) receive the indubitable equivalent of such Allowed Other Secured Claim.

(c)    **Voting**: Class 1 is Unimpaired and, therefore, Holders of Other Secured Claims in Class 1 are deemed to accept and not entitled to vote to accept or reject the Plan.

2.    **Other Priority Claims (Class 2)**

(a)    **Classification**: Class 2 consists of Other Priority Claims.

(b)    **Treatment**: In full and final satisfaction of each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim, on or as soon as practicable after the later of the Effective Date or the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, will either be paid the full amount of such Holder's Allowed Other Priority Claim, or such lesser amount as the Liquidating Trustee and the Holder of the Other Priority Claim may agree to in writing, in Cash.

(c)    **Voting**: Class 2 is Unimpaired and, therefore, Holders of Other Priority Claims in Class 2 are deemed to accept and not entitled to vote to accept or reject the Plan.

3.    **Alleged Lease Indemnification Claims (Class 3)**

(a)    **Classification**: Class 3 consists of Alleged Lease Indemnification Claims.

(b)    **Treatment**: In full and final satisfaction of each Allowed Alleged Lease Indemnification Claim, each Allowed Alleged Lease Indemnification Claim shall be deemed fully satisfied as a result of the Lease Indemnification Estimation.

(c)    **Voting**: Class 3 is Unimpaired and, therefore, Holders of Alleged Lease Indemnification Claims in Class 3 are deemed to accept and not entitled to vote to accept or reject the Plan.

4.    **Settlement Claims (Class 4)**

(a)    **Classification**: Class 4 consists of Settlement Claims.

(b)    **Treatment**: In full and final satisfaction of each Allowed Settlement Claim, each Holder of an Allowed Settlement Claim, on or as soon as practicable after the Effective Date, shall receive its Pro Rata share of the Class A Interest, which shall entitle each such holder to share Pro Rata in the Class A Trust Recovery.

(c)    **Voting**: Class 4 is Impaired and, therefore, Holders of Settlement Claims in Class 4 are entitled to vote to accept or reject the Plan in an amount equal to each Holder's PHG Percentage Membership.

5.    **Alleged Legal Expense Indemnification Claims (Class 5)**

(a)    **Classification**: Class 5 consists of Alleged Legal Expense Indemnification Claims.

(b)    **Treatment**: In full and final satisfaction of each Allowed Alleged Legal Expense Indemnification Claim, each Holder of an Allowed Alleged Legal Expense Indemnification Claim, on or as soon as practicable after the later of the Effective Date or the date on which such Alleged Legal Expense Indemnification Claim becomes an

Allowed Alleged Legal Expense Indemnification Claim, shall receive its Pro Rata share of the Legal Expense Indemnification Recovery.

(c)    **Voting**: Class 5 is Impaired and, therefore, Holders of Alleged Legal Expense Indemnification Claims in Class 5 are entitled to vote to accept or reject the Plan.

6.    **General Unsecured Claims (Class 6)**

(a)    **Classification**: Class 6 consists of General Unsecured Claims.

(b)    **Treatment**: Except to the extent that a Holder of an Allowed General Unsecured Claim and the Liquidating Trustee agree to a less favorable treatment in writing, in full and final satisfaction of each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim, on or as soon as practicable after the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, shall receive its Pro Rata share of the Class B Interest, which shall entitle each such Holder to share Pro Rata in the Class B Trust Recovery.

(c)    **Voting**: Class 6 is Impaired and, therefore, Holders of General Unsecured Claims in Class 6 are entitled to vote to accept or reject the Plan.

7.    **Convenience Class Claims (Class 7)**

(a)    **Classification**: Class 7 consists of Convenience Class Claims.

(b)    **Treatment**: Except to the extent that a Holder of an Allowed Convenience Class Claim and the Liquidating Trustee agree to a less favorable treatment in writing, in full and final satisfaction of each Allowed Convenience Class Claim, each Holder of an Allowed Convenience Class Claim, on or as soon as practicable after the later of the Effective Date or the date on which such Convenience Class Claim becomes an Allowed Convenience Class Claim, shall receive Cash in an amount equal to 14% of the amount of such Holder's Allowed Convenience Class Claim.

(c)    **Voting**: Class 7 is Impaired, and Holders of Convenience Class Claims in Class 7 are entitled to vote to accept or reject the Plan.

8.    **Intercompany Claims (Class 8)**

(a)    **Classification**: Class 8 consists of Intercompany Claims.

(b)    **Treatment**: On the Effective Date, all Intercompany Claims shall be deemed extinguished.

(c)      **Voting**: Class 8 is Impaired. Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Intercompany Claims.

9.      **Equity Interests (Class 9)**

(a)      **Classification**: Class 9 consists of Equity Interests.

(b)      **Treatment**: On the Effective Date, all Equity Interests shall be deemed extinguished.

(c)      **Voting**: Class 9 is Impaired.  Holders of Equity Interests in Class 9 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Equity Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Equity Interests.

**C.      Objections and Defenses**

Except as otherwise provided in the Plan or prior order of the Bankruptcy Court, nothing under the Plan shall affect the Debtors' or the Liquidating Trustee's (as applicable) rights with respect to any Claim, including, without limitation, all rights in respect of Causes of Action, or legal or equitable defenses to, or setoffs or recoupments against any Claim.

Further, except as otherwise provided in the Plan or prior order of the Bankruptcy Court, the failure of any party to object to any Claim in the Chapter 11 Cases prior to the Effective Date shall be without prejudice to the rights of the Liquidating Trustee to contest, object to, or otherwise defend against such Claim if and when such Claim is sought to be enforced by the Holder of such Claim.  Procedures for objections to Claims are set forth in Article VI of this Plan.

**D.      Attachment of Liens**

No Lien with respect to any Secured Claim shall attach to any property sold free and clear of interests of such property in any sale in the Chapter 11 Cases.

**E.      Survival and Release of Liens**

Notwithstanding section 1141(c) or any other provision of the Bankruptcy Code, all pre-petition Liens on property of the Debtors held with respect to any Allowed Secured Claim shall survive the Effective Date and continue in accordance with the contractual terms or statutory provisions governing such Claim until such Allowed Secured Claim is satisfied, at which time such Lien shall be released, shall be deemed null and void, and shall be unenforceable for all purposes; provided, however, that the Debtors (in consultation with the Committee) or

Liquidating Trustee, as the case may be, may condition delivery of any final payment upon receipt of an executed release of the Lien.

Any and all Liens securing any Secured Claim that is not an Allowed Claim shall be released, shall be deemed null and void, and shall be unenforceable for all purposes. Nothing in this Plan shall preclude the Debtors (in consultation with the Committee) or the Liquidating Trustee from challenging the validity of any alleged Lien on any asset of any Debtor or the value of the property that secures any alleged Lien, and all such rights are expressly preserved.

**F.      Surcharge Under Section 506(c) of the Bankruptcy Code**

Except as otherwise set forth in this Plan or any prior order of the Bankruptcy Court, all rights of Holders of Secured Claims under this Plan are subject to the rights of the Debtors (in consultation with the Committee) and/or the Liquidating Trustee to surcharge the applicable collateral pursuant to section 506(c) of the Bankruptcy Code, which rights are expressly preserved.

**G.      Estimation of Claims**

Before or after the Effective Date, the Debtors (in consultation with the Committee) or the Liquidating Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim,  including, but not limited to, any Alleged Legal Expense Indemnification Claim, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the claims register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim that is disputed, contingent, or unliquidated, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before twenty one (21) days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court

Pursuant to the Plan, the contingent and unliquidated Alleged Lease Indemnification Claims shall be estimated for purposes of allowance at $0.00 (the "***Lease Indemnification Estimation***"), as a result of the assumption and assignment of (i) the Rosemead Lease to L.A. Downtown Medical Center LLC ("***LADMC***") pursuant to the *Order (I) Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and*

*Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Authorizing Success Healthcare 1, LLC to Grant Liens; and (III) Granting Related Relief* [D.I. 740] (the "**Silver Lake Sale Order**"), which sale closed on March 5, 2019, and (ii) the Concordia Lease to Sentry Concordia Real Estate, LLC and Sentry Concordia, LLC (the "**Sentry Concordia**") pursuant to the *Order (I) Approving the Sale of Certain of the Debtors' (A) Equity Interests in Professional Rehabilitation Hospital, L.L.C. and (B) Assets of Vidalia Real Estate Partners, LLC, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 831] (the "**Miss Lou Sale Order**"), which sale closed on May 16, 2019.  As a result of such assumption and assignment, the Principals' guarantees of (i) Success 1's obligations under the assumed and assigned Rosemead Lease and (ii) Vidalia's obligations under the assumed and assigned Concordia Lease, have been eliminated.  To the extent the Principals guaranteed the obligations of any future tenant under the Rosemead Lease and/or Concordia Lease, the Court determined in the Silver Lake Sale Order and Miss Lou Sale Order that the new tenants, LADMC and Sentry Concordia, respectively, provided adequate assurance of future performance under the leases. *See* Silver Lake Sale Order, ¶ EE; Miss Lou Sale Order, ¶ DD.  The Principals' Alleged Lease Indemnification Claims relating to PHI's assumption of the Principals' guarantee obligations under the Rosemead Lease and Concordia Lease are thus estimated at $0.00 under the Plan. Without such estimation, the fixing or liquidating of such Alleged Lease Indemnification Claims would unduly delay the administration of these Chapter 11 Cases, as distributions under the Plan could not occur until the termination or expiration of the Rosemead Lease and Concordia Lease, the continuance of which leases could be indefinite.

**H.    Distribution Cap**

In no event shall any Holder of an Allowed Claim receive a distribution of a value exceeding one hundred percent (100%) of the amount of such Holder's Allowed Claim.

**I.    Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Plan Proponents', Debtor Representative's, or the Liquidating Trustee's (as applicable) rights with respect to any Unimpaired Claim, including, without limitation, all rights in respect of Causes of Action, or legal or equitable defenses to or setoffs or recoupments against any Unimpaired Claim.

**J.    Elimination of Vacant Classes**

Any Class of Claims that does not have a holder of an Allowed Claim, or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

4810-7810-7074.4

7118050

7362993

**K.      Presumed Acceptance by Voting Classes That Do Not Vote**

If a Class contains Claims eligible to vote on the Plan and no holder of a Claim in such Class eligible to vote on the Plan votes to accept or reject the Plan, the Plan shall be presumed accepted by the Class.

