IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
: 
In re: : Chapter 11
: 
PROMISE HEALTHCARE GROUP, LLC, *et* : Case No. 18-12491 (CSS)
*al.*,[1] :
: (Jointly Administered)
Debtors. :
:
:
------------------------------------------------------------ x  Re: DI 2276

## DECLARATION OF DONNA LEE TALBOT IN SUPPORT OF LIQUIDATING TRUSTEE'S MOTION TO COMPEL COMPLIANCE WITH THE ORDER APPROVING SALE OF THE SILVER LAKE ASSETS TO LADMC AND GRANTING RELATED RELIEF

I, Donna Lee Talbot, hereby declare under penalty of perjury that the following is true and correct:

1. I am the Manager Member of the Talbot Group, LLC. On September 1, 2019, the Debtors engaged my firm to serve as a consultant to provide third-party reimbursement services. Under the Consulting Agreement, my firm assisted the Debtors through: (a) preparation of the stub

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), Success Healthcare 1, LLC (6535), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is c/o FTI Consulting, 50 California Street, Suite 1900, San Francisco, CA 94111.



period ended March 4, 2019, Medicare, MediCal and Tri-Care cost reports for Success Healthcare 1 LLC; (b) preparation of the stub period ended March 4, 2019, Annual Disclosure Report to OSHPD; (c) provision of other third party reimbursement services identified by the Debtors; and (d) provision of analysis and advisory services related to LADMC Seller Note Adjustments. In this capacity, I have substantial familiarity with Promise Healthcare Group, LLC and certain of its subsidiaries and affiliates, each a debtor and debtor in possession in the above-captioned chapter 11 cases, and the liquidation of the Estate of Promise Healthcare Group, LLC, et al., debtors and debtors in possession under the *Second Amended Joint Plan of Liquidation* (the "***Plan***") [D.I. 1956], as it relates to the matters above. I am above 18 years of age, and I am competent to testify.

2. I submit this declaration (the "***Declaration***") in support of the Liquidating Trustee's (the "***Trustee***") *Motion to Compel Compliance with the Order Approving Sale of the Silver Lake Assets to LADMC and Granting Related Relief* (the "***Motion***"),[2] filed contemporaneously herewith. I have reviewed and am familiar with the Motion, the relief sought within, and the Asset Purchase Agreement with LADMC (the "***APA***") for the sale of substantially all of the Silver Lake Debtors' assets (the "***Silver Lake Assets***"), including the Silver Lake Medical Center ("***Silver Lake***").

3. Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, upon relevant documents and information supplied to me by people who report to me or are officers or employees with the Debtors or the Trust, upon information supplied to me by the Debtors' and Trust's professionals, or upon my opinion based on my experience and knowledge with respect to the Debtors' business, finances and operations. If I were called upon to

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion or the Asset Purchase Agreement with LADMC.

testify, I could and would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration.

4. Noridian Healthcare Solutions ("*Noridian*") is the Medicare Administrative Contractor ("*MAC*") for Silver Lake. As the MAC for Silver Lake, Noridian's responsibilities include the handling of provider reimbursement services and the audit/desk review of provider cost reports.

5. After the closing of the sale of the Silver Lake Assets, Noridian began a desk review of Silver Lake's pre-sale Medicare Statement of Reimbursable Cost for the fiscal year ended December 31, 2017. The result of this desk review is an adjustment report detailing Noridian's findings. The adjustment report will determine the Debtor's pre-sale Medicare liabilities for the fiscal year ended December 31, 2017. A significant component of this desk review was the audit of Medicare reimbursable bad debt ("*Medicare Bad Debt Audit*").

6. As part of the Medicare Bad Debt Audit, Noridian identified a limited sample of thirty-six (36) in-patient accounts and thirty-seven (37) out-patient accounts that Noridian required further information to evaluate the Debtors' Medicare liabilities. For each of the sample accounts, Noridian requested the following information related to the in-patient and out-patient Medicare bad debt sample including: (a) Medicare & Medicaid remittance advices; (b) patient account detail showing bad debt write-off; (c) eligibility print screen showing Share of Cost ("*SOC*") or No SOC; and (d) third -party remittance advices, if applicable.

7. Under the APA, LADMC acquired the hospitals records and data for the Silver Lake Assets. Therefore, most of the data Noridian required to conduct its audit was in the possession of LADMC.

8. To facilitate the Medicare Bad Debt Audit, I, on behalf of the Debtors, began engaging with Kami Horvat (CFO, LADMC) to obtain the necessary information.

