# EXHIBIT B

March 6, 2020

**VIA EMAIL AND FACSIMILE**
L.A. Downtown Medical Center LLC
c/o RollinsNelson LTC Corp.
2615 Grand Avenue
Long Beach, CA 90815
Attention:  Vicki Rollins
Facsimile:  (562) 426-5269
Email:  centvick@aol.com

**VIA EMAIL AND FACSIMILE**
Hooper, Lundy & Bookman, P.C.
1875 Century Park East, Suite 1600
Los Angeles, CA 90067
Attention:  Gary Torrell, Esq.
Facsimile:  (310) 551-8181
Email:  gtorrell@health-law.com

**VIA EMAIL AND FACSIMILE**
AGRA Capital Advisors, LLC
5850 W. 3rd Street #309
Los Angeles, CA 90036
Attention:  Jeffrey Ahlholm
Facsimile:  (323)297-1554
Email:  jeff@agracapital.com

**VIA EMAIL AND FACSIMILE**
Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Attention:  Jason A. Farber, Esq.
             Kennard Noyes, Esq.
Facsimile:  (206) 757-7041
Email:  JasonFarber@dwt.com
         KennardNoyes@dwt.com

> Re:  **Sellers' Objection Notice of Buyer's Default of the Non-Negotiable Subordinated Promissory Note**

Ladies and Gentlemen:

Reference is made to the following documents:  (i) that certain Asset Purchase Agreement dated as of October 24, 2018, as amended (the "APA"), by and between L.A. Downtown Medical Center LLC, a California limited liability company ("Buyer"), and Success Healthcare, LLC, a California limited liability company ("Parent"), Success Healthcare 1, LLC, a California limited liability company ("SH1"), and HLP of Los Angeles, LLC, a California limited liability company ("HLP" and collectively with Parent and SH1, "Sellers"); (ii) that certain Non-Negotiable Subordinated Promissory Note dated as of March 4, 2019, between Buyer as maker and SH1 as payee, in the original principal amount of $8,100,000.00 (the "Seller Note") (iii) that certain Limited Waiver of Timing Requirements dated as of September 20, 2018 ("Limited Waiver"), by and between Buyer and Sellers, waiving all timing requirements in sections 3.5(b), 3.5(c), 3.6(b) (solely to the extent such timing requirements apply to the Final QAF4 Adjustment and Final QAF5 Adjustment process referenced in section 3.7) and 3.7 of the APA and section 3(b) of the Seller Note until 5:00 p.m. Pacific Time on October 31, 2019 and the Buyer's Notice and Sellers' Dispute Notice (both defined below) related thereto; and (iv) the Purchase Price Escrow Agreement; and (v) the Seller Retention Note Escrow Agreement.  Capitalized terms used, but not otherwise defined, in this letter have the meanings ascribed to them in the APA or Seller Note, as applicable.

Parent, on behalf of Sellers, hereby delivers to Buyer: (i) notice of Buyer's Default of the Seller Note pursuant to Paragraph 5 of the Seller Note, (ii) Sellers' continued demand for QAF payments as required under the APA and its amendments;  (iii) Sellers' demand that Buyer issue a written instruction to release the $1,000,000 held in the Purchase Price Adjustment Escrow

1

Account to the Sellers; (iv) return to Sellers' the post-closing settlement for the overpayment of property tax, and (v) issue a written instruction to release the $420,750 held in the Seller Retention Note Escrow Account to the Sellers.

### A. Sellers' Notice of Buyer's Default

As stated in the Seller Note, "[s]ubject to any adjustments to amortization made in accordance with Section 3 below, the amounts owed under this Note will be repaid in nine (9) consecutive semi-annual installments as follows, with the outstanding balance of principal and interest due and payable in full on September 4, 2023 (the "Maturity Date"): (a) the first semi-annual payment of $900,000 shall be due on or before September 5, 2019, which is the first day after the six (6) month anniversary of the date hereof, and (b) thereafter, each additional semi-annual payment of $900,000 shall be due and payable on the first day after every six (6) month anniversary of the date of the first semi-annual payment, until paid in full. Each principal installment payment described above shall be due together with all interest accrued and unpaid up until the date of such payment." As explained below, on March 5, 2020, the total amount owed by Buyer was $910,843.33.

On September 4, 2019, Buyer delivered notice to Sellers of Buyer's asserted offsets to the Deferred Payments required under the Seller's Note (the "Buyer's Notice"). In the September 4, 2019 Buyer's Notice Buyer asserted $1,595,996 in offsets to the Deferred Payments. On September 5, 2019, Buyers owed $900,000 in principal and $164,912.55 of interest, totaling $1,064,912.55.

