# EXHIBIT E



**DLA Piper LLP (US)**
1201 North Market Street
Suite 2100
Wilmington, Delaware 19801-1147
www.dlapiper.com

Stuart Brown
Stuart.Brown@dlapiper.com
T  302.468.5640
F  302.778.7913

December 22, 2020

**VIA EMAIL AND FACSIMILE**
L.A. Downtown Medical Center LLC
c/o RollinsNelson LTC Corp.
2615 Grand Avenue
Long Beach, CA 90815
Attention:  Vicki Rollins
Facsimile:  (562) 426-5269
Email:  centvick@aol.com

**VIA EMAIL AND FACSIMILE**
Hooper, Lundy & Bookman, P.C.
1875 Century Park East, Suite 1600
Los Angeles, CA 90067
Attention:  Gary Torrell, Esq.
Facsimile:  (310) 551-8181
Email:  gtorrell@health-law.com

**VIA EMAIL AND FACSIMILE**
AGRA Capital Advisors, LLC
5850 W. 3rd Street #309
Los Angeles, CA 90036
Attention:  Jeffrey Ahlholm
Facsimile:  (323)297-1554
Email:  jeff@agracapital.com

**VIA EMAIL AND FACSIMILE**
Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Attention:  Jason A. Farber, Esq.
              Kennard Noyes, Esq.
Facsimile:  (206) 757-7041
Email:  JasonFarber@dwt.com
         KennardNoyes@dwt.com

Re:   **Demand for: (1) Payment; (2) Buyer's Compliance with the APA (as amended); (3) Buyer's Compliance with the Sale Order; and (4) Submitting Contested Offsets to Escrow.**

Dear Ladies and Gentlemen:

Reference is made to the following documents:  (i) that certain Asset Purchase Agreement dated as of October 24, 2018, as amended (the "APA"), by and between L.A. Downtown Medical Center LLC, a California limited liability company ("Buyer"), and Success Healthcare, LLC, a California limited liability company ("Parent"), Success Healthcare 1, LLC, a California limited liability company ("SH1"), and HLP of Los Angeles, LLC, a California limited liability company ("HLP" and collectively with Parent and SH1, "Sellers"); (ii) Second Amendment to Asset Purchase Agreement dated as of March 1, 2019 (the "Second Amendment"); (iii) that certain Non-Negotiable Subordinated Promissory Note dated as of March 4, 2019, between Buyer as maker and SH1 as payee, in the original principal amount of $8,100,000.00 (the "Seller Note"); and (iv) the *Order (I) Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (III) Authorizing Success Healthcare 1, LLC to Grant*



December 22, 2020
Page Two

*Liens; and (IV) Granting Related Relief* (the "Sale Order") [Dkt. No. 740], all of which require your immediate attention and compliance.

As of the date hereof, the Buyer has failed and continues to fail to perform its material obligations under the APA, the Second Amendment, the Seller Note, and the Sale Order. The Buyer's conduct has impeded and continues to impede the administration of the Liquidating Trust established pursuant to the confirmed Plan and recoveries to creditors thereunder.[1] Presently, as detailed more fully below, direct monetary payment defaults by the Buyer alone equal at least $1,563,736.15 as of the date hereof.

The Liquidating Trustee, on behalf of the Parent and the Sellers, hereby delivers to Buyer: (i) Sellers' continued demand for QAF payments as required under the APA and its amendments; (ii) Sellers' continued demand for payments required under the Seller Note; (iii) Sellers' continued demand that Buyer return to Sellers the post-closing settlement for the overpayment of property tax; and (iv) Sellers' demand that Buyer respond to Sellers' requests for information related to Medicare reimbursement costs and liabilities for the year ending December 31, 2017. The Liquidating Trustee incorporates by reference Sellers' Objection Notice, Final QAF4 Sellers' Objection Notice, Final QAF5 Sellers' Objection Notice, and SH1's Dispute Notice dated October 31, 2019 (collectively, "Sellers' Objection Notice"); Sellers' Notice of Buyer's Default of the Seller Note, dated March 6, 2020 ("Sellers' Notice of Default"); and Sellers' Demand Letter for Buyer's Compliance with Section 13.2(c) of the APA dated December 21, 2020 ("Sellers' Medicare Demand Letter").

