**<u>EXHIBIT 1</u>**

## SETTLEMENT AGREEMENT AND RELEASES

This Settlement Agreement and Releases (this "Agreement") is made and entered into as of June 15, 2021, by and among **Robert Michaelson of Advisory Trust Group, LLC, in his capacity as Liquidating Trustee and Debtor Representative** (the "Liquidating Trustee"), **KPC Promise Healthcare, LLC** ("KPC"), the subsidiaries of KPC listed on Exhibit A (collectively, the "KPC Subsidiaries"), **Strategic Global Management, Inc.** ("Strategic"), and **Peter R. Baronoff** ("Baronoff"). The Liquidating Trustee, KPC, the KPC Subsidiaries, Strategic, and Baronoff are hereinafter referred to as the "Parties".

## RECITALS

**WHEREAS**, on November 4, 2018 (the "Petition Date"), Promise Healthcare Group, LLC and its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11, United States Code, with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Case Number 18-12491 (CTG) (jointly administered) (the "Chapter 11 Cases"); and

**WHEREAS**, the Debtors thereafter continued to operate their businesses and manage their properties as debtors-in-possession; and

**WHEREAS**, effective June 15, 2019, pursuant to an order of the Bankruptcy Court entered on March 1, 2019, and the Remaining Assets APA (as defined below), KPC and the KPC Subsidiaries purchased substantially all of the assets of seven hospitals and two skilled nursing facilities of the Debtors (the "Remaining Assets"); and

**WHEREAS**, on November 8, 2019, the Debtors commenced an adversary proceeding in the Bankruptcy Court against KPC and Strategic, Adv. Proc. No. 19-50776 (CTG) (the "Adversary Proceeding"), seeking approximately $10 million in damages from KPC and Strategic for tortious interference by KPC, Strategic, and Baronoff with the sale of substantially all of the assets of two of the Debtors' facilities: (1) Promise Hospital of Louisiana – Bossier City; and (2) Promise Hospital of Louisiana – Shreveport (collectively, the "Louisiana Facilities") to Lexmark Holdings, LLC; and

**WHEREAS**, on November 25, 2019, the Bankruptcy Court approved a stipulation between the Debtors and KPC resolving a motion filed by KPC to compel return of the $2.2 million deposit it tendered in connection with an asset purchase agreement between the Debtors and KPC for purchase of substantially all of the assets of the Louisiana Facilities that was never approved by the Bankruptcy Court (the "KPC Louisiana APA"), of which amount the sum of One Hundred Thirty Thousand Dollars ($130,000) plus interest (the "Escrowed Funds") remains held in escrow by U.S. Bank National Association (the "Escrow Agent"); and

**WHEREAS**, on January 6, 2020, KPC and Strategic filed their answer, with counterclaims, seeking approximately $1 million as a break-up fee and reimbursement of out of pocket expenses, including legal fees and expenses, in connection with the KPC Louisiana APA (the "Counterclaims"); and

/

**WHEREAS**, on September 17, 2020, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Modified Second Amended Joint Plan of Liquidation proposed by the Debtors and their Official Committee of Unsecured Creditors (the "Plan"); and

**WHEREAS**, the Plan became effective on October 1, 2020, and pursuant to the Plan, the assets and substantially all Causes of Action (as defined in the Plan) of the Debtors were transferred to and vested in the Promise Healthcare Group Liquidating Trust (the "Liquidating Trust"), and the Liquidating Trustee was appointed as trustee of the Liquidating Trust and representative of the Debtors; and

**WHEREAS**, on October 30, 2020, three of the KPC Subsidiaries (KPC Promise Hospital of Wichita Falls, LLC, KPC Hospital of Overland Park, LLC and KPC Promise Hospital of Dallas, LLC) filed a motion with the Bankruptcy Court for allowance and payment of certain Administrative Claims (as defined in the Plan) in the aggregate liquidated amount of approximately $4.9 million plus unliquidated amounts in connection with the purchase of the Remaining Assets by KPC and the KPC Subsidiaries (the "KPC Administrative Claims Motion"); and

**WHEREAS**, on November 17, 2020, the Liquidating Trustee was substituted for the Debtors as plaintiff in the Adversary Proceeding; and

**WHEREAS**, Strategic and KPC deny all claims and allegations set forth in the complaint in the Adversary Proceeding, the Liquidating Trustee denies all claims and allegations set forth in the Counterclaims and the KPC Administrative Claims Motion, and the Liquidating Trustee and KPC dispute each other's rights to the Escrowed Funds; and

**WHEREAS**, the Parties engaged in a mediation on March 4 and 5, 2021, and June 2, 2021, before retired Bankruptcy Court Judge Kevin Gross (the "Mediation"); and

**WHEREAS**, as a result of the Mediation, and in order to avoid the costs, delays and uncertainties of further litigation, (1) the Liquidating Trustee on the one hand, and KPC, the KPC Subsidiaries and Strategic, on the other hand, desire to fully and finally resolve all claims and disputes between them, and (2) the Liquidating Trustee and Baronoff desire to fully and finally resolve the claims and disputes between them that were asserted or could have been asserted in the Adversary Proceeding, the Counterclaims, or the KPC Administrative Claims Motion, all on the terms and conditions set forth in this Agreement.

## AGREEMENT

**NOW, THEREFORE,** in consideration of the promises, agreements, covenants, representations, warranties and obligations contained herein, and for good and valuable consideration, the adequacy and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    Recitals.  The above recitals are hereby incorporated in and made a part of this Agreement.

