## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

In re:                                              :   Chapter 11
                                                    :
PROMISE HEALTHCARE GROUP, LLC, *et al.*,[1]         :   Case No. 18-12491 (CTG)
                                                    :
            Debtors.                                :   (Jointly Administered)
                                                    :
                                                    :   **Related D.I.: 2466, 2497, 2501**
                                                    :
-------------------------------------------------------------x

## SUR-REPLY OF THE LIQUIDATING TRUSTEE AND DEBTOR REPRESENTATIVE TO REPLY OF AMPARO FIGUEROA IN FURTHER SUPPORT OF THE MOTION OF AMPARO FIGUEROA FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM AND FOR RELATED RELIEF

Robert Michaelson of Advisory Trust Group, LLC, solely in his capacity as liquidating

trustee of the above-captioned debtors (collectively, the "Debtors") and the Promise Healthcare

Group Liquidating Trust (the "Liquidating Trust") and debtor representative (the "Trustee")

appointed in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") pursuant

to the Modified Second Amended Joint Plan of Liquidation, hereby files this sur-reply (this "Sur-

---

[1]     The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179),  Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc.  (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc.  (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), St. Alexius Hospital Corporation #1 (2766), St. Alexius Properties, LLC (4610), Success Healthcare 1, LLC (6535), Success Healthcare 2, LLC (8861), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766).  The mailing address for the Debtors, solely for purposes of notices and communications, is c/o FTI Consulting, 50 California Street, Suite 1900, San Francisco, CA 94111.

Reply") to the *Reply of Amparo Figueroa in Further Support of the Motion of Amparo Figueroa for Allowance and Payment of Administrative Expense Claim and for Related Relief* [D.I. 2501] (the "Reply") filed by Amparo Figueroa ("Figueroa"). This Sur-Reply is in support of, and incorporates by reference, the *Objection of the Liquidating Trustee and Debtor Representative to the Motion of Amparo Figueroa for Allowance and Payment of Administrative Expense Claim and for Related Relief* [D.I. 2497] (the "Objection").[2]  In support of this Sur-Reply, the Trustee respectfully states as follows:

**SUR-REPLY**

**A.     Notice of the Admin Bar Dates was proper.**

1.     Through the Objection, and as attested to in the Berman Declaration, the Trustee has demonstrated that Figueroa was served with actual and constructive notice of the Second Admin Bar Date and the Final Admin Bar Date.  Notice was reasonably calculated under the facts and circumstances of these Chapter 11 Cases to permit Figueroa (or her legal guardian) to timely file an administrative claim.  In her Reply, Figueroa does not appear to contest these facts.[3] Instead, Figueroa now focuses solely on alleged deficiencies in the service of notice on Figueroa's various counsel.[4]

2.     First, Figueroa appears to have backed off her reinterpretation of how Local Rule 9022-1 applies to registered CM/ECF users.  As established by the Trustee, Figueroa's Delaware

---

[2]     Capitalized terms used in this Sur-Reply but not otherwise defined shall have the meaning ascribed to them in the Objection.

[3]     The introduction of new information in the Reply and production of documents to the Trustee regarding Figueroa's apparent legal guardian and holder of power of attorney reinforces the Trustee's argument that notice was proper and binding under the circumstances, as Figueroa's legal guardian would be expected to review Figueroa's mail.

[4]     The Trustee objects to Figueroa's attempt to distinguish among her various attorneys for purposes arguing against proper service.

EAST\185138453.3

counsel, Mr. Loizides, received proper service via CM/ECF Notification of each and every pleading, notice, order, and other document in these Chapter 11 Cases after March 20, 2020, including, but not limited to, the Second Admin Bar Date Notice, the Disclosure Statement, the Plan (which included the definition of the Final Admin Bar Date Notice), the Confirmation Order, and the Amended Effective Date Notice. *See* Objection at Ex. C. Conceding this point, Figueroa argues that service was nonetheless deficient because the Debtors allegedly failed to serve Mr. Loizides with a courtesy copy of the Amended Effective Date Notice pursuant to Local Rule 9036-1(b). *See* Reply at ¶ 9. This belated fallback argument is misguided, however.

