## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Promise Healthcare Group*, LLC, et al.*,<br><br>   Debtors. | Chapter 11<br><br>Case No. 18-12491 (CTG)<br><br>Jointly Administered<br><br>**Related Docket No. 2466** |

## ORDER CLARIFYING AND AMENDING MEMORANDUM OPINION

On September 30, 2021, this Court issued its Memorandum Opinion on a motion that was captioned as one for "allowance and payment" of an administrative expense claim.  D.I. 2466.  The Court determined that the motion should be granted and stated in the Memorandum Opinion, D.I. 2509, that the claimant should settle an order providing that the claimant may liquidate her claim in state court and shall have an allowed administrative claim in the amount of any settlement or judgment thereon.

When the claimant submitted a proposed form of order so providing, the liquidating trustee pointed out that the relief suggested in the Memorandum Opinion exceeded the relief actually sought in the motion, which was the right to file an administrative expense claim notwithstanding the bar date.  D.I. 2466 at 31.  So while the claimant's proposed form of order was in fact consistent with the direction in the Memorandum Opinion, the Court is persuaded that such relief was broader than that actually sought in the motion, and thus broader than appropriate.

The Court will accordingly treat the liquidating trustee's submission as a motion under Fed. R. Civ. P. 60(a) (which applies to this contested matter under Fed.

R. Bankr. P. 9024) and grants the motion to the extent it seeks to correct the Memorandum Opinion. The Memorandum Opinion is accordingly amended as set forth below. (The Amended Memorandum Opinion also makes unrelated technical corrections to the original version.) The Court will separately issue an appropriate order.

## AMENDED MEMORANDUM OPINION[1]

Debtors Promise Healthcare Group LLC and its affiliates operated hospitals and healthcare facilities in Florida. The debtors filed for bankruptcy in November 2018 and sold substantially all of their assets to a buyer, Select Medical Corporation, in April 2019. The debtors confirmed a liquidating plan in September 2020.

Amparo Figueroa was a patient at Promise's hospital in Ft. Myers, Florida. She was admitted several months after the November 2018 petition date and was discharged from the hospital in May 2019 – after the assets were sold. She alleges that she suffered injuries resulting from the debtors' negligence during the period when the debtors owned and operated the hospitals. To the extent those allegations are true, Figueroa would hold an administrative claim against the debtors under the principles of *Reading Co. v. Brown*.[2]

In March 2020, Figueroa moved this Court for relief from the automatic stay, D.I. 1769, seeking authority to liquidate her personal injury claim in state court. The

---

[1] This Memorandum Opinion sets out the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable to this contested matter under Fed. R. Bankr. P. 9014(c).

[2] 391 U.S. 471 (1968).

parties thereafter negotiated an agreed order, entered in May 2020 after being submitted under certification of counsel, that permitted the liquidation of Figueroa's claim in state court to the extent insurance coverage was available, and preserved Figueroa's right to file a motion to seek the allowance of an administrative expense claim for the deficiency, if any.  D.I. 1848.

It turns out, however, that the debtors do not have insurance that responds to Figueroa's claim.  But in the time it took to sort through that issue, the administrative claims bar date in the case came and went without Figueroa moving for an allowed administrative claim.  Figueroa now moves to liquidate her personal injury claim in state court, and for an order providing that she be awarded an allowed administrative expense claim for any settlement or judgment of that action.  D.I. 2466.[3]  She makes two arguments.  *First*, she claims that she did not receive proper service of the administrative claims bar date and that it therefore cannot be enforced against her. *Second*, and in the alternative, she seeks permission to file a late claim under the standards for "excusable neglect" set out in *Pioneer*.[4]

Both issues present close questions that could plausibly be decided either way. The alleged inadequacy of notice stems from the debtors' failure to provide Figueroa's counsel with an emailed "courtesy copy" of the plan of reorganization, as the local rules require.  While providing such a courtesy copy in compliance with the local rules

---

[3] The motion is opposed by Robert Michaelson of Advisory Trust Group, LLC, in his capacity as liquidating trustee of the debtors under the confirmed plan.  D.I. 2072-1.  Michaelson is referred to as the "trustee."

