## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>PROMISE HEALTHCARE GROUP, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-12491 (CTG)<br><br>(Jointly Administered)<br><br>**Related Docket No. 2908** |

## <u>MEMORANDUM OPINION</u>

Claimant Patrick Wassmann alleges that he suffered grievous injuries as a result of negligent care provided by Promise Hospital of Lee, Inc., a debtor in this bankruptcy case. As of the petition date, that claim was within the applicable state-law statute of limitations, and Wassmann filed a proof of claim before the bar date.

The liquidating trustee nevertheless objected to Wassmann's claim, contending that it is time barred. The liquidating trustee now seeks summary judgment on that basis. Section 502(b) of the Bankruptcy Code states that when a proof of claim is subject to an objection, the court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount."[1]

That statutory language means that, unlike other civil litigation in which courts examine the facts as they exist at the time of trial, the decision of a bankruptcy court on a claim objection looks at a "snapshot" of the debtor's liabilities as they existed as of the bankruptcy filing. If a creditor held a valid "right of payment"

---

[1] 11 U.S.C. § 502(b).

against the debtor on the petition date, that creditor is entitled to an allowed claim in bankruptcy.

The liquidating trustee takes a different view, arguing that if the statute of limitations on a claim will run after the petition date, it is incumbent on a creditor who seeks to assert that claim in bankruptcy also to file a lawsuit outside of bankruptcy – including by obtaining relief from the automatic stay and/or discharge injunction, as necessary. The liquidating trustee's apparent construction of § 502(b) is that while the *amount* of any allowed claim is determined as of the petition date, the *validity* of the claim is assessed as of the date of the claims allowance decision. Accordingly, to the extent a statute of limitations is running after the petition date (because the creditor had not filed a prepetition lawsuit), filing a timely proof of claim is insufficient. A creditor must also bring suit outside of bankruptcy before the statute expires or risk disallowance of the creditor's claim.

When the liquidating trustee sought summary judgment on this basis, the Court found the contention surprising. When pressed to identify authority that supported the claim, however, the liquidating trustee did point to a number of cases, some but not all of which do support his position. Despite those cases, however, this Court concludes that the position is nevertheless incorrect. The Court issues this Memorandum Opinion to explain why the authorities on which the liquidating trustee relies either do not support his reading of § 502(b) or, to the extent they do support it, this Court finds their reasoning unpersuasive. The liquidating trustee's motion for summary judgment will be denied.

## Factual and Procedural Background

The debtors[2] in these cases operated various short and long term hospital and nursing facilities throughout the country.[3]  On November 5, 2018, the debtors filed for chapter 11 bankruptcy protection.[4]  The Court confirmed the debtors' liquidating plan on September 17, 2020.[5]  That plan became effective on October 1, 2020.[6]  The debtors' plan established a liquidating trust and appointed Robert N. Michaelson[7] as liquidating trustee.[8]  Pursuant to the terms set forth in the plan, the liquidating trustee is the "sole entity responsible for reconciling and objecting to Claims against the Debtors and their Estates and making Distributions to Allowed Claims."[9]

### 1.    Wassmann's claim

Claimant Patrick Wassmann[10] filed a $10 million proof of claim on January 4, 2019, well before the May 31, 2019, bar date set by the Court at the outset of the

---

[2] Promise Healthcare Group, LLC and its affiliated debtors are herein referred to as the "debtors."

[3] D.I. 18 at 3.

[4] D.I. 1.

[5] D.I. 2072.

[6] D.I. 2102.

[7] Robert N. Michaelson is herein referred to as the "trustee."

[8] D.I. 2072.

[9] D.I. 2072-1 at 34.

[10] Patrick Wassmann is herein referred to as "Wassmann."  Although Wassmann is the original claimant, it is the Court's understanding that Connie Wassmann, the claimant's mother, is handling Wassmann's claim as a result of his medical state.  To that end, Connie Wassmann appeared at the March 21 hearing on behalf of Wassmann.  To the extent the Court refers to Connie Wassmann in this opinion, it will do so explicitly, but all other references to "Wassmann" refer to the claimant.

bankruptcy.[11]    Wassmann's claim is based on "damages and injuries [allegedly] caused by the [debtors' allegedly] negligent care of [Wassmann], between March 15, 2017 and June 9, 2017," while Wassmann was a resident at one of the debtors' Florida facilities.[12]

In addition to Wassmann's proof of claim, Wassmann also filed a post-petition lawsuit against the debtors in Florida state court, notwithstanding the automatic stay imposed by virtue of the bankruptcy filing.[13]    Under Florida law, all medical malpractice claims must be brought "within 2 years from the time the incident giving rise to the action occurred."[14]    This gave Wassmann an outside date of June 9, 2019 to bring his state-law claim against the debtors.    On March 11, 2019 (four months into the bankruptcy case), Wassmann filed a petition in state court to extend the statute of limitations on his claim for 90 days, giving him until September 8, 2019 to file his claim.[15]    On June 13, 2019, more than seven months after the petition date, Wassmann initiated his state-court action against Promise Hospital of Lee, Inc., one of the debtors.[16]

## 2.    The liquidating trustee's objection

The liquidating trustee's ninth omnibus claims objection argued that Wassmann's claim was "barred by the applicable statute of limitations [§ 95.11]," and

---

[11] D.I. 984 at 2.

[12] D.I. 2703 at 2.

[13] D.I. 2908-3.

[14] Fla. Stat. Ann. § 95.11(4)(b).

[15] Fla. Stat. Ann. § 766.104(2).

[16] Wassmann's state-court action is herein referred to as the "June 13 complaint."

that Wassmann's June 13 state-court complaint was void as filed in violation of the automatic stay.[17]  In response, Wassmann argued that he received a 90-day extension to file his state-law claim and that the automatic stay did not apply to Wassmann's claim because § 362(a)(1) applies only to a claim "that was or could have been commenced before the commencement of the case under this title," and Wassmann could not bring his claim before the petition date as a result of the debtors' alleged withholding of medical records.[18]

The liquidating trustee now brings this motion for summary judgment, asking this Court to disallow Wassmann's claim under 11 U.S.C. § 502(b)(1).  *First*, the liquidating trustee argues that any actions taken in violation of the automatic stay are void *ab initio*.  As a result, Wassmann's June 13 complaint is considered a nonevent for purposes of bankruptcy law.  *Second*, because Wassmann's June 13 complaint is void, no valid complaint was actually filed in state court prior to the September 8, 2019 deadline.  Consequently, the liquidating trustee argues, it is now too late; the statute of limitations on Wassmann's claim has lapsed, and the proof of claim must therefore be disallowed.

The liquidating trustee acknowledges that 11 U.S.C. § 108(c)(2) extends the period by which creditors may bring non-bankruptcy actions against a debtor where the statute of limitations on their claims had not expired prior to the petition date.  Under this provision, the holder of such a claim has an additional 30 days after notice

---

[17] D.I. 2655-2 at 6.

[18] D.I. 2703 at 2-3.

of the expiration of the automatic stay to file suit against a debtor in a nonbankruptcy court.  Even with the extension provided by § 108(c)(2), however, the liquidating trustee argues that Wassmann would have had to initiate his state-court suit by November 1, 2020.[19]  Because no suit was filed, the liquidating trustee maintains that § 108(c) cannot save Wassmann's claim.

The liquidating trustee's motion was set for argument on March 21, 2023.[20] Wassmann, who was represented by counsel at earlier stages of the bankruptcy case, is now proceeding *pro se*, via his mother, Connie Wassmann.[21]  Wassmann did not respond to the liquidating trustee's motion for summary judgment.  The Court nevertheless issued an order, in advance of the March 21 hearing, asking that counsel for the liquidating trustee be prepared to address whether, in the context of the § 502(b) claims allowance process, the fact that Wassmann filed a timely proof of claim was sufficient reason to deny the motion for summary judgment, assuming the claim was valid as a matter of substantive state law.[22]

---

[19] D.I. 2908 at 5.

[20] The "March 21 hearing."

[21] At the March 21 hearing, Connie Wassmann stated that her son's injuries prevented him from representing his own interests in this proceeding.

[22] D.I. 2922.  This Court recently explained in *In re Arsenal Intermediate Holdings, LLC*, No. 23-10097, D.I. 176 (Bankr. D. Del. March 27, 2023), that the question whether a Court should simply grant the requested relief on the ground it is unopposed, or independently raise questions about the movant's entitlement to the relief sought, is a matter largely committed to the discretion of individual judges.  *See id.* at 11-12 (pointing to "concerns about the propriety of the relief sought or the sophistication of the affected creditors" as reasons why a court might decline to grant relief in the absence of an opposition).  In this case, the fact that Wassmann was proceeding *pro se*, and the Court's questions about the correctness of the liquidating trustee's position, led the Court to issue this order.

## Jurisdiction

This claims allowance dispute arises under 11 U.S.C. § 502 and is therefore within the district court's subject-matter jurisdiction set forth in 28 U.S.C. § 1334(b). As a case within the district court's bankruptcy jurisdiction, this matter has been referred to this Court under 28 U.S.C. § 157(a) and the district court's standing order of reference.[23]

At the March 21 hearing, the liquidating trustee made an argument about the Court's subject-matter jurisdiction over personal-injury tort claims. The Court understands the liquidating trustee's point to be that various provisions of 28 U.S.C. § 157 limit the role of the bankruptcy court in adjudicating personal-injury tort claims. As described below, the liquidating trustee points to these provisions in support of his merits argument. The contention is that because these provisions require the claim to be liquidated outside of the bankruptcy court in any event, it only makes sense to require the claimant to file a timely lawsuit in another court.

The Court does not understand the liquidating trustee, however, to dispute this Court's subject-matter jurisdiction over the instant motion for summary judgment. In any event, as the Court will explain in Part II, subject-matter jurisdiction over bankruptcy matters is granted in 28 U.S.C. § 1334. While 28 U.S.C. § 157 allocates that jurisdiction between the district judges and the bankruptcy

---

[23] Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated Feb. 29, 2012.

judges (who are a "unit" of the district court),[24] none of the rules set out in § 157 are "jurisdictional" rules as that term is properly understood.  Accordingly, this Court has subject-matter jurisdiction over the liquidating trustee's motion.

## Analysis

### I.    A creditor who has filed a proof of claim that was timely as of the petition date is not required to initiate a non-bankruptcy proceeding to preserve its claim.

The crux of the liquidating trustee's argument is that Wassmann was required, in addition to filing a proof of claim before the bar date, to file a state-court action against the debtors prior to the running of the otherwise applicable statute of limitations (as extended by § 108) in order to preserve his right to payment.  The reason for that conclusion, the liquidating trustee contends, is that the allowability (as opposed to the amount) of a creditor's claim is determined based on the facts as of the date on which the court makes the claims allowance decision, rather than as of the petition date.  At the March 21 hearing, the trustee cited to a line of cases that, he contends, stand for the proposition that where a party's claim expired during the course of the bankruptcy and the party did not, prior to such expiration, file a complaint outside of bankruptcy, that claim should be disallowed under 11 U.S.C. § 502(b).  The Court does not believe that certain of the cases to which the liquidating trustee cites actually stand for that proposition.  While some of the cases do in fact

---

[24] 28 U.S.C. § 151 ("In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district.").

8

support the liquidating trustee's position, this Court respectfully disagrees with the reasoning reflected in those decisions.

### A. The claims allowance process asks whether the claim was allowable as of the petition date.

The liquidating trustee maintains that, when deciding a claims allowance dispute under § 502, a Court must consider the facts as they exist at the time of its decision, not as of the petition date. The liquidating trustee's position is that when § 502(b) says that the court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition," it is setting the petition date as the benchmark only for the *amount* of the claim. In determining the *validity* of the claim, the liquidating trustee contends that the rule that otherwise applies in civil litigation, under which a court makes the determination as of the date on which it renders judgment, remains applicable.

The liquidating trustee is correct that the rule he urges the Court to follow is the one that otherwise applies in civil litigation. A court typically applies the law to the facts as both of them exist at the time of trial.[25] The reasons the liquidating trustee is incorrect, however, are that (a) the language and structure of § 502(b), and (b) longstanding principles of bankruptcy law, alter the usual rule, directing the Court to look to the petition date instead.

---

[25] *See Bradley v. School Bd. of City of Richmond*, 416 U.S. 696 (1974) ("a court is to apply the law in effect at the time it renders its decision"); *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987) (prejudgment interest will typically run "until judgment is entered").

### 1.    The language and structure of § 502(b) make clear that the validity of a claim is determined as of the petition date.

The allowance or disallowance of a properly filed proof of claim is governed by § 502 of the Bankruptcy Code.  Section 502 is laid out in the negative; a claim is "deemed allowed" under § 502(a) unless an objection is made.  If the claim is objected to, it is allowed unless the claim falls under one of nine enumerated exceptions set forth in § 502(b)(1)-(9) – the first of which being that the "claim is unenforceable against the debtor … under … applicable law."[26]   And importantly, § 502(b)'s preamble provides that a court "after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition. . .*"[27]

When § 502(b)(1) states that a claim should be disallowed if "such claim is unenforceable against the debtor" under non-bankruptcy law, does the term "such claim" refer to the claim as of the time the Court rules on the claim objection (as the liquidating trustee contends), or the claim as of the petition date?  The next provision of the statute effectively answers that question.  Section 502(b)(2) provides that a claim should be disallowed if "such claim is for unmatured interest."  This provision makes clear that "such claim" must be the claim as it existed on the petition date.  Otherwise, a claim for interest that matured between the petition date and the date of the resolution of the claim objection would be allowed.  It is universally accepted,

---

[26] 11 U.S.C. § 502(b)(1).

[27] 11 U.S.C. § 502(b) (emphasis added).

however, that § 502(b)(2) is a "general rule disallowing postpetition interest."[28]  In short, the language and structure of § 502 as a whole make clear that the claims allowance process looks to the validity of a claim as of the petition date.

### 2.    This reading comports with longstanding bankruptcy practice and policy.

The liquidating trustee's position is also inconsistent with longstanding principles of bankruptcy law and sensible bankruptcy policy.  The reason that § 502 is "an essential part of the bankruptcy process"[29] is that it provides for a centralized mechanism by which bankruptcy courts resolve disputed and unliquidated claims that may be asserted against the bankruptcy estate.  To do so, the Code equalizes competing legal rights – all potential creditors will have their right to payment reduced to a "claim" as defined in § 101(5), and all claims will be determined as of the filing of the bankruptcy petition.

Outside of bankruptcy, creditors that hold equal "rights of payment" against the debtor or its property may have more or less practical leverage based on the status of the claim.  A bondholder whose notes mature next month may have "temporal priority" over the holder of an otherwise similar note that matures in three years.[30]  A plaintiff whose case is set to begin before a jury next week may have greater leverage to extract a settlement than one whose suit is in its early stages.  The bankruptcy process eliminates these distinctions.  The relative size of each creditor's

---

[28] *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 373 (1988).

[29] 4 *Collier on Bankruptcy* ¶ 502.01.

[30] *See* Robert K. Rasmussen, *Temporal Priority*, 20 Berkley Bus. L. J. 53 (2022).

slice of the pie is to be determined by that creditor's legal entitlement to be paid by the debtor.

As one scholar explained:

> The filing of the petition is the time at which the nonbankruptcy right is transformed into a claim that fixes each creditor's in rem share of the bankruptcy estate. By converting every legal right into a claim, there is a common metric that determines the share of the bankruptcy res to which each creditor is entitled.[31]

That metric is the creditor's "right to payment," which is how a "claim" in bankruptcy is defined.[32]

While codified in the 1978 Bankruptcy Code, this principle has an ancient lineage. In *Sexton v. Dreyfus*, Justice Holmes explained that the filing of a bankruptcy petition "fixes the moment when the affairs of the bankrupt are supposed to be wound up … The rule under discussion fixes the moment in all cases at the date which the petition is filed…."[33] There can be no question that this principle remains good law.[34]

---

[31] Douglas G. Baird, *The Elements of Bankruptcy* 84 (7th ed. 2022).

[32] *See* 11 U.S.C. § 101(5).

[33] 219 B.R. 339, 344-345 (1911).

[34] *See In re W.R. Grace & Co.*, 626 B.R. 217, 238 n.17 (Bankr. D. Del. 2021) ("[I]f an objection to claim is made, the court shall determine the amount of such claim as of the filing of the petition."); *In re Racing Servs.*, 619 B.R. 681, 688 (B.A.P. 8th Cir. 2020) ("A plain reading of § 502(b) suggests that the bankruptcy court should determine whether a creditor's claim is enforceable against the debtor as of the date the bankruptcy petition was filed."); *In re Flanagan*, 503 F.3d 171, 179 (2d Cir. 2007) (holding that a contrary view would be "an untenable reading of the statutory text," because § 502(b) specifically "instructs the bankruptcy court to determine the amount of such claim. . . '*as of the date of the filing* of the petition. . .'") (emphasis in original)).

The claims allowance process set out in §§ 501 and 502 thus establish a mechanism by which the court assesses the validity of the creditor's right to payment, under non-bankruptcy law, as it existed as of the petition date, subject only to the exceptions set forth in § 502(b).  Reflecting the principle that the claims allowance process takes a snapshot as of the petition date, § 502(b)(1) disregards a defense to a claim on the ground that it is unmatured – effectively accelerating, upon the bankruptcy filing, all of the debtor's otherwise unmatured liabilities.[35]  The petition date is, in essence, a "day of reckoning," consolidating the debtors' present and future obligations into one moment for prompt resolution.

The claims allowance mechanism, particularly as it operates in conjunction with the automatic stay provided in § 362, is intended to provide the debtor a centralized forum in which to litigate the merits of a creditor's claim.  The bankruptcy process freezes all parties' rights as they existed on the petition date.  The automatic stay bars creditors from taking any action (subject to its exceptions) outside of bankruptcy to pursue their pre-bankruptcy claims.  And the claims allowance process sets up a mechanism for resolving any dispute that may exist over the validity and extent of creditors' claims as of that moment in time.

---

[35] 11 U.S.C. § 502(b)(1) (providing that claims should be allowed, unless unenforceable against the debtor or its property under non-bankruptcy law, "for a reason other than because such claim is contingent or unmatured").  *See also* Charles Jordan Tabb, *The Law of Bankruptcy* 660 (5th ed. 2020) ("a claim will [not] be disallowed just because it is unmatured, unliquidated, contingent or disputed at the time of the filing, as long as the creditor had a 'right to payment' at that time.  In such a case, the court must estimate the amount owing on the petition date.  Bankruptcy thus serves to accelerate claims.") (internal citations omitted).

This advances the underlying goal of the bankruptcy process: "Consolidating all pre-petition claims against the debtor in one collective proceeding."[36] This enables a court to "exercise its power under section 502(b) of the Bankruptcy Code to establish the validity and amount of claims against the debtor," and prevent "a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'"[37]

The liquidating trustee has a fundamentally different conception of this process. In his view, creditors whose claims are valid as of the petition date but have upcoming statutes of limitations would be required to seek stay relief to file lawsuits in state or federal court outside of bankruptcy in order to preserve their right to payment.[38] That reading of the Bankruptcy Code would thus operate to create one of the very problems that bankruptcy is intended to solve.

In fairness to the liquidating trustee, he contends, not incorrectly, that his reading of § 502(b) would not require claimants who filed proofs of claim to initiate lawsuits in every case. The reason for that is that § 108(c) operates to toll the otherwise applicable statute of limitations until, in a chapter 11 case, 30 days after the termination of the automatic stay.[39] And unless the court grants stay relief for a

---

[36] *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1207 (3d Cir. 1991).

[37] *Id.* (citations omitted).

[38] D.I. 2935 at 1.

[39] *See* 11 U.S.C. § 108(c)(2) ("Except as provided in section 524 of this title, if applicable nonbankruptcy law… fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor … and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of— … 30 days after notice of the termination or expiration of the stay under section 362…").

14

particular claim for cause, in a typical chapter 11 case that results in a confirmed plan of reorganization, the automatic stay will remain in place until a discharge is granted when the plan is confirmed.[40]

So if the claims reconciliation process were to be completed before plan confirmation, the liquidating trustee's reading would not require claimants with upcoming statutes of limitations to initiate lawsuits outside of the bankruptcy process. In modern chapter 11 practice, however, that is a rather uncommon occurrence. It is now far more typical for plans to be confirmed before the claims reconciliation process has been completed (or sometimes, even begun). In such cases, the claims allowance process is left, as it was here, to a liquidating trust. Indeed, that is especially true in cases involving substantial number of tort claims that, whether or not the claims involve asbestos liabilities, follow the model established for asbestos claims in § 524(g) of the Bankruptcy Code, which requires the creation of a trust to resolve claims that are otherwise unliquidated.[41]

---

[40] See 11 U.S.C. § 362(c)(2) (stay ends at the earlier of the time the case is closed, dismissed, or a discharge is granted or denied); id. § 1141(d)(1)(A) (confirmation of a chapter 11 plan operates – subject to certain exceptions – to discharge debt that arose before confirmation). For this reason, the liquidating trustee is correct that Wassmann's June 13 complaint violated the automatic stay, and, if the filing of such a complaint were necessary, would not satisfy that requirement. In re Myers, 491 F.3d 120, 127 (3d Cir. 2007) ("We have indeed held that actions taken in violation of the stay are void."); In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994) (discussing the "general principle that any creditor action taken in violation of an automatic stay is void ab initio.") (citing Maritime Electric, 959 F.2d at 1206). But for the reasons set forth herein, no such filing was required.

[41] See 11 U.S.C. § 524(g)(2)(B) (requiring that the channeling injunction provided under § 524(g) "be implemented in connection with a trust that, pursuant to the plan of reorganization … is to assume the liabilities of [the] debtor".)

On the liquidating trustee's theory, then, in most chapter 11 bankruptcy cases claimants whose statutes of limitations would have expired in the period between the petition date and the time of confirmation would be required, within 30 days of confirmation, to assert their claims in courts outside of bankruptcy. And in cases in which those claims were otherwise subject to a discharge, such action would require the claimants to seek and obtain relief from any injunction issued in connection with the plan and/or by § 524(a)(2).

This Court declines to adopt such a construction of the Bankruptcy Code. Rather, as described above, the Court reads § 501 to require a creditor to file a proof of claim and § 502 to ask whether that claim was valid as of the petition date. Accordingly, because § 502(b)(1) asks the court to determine the validity of the claim as it existed as of the petition date, there is no reason for a creditor to file a complaint outside of bankruptcy. Here, Wassmann filed a timely proof of claim against the debtors arising out of personal injuries allegedly incurred as a result of the debtors' negligence. An objection was filed. As of the petition date, the statute of limitations on Wassmann's claim had not expired. Consequently, Wassmann's claim is not barred by state law and therefore not subject to disallowance under § 502(b)(1).

**B.     The cases on which the liquidating trustee relies for the proposition that claims allowance determinations should be made as of the date of the claims allowance decision are either distinguishable or unpersuasive.**

The liquidating trustee points to a number of cases that he contends support that proposition. Several of the cases to which the liquidating trustee points are distinguishable. Others, however, do support his position. But for the reasons set

forth below, this Court finds those courts' reasoning to be unpersuasive and declines to follow them.

The first case on which the liquidating trustee relies is *In re Ernst*.[42]  There, the U.S. District Court for the Southern District of New York found that in determining the allowability of a claim for attorney's fees under New York state law, the bankruptcy court properly gave effect to a New York state appellate decision, issued after the fees were incurred but before the bankruptcy court's hearing on the allowance of the claim, that rendered part of the creditor's claim unenforceable under state law.  The district court explained that while "section 502 requires that the amount of a claim be determined as of the date of the filing of [the] petition, there is nothing in that section that requires a court to ignore that the claim is no longer valid under state law."[43]  The liquidating trustee thus reads *Ernst* to stand for the proposition that claims allowance decisions should be made in light of the circumstances as they existed when the court makes the allowance decision, not those that existed as of the petition date.

That, however, is a misreading.  Properly understood, *Ernst* stands for the unremarkable proposition that judicial decisions are generally given retroactive effect.  The Supreme Court has recognized "the fundamental rule of retroactive operation that has governed judicial decisions for near a thousand years."[44]  *Ernst* did

---

[42] 382 B.R. 194 (S.D.N.Y. 2008).

[43] *Id.* at 199.

[44] *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 94 (1993) (internal quotation and brackets omitted) (citing *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 (1910) (Holmes, J., dissenting)).

nothing more than apply that principle. To say that judicial decisions are retroactive is to accept the principle, even if it is a legal fiction, that new decisions do not "change" the law but rather reflect what the law always was – including (when rendered after the bankruptcy filing) as of the petition date. Accordingly, nothing in *Ernst* supports the liquidating trustee's argument that "changes" between the petition date and time of the claims allowance decision should be given effect.

The second case on which the liquidating trustee relies is *Glatzer v. Enron Corp.*[45] But that case is, at best, to the same effect as *Ernst*. There, a bankruptcy court, in resolving a claims allowance dispute, gave preclusive effect to various state court judgments entered against the creditor. While it is not clear to this Court, based on its review of the decision, that any of the state court judgments at issue were entered after the petition date in *Enron*, even if they were it would not advance the liquidating trustee's cause. Like a judicial decision, a judgment is not viewed as effecting a change in circumstances but rather a determination of the validity of the claim at the time of the underlying transaction or occurrence. Accordingly, if a claim were to arise before a bankruptcy petition and (to the extent not inconsistent with the automatic stay) a state court were to adjudicate the claim after the petition date but before a court heard the claims allowance dispute, a bankruptcy court would certainly give effect to the state court judgment. That is not because a court should take account of developments after the petition date, but rather because the judgment

---

[45] 2008 U.S. Dist. LEXIS 78696 (S.D.N.Y. 2008).

is a determination of the state of affairs as they existed as of the petition date. Accordingly, nothing in *Glatzer* supports the liquidating trustee's position.

The third case cited by the liquidating trustee in *In re Benanti*.[46]  There, the debtors, who were individuals, had personally guaranteed a loan made by a bank to a bowling alley they owned.  As of the time of the bankruptcy, the bowling alley was current on its payments but in default as a result of a non-monetary default – the incapacity of one of the debtors, as a result of a stroke, was an event of default.  After the individual debtors' bankruptcy filing, the parties agreed to restructure the loan such that, other than obtaining whatever recovery the bank might receive on its claim in the individuals' chapter 7  case, the bank would forbear from exercising rights against the individuals so long as the bowling alley continued to perform on the loan and the individuals agreed that separate debt that the bowling alley owed to them would be subordinated to the bank loan.

The question in the case was whether the loan could be treated as "contingent" (and thus subject to estimation under § 502(c)) when the bowling alley was technically in default as of the petition date (such that the guarantee was enforceable against the debtors), and the guarantee obligation only became contingent as a result of the forbearance agreement that was executed after the bankruptcy filing.  The court held that it could.  It observed that "in determining whether the guaranties are contingent, it is appropriate to consider all facts and circumstances–not just those in existence

---

[46] 2018 Bankr. LEXIS 1139 (Bankr. C.D. Ill. Apr. 13, 2018).

on the petition date."[47]  The court reasoned that "§ 502  does not make reference to any point in time for determining whether a claim is contingent" and that "to ignore the realities simply because they did not exist at the time of the petition would be unconscionable."[48]

As an initial matter, *Benanti* is different from this case because it addressed whether a claim was "contingent" as opposed to the claim's validity under § 502(b)(1). And unlike contingency, where the statute makes no express reference to the date on which such contingency is determined, in the context of determining whether the claim is enforceable as a matter of non-bankruptcy law, as set forth above, the reference to "such" claim in § 502(b)(1) must be understood as a reference to the claim as of the petition date.

Moreover, one can certainly see how, in the factual circumstances of *Benanti,* principles of equity would counsel in favor of looking at the facts as they developed after the petition date.  The bank's claim on the guarantee, while technically enforceable against the debtors as of the petition date, was not one that the bank *would* have enforced.  The principal obligor was current on the debt, and with the benefit of hindsight, we know that the bank was willing to forbear from enforcing the guarantee.  In those circumstances, one can certainly see why a court would be disinclined to take the hard-headed view of simply assessing the parties' respective rights as of the petition date.  In this Court's view, however, such equitable factors

---

[47] *Id.* at *21.

[48] *Id.*

are an insufficient basis to depart from the analytic framework technically required by the language and structure of § 502(b), which assesses the claim as of the petition date.

Indeed, the conclusion that whether a claim is "contingent" should be viewed as of the petition date finds further support in § 502(e)(2). That section deals with the circumstance in which the debtor is not the guarantor, but the party whose debt is guaranteed by another. In that circumstance, the statute says that when the guarantor's right to contribution from the debtor (as a result of paying on the guarantee) "becomes fixed after the commencement of the case," the claim "shall be allowed … or disallowed … the same as if such claim had become fixed before the date of the filing of the petition."[49] The statute thus expressly allows for taking account of postpetition events in the case in which the guarantor of the debtor's liability seeks a claim for contribution. One must therefore infer that Congress did not intend to create a similar exception to the "snapshot" principle governing claims allowance for the *Benanti* situation, where the debtor is the guarantor. This Court accordingly declines to follow *Benanti*.

The final case cited by the liquidating trustee that warrants consideration is *In re C&G Excavating*.[50] There, the U.S. Bankruptcy Court for the Eastern District of Pennsylvania held that a creditor whose proof of claim was premised on a personal injury suit arising of a maritime tort was required to file an action in federal court

---

[49] 11 U.S.C. § 502(e)(2).

[50] 217 B.R. 64 (Bankr. E.D. Pa. 1998).

within the three year statute of limitations period prescribed by federal law.[51]  The creditor, the court held, had three choices: "(1) file a motion to lift the automatic stay; (2) file a personal injury complaint after the termination of the bankruptcy proceedings, if the statute of limitations has not run; or (3) file a complaint during the thirty day period after the expiration of the automatic stay set forth in section 108(c)."[52]  On appeal, the U.S. District Court for the Eastern District of Pennsylvania affirmed, holding that because the claimant was "entitled to have his case heard in district court" by operation of 28 U.S.C. § 157(b)(2)(B), and because the procedure set forth in § 502 for filing proofs of claims did "not create a separate scheme where notice replaces a complaint in a case that must be filed in district court," the claimant could not preserve its claim without filing a complaint in district court within the applicable deadline.[53]

This case does indeed support the trustee's position and is not factually distinguishable in any material way.  This Court, however, declines to follow that precedent on the ground that its reasoning is unpersuasive.  The principal error of the bankruptcy court was its assumption that 28 U.S.C. § 157(b)(2)(B), which provides that the liquidation of personal injury tort claim is a non-core matter, means that a separate lawsuit needs to be filed in district court in order to liquidate the claim.  That reasoning overlaps with the liquidating trustee's contention that this

---

[51] *Id.* at 66.

[52] *Id.*

[53] *Rhodes v. C&G Excavating*, 1999 U.S. Dist. LEXIS 15828, at *2-3 (E.D. Pa. Sep. 28, 1999).

Court would lack subject-matter jurisdiction over the claim, and is addressed in Part II.C of this Memorandum Opinion.

On appeal, the district court also found support for its conclusion that a separate complaint must be filed in § 108(c)'s extension of the applicable statute of limitation for claims against the debtor.  The court rejected the contention that the claims allowance process requires only the filing of a timely proof of claim and a proceeding to allow or disallow that claim.  Rather, the district court concluded that the Bankruptcy Code must contemplate the filing of separate (and timely) lawsuit outside of bankruptcy to liquidate an otherwise unliquidated claim, since if the filing of a "complaint is irrelevant following the filing of a proof of claim, then § 108(c) is purely statutory surplusage."[54]

This Court disagrees with that statement.  Rather, the extension of time to file a claim against the debtor under § 108(c) serves an important purpose in solving a different problem that is unrelated to claims allowance.  Consider a claim against an individual chapter 7 debtor that would be nondischargeable under § 523(a)(2) on the ground that the debtor had defrauded a lender into extending credit.  Such a creditor may recover its *pro rata* share out of the bankruptcy estate by filing a timely proof of claim.  To the extent the creditor seeks and obtains a determination from the bankruptcy court that the debt is nondischargeable, however, the creditor would typically be left to proceed outside of bankruptcy to obtain or enforce a judgment against the debtor to recover on the balance of the claim out of the debtor's post-

---

[54] *Id.* at *4.

bankruptcy assets.  But without relief from the stay, that action could not be brought until after the conclusion of the chapter 7 case.  The work done by § 108(c) is that, if the statute of limitations would otherwise expire during the bankruptcy case, this extension of time permits the creditor to wait until after the bankruptcy case has concluded before bringing that non-bankruptcy litigation.  As such, one need not adopt the liquidating trustee's position to save § 108(c) from surplusage.  This Court respectfully disagrees with the contrary conclusion suggested by the district court in *C&G Excavating*.

II.    **Because § 157 merely *allocates* the district court's jurisdiction over bankruptcy matters between the district and bankruptcy judges, nothing therein bears on subject-matter jurisdiction or contemplates a separate lawsuit to liquidate a personal injury claim.**

Because the liquidating trustee's claim about this Court's subject-matter jurisdiction and the reasoning of the bankruptcy and district courts in *C&G Excavating* proceed from a similar misapprehension about the operation of § 157 of title 28, the Court will first provide an overview of the work done in that section, and then address the more specific points.

A.    **Section 157 allocates the jurisdiction set forth in § 1334 between the district court and the bankruptcy court.**

The bankruptcy jurisdiction, set forth in 28 U.S.C. § 1334, is granted to the district court.  The work of § 157 is to allocate that jurisdiction between the district court and the bankruptcy judges, who "shall constitute a unit of the district court to be known as the bankruptcy court for that district."[55]   In substance, § 157(a)

---

[55] 28 U.S.C. § 151.

authorizes the district court to refer any case within the bankruptcy jurisdiction to bankruptcy court.  By standing order, the U.S. District Court for the District of Delaware has referred all such cases to this Court.[56]

How the case proceeds depends on whether the claim is "core" or "non-core."[57] The bankruptcy court may "hear and determine" a core matter,[58] with the bankruptcy court's decision subject to review in the district court in accordance with the appellate procedures set out in 28 U.S.C. § 158.  As to non-core matters, the bankruptcy court may submit proposed findings of fact and conclusions of law, which are subject to *de novo* review by the district court.[59]  With the parties' consent, however, the bankruptcy court may hear and determine a non-core matter.[60]  Here, the liquidating trustee has consented to this matter being heard and determined in the bankruptcy court.[61]

The district court remains free, at all times, to withdraw the reference from the bankruptcy court on a showing of "cause."  "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."[62]  This mechanism is important,

---

[56] Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated Feb. 29, 2012.

[57] The constitutional backdrop to that allocation is immaterial to this case but is described in *In re Healthcare Real Estate Partners, LLC*, 639 B.R. 294, 305-307 (Bankr. D. Del. 2022).

[58] 28 U.S.C. § 157(b)(1).

[59] 28 U.S.C. § 157(c)(1).

[60] 28 U.S.C. § 157(c)(2); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015).

[61] D.I. 2908 at 3.

[62] 28 U.S.C. § 157(d).

because some cases are referred to a bankruptcy court (because they are within the bankruptcy jurisdiction), but are ones in which a party may have a right to a jury trial. Under § 157(e), bankruptcy courts typically cannot conduct a jury trial [63] The mechanism for moving that proceeding from the bankruptcy court to the district court is withdrawal of the reference, which § 157(c) permits "in whole or in part [for] any case or proceeding," including a claims allowance dispute. To that end, the District Court for the District of Delaware has explained that when a party moves to withdraw the reference on the ground that a party is entitled to a jury trial, it typically will withdraw the reference only when the case is "trial ready."[64]

It is certainly true that, under 28 U.S.C. § 157(b)(2)(B), the liquidation of a personal injury tort claim is a noncore matter.[65] And to the extent that a claim for personal injury will go to trial, § 157(b)(5) provides that the "district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy

---

[63] *See* 28 U.S.C. § 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.").

[64] *In re Big V Holding Corp.*, D. Del. No. 01-233 (GMS), 2002 U.S. Dist. Lexis 12609 at *17 (D. Del. July 22, 2002) ("Withdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is 'trial ready.' It would be premature to withdraw the reference to the bankruptcy court based upon the unfixed proposition that a jury trial may occur in the future.").

[65] 28 U.S.C. § 157(b)(2)(B) ("Core proceedings include … allowance or disallowance of claims against the estate … but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11.").

case is pending."[66]  But as described below, that neither means that the bankruptcy court lacks subject-matter jurisdiction nor that a separate lawsuit needs to be filed outside of bankruptcy.  Rather, the claims allowance dispute may proceed in the bankruptcy court (which has subject-matter jurisdiction under § 1334) until it is trial ready.  At that point, the case may proceed to the district court via withdrawal of the reference.  There is no need for a separate lawsuit to be filed.

### B.    Section 157's rules allocating the bankruptcy jurisdiction are not themselves "jurisdictional" rules.

The liquidating trustee argued that a claimant must file a timely claim on a personal injury tort claim because the bankruptcy court lacks subject-matter jurisdiction to resolve a dispute over the allowance of such a claim.  That is incorrect. As described above, it is true that the liquidation of such claims are not core matters. It is also true that to the extent the liquidation of personal injury claim needs to be tried, it must be sent to the district court for trial.  But none of that has anything to do with subject-matter jurisdiction.

As the Supreme Court recently explained, rules that bear on subject-matter jurisdiction are special.  Because subject-matter jurisdiction may be raised at any time and is not subject to principles of waiver or forfeiture, such rules "have a unique potential to disrupt the orderly course of litigation. 'Branding a rule as going to a court's subject-matter jurisdiction [thus] alters the normal operation of our

---

[66] 28 U.S.C. § 157(b)(5).

adversarial system.'"[67]    Because treating a rule as jurisdiction poses a "risk of disruption and waste," courts "will not lightly apply it."[68]

The rules set forth in § 157 of title 28 merely *allocate* the subject-matter jurisdiction granted in § 1334.  The rules are not themselves jurisdictional.  As the Third Circuit explained in *In re Marcus Hook Development Park*, "whether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction."[69]  The Supreme Court underscored that point in *Stern v. Marshall*.  "Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction."[70]

The dispute over the allowance of Wassmann's claim against the debtor's bankruptcy estate is a contested matter.  Because the matter arises under § 502 of the Bankruptcy Code, it is within the district court's "arising under" jurisdiction set forth in 28 U.S.C. § 1334(b).  That is the beginning and end of the subject-matter jurisdiction question.

What is left are simply questions of how that subject-matter jurisdiction is to be allocated between the district court and the bankruptcy court.  The present claims allowance dispute was referred to this court like all matters within the district court's

---

[67] *Wilkins v. United States*, 143 S. Ct. 870, 876 (2023). *See also MOAC Mall Holdings LLC v. Transform Holdco LLC,* No. 21-1270, Slip Op., (S. Ct. Apr. 19, 2023).

[68] *Id.*

[69] *In re Marcus Hook Development Park. Inc.*, 943 F.2d 261, 266 (3d Cir. 1991).

[70] *Stern v. Marshall*, 564 U.S. 462, 480 (2011).  *See also In re Healthcare Real Estate Partners*, 639 B.R. at 306-307.

bankruptcy jurisdiction. Because it involves a personal injury claim, it is a non-core matter, meaning that, absent the consent of the parties, this Court may (at most) make proposed findings and conclusions, rather than enter final judgment. And to the extent the matter needs to go to trial, that trial must happen in district court. Until such time as the case is trial ready or the district court otherwise elects to withdraw the reference, however, this Court may exercise the subject-matter jurisdiction granted to the district court (and referred to this Court) by addressing pre-trial matters, including the present motion.

   **C.    Contrary to the conclusion of the *C&G Excavating* bankruptcy court, nothing in § 157 contemplates a separate lawsuit, outside of the bankruptcy proceeding, to liquidate a personal injury tort claim.**

   The bankruptcy court in *C&G Excavating* held that a creditor asserting a tort claim against the debtor was required, in addition to filing a proof of claim, to file suit outside of bankruptcy within the statute of limitations (as extended by § 108(c)) in order to recover out of the debtor's bankruptcy estate.

   The starting point of its analysis, however, appears to be the premise that "bankruptcy courts lack subject matter jurisdiction to liquidate or estimate contingent or unliquidated personal injury tort or wrongful death claims for purposes of distribution, *see* 11 U.S.C. § 157(b)(2)(B)."[71] But for the reasons set forth above, that premise is incorrect. The Third Circuit explained in *Marcus Hook* (which was decided before *C&G Excavation*), and the Supreme Court reinforced in *Stern* (which

---

[71] 217 B.R. at 64 n.1.

came later), that nothing in § 157 operates to strip any court of subject-matter jurisdiction. While either party has the right to have a personal injury tort claim heard in the district court, that right is fully waivable. But more importantly, the mechanism for bringing that claims allowance dispute from the bankruptcy court to the district court is withdrawal of the reference under 28 U.S.C. § 157(d), not the filing of a new lawsuit.

With that incorrect premise swept aside, most of the rest of the court's reasoning falls away. Once a creditor has filed a timely proof of claim, the only dispute that requires resolution is the allowance or disallowance of the claim. That proceeding may be heard in either the bankruptcy court or district court, as provided in § 157. But filing a separate lawsuit outside of the process contemplated by the Bankruptcy Code and § 157 is neither necessary nor appropriate.

## Conclusion

For the reasons set forth above, the Court will deny the liquidating trustee's motion for summary judgment. A separate order will enter.

Dated: April 20, 2023

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE