# EXHIBIT F



# NAUTILUS INSURANCE COMPANY

## A Stock Company

# HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

THIS POLICY CONSISTS OF:

- Declarations; and
- One or more Coverage Parts.  A Coverage Part consists of:
  - One or more Coverage Forms; and
  - Applicable Forms and Endorsements.

## SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
Secretary

_____
President and CEO

Service Office:
250 South Wacker Drive #700    Chicago, IL 60606    Telephone (312) 881-1330    Fax (312) 881-1338

Administrative Office:
7233 East Blutherus Drive    Scottsdale, AZ 85260    Telephone (480) 951-0905    Fax (480) 951-9730

A BERKLEY COMPANY®

SSM-0047FL(3/10)

**Nautilus Insurance Company**
c/o Berkley Select, LLC
250 S. Wacker Drive, Suite 700
Chicago, IL 60606

**HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY**

**DECLARATIONS PAGE**

**This is a claims made and reported policy. Please read this policy and all endorsements and attachments carefully.**

Policy Number:    PFP_1000288_P-3          Renewal of Number:          PFP_1000288_P-2

1. **NAMED INSURED:** Success Healthcare, LLC

    **MAILING ADDRESS:**
    999 Yamato Road
    Boca Raton
    FL        33431

2. **POLICY PERIOD:** Effective Date:   11/18/2015    Expiration Date:   11/18/2016
    At 12:01 A.M. Standard Time at the mailing address of the named insured.

3. **LIMITS OF INSURANCE:**
    **(a)**    Each Medical Incident:    $1,000,000
    **(b)**    Aggregate:                $3,000,000

4. **DEDUCTIBLE**
    **(a)**    Each Medical Incident:    $100,000
    **(b)**    Aggregate:                $0

5. **RETROACTIVE DATE:**          11/18/2008
    If a date is indicated, this insurance will not apply to any act, error, omission or medical professional injury which occurred before such date.

6. **DESCRIPTION OF INSURED BUSINESS:**        Hospitals - Community

7. **PREMIUM:** $628,200.00

8. **ENDORSEMENTS:** Refer to Schedule of Endorsements SSM-0139(11/07)

**Countersigned By:** _____    **Date:**    03/04/16_____
                                    Where required by law

Producer:    RPS Healthcare
             550 W. Van Buren Street
             Suite 1200
             Chicago, IL 60607

SSM-0027 (06/09)                                                                    Page 1 of 1

# SCHEDULE OF ENDORSEMENTS

**The provisions, stipulations and agreements contained in the following form(s) or endorsement(s) are attached to and made part of the policy:**

SSM-0047FL(3/10)  Healthcare Professional Liability Insurance Policy - Jacket (N)
SSM-0027(6/09)  Healthcare Professional Liability Insurance Policy Declarations Page  (N)
SSM-0139(11/07) Schedule of Endorsements
SSM-0028(4/09)  Healthcare Professional Liability Insurance Policy
SSM-0108(12/07)  Minimum Earned Premium Endorsement
BSL-0004(10/09) Reporting  A Claim
SSM-0150(11/07) Important Notice To Policyholders
SSM-5046(5/08) Service of Suit Endorsement
BSL-0018(6/11) Aggregate Expense Limits Endorsement
BSL-0028 (1/14) Sanctions Limitation & Exclusion Clause
SSM-0059(4/09)  Sexual or Physical Abuse Endorsement - Damages And Claims Expenses
SSM-0141(4/09) Amended Cancellation/Non-Renewal Provision
SSM-0157(1/08) Schedule of Insured Physicians
SSM-0164(1/08) Additional Named Insured - Specified Retro Date
BSL-0022(1/12) Media Expenses Supplementary Payments Coverage
BSL-0023(1/12) Medical Board Licensing Hearing Cost Reimbursement Coverage
BSL-0024(1/12) HIPAA Proceedings Supplementary Payments Coverage
BSL-0026(1/12) Disinfection Event Expense Reimbursement Coverage
BSL-0027(1/12) Evacuation Expense Coverage
BSL-0025(1/12) Good Samaritan Coverage
SSM-0234(4/09)  Amended Definition of Damages
SSM-0090(8/07)   General Change Endorsement - First Notice of Claim
SSM-0097(8/14)  Additional Insured - Designated Person or Organization (Specified)
SSM-0094(1/10)  Deductible Endorsement (Loss and Expense)

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE, OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

# HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

**THIS IS A CLAIMS MADE AND REPORTED POLICY.  THIS POLICY IS LIMITED TO CLAIMS THAT ARE FIRST MADE AGAINST AN INSURED AND REPORTED TO THE COMPANY IN WRITING DURING THE POLICY PERIOD OR DURING THE EXTENDED REPORTING PERIOD, IF APPLICABLE.  PLEASE READ THE ENTIRE FORM CAREFULLY.**

Various provisions in the policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us", and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **Section II – Who is an Insured.**

Other words and phrases that appear in quotation marks have special meaning.  Refer to **Section VIII – Definitions.**

## SECTION I – COVERAGE

### A.  Insuring Agreement

1.  We will pay amounts that the insured becomes legally required to pay as "damages" because of "medical professional injury" that results from acts or omissions in the providing of or failure to provide "health care professional services" by or for an insured.
2.  This coverage applies to "medical professional injury" only if:

    a.  The injury is caused by a "medical incident" that takes place in the "coverage territory";
    b.  The "medical incident" did not occur before the "retroactive date" shown in the Declarations or after the end of the policy period; and
    c.  A "claim" or "suit", with respect to the "medical professional injury" is first made against the insured and reported to us in writing, in accordance with **Paragraph 4** below, during the policy period or an extended reporting period we provide with accordance with **Section V – Extended Reporting Period.**

    But this coverage does not apply to any "claim" or "suit" that the insured knew about or could have reasonably foreseen or discovered before the "original inception date" of this coverage.

    If an insured is added to this policy at any date subsequent to the date this policy first became effective for any insured, we will not cover any "claim" or "suit" that results from the activities or business of this subsequently added insured if any insured knew about or could have reasonably foreseen, prior to the first date this policy applies to the subsequently added insured, that a "claim" or "suit" could result.

3.  We will have the right and duty to defend the insured against any "claim" or "suit" for covered "damages".  We will do so even if any of the allegations of the "claim" or "suit" are groundless, false or fraudulent.  However, we will have no duty to

defend the insured against any "claim" or "suit" seeking "damages" for injury to which this insurance does not apply. We may, at our discretion, investigate any "medical incident" and settle any "claim" or "suit" that may result. But:

      a. The amount we will pay for "damages" is limited as described in **Section III – Limits of Insurance**; and

      b. Our right and duty to defend ends when we have used up the applicable limit of insurance in payment of judgments or settlements.

No other obligation or liability to pay sums or perform other acts or services is covered unless explicitly provided for under **Paragraph B – Additional Payments** below.

4. A "claim" or "suit" shall be considered to be first made at the earlier of the following times:

      a. When notice of such "claim" or "suit" is received by any insured.

      b. When you knew about or should reasonably have known a circumstance was likely to result in a "claim" or "suit".

      c. When a "claim" or "suit" is reported in writing directly to us or one of our agents.

A "claim" or "suit" received by the insured and reported to us in writing within 30 days after the end of the policy period will be deemed to have been reported on the last day of the policy period.

You must report the "claim", "suit" or "medical incident" in accordance with the terms and conditions of **Section IX.A. – Notice of Claim or Suit**.

5. All "claims" or "suits" arising out of the same "medical incident" will be deemed to have been made at the time of the first of those "claims" or "suits" made against any insured. Only the policy in effect when the first such related "claim" or "suit" is made and reported to us in writing will apply to all such related "claims" or "suits" no matter when those related "claims" or "suits" are made or reported. If the first such "claim" or "suit" is made prior to the effective date of this policy, this policy will not apply to that "claim" or "suit" nor to any related "claim" or "suit" made during this policy period or any extended reporting period we provide in accordance with **Section V – Extended Reporting Period.**

## B. Additional Payments

We will pay, with respect to any "claim" we investigate or settle or any "suit" against an insured we defend:

1. All expenses we incur.
2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
3. All reasonable expenses incurred by the insured, at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $500 a day because of time off work.
4. All costs taxed against the insured in the "suit".
5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6.  All interest on the full amount of the judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limit of insurance.  Our duty to make these payments will end when we have used up the limits of insurance that apply with the payment of judgments or settlements.

We will have the right to appeal a judgment for "medical professional injury" in any "suit" we defend.  If we appeal such a judgment, we will pay all expenses which result directly from that appeal.  This includes any taxed costs and post judgment interest.  These appeal expenses are in addition to the limits of insurance.  The results of an appeal will not change the limits of insurance that apply under this coverage part.

## SECTION II – WHO IS AN INSURED

**A.**  If your application declares you to be:

1.  An individual, you are an insured, but only with respect to the provision of "health care professional services" by or for you.
2.  A partnership or joint venture, you are an insured, but only with respect to the provision of "health care professional services" by or for you.  Your partners or co-venturers are also insureds, but only with respect that partner's or co-venturer's liability as such.
3.  A limited liability company, you are an insured but only with respect to the provision of "health care professional services" by or for you.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.
4.  A corporation or other organization, you are an insured but only with respect to the provision of "health care professional services" by or for you.  Your "executive officers", directors, trustees and governors are insureds, but only with respect to their duties as your officers, directors, trustees or governors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.
5.  A trust, you are an insured, but only with respect to the provision of "health care professional services" by or for you.  Your trustees are also insureds, but only with respect to their duties as trustees.

**B.**  Your "employees", students and "volunteer workers" are insureds, but only for acts or omissions within the course and scope of their duties for you or while performing duties related to the conduct of your business.

**C.**  If an insured dies or is adjudged incompetent, this insurance will terminate for that insured.  But the insured's legal representative will be an insured for any "medical incident" previously committed and covered by this policy.

**D.**  Your "administrators" are insureds, but only for their duties as your administrators.

**E.**  Persons performing services on or for your formal review boards or committees are insureds, but only while performing covered services required or requested by such boards or committees.

**F.**  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an insured if there is no other similar insurance available to that organization.  However, coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier and

provided further that coverage does not apply to "medical professional injury" that results from a medical incident that occurred before you acquired or formed the organization. The "retroactive date" of coverage for the newly formed or acquired organization will be the date of acquisition or formation unless we agree, in writing, to a different "retroactive date".

However, no intern, extern, resident, or dental, osteopathic or medical doctor is an insured for any "medical professional Injury" that results from acts or omissions in the providing of or failure to provide "health care professional services".

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

A. The limits of insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1. Insureds;
2. "Claims" made or "suits" brought; or
3. Persons or organizations making "claims" or bringing "suits".

B. The aggregate limit is the most we will pay for the sum of all "damages" because of all "medical professional injury".

C. Subject to the aggregate limit, the each medical incident limit is the most we will pay for all "damages" because of all "medical professional injury" arising out of any one "medical incident".

1. We will consider a series of related acts or omissions in the providing of or failure to provide "health care professional services" to be one "medical incident".
2. All "claims" or "suits" arising out of the same "medical incident" will be deemed to be a single "claim" or "suit" and to have been made at the time of the first of those "claims" or "suits" was made against any insured.

   Only the policy in effect when the first such related "claim" or "suit" is made and reported to us in writing will apply to all such related "claims" or suits" no matter when those related "claims" or "suits" are made or reported.

   The limits of this coverage part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding policy period for purposes of determining the limits of insurance.

   If you change your limits of coverage under this insurance, the new limits do not apply to:

1. Any "claim" or "suit" that was made or brought against any insured; or
2. Any "claim" or "suit" that any insured reasonably knew about or should have reasonably known about before the effective date of the limits change.

## SECTION IV – DEDUCTIBLES

**A.** Our obligation under this insurance to pay "damages" for any covered "medical incident" on your behalf applies only to the amount of "damages" in excess of the deductible amount stated in the Declarations Page.  The deductible shown in the Declarations Page and the rules below fix the amount of "damages" over which the limits of coverage will apply regardless of the number of

    1.  Insureds;
    2.  "Claims" made or "suits" brought; or
    3.  Persons or organizations making "claims" or bringing "suits".

The each medical incident deductible is the amount that will be your responsibility for all "damages" arising out of any one "medical incident".

The aggregate deductible is that amount that will be your responsibility for all "damages" that are first reported during the policy period.

The deductible does not apply to any Additional Payments.

**B.** The terms of this insurance, including those with respect to:

    1.  Our right and duty to defend you against any "claim" or "suit"; and
    2.  Your duties in the event of a "medical incident", "claim" or suit"

are irrespective of the application of the deductible amount.

**C.** We may pay any part or all of the deductible amount to effect settlement of a "claim" or "suit" and, upon notification of the action taken, you shall reimburse us within thirty (30) days of the notification for such part of the deductible amount as has been paid by us.

## SECTION V – EXTENDED REPORTING PERIOD

**A.** You will have the right to purchase an extended reporting period, as described below, if this coverage part is cancelled or not renewed.

**B.** Extended Reporting Period

    1.  An extended reporting period is available, but only by endorsement and for an additional charge.  The extended reporting period purchased by you is indicated in the Extended Reporting Period endorsement.
    2.  The extended reporting period starts with the end of the policy period.  It does not extend the policy period, change the scope of coverage provided under this coverage part, or reinstate or increase the limits of insurance available under this coverage part.  It applies only to "medical professional injury" caused by a "medical incident" which occurred on or after the "retroactive date" shown in the Declarations and before the end of the policy period provided a "claim" or "suit" for such "medical professional injury" is first made and reported to us in writing during the extended reporting period.
    3.  You must notify us in writing of your intent to purchase the extended reporting period within thirty (30) days after the end of the policy period or the date of termination of the policy, whichever comes first.
    4.  The extended reporting period will not go into effect unless the premium for this policy is paid in full and you pay the additional premium for the Extended Reporting Period Endorsement promptly when due.  Once in effect, the extended reporting period may not be cancelled and the entire premium becomes fully earned.

5. If an Extended Reporting Period Endorsement is issued, its premium will be calculated using the rates and rules in effect when the extended reporting period begins.
6. The insurance provided under the Extended Reporting Period Endorsement will be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the endorsement takes effect.

## SECTION VI – EXCLUSIONS

This insurance does not apply to:

### A. Violation of an Antitrust Law

Any "claim" or "suit" for "damages" arising out of the violation of an antitrust law.

### B. Aircraft, Auto or Watercraft

Injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.  Use includes operation and loading or unloading.
However, this exclusion does not apply to loading or unloading of patients.

### C. Asbestos

1. Any liability or obligation of any insured to indemnify or contribute on behalf of any party because of any injury or damage; or
2. Any obligation to investigate, defend or settle any "claim" or "suit" against any insured that alleges any injury or damage

Arising out of, resulting from or contributed to by the manufacture, mining, use, sale, installation, removal, distribution, transportation of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

### D. Contractual Liability

Injury for which the insured is obligated to pay "damages" by reason of the assumption of liability in a written contract or agreement.

This exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement.

### E. Sexual or Physical Abuse

Any "claim" or "suit" based on or arising out of:

1. physical assault, abuse, molestation, or habitual or intentional neglect, or licentious immoral, amoral or other behavior that was committed or alleged to have been committed by the insured or by any person for whom the insured is legally responsible; and/or
2. sexual assault, abuse or molestation, or licentious, immoral, amoral or other behavior which was threatened, intended to, lead to or culminated in, any sexual act whether committed intentionally, negligently, inadvertently or with the belief, erroneous or otherwise, that the other party is consenting and has the legal and mental capacity to consent thereto, that was committed, or alleged to have been committed by the insured or by any person for whom the insured is legally responsible.

This exclusion applies regardless of the legal theory or basis upon which the insured is alleged to be legally liable or responsible in whole or in part, for any "damages" arising out of sexual and/or physical abuse, including but not limited to assertions of improper or negligent hiring, employment or supervision, failure to protect or warn the other party, failure to prevent the sexual abuse and/or physical abuse, failure to prevent assault and battery, or failure to discharge the employee.

**F.  Dishonest, Fraudulent, Malicious, Uninsurable Acts.**

Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act, including reckless violation of any statute, or any act deemed uninsurable by law, committed by any insured.

**G.  Directors and Officers**

Any "claim" or "suit" for "damages" arising from any "wrongful act" of any of your directors or officers in the discharge or performance of their duties as such.  Or, any "claim" or "suit" for "damages" against any corporation brought by any director or officer for indemnification or to be reimbursed for any "damages" to which any director or officer is or was a party which is based on a wrongful act.

This exclusion does not apply to "medical professional injury".

**H.  Employers Liability**

Bodily injury to:

1.  An "employee" of the insured arising out of and in the course of:
    (a) Employment by the insured; or
    (b) Performing duties related to he conduct of the insured's business; or
2.  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1. above.

This exclusion applies:
a.  Whether the insured may be liable as an employer or in any other capacity; and
b.  To any obligations to share "damages" with or repay someone else who must pay "damages" because of the injury.

**I.  Employment-Related Practices**

1.  Any "claim" or "suit" resulting from:

    a.  Refusal of employment;
    b.  Termination of Employment; or
    c.  Employment-related practices, policies, acts or omissions including coercion, demotion, evaluation, reassignment, discipline, false imprisonment, invasion of rights to privacy, infliction of emotional distress, defamation, harassment, humiliation or discrimination.

2.  Any "claim" or "suit" from the spouse, child, parent, brother or sister as a consequence of injury or damage to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

**J.  ERISA**

Any "claim" or "suit" for any violation or alleged violation of the Employee Retirement Income Security Act of 1974 or any amendment or addition to this act or similar provisions of any federal, state or local law.

**K.  Non-Monetary "damages"**

Any "claim" or "suit" for non-monetary "damages".

**L.  Nuclear Energy Liability**

1.  Any "claim" or "suit" for which any insured is also protected under a nuclear energy liability insurance policy or would have been protected under such a policy if that policy's limits of coverage had not been used up.
2.  Any "claim" or "suit" that results from the "hazardous property" of "nuclear material" and for which:

   a.  any insured is required by law to maintain financial protection in accordance with the Federal Atomic Energy Act, or any of its amendments; or

   b.  any insured is entitled, or would have been entitled had this insurance not been issued, to indemnity from the United States government, or any of its agencies, under any contract or agreement between the government, or any of its agencies, and any insured.

3.  Any "claim" or "suit" that results from the "hazardous properties" of "Nuclear Material" when:

   a.  the "nuclear material" is located at, or at any time discharges or disperses from, a "nuclear facility" which is or was at any time owned by any insured, or operated by or for any insured;

   b.  the "nuclear material" is contained in "spent nuclear fuel" or "nuclear waste" that is or was at any time possessed, handled, used, processed, stored, transported, or disposed of by or for any insured; or

   c.  the "claim" or "suit" results from the furnishing by any insured of services, materials, parts or equipment in connection with the planning, maintenance, operation, or use of any "nuclear facility".

**M.  Other Coverage Parts**

Any "claim" or "suit" which is covered under any other coverage part attached to this policy, unless otherwise stated.

**O.  Pollution**

1.  Any "claim" or "suit" resulting from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
2.  Any "claim", "suit", cost or expense resulting from:

   a.  Any request, demand or order that any insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants; or

   b.  Any "claim" or "suit" by or on behalf of a governmental authority for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

**P.  Workers Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**Q. War or Terrorism**

Any injury or damage or medical expense that results either directly or indirectly out of:

1. War, including undeclared or civil war; or

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

4. "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

a. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

b. Fifty or more persons sustained death or serious physical injury. For the purposes of this provision, serious physical injury means:

   1) Physical injury that involves a substantial risk of death; or

   2) Protracted and obvious physical disfigurement; or

   3) Protracted loss of or impairment of the function of a bodily member or organ; or

c. The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

d. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

e. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

**Paragraphs a. and b.,** immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**SECTION VII – OTHER INSURANCE**

This insurance is excess of any other valid and collectible insurance available to you whether that insurance is stated to be primary, pro-rata, contributory, excess, contingent or otherwise, unless that insurance specifically applies as excess insurance over this coverage part.

**SECTION VIII – DEFINITIONS**

   A. "Administrators" means any administrator, superintendent or chief executive officer, chief operating officer, chief financial officer, medical director, department head or staff member that performs administrative services for you.

   B. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But "auto" does not include "mobile equipment".

   C. "Bodily Injury" means any physical harm, including sickness, disease or death, to the physical health of other persons.  It includes mental anguish, injury or illness, emotional distress, that results from such physical harm, sickness or disease.

   D. "Claim" means a demand which seeks "damages" or any circumstance which is likely to result in a demand for "damages".
   However, we will not consider a patient incident report, variance report, or any other report, made for loss prevention purposes, to be a claim, even if you send it to us or one of our agents.

   E. "Coverage Territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada; and all parts of the world if the insured's responsibility to pay "damages" is determined in a "claim" or "suit" that is brought in the aforementioned territory, or in a settlement that we agree to.  However, the coverage territory does not include any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

   F. "Damages" means compensatory judgments, settlements or awards but does not include punitive or exemplary Damages, fines, or penalties, the return of fees or other consideration paid to the insured, or the portion of any award or judgment caused by the multiplication of actual Damages under federal or state law.  However, if a Suit is brought against the insured with respect to a claim for alleged acts or omissions falling within the scope of coverage afforded by this insurance seeking both compensatory and punitive or exemplary Damages, then the Company will afford a defense to such action, without liability however, for payment of such punitive or exemplary Damages.

   G. "Employee" includes a "leased worker".  "Employee does not include "temporary worker".

   H. "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

   I. "Hazardous properties" include radioactive, toxic or explosive properties.

   J. "Health Care Professional Services" means:

        a. Medical, surgical, dental, x-ray, nursing, mental or other similar health care professional services or treatments.

b. Providing or dispensing of food, beverages, medications or medical supplies or appliances in connection with services described in paragraph J.a. above.

c. Handling or treatment of dead bodies, including autopsies, organ donation or harvesting, or other procedures.

d. The work of your formal accreditation, standards review or equivalent professional board or committee, done for any insured while:
   i. Evaluating the professional qualifications or clinical performance of any provider of health care professional services; or
   ii. Promoting and maintaining the quality of health care professional services being provided.

e. The execution, or failure to execute a decision or directive of your formal accreditation, standards review or equivalent professional board or committee.

K. "Leased Worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased Worker" does not include a "temporary worker".

L. "Medical Incident" means any act or omission in the providing of or failure to      provide "health care professional services" to your patients that results in "medical professional injury". We will consider a series of related acts or omissions in the providing of or failure to provide "health care professional services" to be one "medical incident".

M. "Medical professional injury" means injury, including death, to others that results from acts or omissions in the providing of or failure to provide "health care professional services" by or for an insured.

N. "Mobile Equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
   b. Vehicles maintained for use solely on or next to premises you own or rent;
   c. Vehicles that travel on crawler treads;
   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted power cranes, shovels, loaders, diggers or drills; or road construction or resurfacing equipment such as graders, scrapers or rollers.
   Vehicles not described in Paragraphs 1, 2, 3, or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
      i. Air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment; or
      ii. Cherry pickers and similar devices used to raise and lower workers;

   e. Vehicles not described in Paragraphs 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self –propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":
      i. Equipment designed primarily for snow removal; road maintenance, but not construction or resurfacing; or street cleaning.
      ii. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        iii.      Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**O.** "Nuclear Facility" means any "nuclear reactor", "uranium isotopes separation device or equipment", "special nuclear material device or equipment", or "nuclear waste site". "Nuclear facility" includes the site on which it is located, all operations conducted on such site, and all premises used for such operations.

**P.** "Nuclear Reactor" means any device, equipment, or machine designed or used to:
    a.   sustain nuclear fission in a self-supporting chain reaction;
    b.   contain a critical mass of fissionable material.

**Q.** "Nuclear Material" means any of the following materials which are defined in the federal Atomic Energy Act, or any of its amendments:
    a.   Source material;
    b.   Special nuclear material; or
    c.   By-product material.

**R.** "Nuclear Waste Site" means any structure, basin, excavation, premises or place prepared or used for the storage or disposal of nuclear waste.

**S.** "Nuclear waste" means any waste material that contains by-product material and results from the operation of any "nuclear reactor", or "uranium isotopes separation device or equipment" by any insured. "Nuclear waste" does not include tailings or wastes that result from the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content.

**T.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**U.** "Original Inception Date" means the beginning date of the earliest insurance from which we have continuously provided protection for this coverage part.

**V.** "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**W.** "Retroactive Date" means the date shown in the Declarations Page on or after which any "medical incident" must have occurred in order for coverage under this insurance to apply. If no "retroactive date" is shown, the "retroactive date" is the same date as the inception date of this coverage page.

**X.** "Special nuclear material device or equipment" means any device or equipment used for the processing, fabricating, or alloying of special nuclear material if the total amount of such material is at any time in the custody of any insured at the premises where the device or equipment is located and is more than 25 grams of plutonium or uranium 233, or any combination of those two materials; or is more than 250 grams of Uranium 235.

**Y.** "Spent nuclear fuel" means any solid or liquid fuel element or component that has been exposed to radiation or used in a "nuclear reactor".

**Z.** "Suit" means a civil proceeding in which "damages" because of "medical professional injury" to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such "damages" are claimed and to which the insured must submit or does submit with our consent; and
2. Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent.

**AA.** "Temporary Worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**BB.** "Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

a. Use or threat of force or violence; or

b. Commission or threat of a dangerous act; or

c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**CC.** "Uranium isotopes separation device or equipment" means any device or equipment designed or used for separating the isotopes of uranium or plutonium; processing or utilizing spent nuclear fuel; or handling, processing or packaging nuclear waste.

**DD.** "Volunteer Worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**EE.** "Wrongful Act" means any actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty while acting in your capacity as a director or officer.

## SECTION IX – CLAIMS

**A. Notice of Claim or Suit:** As a condition precedent to the right to the protection afforded by this insurance, the insured shall, as soon as practicable, give the Company written notice of any "claim", "suit" or "medical incident" made against the insured.

In the event suit is brought against the insured, the insured shall IMMEDIATELY forward to the Company every demand, notice, summons or other process received by him or by his representatives.

B. **Assistance and Cooperation of the Insured:** The insured shall cooperate with the Company and upon the Company's request shall submit to examination and interrogation by a representative of the Company, under oath if required, and shall attend hearings, depositions and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, as well as in the giving of a written statement or statements to the Company's representatives and meeting with such representatives for the purpose of investigation and/or defense, all without charge to the Company.  The insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the insured may have.  The insured shall not, except at his own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the written consent of the Company.

C. **Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the insured's rights of recovery therefore against any person or organization, and the isured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The insured shall do nothing to prejudice such rights.

   The Company shall not exercise any such rights against any person, firms or corporations included in the definition of "insured".  Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an insured in respect of any Claim brought about or contributed to by the intentional, dishonest, fraudulent, criminal or malicious act or omission of such insured.

   Any amount recovered shall first be used for the repayment of expenses incurred toward subrogation; second, to any loss and expense payment by the insured in excess of any deductible(s); third, to any loss and expense payments by any excess carrier on behalf of the insured; fourth, to any loss and expense payments by any primary carrier on behalf of the insured; and, last, to repayment of the insured's deductible.

D. **Action Against the Company:** No action shall lie against the Company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been fully and finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company.

   Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the insured to determine the insured's liability.  Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the Company of any of its obligations hereunder.

E. **False or Fraudulent Claims:** If any insured shall commit fraud in proffering any Claim, this insurance shall become void as to such insured from the date such fraudulent claim is proffered.

## SECTION X - OTHER CONDITIONS

A. **Application:** By acceptance of this policy, the insured agrees that the statements in the applications are his representations, that they shall be deemed material, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the Company, or any of its agents, relating to this insurance.

B. **Prevention of Loss:** In the event of an "Occurrence" involving the operations/hazards covered by this Policy, the insured shall promptly, at this expense, take all reasonable

steps to prevent other Personal Injury or Property Damage from arising out of the same or similar conditions.

C. **Other Insurance:**  This insurance shall be in excess of the amount of the applicable deductible of this policy and any other valid and collectible insurance available to the insured, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the limits of liability provided in this policy.

D. **Changes:**  Notice to any agent of knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of the policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

E. **Assignment:** Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

F. **Cancellation:** This policy may be cancelled by the Named Insured on behalf of all insureds by surrender thereof to the Company or by mailing to the aforementioned written notice stating when thereafter such cancellation shall become effective.  If cancelled by the Named Insured, the Company shall retain the customary short rate proportion of the premium

This policy may be cancelled by the Company by mailing to the Named Insured, at the address stated in the Declarations, written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective.  However, if the Company cancels the policy because the Named Insured has failed to pay a premium or deductible when due, this policy may be cancelled by the Company by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective.  The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period.  Such notice shall be conclusive on all insureds.  Delivery of such written notice by the Named Insured or the Company shall be equivalent to mailing. If cancelled by the Company, earned premium shall be computed pro rata.

G. **Premium and Audit:**  Upon expiration of this policy, at the Company's request, the Named Insured shall furnish to the Company a statement of the insured's actual total Sales or other premium base for the policy period.  The actual earned premium shall be computed thereon at the premium rate in effect at policy inception.  If actual earned premium is more than the premium shown on the Declarations, the insured may be required to pay the difference to the Company. The Company, or its authorized representatives shall have the right to require of the insured, at any time within the said Policy Period, or one year thereafter, a sworn statement of the entire amount of the premium base during the whole or specific part of the said period, and the Named Insured shall furnish said statement within ten (10) days after request.  The statement referred to shall be subject to verification and audit by a duly authorized representative of the Company, who shall have the right and opportunity to examine the books and records of the insured as respects such basis of premium, and such examination may be made at any time during the said period and within three (3) years thereafter.  The rendering of any estimate or statement or the making of any previous settlement shall not bar the examination herein provided for, nor the Company's right to additional premium.

H. **Inspection:** Any of the Company's authorized representatives shall have the right and opportunity, whenever the Company so desires, to inspect at any reasonable time the

insured's premises and operations, but the Company assumes no responsibility or duty by reason of such inspection or the omission thereof.  The insured agrees to provide appropriate personnel to assist the Company's representatives during such inspection without cost to the Company.

I. **Authorization:**  By acceptance of this policy, the first person or Entity named in Item 1 of the Declarations agrees to act as Named Insured with respect to the giving and receiving of all notice as provided herein; the exercising of the Optional Extended Reporting Period, the cancellation of this policy, the payment of premiums and deductibles, the receiving of any return premiums that may become due; and the insureds agree that such person or entity shall act on their behalf.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM ENDORSEMENT

If this insurance is cancelled at your request, there will be a minimum earned premium retained by us of 25% of the premium for this insurance.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

# REPORTING A CLAIM

**Berkley Select, LLC is committed to providing our clients with effective claim service.**

**In the event of an incident which may result in a claim, an actual claim, or your receipt of suit papers, please follow the procedures outlined below.**

---

**NOTICE OF EACH INCIDENT, CLAIM OR SUIT SHOULD IMMEDIATELY BE REPORTED TO:**

**Berkley Select, LLC**
**Professional Liability Claims Department**
**250 South Wacker Drive, Suite 700**
**Chicago, IL   60606**
**Phone Number:  312-881-1336**

**To enable us to respond more quickly and efficiently,** whenever possible, please fax or email a completed claims notice form and any pertinent details of the claim directly to the Claim Department at:

**Fax.# 1-866-461-3193  Attn:  Professional Liability Claims**
**Email address:  medclaims@berkleyselect.com**

---

## PLEASE BE SURE TO INCLUDE:

- **Your Name, Address and Phone Number;**
- **Your Policy Number and the Policy Period;**
- **Any information about the claim you feel is important that was not included in the claim report form;**
- **If you are submitting the report by mail or fax, please also include any letters of demand or any legal papers which you have received regarding the claim.**

# IMPORTANT NOTICE TO POLICYHOLDERS

- The insurance policy you have purchased is being issued by an insurer that is not licensed by your state. These companies are called "Non-Admitted" or "Surplus Lines" Insurance Companies.

- The Insurance Company is not subject to the financial solvency regulation and enforcement which applies to licensed insurers.

- The Insurance Company does not participate in any of the Insurance Guaranty Funds that may exist in your state. Therefore, these Funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.

- Your State Insurance Department maintains a list of eligible Surplus Lines Insurance Companies approved by the Insurance Commissioner. Ask your agent or broker if the insurer is on that list.

- For additional information about the insurer, you should ask questions of your insurance agent, broker for "Surplus Lines" broker or contact your state Insurance Department.

- If you, as the applicant, required that the insurance policy you have purchased be bound immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage during that five-day period, the premium will be prorated and any broker fee charged for this insurance will be returned to you.

# SERVICE OF SUIT ENDORSEMENT

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, "suit" or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

It is further agreed that service of process in such "suit" may be made upon Todd Hampton, or his nominee of the Company at 250 South Wacker Drive – Suite 700, Chicago, Illinois 60606 and that in any "suit" instituted against any one of them upon this policy, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

It is agreed that in any state requiring a standard form of policy, insurance hereunder on values or properties in such state shall attach and cover in accordance with the terms and conditions of such standard form.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AGGREGATE EXPENSE LIMITS ENDORSEMENT

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium paid, it is agreed that **Section I – COVERAGES, Item B. Additional Payments** is deleted in its entirety and replaced with the following:

### B. Additional Payments

We will pay, with respect to any "claim" we investigate or settle or any "suit" against an insured we defend:

1. All expenses we incur.
2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
3. All reasonable expenses incurred by the insured, at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $500 a day because of time off work.
4. All costs taxed against the insured in the "suit".
5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
6. All interest on the full amount of the judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

It is agreed that as respects to payments made under items 2 through 6 above, these payments will not reduce the limit of insurance. Our duty to make these payments will end when we have used up the limits of insurance that apply with the payment of judgments or settlements.

As respects to all expenses we incur under item number 1 above, such payments will be subject to a $__8,000,000__ annual aggregate limit. These payments will not reduce the limits of insurance. Our duty to make these payments will end when we have used up the limits of insurance that apply with the payment of judgments or settlements.

We will have the right to appeal a judgment for "medical professional injury" in any "suit" we defend. If we appeal such a judgment, we will pay all expenses which result directly from that appeal. This includes any taxed costs and post judgment interest. These appeal expenses are in addition to the limits of insurance. The results of an appeal will not change the limits of insurance that apply under this coverage part.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## SANCTIONS LIMITATION & EXCLUSION CLAUSE

**This endorsement modifies insurance provided under your policy.**

A.  The Company shall not be liable to pay any claim or provide any benefit hereunder to the extent that the payment of such claim or provision of such benefit would be in violation of any trade or economic sanction laws or regulations applicable in the Company's jurisdiction of domicile, or those of another jurisdiction with which the Company is legally obligated to comply.

B.  To the extent that the Company is not prohibited from making a payment of a claim or providing any benefit pursuant to the underlying insurance policy, and where the parties agree it would be commercially reasonable to do so, the Company shall seek to obtain any government authorization, approval or license necessary to pay any claim or provide any benefit hereunder.

C.  For the avoidance of doubt, it being the intent of the parties that if:

    i.  Any trade or economic sanction laws or regulations applicable in the Company's jurisdiction of domicile, or those of another jurisdiction with which the Insurer is legally obligated to comply, no longer prohibit the payment of any claim or the provision of any benefit hereunder, then

    ii.  Company shall, within a reasonable time of becoming aware of such change of circumstance, accept premiums, provide benefits and pay claims for risks subject to this Agreement which are no longer subject to any prohibition described herein.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SEXUAL OR PHYSICAL ABUSE ENDORSEMENT
# DAMAGES AND CLAIMS EXPENSES

In consideration of the premium charged, this endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

**Section I – COVERAGE A. INSURING AGREEMENT** is amended by the addition of the following:

6.      Subject to the Limit of Insurance specified in this endorsement, and where legally allowed, the Company agrees to pay amounts the Insured becomes legally obligated to pay as damages arising from any physical or sexual abuse and/or molestation, assault or licentious, immoral/amoral behavior or other behavior  which was threatened, intended to lead to or culminated in any sexual act whether committed intentionally, negligently, inadvertently or with the belief, erroneous or otherwise, that the other party is consenting and has the legal and mental capacity to consent thereto, that was committed, or alleged to have been committed by any person for whom the insured is alleged to be legally liable or responsible in whole or in part.

The limit of insurance available to pay damages and claim expenses for all claims alleging sexual or physical abuse shall not exceed $ 1,000,000  per claim and $ 1,000,000  in the aggregate. This limit is part of and not in addition to the limits of insurance shown in the declarations.

This coverage shall not apply to any insured who:

a.      Engaged in or is alleged to have engaged in sexual or physical abuse;
b.      Knowingly failed to prevent any sexual or physical abuse;
c.      Intentionally neglected to notify the proper authorities of any sexual or physical    abuse.

However, notwithstanding the foregoing, we will defend allegations of sexual or physical abuse until, by trial verdict, court ruling, regulatory ruling or admission, the individual insured is found to have engaged in such conduct.

This coverage applies to all claims alleging sexual or physical abuse provided that the incident(s) resulting in a claim for "damages" did not occur prior to the "retroactive date" shown below:

Retroactive Date: 11/18/08

**SECTION VI – EXCLUSIONS E. Sexual or Physical Abuse** is deleted in its entirety.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDED CANCELLATION/NON-RENEWAL PROVISION

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium paid, it is agreed that **Section X – OTHER CONDITIONS, Item F. Cancellation** is deleted in its entirety and replaced with the following:

F.  1.  **Cancellation:**  This policy may be cancelled by the Named Insured on behalf of all Insureds by surrender thereof to the Company or by mailing to the aforementioned written notice stating when thereafter such cancellation shall become effective.  If cancelled by the Named Insured, the Company shall retain the customary short rate proportion of the premium.

This policy may be cancelled by the Company, by mailing to the Named Insured, at the address stated in the Declarations, written notice stating when, not less than _90_ days thereafter, such cancellation shall be effective.  However, if the Company cancels the policy because the Named Insured has failed to pay a premium or deductible when due, this policy may be cancelled by the Company by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective.  The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period.  Such notice shall be conclusive upon all Insureds.  Delivery of such written notice by the Named Insured or the Company shall be equivalent to mailing.  If cancelled by the Company, earned premium shall be computed pro rata.

2.  **Non-renewal:**  The Company may non-renew this policy by mailing or delivering to the Insured at the address stated in the Declarations written notice of non-renewal at least _90_ days before the expiration date of this policy.  The offer of renewal policy terms, conditions or a premium amount different than those in effect prior to renewal does not constitute non-renewal.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF INSURED PHYSICIANS

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium charged, **Section II – WHO IS AN INSURED** is amended to
include the following as Insureds, but solely for duties performed on behalf of the Named Insured:

| Insured Physician | Medical Specialty | Retroactive Date | Termination Date |
|---|---|---|---|
| Norbert Richardson, MD | Bariatric Surgeon | 08/01/12 | |
| Donna T. Richardson, MD | General Surgeon | 12/01/13 | |
| Chinnappan Kumaran, MD | Gastroenterology Surgeon | 08/01/10 | 05/31/14 |

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE
TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE
POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL NAMED INSURED – SPECIFIED RETRO DATE

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

**Section II – Who is An Insured** is amended to include the individual(s) or entity(ies) named below, but only with respect to the provision of "health care professional services" by or for you.

This coverage applies to claims for "medical professional injury" provided that the "medical incident" resulting in a claim for "damages" did not occur prior to the "retroactive date" shown below:

| NAME OF INSURED: | RETROACTIVE DATE: |
|---|---|
| Success Healthcare 1, LLC dba Silver Lake Medical Center and dba Ingleside Hospital | 11/18/08 |
| Success Healthcare 2, LLC | 12/10/08 |
| St. Alexius Hospital Corporation #1 | 12/23/04 |
| St. Alexius Hospital Corporation #1 dba Lutheran School of Nursing | 12/23/04 |
| Forest Park Hospital Corporation #1 (Terminated: 07/20/2011) | 12/02/04 |

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

SSM-0164(1/08)                                                                                          Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MEDIA EXPENSES SUPPLEMENTARY PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium charged, and subject to the terms of this endorsement, we will reimburse you, up to the "media expenses" limit of insurance shown below for "media expenses" incurred by you as a result of an "adverse event" that occurs during the policy period, subject to the policy aggregate shown below for all "media expenses", regardless of the number of insureds and the number of "adverse events" or "related adverse events".  An "adverse event" occurs at the time that you have notice of the circumstance or the complaint or proceeding made or brought against you.

"Related adverse events" shall be considered one "adverse event" and subject to the "media expense" limit of insurance applicable to such "adverse event" reported earlier to us under this policy or any prior policy issued by us.

> "Media Expense" per "Adverse Event" Limit:     $ 10,000

> Policy Aggregate for all "Media Expenses" Limit: $ 25,000

Payments made under the "media expense" limit of insurance set forth above are supplementary payments, and are in addition to, and not part of, the Limit of Liability stated in Item 3. of the Declarations.

Any supplementary payments for "media expense" made hereunder are not subject to the policy deductible, if any.

Solely with respects to coverage pursuant to the terms of this endorsement, **Section IX – CLAIMS, Subsection A. Notice of Claim or Suit** is deleted and replaced with the following:

> **A.   Notice of Claim or Suit:** You must give us notice of an "adverse event" no later than 60 days after the first discovery of the "adverse event" by any insured.
>
> In the event of an "adverse event" you shall notify us of any other insurance policy, prepaid legal service contract or legal practitioner retainer agreement available to you with respect to such "adverse event".
>
> You shall take all reasonable steps to prevent an "adverse event" and to mitigate "media expenses".  In all events, you shall not take any action or fail to take any action without our prior consent which prejudices our rights under this policy.

Solely with respect to coverage pursuant to the terms of this endorsement, the following exclusion is added to **Section VI – EXCLUSIONS:**

> We will not pay for any "media expenses" based on, arising out of or in any way related to any "adverse event" that any insured's directors, officers, "administrators", "executive officer", trustees, governors, management committee members, members of the

management board or partners (or the equivalent positions) knew or reasonably could have known prior to the occurrence of such "adverse event".

Solely with respect to coverage pursuant to the terms of this endorsement, **Section VIII – Definitions** of this policy is amended to include the following terms:

"Adverse event" means a complaint or proceeding made or brought against you, including a criminal investigation, complaint or indictment, an administrative proceeding, investigation or complaint, or a civil complaint, "claim", "suit" or circumstance related to or arising out of the rendering "healthcare professional services".

"Media expenses" means the reasonable and necessary charges and fees incurred by you to address or manage and "adverse event" including:

1. fees of third party legal or public relations consultants with regard to addressing adverse publicity or media attention, including preparation of statements, press releases and interviews, but solely to the extent that such consultants are specifically retained or hired by you to manage or address the "adverse event";

2. costs or charges incurred with respect to remedial action taken by you as a result of such event provided that any such expenses are incurred within six (6) months following discovery of a covered "adverse event".

"Media expenses" shall not include:

1. any amounts incurred with respect to your defense against a criminal investigation, complaint or indictment, or with respect to your defense of any civil complaint or "claim" or administrative proceeding, investigation or complaint, including any alleged violation of the Health Insurance Portability and Accountability Act (HIPAA), or other patient privacy laws, statutes or regulations;

2. any amounts you are legally obligated to pay as a result of an "adverse event", including "damages", fines, violations or penalties;

3. compensation, fees, benefits, overhead, charges or expenses of any insured or any of your employees;

4. any expenses payable on your behalf or reimbursable to you under any other valid and collectible insurance;

5. any expense supplementary payments, including attorney's fees which are covered pursuant to any other provision of this policy, including attorney's fees of defense counsel retained to defend you in any civil proceeding.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MEDICAL BOARD LICENSING HEARING
# COST REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium charged and subject to the terms of this endorsement, we will reimburse the named insured for "hearing costs" which arise out of "hearings" involving your employees, including any physicians, surgeons or dentists, who are otherwise insureds under this policy for "healthcare professional services", provided such "hearings" result from "medical incidents" covered by this policy.

We will reimburse "hearing costs" up to the per "hearing" per insured limit of insurance shown below for "hearing costs" incurred by you as a result of a "hearing" that occurs during the policy period, subject to the policy aggregate shown below for all "hearing costs" regardless of the number of insureds or "hearings".

Per Hearing Per Insured Limit:                                              $ 10,000

Medical Board Licensing Hearing Cost Policy Aggregate Limit:  $ 25,000

Payments made under this endorsement are supplementary payments, and are in addition to, and not part of, the Limit of Liability stated in Item 3. of the Declarations.

Any supplementary payments for "hearing costs" made hereunder are not subject to the policy deductible, if any.

Solely with respect to coverage pursuant to the terms of this endorsement, **Section VIII – Definitions** of this policy is amended to include the following terms:

"Hearings" means investigations conducted, or administrative proceedings or actions brought, by state medical licensing boards.

"Hearing costs" means reasonable and necessary fees and expenses of legal counsel and expert consultants, including, without limitation, investigation, travel, costs of transcripts and court filing fees incurred in the defense of an administrative proceeding or action. "Hearing costs" associated with appeals are considered part of those incurred during the original proceeding. "Hearing costs" do not include salary, charges or incidental expenses of your "employees", "administrators" or agents, or any sanctions, penalties, fines or other monetary penalties imposed by a medical licensing board.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HIPAA PROCEEDINGS SUPPLEMENTARY
# PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium charged, and subject to the terms of this endorsement, we will pay up to the "HIPAA Proceedings" limit of insurance shown below for each "HIPAA Proceeding" and subject to the policy aggregate shown below for all "HIPAA Proceedings", regardless of the number of insureds and the number of such proceedings.

> Per "HIPAA Proceeding" limit:                          $ 10,000

> Policy Aggregate for all "HIPAA Proceedings" Limit:  $ 25,000

Subject to the above limits, we will pay attorney fees and other reasonable costs, expenses or fees resulting from the investigation or defense of a "HIPAA Proceeding".

Payments made under the "HIPAA Proceeding" limit of insurance set forth above are supplementary payments, and are in addition to, and not part of, the Limit of Liability stated in Item 3. of the Declarations.

Any supplementary payments for "HIPAA Proceedings" made hereunder are not subject to the policy deductible, if any.

Solely with respect to coverage pursuant to the terms of this endorsement, **Section VIII – Definitions** of this policy is amended to include the following term:

> "HIPAA Proceeding" means an administrative proceeding, including complaint, investigation, or hearing instituted against you by the Department of Health and Human Services or its designee alleging a violation of responsibilities or duties imposed upon the insured under the Health Insurance Portability and Accountability Act ("HIPAA") or any rules or regulations promulgated thereunder, with respect to the management and disclosure of confidential and private health information, but solely to the extent that:

> 1) such proceeding is commenced during the policy period; and
> 2) reported to us within 30 days after the insured receives notice of the proceeding, but in no event later than the end of the policy period.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DISINFECTION EVENT EXPENSE
# REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium charged:

In the event that reasonable "disinfection expenses" actually paid by the Named Insured during the policy period in connection with a "disinfection event" occurring during the policy period are not covered for any reason under any other policy or policies of insurance issued to the Named Insured, we shall reimburse the Named Insured for such "disinfection expenses", subject to the limits of liability set forth below and upon satisfactory proof of payment by the Named Insured.

Disinfection Event Limits of Insurance:

  Each Disinfection Event Expense Limit:    $ 10,000

  Policy Aggregate Disinfection Event Expense Limit:  $ 25,000

Subject to the policy aggregate disinfection event expense limit, the each "claim" disinfection event expense limit shown above is the maximum we will pay for expenses for any one "claim" in any way related to, in whole or in part to any one "disinfection event"".

The above limits are in addition, and not part of, the Limit of Liability stated in Item 3. of the Declarations.

Any supplementary payments for "disinfection expense" made hereunder are not subject to the policy deductible, if any.

For the purposes of **Disinfection Event Expense Reimbursement Coverage**, the following definitions are added:

  "Disinfection event" means any case or series of cases of the MRSA virus or other facility-born infectious virus, bacteria or disease that requires reporting of such case or series of cases to any local, state or federal governmental or healthcare oversight agency or entity.

  "Disinfection expense" means reasonable fees and costs incurred by the Named Insured to clean and disinfect the Named Insured's facility after any "disinfection event".

  "Disinfection expense" includes costs (a) to engage third party providers of cleaning/disinfection services; (b) to notify patients/residents, visitors or other potentially affected persons; and (c) incurred by the management of public relations with respect to such "disinfection event".

  "Disinfection expense" does not include any remuneration, salaries, overhead, fees, loss of earning reimbursement or benefit expense of the Named Insured, or costs of cleaning/disinfecting supplies or products.  Additionally, it does not include any expense

supplementary payments, including attorney's fees which are covered pursuant to any other provision of this policy, including attorney's fees of defense counsel retained to defend you in any civil proceeding

.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EVACUATION EXPENSE COVERAGE

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

We will reimburse the insured for "evacuation expenses" actually incurred in connection with an "evacuation" which first takes place during the Policy Period and which is reported to us in accordance with the **Duties in the Event an Evacuation Occurs** section of this endorsement, subject to the sublimit shown below.

Evacuation Limits of Insurance:

Each Claim Evacuation Expense Limit:        $ 10,000

Policy Aggregate Evacuation Expense Limit:   $ 25,000

Subject to the policy aggregate evacuation expense limit, the each claim evacuation expense limit shown above is the maximum we will pay for expenses for any one "claim" in any way related to, in whole or in part to any one "evacuation" event.

The above limits are in addition, and not part of, the Limit of Liability stated in Item 3. of the Declarations.

Any supplementary payments for "evacuation expense" made hereunder are not subject to the policy deductible, if any.

For the purposes of **Evacuation Expense Coverage**, no coverage will be available for "evacuation expenses" arising out of any:

1.  strike or bomb threat, unless the "evacuation" was ordered by a civil authority;
2.  false fire alarm or planned evacuation drill;
3.  vacating of one or more residents because of their individual medical condition;
4.  nuclear reaction, radiation or any radioactive contamination, however caused;
5.  seizure or destruction of property by order of a governmental authority, provided that this Exclusion shall not apply to an order of evacuation by a governmental authority due to a condition described above; or
6.  war, including undeclared or civil war, warlike action by a military force, insurrection, rebellion or revolution.

For the purposes of **Evacuation Expense Coverage**, the following definitions are added:

"Evacuation" means the removal of all or the majority of patients from one or more of your locations or facilities in response to an actual or threatened, natural or man-made condition that is unexpected and unforeseen and causes the patients of such location or facility to be in imminent danger of loss of life or physical harm.

Such condition must be in the form of an emergency or sudden crisis requiring immediate action, and not the result of a latent or hidden condition at the location or facility.

"Evacuation expenses" means reasonable costs and expenses actually incurred by you in connection with the "evacuation", including the costs associated with transporting and lodging patients who have been evacuated.  "Evacuation expenses" shall not include any remuneration, salaries, overhead, fees or benefit expenses of the Named Insured or any Insured.

**Duties in the Event an Evacuation Occurs**

1.  Any "evacuation" shall be reported to us as soon as practicable, but in no event later than thirty (30) days after you first incur "evacuation expenses" for which coverage will be requested, or thirty (30) days after the expiration date of your policy, whichever is earlier.

2.  You are not required to obtain our prior written approval or consent before incurring any "evacuation expenses.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GOOD SAMARITAN COVERAGE

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium charged, **Section II, WHO IS AN INSURED; Subsection B.**, is deleted in its entirety and is replaced by the following:

**B.**    Your "employees", "students" and "volunteer workers" are insureds, but only for acts or omissions within the course and scope of their duties for you or while performing duties related to the conduct of your business.

Additionally, your "employees" are insureds for any "medical incident" arising out of their rendering emergency first aid outside of their duties as your "employees" as long as the emergency first aid is rendered without receipt of or expectation of remuneration.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDED DEFINITION OF DAMAGES

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium charged, it is agreed that **SECTION VIII – DEFINITIONS, Paragraph F.**  "Damages", is deleted in its entirety and is replaced with the following:

    **F.**  "Damages" means compensatory judgments, settlements or awards, including punitive or exemplary Damages where allowable by statute, but does not include fines or penalties, the return of fees or other consideration paid to the insured.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

SSM-0234(4/09)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT
# FIRST NOTICE OF CLAIM

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium charged, **SECTION 1 – COVERAGE, A. Insuring Agreement, Part 4** is deleted in its entirety and replaced with the following:

4. A "claim" or "suit" shall be considered to be first made at the earlier of the following times:

   a. When notice of such "claim" or "suit" is received by General Counsel or the legal department of the First Named Insured.
   b. When the General Counsel or legal department of the First Named Insured knew about or should reasonably have known a circumstance was likely to result in a "claim" or "suit".
   c. When a "claim" or "suit" is reported in writing directly to us or one of our agents.

   A "claim" or "suit" received by the insured and reported to us in writing within 30 days after the end of the policy period will be deemed to have been reported on the last day of the policy period.

   You must report the "claim", "suit" or "medical incident" in accordance with the terms and conditions of **Section IX.A. – Notice of Claim or Suit**.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| Founding Partners Designee, LLC (Parent Company) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Who is An Insured** is amended to include as an additional insured any person(s) or organization(s) for whom you are performing "healthcare professional services" when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy.  Such person(s) or organization(s) are an additional insured only with respect to their liability for a "medical professional injury" caused in whole or in part by your acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing "healthcare professional services" for the additional insured, provided that no act or omission by such person(s) or organizations(s) caused or contributed to any medical professional injury and that such additional insured's sole liability is vicarious to your liability.

We have no defense obligation to an additional insured except as specifically stated within this endorsement.

We will defend those person(s) or organization(s) qualifying as an additional insured if, and only if, all of the following conditions are met:

    1.   An insured is also a party to the "suit" and we are defending the insured;

    2.   The allegations in the "suit" are such that the only claims against the additional insured are claims seeking to impose liability vicarious to the insured's liability;

3.  The allegations in the "suit" are such that no conflict exists between the interests of the insured and the interests of the additional insured;

4.  The insured and the additional insured both agree that one counsel can represent both of their interests and agree that we can assign one counsel to represent both of their interests.

A person's or organization's status as an additional insured under this endorsement ends when your healthcare professional services for that additional insured are completed.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**

SSM-0097(8/14)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE ENDORSEMENT
# LOSS AND EXPENSE

This endorsement modifies insurance provided under the following:

HEALTHCARE PROFESSIONAL LIABILITY INSURANCE POLICY

**SECTION IV – DEDUCTIBLES A.** is deleted in its entirety and replaced with the following:

A.  Our obligation under this insurance to pay damages and Additional Payments for any covered "medical incident" on your behalf applies only to the amount of damages and Additional Payments in excess of the deductible amount stated in the Declarations Page. The deductible shown in the Declarations Page and the rules below fix the amount of damages and Additional Payments over which the limits of coverage will apply regardless of the number of

1.  Insureds;
2.  "Claims" made or "suits" brought; or
3.  Persons or organizations making "claims" or bringing "suits".

The each medical incident deductible is the amount that will be your responsibility for all damages and Additional Payments arising out of any one "medical incident".

The aggregate deductible is that amount that will be your responsibility for all damages and Additional Payments that are first reported during the policy period.

**NOTHING CONTAINED HEREIN SHALL VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.**