# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROMISE HEALTHCARE GROUP, LLC, *et al.*, | ) | Case No. 18-12491 (CTG) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |

## NOTICE OF FILING OF STATEMENT OF CLAIM

**PLEASE TAKE NOTICE** that Patrick J. Wassmann, Jr., Patrick J. Wassmann, Sr., and Constance A. Wassmann, by and through their attorneys, submit the Statement of Claim attached hereto as **Exhibit A** to supplement Claim No. 370 previously filed in this matter.

Dated:  March 13, 2026
      Wilmington, DE          **SULLIVAN NIMEROFF BROWN HILL LLC**


                                 */s/ William D. Sullivan*
                                 R. Karl Hill (No. 2747)
                                 William D. Sullivan (No. 2820)
                                 William A. Hazeltine (No. 3294)
                                 Elihu E. Allinson (No. 3476)
                                 919 N. Market Street, Suite 420
                                 Wilmington, Delaware 19801
                                 Telephone: 302.428.8191
                                 Facsimile: 302.428.8195
                                 khill@snbhlaw.com
                                 bsullivan@snabhlaw.com
                                 whazeltine@snbhlaw.com
                                 zallinson@snbhlaw.com

                                 *Attorneys for Patrick J. Wassmann, Jr. and Patrick J. Wassmann, Sr. and Constance A. Wassmann, as guardians for Patrick J. Wassmann, Jr.*

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PROMISE HEALTHCARE GROUP, LLC, ET AL., | Case No. 18-12491 (CTG) |
| Reorganized Debtors. | (Jointly Administered) |

**STATEMENT OF CLAIM**

Patrick J. Wassmann, Jr. ("PJ"), and Patrick J. Wassmann, Sr. ("Pat Sr.") and Constance A. Wassmann ("Connie") (together the "Wassmanns"), by and through their undersigned counsel hereby submit this detailed statement of claim as follows:

**Preliminary Statement**

1.    This statement of claim is intended to supplement a timely-filed proof of claim filed on January 4, 2019 (Claim #370) based on damages and injuries caused by the medical negligence of healthcare providers at Promise Hospital of Lee County during PJ's care and treatment at that hospital between March 18, 2017, and June 7, 2017.

**Parties**

2.    Patrick and Connie are the co-guardians of their son PJ who was born in Newburgh, New York on April 18, 1991.  The Wassmanns reside in Cape Coral Florida in Lee County, where they moved in 2011.

3. Promise Hospital of Lee, Inc. is a Delaware corporation and known as Promise Hospital of Fort Meyers (hereinafter "Promise Lee") which operated as a short and long-term hospital and nursing facility. Promise Lee was sold to Select Medical Corporation pursuant to that certain *Asset Purchase Agreement By and Among Promise Healthcare, Inc., the Subsidiaries Thereof Listed on Exhibit 1, and Select Medical Corporation,* dated December 23, 2018. The sale to Select Medical Corporation closed on April 3, 2019 [Docket No. 954].

4. The Debtor's Second Amended Liquidating Plan [Docket No. 1956] was confirmed on September 17, 2020 [Docket No. 2072] and became effective on October 1, 2020 [Docket No. 2100]. Pursuant to the confirmed plan, a liquidating trust was established, and Robert N. Michaelson was appointed liquidating trustee.

**Medical Records**

5. On July 1, 2017, Connie and Pat submitted a H.I.P.A.A. written authorization for all of PJ's medical records to be produced to the Wassmanns' then Florida counsel.

6. On January 15, 2019, prior Florida counsel to the Wassmanns requested PJ's medical records from Promise Lee. After Promise Lee provided an invoice in excess of the amount allowed by Florida statute as a condition to the production of the records, counsel sent an additional request for the medical records on February 28, 2019.

7.     Promise Lee did not produce any of PJ's medical records in response to the requests identified in the previous paragraph.

8.     On June 30, 2023, undersigned counsel submitted a medical authorization to Select with a request for PJ's medical records that it acquired in connection with the sale transaction.  Thereafter, Select provided records that it still had in its possession and control.  Notably, no records were produced during certain critical days of PJ's stay at Promise Lee.[1]

### Facts

9.     On or about March 1, 2017, PJ was found by Pat Sr. unconscious in his apartment.  PJ was rushed by ambulance to Cape Coral Hospital where he remained in the intensive care unit and on a ventilator for two weeks.

10.     On March 15, 2017, PJ was transferred and admitted into Promise Lee based on its stated reputation in specialized acute treatment for patients like PJ.  The goal was to wean PJ off the ventilator to breathe on his own again through extensive respiratory breathing (IVAT) treatment, physical and occupational therapy.  Promise Lee did not specialize in rehabilitation.

11.     On or about March 20, 2017, as PJs breathing continued to improve, Brooks Rehabilitation cleared and approved the proposed transfer of PJ to its

---

[1] The Wassmanns reserve their rights to move for sanctions and other relief including a negative inference instruction relating to the absence of medical records in PJ's chart maintained by Promise Lee during critical times of his stay.

rehabilitation facility on or about April 12, 2017.  At that time, PJ could move certain parts of his body.

12.    Medical records, including physical therapy notes, reflect PJ's improvement during this time.  For example, the physical therapist noted that on March 17, 2017, PJ could react to verbal stimuli, track people and experienced pain in lower extremities; on March 18, 2017, PJ could track movements, respond to comments and slightly moved his fingers and stuck his tongue out; on March 21, 2017, PJ could lightly squeeze the therapist's thumb; on March 24, 2017,PJ was continuing to make progress towards all of the goals; and on March 27, 2024, PJ was following verbal commands/requests.

13.    On March 30, 2017, PJ went into cardiac arrest immediately after a Promise Lee nurse, on instructions from a Promise Lee physician, inserted a rectal tube, ostensibly to minimize skin deterioration and potential ulcers related to diarrhea.  PJ immediately went into bradycardia and ultimately a complete cessation of the heart's electrical and mechanical activity (asystole).  He was treated with epinephrine and shocked into the return of spontaneous circulation (ROSC).  In physician notes on April 2, 2017, the Promise Lee physician wrote "it [the cardiac arrest] is suspected to be due from a severe vagal response from the insertion of his rectal tube."

4

14. During the night on March 31, 2017, PJ had a second cardiac arrest when he became bradycardic with a slow agonal rhythm and no pulse after his tracheostomy dislodged itself two times. PJ was given CPR, two doses of epinephrine, and sodium carbonate to regain consciousness and the return of spontaneous circulation (ROSC). The cause of this arrest was likely due to the insertion of a catheter (placed in the jugular vein in the neck and also referred to as a central or arterial line) on March 30, 2017 to address sepsis/renal/kidney failure that developed as a result of infection while PJ was at Promise Lee.

15. As a result of the two cardiac arrests in two successive days, PJ suffered acute kidney damage (ATN), likely caused by one or both of the heart attacks and infection.

16. The medical records also reflect that PJ went into septic shock, and sepsis, caused at least secondarily to staph epidermidis, a bacteria found in the skin that affects the blood stream, and other infections.

17. During his stay at Promise Lee, PJ developed bed sores, dehydration, toenail loss and fungus, fevers and wounds to his scalp, back, coccyx, and other parts of his body.

18. In the weeks between PJ's admission into Promise Lee on March 15, 2017, and before the two successive cardiac arrests, PJ's breathing had improved to

the point that he was no longer on a ventilator.  His ability to move parts of his body also improved.

19.     By mid to late April 2017, the rectal tube and the central line catheter were removed.

20.     PJ's breathing continued to improve but he remained in a vegetative state, was comatose and is now a quadriplegic.  He continued to suffer from wounds to his scalp and other parts of his body.

21.     After the cardiac arrests and the medical problems caused by those events, Brooks Rehabilitation rescinded its earlier acceptance of PJ as a patient to their rehabilitation facility.

22.     On or about May 16, 2017, PJ again went into "severe septic state" due to an infection from pneumonia in the urinary tract, was sent to the ICU and again placed on full mechanical ventilation.

23.     As of May 19, 2017, PJ's sepsis, and the related critical care issues relating to the infection were resolved, and PJ was taken off the ventilator.  Based on PJ's stability at that time and the de-escalation of care required, Dr. Lazaro O. Bravo, a Promise Lee physician, recommended that PJ be transferred to a progressive care facility as "other critical care patients may be requiring the bed." PJ continued to be treated for wounds from bed sores to his coccyx, scalp, and sacral area.

24.     In late May 2017, Connie and Pat received instructions relating to home health care for PJ and on June 7, 2017, PJ was discharged to their care of him at their home.

25.     PJ has been living at home since June 7, 2017.  He can breathe on his own without mechanical ventilation, can make comments through a computer, is confined to a wheelchair, and remains quadriplegic.

## COUNT ONE
### Medical Malpractice/Negligence Against Promise Lee

26.     Plaintiffs repeat and reallage Paragraphs 1 through 25 above as if fully set forth herein.

27.     At all times material hereto, while being treated at Promise Lee hospital, PJ came under the care and treatment of Promise Lee's employees, agents, nurses, physicians and/or ancillary staff, including but not limited to Dr. Lazaro Bravo and Dr. Sumeet Shetty, all of whom were acting within the course and scope of their employment and/or agency therewith.

28.     At all times material hereto, Defendant Promise Lee, by and through its employees, agents, nurses, physicians and/or ancillary staff, including but not limited to Drs. Bravo and Shetty, had a duty to diagnose, appropriately assess, treat, perform medical services and/or otherwise care for PJ, in accordance with that level of care, skill and treatment which, in light of all relevant circumstances, is

7

recognized as acceptable and appropriate by reasonably prudent similarly situated health care providers.

29.    Notwithstanding said duties, Promise Lee was negligent and breached those duties by and through its employees, agents, nurses, physicians and/or staff, including but not limited to Drs. Bravo and Shetty, in one or more of the following ways:

a.    failing to properly care for PJ, thus causing or allowing him to suffer from bruises, dehydration, bed sores, body wounds, foot and toe fungus, and infections including pneumonia, and sepsis;

b.    improperly and unnecessarily inserting a rectal catheter, which immediately caused PJ to have a cardiac arrest to a flat line, and requiring resuscitation;

c.    improperly inserting a jugular central line to address kidney/sepsis issues that arose as a result of infections resulting from improper treatment and care of PJ, which events caused a second cardiac arrest which again required resuscitation;

d.    failing to properly train, supervise and control its employees, agents, nurses, physicians and/or ancillary staff to properly care for and treat PJ;

e.    failing to properly monitor PJ during his stay at the hospital; and

f.      failing to properly document PJ's medical record regarding PJ's stay at the hospital and/or intentionally or recklessly deleting records during crucial times of his stay.

30.    As a direct and proximate result of the negligence of Promise Lee, as alleged hereinabove, PJ has suffered damages, including without limitation injury rendering PJ a quadriplegic, bodily injury, pain and suffering, disability, impairment, mental anguish, inconvenience, loss of capacity for the enjoyment of life, loss of earnings, loss of earning capacity, and medical, hospital, and nursing expenses. These losses are either permanent or continuing in nature and PJ will suffer them in the future as the injuries consist in whole or in part of a permanent and continuing injury.

WHEREFORE, the Wassmanns' demand a judgment against Promise Lee for all damages to which they are entitled as a result of the medical malpractice described herein, together with the costs of this action, and any other and further relief as deemed just and proper by the Court and trial by jury.

SULLIVAN NIMEROFF BROWN HILL LLC

*/s/ R. Karl Hill*
R. Karl Hill (No. 2747)
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
Elihu E. Allinson (No. 3476)
919 N. Market Street, Suite 420
Wilmington, Delaware 19801
Telephone: 302.428.8191

9

Facsimile: 302.428.8195
khill@snbhlaw.com
bsullivan@snabhlaw.com
whazeltine@snbhlaw.com
zallinson@snbhlaw.com

*Attorneys for Patrick J. Wassmann, Jr. and Patrick J. Wassmann, Sr. and Constance A. Wassmann, as guardians for Patrick J. Wassmann, Jr.*

10

## <u>CERTIFICATE OF SERVICE</u>

I, William D. Sullivan, hereby certify that on the 13th day of March 2026, a copy of the foregoing *Notice of Filing of Statement of Claim* was electronically filed and served via CM/ECF on all registered users of that system in accordance with Del. Bankr. L.R. 9036-1(b), and a courtesy copy was served via Electronic Mail on the parties listed below.

| | |
|---|---|
| PACHULSKI STANG ZIEHL & JONES LLP<br>Jeffrey N. Pomerantz, Esq.<br>Bradford J. Sandler, Esq.<br>James E. O'Neill, Esq.<br>919 North Market Street, 17th Floor<br>Wilmington, DE 19801<br>jpomerantz@pszjlaw.com<br>bsandler@pszjlaw.com<br>joneill@pszjlaw.com | SILLS CUMMIS & GROSS P.C.<br>Andrew H. Sherman, Esq.<br>Boris I. Mankovetskiy, Esq.<br>Michael Savetsky, Esq.<br>The Legal Center<br>One Riverfront Plaza<br>Newark, NJ 07102<br>asherman@sillscummis.com<br>bmankovetskiy@sillscummis.com<br>msavetsky@sillscummis.com |

March 13, 2026
Date

 */s/ William D. Sullivan*
William D. Sullivan