**L.      Nonconsensual Confirmation**

If any Impaired Class of Claims entitled to vote does not vote to accept the Plan, the Plan Proponents reserve the right to amend the Plan, to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both. With respect to Impaired Classes that are deemed to reject the Plan, the Plan Proponents intend to request that the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by those Classes.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.      Overview**

This Plan provides for the disposition of substantially all the assets of the Debtors and their Estates and the distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code.  This Plan further provides for the winding down of the Debtors and their affairs by the Liquidating Trustee.  This Plan also creates a mechanism for the Debtor Representative and Liquidating Trustee to pursue Claims and Causes of Action to enable recoveries to Creditors herein.

**This Plan shall be interpreted so as to afford, for the benefit of all Holders of Allowed Claims, the greatest opportunity for maximum recovery by the Liquidating Trustee and Debtor Representative on the Debtors' and Estates' assets, the Causes of Action, and all rights in and proceeds of any Insurance Policies.  The proceeds of all Causes of Action are material to the implementation of this Plan and the recoveries to Creditors herein.**

**B.      Substantive Consolidation for Voting and Distribution Purposes**

Subject to Articles IV.C and IV.H below, the Plan treats the Debtors as comprising a single Estate solely for the purposes of voting on the Plan, confirming the Plan, and making Distributions pursuant to the Plan with respect to Allowed Claims.  Such substantive consolidation solely for the purposes of voting on the Plan, confirming the Plan and making Distributions pursuant to the Plan is a condition precedent to the Effective Date. Accordingly, voting on the Plan shall be conducted and counted on a consolidated basis.

On the Effective Date, (a) the assets of the Debtors and their Estates will be merged and/or treated as if they are merged into a consolidated Estate for the purpose of making distributions on account of Allowed Claims against the Debtors and their Estates; (b) any Claim filed or asserted against any of the Debtors will be deemed a Claim against the consolidated

4810-7810-7074.4

7118050

7362993

Estate (and any duplication of claims arising from both primary operative documents and guaranty and/or other secondary obligations, or other Claims for which more than one Debtor may be liable, shall be eliminated and all such Claims against the Debtors shall be treated as a single Claim that eliminates such duplications); (c) any obligation of any of the Debtors or their Estates will be deemed to be an obligation of the consolidated Estate; (d) all guarantees by one of the Debtors in favor of any of the other Debtors shall be eliminated; and (e) any and all Intercompany Claims shall be eliminated and not entitled to any distribution under the Plan.  For the avoidance of doubt, Holders of Allowed Claims or Allowed Equity Interests who assert identical Claims against or Equity Interests in multiple Debtors shall be entitled to only a single satisfaction of such Claims or Equity Interests.

Neither this substantive consolidation nor anything else in the Plan shall (i) affect any Debtor's status as a separate and independent legal entity; (ii) affect the Debtors' organizational structure; (iii) constitute a change of control of any Debtor for any purpose; (iv) cause a merger or consolidation of any legal entities; (v) cause a transfer of any Debtor or Estate assets; (vi) affect any valid, enforceable, and unavoidable Liens (other than any Liens that secure any Claims eliminated as a result of the substantive consolidation and any Liens against any Collateral that cease to exist as a result of the substantive consolidation); (vii) cause any Lien to attach to any property of any Debtor or Estate to which such Lien would not attach in the absence of the substantive consolidation provided for in this Article (*e.g.*, holders of floating Liens on particular classes of property shall not attach to property of a Debtor that did not secure such Claim on the Effective Date); (viii) create new collateral with respect to any Lien, charge, or other encumbrance securing the payment or performance of any Claim; (ix) make any Debtor or Estate assets or proceeds thereof available for the satisfaction of any Secured Claim that would not be available for the satisfaction of such Secured Claim in the absence of the substantive consolidation provided for in this Article; (x) create any Claim in a Class different from the Class in which such Claim would have been placed in the absence of this substantive consolidation; (xi) change the priority or nature of any Claim; (xii) affect any Debtor's independent ownership of any assets for any purposes other than the substantive consolidation described herein; or (xiii) result in the substantive consolidation of the Debtors.  Except as otherwise expressly provided by or permitted in the Plan, all Debtors shall continue to exist as separate and independent legal entities.

The treatment set forth in this Article shall not (a) affect any Cause of Action available to any Debtor or Estate, including Chapter 5 Actions (except with respect to Intercompany Claims and Settlement Claims) or the ability of the Liquidation Trustee or Debtor Representative, as applicable, to pursue such Causes of Action or object to Claims, and all such Causes of Action and rights of objection are preserved as they existed immediately before the Effective Date for the Liquidating Trustee or Debtor Representative, as applicable, to pursue on behalf of the Liquidating Trust or the Debtors' estates, as applicable; (b) constitute any admission by any Debtor or Estate with respect to any Cause of Action or right of objection; (c) have any estoppel effect with respect to any Cause of Action or right of objection; or (d) constitute or affect admissible evidence in connection with any litigation of any Cause of Action or objection.  The treatment described in this Article serves only as a mechanism to effect a fair distribution of value to the Holders of Allowed Claims.

## C.      Sources of Consideration for Distributions under the Plan

All Distributions shall be funded by existing Cash on hand with the Debtors and their Estates as of the Effective Date, including any Cash proceeds from the sales of assets of the Debtors; the collection of accounts receivable; the litigation of Causes of Action by the Debtors, the Debtor Representative, or Liquidating Trustee and the proceeds thereof, as applicable, prior to or after the Effective Date; and the recovery and/or liquidation of any and all other assets of the Debtors and their Estates by the Liquidating Trustee on and after the Effective Date.

Upon the full and final satisfaction of any Allowed Claims of the IRS and/or other taxing authorities on account of alleged amounts owed by certain of the Debtors for payroll tax defalcation, any amounts remaining in the Tax Escrow shall be immediately released to the Liquidating Trust, free and clear of any liens, interests or other encumbrances and shall be available for distribution pursuant to the terms of this Plan.

On the Effective Date, any amounts in the Guarantees Escrow shall be immediately released to the Liquidating Trust, free and clear of any liens, interests or other encumbrances and shall be available for distribution pursuant to the terms of this Plan.

On the Effective Date, the amounts currently held in the Legal Fees Escrow shall remain in such escrow to be distributed pursuant to Article III(B)(5) of this Plan and the terms of the Legal Expense Indemnification Recovery.  For the avoidance of doubt, notwithstanding anything contained herein, all objections and Causes of Action, including, but not limited to, Chapter 5 Actions, with respect to the Alleged Legal Expense Indemnification Claims are expressly reserved and preserved.

## D.      The Liquidating Trustee and Debtor Representative

Prior to the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement.  The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidating Trust as a grantor trust.

The Liquidating Trustee will be deemed appointed as of the Effective Date.  The Liquidating Trustee will pay or otherwise make distributions on account of all Allowed Claims against the Debtors in accordance with the terms of the Plan.  The Liquidating Trustee shall be appointed as the Estates' representative by the Bankruptcy Court under section 1123(b)(3)(B) of the Bankruptcy Code.

On the Effective Date, the Debtor Representative shall be deemed appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code and vested with all power and authority granted to the Debtor Representative under this Plan.

The Liquidating Trustee and Debtor Representative shall each be entitled to retain counsel and other professionals, including the Liquidating Trustee Professionals and Debtor

4810-7810-7074.4

31

7118050

7362993

Representative Professionals, as applicable, to carry out their respective duties, including, but not limited to, (i) with respect to the Liquidating Trustee, pursuing all Causes of Action vested in the Liquidating Trust, whether known or unknown as of the Effective Date and irrespective of whether those Causes of Action have been identified or disclosed or described with any particularity and (ii) with respect to the Debtor Representative, pursuing all Debtor Rep Causes of Action, whether known or unknown as of the Effective Date and irrespective of whether those Debtor Rep Causes of Action have been identified or disclosed or described with any particularity.  The Debtors, Estates, Debtor Representative and Liquidating Trust shall not be subject to estoppel to any extent with respect to any Causes of Action, including any Debtor Rep Causes of Action, not identified, disclosed or described.

The Liquidating Trustee shall be appointed for the sole purpose of effectuating this Plan and performing under the terms hereof and the Liquidating Trust Agreement, including liquidating and distributing the Debtors' assets, including, without limitation, the collection of the Debtors' accounts receivable and Causes of Action (other than the Debtor Rep Causes of Action), and with no objective to engage in the conduct of a trade or business.  For the avoidance of doubt, collection of the Debtors' accounts receivable shall not constitute engaging in the conduct of a trade or business.

## E.    Role of the Liquidating Trustee

The rights, duties, and powers of the Liquidating Trustee shall be as set forth herein and in the Liquidating Trust Agreement. As set forth herein and in the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to receive reasonable compensation and reimbursement of its reasonable out-of-pocket expenses for the performance of its duties after the Effective Date on the terms and conditions set forth in the Liquidating Trust Agreement.

## F.    Role of the Debtor Representative

The rights, duties, and powers of the Debtor Representative shall be as set forth herein. As set forth herein, the Debtor Representative shall be entitled to receive reasonable compensation and reimbursement of its reasonable out-of-pocket expenses for the performance of its duties after the Effective Date on the terms and conditions set forth herein.

## G.    Vesting of Assets

On the Effective Date, and in accordance with the Confirmation Order, the Debtors' Assets (which exclude the Debtor Rep Causes of Action) shall automatically pass to the Liquidating Trust, free and clear of all Claims and equity interests in accordance with section 1141 of the Bankruptcy Code.  Such transfer shall be free and clear of all Liens, Claims, charges, or other encumbrances; *provided, however*, that the Debtors' Assets shall not be transferred free and clear of the liens and security interests approved by the Court pursuant to the *Order (I) Authorizing the Debtors to Grant Liens to Credit Suisse AG, New York Branch, and to Subsidiaries of KPC Promise Healthcare, LLC in Connection with the Remaining Assets Sale and (II) Granting Related Relief* [D.I. 1135] entered May 29, 2019 (the "***Reconciliation Order***"). For the avoidance of doubt, the transfer of the Debtors' Assets and the proceeds of any Debtor

Rep Causes of Action to the Liquidating Trust shall not result in the incurrence of fees payable to the U.S. Trustee.

The Confirmation Order shall constitute a determination that the transfers of the assets to the Liquidating Trust are legal and valid and consistent with the laws of the State of Delaware.

All parties shall execute any documents or other instruments as necessary to cause title to the applicable assets to be transferred to the Liquidating Trust.  The Liquidating Trust Assets will be held in trust for the benefit of all Holders of Allowed Claims pursuant to the terms of the Plan and the Liquidating Trust Agreement.

On the Effective Date, the Estates' interests in the Debtor Rep Causes of Action and rights in and proceeds of any Insurance Policies necessary for the prosecution of all such Debtor Rep Causes of Action will revest in the Debtor(s).  The Debtor Representative shall be authorized to institute and to prosecute through final judgment or settle any and all Debtor Rep Causes of Action in his or its discretion, subject to the provisions of Article IV.W contained herein.

On the Effective Date, the Estates' interests in any Causes of Action other than the Debtor Rep Causes of Action will transfer to and vest in the Liquidating Trust.  The Liquidating Trustee shall be authorized to institute and to prosecute through final judgment or settle such Causes of Action in his or its discretion, subject to the provisions of Article IV.W contained herein.  Upon the entry of a final judgment or settlement, the relevant proceeds of the Causes of Action shall vest in the Liquidating Trust for the benefit of the Holders of Allowed Claims in accordance with the provisions of this Plan.

In addition to the foregoing, the Debtor Representative is expressly authorized, in his discretion, to assign any or all of the Debtor Rep Causes of Action to the Liquidating Trust for prosecution and/or settlement by the Liquidating Trustee upon the occurrence of the Effective Date or at any time thereafter.  To the extent necessary for the Liquidating Trustee to pursue and prosecute any such Debtor Rep Causes of Action, all rights in and proceeds of any applicable Insurance Policies shall be deemed transferred to the Liquidating Trust upon the assignment of such Debtor Rep Causes of Action.

## H.    The Liquidating Trust

The Plan Proponents, on their own behalf and on behalf of the beneficiaries, shall execute the Liquidating Trust Agreement and take all other necessary steps to establish the Liquidating Trust.  As set forth more fully in the Liquidating Trust Agreement, the Liquidating Trust shall be established for the sole purpose of (a) administering the Liquidating Trust Assets; (b) adjudicating Claims against the Debtors; and (c) prosecuting, compromising, and resolving the Causes of Action (except the Debtor Rep Causes of Action); (d) distributing the Liquidating Trust's assets for the benefit of the beneficiaries provided for under the Plan; (e) performing the general powers set forth in the Liquidating Trust Agreement; (f) performing all other duties, obligations, rights, and benefits reasonably necessary to accomplish the purpose of the Liquidating Trust under the Plan, the Confirmation Order, the Liquidating Trust Agreement, and

any other agreement entered into pursuant to or in connection with the Plan, with no objective to engage in the conduct of a trade or business; and (g) all other purposes described herein and in the Liquidating Trust Agreement. As set forth more fully in the Liquidating Trust Agreement, the Liquidating Trust shall be deemed to be a party in interest for purposes of contesting, settling or compromising objections to Claims against the Debtors or their Estates or Causes of Action (other than the Debtor Rep Causes of Action) of or against the Debtors or their Estates. The Liquidating Trust shall be vested with all the powers and authority set forth in this Plan and the Liquidating Trust Agreement.  As set forth more fully in the Liquidating Trust Agreement, except to the extent that any objection is pending as of the Confirmation Date and the Liquidating Trustee does not intervene or substitute into such contested matter or adversary proceeding, the Liquidating Trustee shall be the sole entity responsible for reconciling and objecting to Claims against the Debtors and their Estates and making Distributions to Allowed Claims against the Debtors and their Estates.  The funding for the payments to be made to Holders of Allowed Claims under the Plan and the payment of Post-Effective Date Expenses will be the Liquidating Trust Assets or the specified escrows and reserves as set forth in the Plan, as applicable.

I.      **Income Tax Status**

        For federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the beneficiaries of the Liquidating Trust) shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124.  For federal income tax purposes, the transfer of assets to the Liquidating Trust under the Plan shall be treated as a deemed transfer to the beneficiaries of the Liquidating Trust in satisfaction of their Claims followed by a deemed transfer of the assets by the beneficiaries to the Liquidating Trust.  For federal income tax purposes, the beneficiaries will be deemed to be the grantors and owners of the Liquidating Trust and its assets.  For federal income tax purposes, the Liquidating Trust will be taxed as a grantor trust within the meaning of IRC sections 671-677 (a non-taxable pass-through tax entity) owned by the beneficiaries.  The Liquidating Trust will file federal income tax returns as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 and report, but not pay tax on, the Liquidating Trust's tax items of income, gain, loss deductions, and credits ("***Tax Items***").  The beneficiaries will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability.  All parties will use consistent valuations of the assets transferred to the Liquidating Trust for all federal income tax purposes.  The Liquidating Trust Assets shall be valued based on the Liquidating Trustee's good faith determination of their fair market value.

        The Liquidating Trustee may, at the Liquidating Trustee's sole discretion, file a tax election to treat any such Disputed Claims Reserve as a Disputed Ownership Fund within the meaning of section 1.468B-9(c) (2) (ii) of the Tax Code or other taxable entity rather than as a part of the Liquidating Trust for federal income tax purposes.  If the Liquidating Trustee timely elects to treat any portion of the Liquidating Trust subject to Disputed Claims as a Disputed Ownership Fund, any Holders of Claims who, as of the Effective Date, are Holders of Disputed Claims shall, to the extent of such Disputed Claims, not be treated as having received any portion of the Liquidating Trust Assets as to which legal or beneficial title is transferred to the

4810-7810-7074.4

7118050

7362993

Liquidating Trust hereunder and shall not be deemed grantors of the Liquidating Trust to the extent of such Disputed Claims for U.S. federal income tax purposes, but rather shall be subject to U.S. federal income taxation in accordance with rules set forth in section 468B of the Internal Revenue Code and the Treasury Regulations thereunder.  If such election is made, the Liquidating Trust shall comply with all tax reporting and tax compliance requirements applicable to the Disputed Ownership Fund or other taxable entity, including, but not limited to, the filing of separate income tax returns for the Disputed Ownership Fund or other taxable entity and the payment of any federal, state or local income tax due.

**J.      Liquidating Trust's Post-Effective Date Expenses**

All expenses related to implementation of the Plan incurred from and after the Effective Date through the date on which the Liquidating Trust is dissolved will be expenses of the Liquidating Trust, and the Liquidating Trustee will disburse funds from the Liquidating Trust Assets as appropriate for purposes of paying the Post-Effective Date Expenses of the Liquidating Trust without the need for any further Order of the Bankruptcy Court.  The Post-Effective Date Expenses shall include, but are not limited to, the fees and expenses of the Liquidating Trustee, the fees and expenses of the Debtor Representative, the fees and expenses of the professionals employed by the Liquidating Trustee and/or Debtor Representative, and other costs, expenses, and obligations of the Liquidating Trust until the date the Liquidating Trust is terminated in accordance with this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee, in his or its sole discretion, on and after the Effective Date, shall have authority to establish, increase, and/or decrease such reserves as reasonably necessary and appropriate to account for and pay all Post-Effective Date Expenses.

**K.      Powers and Authority of the Liquidating Trustee**

The powers and authority of the Liquidating Trustee are set forth in full in the Liquidating Trust Agreement and include, among other things: (a) the power to sell, lease, license, abandon, or otherwise dispose of all Liquidating Trust Assets subject to the terms of this Plan; (b) the power to wind down the Debtors and their affairs, including by filing final cost reports and taking such other actions as are necessary after the Effective Date to bring about and orderly wind down of the Debtors' operations; (c) the power to effect distributions under this Plan to the Holders of Allowed Claims; (d) the authority to pay all costs and expenses of administering the Liquidating Trust after the Effective Date (including the Post-Effective Date Expenses), including the power to employ and compensate Persons and Entities to assist the Liquidating Trustee in carrying out the duties hereunder, and to obtain and pay premiums for insurance and any other powers necessary or incidental thereto; (e) the power to implement this Plan including any other powers necessary or incidental thereto; (f) the authority to settle Claims, applicable Causes of Action (other than the Debtor Rep Causes of Action), including Chapter 5 Actions, or disputes as to amounts owing to or from the Estates; (g) the authority to participate in any post-Effective Date motions to amend or modify this Plan or the Liquidating Trust Agreement, or appeals from the Confirmation Order; (h) the authority to participate in actions to enforce or interpret this Plan; and (i) the power to bind the Liquidating Trust.  Except as otherwise set forth herein or in the Liquidating Trust Agreement, each of the foregoing powers may be exercised by the Liquidating Trustee without further order of the Bankruptcy Court.

4810-7810-7074.4

7118050

7362993

Notwithstanding any of the foregoing, the Liquidating Trustee may not materially amend or alter the terms and provisions of this Plan except as may otherwise be provided for in this Plan.  For the avoidance of doubt, on and after the Effective Date, except as otherwise provided in this Plan or the Liquidating Trust Agreement, the Liquidating Trustee may use, acquire, or dispose of property and compromise or settle any Claims or Causes of Action (other than the Debtor Rep Causes of Action) without supervision or approval by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or Bankruptcy Rules.

## L.    Authority of the Debtor Representative

Upon the Effective Date, the Debtors' boards of directors and/or trustees, as applicable, shall be dissolved and the then-current officers of the Debtors and members of the boards of directors and/or trustees of the Debtors shall be relieved of their positions and corresponding duties and obligations.  On and after the Effective Date, the Debtor Representative shall have full and complete authority to act on behalf of and bind the Debtors, and to enforce the rights of the Debtors and their Estates without further action or approval of the Bankruptcy Court or the boards of directors and/or trustees of the Debtors.  After the Debtor Rep Causes of Action are liquidated and the proceeds of such Debtor Rep Causes of Action are transferred to the Liquidating Trust in accordance with this Plan, the Debtor Representative shall be empowered, but not directed, to effectuate the dissolution of the Debtors in accordance with the laws of the State of Delaware as appropriate for the effectuation of this Plan and wind down of the Debtors' Estates.

## M.    Employment and Compensation

The Liquidating Trustee and Debtor Representative shall serve without bond and shall receive compensation for serving as Liquidating Trustee and Debtor Representative, as applicable, as set forth herein and in the Liquidating Trust Agreement, as applicable.  At any time after the Effective Date and without further Order of the Bankruptcy Court, the Liquidating Trustee and Debtor Representative may employ and compensate Persons or Entities, including the Liquidating Trustee Professionals and Debtor Representative Professionals (which may, but need not, include Professionals previously or currently employed in the Chapter 11 Case), reasonably necessary to assist the Liquidating Trustee and Debtor Representative in the performance of their duties under the Liquidating Trust Agreement and this Plan, as applicable. Such Persons or Entities shall be compensated and reimbursed from the Liquidating Trust for their reasonable and necessary fees and out of pocket expenses on a monthly basis in arrears.

## N.    Liquidating Trustee as Successor in Interest to the Debtors and Committee

Except as to the Debtor Rep Causes of Action, the Liquidating Trustee is the successor in interest to the Debtors and the Committee, and thus, after the Effective Date, to the extent this Plan requires an action by the Debtors or the Committee (except as it relates to the Debtor Rep Causes of Action), the action shall be taken by the Liquidating Trustee on behalf of the Debtors and the Committee, as applicable.

For federal and applicable state income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the beneficiaries of the Liquidating Trust Estate) shall treat the transfer of assets to the Liquidating Trust in accordance with the terms of this Plan, as a sale by the Debtors of such assets to the Liquidating Trust estate at a selling price equal to the fair market value of such assets on the Effective Date.  The Liquidating Trust shall be treated as the owner of all assets that it holds.

## O.    Use of Existing Accounts

The Liquidating Trustee may use the Debtors' existing bank accounts (as of the Effective Date) for the purposes set forth herein, to the extent possible and desired.  The Liquidating Trustee also may close the Debtors' existing bank accounts, in his or its discretion, and transfer all amounts therein to one or more accounts, in accordance with the terms of this Plan. Alternatively, notwithstanding any provisions to the contrary in this Plan, the Liquidating Trustee may invest some or all the funds that would otherwise be deposited into the accounts established pursuant to the Plan in allowed investments under applicable non-bankruptcy law.

## P.    Tax Reporting

1.    The Liquidating Trustee shall file (or cause to be filed) any statements, returns or disclosures relating to the Debtors that are required by any governmental unit.

2.    The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust's assets, of any taxes imposed on the Debtors or the Liquidating Trust or their respective assets, including the applicable Disputed Claims Reserve. In the event, and to the extent, any Cash reserved on account of Disputed Claims in the applicable Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

## Q.    Dissolution

The existence of the Liquidating Trust and the authority of the Liquidating Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the earlier of (a) the date on which all of the assets are liquidated in accordance with the Plan, the funds in the Liquidating Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities, the Liquidating Trustee's final report has been approved, and the order closing the Chapter 11 Cases is a Final Order or (b) five (5) years after the date of creation of the Liquidating Trust, unless extended by the Bankruptcy Court as provided in the Liquidating Trust Agreement.

At such time as the Liquidating Trust has been fully administered (*i.e.*, when all things requiring action by the Liquidating Trustee have been done, and the Plan has been substantially consummated), the Liquidating Trustee will file an application for approval of his or its final report and for the entry of the final decree by the Bankruptcy Court.

**R.     Indemnification of the Liquidating Trustee and Debtor Representative**

The Liquidating Trustee, the Debtor Representative and other Indemnified Persons shall be held harmless and indemnified as described in Article IX below.

**S.     Continued Corporate Existence**

Notwithstanding anything to the contrary in the Plan or Confirmation Order, each Debtor shall continue to exist as a separate corporate entity after the Effective Date solely for the purpose of implementing the Plan unless and until such Debtor is dissolved in accordance with applicable state law pursuant to the terms of the Plan.

The winding down of the Debtors' affairs, filing of any necessary documentation to dissolve the Debtors, and adoption of any and all corporate documents or resolutions necessary or appropriate to implement the Plan are hereby deemed authorized and approved in all respects without further action under any applicable law, regulation, order or rule.

**T.     Cancellation of Existing Securities and Agreements**

Except for purposes of evidencing a right to Distributions under the Plan, on the Effective Date, all agreements and other documents evidencing Claims or rights of any Holder of a Claim or Equity Interest against any of the Debtors, including, but not limited to, all indentures, notes, bonds, and share certificates evidencing such Claims and Equity Interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void and satisfied, as against the Debtors, but not as against any other Person or Entity unless specifically released by or under the Plan.

As of the Effective Date of the Plan, the Principal Guarantees shall be terminated and the Principals shall be released and discharged from all claims, obligations, causes of action, costs, fees, damages, rents, and/or any other liabilities that have or may in the future arise under the Principal Guarantees.

**U.     Operations of the Debtors Between the Confirmation Date and the Effective Date**

The Debtors shall continue to operate as debtors in possession during the period from the Confirmation Date through and until the Effective Date. The retention and employment of the Professionals retained by the Debtors shall terminate as of the Effective Date; *provided*, *however*, that the Debtors shall exist, and their Professionals shall be retained, after such date with respect to applications filed under sections 330 and 331 of the Bankruptcy Code.

**V.      Automatic Stay**

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Cases until the Effective Date at which time the injunctions described in this Plan shall come into effect with no gap in time.

**W.      The Committee**

Upon the Effective Date, the Committee shall be deemed dissolved, and their members shall be deemed released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from or in connection with  the Chapter 11 Cases. The retention and employment of the Professionals retained by the Committee shall be deemed terminated as of the Effective Date; *provided*, *however*, that the Committee shall continue to exist, and their Professionals shall continue to be retained, after such date with respect to applications filed under sections 330 and 331 of the Bankruptcy Code and, as appropriate, motions seeking the enforcement of the provisions of the Plan or the Confirmation Order.

On the Effective Date, the Committee shall be replaced by the POC that shall consist of not less than three (3) Persons or Entities that are beneficiaries of the Liquidating Trust, one of which such Persons or Entities shall be a representative of, and selected by, Credit Value Partners, LP ("CVP").  The remaining two (2) such Persons or Entities shall be selected by the Committee.  The identities of the Persons and/or Entities that will serve on the POC as of the Effective Date will be filed by the Committee with the Bankruptcy Court no later than five (5) days before the Confirmation Hearing.  The POC may also include such other Persons or Entities (including *ex officio* members) as may be requested by the POC, which Persons or Entities shall have agreed to participate in the performance of the POC's functions as set forth in this Plan. The POC's sole function and responsibility shall be to advise the Liquidating Trustee and Debtor Representative in the performance of the Liquidating Trustee's and Debtor Representative's duties and obligations under the Plan for the benefit of the Holders of Allowed Claims entitled to distribution from the Liquidating Trust.  The members of the POC shall serve without compensation but may be reimbursed for reasonable expenses incurred in the performance of their duties as members of the POC.

The POC shall adopt by-laws governing all matters concerning participation in the POC, which by-laws shall include one or more mechanisms for individual members of the POC to be recused from consideration or voting upon matters that could pose a conflict of interest.  Such by-laws shall provide that neither the Liquidating Trustee nor the Debtor Representative shall settle any claims asserted by the Liquidating Trustee or Debtor Representative, as appropriate, in an amount equal to or greater than $1,000,000 without unanimous approval of such settlement by all members of the POC; *provided, however*, to the extent unanimous approval is not received, the Liquidating Trustee or Debtor Representative, as appropriate, may pursue approval of such settlement by filing a motion with the Bankruptcy Court seeking approval of the settlement pursuant to Bankruptcy Rule 9019 and the standards applicable thereto.

X.    **Books and Records**

The Books and Records shall vest in the Liquidating Trust as of the Effective Date in accordance with all HIPAA requirements and regulations.  The Liquidating Trustee is authorized to treat and/or abandon the Books and Records consistent with the provisions of this Plan and the Liquidating Trust Agreement.

Y.    **Corporate Action**

Each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of the Debtors prior to the Effective Date shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan, and shall be authorized, approved, and ratified in all respects without any requirement of further action by Holders of Claims or Equity Interests, directors of the Debtors, or any other Entity.

Z.    **Preservation of Causes of Action**

**Except as otherwise expressly provided in this Plan, any and all Causes of Action are preserved under the Plan.**

1.    Vesting of Causes of Action

(a)    Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any and all Causes of Action that the Debtors and the Estates may hold against any Person or Entity (other than any Debtor Rep Causes of Action) shall vest in the Liquidating Trust on and after the Effective Date, including, but not limited to, the Causes of Action (other than any Debtor Rep Causes of Action) to be scheduled in the Plan Supplement.

(b)    Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any and all Debtor Rep Causes of Action shall revest in the Debtors, including, but not limited to, the Debtor Rep Causes of Action to be scheduled in the Plan Supplement

(c)    Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, all privileges, including the attorney-client, work-product and other privileges held by the Debtors and the Estates shall vest in the Liquidating Trustee and the Debtors Representative, as applicable.

(d)    Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to investigate, institute, prosecute (in any court or other tribunal, including, without limitation, in an adversary proceeding relating to one or more of the Chapter 11 Cases in the Bankruptcy Court), abandon, settle or compromise any Causes of Action (other than the Debtor Rep Causes of Action) that were held by the Debtors and the Estates.  The Liquidating

Trustee's authority to abandon, settle, or compromise such Causes of Action shall be in the Liquidating Trustee's sole discretion and without further order of the Bankruptcy Court, except as otherwise set forth herein.

(e)    Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Debtor Representative shall have the exclusive right to investigate, institute, prosecute (in any court or other tribunal, including, without limitation, in an adversary proceeding relating to one or more of the Chapter 11 Cases in the Bankruptcy Court), abandon, settle or compromise any Debtor Rep Causes of Action.  The Debtor Representative's authority to abandon, settle, or compromise such Debtor Rep Causes of Action shall be in the Debtor Representative's sole discretion and without further order of the Bankruptcy Court, except as otherwise set forth herein

2.    Preservation of All Causes of Action Not Expressly Identified, Disclosed, Settled or Released

(a)    Unless a Cause of Action against a Holder or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan, in or by operation of any Final Order (including the Final DIP Order and the Confirmation Order) of the Bankruptcy Court (including those de minimis claims settled under the the de minimis settlement procedures order [D.I. 901]) or in the DIP Payoff Letter, the Debtors and their Estates expressly reserve such Cause of Action for later adjudication or administration by the Liquidating Trustee and Debtor Representative, as appropriate (including, without limitation, Causes of Action not specifically identified or described in the Plan or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in Article IX.B.1) or any other Final Order (including the Confirmation Order). In addition, the Debtors and their Estates expressly reserve the right of the Liquidating Trustee and Debtor Representative, as appropriate, to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits. Further, the Debtors and their Estates expressly reserve all privileges, including the attorney-client, work-product and other privileges.

(b)    Subject to the immediately preceding paragraph, any Person or Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the

Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction, including personal injury and other tort claims, may be reviewed by the Liquidating Trustee and Debtor Representative, as appropriate, subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Person or Entity has filed a proof of Claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors have Allowed or objected to any such Person or Entity's proof of Claim; (iii) any such Person or Entity's Claim was included in the Schedules; (iv) the Debtors have objected to any such Person or Entity's scheduled Claim; or (v) any such Person or Entity's scheduled Claim has been identified by the Debtors as disputed, contingent or unliquidated.

## ARTICLE V.
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.    Distribution Dates**

Distributions to Holders of Claims shall be made as provided in Articles II and III of the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**B.    Disbursing Agents**

1.    All Distributions under the Plan by the Liquidating Trustee shall be made by the Liquidating Trustee as Disbursing Agent or such other entity designated by the Liquidating Trustee as Disbursing Agent.

2.    The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform their duties under the Plan, (b) make all Distributions contemplated by the Plan, (c) employ professionals to represent them with respect to their responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, this Plan, or deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

3.    The Disbursing Agent shall only be required to act and make Distributions in accordance with the terms of the Plan and shall have no (a) liability for actions taken in accordance with the Plan or in reliance upon information provided to them in accordance with the Plan or (b) obligation or liability for Distributions under the Plan to any party who does not hold an Allowed Claim at the time of Distribution or who does not otherwise comply with the terms of the Plan.

4.    Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Liquidating Trustee or other party acting as the Disbursing Agent (including, without limitation, reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Liquidating Trust in the ordinary course of business.

**C.    Record Date for Distributions**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred under Bankruptcy Rule 3001 on or prior to the Voting Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Voting Record Date. The Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Voting Record Date. In making any Distribution with respect to any Claim, the Liquidating Trustee shall, in the Liquidating Trustee's sole discretion, be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Voting Record Date and upon such other evidence or record of transfer or assignment that was known to the Debtors as of the Voting Record Date and is available to the Liquidating Trustee.

**D.    Delivery of Distributions**

Subject to Bankruptcy Rule 9010 and except as otherwise provided in this Plan, Distributions to the Holders of Allowed Claims shall be made by the Disbursing Agent at (a) the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such Holder, or (b) the last known address of such Holder if no proof of Claim is filed or if the Liquidating Trustee has been notified in writing of a change of address.

**E.    Undeliverable and Unclaimed Distributions**

In the event that any Distribution to any Holder of an Allowed Claim made by the Disbursing Agent is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder or is notified in writing of such Holder's then-current address. Undeliverable distributions shall remain in the possession of the Liquidating Trustee until such time as a distribution becomes undeliverable, as set forth below. Undeliverable Cash shall not be entitled to any interest, dividends or other accruals of any kind.

Any Distribution that remains uncashed for a period of one hundred and eighty (180) days shall be deemed undeliverable and the Distribution shall revert to the Liquidating Trust, free and clear of the Claimant's interest in the Distribution, to be distributed pursuant to the Plan. The Claimant, shall be forever barred from asserting any such Claim on account of the Distribution against the Debtor, the Liquidating Trust, the Liquidating Trustee, or their respective assets. No such funds or other property shall escheat to any federal, state, or local government or other entity for any reason. Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

F.      **Manner of Cash Payments under the Plan**

Except as otherwise provided in this Plan, Cash payments made under the Plan shall be in United States dollars by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Disbursing Agent.

G.      **Compliance with Tax Requirements**

The Disbursing Agent may withhold and pay to the appropriate taxing authority all amounts required to be withheld under the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or Distribution on account of Claims. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to the applicable Holders of the Claims.  For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of Allowed Claims with any excess allocated, if applicable, to unpaid interest that accrued on such Claims.  The Disbursing Agent shall be authorized to collect such tax information from the applicable Holders of Claims (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan.  In order to receive Distributions under the Plan, all Holders of Claims that are entitled to receive Distributions under the Plan will need to identify themselves to the Disbursing Agent and provide tax information to the extent the Disbursing Agent deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each Holder).  The Disbursing Agent may refuse to make a Distribution to any Holder of a Claim that is entitled to receive a Distribution but that fails to furnish such information within the time period specified by the Disbursing Agent and such Distribution shall be waived and forfeited under the Plan. If the Disbursing Agent fails to withhold in respect of amounts received or distributable with respect to any such Holder and such Disbursing Agent is later held liable for the amount of such withholding, such Holder shall reimburse the Disbursing Agent for such liability.

**Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any taxing authority, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Disbursing Agent for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Disbursing Agent in connection with such distribution.**

H.      **Interest on Claims**

Except as specifically provided for in this Plan or the Confirmation Order or required by the Bankruptcy Code, interest shall not accrue on Claims and no Holder of a Claim shall be entitled to interest on any Claim accruing on or after the Petition Date. Interest shall not accrue on any General Unsecured Claim that is a Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after that Disputed Claim

becomes an Allowed Claim. Except as expressly provided in this Plan or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or similar charges.

**I.**     **No Distribution in Excess of Allowed Amount of Claim**

As set forth in Article III above, notwithstanding anything to the contrary contained in the Plan, no Holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

**J.**     **Setoff and Recoupment**

The Debtors or the Liquidating Trustee, as applicable, may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made under the Plan in respect thereof, any Claims, rights, Causes of Action, or defenses of any nature whatsoever that any of the Debtors or the Estates may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates, or the Liquidating Trustee of any right of Claim, claim, defense, Cause of Action, right of setoff or recoupment that any of them may have against the Holder of any Claim.

**K.**     **De Minimis Distributions; Charitable Donation**

Notwithstanding anything to the contrary herein, the Liquidating Trustee shall not be required to make a Distribution to any Holder if the dollar amount of the Distribution is less than fifty dollars ($50) or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution.  The Liquidating Trustee may hold the Distributions to be made to such Holder until the aggregate amount of such Distributions is in an amount equal to or greater than the greater of fifty dollars ($50) or such amount that exceeds the cost of making the Distribution.  If the aggregate Distributions of such Holder do not meet or exceed such amount, then the Liquidating Trustee shall not be required to make such Distributions to such Holder.

On or about the time that the final Distribution is made, the Liquidating Trustee may make a charitable donation with undistributed funds if, in the reasonable judgment of the Liquidating Trustee, the cost of calculating and making the final Distribution of the remaining funds is excessive in relation to the benefits to the Holders of Claims who would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtors, the Liquidating Trust, or the Liquidating Trustee (as applicable).

**L.**     **U.S. Trustee Fees**

All fees due and payable under section 1930 of title 28 of the United States Code prior to the Effective Date shall be paid in full in cash by the Debtors. On and after the Effective Date, the Liquidating Trustee, on behalf of the Debtors, shall pay any and all such fees payable by the Debtors, when due and payable, in full and in cash, and shall file with the Bankruptcy Court quarterly reports for each of the Debtors, in a form reasonably acceptable to the U.S. Trustee.

Each Debtor shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.  Notwithstanding anything else in the Plan to the contrary: (1) interest, if any, pursuant to 31 U.S.C. § 3717 shall be payable; and (2) the U.S. Trustee shall not be required to file any proof of claim for quarterly fees.

## M.    No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was required to be filed and was first filed after the applicable Bar Date in the Chapter 11 Cases shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Cases, without the need for (a) any further action by the Liquidating Trustee, or (b) an order of the Bankruptcy Court.

## N.    Claims Paid or Payable by Third Parties

Except as otherwise provided herein, the Debtors or Liquidating Trustee, as applicable, shall reduce a Claim, and such Claim shall be disallowed, without a Claims objection having to be filed and without any further notice to any party, or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor, the Liquidating Trustee, or the Disbursing Agent. To the extent a Holder of a Claim (i) receives a distribution under the Plan on account of such Claim and receives payment from a party that is not a Debtor, the Liquidating Trustee, or the Disbursing Agent on account of such Claim, and (ii) the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim, the Holder shall, within two weeks of receipt thereof, repay or return to the Debtors or the Liquidating Trust, as applicable, the portion of the Plan distribution (up to the full amount of the Plan distribution) that, together with the payment from the third party, exceeds 100% of the Allowed amount of the Claim.  Any and all rights of the Debtors and the Liquidating Trustee to seek return or repayment of a distribution under the Plan from the Holder of a Claim on account of payment of such Claim by a party that is not a Debtor, the Liquidating Trustee, or the Disbursing Agent are expressly reserved.

No distributions under the Plan shall be made on account of any Allowed Claim that is payable by a third party, including pursuant to one of the Debtors' Insurance Policies, until the holder of such Allowed Claim has exhausted all remedies with respect to such third party or Insurance Policy. To the extent that one or more of the Debtors' insurers or another third party agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then upon (i) execution such agreement and (ii) the Debtors or the Liquidating Trustee, if applicable, receiving notice thereof, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to any party, or action, order, or approval of the Bankruptcy Court.

**O.      Distributions Free and Clear**

Except as otherwise provided herein, any Distributions under the Plan shall be free and clear of any Liens, Claims, and encumbrances, and no other Person or Entity, including any Debtor, shall have any interest (legal, beneficial or otherwise) in any Estate property distributed pursuant to the Plan.

**P.      Not Securities; Section 1145 Exemption**

The respective rights of the Holders of Claims and Equity Interests arising under the Plan are not intended to be "securities" under applicable laws, but the Debtors do not represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If such rights constitute securities, the Debtors intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to their issuance under the Plan.

## ARTICLE VI.
## DISPUTED CLAIMS AND CLAIM OBJECTIONS

**A.      Payments and Distributions on Disputed Claims and Claims That Have Otherwise Not Been Allowed**

Notwithstanding any provision in the Plan to the contrary, except as otherwise agreed by the Liquidating Trustee, in his or its sole discretion, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Claim that has otherwise not been Allowed until such disputes are resolved by settlement or Final Order and the Claim has been Allowed.

**B.      Disputed Claims Reserve**

1.      On each date Distributions are to be made under the Plan to Holders of Allowed Claims, the Liquidating Trustee shall retain on account of Disputed Claims an amount the Liquidating Trustee estimates is necessary to fund the Pro Rata share of such Distributions to Holders of Disputed Claims if such Disputed Claims were Allowed (or such lesser amount as may be estimated in accordance with Article VI.D of this Plan), with any Disputed Claims that are unliquidated or contingent being reserved for in an amount reasonably determined by the Liquidating Trustee (the "***Disputed Claims Reserve***").  The Disputed Claims Reserve shall not include any funds in the Tax Escrow, the Legal Expense Escrow or the Guarantees Escrow, all of which escrowed funds shall be treated pursuant to Article IV(C) of the Plan, nor shall the Liquidating Trustee reserve any amounts in the Disputed Claims Reserve on account of any Alleged Lease Indemnification Claims or any Alleged Legal Expense Indemnification Claims, which Claims shall be treated pursuant to Article III(B)(3) and Article III(B)(5) of the Plan, respectively.

2.      Cash retained on account of such Disputed Claims shall be retained in the Disputed Claims Reserve for the benefit of the Holders of such Disputed Claims pending a

determination of their entitlement thereto under the terms of this Plan. To the extent that the property placed in the Disputed Claims Reserve consists of Cash, that Cash may be deposited in an interest-bearing account at a qualified institution.

3.       If any Disputed Claim is disallowed or Allowed in an amount that is lower than the aggregate assets retained in the Disputed Claims Reserve on account of such Disputed Claim, then, the excess assets reserved for such Claim shall automatically revest in the Liquidating Trust and thereafter may be used consistent with the provisions of this Plan without restriction.  Such assets shall not escheat to any federal, state, or local government or other Entity for any reason.

4.       Payments on any Disputed Claim that becomes an Allowed Claim shall be distributed by the Disbursing Agent from the Disputed Claims Reserve on the next scheduled Distribution date after the Claim is Allowed. Distributions shall be made only to the extent of the aggregate distributions that the Holder of any such Allowed Claim would have received had such Claim been Allowed as of the Effective Date (less any taxes paid with respect to amounts held in the Disputed Claims Reserve). Distributions to each Holder of a Disputed Claim that has become an Allowed Claim (and to the extent that the Holder of the Disputed Claim has not received prior distributions on account of that Claim) shall be made in accordance with the provisions of the Plan.

5.       The Disputed Claims Reserve shall be closed and extinguished by the Liquidating Trustee when all Distributions and other dispositions of Cash or other property required to be made therefrom under the Plan have been effectuated.

## C.       Claim Objections

From and after the Effective Date, the Liquidating Trustee and the U.S. Trustee shall have the right and standing to object to and contest the allowance of all Claims that have not been deemed Allowed by a Final Order of the Bankruptcy Court..  The Liquidating Trustee shall have the exclusive right to (i) compromise and settle any Disputed Claim or Claim that has not otherwise been Allowed, without further Order or approval of the Bankruptcy Court; and (ii) litigate to final resolution objections to Claims.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

## D.       Objection Deadline

All objections to Disputed Claims shall be filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, with notice only to those parties set forth on the Post-Effective Date Notice List.

## E.       Disallowance of Untimely Claims

Except as provided herein or otherwise agreed by the Liquidating Trustee, any and all Holders of Claims filed after the applicable Bar Date shall not be treated as Creditors for purposes of voting and distribution pursuant to Bankruptcy Rule 3003(c)(2) unless on or before

4810-7810-7074.4

48

the Voting Deadline or the Confirmation Date, as the case may be, such late proofs of claim are deemed timely filed by a Final Order of the Bankruptcy Court.

Claims for which proofs of claim or requests for allowance were required to be filed by a Bar Date occurring before the Effective Date, and with respect to which no proof of claim or request for allowance was filed before the applicable Bar Date, shall be forever disallowed and barred in their entirety as of the Effective Date, and shall not be enforceable against the Debtors, the Liquidating Trust, or the Estates, unless such proofs of claim or requests for allowance are deemed timely filed by a Final Order of the Bankruptcy Court before the Effective Date.

Claims for which proofs of claim or requests for allowance are required to be filed after the Effective Date pursuant to a Bar Date established by this Plan, and with respect to which no proof of claim or request for allowance is filed by the applicable Bar Date, shall be forever disallowed, barred, and discharged in their entirety as of the applicable Bar Date, and shall not be enforceable against the Debtors, the Liquidating Trust, or the Estates.

## F.    Allowance of Claims

Except as expressly provided herein or in any Final Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed, unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim.  Except as expressly provided in the Plan or in any Final Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Liquidating Trust, on and after the Effective Date, will have and retain any and all rights and defenses the Debtors had with respect to such Claims.

## ARTICLE VII.
## TREATMENT OF EXECUTORY CONTRACTS

## A.    Assumption or Rejection of Executory Contracts and Unexpired Leases

In accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtors and any Person or Entity shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired leases (a) that has been assumed or rejected by a Final Order of the Bankruptcy Court entered prior to the Effective Date, or (b) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Effective Date. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such rejection under section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interests of the Debtors, their Estates, and all parties in interest in the Chapter 11 Cases. Notwithstanding the foregoing, that certain Reconciliation Agreement dated as of June 14, 2019 by and among KPC Promise Healthcare, LLC, each of the subsidiaries of KPC Promise Healthcare, LLC signatory thereto, PHI, each of the direct or indirect subsidiaries of PHI signatory thereto, CVP Loan Servicing LLC, and Credit Suisse AG, New York Branch, in its capacity as administrative agent for Lenders (as defined in

4810-7810-7074.4

7118050

7362993

the Reconciliation Agreement) shall be assigned to the Liquidating Trust as of the Effective Date.

## B.    Claims Based on Rejection of Executory Contracts and Unexpired Leases

Claims created by the rejection of executory contracts and unexpired leases under this Plan must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) days after the Effective Date.  Any Claims arising from the rejection of an executory contract or unexpired lease under this Plan for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, the Liquidating Trust, their successors and assigns, and their assets and properties. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX.D herein. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III herein.

## C.    Indemnification and Reimbursement

Subject to the occurrence of the Effective Date, except as set forth otherwise herein with respect to the Alleged Lease Indemnification Claims and the Alleged Legal Expense Indemnification Claims (which such Claims, for the avoidance of doubt, shall be treated in accordance with Article III(B)(3) and Article III(B)(5) of this Plan), all Allowed Claims against the Debtors for indemnification, defense, reimbursement, or limitation of liability of current or former directors, officers, or employees of the Debtors against any Claims, costs, liabilities or causes of action as provided in the Debtors' articles of organization, certificates of incorporation, bylaws, other organizational documents, or applicable law, shall, to the extent such indemnification, defense, reimbursement, or limitation is owed in connection with one or more events or omissions occurring before the Petition Date, be (a) paid only to the extent of any applicable insurance coverage, and (b) to the extent a Claim is Allowed, treated as Allowed General Unsecured Claims to the extent such Claims are not covered by any applicable insurance, including deductibles. Nothing contained herein shall affect the rights of directors, officers, or employees under any insurance policy or coverage with respect to such Claims, costs, liabilities, or Causes of Action or limit the rights of the Plan Proponents, the Debtors' Estates, the Liquidating Trustee, or the Debtor Representative to object to, seek to subordinate or otherwise contest or challenge Claims or rights asserted by any current or former officer, director or employee of the Debtors.  The Liquidating Trustee shall maintain the DIP Indemnity Account in accordance with the DIP Payoff Letter.

## D.    Certain Insurance Policy Matters

For the avoidance of doubt, on the Effective Date, the Debtors' rights with respect to all Insurance Policies under which any of the Debtors may be a beneficiary or assignee (including all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by any Debtor after the Petition Date, and all Insurance Policies under which any Debtor holds rights to make, amend, prosecute, and benefit from claims) shall be retained by, revest in, or vest in the applicable Debtor(s), their

4810-7810-7074.4

50

7118050

7362993

Estates, the Debtor Representative, and/or the Liquidating Trust, as necessary for the Debtor Representative and/or Liquidating Trustee to pursue and prosecute any Causes of Action, including any Debtor Rep Causes of Action, and to the extent that any Insurance Policies are not necessary for the pursuit and prosecution of any such Causes of Action, all such Insurance Policies shall be transferred to the Liquidating Trust from the Effective Date until its dissolution, unless any such Insurance Policy is otherwise cancelled by the Liquidating Trustee in its discretion.  Notwithstanding any provision providing for the rejection of Executory Contracts, any Insurance Policy that is deemed to be an Executory Contract shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Liquidating Trustee, who shall retain the right to assume or reject any such Executory Contracts pursuant to and subject to the provisions of section 365 of the Bankruptcy Code following the Effective Date.

Nothing in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable, or contractual rights and defenses, if any, of the insureds or any of the Debtors with respect to any Insurance Policies or related agreements.  Nothing in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way (a) limit a Debtor, the Debtor Representative, the Liquidating Trustee, or their successors or assignees from asserting a right or claim to the proceeds or unearned premium refunds of any Insurance Policy that insures any such Debtor, was issued to any such Debtor, or vested in any Debtor, any Debtor's Estate, the Debtor Representative, or the Liquidating Trust by operation of the Plan.

The Confirmation Order shall constitute a determination that no default by any Debtor exists with respect to any of the Insurance Policies requiring cure, and that nothing in any prior order, any prior agreements, or this Plan or any related documents shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any Claims or Causes of Action.  The Plan shall be liberally construed to protect the interests of all Creditors in all Causes of Action and to limit any Claims against the Estates.

## ARTICLE VIII.
## CONDITIONS PRECEDENT

### A.    Conditions Precedent

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.    The Bankruptcy Court shall have entered the Confirmation Order authorizing and directing that the Debtors take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in

connection with the Plan and the transactions contemplated thereby, including, without limitation, the transactions contemplated by the Liquidating Trust Agreement.

2.       There shall be no stay, injunction, or appeal in effect with respect to the Confirmation Order and the Confirmation Order shall have become a Final Order.

3.       All statutory fees and obligations then due and payable to the Office of the U.S. Trustee shall have been paid and satisfied.

4.       The appointment of the Liquidating Trustee and the terms of his service and compensation shall have been confirmed by the Bankruptcy Court in the Confirmation Order, and the Liquidating Trustee shall have accepted in writing such terms.

5.       The appointment of the Debtor Representative shall have been confirmed by the Bankruptcy Court in the Confirmation Order.

6.       All agreements and instruments that are exhibits to the Plan shall be in a form reasonably acceptable to the Plan Proponents and have been duly executed and delivered.

7.       The Debtors shall have transferred all Cash on hand or Cash dominion to the Liquidating Trust.

8.       All other actions, authorizations, consents and regulatory approvals required (if any) and necessary to implement the provisions of the Plan shall have been obtained, effected or executed in a manner acceptable to the Debtors and the Committee or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

## B.       Waiver

Notwithstanding the foregoing conditions in Article VIII.A, the Plan Proponents reserve, in their sole discretion, the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent; *provided, however,* that the condition precedent set forth in Article VIII.A.3 may not be waived or modified. Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court or without any other formal action other than proceeding to consummate the Plan; *provided*, *however*, that such waiver will be reflected in the notice of occurrence of the Effective Date filed pursuant to Article VIII.E. Any actions required to be taken on the Effective Date or Confirmation Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## C.       Effect of Failure of Conditions

In the event the Effective Date does not occur, upon motion by any party in interest, made before the time that each of the conditions precedent to the Effective Date has been satisfied or waived: (a) the Confirmation Order shall be vacated, (b) no Distributions under the

Plan shall be made, (c) the Debtors and all Holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged, and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors unless extended by Bankruptcy Court order.  Notwithstanding the foregoing, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Plan Proponents or the Liquidating Trustee, as the case may be, before the Bankruptcy Court enters a Final Order granting such motion.

D.      **Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

E.      **Notice of Effective Date**

The Debtors shall file with the Bankruptcy Court a notice of occurrence of the Effective Date within a reasonable period of time after the conditions in Article VIII have been satisfied or waived pursuant to Article VIII.B.

## ARTICLE IX.
## INDEMNIFICATION, RELEASE, INJUNCTIVE, AND RELATED PROVISIONS

A.      **Term of Bankruptcy Injunction or Stay**

Unless otherwise provided in the Plan, the Confirmation Order, or a separate order from the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise (excluding any injunctions or stays contained in the Plan or the Confirmation Order), and in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

B.      **Releases**

1.      **Releases by the Debtors and their Estates. Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, and to the fullest extent permitted by applicable law, the adequacy of which is hereby confirmed, for the good and valuable consideration provided by each of the Released Parties, each of the Debtors, the Estates, each of the Debtors' and the Estates' current and former affiliates (collectively, the "*Debtor Releasing Parties*") and the Committee shall be deemed to have provided a full, complete, unconditional, and irrevocable release to the Released Parties from any and all Causes of Action and any other debts, obligations, rights, suits, judgments, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether**

known or unknown, foreseen or unforeseen, existing on or before the Effective Date, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors would have been legally entitled to assert, including those in any way related to the Chapter 11 Cases, the Plan, the Plan Supplement, the Disclosure Statement, and any related agreements, instruments, or documents; *provided*, *however*, that the foregoing release shall not prohibit the Liquidating Trustee and/or Debtor Representative from asserting any and all defenses and counterclaims in respect of any Disputed Claim asserted by any Released Parties; *provided further*, that the Released Parties shall not be released from any act or omission that constitutes actual fraud, willful misconduct, or a criminal act as determined by a Final Order; and *provided further* that notwithstanding the forgoing, any Chapter 5 Actions against the Specified Directors shall only be released with respect to the payments listed on Exhibit 1 to the Settlement Order, and any and all other payments not listed on Exhibit 1 to the Settlement Order are not being released under the Plan or this provision.

2.     **Releases by Holders of Claims**. Each Holder of a Claim against the Debtors that has not opted-out of the releases set forth in this Article IX(B)(2) by marking the appropriate "opt out" box on such Holder's ballot or notice of non-voting status, as applicable, is deemed to have, to the fullest extent permitted by applicable law, the adequacy of which is hereby confirmed, fully, completely, unconditionally, irrevocably, and forever released the Released Parties of and from any and all Causes of Action, and any other debts, obligations, rights, suits, judgments damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing on or before the Effective Date, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any holder of a Claim would have been legally entitled to assert or that any Holder of a Claim would have been legally entitled to assert for or on behalf of any of the Debtors or the Estates, including those in any way related to the Chapter 11 Cases, the Plan, the Plan Supplement, the Disclosure Statement, and any related agreements, instruments, or documents; *provided, however* that the Released Parties shall not be released from any act or omission that constitutes actual fraud, willful misconduct, or a criminal act as determined by a Final Order; *and provided further* that notwithstanding the forgoing, any Chapter 5 Actions against the Specified Directors shall only be released with respect to the payments listed on Exhibit 1 to the Settlement Order, and any and all other payments not listed on Exhibit 1 to the Settlement Order are not being released under the Plan or this provision.

3.     For the avoidance of doubt, the releases set forth in this Article IX.B shall not affect or diminish the valid setoff or recoupment rights of the Debtors, the Liquidating

**Trustee, or any Creditor of the Debtors to the extent timely asserted by the applicable Bar Date, and all such rights are hereby preserved.**

**4.     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article IX.B under Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action released by this Plan; (b) in the best interests of the Debtors and all Holders of Claims and Equity Interests; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to the assertion of any Claim or Cause of Action thereby released.**

**C.     Exculpation**

**Notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties shall neither have nor incur any liability to any Entity for any act or omission arising after the Petition Date and through the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release, other agreement or document created or entered into in connection with the Plan, or any other post-petition act taken or omitted to be taken in connection with the Chapter 11 Cases; *provided*, *however*, that the foregoing provisions of this Article IX.C shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or a criminal act.**

**D.     Injunctive Provisions**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan does not operate to discharge the Debtors; provided, however, that, upon confirmation of the Plan, the occurrence of the Effective Date, and the distributions provided for under the Plan, the Holders of Claims and Equity Interests may not seek payment or recourse against or otherwise be entitled to any distribution from the Estates or Liquidating Trust except as expressly provided in the Plan. Further, the following terms apply except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan:

1.     Except as otherwise provided in the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, the Estates, the Committee, the Debtor Representative, the Liquidating Trust, the Liquidating Trustee, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied under the Plan or the Confirmation Order.

2.     Except as otherwise expressly provided for in the Plan or in obligations issued under the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Estates, the Committee, the Debtor Representative, the Liquidating

Trust, the Liquidating Trustee, or their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that (a) such Claims or Equity Interests have been released or satisfied under this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed under this Plan or the Confirmation Order.

3.      The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtors or any of their assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied under this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions, or assertions of Liens relate to property that will be distributed under this Plan or the Confirmation Order. On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

4.      **Except as otherwise expressly provided for in the Plan or in obligations issued under the Plan, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released under the Plan or Confirmation Order, from (a) commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, the Committee, the Debtor Representative, the Liquidating Trust, the Liquidating Trustee, their successors and assigns, and their assets and properties; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, the Committee, the Debtor Representative, the Liquidating Trust, the Liquidating Trustee, their successors and assigns, and their assets and properties; (c) creating, perfecting or enforcing any encumbrance of any kind against any Debtor, or the property or estate of any Debtor, the Committee, the Debtor Representative, the Liquidating Trust, or the Liquidating Trustee; and (d) commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.**

5.      Upon the entry of the Confirmation Order, all Holders of Claims and Equity Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

6.      **As of the Effective Date, to the extent not enjoined by the other provisions of this Article IX, all Persons and Entities who have held, hold, or may hold Claims against the Debtors, are permanently enjoined, on and after the Confirmation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Debtors' respective property, the Debtors' Estates, the Debtor Representative, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trustee with respect to any such Claim or taking any act to recover such Claim outside of the claims allowance procedure discussed in this Plan and the Bankruptcy Code and Bankruptcy Rules; (ii) the enforcement, attachment, collection, or recovery by any manner**

**or means of any judgment, award, decree, or order against the Debtors, the Debtors' respective property, the Debtors' Estates, the Debtor Representative, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trustee on account of any such Claim; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Debtors' respective property, the Debtors' estates, the Debtor Representative, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidation Trustee on account of any such Claim; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Debtors' estates, the Debtor Representative, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trustee, or against the property or interests in property of the Debtors, the Debtors' estates, the Debtor Representative, the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trustee on account of any such Claim, unless such Person or Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve, any right of setoff pursuant to applicable law or otherwise.**

7.       All injunctive provisions of this Article IX shall extend for the benefit of the Liquidating Trustee and the Debtor Representative, and any successors of the Debtors, and to any property and interests in property subject to this Plan.

**E.**      **Limitation on Liability of the Liquidating Trustee and Debtor Representative**

Neither the Liquidating Trustee nor the Debtor Representative shall be liable for any act they may do or omit to do as Liquidating Trustee or Debtor Representative under the Plan and the Liquidating Trust Agreement, as applicable, while acting in good faith and in the exercise of his or its reasonable business judgment; nor will the Liquidating Trustee or the Debtor Representative be liable in any event except for an act or omission that is determined in by Final Order to have constituted fraud, willful misconduct, gross negligence, or a criminal act.  The foregoing limitation on liability also will apply to any Person or Entity employed by the Liquidating Trustee or Debtor Representative and acting on behalf of the Liquidating Trustee or Debtor Representative in the fulfillment of his or its duties hereunder or under the Liquidating Trust Agreement.  In addition, the Liquidating Trustee, Debtor Representative, and any Person or Entity employed by the Liquidating Trustee or Debtor Representative and acting on behalf of the Liquidating Trustee or Debtor Representative shall be entitled to indemnification out of the assets of the Liquidating Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being or having been employed by the Debtor Representative or Liquidating Trustee of the Liquidating Trust or for performing any functions incidental to such service; provided, however, that the foregoing shall not relieve the Liquidating Trustee, Debtor Representative, or any Person employed by the Liquidating Trustee or Debtor Representative from liability, nor entitle any of the foregoing entities to indemnification pursuant to the Plan, for fraud, willful misconduct, gross negligence, or a criminal act as determined by a Final Order of the Bankruptcy Court.

**F.**      **Injunction in Furtherance of Releases, Exculpations, and Limitations of Liability**

From and after the Effective Date, to the extent of the releases, exculpations, and limitations of liability set forth in this Plan, the releasing parties shall be permanently enjoined from commencing or continuing in any manner against the beneficiaries of such releases, exculpations, and limitations and their respective assets and properties, as the case may be, any suit, action, or other proceeding on account of or respecting any Claim, demand, liability, obligation, debt, right, cause of action, interest, or remedy released or otherwise limited under this Plan to the extent set forth in the Plan.

**G.**      **Releases of Liens and Cancellation of Documents**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created under the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estates distributed under the Plan shall be fully released and discharged and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert to the Debtors. For the avoidance of doubt, the liens granted by certain of the Debtors and approved by the Court pursuant to the Reconciliation Order shall not be released or discharged pursuant to this or any other provision of the Plan.

In addition, on the Effective Date, except to the extent otherwise provided in this Plan, any and all notes, instruments, debentures, certificates, and other documents evidencing Claims

against the Debtors shall be deemed inoperative and unenforceable solely as against the Debtors and their Estates.

Nothing contained in this Plan shall revive, preserve, or transfer any Claims or Liens that have been released pursuant to any prior order of the Bankruptcy Court.

# ARTICLE X.
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, to the extent legally permissible, retain exclusive jurisdiction over the Chapter 11 Cases and all Persons and Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Liquidating Trust, and the Plan until the Chapter 11 Cases are closed, including jurisdiction to issue any order necessary to administer the Debtors' Estates or the Liquidating Trust and enforce the terms of this Plan and/or the Liquidating Trust Agreement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including to, without limitation:

A.    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest against the Debtors, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

B.    grant, deny or otherwise resolve any and all applications of Professionals or Persons or Entities retained in the Chapter 11 Cases by the Debtors or the Committee for allowance of compensation or reimbursement of expenses authorized by the Bankruptcy Code, the Plan, or order of the Bankruptcy Court, for periods ending by the Effective Date;

C.    resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired leases to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

D.    ensure that Distributions to Holders of Allowed Claims are accomplished under the provisions of the Plan, including by resolving any disputes regarding the Debtors', the Debtor Representative's, the Liquidating Trust's, or the Liquidating Trustee's (as applicable) entitlement to recover assets held by third parties;

E.    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee or Debtor Representative after the Effective Date;

F.    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and the Confirmation Order;

G.      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan, the Confirmation Order, or any Person or Entity's obligations incurred in connection with the Plan or the Confirmation Order;

H.      issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity or Person with the Effective Date or enforcement of the Plan;

I.      enforce Article IX.A, Article IX.B, and Article IX.C hereof;

J.      enforce the injunctions set forth in Article IX.D hereof;

K.      resolve any cases, controversies, suits or disputes with respect to the releases, injunction, and other provisions contained in Article IX herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions, and other provisions of this Plan;

L.      enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked, or vacated;

M.      resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

N.      except as otherwise limited herein, to recover all Assets of the Debtor and property of the Debtor's Estates, wherever located;

O.      to hear and determine any issue arising under this Plan;

P.      to adjudicate any adversary proceeding or other proceeding which may be commenced against any Person or Entity arising from, related to, or in connection with (i) any Chapter 5 Action; (ii) any Tort Claim, D&O Claim, Principal Claim and/or Professional Claim; and (iii) claims against third parties relating to the facts and circumstances surrounding the same;

Q.      to hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

R.      to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

S.      to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof, or with respect to any other reserves established pursuant to this Plan and the administration thereof;

T.      to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the applicable Bar Date, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of the Plan for the purpose of determining whether a Claim is waived, released, disallowed, or otherwise unenforceable hereunder, or for any other purpose;

U.      to hear any other matter not inconsistent with the Bankruptcy Code; and

V.      enter an order and a Final Decree closing the Chapter 11 Cases.

**All Creditors who have filed Claims in the Chapter 11 Cases shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for the purposes of pursuit of Causes of Action by the Liquidating Trustee and Debtor Representative.**

## ARTICLE XI.
## MISCELLANEOUS PROVISIONS

### A.      Modification of Plan

Subject to the limitations contained in the Plan: (a) the Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to substantial consummation of the Plan, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; provided, however, that any pre-Confirmation Date amendments shall not materially or adversely affect the interests, rights or treatment of any Allowed Claims or Equity Interests under the Plan; and (b) after the entry of the Confirmation Order, the Plan Proponents or the Liquidating Trustee may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

Objections with respect to any amendments or modifications to the Plan (as and to the extent permitted hereby) filed after the deadline for objections to the Plan, as set by the Bankruptcy Court, may be brought at the Confirmation Hearing.  The Plan, and any modification or supplement thereof, may be inspected in the Office of the Clerk of the Bankruptcy Court or its designee during normal business hours.  Holders of Claims may obtain a copy of the Plan and any supplement or modification, if any, by contacting the Claims Agent at (844) 822-9230 or by reviewing such document on the internet at: https://cases.primeclerk.com/promisehealthcaregroup/.

The documents annexed to the Disclosure Statement or contained in any modification or supplement to the Plan or the Disclosure Statement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

4810-7810-7074.4

7118050

7362993

**B.      Extension of Time**

For cause shown, any deadlines herein that are applicable to the Debtors, the Committee, the Debtor Representative, the Liquidating Trustee, or the Liquidating Trust and which are not otherwise extendable, may be extended by the Bankruptcy Court.

**C.      Post-Effective Date Notice List**

Because certain Persons and Entities may not desire to continue to receive notices after the Effective Date, this Plan provides for the establishment of a Post-Effective Date Notice List. Persons and Entities on such Post-Effective Date Notice List will be given certain notices and in some cases an opportunity to object to certain matters under this Plan (as described herein).  Any Person or Entity desiring to be included in the Post-Effective Date Notice List must (i) file a request to be included on the Post-Effective Date Notice List and include thereon its name, contact person, address, telephone number and facsimile number, within thirty (30) days after the Effective Date, and (ii) concurrently serve a copy of its request to be included on the Post-Effective Date Notice List on the Liquidating Trustee and his or her counsel.  On or before sixty (60) days after the Effective Date, the Liquidating Trustee shall compile a list of all Persons on the Post-Effective Date Notice List and file such list with the Bankruptcy Court.  Those parties set forth in Article XI.L of the Plan shall be included in the Post-Effective Date Notice List without the necessity of filing a request.  Notwithstanding the foregoing, Post-Effective Date notices and pleadings shall be served on all parties whose rights are directly affected by such notices or pleadings, even if such parties did not submit a request to be included on the Post-Effective Date Notice List.

**D.      Revocation of the Plan**

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans. If the Plan Proponents revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (ii) prejudice in any manner the rights of the Plan Proponents or any other Entity; or (iii) constitute an admission of any sort by the Plan Proponents or any other Entity.

**E.      Binding Effect**

On the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, a Debtor and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not such Holder is entitled to a Distribution under the Plan.

4810-7810-7074.4

7118050

7362993

**F.      Successors and Assigns**

The rights, benefits and obligations of any Entity or Person named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity or Person.

**G.      Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, unless otherwise stated, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Delaware without giving effect to the principles of conflict of laws thereof.

**H.      Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Effective Date occurs. Neither the filing of the Plan, any statement or provision contained herein or the Disclosure Statement, nor the taking of any action by the Plan Proponents or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (a) any Plan Proponent or other Entity with respect to the Holders of Claims or Equity Interests or other parties-in-interest; or (b) any Holder of a Claim or Equity Interest or other party-in-interest prior to the Effective Date.

**I.      Article 1146 Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under this Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any prohibited tax or governmental assessment and to accept for filing and recordation instruments or other documents transfers of property without the payment of any tax or governmental assessment.

**J.      Section 1125(e) Good Faith Compliance**

Confirmation of the Plan shall act as a finding by the Bankruptcy Court that the Plan Proponents and each of their respective representatives have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

**K.      Further Assurances**

The Plan Proponents, the Liquidating Trustee, all Holders of Claims receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be

necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**L.    Service of Documents**

Any pleading, notice, or other document required or permitted to be made in accordance with this Plan upon the Plan Proponents shall be made in writing and shall be delivered personally, by facsimile transmission, electronic mail or by first class U.S. mail, postage prepaid, as follows:

**To the Debtors:**

> Promise Healthcare Group, LLC
> c/o FTI Consulting
> 1201 W Peachtree St NE # 500,
> Atlanta, GA 30309
> Attn:    Andrew Hinkelman, Chief Restructuring Officer and Interim Chief Financial
>               Officer, and Jennifer Byrne

> with a copy to:

> Waller Lansden Dortch & Davis, LLP
> 511 Union Street, Suite 2700
> Nashville, Tennessee 37219
> Attn: John C. Tishler, Tyler N. Layne, and Courtney K. Stone

> and

> DLA Piper LLP (US)
> 1201 North Market Street, Suite 2100
> Wilmington, Delaware 19801
> Attn: Stuart R. Brown and Matthew S. Sarna

**To the Committee:**

> Sills Cummis & Gross, P.C.
> One Riverfront Plaza
> Newark, NJ 07102
> Attn: Andrew H. Sherman and Boris I. Mankovetskiy
> (asherman@sillscummis.com; bmankovetskiy@sillscummis.com)

> and

> Pachulski Stang Ziehl & Jones LLP
> 919 N. Market Street, 17th Floor
> Wilmington, DE 19801

4810-7810-7074.4

7118050

7362993

Attn: Jeffrey N. Pomerantz, Bradford J. Sandler, and Colin R. Robinson
(jpomerantz@pszjlaw.com; bsandler@pszjlaw.com; crobinson@pszjlaw.com)

**To the Liquidating Trust/Liquidating Trustee:**

[To be provided following election of Liquidating Trustee and counsel thereto]

**To the Debtor Representative:**

[To be provided following election of Debtor Representative and counsel thereto]

**M.      Filing of Additional Documents**

On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**N.      Severability**

The provisions of the Plan shall not be severable unless the Plan Proponents agree to such severance and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

**O.      Entire Agreement**

The Plan, and any supplements or amendments hereto, supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects (other than the Liquidating Trust Agreement), all of which have become merged and integrated into the Plan.

**P.      No Stay of Confirmation Order**

The Debtors shall request that the Bankruptcy Court waive stay of enforcement of the Confirmation Order otherwise applicable, including under Bankruptcy Rules 3020(e), 6004(h), or 7062.

*[Remainder of Page Intentionally Left Blank]*

Dated: [_____], 2020

[Insert signature pages]