9. On August 12, 2020, I sent an e-mail to Ms. Horvat providing a spreadsheet with all of Noridian's sample requests. The spreadsheet contained detailed information about each claim including: Medi-Cal Record Numbers, Medical Identification Numbers, Medicare HICN, Patient Name, Dates of Inpatient and Outpatient Service, Payment Information, Medicare Remittance Advice Date, and Medi-Cal Remittance Advice Date. In the e-mail, I asked Ms. Horvat to provide the requested support for those claims, including: (a) Medicare & Medicaid remittance advices; (b) patient account detail showing bad debt write-off; (c) eligibility print screen showing SOC or No SOC; and (d) third-party remittance advices, if applicable. I asked Ms. Horvat to produce those documents by close of business August 24, 2020.

10. On August 13, 2020, Ms. Horvat informed me that LADMC would begin working on the sample file. A true and correct copy of my August 12-13, 2020 e-mail exchange with Ms. Horvat is attached as **Exhibit A**.

11. On August 21, 2020, LADMC provided the Debtors with an initial production of documents. The documents provided some of the data for the in-patient sample. LADMC, however, failed to include the required Medicaid remittance advices and eligibility print screens. LADMC failed to provide any documents related to the out-patient sample.

12. On September 1, 2020, Noridian informed the Debtors that it had completed its desk review of the Medicare Statement of Reimbursable Cost for Silver Lake Medical Center for the period ended December 31, 2017. In the report, Noridian disallowed all of the Medicare bad debt because the Debtors were unable to provide documents for the out-patient bad debt sample and the in-patient documentation provided did not include the eligibility print screen and the



Medicaid remit. As a result, Noridian calculated the Debtors' liability at approximately $1.25 million, the majority of which ($1.05 million) is due to the 100% disallowance of Medicare bad debt. Noridian gave the Debtors until September 15, 2020 to provide the updated data.

13. Upon receiving the Noridian report, I immediately contacted Ms. Horvat. On September 1, 2020, I informed Ms. Horvat of Noridian's findings and that LADMC's failure to provide the required data threatened to expose the Debtors to over $1 million in liabilities. I informed Ms. Horvat that the hospital had until September 15, 2020 to respond to Noridian's report and provide the necessary data. A true and correct copy of my September 1, 2020 e-mail exchange with Ms. Horvat is attached as **Exhibit B**.

14. In addition to contacting LADMC, I contacted employees and former employees of the Debtors, including Jim Pope at St. Alexius Hospital, to confirm whether any of this information is in the Debtors possession. My investigation confirmed that the requested data remained with LADMC.

15. On September 15, 2020, I again contacted Ms. Horvat requesting the missing documentation. I informed Ms. Horvat of my efforts to identify the location of the missing data and that it was my understanding that the data remained with LADMC. I informed Ms. Horvat that I was trying to obtain an extension from Noridian to collect the data but that I needed her assistance to resolve the matter.

16. On September 15, 2020, Mark Valentino (Executive Vice President, LADMC) responded to my e-mail. Mr. Valentino informed me that "any requests related to 2017 (or any cost reporting period prior to our ownership of the hospital for that matter) can be directed to our attorneys at DWT. If Jim Pope doesn't have the information from the seller's server / database, we certainly do not, nor are we going to be held accountable for bad data submitted to Medicare



2-3 years prior to our purchase of the hospital." A true and correct copy of my September 15, 2020 e-mail exchange with Ms. Horvat and Mr. Valentino is attached as **Exhibit C**.

17. As of the date of this Declaration, I have received no further information from LADMC.

18. Upon LADMC's refusal to provide the requested data, I contacted Noridian asking for an extension for the review. I informed Noridian that the information is in the possession of the new owners of the hospital, LADMC, and that LADMC had refused to provide that information the Debtors. Noridian agreed to extend the deadline to June 30, 2021.

19. In order to complete the Medicare Bad Debt Audit before the June 30, 2021 deadline, the Trustee must receive the requested information by no later than April 30, 2021, in order to allow the Trustee's professionals adequate time to review the data to make sure it is complete.

20. Noridian cannot complete the Medicare Bad Debt Audit without the information sought from LADMC. If Noridian cannot complete the Medicare Bad Debt Audit, Silver Lake may incur over $1 million dollars in liabilities.

I, Donna Lee Talbot, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Dated: January 19, 2021

*Donna Lee Talbot*
Donna Lee Talbot