On October 31, 2019, Sellers issued to Buyer Sellers' Objection Notice, Final QAF4 Sellers' Objection Notice, Final QAF5 Sellers' Objection Notice, and SH1's Dispute Notice (the "Sellers' Dispute Notice"). In Sellers' Dispute Notice, Sellers disputed Buyer's offset calculations and asserted that Buyer's total offsets totaled $1,043,018.49. Although Buyer's calculations of Buyer's total offsets exceeded the initial $1,064,912.55 payment, Sellers' calculations of Buyer's total offsets did not exceed Buyer's initial payment. To the extent Sellers disputed Buyer's asserted offsets, Buyer was required to: (1) pay Sellers the difference between the amount due and the Buyer's asserted offsets, and (2) place any contested offset amounts due in an escrow account.[1] At the time of the first Deferred Payment, the contested offset due equaled $21,894.06. To the Sellers' knowledge, Buyer has not placed the contested offset amount into a designated escrow account.

On January 17, 2020, Buyer delivered Notice of Excluded Liability to Sellers stating that Buyer intended to offset the cost of the settlement totaling $155,238.90. Sellers did not contest the offset amount contained in the January 17, 2020 Buyer's Notice of Excluded Liability. Sellers maintain all other objections stated in the October 31, 2019 Sellers' Dispute Notice.

---

[1] Pursuant to Paragraph 3(b) of the Sellers' Note, "If the offset is disputed in good faith by SH1's delivery of written notice (the "Dispute Notice") to Maker within thirty (30) days after delivery of the Offset Notice (the amount of such dispute, the "Disputed Claim"), Maker shall remit the amount of the Disputed Claim from each amount due and payable under this Note (including any amount offset between delivery of the Offset Notice and delivery of the Dispute Notice) (up to the full amount of the Disputed Claim) to the escrow agent designated in the Escrow Agreement, to be held and released pursuant to the terms of the Escrow Agreement."

2

Under the terms of the Seller Note, Buyers were required to make the second Deferred Payment on March 5, 2020. Specifically, the Sellers Note required Buyer to pay Sellers $900,000 in principal and $144,188.17 in interest less any remaining offsets.

As of March 5, 2020, Buyer owed Sellers $910,843.33, net of the Sellers' calculations of Buyer's total offsets. Of that $910,843.33, $552,947.51 of contested offset amounts was required to place into the designated escrow account by Buyer on March 5, 2020.

A summary of the Buyer's payment obligations under Seller Note is below.

|   | Category | Sellers' Calculation |
|---|---|---|
| A | Original Amount due under Seller Note as of March 5, 2020[2] | $ 2,109,100.72 |
| B | Buyer's Asserted Offset[3] | ($1,751,204.90) |
| C | Sellers' Calculation of Buyer's Asserted Offset[4] | ($1,198,257.39) |
| D | Total Payment owed as of March 5, 2020[5] | $910,843.33 |
| E | Deferred Payment due on March 5, 2020[6] | $357,895.82 |
| F | Contested Offset to be placed in Escrow[7] | $552,947.51 |

Buyer has failed to make either the scheduled Deferred Payment or place the contested offset amounts in escrow and is now in default pursuant to Paragraph 4(a) of the Seller Note. This Notice constitutes Sellers' written notice of Buyer's Default as required under Paragraph 5 of the Seller Note, hereby triggering Buyer's ten-day cure period. If Buyer fails to cure the breach, Sellers will declare all amounts payable under the Seller Note to "be and become immediately due and payable" pursuant to Paragraph 5 of the Seller Note.

### B. Sellers' Demand for QAF Payments

Sellers further reiterate its demands contained in Sellers' Dispute Notice for QAF related payments owed to Sellers. First, pursuant to Section 13.9 of the APA, as found in the First Amendment to the APA, Sellers made an advance payment of $500,000 to the California Department of Health Care Services ("CDHCS"). As stated in Section 13.9(b), Buyers agreed to reimburse Sellers for the advance payment from the first $500,000 in QAFS Program payments received from the CDHCS. As Buyer has received in excess of $500,000 under QAF5, Buyer is obligated to remit to Sellers $500,000 immediately.

Second, pursuant to Paragraph 4 of the Second Amendment to the APA, Buyer is required to pay the Sellers for the difference between the Initial QAF adjustments and the Final QAF adjustments to the extent the Final QAF adjustments exceeded the Initial QAF adjustments. As

---

[2] "Original Amount due under Seller Note as of March 5, 2020" calculated by adding the payments owed on September 5, 2019 and the March 5, 2019.
[3] "Buyer's Assert Offset" calculated by adding Buyer's calculated offsets contained in the September 4, 2019 Buyer's Notice and the January 17, 2020 Buyer's Notice of Excluded Liability.
[4] "Sellers' Calculation of Buyer's Asserted Offset" calculated by adding Sellers' October 31, 2019 Deferred Payment Dispute Notice calculations and the January 17, 2020 Buyer's Notice of Excluded Liability.
[5] "Total Payment owed as of March 5, 2020" is the sum of Rows A and C.
[6] "Deferred Payment due on March 5, 2020" is the sum of Rows A and B.
[7] "Contested Offset to be placed in Escrow" is the difference between Row B and C.

3

stated in Sellers' Dispute Notice, the Final QAF4 Adjustments exceeded the Initial QAF adjustments by $2,107,984.06. Under the Second Amendment to the APA, half of the QAF4 Adjustment payment was due on August 15, 2019, with the remainder due on February 3, 2020. Buyer has failed to make a single QAF4 Adjustment payment. Buyer's QAF4 Adjustment payment is overdue. Buyer is, therefore, obligated to pay $2,107,984.06 to Sellers immediately.

### C. Sellers' Demand for the Return of the Purchase Price Adjustment Escrow Account

Sellers demand that Buyer issue a written instruction to release the $1,000,000 held in the Purchase Price Adjustment Escrow Account to the Debtors. Pursuant to Section 3.5 of the APA, Buyer agreed to provide Sellers with a written "Estimated Closing Statement," which would serve as the benchmarks for the post-closing price adjustments. As part of the process, Buyers agreed to place $1 million into the Purchase Price Adjustment Escrow Account to cover excess Seller Closing Indebtedness and Seller Transaction Expenses or any negative Reconciliation Amount. Any remaining funds in the Escrow would be returned to the Debtors pursuant to Section 3.5(e).

In the September 4, 2019 Buyer's Notice, Buyer did not identify a negative Reconciliation Amount nor any changes from the estimated Seller Closing Indebtedness and Seller Transaction Expenses. Because neither Buyer nor Sellers identified any negative Reconciliation Amount nor any changes from the estimated Seller Closing Indebtedness and the Seller Transaction Expenses; Sellers are entitled to the full return of the $1 million in the Purchase Price Adjustment Escrow Account. Sellers, therefore, request that Buyer issue a written instruction to release the $1 million held in the Purchase Price Adjustment Escrow Account to the Debtors.

### D. Sellers' Demand for the Post-Closing Settlement for the Overpayment of Property Tax

Sellers further demand that Buyer remit to Sellers the post-closing settlement concerning the $930,300 of overpayments in property taxes for the acquired assets for the period between 2013 and 2017. Pursuant to section 2.2(j) of the APA "all claims, rights, interests and proceeds with respect to state or local tax refunds (including property tax) resulting from periods prior to the Effective Time, and the right to pursue appeals of same" are deemed an Excluded Asset and the property of the Sellers. Section 13.1(a) further states that "if any asset or any liability, all other remittances and all mail and other communications that is an Excluded Asset or an Excluded Liability comes into the possession, custody or control of Buyer, Buyer will, within ten (10) Business Days following Buyer's realization of such receipt, transfer, assign or convey such asset or liability to Sellers at Sellers' cost. Until such transfer, assignment and conveyance, Buyer will not have any right, title or interest in or obligation or responsibility with respect to such asset or liability except as provided in the first sentence of this Section 13.1(a)." Sellers, therefore, request that Buyer remit to Sellers the $930,000 post-closing tax refund settlement.

### E. Sellers' Demand for the Release the Seller Retention Note Escrow

Finally, pursuant to Paragraph 4 of the Seller Retention Note Escrow Agreement, Sellers demand that Buyer issue a written instruction to release the $420,750 held in the Seller Retention Note Escrow Account to the Debtors. As stated in Paragraph 4(e) of the Seller Retention Note Escrow Agreement, any remaining funds in the Escrow would be returned to the Debtors within five days of the first anniversary of the Agreement dated March 4, 2019. Sellers, therefore, request

that Buyer issue a written instruction to release the $420,750 held in the Seller Retention Note Escrow Account to the Debtors.

*\*\**

      This notification is being provided to you subject to the confidentiality provisions contained in the Agreement and the terms of the Confidentiality and Non-Disclosure Agreement between Parent and RollinsNelson LTC, Corp., dated March 23, 2017.

IN WITNESS WHEREOF, the undersigned has executed this letter as of the date first written above.

**Success Healthcare, LLC**

By: _____
Name:  Andrew Hinkelman
Title:   CRO

**Success Healthcare 1, LLC**

By: _____
Name:  Andrew Hinkelman
Title:   CRO

**HLP of Los Angeles, LLC**

By: _____
Name:  Andrew Hinkelman
Title:   CRO