### A. Demand for QAF Payments and Released Escrow

As stated in Sellers' Objection Notice and Sellers' Notice of Default, pursuant to Paragraph 4 of the Second Amendment to the APA, Buyer is required to pay the Sellers the difference between the Initial QAF adjustments and the Final QAF adjustments to the extent the Final QAF adjustments exceeded the Initial QAF adjustments. As stated in Sellers' Objection Notice, the Final QAF4 Adjustments exceeded the Initial QAF adjustments by $2,107,984.06. Under the Second Amendment to the APA, half of the QAF4 Adjustment payment was due on August 15, 2019, with the remainder due on February 3, 2020. Buyer has failed to make a single QAF4 Adjustment payment due and owing under the terms of the APA. As of the date hereof, the amount of past due QAF4 Adjustment payments from the Buyer is at least $2,107,984.06.

---

[1] On September 17, 2020, the Bankruptcy Court entered an Order [Dkt. No. 2072] confirming the Modified Second Amended Joint Plan of Liquidation (the "Plan"). The effective date of the Plan occurred on October 1, 2020. Pursuant to the Plan and the Confirmation Order, the Promise Healthcare Group Liquidating Trust ("Trust") was established on the effective date of the Plan and Robert Michaelson of the Advisory Trust Group, LLC was appointed as Liquidating Trustee of the Trust. Substantially all of the Sellers' assets were transferred to the Liquidating Trust as of the effective date of the Plan.



December 22, 2020
Page Three

In addition to failing to comply with Paragraph 4 of the Second Amendment to the APA, Buyer has sought to improperly deduct certain QAF payments from the principal balance of the Promissory Note and set off such adjustments from current principal and interest installments due under the Seller Note.  Buyer's QAF offset claims are baseless.  Contrary to Buyer's representations, the adjustments Buyer seeks to offset were already factored into the purchase price adjustment under the APA.  In order to comply with CMS regulations, Buyer's alleged QAF IV offsets were rolled into QAF V and those amounts were factored into the reduced purchase price for the acquired assets.  Therefore, the Parties already incorporated all of the QAF IV invoiced fees that LADMC alleges as offsets into QAF V, which was, therefore, already factored into the purchase price under the APA.  Buyer cannot claim those amounts as offsets and benefit twice from the same adjustment contrary to the terms of the APA.  Sellers, therefore, contest Buyers' claim of $2,481,155 in QAF offsets in its entirety.  A breakdown of the Parties' disputes regarding this issue is attached to this letter as **Appendix A**.

Pursuant to Sections 3.5(d) and 3.7(a) of the APA, any dispute regarding Buyer's and Sellers' calculation of the QAF adjustments, must be submitted for resolution by the Independent Accountant, BDO USA, LLP ("BDO").  The Liquidating Trustee hereby demands that Buyer sign the engagement letter with BDO previously provided to Buyer on September 11, 2020, no later than January 8, 2021 so that the Parties can promptly proceed with resolving the QAF reconciliation dispute.  The Liquidating Trustee further demands that Buyer fully cooperate with BDO's requests for information to ensure the expedient resolution of this dispute.  Should BDO confirm Sellers' calculations, the Liquidating Trustee demands that Buyer immediately pay the QAF4 adjustment, release the contested offset amounts in escrow to the Liquidating Trustee, and pay BDO's fees and expenses.

### B. Demand for the Post-Closing Settlement for the Overpayment of Property Tax

As stated in Sellers' Notice of Default, the Liquidating Trustee demands that Buyer immediately remit to the Liquidating Trustee the proceeds of the post-closing settlement concerning the $930,300 of overpayments in property taxes for the acquired assets for the period between 2013 and 2017.  Pursuant to section 2.2(j) of the APA, "all claims, rights, interests and proceeds with respect to state or local tax refunds (including property tax) resulting from periods prior to the Effective Time, and the right to pursue appeals of same" are deemed an Excluded Asset and the property of the Sellers.  Section 13.1(a) further states that "if any asset or any liability, all other remittances and all mail and other communications that is an Excluded Asset or an Excluded Liability comes into the possession, custody or control of Buyer, Buyer will, within ten (10) Business Days following Buyer's realization of such receipt, transfer, assign or convey such asset or liability to Sellers at Sellers' cost.  Until such transfer, assignment and conveyance, Buyer will not have any right, title or interest in or obligation or responsibility with respect to such asset or liability except as provided in the first sentence of this Section 13.1(a)."



December 22, 2020
Page Four

During the negotiation of the APA, the Parties knew that Los Angeles County (the "County") had overtaxed the Silver Lake Medical Center ("SLMC") facilities for the periods 2013 to 2017. However, because the County would only deliver any refund for the overtaxed amounts to the current owner of the hospital, Buyer, in acquiring the SLMC facilities, would receive the tax settlement from the County. Under the terms of the APA, property tax refunds for periods prior to the effective date are an excluded asset and remain the property of the Sellers. The Parties, therefore, agreed that Buyer would file for a tax settlement payment based on adjusted values with the County going back to 2013 and remit that settlement to the Sellers. The intent of the Parties is captured in the SLMC Waterfall analysis, which reflects the Parties' purchase price adjustments and clearly articulated Buyer's post-close obligation to pay Sellers $930,300. (See Tab: Property Tax Appeal). As the SLMC Waterfall shows, the Buyer agreed to pay the settlement amount to Sellers post-closing.

Pursuant to the Sections 2.2(j) and 13.1(a) of the APA, the Liquidating Trustee demands that Buyer immediately turn over to the Liquidating Trustee the $930,300 settlement for overpayments in property taxes for the acquired assets for the period between 2013 and 2017. To the extent Buyer has breached the Parties' agreement and failed to timely file and prosecute the request for the tax overpayment settlement with the County, the Liquidating Trustee reserves any and all rights to seek any and all damages arising from the Buyer's failure to pursue the tax overpayment. Without waiver or limitation of any such rights, the Liquidating Trustee also demands that the Buyer immediately execute a power of attorney authorizing the Liquidating Trustee to take any and all actions to seek and receive the $930,300 settlement for overpayments in property taxes for the acquired assets for the period between 2013 and 2017. The Liquidating Trustee further demands that Buyer provide him with unfettered access to any information the County may require to process the tax overpayment settlement, as required under Section 13.2(c) of the APA and Paragraph 45 of the Sale Order [Dkt. No. 740].

### C. **Demand for Information for Medicare Audit.**

As stated in Sellers' Medicare Demand Letter, Buyer has, in violation of the APA, refused to provide Sellers with information necessary to complete Sellers' Medicare Bad Debt audit for Medicare reimbursement costs and liabilities for the year ending December 31, 2017. Pursuant to Article 2 of the APA, which governs the Assumed and Excluded Assets and Liabilities of the Parties, Medicare cost report receivables and liabilities for any period prior to the sale of the facilities to Buyer are the Sellers' property and/or responsibility. The Sellers engaged Noridian Healthcare Solutions ("Noridian") to evaluate the pre-sale Medicare claims and to create an adjustment report. The Sellers have repeatedly contacted Buyer to obtain access to data and documents in Buyer's possession, custody, and control that are necessary for Noridian to complete its review. To date, Buyer has refused to cooperate with those requests.



December 22, 2020
Page Five

As stated in Section 13.2(c) of the APA, where a matter involves an Excluded Asset or Liability, "Buyer will after the Effective Time give Sellers, their Affiliates and their respective representatives reasonable access during normal business hours to Buyer's books, accounts and records and all other relevant documents and information with respect to the assets, liabilities and business of the Business as representatives of Sellers and their Affiliates may from time to time reasonably request, all in such manner as not to unreasonably interfere with the operations of the Business." Moreover, the APA is clear that such efforts should be done through Buyer, not counsel, as stated in Section 13.2(c) ("Sellers acknowledge that they will coordinate their activities contemplated by this Section 13.2(c) through the chief executive officer of the Hospitals or his designee.").

Although the APA is clear and unambiguous regarding Buyer's obligation to provide Sellers with this information, the Court further incorporated Buyer's obligation within the terms of the Sale Order. [Dkt. No. 740]. Paragraph 45 of the Sale Order requires that "After the Closing, the Successful Bidder shall permit, for a period of four (4) years, the Debtors, including the Silver Lake Debtors, and any direct or indirect successor to the Silver Lake Debtors and their respective professionals, and the Committee and its professionals (each a "Permitted Party" and collectively, the "Permitted Parties"), reasonable access during normal business hours, to all books and records in connection with or that otherwise relate to the Purchased Assets and/or Collateral in the control or the possession of Successful Bidder or any of its affiliates or their respective agents or representatives (collectively, "Business Records") for the purposes of (i) pursuing, assessing, settling, or otherwise dealing with any Excluded Assets or Excluded Liabilities. . ." [*Id.* at ¶ 45]. Moreover, Paragraph 47 requires Buyer to make employees available to provide the information required to effectuate Sellers' rights as it relates to the Excluded Assets and Liabilities. Buyer's failure to provide the required information is not only a breach of the APA, it is a violation in contempt of the Sale Order.

Buyer's refusal to cooperate with Sellers and provide Sellers with the required information has prevented the Sellers from providing Noridian with the documents necessary to resolve the sampling of Medicare bad debt accounts. Buyer's refusal constitutes a breach of the APA and a violation of the Sale Order. Notably, Sellers requests are indisputably reasonable as they are narrowly tailored and limited only to a sample of only thirty-six (36) accounts that Noridian and Sellers identified to the Buyers. Thus, any burden on Buyer to comply with this request is minimal. For the reasons set forth in Sellers' Medicare Demand Letter and herein, the Liquidating Trustee demands that Buyer immediately cooperate with Liquidating Trustee's professionals and provide the information requested in the Medicare Demand Letter no later than January 6, 2021 so that the audit can be timely completed. Buyer's failure to provide the requested information already caused the Sellers' to fail to complete the audit by the original deadline and forced Sellers to request an emergency extension for the audit. Time is of the essence as the deadline to complete the audit is



December 22, 2020
Page Six

June 31, 2021.  The Liquidating Trustee reserves any and all rights, claims and remedies relating to or arising from Buyer's breaches of the cooperation provisions of the APA and violations of the Sale Order.

### D.  Disputed Offset Claims

Sellers further dispute several of Buyer's offsets.  First, as stated in Sellers' Objection Notice and Sellers' Notice of Default, the Parties had already calculated and resolved the QAF IV fees and adjustments such that LADMC's attempts to further claim those invoices as offsets are improper.  Moreover, for the reasons stated in Section A of this letter, the Parties already incorporated all of the QAF IV invoiced fees that Buyer alleges as offsets into QAF V and was, therefore, factored into the purchase price under the APA.  Buyer cannot claim those amounts as offsets and benefit twice from the same adjustment contrary to the terms of the APA.  Sellers, therefore, contest the $2,481,155.00 offsets concerning the QAF4 Invoices in its entirety.

In addition, Sellers dispute Buyers' claim to offset $187,032 in liabilities related to the Sellers' cost reports.  Contrary to Buyers' claimed offset, Sellers' cost report for the period ending March 4, 2019 reflected a liability of $159,896.  In addition, Sellers have already remitted a check for $159,896 resolving the matter.  That check was cashed on December 13, 2019.  Buyer is, therefore, not entitled to offset the amount for liabilities the Sellers have already resolved in full.

As of September 4, 2020, Buyer owed Sellers $3,139,372.06 under the Seller Note.  Of that amount, Sellers agrees that Buyer may offset $1,575,635.91.  As the remainder of the amounts owed under the Seller Note are based on Buyer's contested offsets,  Buyer is required to place into the designated escrow account $1,563,736.15.  A full breakdown of Buyer's obligations under the Seller Note can be found in **Appendix A**.  The Liquidating Trustee, therefore, demands that Buyer place the $1,563,736.15 in contested amounts in escrow within 30 days of receipt of this letter.

\* \* \*

For the reasons set forth above, the Liquidating Trustee demands that:

1. Buyer sign the engagement letter with BDO by no later than January 8, 2021 so that the Parties can promptly proceed with resolving the QAF reconciliation dispute and disputed offsets;
2. Buyer pay Seller the $930,300 settlement for overpayments in property taxes for the acquired assets for the period between 2013 and 2017 as stated in the SLMC Waterfall Analysis, using the wiring instructions contained in **Appendix B**;
3. Buyer immediately cooperate with Liquidating Trustee's professionals and provide the information requested in the Medicare Demand Letter no later than January 6, 2021; and



December 22, 2020
Page Seven

       4.  Buyers place the $1,563,736.15 in contested amounts in escrow no later than January 21, 2021.

The Liquidating Trustee reserves the right to pursue all legal actions to enforce compliance with the terms of the APA, the Seller Note, and the Sale Order, including, but not limited to, seeking sanctions, costs, and legal fees for failure to comply with the terms of the APA and Sale Order.

    This notification is being provided to you subject to the confidentiality provisions contained in the Agreement and the terms of the Confidentiality and Non-Disclosure Agreement between Parent and RollinsNelson LTC, Corp., dated March 23, 2017.

Best regards,

/s/ *Stuart M. Brown*

Stuart Brown


Cc:    Robert Michaelson, Trustee
         Andrew Sherman, Esquire



December 22, 2020
Page Eight

## **Appendix A**

| Promise Healthcare - SLMC Note Reconciliation and Other Items | Per Seller (Success) | Per Buyer (LADMC) |
|---|---:|---:|
| **Initial Seller Note Balance** | **8,100,000.00** | **8,100,000.00** |
| Semi-Annual Payment due under Seller Note as of September 5, 2019 | 1,066,500.00 | 1,066,500.00 |
| Offset Amounts for 9/5/19 Payment | | |
|    Medicare 2018 Cost Report Liability | 746,842.16 | 790,996.00 |
|    APU Quality Reduction | 242,176.33 | 760,000.00 |
|    Talbot Group Invoices - Mar 2019 - July 2019 | 45,000.00 | 45,000.00 |
|    Additional Talbot Group Invoice - Aug 2019 | 9,000.00 | 0.00 |
| Total Offset | 1,043,018.49 | 1,595,996.00 |
| **Amount to be Funded to Springing Escrow from First Payment Under Note** | **23,481.51** | |
| Semi-Annual Payment due under Seller Note as of March 5, 2020 | 1,044,772.06 | 1,044,772.06 |
| Offset Amounts for 3/5/20 Payment | | |
|    Settlement of Watkins Claim | 150,000.00 | 150,000.00 |
|    Buyer's attorneys fees defending the Claim | 5,238.90 | 5,238.90 |
|    Department of Health Care Services— Disproportionate Share Hospital (DSH) Unit Overpayment | 3,646.68 | 3,646.68 |
|    IBM CareDiscovery Quality Measures subscription invoice - Jan 2019 | 6,102.69 | 6,102.69 |
|    IBM CareDiscovery Quality Measures subscription invoice - Feb 2019 | 5,690.15 | 5,690.15 |
|    Cost Report as Filed Initial Demand Letter - 1/7/2020 (Check cashed 12/13/19) | 0.00 | 187,032.00 |
|    Initial Demand Letter - 12/30/19 | 361,939.00 | 361,939.00 |
| Total Offset | 532,617.42 | 719,649.42 |
| **Semi-Annual Payment due under Seller Note as of March 5, 2020, net of Offset** | **512,154.64** | **See below** |
| Offset Amount Variance (Difference between Buyer and Seller) | | 187,032.00 |
| Total Semi-Annual Payment net of Offset | | 325,122.64 |
| Total Disputed Amount Outstanding (net of amounts previously required to be funded to escrow) | | 529,496.00 |
| Amount to be funded to Escrow for 3/5/20 Installment Payment | | 325,122.64 |
| Outstanding Amount to be funded to Escrow for 9/5/19 Installment Payment | | 23,481.51 |
| **Total Amount Funded on March 16, 2020 to Escrow by Buyer** | | **348,604.15** |
| **Remaining Disputed Amount to be Funded to Escrow by Buyer** | | **187,032.00** |



December 22, 2020
Page Nine

| | | |
|---|---:|---:|
| **Semi-Annual Payment due under Seller Note as of September 4, 2020** | 1,028,100.00 | 1,028,100.00 |
| Offset Amounts for 9/4/20 Payment | | |
| QAF4 Invoices | 0.00 | 660,328.00 |
| QAF4 Invoices | 0.00 | 939,119.00 |
| QAF4 Invoices | 0.00 | 359,668.00 |
| QAF4 Invoices | 0.00 | 522,040.00 |
| Total Offset | 0.00 | 2,481,155.00 |
| **Total Payment Owed as of September 4, 2020 (A)+(B)+(C)** | 1,563,736.15 | 0.00 |
| **Remaining Principal Balance** | 5,400,000.00 | |
| Other Items: | | |
| Final QAF4 Adjustment | 2,107,984.06 | |
| Post-Closing Settlement for the Overpayment of Property Tax | 930,300.00 | |
| Medicare Bad Debt Audit - Potential Liability if not Compliant | 1,050,000.00 | |



December 22, 2020
Page Ten

## **Appendix B**
Wiring Instructions

**Bank Name:** East West Bank
**Bank Address:** 135 N. Los Robles Ave., Suite 600
　　　　　　　　Pasadena, CA 91101
**Bank Routing Number:** 322070381
**Beneficiary Account Holder:** Promise Healthcare Group Liquidating Trust
**Beneficiary Account Number:** 5500016541

**NOTE:**
1. The beneficiary name and beneficiary account number must match for funds to be credited.

2. All Domestic wires for East West Bank should be wired to bank routing no. 322070381.

3. All International wires for East West Bank should be wired to Swift code: EWBKUS66XXX.