2.    Bankruptcy Court Approval.

a.  <u>Motion for Approval</u>.  As promptly as practicable after this Agreement has been fully executed, the Liquidating Trustee shall file a motion with the Bankruptcy Court, in form and substance reasonably acceptable to all Parties, for approval of this Agreement by the Bankruptcy Court.

b.  <u>Final Order Date</u>.  The Parties acknowledge that this Agreement is subject to and contingent upon approval of the Bankruptcy Court and that this Agreement shall not be effective, nor shall any Party have any obligations hereunder, unless and until the Final Order Date shall have occurred; provided, however, that unless and until the Bankruptcy Court enters an order denying approval of this Agreement, the Parties shall take no action inconsistent with this Agreement and shall support entry of the Final Order.  The "<u>Final Order Date</u>" shall be the first business day after the date on which (i) the Bankruptcy Court shall have entered an order authorizing and approving this Agreement, in form and substance reasonably acceptable to all Parties, and (ii) such order shall have become final and no longer subject to appeal or certiorari proceeding, without regard to the Parties' respective rights under Fed. R. Bankr. P. 9024.

3.  <u>Dismissal of Adversary Proceeding and Counterclaims; Withdrawal of Related Administrative Claims</u>.

a.  <u>Adversary Proceeding and Counterclaims</u>.  Contemporaneously with the execution of this Agreement, the parties to the Adversary Proceeding and the Counterclaims shall execute and deliver to the Liquidating Trustee a stipulation and proposed agreed order of dismissal, substantially in the form attached hereto as <u>Exhibit B</u>, dismissing the Adversary Proceeding and the Counterclaims with prejudice.  The Liquidating Trustee shall hold in trust and shall refrain from filing such stipulation and proposed agreed order of dismissal with the Bankruptcy Court until on or after the Final Order Date.  The Parties shall thereafter take such actions as may be reasonably necessary to ensure entry of the agreed order of dismissal by the Bankruptcy Court (the "<u>Adversary Dismissal Order</u>").

b.  <u>KPC Administrative Claims</u>.  Contemporaneously with the execution of this Agreement, KPC shall execute and deliver to the Liquidating Trustee a notice of withdrawal, substantially in the form attached hereto as <u>Exhibit C</u>, withdrawing with prejudice the Administrative Claims filed by KPC in the Chapter 11 Cases, Claim Nos. 1680, 1681, 1682 and 1683, each in the amount of $1,000,000, plus interest.  The Liquidating Trustee shall hold in trust and shall refrain from filing such notice of withdrawal with the Bankruptcy Court until on or after the Final Order Date.

4.  <u>Withdrawal of KPC Administrative Claims Motion and Related Administrative Claim</u>.  Contemporaneously with the execution of this Agreement, KPC shall cause the KPC Subsidiaries that filed the KPC Administrative Claims Motion to execute and deliver to the Liquidating Trustee a notice of withdrawal, substantially in the form attached hereto as <u>Exhibit D</u>, withdrawing with prejudice (i) the KPC Administrative Claims Motion and (ii) the Administrative Claim filed by KPC Promise Hospital of Overland Park, LLC in the Chapter 11 Cases, Claim No. 1742, in the

amount of $2,511,391, plus interest.  The Liquidating Trustee shall hold in trust and shall refrain from filing such notice of withdrawal with the Bankruptcy Court until on or after the Final Order Date.

5.    <u>Release of Escrowed Funds</u>. Within two (2) business days after the Bankruptcy Court shall have entered the Adversary Dismissal Order, KPC and the Liquidating Trustee shall execute and deliver to the Liquidating Trustee a joint written direction, substantially in the form attached hereto as <u>Exhibit E</u>, directing the Escrow Agent to release the Escrowed Funds to the Liquidating Trustee, and the Liquidating Trustee shall deliver such joint written direction to the Escrow Agent.  The Parties shall thereafter take such actions as may be reasonably necessary for release of the Escrowed Funds to the Liquidating Trustee.

6.    <u>Releases</u>.

   a.    <u>Release by Liquidating Trust and Debtors of KPC, the KPC Subsidiaries and Strategic</u>.  Effective from and after the Final Order Date, and except as expressly provided in this Agreement, the Liquidating Trustee, for himself and on behalf of the Liquidating Trust and the Debtors, and his and their respective attorneys, accountants, financial advisors, predecessors, successors and assigns (collectively, the "<u>Trust and Debtor Releasors</u>"), hereby waives and releases any and all claims and rights that any of the Trust and Debtor Releasors have or may have against KPC, any of the KPC Subsidiaries, or Strategic, or any of the Designated KPC/Strategic Personnel[1] or any of the Designated KPC/Strategic Attorneys,[2] or any of their respective successors and assigns (collectively, the "<u>KPC Releasees</u>"), of whatever kind or nature, at law or in equity, and whether direct or indirect, liquidated or unliquidated, matured or unmatured, contingent or noncontingent, known or unknown, suspected or unsuspected, including, but not limited to, all claims and rights of any of the Trust and Debtor Releasors that were asserted or could have been asserted in or in connection with the Adversary Proceeding, the Counterclaims, the KPC Administrative Claims Motion, any Administrative Claim that was or could have been asserted by any of the KPC Releasees in the Chapter 11 Cases, or with respect to the Louisiana Facilities, the Remaining Assets, any claim, recoupment, setoff, adjustment, or other liability under any of the Medicare provider agreements or other executory contracts or unexpired leases assumed by any of the KPC Releasees pursuant to an order of the Bankruptcy Court (including, but not limited to, any Medicare cost report liabilities), the Escrowed Funds, the Transition Services Agreements,[3] or the administration of the Chapter 11 Cases or the Liquidating Trust.  To avoid confusion, the foregoing is intended to be a broad

---

[1] The "<u>Designated KPC/Strategic Personnel</u>" are (a) Dr. Kali P. Chaudhuri, (b) William E. Thomas, (c) Kelly Thomas, and (d) David Platt.
[2] The "<u>Designated KPC/Strategic Attorneys</u>" are the following law firms and the attorneys who are partners, shareholders or employees of such law firms:  (a) Buchalter, A Professional Corporation; (b) Landis Rath & Cobb LLP; (c) Barnes & Thornburg LLP; (d) Hooper, Lundy & Bookman, P.C.; and (e) Loeb & Loeb LLP.
[3] The "<u>Transition Services Agreements</u>" are (a) the Transition Services Agreement dated June 15, 2019, among Promise Healthcare, Inc. and its subsidiaries listed therein, KPC and the KPC Subsidiaries, as amended by the Amendment to Transition Services Agreement dated August 1, 2019, and (b) the Post-Closing Transition Services Agreement dated June 15, 2019, among Promise Healthcare, Inc. and its subsidiaries listed therein, KPC and the KPC Subsidiaries.

and general release extending to the entire relationship between each of the Trust and Debtor Releasors, on the one hand, and each of the KPC Releasees, on the other hand; provided, however, that notwithstanding anything herein to the contrary:

(1)     the Trust and Debtor Releasors expressly do not waive or release any claims or rights they have under the Confirmation Order or the Plan;

(2)     provided that they do not assert any monetary claims against the KPC Releasees, which claims are specifically released (and not excluded from the releases in this Section 6(a)), the Trust and Debtor Releasors expressly do not waive or release any claims or rights to enforce (A) the *Order (I) Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (III) Granting Related Relief [Remaining Assets]*, entered by the Bankruptcy Court on March 1, 2019 [D.I. 832] (the "Remaining Assets Sale Order"), (B) the Asset Purchase Agreement dated February 25, 2019, among Promise Healthcare, Inc. and its subsidiaries listed therein and Strategic [D.I. 831-1, 8321-2 and 832-3], as assigned by Strategic to KPC and the KPC Subsidiaries and amended by Amendment No. 1 to Asset Purchase Agreement dated June 14, 2019, among Promise Healthcare, Inc. and its subsidiaries listed therein, KPC, and the KPC Subsidiaries [D.I. 1195-1] (the "Remaining Assets APA") and the agreements and instruments delivered pursuant to the Remaining Assets APA;

(3)     the Trust and Debtor Releasors expressly do not waive or release claims or rights they have pursuant to the *Order (I) Authorizing the Debtors To Grant Liens to Credit Suisse AG, New York Branch, and to Subsidiaries of KPC Promise Healthcare, LLC in Connection with the Remaining Assets Sale and (II) Granting Related Relief* entered by the Bankruptcy Court on May 29, 2019 [D.I. 1135] (the "Reconciliation Order"), and the security agreements, financing statements, and other agreements and instruments executed and delivered pursuant to the Reconciliation Order, including but not limited to, the Reconciliation Agreement dated as of June 14, 2019, among KPC, the KPC Subsidiaries, Promise Healthcare, Inc. and its subsidiaries listed therein, CVP Loan Servicing LLC, and Credit Suisse AG, New York Branch (the "Reconciliation Agreement");

(4)     the Trust and Debtor Releasors expressly do not waive or release claims or rights they have pursuant to orders of the Bankruptcy Court regarding assumption and assignment of executory contracts or unexpired leases to KPC or any of the KPC Subsidiaries or determining cure amounts thereunder (the "Contract and Lease Orders");

(5)     the Trust and Debtor Releasors expressly do not waive or release claims or rights they have under the Interim Management Agreements (as defined in the Remaining Assets APA), the business associate agreements entered into

in connection with the Interim Management Agreements, or the business associate agreements entered into in connection with the Transition Services Agreements;

(6)     the Trust and Debtor Releasors expressly do not waive any requirements in the Remaining Assets APA, the Reconciliation Agreement, or the Interim Management Agreements for KPC, the KPC Subsidiaries, and/or Strategic to cooperate with the Debtors and/or the Liquidating Trust in pursuing any claims against any third party (other than Baronoff), including, but not limited to, (A) the Utah Department of Health and/or the Utah Division of Medicaid and Health Financing, and (B) the Mississippi Department of Health and/or the Mississippi Division of Medicaid;

(7)     except as provided in subsection (c) of this Section 6, the Trust and Debtor Releasors expressly do not waive or release any claims or rights they have or may have against Baronoff;

(8)     the Trust and Debtor Releasors expressly do not waive or release any objections they have or may have to any claims of Buchalter, A Professional Corporation ("Buchalter") asserted in the Chapter 11 Cases;

(9)     the Trust and Debtor Releasors expressly do not waive or release any requirements or obligations of KPC, the KPC Subsidiaries, Strategic, or any of their respective officers, directors, managers, equityholders, or employees arising under any enforceable written agreement they may have with the Liquidating Trustee, the Liquidating Trust, or any of the Debtors that is not specifically referenced in this Agreement, to the extent any such other agreement(s) exist; provided, however, that the Trust and Debtor Releasors expressly do release any claims they may have against Aleyda Yanes in connection with the KPC Administrative Claims Motion; and

(10)    the Trust and Debtor Releasors expressly do not waive or release any claims or rights arising from a breach of this Agreement.

b.     <u>Release by KPC, the KPC Subsidiaries and Strategic of Liquidating Trust and Debtors</u>.  Effective from and after the Final Order Date, and except as expressly provided in this Agreement, KPC, each of the KPC Subsidiaries, and Strategic, for themselves and on behalf of the Designated KPC/Strategic Personnel, the Designated KPC/Strategic Attorneys, and their respective successors and assigns (collectively, the "<u>KPC Releasors</u>"), hereby waive and release any and all claims and rights that any of the KPC Releasors have or may have against the Liquidating Trustee, the Liquidating Trust or any of the Debtors, or any of their respective attorneys, accountants, financial advisors, predecessors, successors and assigns (collectively, the "<u>Trust and Debtor Releasees</u>"), of whatever kind or nature, at law or in equity, and whether direct or indirect, liquidated or unliquidated, matured or unmatured, contingent or noncontingent, known or unknown, suspected or unsuspected, including but not limited to, all claims and rights of any of the KPC

Releasors that were asserted or could have been asserted in or in connection with the Adversary Proceeding, the Counterclaims, the KPC Administrative Claims Motion, any Administrative Claim that was or could have been asserted by any of the KPC Releasors in the Chapter 11 Cases, or with respect to the Louisiana Facilities, the Remaining Assets, any claim, recoupment, set-off, adjustment, or other liability asserted against any of the KPC Releasors under any of the Medicare provider agreements or other executory contracts or unexpired leases assumed by any of the KPC Releasors pursuant to an order of the Bankruptcy Court (including, but not limited to, any Medicare cost report liabilities), the Escrowed Funds, the Transition Services Agreements, or the administration of the Chapter 11 Cases or the Liquidating Trust.  To avoid confusion, the foregoing is intended to be a broad and general release extending to the entire relationship between each of the KPC Releasors, on the one hand, and each of Trust and Debtor Releasees, on the other hand; provided, however, that notwithstanding anything herein to the contrary:

(1)     the KPC Releasors expressly do not waive or release any claims or rights they have under the Confirmation Order or the Plan;

(2)     provided that they do not assert any monetary claims against the Trust and Debtor Releasees, which claims are specifically released (and not excluded from the releases in this Section 6(b)), the KPC Releasors expressly do not waive or release any claims or rights to enforce (A) the Remaining Assets Sale Order, or (B) the Remaining Assets APA, and the agreements and instruments delivered pursuant to the Remaining Assets APA;

(3)     the KPC Releasors expressly do not waive or release claims or rights they have pursuant to the Reconciliation Order, and the security agreements, financing statements, and other agreements and instruments executed and delivered pursuant to the Reconciliation Order, including but not limited to, the Reconciliation Agreement;

(4)     the KPC Releasors expressly do not waive or release claims or rights they have pursuant to the Contract and Lease Orders;

(5)     the KPC Releasors expressly do not waive or release claims or rights they have under the Interim Management Agreements, the business associate agreements entered into in connection with the Interim Management Agreements, or the business associate agreements entered into in connection with the Transition Services Agreements;

(6)     the KPC Releasors expressly do not waive any requirements in the Remaining Assets APA, the Reconciliation Agreement, or the Interim Management Agreements for the Debtors and/or the Liquidating Trust to cooperate with KPC, the KPC Subsidiaries and/or Strategic in pursuing any claims against any third party (other than Baronoff), including, but not limited to, (A) the Utah Department of Health and/or the Utah Division of

Medicaid and Health Financing, and (B) the Mississippi Department of Health and/or the Mississippi Division of Medicaid;

(7)   except as provided in subsection (d) of this Section 6, the KPC Releasors expressly do not waive or release any claims or rights that Baronoff may have against any of the Trust and Debtor Releasees;

(8)   the KPC Releasors expressly do not waive or release any claims of Buchalter asserted in the Chapter 11 Cases;

(9)   the KPC Releasors expressly do not waive or release any requirements or obligations of the Liquidating Trustee, the Liquidating Trust, the Debtors, or any of their respective officers, directors, managers, equityholders, or employees arising under any enforceable written agreement they may have with KPC, any of the KPC Subsidiaries, or Strategic that is not specifically referenced in this Agreement, to the extent any such other agreement(s) exist; provided, however, that the KPC Releasors expressly do release any claims they may have against Aleyda Yanes in connection with the KPC Administrative Claims Motion; and

(10)  the KPC Releasors expressly do not waive or release any claims or rights arising from a breach of this Agreement.

c.   <u>Release by Liquidating Trust and Debtors of Baronoff</u>.  Effective from and after the Final Order Date, and except as expressly provided in this Agreement, the Trust and Debtor Releasors hereby waive and release any and all claims and rights of any nature whatsoever that any of the Trust and Debtor Releasors has or may have against Baronoff that were asserted or could have been asserted in the Adversary Proceeding, the Counterclaims, or the KPC Administrative Claims Motion.  To avoid confusion, the foregoing is intended to release only specific claims and rights, and the Trust and Debtor Releasors expressly do not waive, release, impair, limit, mitigate or minimize in any way any other claims or rights they have or may have against, or relating to, Baronoff, including, but not limited to:

(1)   any claims or rights under the Confirmation Order or the Plan;

(2)   any claims or rights that have been asserted or may be asserted by any of the Trust and Debtor Releasors against, or relating to, Baronoff in or in connection with the action entitled *Robert Michaelson of Advisory Trust Group, LLC, in his capacity as Debtor Representative and Liquidating Trustee v. Peter Baronoff, et al.*, Case No. 1:21-cv-21543-FAM currently pending in the United States District Court for the Southern District of Florida (the "<u>District Court Litigation</u>");

(3)   any objections, defenses or other challenges of any kind or nature that any of the Trust and Debtor Releasors have or may have to any claims that have

been or may be asserted by or on behalf of Baronoff in the Chapter 11 Cases consistent with the Plan;

(4)  any objections, defenses or other challenges of any kind or nature that any of the Trust and Debtor Releasors have or may have to any Alleged Legal Expense Indemnification Claims (as defined in the Plan) or any rights or claims to the Legal Expense Escrow (as defined in the Plan) that have been or may be asserted by or on behalf of Baronoff consistent with the Plan;

(5)  any objections, defenses or other challenges of any kind or nature that any of the Trust and Debtor Releasors have or may have to any claims or rights that have been or may be asserted by or on behalf of Baronoff, consistent with the Plan, arising out of any act taken or omitted to be taken by any of the Trust and Debtor Releasors at any time, except to the extent that any such claims or rights relate to the Adversary Proceeding, the Counterclaims, or the KPC Administrative Claims Motion;

(6)  any claims or rights that have been asserted or may be asserted by any of the Trust and Debtor Releasors against, or relating to, Baronoff, consistent with the Plan, arising out of any act taken or omitted to be taken by Baronoff at any time, except to the extent that any such claims or rights relate to the Adversary Proceeding, the Counterclaims, or the KPC Administrative Claims Motion; and

(7)  any claims or rights arising from a breach of this Agreement.

d.  <u>Release by Baronoff of Liquidating Trust and Debtors</u>.  Effective from and after the Final Order Date, and except as expressly provided in this Agreement, Baronoff hereby waives and releases any and all claims and rights of any nature whatsoever that Baronoff has or may have against any of the Trust and Debtor Releasees that were asserted or could have been asserted in the Adversary Proceeding, the Counterclaims, or the KPC Administrative Claims Motion.  To avoid confusion, the foregoing is intended to release only specific claims and rights, and Baronoff expressly does not waive, release, impair, limit, mitigate or minimize in any way any other claims or rights he has or may have against, or relating to, any of the Trust and Debtor Releasees, including, but not limited to:

(1)  any claims or rights under the Confirmation Order or the Plan;

(2)  any objections, defenses or other challenges of any kind or nature that Baronoff has or may have to any claims or rights that have been asserted or may be asserted by any of the Trust and Debtor Releasees against, or relating to, Baronoff in or in connection with the District Court Litigation;

(3)  any claims that have been or may be asserted by or on behalf of Baronoff in the Chapter 11 Cases consistent with the Plan;

(4)     any Alleged Legal Expense Indemnification Claims (as defined in the Plan) or any rights or claims to the Legal Expense Escrow (as defined in the Plan) that have been or may be asserted by or on behalf of Baronoff consistent with the Plan;

(5)     any claims or rights that have been asserted or may be asserted by or on behalf of Baronoff, consistent with the Plan, arising out of any act taken or omitted to be taken by any of the Trust and Debtor Releasees at any time, except to the extent that any such claims or rights relate to the Adversary Proceeding, the Counterclaims, or the KPC Administrative Claims Motion;

(6)     any objections, defense or other challenges of any kind or nature that Baronoff has or may have to any claims or rights that have been or may be asserted by any of the Trust and Debtor Releasees, consistent with the Plan, arising out of any act taken or omitted to be taken by Baronoff at any time, except to the extent that any such claims or rights relate to the Adversary Proceeding, the Counterclaims, or the KPC Administrative Claims Motion; and

(7)     any claims or rights arising from a breach of this Agreement.

The claims and rights that are waived and released in this Section 6 are hereinafter referred to as the "Released Claims."

7.     Waiver of Unknown Claims.  In connection with the Released Claims, each of the Parties respectively acknowledges it is familiar with and has been advised by its respective legal counsel of the provisions of California Civil Code Section 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her, might have materially affected his or her settlement with the debtor.

Being aware of California Civil Code Section 1542, each of the Parties, for themselves and on behalf of the persons and entities on whose behalf they are waiving and releasing any Released Claims, respectively waives any rights it has or may have thereunder, as well as any other statutes or common law principles of similar effect from any jurisdiction.

8.     Cooperation.  With the exception of Baronoff, each Party to this Agreement shall confer with the other Parties to this Agreement prior to filing or submission of (i) the motion for approval of this Agreement and proposed order, (ii) the stipulation and proposed agreed order of dismissal dismissing the Adversary Proceeding and the Counterclaims with prejudice, (iii) the withdrawal of the KPC Administrative Claims Motion with prejudice, (iv) the joint written instructions for release of the Escrowed Funds to the Liquidating Trustee, and (v) any other document that any Party to this Agreement may desire to submit to the Bankruptcy Court or the Escrow Agent in connection with any of the foregoing.  The Parties agree to cooperate in good faith and to take any further actions reasonably necessary to effectuate this Agreement.

9.      <u>Representations and Warranties</u>.  Each Party hereby represents and warrants that: (i) it is the sole and exclusive lawful owner of its respective Released Claims; (ii) it has not made any assignment or transfer, in whole or in part, including, but not limited to assignment or transfer by subrogation or by operation of law of its respective Released Claims; (iii) subject to Bankruptcy Court approval, it has full power and authority to enter into this Agreement; (iv) it knows of no person or entity that intends to assert a claim by, through, under, or on behalf of such Party; (v) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Agreement; (vi) it is represented and has been advised by counsel in connection with this Agreement, which such Party executes wholly voluntarily and of its own choice, volition, judgment, belief and knowledge, after consultation with such counsel and not under coercion or duress; (vii) it has made its own investigation of the facts and is relying solely upon its own knowledge and the advice of its counsel; and (viii) it knowingly waives any claim that this Agreement was induced by any misrepresentation or nondisclosure and any right to rescind or avoid this Agreement based upon presently existing facts, known or unknown.

10.     <u>No Admissions</u>.  By entering into this Agreement, the Parties do not admit any liability whatsoever and expressly deny any and all such liability. Nothing in this Agreement shall be construed as any admission of fault by any of the Parties with respect to any of the allegations made by any Party.

11.     <u>Opportunity To Cure</u>.  It is agreed that in the event of a claimed default under this Agreement, the non-defaulting Party shall give written notice of the alleged default and the defaulting Party shall cure the default within five (5) business days of such notice.  If the alleged default is cured within that time frame, then there shall be no breach of this Agreement.

12.     <u>Notices</u>.   Any notice, demand, or communication required, permitted, or desired to be given hereunder shall be deemed effectively given when delivered by any of the following means: electronic mail at the addresses listed below, personally delivered with signed receipt, by overnight courier with signed receipt, or by registered United States mail, with postage prepaid and return receipt requested, addressed to the addresses below or to such other address as any Party may designate, with copies thereof to the respective counsel thereof as notified by such Party.

        <u>For the Liquidating Trustee</u>:

                Robert N. Michaelson, Liquidating Trustee
                Advisory Trust Group, LLC
                10645 N. Oracle Road
                Suite 121-371
                Oro Valley, Arizona 85737
                Email: bob.michaelson@advisorytgllc.com
                Telephone: (917) 992-5006

                with a copy to:

                Waller Lansden Dortch & Davis, LLP
                Nashville City Center

511 Union Street, Suite 2700
Nashville, Tennessee 37219
Attention:  John Tishler
Email: John.Tishler@wallerlaw.com
Telephone: (615) 850-8756

For KPC, the KPC Subsidiaries, or Strategic:

Strategic Global Management, Inc.
9 KPC Parkway, Suite 301
Corona, California 92879
Attention:  William E. Thomas
Email: bthomas@GlobalMSO.com
Telephone: (951) 782-8812

with a copy to:

Buchalter, A Professional Corporation
1000 Wilshire Blvd., Suite 1500
Los Angeles, California 90017
Attention:  Mary H. Rose
Email: mrose@buchalter.com
Telephone: (213) 891-5727

For Baronoff:

Peter R. Baronoff
9 KPC Parkway, Suite 301
Corona, California 92879
Email: pbaronoff@kpcgm.com
Telephone: (951) 782-8100

with a copy to:

Brodsky Fotiu-Wojtowicz, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
Attention:  Benjamin H. Brodsky
Email: bbrodsky@bfwlegal.com
Telephone: (305) 503-5054

13.    Joint Participation.  The Parties participated jointly in the negotiation and preparation of this Agreement, and each Party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement.  Accordingly, it is agreed that no rule of construction shall apply against any Party or in favor of any Party.  This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one Party and in favor of another Party.

14.     Waiver.  No claim or right arising out of a breach or default under this Agreement can be discharged by a waiver of that claim or right unless the waiver is in writing signed by the Party to be bound by such waiver.  A waiver by any Party of a breach or default by another Party of any provision of this Agreement shall not be deemed a waiver of future compliance with such provision, and such provision shall remain in full force and effect.

15.     Severability.  Should any of the provisions of this Agreement be rendered invalid by a court or government agency of competent jurisdiction, it is agreed that this shall not in any way or manner affect the enforceability of the other provisions of this Agreement which shall remain in full force and effect.

16.     Section Headings.  Section headings in this Agreement are included for convenience of reference only and shall not be a part of this Agreement for any other purpose.

17.     Entire Agreement.  The Parties each represent and warrant that no promise or inducement has been offered or made except as set forth in this Agreement and that the consideration stated is the sole consideration for this Agreement.  This Agreement constitutes the complete agreement and understanding among the Parties as to the subject matter hereof, and supersedes any and all prior agreements, understandings, promises, or inducements, no matter the form, concerning its subject matter.

18.     Modifications.  No modifications, amendments, or changes to this Agreement shall be binding or enforceable unless reduced to writing and signed by all of the Parties.

19.     Counterparts; Facsimile Signatures.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same Agreement.  This Agreement may be executed and delivered by facsimile or electronic scan, and upon such delivery, the facsimile or electronic scan signature shall be deemed to have the same effect as if the original signature had been delivered to the other Parties.

20.     Attorneys' Fees and Costs.  The Parties understand and agree that they are each responsible for payment of their respective costs and attorneys' fees incurred in connection with the Adversary Proceeding, the Counterclaims, the KPC Administrative Claims Motion, the Escrowed Funds, and the negotiation, execution and implementation of this Agreement such that they shall not seek indemnification or any other form of reimbursement from any other Party for any such costs or fees.

21.     Successors.  This Agreement shall be binding upon, enforceable by and inure to the benefit of each of the Parties' respective successors, heirs and assigns.

22.     Bankruptcy Court Jurisdiction.  Until the closing of the Chapter 11 cases, the Bankruptcy Court shall have sole and exclusive jurisdiction to hear and determine any dispute arising under this Agreement.

[Signatures on Following Page]

YOU EXPRESSLY ACKNOWLEDGE, REPRESENT, AND WARRANT THAT YOU HAVE CAREFULLY READ THIS SETTLEMENT AGREEMENT AND RELEASES; THAT YOU FULLY UNDERSTAND THIS SETTLEMENT AGREEMENT AND THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THE RELEASES; AND THAT YOU HAVE EXECUTED THIS SETTLEMENT AGREEMENT AND THE RELEASES VOLUNTARILY AND KNOWINGLY.

**IN WITNESS WHEREOF,** the Parties have entered into this Agreement as of the date first written above.

Date: 8/3/21

**Robert Michaelson of Advisory Trust Group, LLC, solely in his capacity as Liquidating Trustee and Debtor Representative**

Date: 8/10/21

**KPC Promise Healthcare, LLC, for itself and on behalf of the KPC Subsidiaries**

Name: WILLIAM E. THOMAS
Title: EVP

Date: 8/10/21

**Strategic Global Management, Inc.**

Name: WILLIAM E. THOMAS
Title: EVP

Date: _____

**Peter R. Baronoff**

SETTLEMENT AGREEMENT AND RELEASES -Page 14

8220941 v2

YOU EXPRESSLY ACKNOWLEDGE, REPRESENT, AND WARRANT THAT YOU HAVE CAREFULLY READ THIS SETTLEMENT AGREEMENT AND RELEASES; THAT YOU FULLY UNDERSTAND THIS SETTLEMENT AGREEMENT AND THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THE RELEASES; AND THAT YOU HAVE EXECUTED THIS SETTLEMENT AGREEMENT AND THE RELEASES VOLUNTARILY AND KNOWINGLY.

**IN WITNESS WHEREOF,** the Parties have entered into this Agreement as of the date first written above.

_____     Date: __8/3/21__

**Robert Michaelson of Advisory Trust
Group, LLC, solely in his capacity as
Liquidating Trustee and Debtor Representative**


_____     Date: _____

**KPC Promise Healthcare, LLC, for itself
and on behalf of the KPC Subsidiaries**

Name:_____
Title:_____


_____     Date: _____

**Strategic Global Management, Inc.**

Name:_____
Title:_____


_____     Date: __8/10/21__

**Peter R. Baronoff**

8220941 v2

# EXHIBIT A

## <u>SUBSIDIARIES OF KPC PROMISE HEALTHCARE, LLC</u>

KPC Promise Hospital of Phoenix, LLC
KPC Promise Hospital of Overland Park, LLC
KPC Promise Skilled Nursing Facility of Overland Park, LLC
KPC Promise Hospital of Baton Rouge, LLC
KPC Promise Hospital of Vicksburg, LLC
KPC Promise Hospital of Wichita Falls, LLC
KPC Promise Skilled Nursing Facility of Wichita Falls, LLC
KPC Promise Hospital of Salt Lake, LLC
KPC Promise Hospital of Dallas, LLC

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROMISE HEALTHCARE GROUP, LLC, *et al.*, | Case No. 18-12491 (CSS) |
| Debtors. | (Jointly Administered) |
| ROBERT MICHAELSON OF ADVISORY TRUST GROUP, LLC, IN HIS CAPACITY AS LIQUIDATING TRUSTEE, | |
| Plaintiff/Counter-Defendant. | |
| v. | Adv. Proc. No. 19-50776 (CSS) |
| KPC PROMISE HEALTHCARE, LLC and STRATEGIC GLOBAL MANAGEMENT, INC., | |
| Defendants/Counter-Claimants. | |

### STIPULATION OF DISMISSAL OF ADVERSARY PROCEEDING

Pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, made applicable to the above-captioned adversary proceeding (the "Adversary Proceeding") pursuant to Rule 7041 of the Federal Rules of Bankruptcy Procedure, Robert Michaelson of Advisory Trust Group, LLC, in his capacity as Liquidating Trustee and plaintiff/counter-defendant, on the one hand, and KPC Promise Healthcare, LLC and Strategic Global Management, Inc. as defendants/counter-claimants, on the other hand, hereby stipulate and agree to the dismissal, with prejudice, of the Adversary Proceeding in its entirety, with all fees and costs to be borne by the party that incurred them.

Dated: _____, 2021

| | |
|---|---|
| DLA PIPER LLP (US) | BARNES & THORNBURG, LLP |
| | |
| */s/ [DRAFT]*_____ | */s/ [DRAFT]*_____ |
| Stuart M. Brown (No. 4050) | Thomas E. Hanson, Jr. (No. 4102) |
| Matthew S. Sarna (No. 6578) | Kevin G. Collins (No. 5149) |
| 1201 N. Market Street, Suite 2100 | 1000 N. West Street, Suite 1500 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| Telephone: (302) 468-5700 | Telephone: (302) 300-3434 |
| Facsimile: (302) 394-2341 | Facsimile: (302) 300-3456 |
| Email: Stuart.Brown@dlapiper.com | Email: thanson@btlaw.com |
|     Matthew.Sarna@dlapiper.com |     kcollins@btlaw.com |
| | |
| -and- | -and- |
| | |
| WALLER LANSDEN DORTCH & DAVIS, LLP | BUCHALTER, A Professional Corporation |
| John Tishler (admitted pro hac vice) | Mary H. Rose (admitted pro hac vice) |
| Katie G. Stenberg (admitted pro hac vice) | 1000 Wilshire Boulevard, Suite 1500 |
| Blake D. Roth (admitted pro hac vice) | Los Angeles, California 90017 |
| Tyler N. Layne (admitted pro hac vice) | Telephone: (213) 891-0700 |
| Jeremy A. Oliver (admitted pro hac vice) | Facsimile: (213) 896-0400 |
| 511 Union Street, Suite 2700 | Email: mrose@buchalter.com |
| Nashville, TN 37219 | |
| Telephone: (615) 244-6380 | *Attorneys for Defendants/Counter-Claimants* |
| Facsimile: (615) 244-6804 | |
| Email: John.Tishler@wallerlaw.com | |
|     Katie.Stenberg@wallerlaw.com | |
|     Blake.Roth@wallerlaw.com | |
|     Tyler.Layne@wallerlaw.com | |
|     Jeremy.Oliver@wallerlaw.com | |
| | |
| *Attorneys for Plaintiff/Counter-Defendant* | |

BN 44736035v1

# EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROMISE HEALTHCARE GROUP, LLC, *et al.,* | Case No. 18-12491 (CSS) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF WITHDRAWAL OF ADMINISTRATIVE CLAIMS
### FILED BY KPC PROMISE HEALTHCARE, LLC

PLEASE TAKE NOTICE that KPC Promise Healthcare, LLC hereby withdraws with prejudice its Administrative Claims filed against debtors Promise Healthcare, Inc., Promise Hospital of Louisiana, Inc., Promise Properties of Shreveport, LLC, and Bossier Land Acquisition Corp. [Claim Nos. 1680, 1681, 1682 and 1683].

Dated: _____, 2021   **BARNES & THORNBURG, LLP**
        Wilmington, Delaware

_____
Thomas E. Hanson, Jr. (No. 4102)
Kevin G. Collins (No. 5149)
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766).

Telephone: (302) 300-3434
Facsimile: (302) 300-3456
Email: thanson@btlaw.com
      kcollins@btlaw.com

-and-

**BUCHALTER, A Professional Corporation**
Mary H. Rose (*admitted pro hac vice*)
Paul S. Arrow (*admitted pro hac vice*)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email: mrose@buchalter.com
      parrow@buchalter.com

*Attorneys for KPC Promise Healthcare, LLC and Subsidiaries*

44726273v2

# EXHIBIT D

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PROMISE HEALTHCARE GROUP, LLC, *et al.,* | Case No. 18-12491 (CSS) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date:  None Scheduled** |
| | **Ref. Nos. 2160, 2185, 2218, 2226, 2234, 2252, 2256, 2259, 2268, 2269, 2270, 2271, 2272, 227 and 2275** |

**WITHDRAWAL WITH PREJUDICE OF MOTION OF KPC PROMISE HOSPITAL OF WICHITA FALLS, LLC, KPC PROMISE HOSPITAL OF OVERLAND PARK, LLC, AND KPC PROMISE HOSPITAL OF DALLAS, LLC TO LIQUIDATING TRUSTEE'S OBJECTION TO MOTION FOR (1) ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM OF KPC PROMISE HOSPITAL OF WICHITA FALLS, LLC, AND (2) ESTIMATION AND ESTABLISHMENT OF A RESERVE FOR PAYMENT OF ADMINISTRATIVE CLAIMS OF KPC PROMISE HOSPITAL OF OVERLAND PARK, LLC AND KPC PROMISE HOSPITAL OF DALLAS, LLC**

KPC Promise Hospital of Wichita Falls, LLC, KPC Promise Hospital of Overland Park, LLC, and KPC Promise Hospital of Dallas, LLC hereby withdraw with prejudice their "*Motion for (1) Allowance and Payment of Administrative Claim of KPC Promise Hospital of Wichita Falls, LLC, and (2) Estimation and Establishment of a Reserve for Payment of Administrative Claims of*

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Professional Rehabilitation Hospital, L.L.C. (5340), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, LLC (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766).

1

*KPC Promise Hospital of Overland Park, LLC and KPC Promise Hospital of Wichita Falls, LLC*"

filed October 30, 2020 [D.I. 2160] (the "Motion").

KPC Promise Hospital of Wichita Falls, LLC hereby also withdraws with prejudice its

Administrative Claim filed against debtor Promise Hospital of Wichita Falls, Inc. on July 30, 2020

[Claim No. 1742].


Dated: _____, 2021
       Wilmington, Delaware

**BARNES & THORNBURG, LLP**

_____
Thomas E. Hanson, Jr. (No. 4102)
Kevin G. Collins (No. 5149)
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 300-3434
Facsimile: (302) 300-3456
Email: thanson@btlaw.com.com
       kcollins@btlaw.com

-and-

**BUCHALTER, A Professional Corporation**
Mary H. Rose (*admitted pro hac vice*)
Paul S. Arrow (*admitted pro hac vice*)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email: mrose@buchalter.com
       parrow@buchalter.com

*Attorneys for KPC Promise Healthcare, LLC and Subsidiaries*

# EXHIBIT E

## JOINT WRITTEN DIRECTION

U.S. Bank National Association, as Escrow Agent
ATTN: Global Corporate Trust Services
Address: 333 Commerce Street, Suite 600, Nashville, TN 37201

RE: ESCROW AGREEMENT (Louisiana) made and entered into as of August 5, 2019 by and among KPC Promise Healthcare, LLC ("**Buyers' Parent**"), Promise Healthcare, Inc. ("**Sellers' Parent**") and U.S. Bank National Association, in its capacity as escrow agent (the "**Escrow Agent**").

Pursuant to Section 4 of the above-referenced Escrow Agreement, Buyers' Parent and Robert Michaelson of Advisory Trust Group, LLC, in his capacity as Trustee of the Promise Healthcare Group Liquidating Trust (the "**Liquidating Trust**"), successor in interest to Sellers' Parent, hereby instruct Escrow Agent to disburse all remaining funds from the Deposit Escrow Account to the Liquidating Trust, as provided below:

Promise Healthcare Group Liquidating Trust

Bank Name: _East West Bank_
Bank Address: _135 N. Robkes Ave, Pasadena CA 91101_
ABA No. _322070381_
Account Name: _Promise Healthcare Liquidating Trust_
Account No.: _550001654)_

**KPC Promise Healthcare, LLC**

By: _____
Name: Peter R. Baronoff
Date: _____

**Robert Michaelson of Advisory Trust Group, LLC,
in his capacity as Trustee of the Promise
Healthcare Group Liquidating Trust**

_____

Date: _8/3/21_

8220941 v2