3.    Local Rule 9036-1(b) provides, in relevant part:

> In chapter 11 and chapter 15 cases, when service is completed through the CM/ECF system or by other electronic means that the person consented to in writing, a courtesy copy of the document also will be provided by email…, or by hard copy via hand delivery, first class or other mail or delivery, to: (i) *counsel* for the debtor or the foreign representative (as applicable), *counsel* for the United States Trustee, *counsel* for any committee appointed pursuant to section 1102 of the Bankruptcy Code, and all parties whose rights are affected by the filing….

Del. L. R. 9036-1(b) (emphasis added). Mr. Loizides received proper service of the Amended Effective Date Notice (as well as all other pleadings after March 20, 2020) via CM/ECF Notification and his client, Figueroa, who is the "part[y] whose rights are affected by the filing," received actual service of the Amended Effective Date Notice via first class mail. Accordingly, there can be no good faith argument that the Debtors did not comply with the Local Rules.

4.    Figueroa is correct—proper notice does matter in bankruptcy—which is why the Debtors effected actual and constructive service on Figueroa and her counsel of the Admin Bar Dates. Such notice was reasonably calculated under the totality of the circumstances to provide Figueroa with an opportunity to file a request for payment of an administrative claim. *See*

*Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314 (1950); *In re Smith*, 379 B.R. 315, 326–27 (Bankr. N.D. Ill. 2007) (explaining that courts should "consider the totality of the circumstances in determining whether notice was reasonable for due process purposes").

> **B.    Figueroa has failed to establish excusable neglect.**

5.    Notwithstanding that the Debtors' service of the Admin Bar Date Notices conclusively bars Figueroa from now filing an administrative claim against the estates, Figueroa has also failed to establish excusable neglect under the circumstances.   First and foremost, Figueroa, through the Reply, attempts to flip the burden for establishing excusable neglect, and instead focuses exclusively on alleged inaction of the Debtors.   The burden is not on the Trustee to prove Figueroa's actions are *not* a result of excusable neglect; rather, Figueroa must demonstrate that the failure to timely file an administrative claim is the result of excusable neglect.

6.    Notwithstanding, Figueroa first asserts in her Reply that because the Amended Effective Date Notice allegedly contains "factual inaccuracies," Figueroa should be excused from her filing requirement, "especially in light of her age and cognitive impairment," Reply at ¶ 11, despite that Figueroa is represented by a legal guardian, rendering her age and cognitive impairment irrelevant.   Therefore, this argument must fail.

7.    The Amended Effective Date Notice is factually accurate, as acknowledged by Figueroa in the Reply.   *See* Reply at ¶ 7.   It is true that, as of the filing of the Amended Effective Date Notice, the bar date for administrative claims arising on or before September 1, 2019 had expired.   The Plan, however, provides that administrative claim holders who were not served with notice of the First Admin Bar Date or the Second Admin Bar Date may file their admin claims by the Final Admin Bar Date (November 2, 2020).   *See* Plan at ¶ 58.   The Amended Effective Date Notice did not define the term "Final Administrative Claims Bar Date."   In fact, the Amended

4

Effective Date Notice specifically states, "Unless otherwise defined in this Notice, capitalized terms used herein shall have the meanings set forth in the Plan." Amended Effective Date Notice at ¶ 2, n.2. The Amended Effective Date Notice further provides, "Any party in interest who wishes to obtain a copy of the Plan, any exhibits to the Plan or the Confirmation Order may view and download such documents at (i) the Debtors' case website (http://cases.primeclerk.com/promisehealthcaregroup); or (ii) at the Court's website (http://www.deb.uscourts.gov) (PACER account required)." *Id.* at ¶ 9. The Amended Effective Date Notice thus did not purport to, nor did it, redefine the Final Administrative Claims Bar Date.

8.      Notwithstanding, any argument that confusion or uncertainty justifies Figueroa's failure to file an administrative claim by the Final Admin Bar Date is equally unfounded. As alleged for the first time in the Reply, and as described in Figueroa's production of documents to the Trustee, Figueroa apparently suffers from dementia and is represented by a legal guardian with power of attorney. *See, e.g.*, Reply at ¶¶ 1, 32.[5] While the Trustee certainly is not seeking to minimize Figueroa's cognitive impairment, Figueroa's representation by a legal guardian and counsel negates any corresponding omission by Figueroa on the present matter.

9.      As quoted in the Reply, "Neglect in filing a claim before the expiration of a clear bar date is excusable when the creditor, *after conducting a reasonable amount of due diligence*, is justifiably confused or uncertain as to whether a particular transaction giving rise to a claim is or is not subject to the bar date order." *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 126 (Bankr. S.D.N.Y. 2010), *aff'd sub nom. CVI GVF (Lux) Master S.a.r.l. v. Lehman Bros. Holdings Inc.*, 445 B.R. 137 (S.D.N.Y. 2011) (emphasis added). As already established, Figueroa herself (or her legal

---

[5]     The Reply states, "The fact that Ms. Figueroa suffered from dementia is well documented in her records at Promise Hospital of Fort Myers." Reply at ¶ 32. The Trustee notes that, upon the Closing Date, and well before either the Second Admin Bar Date Order or the filing of the Stay Relief Motion, all medical records in possession of the Debtors were transferred to Select.

guardian) received service of the Amended Effective Date Notice via first class mail.  *See* Obj. at Ex. A.  Figueroa's counsel also received service of the Amended Effective Date Notice via CM/ECF Notification on October 5, 2020 and had previously received service of the Confirmation Order and Plan via CM/ECF Notification on September 17, 2020.

10.     Even if Figueroa herself was not competent to understand the Admin Bar Date Notice, if her legal representative or her counsel had any confusion or uncertainty as to whether the Final Admin Bar Date applied to Figueroa's claim, they should have either conducted reasonable due diligence by reviewing the Plan and Confirmation Order, which supersedes any notice or other document to the contrary, or could have simply emailed or called Debtors' counsel for clarification.[6]  Instead, they sat on their hands, demonstrating a "lack of care or thoughtful attention to the preparation and filing of their proofs of claim." *In re Lehman Bros. Holdings Inc.*, 533 B.R. at 127.  Figueroa cannot now blame the Debtors for her inaction.

11.     Further to that point, even if Figueroa's counsel, Wilkes & Associates, P.A. ("Wilkes"), was served with the Amended Effective Date Notice on November 30, 2020,[7] Wilkes did not raise any concern that it believed the bar date with respect to Figueroa's alleged claim had expired pursuant to the terms of the Amended Effective Date Notice or based on the timing of its receipt of the Final Admin Bar Date.  Had these concerns been timely raised, the Trustee may have been able to establish an appropriate remedy or provide clarification, as applicable.

12.     Figueroa next criticizes the Debtors for deciding, in their business judgment, to not purchase a tail reporting policy and for agreeing to resolve the Stay Relief Motion by way of a

---

[6]     Figueroa's legal guardian or counsel could have also contacted Prime Clerk, who regularly fields calls and inquiries from creditors seeking clarification on notices received.  To the extent such an inquiry is outside of Prime Clerk's competence, such inquiries are referred by email to Debtors' counsel, who respond directly to the creditor in question.

[7]     Figueroa was still served via first class mail on October 7, 2020 and Mr. Loizides was served via CM/ECF Notification on October 5, 2020.

consensual Stay Relief Order without investigating what insurance was available to Figueroa.  As to the former, the Trustee has already discussed in the Objection matters regarding its decision to not purchase a tail reporting policy.  *See* Obj. at ¶ 50.  As to the latter, as is common with any large chapter 11 cases, Debtors' counsel here entered into discussions and resolved dozens of stay relief motions and requests for stipulations modifying the automatic stay, *see, e.g.*, D.I. 143, 762, 789, 889, 890, 972, 1212, 1223, 1227, 1275, 1403, 1448, 1449, 1481, 1524, 1607, 1653, 1749, 1766, including Figueroa's Stay Relief Motion.  To streamline the process, the Debtors worked with their insurance carriers to craft language sufficient to modify the automatic stay for movants to pursue any available insurance policies or proceeds, while preserving all parties' rights.  Upon modification of the automatic stay, the movant in question would be free to pursue any appropriate discovery against the Debtors, including discovery concerning available insurance.

13.     But that is not what happened here.  The Stay Relief Order was entered on May 20, 2020.  No action was apparently taken until Booth called Burke on or about October 22, 2020 regarding Figueroa's claim.  Even then, after apparently discussing the Debtors' claims-made policy and its likely non-applicability to Figueroa's claim, Figueroa did not file an administrative claim, nor did she serve the NOI until June 15, 2021, over a year after entry of the Stay Relief Order and roughly seven months after the Final Admin Bar Date.  Figueroa's delay is not reasonable under the circumstances and does not appear to be in good faith.

14.     Next, Figueroa argues again that service was improper in these Chapter 11 Cases. As discussed above, Figueroa and her counsel were properly served with the Confirmation Order, the Plan, and the Amended Effective Date Notice, notwithstanding Mr. Loizides failure to enter an appearance or file a request for documents in these Chapter 11 Cases.

15.    Finally, Figueroa attempts again to downplay the prejudice to the Trustee and the estates that would result if Figueroa is allowed to file a late administrative claim.  As discussed further in the Objection and incorporated by reference herein, a finding for Figueroa would create clear and apparent prejudice to the Trustee and the Trustee's ability to administer the Liquidating Trust.

16.    Figueroa argues that the Debtors had notice of Figueroa's claim as of the filing of the Stay Relief Motion, which she asserts identifies the "exact nature of her injuries." Reply at ¶ 22 n.8.   However, the Stay Relief Motion provides only a cursory statement of Figueroa's alleged injuries, despite having received her medical records from Select as of September 24, 2019.  Compared to the information contained in the roughly 7,000 pages of medical records produced to the Trustee, the Stay Relief Motion provides no indication of the severity (or lack of severity) of injury and whether the Debtors or Select may have been in control of the facility at the time of the alleged injury.  Not only that, but included in Figueroa's production is an apparent bill for services, apparently produced to Figueroa by Select in response to the Records Requests.[8] Until September 14, 2021, Figueroa had never shared such information with the Debtors or the

---

[8]    Based on Figueroa's production of documents and no information to the contrary, it appears that Figueroa admits that the Records Requests were sent to a Select-controlled facility and never forwarded or resent to the Debtors or their representatives.  This further negates Figueroa's statement, "The Debtors should have been aware of Figueroa's potential claim no later than July 29, 2019."  Reply at ¶ 4.

Further, Figueroa's confusing allegation that, "Although the Trustee argues that this letter was received by Select and never forwarded to the Debtors, *something happened* between the service of the First Administrative Claim Bar Date and the service of the Second Administrative Bar Date to cause the Debtors to add Figueroa to the confidential patient list (even though she was already a patient)," Reply at ¶ 4 n.4 (emphasis added), is without merit. The First Bar Date Order was entered on April 17, 2019.  The Closing Date of the sale to Select was April 3, 2019. According to the Admin Motion, Figueroa alleges she was a patient of the Debtors and Select between January 2019 and May 1, 2019.

As such, it appears that Figueroa did not receive notice of the First Admin Bar Date as the Debtors were updating their patients lists with respect to service and had not completed this process in the short time between April 3, 2019 (the Closing Date) and April 17, 2019 (the date of entry of the First Admin Bar Date Order). Recognizing this, the Final Admin Bar Date allowed creditors to file claims by November 2, 2020 who did not receive notice of the prior applicable bar dates.

Trustee.  It begs credulity to suggest that the Debtors had sufficient notice of Figueroa's claim simply based on the Stay Relief Motion, which itself provides for the filing of an administrative claim, underscoring the lack of notice of such claim in the Stay Relief Motion itself.[9]

17.    Figueroa also misunderstands the prejudice that would be caused to the Trustee's ability to administer the Liquidating Trust if Figueroa did not have to file her alleged administrative claim by any fixed deadline.    The Trustee's ability to object to claims is confined by the Bankruptcy Rules.    The Trustee can seek extensions of this time frame for cause.    *See Order Granting Second Motion of Liquidating Trustee for an Order under Bankruptcy Code Section 105(a) and Bankruptcy Rule 9006 Extending Claims Objection Bar Date* [D.I. 2478] (extending the Claims Objection Bar Date through and including March 28, 2022).    Allowing Figueroa to disregard the Final Admin Bar Date, pursue lengthy litigation in state court, and only then file a liquidated administrative claim against the estates would eviscerate the Trustee's ability to object to such claim.    This would include any type or form of objection.

18.    Taken to its logical conclusion, the Trustee would necessarily have to (i) delay administering the Liquidating Trust, (ii) perpetually reserve all of the funds available to disburse to creditors as Figueroa's alleged administrative claim, to the extent valid and allowable, would have to be paid out in full prior to distributions to other creditors of equal or lower priority, and (iii) continue to seek extensions of the Claims Objection Bar Date until Figueroa finally files her claim and such claim is liquidated in state court.    Prejudice to the Trustee, the Liquidating Trust, and all other creditors of the estates is clear.

---

[9]    Figueroa has failed to introduce any further support for her informal proof of claim argument.  Accordingly, the Trustee incorporates by reference the Trustee's arguments in the Objection on that point.

9

19.     The Trustee has been diligently reviewing and objecting to claims and regularly makes decisions in these Chapter 11 Cases based on its understanding of the cash likely to be available for distributions to creditors.  Without Figueroa filing an administrative claim, the Trustee did not, and could not, appropriately reserve for Figueroa's alleged injuries.  As set forth above, the Trustee could not have made any realistic assessment regarding Figueroa's alleged claims based on the few sentences regarding the alleged injuries in the Stay Relief Motion. Allowing Figueroa to file a late administrative claim would interfere greatly with the Trustee's financial calculations, including with respect to decisions the Trustee has already made, and which cannot be undone.

20.     Under the circumstances, Figueroa cannot sustain her burden of showing that any of the *Pioneer* elements weigh in her favor.  *See Pioneer Investment Servs. Co. v. Brunswick Associates L.P.*, 507 U.S. 380 (1993).  Figueroa's failure to file a claim by either the Second Admin Bar Date or the Final Admin Bar Date is not the result of excusable neglect.

**C.     The Plan Injunction should not be lifted.**

21.     As set forth in the Plan, upon the Effective Date, the automatic stay was replaced by the Plan Injunction that took effect seamlessly.  Based upon the extent to which the Reply focuses on the expiration of the statute of limitations applicable to Figueroa's claim, it is clear that Figueroa recognizes the infirmity of the Admin Motion's statements with regard to the probability of success on the merits factor for relief from the Plan Injunction.

22.     For the first time, Figueroa represents in the Reply that on August 2, 2019, Figueroa filed a "Petition for Automatic Extension of the Statute of Limitations in the Circuit Court of the Twentieth Judicial Circuit, In and For Lee County, Florida" (the "SOL Petition").  Reply at ¶ 28.

EAST\185138453.3

The Reply attaches a copy of such petition as an exhibit.[10]   As this Court is aware, section 362 of the Bankruptcy Code operates as a stay, applicable to all entities of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Absent relief, prosecution of a claim before a court other than the Bankruptcy Court violates the automatic stay.  *See, e.g.*, *Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252 (2006).

23.     Figueroa's postpetition actions on August 2, 2019 violated the automatic stay under section 362 of the Bankruptcy Code.  It was not until March 20, 2020 that Figueroa sought relief from the automatic stay to pursue litigation and to file an administrative claim after the First Admin Bar Date.  Such violation is void *ab initio*, thereby eliminating the effect of any alleged extension of the statute of limitations.  The statute of limitations thus expired prior to the service of the NOI. *See, e.g.*, *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991) ("Absent relief from the stay, judicial actions and proceedings against the debtor are void *ab initio*.") (citing *Kalb v. Feuerstein*, 308 U.S. 433, 438–40 (1940)).  This violation therefore significantly diminishes Figueroa's likelihood of success on the merits.

24.     Additionally, even if the SOL Petition was not filed in violation of the automatic stay (which it was), based upon the Trustee's review of Florida law, Figueroa's efforts are futile because she failed to serve the NOI on the Trustee within the two-year statute of limitations. Figueroa admits that March 19, 2019 is the start date for calculating the statute of limitations—the date when Figueroa's fractured hip was discovered.  However, Figueroa is wrong that the 90-day

---

[10]     As the SOL Petition attached to the Reply does not contain a certificate of service, it does not appear that Figueroa gave the Debtors any notice of the SOL Petition.

extension (assuming arguendo it is not void) applies to the time frame to serve a notice of intent to initiate litigation under Fla. Stat. § 766.106.  Fla. Stat. § 766.106 provides:

> **The notice of intent to initiate litigation shall be served within the time limits set forth in s. 95.11.**  However, during the 90-day period, the statute of limitations is tolled as to all potential defendants.  Upon stipulation by the parties, the 90-day period may be extended and the statute of limitations is tolled during any such extension.  Upon receiving notice of termination of negotiations in an extended period, the claimant shall have 60 days or the remainder of the period of the statute of limitations, whichever is greater, within which to file suit.

Fla. Stat. § 766.106(d)(4) (emphasis added).  Fla. Stat. § 95.11(4)(b) provides that an action for medical malpractice must be commenced within two years from the time the incident is discovered.

25.    Figueroa's purported extension pursuant to Fla. Stat. § 766.104(2) applies to the statute of limitations for Figueroa to actually file an action against the Debtors.  Fla. Stat. § 766.104 does not discuss or contemplate the concept of the pre-suit notice of intent to initiate litigation; it instead focuses on the filing of an action for personal injury or wrongful death arising out of medical negligence.  *See* Fla. Stat. § 766.104(1).  Upon filing a petition, Fla. Stat. § 766.104(2) allows a 90-day extension of the statute of limitations "to allow the reasonable investigation required" prior to filing an action for personal injury.  The plain language of this section, however, does not seem applicable to the time period within which a party must serve a notice of intent to initiate litigation, as such reasonable discovery does not appear to be required prior to serving such notice.

26.    Consequently, it appears that Figueroa was required by Florida law to serve the NOI on the Trustee by March 19, 2021.  She did not do so until June 15, 2021, after the statute of limitations expired.  Even if Figueroa's postpetition actions were not in violation of the automatic

stay, Figueroa still allowed the relevant statute of limitations to expire, and, therefore, Figueroa is

not likely to succeed on the merits of her underlying claim. As such, Figueroa has not carried her

burden to show that the Plan Injunction should be lifted under the circumstances.

## **CONCLUSION**

27.     For the foregoing reasons and the reasons set forth in the Objection, the Trustee

respectfully requests that this Court deny the Admin Motion and grant such other and further relief

as this Court deems just and proper.

Dated: September 21, 2021             DLA PIPER LLP (US)
           Wilmington, Delaware

                                                      /s/ *Stuart M. Brown*
                                                      Stuart M. Brown (#4050)
                                                      Matthew S. Sarna (#6578)
                                                      1201 N. Market Street, Suite 2100
                                                      Wilmington, DE 19801
                                                      Telephone: (302) 468-5700
                                                      Facsimile: (302) 394-2341
                                                      Email: Stuart.Brown@us.dlapiper.com
                                                                 Matthew.Sarna@us.dlapiper.com

                                                      -and-

                                                      SILLS CUMMIS & GROSS P.C.
                                                      Andrew H. Sherman
                                                      Boris I. Mankovetskiy
                                                      The Legal Center, One Riverfront Plaza
                                                      Newark, NJ 07102
                                                      Telephone: (973) 643-7000
                                                      Facsimile: (973) 642-6500
                                                      Email: asherman@sillscummis.com
                                                                 bmankovetskiy@sillscummis.com

                                                      *Counsel to the Liquidating Trustee*