[4] *Pioneer Inv. Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 395 (1993).

is mandatory, the local rules also indicate that counsel's receipt of electronic notice through the CM/ECF system is sufficient for a notice to be validly served on a party. There is no dispute that Figueroa's counsel received such CM/ECF notice.

The failure to comply with the local rules can be the basis for the imposition of sanctions. But crafting such a sanction is a matter within the Court's discretion, and there is no requirement that the sanction be that a bar date notice (as to which a party received notice that is otherwise satisfies the requirements of due process) be treated a legal nullity. The Court believes that such a sanction (which is the only relief Figueroa seeks for the violation of the local rule) would be a disproportionate response to the failure to send counsel a courtesy copy of a pleading of which counsel otherwise received proper and adequate notice through CM/ECF service. The Court therefore finds that Figueroa received sufficient notice of the bar date. Her administrative claim would therefore be disallowed unless she can show that her failure to file a timely claim was the result of excusable neglect.

The argument for excusable neglect under *Pioneer* is also a close one. On the one hand, Figueroa's failure even to ask whether the debtors had insurance during the negotiations over the order granting relief from the stay may be viewed as the root cause of the problem, and a case can also be made that Figueroa dragged her feet in pursuing her claim after the entry of the stay-relief order. On the other hand, Figueroa points out that the debtors and/or trustee could have told her sooner that there was no available insurance. Figueroa also makes a persuasive argument that her motion for relief from stay provided the debtors with all of the information they

4

would have obtained had she filed a timely motion to allow an administrative claim. While the trustee might have a fair response to that argument – that the trustee was entitled to rely, and did in fact rely, on the absence of a validly filed administrative claim (even a claim for a contingent and unliquidated claim) in making decisions about distributions to creditors – the trustee presented no evidence of such reliance at the evidentiary hearing on Figueroa's motion. Accordingly, at the end of the day, after considering the evidence presented and the totality of the circumstances, the Court is persuaded that Figueroa has met her burden of showing excusable neglect under *Pioneer*, even if only by a hair. The Court will accordingly permit Figueroa to assert her administrative claim, which she may liquidate in a court of competent jurisdiction.

## Factual and Procedural Background

The debtors were in the healthcare industry, operating a number of short-term acute care, long-term acute care, and skilled nursing facilities across nine states. The debtors experienced severe declines in revenue, ultimately precipitating the filing of these chapter 11 cases in November 2018. The debtors sold substantially all of their assets in April 2019. An order confirming the second amended joint plan of liquidation was entered in September 2020. D.I. 2072. The debtors subsequently gave notice of the effective date on October 5, 2020, in accord with the plan. D.I. 2102. Since the effective date, the case has been administered by the trustee.

1.  **Figueroa's alleged claim and order granting relief from the automatic stay.**

Figueroa was a patient in the debtors' hospital in Ft. Myers, Florida. She alleges that she suffered a personal injury, as a result of the debtors' negligence, in the period when the debtors owned and operated the hospital.[5]

While Figueroa was at first represented only by Florida counsel whom she had retained to pursue her personal injury claim in state court, in March 2020 Figueroa filed a motion in this Court seeking relief from the automatic stay. D.I. 1769. The stay-relief motion was signed by Delaware counsel and filed through the Court's case management/electronic case filing system (CM/ECF).

The motion for relief from stay was resolved through a consent order that was submitted to the Court under certification of counsel. D.I. 1847 (certification of counsel); D.I. 1848 (order). The order, which was entered in May 2020, granted stay relief to allow Figueroa to commence a cause of action to recover for her alleged injuries but provided that Figueroa would "collect upon any judgment or settlement against the Debtors solely from applicable insurance proceeds and/or providers." *Id.* ¶ 3.

The order added, however, that Figueroa's "right to file for and receive a distribution on a claim including, without limitation, as a cost of administration

---

[5] Figueroa also claims to have suffered injuries during the period after the close of the sale of the hospital to Select Medical Corporation, the buyer. That portion of Figueroa's claim, which Figueroa argues runs against Select Medical Corporation, rather than the debtors' estates, is not at issue in this motion.

under 11 U.S.C. § 503(b)(1), properly filed [in] the Debtors' chapter 11 cases, is

preserved, subject to the Debtors' right to object to such claim." D.I. 1848 at ¶ 4.[6]

### 2.    The administrative claim bar date.

The relevant facts relating to the establishment of the various bar dates for

the filing of administrative claims in this bankruptcy case, and notice thereof, are

as follows:

- The debtors filed the first bar date motion on March 27, 2019. D.I. 924.

  An order was entered granting the first bar date motion on April 17,

  2019.    The first bar date order established the first interim

  administrative claims bar date as July 15, 2019, for claims accruing on

  and after the petition date through and including April 2019. D.I. 984.

  The debtors filed a notice of the first interim administrative claims bar

  date (which also provided notice of the bar date for the filing of general

  unsecured claims) on May 2, 2019. D.I. 1038. The affidavit of service,

  D.I. 1024, indicates that service of the First Bar Date Notice was made

  on a confidential list of patients. The trustee does not contend that this

  notice was sent to Ms. Figueroa but does point out that the debtors

  provided publication notice of this bar date. *See* D.I. 1126.

---

[6] While the parties dispute the point, the Court believes that the reference to a "properly filed" claim makes clear that Figueroa's right to assert an administrative claim would be subject to any applicable administrative claims bar date that applied (or would apply) to such a claim.

- The debtors filed the second bar date motion on November 15, 2019. D.I. 1589. A certificate of no objection to the second bar date motion was filed on December 4, 2019. D.I. 1624. The order was entered that same day. D.I. 1626. An affidavit of service with respect to the second bar date order was filed on December 9, 2019. D.I. 1631. The second bar date order established the second interim administrative claims bar date as January 31, 2020, for claims accruing on or after May 1, 2019, through September 1, 2019. D.I. 1626. The record suggests that notice of the second administrative claim bar date was served on Figueroa. D.I. 1682 (affidavit of service); D.I. 2497-1 ¶ 10 (Berman declaration); Sept. 22, 2021 Hearing Tr. at 38.[7] The debtors also provided publication notice of the second claims bar date. D.I. 1677.

- The debtors filed the second amended joint plan of reorganization on July 30, 2020. D.I. 1959. The plan states that the final administrative claims bar date would be 30 days after the effective date of the plan for claims that either accrued after September 1, 2019, or for claims that accrued earlier if the claimant was not served with notice of the earlier bar dates. D.I. 2072-1 ¶ 58. Notice of the confirmation order and effective date was filed on October 5, 2020. D.I. 2102. The notice

---

[7] With respect to the service that was made directly on Figueroa, the parties appear to agree (though there does not appear to be record evidence on the issue) that Figueroa suffers from dementia, and that a guardian has been appointed to act on her behalf. As described below, however, the Court's resolution of this motion does not depend on the validity of the service made directly on Figueroa.

explained that because the plan became effective on October 1, 2020, the final administrative claims bar date would be November 2, 2020. The record suggests that the notice was served by first-class mail on Ms. Figueroa. D.I. 2120 (affidavit of service); D.I. 2497-1 ¶ 12 (Berman declaration).

- Each of the relevant bar date motions, orders, and notices were disseminated through the CM/ECF system. As set forth above, Figueroa was not represented by Delaware counsel until March 2020. Accordingly, counsel would not have received CM/ECF notice of the filings related to the first or second administrative claims bar date but would have received such pleadings as they related to plan confirmation and notice of the effective date.

### 3. Figueroa's pursuit of her claim.

The facts around what exactly happened regarding pursuit of the personal injury claim after May 2020, when the Court entered the lift-stay order, are a bit murky and the evidentiary record is thin. Figueroa agrees that, in the period leading up to the stipulation, she never asked the debtors whether they had insurance that covered the claim. Sept. 22, 2021 Hearing Tr. at 6-7. The record evidence suggests that Figueroa's Florida counsel had an email exchange with co-counsel for the debtors in October 2020 regarding the claim. D.I. 2497-2. While that email exchange discusses the possibility of insurance, the record does not reveal who said what to whom about whether the claim would be covered by insurance.

The parties appear to agree (though neither party submitted evidence on the issue) that the trustee informed Figueroa in August 2021 that there was no available insurance.  D.I. 2466 at 11; D.I. 2497 at 13.  The debtors appear to have had a "claims made" insurance policy with a reporting period that expired in August 2019.  When the debtors' assets were sold in April 2019, the debtors did not purchase a "tail" that would extend the reporting period.  Figueroa filed this motion in August 2021, promptly after learning that her claim was not covered by insurance.

## Jurisdiction

Figueroa's motion for the allowance of an administrative claim is a matter that arises under the Bankruptcy Code, 11 U.S.C. § 503, and is therefore within the district courts' "arising under" jurisdiction set forth in 28 U.S.C. § 1334(b).  The U.S. District Court for the District of Delaware has referred such cases to this Court under its February 29, 2012 Amended Standing Order of Reference.  The determination whether to provide relief from the plan injunction to permit the claim to be liquidated in state court is a core matter under 28 U.S.C. § 157(b).  Significantly, however, the actual liquidation of a contingent or unliquidated personal injury tort claim against the estate is a non-core matter.  28 U.S.C. § 157(b)(2)(B).

## Analysis

I.    **Figueroa received valid notice of the bar date.**

    A.    **CM/ECF notice on counsel is sufficient notice and satisfies due process.**

Due process of law requires that parties receive constitutionally sufficient notice and the opportunity to be heard before they may be bound by an order of a

court.[8]   Such notice must be reasonably calculated, under all of the relevant circumstances, to apprise interested parties of proceedings that may affect their rights. *Id.*

Under the circumstances presented here, the Court believes that the most directly relevant notice is the notice that was made on counsel of the plan and its effective date.  It is settled law that service on an attorney is sufficient to bind a client, so long as the attorney represents the client in the matter.[9]  For the reasons set forth below, the Court concludes that the notice of the plan and its effective date, provided through the CM/ECF system on counsel for Figueroa, is sufficient to bind Figueroa to the plan's bar date for the filing of an administrative claim.  As such, the Court need not address the question whether the notice served directly on Figueroa was legally effective – a question that is complicated by the fact that Figueroa suffers from dementia and is under the supervision of a guardian.[10]  Likewise, the Court's analysis does not depend on the fact that the debtors provided publication notice of the administrative bar dates, which under controlling law is irrelevant since "[k]nown

---

[8] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-315 (1950).

[9] *See Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985).

[10] *See supra* n. 7.  The sufficiency of the notice under these circumstances may raise complex issues.  *See generally Jones v. Chemetron Corp.*, 212 F.3d 199, 205 n.6 (noting that a party's degree of sophistication is relevant to the adequacy of the notice they received); *In re Grand Union Co.*, 204 B.R. 864 (Bankr. D. Del. 1997) (bar date notice sent directly to client, but not to counsel who had appeared in the case, was insufficient); *In re Peralta*, 599 B.R. 759, 763 (Bankr. D.N.J. 2019) (notice on claimant by first-class mail was sufficient).  Because this matter may appropriately be resolved on other grounds, the Court is disinclined to address these questions in the absence of an appropriate factual record.

creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date."[11]

The Court does conclude, however, that Figueroa received sufficient notice of the administrative claims bar date, through her counsel's receipt of CM/ECF notice of the plan and its effective date, for those deadlines to be binding on her. It is not disputed that after Figueroa moved for relief from the stay, she was represented by bankruptcy counsel who would have thereafter received notices in the bankruptcy case through CM/ECF. Counsel would therefore have received electronic notification, through CM/ECF, of the confirmation order and the notice of the effective date of the plan.[12]

The Federal Rules of Bankruptcy Procedure were expressly revised in 2019 to authorize service by electronic means. As amended, Rule 9036 provides that "[w]henever these rules require or permit sending a notice or serving a paper by mail, the clerk, or some other person as the court or these rules may direct, may send the notice to—or serve the paper on—a registered user by filing it with the court's electronic-filing system."

---

[11] *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

[12] Those notices set the bar date for filing administrative claims on November 2, 2020, unless a claimant received appropriate notice of one of the first or second administrative claims bar date. There is no suggestion in the record that Figueroa received any notice of the first administrative claims bar date. And Figueroa has disclaimed any intent to recover on account of any claim that may have fallen in the period covered by the second administrative claims bar date. Sept. 22, 2021 Hearing Tr. at 62. The relevant deadline for Figueroa to file her administrative claim would therefore have been November 2, 2020.

The advisory committee notes regarding the 2019 amendments to Bankruptcy

Rule 9036 explain that:

> "[t]he rule is amended to permit both notice and service by electronic means…. The amended rule permits electronic notice or service on a registered user who has appeared in the case by filing with the court's electronic-filing system….[A] party who registers will be subject to service by filing with the court's system unless the court provides otherwise."[13]

This Court's Local Rules similarly provide that service made on counsel

through the CM/ECF system is effective.  Local Rule 5005-4, Electronic Filing and

Service, states:

> The Court has designated all cases to be assigned to the Case Management/Electronic Case Filing System ("CM/ECF") ….
>
> (c) <u>Receipt of CM/ECF Notices and Electronic Service.</u>
>
> > (i)   By registering and becoming a CM/ECF user, one is consenting to receipt of electronic notices issued by the Court in accordance with Local Rule 9036-1;
> >
> > (ii)  By registering and becoming a CM/ECF user … the user and the user's client … is consenting to service under these Rules, Fed. R. Bankr. P. 7005, the Fed. R. Civ. P. and any other rule pertaining to service in accordance with Fed. R. Bankr. P. 9036 and Local Rule 9036-1.

Notice provided through the CM/ECF system is reasonably calculated to

apprise interested parties of their rights, and thus satisfies the constitutional

standard set out in *Mullane*.[14]  Here, the debtors served counsel to Figueroa with the

---

[13] Fed. R. Bankr. P. 9036, Advisory Committee Notes to 2019 Amendments.

[14] *See Blanco River, LLC v. Green*, 457 Fed. App'x. 431, 436 (5th Cir. 2012) (electronic notification from court's electronic filling system "were reasonably calculated to reach" a litigant and thus comported with due process); Christine P. Bartholomew, E-NOTICE, 68 Duke L. J. 217 (2018) (arguing that electronic notice of class action settlements comports with due process).

relevant bar dates when the plan of reorganization and notice of the effective date were filed through the Court's electronic-filing system. Counsel to Figueroa consented to such service (which consent binds Figueroa) by registering with CM/ECF. Notice of the bar dates thus comported with the requirement of due process and was effective and sufficient under applicable law.

### B. Failure to email courtesy copy does not invalidate otherwise proper CM/ECF notice.

While, as described above, this Court's Local Rule 5005-4(c) provides that service through the CM/ECF system is sufficient, Local Rule 9036-1(b) also requires that a "courtesy copy" of pleadings also be sent, either by email or hard copy, on certain parties. Specifically, the rule provides:

> In chapter 11 and chapter 15 cases, when service is completed through the CM/ECF system or by other electronic means that the person consented to in writing, a courtesy copy of the document also will be provided by email, other electronic form as provided under Local Rule 5005-4(c), or by hard copy via hand delivery, first class or other mail or delivery, to: (i) counsel for the debtor or the foreign representative (as applicable), counsel for the United States Trustee, counsel for any committee appointed pursuant to section 1102 of the Bankruptcy Code, and all parties whose rights are affected by the filing (but excluding parties only receiving service because such party filed a request for service of notices under Fed. R. Bankr. P. 2002(i)), and, if the filing party is the debtor, foreign representative or any committee appointed pursuant to section 1102 of the Bankruptcy Code, then the courtesy copy also will be delivered to all parties who file a request for service of notices under Fed. R. Bankr. P. 2002(i); and (ii) any other party as the Court may direct.

Local Rule 9036-1(b).[15]

---

[15] In light of the global pandemic, this Court entered the *Interim Order Regarding Cessation of Hand-Deliveries* on March 13, 2020 and the *Order Regarding Service Pursuant to Del. Bankr. L.R. 5005-4 and 9036-1* on August 14, 2020. These orders directed that documents, including courtesy copies, to be delivered electronically to avoid unnecessary physical contact.

The parties debate whether this rule required service of a courtesy copy on Figueroa's counsel.  The trustee contends that that rule specifies service on "counsel" for the debtor, a foreign representative, the U.S. Trustee, and any committee, whereas the reference to service on "all parties whose rights are affected by the filing" does not mention service on "counsel" for those parties.  Figueroa responds that the omission of "counsel" in that context is best explained by the fact that not all such parties will be represented by counsel, but that it is customary (and indeed, arguably required by professional standards) that all communications (at least those that are initiated by a lawyer) with a represented party be through that party's counsel.[16]

It bears note that because the local rule permits the courtesy copy to be served by email or other electronic form, there is little practical difference (at least for counsel who are registered CM/ECF users, as a party's Delaware counsel of record must be) between notice received through the CM/ECF system, and the "courtesy copy" typically provided by a claims agent in a large chapter 11 case.  Both are emails that contain links to the underlying pleadings.[17]

---

[16] *See*, *e.g.,* Del. Rule of Prof'l Conduct 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.").

[17] Perhaps for this reason – because Delaware counsel of record will necessarily receive CM/ECF notices that are functionally identical to the "courtesy copies" required by this Court's local rules, whereas out-of-town co-counsel may or may not – paragraph 3 of this Court's August 14, 2020 Order discussed delivery of "the courtesy copy provided under Local Rule 9036-1(b) *to co-counsel* of a registered CM/ECF user."  General Order, Aug. 14, 2020 (emphasis added).

The argument advanced here, however, is that in view of the large volume of CM/ECF notices that Delaware counsel typically receive, Figueroa's counsel relied on receipt of the courtesy copy, which counsel was entitled to receive under the local rule if his client's "rights are affected by the filing."[18]  In the absence of a courtesy copy, the argument is, counsel is entitled to assume that the CM/ECF notices will not affect one's clients rights.

The Court disagrees.  As Part I.A establishes, CM/ECF notice is sufficient to provide notice in a manner that is reasonably calculated to reach counsel for a party that has appeared in a bankruptcy case, which thus complies with the requirements of due process.  That said, it is also true that the failure to provide the "courtesy copy" is a violation of this Court's local rules.  But while there is no doubt that this Court has the authority to enforce its local rules,[19] it does not necessarily follow that the failure to provide a required "courtesy copy" necessarily vitiates the notice that was provided.  Otherwise put, the Court has the authority to craft an appropriate sanction for the violation of the local rule,[20] and here, the only sanction that is sought –

---

[18] As a practical matter, the Court understands that many debtors will satisfy the obligation to provide a courtesy copy by directing the claims agent to send an email with such a link to the email addresses of counsel on the Rule 2002 service list.  And it is represented the claims agent in this case included on that list (as per its usual practice) only those counsel that filed separate notices of appearances requesting service of counsel – not counsel who simply appeared in the case by filing a pleading (like Figueroa's motion for relief from stay).  Sept. 22, 2021 Hearing Tr. at 42-43.  To the extent, however, the local rule requires service of a courtesy copy on "all parties whose rights may be affected," it is not clear to the Court that this usual practice in fact satisfies the requirement of the local rule.

[19] *See generally Naviant Marketing Solutions v. Tucker*, 339 F.2d 180, 187 (3d Cir. 2003).

[20] *See generally Chambers v. NASCO*, 501 U.S. 32, 33 (1991) (noting that, when exercising "inherent authority" to sanction litigation misconduct, courts "must exercise discretion in fashioning an appropriate sanction").

excusing Figueroa of the obligation to comply with the bar date order – is too draconian a remedy for the failure to provide what the local rules themselves describe as a "courtesy." The Court accordingly finds that the November 2, 2020 bar date applies to Figueroa's claim, and that she should not be permitted to pursue that claim unless she can meet the "excusable neglect" standard set forth in *Pioneer*.

## II.     Figueroa has sufficiently established excusable neglect.

As the Third Circuit has recently explained, "[d]ates matter in bankruptcy,"[21] and for "creditors, none is more important than the 'bar date," a deadline set by the bankruptcy court for them to file claims against, or request payment from, the debtor." *Id.* As *Westinghouse* makes clear, that is true of creditors who hold administrative claims arising out of injuries sustained, as a result of the debtors' conduct, between the filing of the bankruptcy case and the effective date of the plan, which is what Figueroa claims here.

*Westinghouse* also makes clear, however, that one's failure to file a timely administrative claim is not necessarily the end of the story. *Id.* at n.12. Rather, section 503 of the Bankruptcy Code expressly states that a party may "tardily file [a request for payment of an administrative expense] if permitted by the court for cause." 11 U.S.C. § 503(a). In considering such requests, courts have routinely applied the "excusable neglect" standard that the Supreme Court adopted for considering late-filed proofs of claim in *Pioneer*.[22]

---

[21] *Ellis v. Westinghouse Elec. Co.*, 2021 WL 3852612, 11 F.4th 221 (3d Cir. Aug. 30, 2021).

[22] *See In re Bluestem Brands, Inc.*, 2021 WL 3174911, No. 20-10566 (MFW), at *2-*4 (Bankr. D. Del. July 27, 2021).

*Pioneer* sets forth the four elements courts in this district consider when determining whether excusable neglect exists: (i) the danger of prejudice to the non-moving party; (ii) the length of the delay and its potential impact on court proceedings; (iii) the reason for the delay, including whether it was within the movant's reasonable control; and (iv) whether the movant acted in good faith.[23]

The application of these standards to this case presents a close question. Figueroa places a great deal of emphasis on the fact that the debtors failed to buy a "tail" on its claims-made insurance policy and never revealed that fact to her in negotiating the stay relief stipulation.  This Court is inclined to discount that argument, however, as Figueroa acknowledges that she never asked the debtors about insurance in those negotiations and Figueroa points to nothing that would give rise to a duty to make such a disclosure.

The argument that the Court considers more persuasive, however, is Figueroa's argument that her motion for relief from stay provided the debtors with all of the information they would obtain in a motion to allow an administrative expense claim.  While a creditor seeking allowance of an administrative claim has the burden at a hearing on allowance of the claim to come forward with evidence to establish its entitlement to the claim, the motion itself need not contain voluminous information.  The filing of the motion for stay relief certainly provided sufficient information to put the debtors on adequate notice of Figueroa's claim.

---

[23] *See Pioneer*, 507 U.S. at 395.

Case 18-12491-CTG    Doc 2517    Filed 10/04/21    Page 19 of 20

Moreover, the disallowance of Figueroa's claim on the ground that she missed the administrative claims bar date would provide a windfall to the estate. Figueroa alleges that she suffered personal injuries as a result of the debtors' negligence during the bankruptcy case. If true, there is no question that this would give rise to an administrative claim under the Supreme Court's decision in *Reading*. Like the Third Circuit said of the employment discrimination claim in *Westinghouse*, a negligence claim is a "cost ordinarily incident to operation" of the debtors' business.[24] Leaving Figueroa with no means to pursue such a claim would clearly be prejudicial to her interests and would permit the estate to avoid an obligation that it would otherwise be required to bear under applicable legal principles.

In the Court's view, the strongest argument that could be made in response is that a post-confirmation trustee might reasonably rely on the administrative claims bar date. A post-bankruptcy trustee needs to make decisions on how much cash to distribute to creditors and how much needs to be reserved to handle administrative claims. A trustee would therefore look to whether administrative claims had been filed by the bar date and make financial decisions in the expectation that it will only be required to pay those administrative claims that were filed by the bar date.

While the trustee makes an argument to this effect in its brief, D.I. 2497 at 16, the trustee offered no evidence whatsoever in support of that contention. Indeed, rather than present an evidentiary case in support of this element of prejudice, the trustee acknowledged at the hearing that he was unable to address the ability of the

---

[24] *Westinghouse*, 2021 WL 3852612 (quoting *Reading*, 391 U.S. at 483).

trust to satisfy a potential claim. Sept. 22, 2021 Hearing Tr. at 56. This failure to present evidence on this critical piece of the trustee's claim for prejudice thus moves the needle in Figueroa's direction in the Court's assessment of the *Pioneer* factors in view of the evidentiary record before it.

The final considerations are the reasons for the delay and the good faith of the movant. On that score, the Court believes that the delay in the assertion of the claim could have been avoided by either party – by Figueroa had she asked about the availability of insurance or by the debtors had they promptly informed Figueroa that there was none. The Court believes that the circumstances suggest a mix-up, and perhaps a lack of utmost diligence, all around. Nothing in the record, however, suggests a lack of good faith (as contemplated by *Pioneer*) of the kind that would be disqualifying.

## Conclusion

For the reasons stated above, the motion will be GRANTED. Figueroa will be permitted to file an administrative claim which may be liquidated in a court of competent jurisdiction. The Court will issue a separate order implementing the terms of this Memorandum Opinion.

Dated: October 4, 2021

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE